# Exhibit D

71




# MEMORANDUM OF UNDERSTANDING





# MEMORANDUM OF UNDERSTANDING

BETWEEN

ZIMBABWE MINING DEVELOPMENT CORPORATION

A body corporate established in terms of the Zimbabwe Mining Development Corporation Act [Chapter 21:08] of the Republic of Zimbabwe

(hereinafter referred to as "ZMDC")

And

AMAPLAT (MAURITIUS) LIMITED

A company incorporated in Mauritius with company number 079678

(hereinafter referred to as "Amari")





## 1. DEFINITIONS

In this MOU, unless the context clearly requires otherwise, the following words and expressions shall have the meanings ascribed to them below:

| | |
|---|---|
| Affiliate | any entity which is directly or indirectly controlled by or in control of a shareholder. For the purposes of this definition, "control" means the ownership of a majority of the voting shares or interest in the entity; |
| Base Metals | oxide and sulphide compounds of nickel (Ni), copper (Cu) and cobalt (Co); |
| Business Day | any day other than a Saturday, Sunday or declared public holiday in terms of Zimbabwean law in force from time to time; |
| Claims | the claims held by ZMDC listed in Annexure 1 hereto which claims comprise approximately 10 million platinum ounces; |
| Commercial Production | mine production of at least one million tons of run of mine ore per annum to be processed by a concentrator at the mine with sufficient concentrating capacity; |
| Company | A company to be incorporated by the Parties in accordance with the laws of Zimbabwe to house the joint venture to be called 'ZIMARI Platinum (Pvt) Ltd; |
| Exploration Program | exploration program as described in sections 4.1, 4.2 and 4.3 of Annexure 2 hereto; |
| Force Majeure | any act, event or cause, whether foreseeable or unforeseeable, not within the reasonable control of the Party affected by an event of Force Majeure ("Affected Party") including acts of God, strikes, stoppages, restraints of labour, wars whether declared or |

CELESTE KEARTL NOTARY PUBLIC SOUTH AFRICA GAUTENG



undeclared, blockades and insurrections, sabotage and civil disturbance/unrest, accident, the adverse application of any laws or enforcement actions of any court or governmental agency (including legal or illegal expropriation) not resulting from any wrongful act or omission of the Affected Party, the refusal of or delay in obtaining any necessary consents from any government agency, provided that the Affected Party has acted in a timely manner in endeavouring to secure them.

| | |
|---|---|
| Feasibility Study | the feasibility study as described in section 4.4 of Annexure 2 hereto; |
| MOU | this memorandum of understanding including any annexure hereto; |
| PGMs | platinum group metals being platinum (Pt), palladium (Pd), rhodium (Rh) and gold (Au) in concentrate or metal form; |
| Parties | the parties to this MOU and "Party" means one of them; |
| Shareholder | shareholder in the Company; |
| Signature Date | The date upon which this MOU is signed by the Party signing last in time; |
| Zimbabwe | Republic of Zimbabwe; |

2. INTERPRETATION

2.1 A reference to a Party includes that Party's successors and authorised assignees.

2.2 Words importing –

2.2.1 any one gender includes the other two genders;

2.2.2 the singular includes the plural and *vice versa*;





2.2.3 natural persons include created entities (corporate or unincorporated) and *vice versa*.

2.3 The headings to the paragraphs of this MOU are included for reference purposes only and shall not in any way affect or govern the interpretation or construction of this MOU.

2.4 If any provision in this MOU is a substantive provision conferring rights or imposing duties on any Party, notwithstanding that it is only in the definition or introduction clause, effect shall be given to it as if it were a substantive provision in the operative part of this MOU;

2.5 Where any period is prescribed in this MOU, that period shall be reckoned exclusively of the first and inclusively of the last day unless the last day falls on a day other than a Business Day, in which case the last day shall be the next succeeding Business Day;

2.6 Where words have been defined in the body of this MOU, such words will, unless otherwise required by the context, have the meanings so assigned throughout this MOU.

3. INTRODUCTION

Whereas:

3.1 ZMDC is a body corporate established in terms of the Zimbabwe Mining Development Corporation Act [Chapter 21:08] whose main business is *inter alia* investing in mining and mining development on behalf of the Government of Zimbabwe.

3.2 Amari is a wholly owned subsidiary of Amari Resources International Limited, an international resource investment company focused on exploration and mining in sub-Saharan Africa.

3.3 ZMDC is the beneficial owner of 100% of the Claims and has provided Amari with technical information in respect of the Claims.

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG



3.4 ZMDC and Amari wish to enter into a joint venture to prospect for PGMs, Base Metals and ancillary metals on the Claims area and subject to a successful Feasibility Study develop a mine on the Claims area.

