## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Amaplat Mauritius Ltd.,** *et al*, | ) |
| **Plaintiffs,** | ) |
| **v.** | )     **Civil Case No. 1:22-cv-00058-CRC** |
| **Zimbabwe Mining Development Corporation,** *et al*, | ) |
| **Defendants.** | ) |

## MOTION TO DISMISS THE COMPLAINT BY
## THE CHIEF MINING COMMISIONER, MINISTRY OF MINES
## OF ZIMBABWE, AND THE REPUBLIC OF ZIMBABWE

Defendants, the Chief Mining Commissioner, Ministry of Mines of Zimbabwe (the "Commissioner"), and the Republic of Zimbabwe ("Zimbabwe"), by and through their undersigned counsel, hereby submit their Motion to Dismiss (the "Motion") the Complaint filed by Amaplat Mauritius Ltd. ("Amaplat") and Amari Nickel Holdings Zimbabwe Ltd. ("Amari"), and in support thereof, state as follows:

### INTRODUCTION

When Zimbabwe Mining Development Corporation ("ZMDC") and Plaintiffs executed two Memorandum of Understanding (the "MOUs"), they likely contemplated many things, such as two mines, one platinum and the other nickel, or the resolution of their disputes according to the International Chamber of Commerce (the "ICC") Rules of Arbitration. ZMDC received neither, but the Commissioner and Zimbabwe, who never signed the MOUs, certainly had no reason to expect this case: a judgment enforcement proceeding in the United States eight years after the arbitration concluded and more than two years after a Zambian court issued a conditional

1

order to register an arbitration award. Plaintiffs should not be allowed to shield the courts from an infirmed arbitration award through an *ex parte* order never served on the Commissioner and Zimbabwe.

This case should be dismissed with prejudice for the following reasons:

- The Commissioner, as a foreign official, has not waived, nor is there any basis to waive, his immunity from suit.

- The Commissioner and Zimbabwe never signed the agreement to arbitrate, and where Plaintiffs only rely on the MOUs and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), neither of which contains a waiver of immunity, Plaintiffs cannot make out a case for an implied waiver of immunity.

- The Commissioner and Zimbabwe are immune from this Court's jurisdiction because Plaintiffs claim not to be seeking to enforce an arbitration award.

- Plaintiffs have failed to plead any minimum contacts between the Commissioner and this District, and where Zimbabwe otherwise is immune, there is no personal jurisdiction over either Defendant. Plaintiffs have also not served the Commissioner.

- Plaintiffs have not stated a claim upon which relief can be granted because they invoke this Court's jurisdiction under the New York Convention, but they failed to comply with the three-year time bar that comes with the treaty.

- Plaintiffs have fallen far short of their obligation to plead facts showing that ZMDC or the Commissioner are an *alter ego* of Zimbabwe.

- As supported by the Expert Opinion of Mr. Likando Kalaluka, QC, the former Attorney General of Zambia, the Zambian court did not have jurisdiction over the Commissioner and Zimbabwe, and Plaintiffs never served either defendant or even applied for permission to do so.

For these reasons and those set forth in greater detail below, Zimbabwe requests that this Court grant the Motion.

## RELEVANT BACKGROUND

Amaplat and Amari signed the MOUs with ZMDC in 2007 and 2008. *See* ECF No. 1-1 at ¶¶ 3-4. Neither Zimbabwe nor the Commissioner were parties to the MOUs. *See id.*, ¶ 6.

In 2011, Plaintiffs initiated arbitration proceedings pursuant to the arbitration clauses in the MOUs. *See id*., ¶ 8. Plaintiffs did not raise claims based on a mine they built or operated. Rather, in the arbitration, Plaintiffs alleged that the breaches of the MOUs deprived them of future value in the event that a mine was built.

Despite not being a party to the MOUs, the Commissioner was named a respondent in the arbitration proceedings. *See id*., ¶ 39. Plaintiffs amended their claim five times. *See id*., ¶¶ 21, 23, 26, 34, and 39. After those amendments, Plaintiffs did not allege that the Commissioner was responsible for the breach of the MOUs or any of the damages. Plaintiffs did not argue that ZMDC was an *alter ego* of the Commissioner, and there was no argument that either ZMDC or the Commissioner was an *alter ego* of Zimbabwe. Notably, Zimbabwe was not a party to the proceedings. *See generally,* ECF No. 1-1.

The arbitration included a challenge to the Tribunal on day two of the hearing on the merits. *See id*., ¶ 51. Applying Article 11 of the ICC Rules, the governing rules of the arbitration, the Tribunal dismissed the challenge. Article 11 does not provide for the Tribunal to decide on a challenge to itself. *See* **Exhibit 1**, ICC Rules, 1998. After the challenge was rejected by the Tribunal, ZMDC and the Chief Mining Commissioner refused to participate. ECF No. 1-1 at ¶ 52. The Tribunal then decided to remove as evidence the witness statements submitted by ZMDC and the Chief Mining Commissioner. *See id*., ¶ 55.

At the beginning of day three, or the day following the dismissed challenge, the arbitrator appointed by ZMDC and the Commissioner, Mr. Mutizwa, tendered his resignation and left the hearing. *See id*., ¶ 57. The remaining members of the Tribunal decided to continue in light of Article 12(5). *See id*., ¶ 58. Similar to Article 11, Article 12(5) does not grant this power to the Tribunal. *See* **Exhibit 1**, ICC Rules, 1998. Notably, Article 12(5) only applies after the closing of

the proceedings. *Ibid*. There is no evidence that the proceedings were closed. The hearing on the merits continued, concluding on August 20, 2012. ECF No. 1-1 at ¶ 61.