3.5 The Parties wish to enter into this MOU to formalise the relationship between the Parties relating to the above matters.

## 4. JOINT VENTURE COMPANY

4.1 The Parties shall incorporate the Company within a reasonable period of time from the Signature Date.

4.2 The initial shareholding in the Company shall be:

| | |
|---|---|
| ZMDC | 50% |
| Amari | 50% |

and shall comprise such initial capital contributions as agreed by the Parties.

4.3 The Parties record, in the event that ZMDC is required in terms of legislation in Zimbabwe relating to indigenisation to hold a majority interest in the Company, that ZMDC shall have an option to increase its shareholding in the Company to 51%. Such option shall be exercised in writing and shall be purchased at market value as determined by an independent third party agreed by the Shareholders. The exercise of the option shall not have any other material impact on any of the other terms of the Agreement between Shareholders at the time.

4.4 Subject to the provisions of Clause 4.5, the Company shall hold the Claims, undertake the Exploration Program and Feasibility Study and subject to a successful Feasibility Study develop and operate a mine on the Claims area. The Company shall use its best endeavours to complete the Feasibility Study within 24 months of the Claims being transferred to the Company.

4.5 The Company shall procure the requisite regulatory/statutory authorisations specifically the investment licence from the Zimbabwe Investment Authority and exchange control authority where applicable.

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG



4.6 In the event that Amari elects to list its interests in the Company on an internationally recognised stock exchange, ZMDC shall have a right of first refusal on such listing to take up shares at the listing price and furthermore will be entitled to exchange part or all of its shareholding in the Company at the time with shares in the listed entity for value as determined by the initial public offering in the listed entity. ZMDC shall support and assist with such listing in the event Amari elects to proceed with such listing.

4.7 The overall strategic management of the Company shall vest in the Board of Directors.

4.8 The initial Board shall consist of five directors, two directors appointed by ZMDC, two directors appointed by Amari of which one will be the managing director of the Company and an independent director appointed jointly by ZMDC and Amari who shall act as the chairperson. The quorum shall be three directors provided that at least one director is from each shareholder. The number of directors on the Board may be increased at any time by agreement between the Shareholders.

4.9 Questions arising at meetings of directors shall, subject to the provisions of 4.11 shall be decided firstly by consensus and failing consensus by a simple majority of votes cast by directors present thereat.

4.10 Questions arising at meetings of Shareholders shall, subject to the provisions of 4.11, be decided by a simple majority of votes.

4.11 Notwithstanding the provisions of 4.9 and 4.10 the Parties agree that certain decisions of the Board and/or the Shareholders of the Company shall require a 75% majority vote. These will include but may not be limited to:

4.11.1 The disposal of the whole or substantially of the whole of the undertaking of the Company, or the whole or greater part of the assets of the Company;

4.11.2 The borrowing of funds, once the mine is developed and operating, from outside sources in excess of USD5 million (or such other amount as the shareholders may unanimously agree);

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG

4.11.3 The variation of any rights attaching to any shares in the issued share capital of the Company;

4.11.4 Determination or variation of the dividend policy of the Company

4.11.5 The provision of security against the Company's assets in excess of USD5 million or such other amount as the Shareholders may unanimously agree;

4.11.6 A change in the Company's financial year end;

4.11.7 The winding-up of the Company; or

4.11.8 An amendment to the provisions of the Memorandum and Articles of Association of the Company.

4.12 In the event that the Company is finally liquidated by a third party ZMDC shall have a first call against the Company in respect of the Claims in a manner and form agreed with the liquidator at the time.

5. CONTRIBUTION OF PARTIES TO THE JOINT VENTURE

5.1 ZMDC shall:

5.1.1 transfer all the Claims to the Company and obtain all statutory and government approvals in respect thereof within a reasonable period of time from the date of incorporation of the Company;

5.1.2 provide technical, financial and legal advice to the Company on the Exploration Program, Feasibility Study and development of a mine/s on the Claims area;

5.1.3 as required from time to time;

5.1.4 allow the Company use of any infrastructure owned by ZMDC including but not limited to roads, rail, power and water supply and warehouses necessary for the Company's activities at market related rates and shall maintain such infrastructure in good working order;

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG



5.1.5 in the event that the Company requires the use of infrastructure necessary for its business of exploration and/or mining owned by the government of Zimbabwe, ZMDC shall assist the Company in obtaining the right to use such infrastructure;

5.1.6 use its best endeavours to ensure that the Company obtains fiscal, foreign exchange, social, export/import, environment and labour dispensations from the Zimbabwe government on no less favourable terms than those currently granted in terms of special mining leases to existing platinum producers in Zimbabwe;

5.1.7 assist the Company in obtaining all necessary licences and permits to undertake the Exploration Program, Feasibility Study and operate the mine once developed; and

5.1.8 assist the Company with lobbying government and/or statutory bodies in respect of the needs of the Company as and when requested.