Around five weeks later, on September 27, 2012, the ICC Court accepted the resignation of Mr. Mutizwa and rejected the challenge to two of the members of the Tribunal: Judge Joffe and Mr. Isaacs QC. *See id*., ¶ 65. The ICC Court invited ZMDC and the Commissioner to name a replacement arbitrator. The request was not answered, and the ICC Court named a replacement. *See id*., ¶66.

On October 15, 2012, ZMDC and the Commissioner obtained an *ex parte* order from the Zambian courts restraining Judge Joffe and Mr. Isaac QC from continuing. *See id*., ¶ 67. Plaintiffs applied to vacate the order, but as of the date of the Award, there was no evidence that the order had been vacated. *See id*., ¶74. Judge Joffe resigned (*id*. at ¶ 73), Plaintiffs appointed a new arbitrator (*id*. at ¶ 75), and the reconstituted tribunal held a hearing to receive oral statements from the parties.

On January 12, 2014, an award was issued ordering ZMDC, but not the Commissioner, to pay Plaintiffs damages and awarding costs and legal fees against both the Commissioner and ZMDC (the "Award"). *See id*., ¶ 39. The Award also ordered only ZMDC to pay interest on the amounts at the rate of 5% per annum. *See ibid*. The Award made no finding of joint and several liability nor any finding that the parties are one and the same or that they acted as *alter egos* of Zimbabwe or each other. *See generally,* ECF No. 1.

Since the issuance of the Award in 2014 and until 2019, there appear to be no attempts by Plaintiffs to have the Award recognized and enforced in any other jurisdiction besides Zambia.

On July 19, 2019, Plaintiffs applied to register and enforce the Award *ex parte,* and the Zambian Court issued an "*ex parte* Order for leave to Register and Enforce the Final Arbitration

4

Award" against the Commissioner and ZMDC (the "Order") on August 9, 2019. *See* ECF No. 1-5. Defendants did not participate in these proceedings. The Order specifically limits the enforcement of the Award on the occurrence of certain conditions, including "within 30 days after service of this Order on [Defendants], the Defendant may apply to set aside this Order and the award shall not be enforced until after the expiration of that period or if the Defendants apply within that period to set aside, until the application is finally disposed of." ECF No. 1-5, ¶ 2. This same language is echoed in the Notice of Registration of Award issued on August 19, 2019. *See* **Exhibit 2**, Notice of Registration of the Award, ¶ 4. While the Zambian Court proceeded to register the Award, the enforcement of such Award was subject to the expiration of a 30-day period from service. In order for that time period to transpire, ZMDC and the Commissioner would have had to be served with the Judgment and Notice. Defendants were never served with the Notice of Registration or the Judgment. *See* Expert Opinion of Likando Kalaluka, QC, pp. 6-7, a true and correct copy attached as **Exhibit 3**.

Since Defendants were not served with the Notice of Registration or the Order, they did not have the opportunity to present any grounds against recognition or enforcement of the Award or request the set aside of the Order within the 30-day period established by the Zambian Court. *See* ECF No. 1-5 at ¶ 3. Zimbabwe is not listed as a party in the Zambian proceedings. *See* ECF No. 1-5.

Almost two and half years later, and eight years after the issuance of the Award, Plaintiffs filed the instant action seeking to enforce the Order under the D.C. Foreign-Country Money Judgments Recognition Act (the "D.C. Code") against not only the ZMDC and the Commissioner, but also against Zimbabwe as an *alter ego* of the other defendants. *See* ECF No. 1. Plaintiffs request a judgment against <u>all Defendants</u> holding them jointly and severally liable for the costs and fees

ordered in the Award, even though the Award is largely only against ZMDC. Similarly, Plaintiffs request that post-award interest and post-judgment interest be awarded against all Defendants at the Zambian statutory rate. *See id*., p. 10.

In their Complaint, Plaintiffs routinely mention the New York Convention, citing it five times, including as the basis for subject matter jurisdiction. *See id*., p.4.

Since the issuance of the Award, there have been no enforcement proceedings whereby the Award was subject to the scrutiny of Article 5 of the New York Convention or any other provision of law applicable to arbitration awards.

## ARGUMENT

## I.    Plaintiffs have failed to plead subject matter jurisdiction

On a Fed. Civ. P. Rule 12(b)(1) motion to dismiss, the petitioner "bears the burden of establishing [subject matter] jurisdiction by a preponderance of the evidence." *Dvorak v. U.S. Dep't of Homeland Sec.*, No. 18-CV-1941 (DLF), 2019 WL 1491743, at *1 (D.D.C. Apr. 3, 2019) (quoting *Moran v. U.S. Capitol Police Bd*., 820 F. Supp. 2d 48, 53 (D.D.C. 2011)) (internal quotation marks omitted). Because a Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction, the court "will subject a plaintiff's complaint to 'closer scrutiny' than on a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ware El v. Soc. Sec. Admin*., No. 19CV01684TNMGMH, 2019 WL 5811299, at *2 (D.D.C. Nov. 7, 2019); *An v. Mayorkas*, No. CV 21-385 (EGS), 2022 WL 522970, at *1 (D.D.C. Feb. 22, 2022) (same). Where the defendant challenges the plaintiff's "factual basis for jurisdiction the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant," the court must more. *See Erby v. United States*, 424 F. Supp. 2d 180, 183 (D.D.C. 2006) (internal quotation marks omitted). The court "must go beyond the pleadings and resolve

any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Ibid*.