5.2 Amari shall:

5.2.1 Through the Board in liaison with ZMDC, manage the Exploration Program, Feasibility Study and development of a mine/s on the Claims area on behalf of the Company;

5.2.2 provide equity and/or loan funding to the Company for the purposes of funding for:

5.2.2.1 the Exploration Program;

5.2.2.2 the Feasibility Study; and

5.2.2.3 mine development of a mine on the Claims area until such time as the mine reaches Commercial Production

in full as and when required by the Company.

Any funding provided by Amari in terms of this 5.2.2 shall be credited to its loan account or equity respectively in a ratio agreed at the time by the Shareholders and ZMDC shall be credited, at such time, with the same

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG



amount of loan or equity respectively in the same ratio of loan to equity as Amari;

5.2.3 facilitate and/or secure the raising of any third party funding referred to in 6.1.1 and 6.1.2 for additional exploration, mine development and expansion including the sourcing and provision of foreign currency for such purposes if required;

5.2.4 source and arrange required equipment, machinery and technology for the activities of the Company;

5.2.5 provide expertise to the Company including but not limited to funding, listing, technical, exploration, financial, structuring, investor relations, corporate marketing; and legal as required from time to time;

5.2.6 perform the structuring, engineering and facilitation of a public listing of Amari's interests on an internationally recognised stock exchange in the event that Amari elects to list it's interests in the Company;

5.2.7 use its best endeavours to ensure that the phase 1 of the Exploration Program is completed within 6 months of the Claims being transferred to the Company and the requisite statutory authorisations being granted to the Company.

5.3 The Parties shall jointly:

5.3.1 work together to assist the Company to obtain any necessary statutory approvals to incorporate the Company including obtaining the necessary approvals for a foreign company to invest in Zimbabwe, obtaining Zimbabwean exchange control approval and to undertake the Exploration Program and subsequently develop the mine on the Claims area to operational status;

5.3.2 liaise with the relevant statutory bodies regarding environmental, social fiscal and other regulatory matters relevant to the future operations of the Company;

5.3.3 procure that the Company does all that is necessary to undertake the Exploration Program and subsequent bankable feasibility study; and

CELESTE KIRTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG

5.3.4 ensure that all US dollar loans to the Company for funding purposes are repaid in US dollars.

5.4 In the event that the Parties elect not to proceed with the development of a mine on the Claims area as a result of an unsuccessful Feasibility Study, the Claims shall be returned to ZMDC for a nominal value as shall be agreed to by and between the Parties. In such case the Shareholders shall write off any Shareholder loans made by them to the Company until date of such decision.

6. FUNDING

6.1 Subject to the provisions of 5.2.2 once a mine has been developed on the Claims area and reached Commercial Production the activities of the Company from time to time shall be funded in the following order:

6.1.1 cash flows from the Company, if any;

6.1.2 third party non recourse funding, in which case Shareholders shall pledge shares as security or provide guarantees as required;

6.1.3 third party recourse funding, in which case Shareholders shall pledge shares as security or provide guarantees as required; and thereafter

6.1.4 by Shareholder loans pro rata to Shareholders shareholding. In the event that any Shareholder does not provide such pro rata Shareholder funding such Shareholder's shareholding shall be diluted accordingly. Notwithstanding the aforementioned a Shareholder may elect to provide the funding required in terms of this clause on behalf of a non funding Shareholder in the form of a loan granted on commercial terms to the non funding Shareholder which loan may be secured by a pledge of the non funding Shareholders shares in the Company and may be set off against any dividends due to the non funding Shareholder until such time as the funding is paid in full. Notwithstanding the aforementioned it is recorded that ZMDC's shareholding shall not be diluted to below 26% as a consequence of a failure to fund in terms of this clause.

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG



6.2 Shareholder loans provided in terms of this clause shall rank above any payments due by the Company (other than in the ordinary course of business) including dividends and any other distributions to Shareholders.

## 7. PRE EMPTIVE RIGHTS

7.1 A Shareholder ("the Offeror") shall not be entitled to transfer its shares and Shareholder loans in the Company ("Interest") (other than to an Affiliate) unless the Interest has first been offered in writing ("the Offer") to the other Shareholder ("the Offeree") at a price for the Interest stated by the Offeror in the Offer and on the terms of payment required by the Offeror. The Offer shall be open for acceptance by the Offeree/s for a period of 45 (forty five) days after making the Offer. If the Offeree does not accept the Offer, by stating so in writing within the aforementioned period the Offeror shall be entitled to offer such Interest to a third Party on terms no more favourable than those stated in the Offer.