The Foreign Sovereign Immunities Act ("FSIA") provides the only basis for assuming jurisdiction over foreign states, including their instrumentalities. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under the FSIA, foreign states are presumed to be immune from suit unless the plaintiff proves that one of the enumerated exceptions in the statue applies. *See* 28 U.S.C.A. § 1604; *see also Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013) ("FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies.").

The "basic objective of foreign sovereign immunity is to free a foreign sovereign from suit." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 584 (D.C. Cir. 2020) (citing *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S.Ct. 1312, 1317 (2017)) (internal quotation marks omitted). Courts must therefore decide on issues of immunity "as near to the outset of the case as is reasonably possible" and "before the sovereign is required to defend on the merits." *Ibid.*; *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 (1983) (holding that questions regarding immunity must be decided "[a]t the threshold of every action."); *Denegri v. Republic of Chile*, No. CIV. A. 86-3085, 1992 WL 91914, at *2 (D.D.C. Apr. 6, 1992) (same); *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) ("to preserve the full scope of that immunity, the district court must make the critical preliminary determination of its own jurisdiction as early in the litigation as possible; to defer the question is to frustrate the significance and benefit of entitlement to immunity from suit.") (internal quotation marks omitted).

Invoking the immunity exceptions under 28 U.S.C. §§ 1605(a)(1) and 1605(a)(6) of the FSIA, Plaintiffs argue that the Commissioner and Zimbabwe are subject to the jurisdiction of this Court. *See* ECF No. 1, ¶¶ 4, 8. But for the reasons set forth below neither of the exceptions apply in the present case.

### A.     This Court cannot assume subject matter jurisdiction over the Commissioner based on 28 U.S.C. § 1330(a)

District courts have original jurisdiction over "any nonjury civil action against a foreign state as defined in section 1603(a)..." 28 U.S.C. §1330(a). According to section 1603(a), a "foreign state…includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state." Section 1603 further defines "agency or instrumentality of a foreign state" as "<u>any entity</u> (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country." 28 U.S.C.A. § 1603(b) (emphasis added).

Plaintiffs argue that the Commissioner qualifies as a foreign state because "it is an agency, instrumentality of, and alter ego of…Zimbabwe." *See* ECF No. 1, ¶ 6. The argument ignores the clear wording of section 1603. As noted by the Supreme Court and applied by this Court, "there is nothing [in the FSIA] to suggest that 'foreign state' should be read to include an official acting on behalf of that state." *Samantar v. Yousuf*, 560 U.S. 305 (2010); *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34 (D.D.C. 2013), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014). Section 1603(a) only refers to entities which "typically refers to an organization, rather than an individual." *See id.*, at 315; *see also id.*, at 316 (citing *Dole Food Co. v. Patrickson,* 538 U.S. 468, 474) (2003) ("1603(a) indicates that "Congress had corporate formalities in mind.").

8

There is one possible scenario where a suit against a foreign official can fall under the FSIA. According to the Supreme Court, "some actions against an official in his official capacity" can be "treated as actions against the foreign state" if "the state is the real party in interest." *Samantar* 560 U.S. at 325. But this is not the case here. Plaintiffs' actions are based on their contracts with ZMDC and alleged appearance of the Commissioner in the arbitration. Zimbabwe was not a party to the arbitration or the MOUs, hence, it is not "the real party in interest." *See Angellino v. Royal Fam. Al-Saud*, 688 F.3d 771, 775, n.6 (D.C. Cir. 2012) (holding that Saudi Arabia is not the "real party in interest" because Angellino's breach of contract claim against the defendants "does not allege an act of state"). Accordingly, this Court cannot assume subject matter jurisdiction over the Commissioner based on 28 U.S.C. §1330(a).

### B. This Court cannot assume subject matter jurisdiction under the waiver exception in 28 U.S.C. §1605(a)(1)

Section 1605(a)(1) permits a suit against a foreign state where it "has waived its immunity either explicitly or by implication." An implied waiver exists where "there has been an intentional and knowing relinquishment of the legal right" by the sovereign. *Denegri v. Republic of Chile*, No. CIV. A. 86-3085, 1992 WL 91914, at *3 (D.D.C. Apr. 6, 1992) (citing *Castro v. Saudi Arabia*, 510 F.Supp. 309, 312 (W.D.Tex. 1980) (internal quotation marks omitted). Reading 1605(a)(1) narrowly, "courts have been reluctant to recognize implied waivers" unless a foreign state: (1) "agrees to arbitrate in the United States;" (2) "agrees its contract will be governed by United States law; and" (3) "files a responsive pleading with a United States court without asserting sovereign immunity." *Denegri*, 1992 WL 91914, at *3; *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 24 (D.D.C. 2013), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014) (describing these three situations as "accepted example of implied waiver"); *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 373 (7th Cir.1985) ("most courts have refused to find an implicit waiver of immunity to suit

in American courts from a contract clause providing for arbitration in a country other than the United States."); *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1022 (9th Cir.1987) *cert. denied*, 108 S. Ct. 1077 (1988)); *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (holding that a foreign sovereign does not waive its immunity by "signing an international agreement that contains no mention of a waiver of immunity to suit in the United States courts or even the availability of a cause action in the United States."); *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir. 1993) (quoting *Zernicek v. Petroleos Mexicanos*, 614 F.Supp. 407, 411 (S.D.Tex.1985), *aff'd*, 826 F.2d 415 (5th Cir.1987), *cert. denied*, 484 U.S. 1043, 108 S. Ct. 775, 98 L.Ed.2d 862 (1988)) ("most courts have refused to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States.") (internal quotation marks omitted).