## 8. DURATION

This MOU shall commence on the Signature Date and supersede any other prior documents relating to the matters specified herein and shall, subject to the provisions of this MOU:

8.1 be binding on the Parties upon signature hereof by each of the Parties; and

8.2 be superseded by a comprehensive shareholder/joint venture agreement which shall incorporate the terms and conditions contained herein; and

8.3 continue to be of full force and effect and binding on all Parties hereto until such time as the more comprehensive Agreements referred to in 8.2 are concluded.

## 9. DISPUTE RESOLUTION

In the event of a dispute or disputes arising, such disputes, controversies or differences between the Parties, which may arise out of or in relation to MOU, and which cannot be settled by the Board, the Parties shall first try to resolve it amicably through negotiation. In the event that no settlement can be reached

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG

through negotiation in reasonable time, any Party may submit the dispute to ICC International Court of Arbitration in Paris for arbitration in accordance with the procedural rules of arbitration of the said Arbitration Court in effect at the time of applying arbitration, the award of which shall be final and binding upon all Parties. The language in Arbitration shall be in English.

## 10. MISCELLANEOUS

### 10.1 Cession and Assignment

The Parties shall not be entitled to cede and assign their rights and obligations arising out of this MOU to a third party other than a cession and assignment of their rights and obligations to an Affiliate or a company controlled by the same ultimate shareholders as the respective Party without the prior written consent of the other Party.

### 10.2 Further assurance

Each Party shall execute all documents promptly and do all things that the other Party may from time to time reasonably require of it to effect, perfect or complete the provisions of this MOU.

### 10.3 Entire contract and variation

This MOU constitutes the entire contract between the Parties with regard to the matters dealt with herein. There are no terms, conditions or warranties, express or implied, other than those contained in this MOU and there have been no prior representations made by the Parties or any agent or other person purporting to act for the Parties. No variation of the terms of this MOU, or consensual cancellation of this MOU, shall be effective unless reduced to writing and signed by or on behalf of the Parties.

### 10.4 Counterparts

This MOU may be concluded by the Parties signing separate counterparts which shall together constitute the MOU.

CELESTE KEARTLAND NOTARY PUBLIC SOUTH AFRICA GAUTENG



10.5 Confidentiality

Except where such disclosure is required by law, an order of a court of competent jurisdiction or by stock exchange rules, no Party may make a public announcement relating to this MOU without first obtaining the written consent of the other Parties, which consent shall not be unreasonably withheld..

10.6 Good faith

The Parties shall at all times act in the utmost good faith to each other in giving effect to this MOU.

10.7 Force Majeure

A Party affected by an event of Force Majeure ("Affected Party") will be excused from performance of and will not be liable to the other Party for any failure to carry out its obligations under this MOU if, and only to the extent of and for the time that it is prevented or delayed in whole or in part from doing so by Force Majeure and any time within which the Affected Party is required to perform any obligation under this MOU will be extended to that extent.

10.8 Applicable law

This MOU shall be governed by, construed and interpreted in accordance with the laws of Zimbabwe.

10.9 Notices and domicilia

10.9.1 The Parties choose the following physical addresses at which documents in legal proceedings or any written notices in connection with this MOU may be served:



95

10.9.1.1 ZMDC

Ground floor
MMCZ Building
90 Mutare Road
Msasa
Harare
Zimbabwe

10.9.1.2 Amari

Le Montaigne
7 Avenue de Grande Bretagne
Monte Carlo
MC 98000
Monaco

or at such other address (not being a post office box or *poste restante)* of which the Party concerned may notify the other Party in writing.

10.9.2 Any notice given in terms of this MOU shall be in writing and shall if delivered by hand to a responsible person during ordinary business hours at the physical address chosen as its domicilium citandi et executandi be deemed to have been duly received by the addressee on the date of delivery unless the contrary is proved.

Notwithstanding anything to the contrary contained or implied in this MOU, a written notice or communication actually received by one of the Parties from the other Party shall be adequate written notice or communication to such Party.



94

Signed at Harare on 25 July 2008

As Witnesses: -

1 ______________________

2 ______________________

______________________

for ZMDC

Name: Dominic Mubayiwa

Who warrants his/her authority

Signed at Harare on 25 July 2008

As Witnesses: -

1 ______________________

2 ______________________

______________________

for: AMAPLAT MAURITIUS

Name: Mike Nunn

Who warrants his/her authority