Here, the grounds for finding waiver of immunity are not present. Plaintiffs argue that Defendants waived their immunity by i) agreeing to arbitrate under ICC Rules; and ii) participating in an arbitration governed by the New York Convention in Zambia—a signatory of the New York Convention. *See* ECF No. 1, ¶ 10. The argument is misplaced. First, as noted by the Supreme Court and affirmed by several courts, an agreement to arbitrate outside the United States does not indicate amenability to suit in the United States.

Second, neither Zimbabwe nor the Chief Mining Commissioner was a party to the arbitration agreement—the sole basis of the Arbitration. *See* ECF No. 1-2, ¶ 11, ECF No. 1-4, ¶ 9. Hence, even under Plaintiffs' theory, Defendants cannot be deemed to have waived their immunity. *See Cargill Int'l S.A.* 991 F.2d at 1017 (holding that courts rarely find that a party's "waiver of immunity under a contract extends to third parties not privy to the contract.").

Third, it is irrelevant that the Arbitration is governed under the New York Convention. Plaintiffs contend that because the Arbitration is governed by the New York Convention Zimbabwe could have "contemplated enforcement of any arbitral award in any of the other signatory states." *See* ECF No. 1, ¶10. The argument, again, is misguided. A foreign state does not waive its immunity by "signing an international agreement that does not mention a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 430, 109 S. Ct. 683, 686, 102 L. Ed. 2d 818 (1989). This Court has recognized that ratifying treaties similar to the New York Convention does not constitute waiver of immunity under 1605(a)(1). *See Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kazakhstan*, 406 F. Supp. 3d 1, 12-13 (D.D.C. 2019), *aff'd*, No. 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25, 2022), and *aff'd,* No. 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25, 2022) (holding that Kazakhstan did not waive its immunity by ratifying the Convention on Settlement of Investment Disputes). Plaintiffs have provided no reason to deviate from this conclusion.

In addition, the New York Convention governs enforcement of arbitration awards, not enforcement of foreign judgments. And "[a]lthough an arbitral award and a court judgment enforcing an award are 'closely related,' they are nonetheless 'distinct' from one another, and that distinction has long been recognized." *Commissions Imp. Exp. S.A.*, 757 F.3d 321, 330 (D.C. Cir. 2014). Plaintiffs cannot have it both ways, invoking the New York Convention for a supposed waiver but then denying that they are enforcing an arbitral award or that the Federal Arbitration Act (the "FAA") would apply. Stated simply, Plaintiffs have no basis to claim that either the Commissioner or Zimbabwe waived their immunity because Zimbabwe ratified the New York Convention.

**C.     This Court cannot exercise subject matter jurisdiction under 28 U.S.C. §1605(a)(6) because Plaintiffs are not seeking enforcement of an arbitration agreement or an arbitration award**

Pursuant to 28 U.S.C. §1605(a)(6), a foreign state is subject to the jurisdiction of U.S. courts where "the action is brought, either to enforce an agreement <u>made by the foreign state</u>…or to confirm an award made pursuant to such an agreement to arbitrate, if…the  agreement or award is governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. §1605(a)(6) (emphasis added). Adhering to the unambiguous text, courts have limited this exception to actions to enforce an arbitration agreement or an award which stems from such agreement. *See Hirsh v. State of Israel*, 962 F. Supp. 377, 384–85 (S.D.N.Y.), *aff'd*, 133 F.3d 907 (2d Cir. 1997) (noting that "section 1605(a)(6) is facially inapplicable to the instant action, as Plaintiffs do not seek to enforce an agreement to arbitrate, nor to enforce an outstanding arbitral award."). Courts have also held that this exception only applies "the parties that <u>formed or made</u> the agreement," and not to "parties that merely obtained liability under it." *TIG Ins. Co. v. Republic of Argentina*, No. 18-MC-00129 (DLF), 2022 WL 1154749, at *7 (D.D.C. Apr. 18, 2022) (emphasis added); *see also ibid* ("because Argentina did not make the contracts at issue here, the arbitration exception does not authorize suit against Argentina."); *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 50 (2d Cir. 2021) (holding that Section 1605(a)(6) does not extend to the Republic of Moldova because "the Republic was not a party to the underlying arbitration agreement.").

The arbitration exception is simply inapplicable in the present case. Plaintiffs are not seeking enforcement of an arbitration agreement or an arbitration award. *See* ECF No. 1, p. 9. Also, neither Zimbabwe nor the Commissioner is a party to the arbitration agreement that resulted in the Award. *See id.*, ¶¶18-23. Accordingly, this Court cannot assume jurisdiction pursuant to section 1605(a)(6).

## II.    Plaintiffs have failed to plead personal jurisdiction

To withstand a motion to dismiss for lack of personal jurisdiction, "the plaintiff must make *prima facie* showing of the pertinent jurisdictional facts." *Johnson v. BAE Sys*., Inc., No. 11-CV-2172 (RLW), 2012 WL 13055684, at *1 (D.D.C. Oct. 23, 2012) (internal quotation marks omitted). In deciding on such motion, "the [c]ourt is not bound to treat all of the plaintiff's allegations as true, but instead may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *Ibid* (internal quotation marks omitted); *see also Thompson Hine LLP v. Smoking Everywhere Inc.*, 840 F. Supp. 2d 138, 141 (D.D.C. 2012), *aff'd sub nom. Thompson Hine, LLP v. Taieb*, 734 F.3d 1187 (D.C. Cir. 2013) (same).

### A.    This Court cannot exercise personal jurisdiction on the basis of the FSIA

A court can exercise personal jurisdiction over a foreign state if one of the immunity exceptions provided in 28 U.S.C. §§ 1605–07 applies and the state is served pursuant to 28 U.S.C. § 1608. *See TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005); *see also Practical Concepts, Inc. v. Republic of Bolivia,* 811 F.2d 1543, 1548 n. 11 (D.C.Cir.1987) ("under the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction").

Here, the Court lacks personal jurisdiction under the FSIA because neither of the FSIA immunity exceptions applies. *See* Section I(B)(C).

### B.    The Court also lacks personal jurisdiction over the Commissioner because there is no proof that the Commissioner has minimum contacts within the Court's forum and that he was properly served

Under the Fourteenth Amendment's Due Process Clause, a court can exercise personal jurisdiction over a nonresident if: 1) the nonresident has minimum contacts with the forum state and 2) extending jurisdiction over the nonresident is "consistent with the traditional notions of fair

play and substantial justice." *See Kroger v. Legalbill.com LLC*, No. CIV A 04-2189 ESH, 2005 WL 4908968, at *4 (D.D.C. Apr. 7, 2005).

Here, the Commissioner is a foreign resident so this Court can only exercise personal jurisdiction if he has minimum contacts in the District of Columbia. To surpass this hurdle, Plaintiffs describe the Commissioner as an agency or instrumentality of Zimbabwe. *See* ECF No. 1, ¶¶ 11, 16. On its own, this is plainly insufficient. Agencies and instrumentalities "retain their status as separate legal persons [under section 1603(b)(1)] and receive protection from the exercise of personal jurisdiction under the Due Process Clause." *Gater Assets Ltd.,* 2 F.4th at 49 (internal quotation marks omitted). Plaintiffs must do much more than a conclusory allegation that the Commissioner is an agency or instrumentality.

The Court also lacks jurisdiction because Plaintiffs have not served the Commissioner. Fed. Civ. P. Rule 4(f) "governs service of process of an individual located outside of the United States." *Angellino*, 688 F.3d at 775. Unless there is an "internationally agreed means of service," Rule 4(f) instructs a plaintiff to serve a foreign defendant "(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed. Civ. P. Rule 4(f)(2).

Plaintiffs "served the Ministry of Mines," an entity not a party to this case, on June 20, 2022. *See* ECF No. 20, p. 2. But they have not served the Commissioner pursuant to any of the means of service under Rule 4. Hence, this Court cannot exercise personal jurisdiction over the Commissioner.

**III.     Plaintiffs have failed to state a claim upon which relief can be granted**

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint." *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Ibid.* "To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Ibid.*   (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Moreover, where there is a contradiction between the allegations in the complaint and the exhibits attached, the exhibit generally controls. *See Regan v. Spicer, HB, LLC,* 134 F. Supp. 3d 21, 26 (D.D.C. 2015) (citing 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil 3d* § 1327, 450–451 (3d ed. 2004) ("It appears to be well settled that when a disparity exists between a written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.").

**A.     Plaintiffs are unable to state a claim for enforcement of the Award under the DC Code, and their ability to enforce the Award under the New York Convention expired years ago**

While Plaintiffs entitle their Claim for Relief as one of enforcement of a foreign money judgment, that does not change the underlying claim. Plaintiffs have invoked the New York Convention as a basis for jurisdiction, but in order to circumvent the three-year statute of limitations under the FAA they attempt to enforce the award as a foreign judgment. They cannot have it both ways.

As explained above, the Complaint's basis for jurisdiction is that "Defendants waived sovereign immunity by agreeing to arbitrate under the ICC Rules" and "by agreeing to and participating in arbitration governed by the New York Convention in Zambia." ECF No. 1, p. 4. There is no allegation of a special arrangement whereby Defendants would have otherwise explicitly waived their immunity to these legal proceedings. *See, e.g., Commissions Import Export S.A.*, 757 F.3d at 324 (citing to evidence that Congo had an irrevocable waiver of immunity from legal proceedings or execution allowing for enforcement of the foreign judgment). Yet, Plaintiffs' claim is not through the New York Convention, but through a separate mechanism for enforcement of foreign judgments under the D.C. Code. *See* ECF No. 1, p. 9. For many reasons, the two cannot simultaneously apply to this case.

As plead, the Complaint seeks jurisdiction over the Commissioner and Zimbabwe based on a waiver derived from the New York Convention, but Plaintiffs' claim then would necessarily fall under the New York Convention and be subject to the requirements set forth in Chapter 2 of the FAA that codify the Convention. *See, e.g., Belize Soc. Dev. Ltd. v. Gov't of Belize,* 668 F.3d 724, 727 (D.C. Cir. 2012) (finding that "when exercising its original jurisdiction pursuant to section 203 of the FAA, a court shall confirm the award unless one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention"). If Plaintiffs seek this Court's jurisdiction under the New York Convention, then they get all of it, including section 207, which requires a party has to seek confirmation of the award "within three years after an arbitral award falling under the Convention is made." 9 U.S.C. § 207. The Award is more than three years old, and Plaintiffs would be unable to state a claim upon which relief can be granted.

There are other compelling reasons this Court should reject Plaintiffs' approach. The New York Convention provides parties with grounds by which a court can refuse to enforce an award.

16

*See* NY Convention, Article V. By circumventing the New York Convention, a plaintiff would deprive a defendant from being able to raise any of the grounds enumerated in Article V of the New York Convention and incorporated into the FAA. 9 U.S.C. § 207. Those grounds include a number of challenges to the award and arbitration procedure, including if "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration;" issues related to the appointment of the arbitrators, and disputes related to "[t]he composition of the arbitral authority" or the arbitral procedure. These same explicit grounds are not available under the D.C. Code allowing for enforcement of foreign judgments. *See* D.C. § 15–364. A foreign judgment can, therefore, wrongly deprive a party from raising any ground under Article V of the Convention. This is more so the case where the Award was never subject to scrutiny in another jurisdiction under Article V of the New York Convention.

Here, Plaintiffs are also attempting to circumvent the protections afforded by the New York Convention by enforcing an *ex parte* order <u>eight</u> years after the Award and more than two years after failing to serve the Commissioner and Zimbabwe. ECF No. 1-1, p. 4 (showing that the Award was rendered on January 12, 2014). Not only is their claim time-barred under the provisions of the FAA, but also Defendants have never before had the opportunity to invoke the grounds under the New York Convention because they were never served in the Zambian proceedings. By attempting to simply enforce the foreign judgment, Plaintiffs are depriving Zimbabwe and the Award Defendants of challenging the Award under Article V.

Plaintiffs are likely to invoke the holding in *Commissions Import Export S.A.,* 757 F.3d at 324. But there are key differences that make that case inapplicable here. Not only did the State in that case expressly waive immunity to the legal proceedings enforcing the award allowing that as

a basis to pursue the foreign judgment enforcement, but that award had also been subjected to scrutiny in at least three separate jurisdictions under the New York Convention, including Belgium, Sweden, and the UK, giving Congo numerous opportunities to raise Article V challenges. *Commissions Import Export S.A,* 757 F.3d at 325. In none of those three challenges was there a recorded issue with service.

In contrast, under the unique circumstances present here, Plaintiffs are relying on the New York Convention for jurisdiction while skirting the mandatory requirements of the same treaty, made applicable through the FAA. This is not like *Commissions Import Export* where an award creditor demonstrated in multiple jurisdictions that the award is enforceable. Rather, there are serious issues with the Award, including exceeding the scope of the parties' agreements, disregarding the arbitral procedure regarding the composition of the tribunal, and attempting to ignore a court order to halt the arbitration. Instead of dealing with these issues or giving the Commissioner a chance to avail himself of the treaty-based defenses to the Award, Plaintiffs registered the Award on an *ex parte* basis, obtained the Order, and never served the Commissioner or Zimbabwe.

In any event, Plaintiffs cannot make out a claim under the DC Code. The Order is not final and binding because, based on the Order's text, the underlying Award cannot be enforced. The Order provides that "the award shall not be enforced" until the expiration of a 30-day period <u>after</u> service of the Judgment on ZMDC and the Commissioner. *See* ECF No. 1-5, p. 3. The 30-day period to set aside the Judgment presumably only begins to run once service is made. Plaintiffs fail to allege that the Defendants were properly served in accordance with the conditions set forth in the Judgment, and Mr. Kalaluka confirms there was no service or any the preparatory steps to attempt service. *See* Expert Opinion of Likando Kalaluka, QC, pp. 6-7, a true and correct copy

attached as **Exhibit 3**. This necessarily means that the 30-day period has not expired, making the underlying Award unenforceable on its own terms.

      B.      <u>**Plaintiffs have failed to allege any facts supporting their various claims of an**</u>
                  <u>***alter ego***</u>

A plaintiff does not establish an *alter ego* through a conclusory allegation. Following the dictates of the Supreme Court's well-known *Iqbal* standard, a court must parse the complaint for "sufficient factual matter" that if accepted as true, to "state a claim for relief that is plausible on its face. *Ashcroft,* 556 U.S. at 678. Therefore, "threadbare recitals of elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Id.* In other words, a court need not accept a plaintiff's legal conclusions as true nor must the court presume the veracity of legal conclusions that are couched as factual allegations. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

To make a case of *alter ego* under the *Iqbal* standard requires more than merely conclusory statements. *Ashcroft,* 556 U.S. at 678. There must be facts that tend to show that an *alter ego* relationship exists. *See, e.g., Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 446 (D.C. Cir. 1990). This is because there is "a baseline rule 'that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 814 (D.C. Cir. 2012). This "presumption of the juridical separateness of entities also applies to jurisdictional issues." *Foremost-McKesson, Inc*, 905 F.2d at 446.

The presumption of juridical separateness can only "be overcome where the foreign state so extensively controlled the instrumentality 'that a relationship of principal and agent is created,' or where . . . 'adhering blindly to the corporate form would cause injustice.'" *TMR Energy Ltd*, 411 F.3d at 301. Moreover, this Court's long-standing precedent places the burden squarely on

plaintiff's shoulders to assert facts sufficient to establish either an agency relationship or fraud or injustice. *Foremost-McKesson*, 905 F.2d at 447; *see also, Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 435 (D.D.C. 2012).

In the absence of facts supporting a finding of an *alter-ego* relationship, a foreign judgment may only be enforced in D.C. "between the parties." D.C. Code § 15–363. This has been interpreted by this Court to mean it "applies only as between the identical parties to the judgment which transfer and enforcement is sought." *See Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*, 291 F. Supp. 3d 21, 30 (D.D.C. 2017)(finding that Act may only be used to enforce a judgment "between the parties" actually named in it warranting the dismissal of the complaint against the non-named parties); *see also SerVaas Inc. v. Republic of Iraq*, 540 Fed.Appx. 38, 40–41 (2d Cir. 2013) (holding that a foreign judgment against the Ministry of Industry of Iraq is enforceable against Iraq because the foreign court "viewe[d] the Ministry and Iraq as indistinguishable" or "as the same entity").

Plaintiffs have failed to allege any facts to overcome the presumption of juridical separateness. Zimbabwe is neither a party to the underlying Award[1] nor the Order, yet Plaintiffs seek to obtain a judgment against Zimbabwe for the amounts awarded on a conclusory allegation that Zimbabwe is the *alter ego* of the original defendants. There is no indication in the Order that the Zambian court treated either ZMDC or the Commissioner as being "indistinguishable" or the "same" as that of Zimbabwe. *Id.* The same observation can be made of the Award. *See* ECF 1-1.

In the Complaint, Plaintiffs allege that the Republic of Zimbabwe is an *alter ego* of the other two defendants in order to seek an entry of judgment against Zimbabwe for *all* the amounts

---

[1] The Tribunal ordered damages (other than costs) against ZMDC (not the Commissioner) and there were no findings of wrongdoing from the Tribunal with regards to any alleged actions taken by the Commissioner.  ECF No. 1-1, ¶ 277.

issued under the Award. The allegations attempt to assert an *alter ego* status merely by alleging that the Defendants are an "agency or instrumentality of the Republic of Zimbabwe." ECF No. 1, pp. 3-5. There is no attempt to allege any facts to support an *alter ego* relationship. On this basis, this Court should dismiss any claims requesting that judgment be entered against Zimbabwe.

### C.   Plaintiffs have failed to plead entitlement to post-judgment interest at the Zambian statutory rate

The default rule of federal courts is that the post-judgment rate applicable is the one set forth § 1961, unless the parties unambiguously express their intent to replace the federal rate for post-judgment interest. *See, e.g., OI European Group B.V. v. Bolivarian Republic of Venezuela,* Case No. 16-cv-1533, 2019 WL  2185040, * 6 (D.C.C. May 21, 2019); *see, e.g., Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–60 (5th Cir. 2013) (observing that "the circuits have unanimously agreed that 'an arbitration panel may not establish a post-judgment interest rate itself'" unless the parties have indicated their intent with clear, unambiguous and unequivocal language"). Similarly, in cases involving the recognition of a foreign judgment, courts have applied the federal statutory rate. *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 287 (D.D.C.) (applying the federal statutory post-judgment rate to a judgment issued on the basis of recognition of a UK judgment that confirmed the award as final and enforceable). Even in cases where the foreign judgment has indicated the post-judgment interest rate, courts have proceeded to apply § 1961 for post-judgment once the judgment is converted to a federal court judgment. *See, e.g., Mezu v. Progress Bank of Nigeria, PLC,* Case No. 12-cv-2865, 2013 WL 6531626, at *2 (D. Md. Dec. 11, 2013) (finding that the court was not beholden to apply the 21% post-judgment rate awarded by the foreign judgment in a diversity case). This approach is also consistent with § 15-367 which establishes that once the foreign judgment is recognized it is "[e]nforceable in the same manner and to the same extent as a judgment rendered in the District

of Columbia." D.C. Code § 15-367 (2). A court, therefore, should apply the federal statutory rate once the foreign judgment or award becomes a judgment of a federal court.

Plaintiffs are requesting that this Court displace the mandatory federal statutory rate in favor of Zambia's rate without providing any basis to do so. Since there is no basis alleged in the Complaint, this Court should dismiss any request to apply the Zambian statutory rate for post-judgment interest.

**D.**      **Plaintiffs have failed to plead entitlement to attorneys' fees**

Absent a bad faith exception, the "American Rule" that parties generally bear their own attorney's fees applies. *See Harford Mut. Ins. Co. v. New Ledroit Park Bldg. Co., LLC*, 313 F. Supp. 3d 40, 48 (D.D.C. 2018). Moreover, the general rule is that attorney's fees must be brought by motion, unless substantive law requires those fees to be proved at trial as an element of damages. *See ibid.*

Where a party claims attorney's fees without a basis, a court may dismiss the claim. *See ibid* (dismissing the defendant's counterclaim for attorney's fees because it failed to "state a valid claim for relief"). Even if the claim for attorney's fees is not a stand-alone claim, a court may strike or dismiss the claim. *See, e.g., Hill v. Performa Entertainment LLC,* No. 09-CIV-02662, 2010 WL 446888, at *2 (W. D. Tenn. Feb. 1, 2010) (dismissing attorney's fees stated in the prayer of relief pursuant to a 12(b)(6) motion); *see also, In re Paulsboro Derailment Cases,* No. 13-3724, 2013 WL 5530058, at * 4-5 (D.N.J. Oct. 4, 2013) (dismissing attorney's fees for failure to cite any authority to support a claim for attorney's fees in response to a motion to dismiss).

In the Complaint, Plaintiffs seek an award of costs in addition to "reasonable attorneys' fees." ECF No. 1, p. 10. There is no basis provided for attorney's fees. Neither the underlying Award nor the judgment awarded attorney's fees, and Claimants' failure to identify a basis is fatal

to their request based on this and other courts' long-standing precedent on the issue. *See* ECF No. 1-1; ECF No. 1-5.

## IV.     The Judgment is ineligible for recognition under the D.C. Uniform Foreign-Country Money Judgments Recognition Act

### A.     <u>The Zambian High Court had no jurisdiction over the Commissioner or Zimbabwe</u>

Under the D.C. Code, a court "may not recognize a foreign country judgment if" the foreign court lacked personal or subject matter jurisdiction over the defendant or if it "was rendered under a judicial system that does not provide…procedures compatible with the requirements of due process of law." D.C. Code §§ 15-364(b). As noted by this Court, these are mandatory exceptions to recognition. *Commissions Imp. Exp., S.A.*, 118 F. Supp. 3d at 224.

Before enforcing a foreign judgment, the enforcing court must determine if the foreign court had jurisdiction. *Kaupthing ehf.*, 291 F. Supp. 3d at 33 ("A court entering a default judgment may assume that it has jurisdiction over the defendant[,] ... but that assumption does not preclude the defendant from later contesting jurisdiction in the enforcing court."). Under the D.C. Code, a foreign court is said to have personal jurisdiction if the exercise of such jurisdiction "comports with both the Constitution's Due Process Clause and D.C.'s long-arm statute." *Id.* at 31. The Due Process Clause "protects a party from being subject to personal jurisdiction in a state court if it does not have "minimum contacts" with the forum state." *Gater Assets Ltd.*, 2 F.4th at 54. When it comes to personal jurisdiction over foreign states, courts undertake a different analysis. In such instances, courts compare the procedures used before the foreign court and the grounds for exercising jurisdiction over foreign states under the FSIA. *See Commissions Imp. Exp., S.A*, 118 F. Supp. 3d at 227.

A party moving to enforce under the DC Code, "bears the burden of making *prima facia* showing that the mandatory grounds for nonrecognition—*i.e.*, due process and personal jurisdiction—do not exist." *Kaupthing ehf.*, 291 F. Supp. 3d at 33 (quoting *Wimmer Canada, Inc. v. Abele Tractor & Equipment Co., Inc*., 299 A.D.2d 47, 750 N.Y.S.2d 331, 332 (2002). Plaintiffs have made no such showing.

Plaintiffs allege that the "High Court of Zambia had jurisdiction over the Judgment Defendants and the subject-matter," but fail to identify the basis of the jurisdiction. *See* Complaint, para 44; *see also* ECF No. 1-5. For instance, Plaintiffs have not alleged nor proved that the Commissioner had minimum contacts with Zambia. *See* ECF No. 1, ¶ 44. Nor is there any evidence in the Order or other exhibits filed by Plaintiffs, indicating that the Commissioner was not served either before or after the issuance of the Order. *See* ECF No. 1-5. And as stated by Mr. Kalaluka, there could be no jurisdiction over the Commissioner since a Zambian court would likely find that the Commissioner is immune from jurisdiction in Zambia. *See* Expert Opinion of Likando Kalaluka, QC, ¶ 26, a true and correct copy attached as **Exhibit 3**. In addition, and as conceded by Plaintiffs, the High Court did not exercise jurisdiction over Zimbabwe because it was not a party to the case. *See* Section I (B)(C)

**B.**   **The Order is repugnant to the public policy of the District of Columbia and the United States**

The D.C. Code also permits a court to refuse recognition of a foreign judgment where the "judgment or cause of action on which the judgment is based is repugnant to the public policy of the District of Columbia or of the United States." D.C. Code § 15-364. Even prior to the passing of this Act, this Court and the D.C. Circuit have refused recognition of foreign judgments on public policy grounds. *See Matusevitch v. Telnikoff,* 877 F. Supp. 1, 3 (D.D.C. 1995), *aff'd sub nom. Matusevitch v. Telnikoff*, 159 F.3d 636 (D.C. Cir. 1998).

A cause of action or a judgment is repugnant to the public policy of this state and that of the United States where it ignores "basic underpinnings of common contractual law." *See Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 586 (E.D. Va. 2019); *see also Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 107-108 (2d Cir. 2016) (noting that the "high hurdle of the public policy exception is surmounted by vindication of contractual undertakings" and refusing to recognize to a Mexican judgment that set aside an arbitration award in disregard of the parties' arbitration agreement).

Here, the Tribunal had no jurisdiction over the Commissioner because it was not a party to the MOUs—the sole basis of the Tribunal's jurisdiction. As Plaintiffs rightly pointed out, the MOUs only instruct the contracting parties, *i.e.*, Plaintiffs and ZMDC, to arbitrate "disputes arising…<u>out of or in relation to the</u>" MOUs. *See* ECF No.1, ¶ 24 (emphasis added). By nonetheless registering the Award against the Commissioner, the Zambian High Court ignored the parties' arbitration agreement. Enforcing such judgment will be repugnant to the public policy of the District of Columbia and the United States, hence, this Court should refuse recognition of the Judgment.

CONCLUSION

For the foregoing reasons, the Commissioner and Zimbabwe requests that the Court grant the Motion to Dismiss and grant whatever additional relief it considers just and proper.

Respectfully submitted,

/s/ Quinn Smith
**GST LLP**
Quinn Smith
DCD Bar No. FL0027
quinn.smith@gstllp.com
Katherine Sanoja
DC Bar No. 1019983
katherine.sanoja@gstllp.com

1111 Brickell Avenue
Suite 2715
Tel. (305) 856-7723

Bethel Kassa
*Pro hac vice pending*
bethel.kassa@gstllp.com
2600 Virginia Avenue, Suite 205
Washington D.C., 20037

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 19, 2022, I electronically filed this document with the Clerk of the Court of the U.S. District Court of the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel off record. I further certify that I am unaware of any parties who will not receive such notice.


By:      /s/ *Quinn Smith*
Quinn Smith