## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Amaplat Mauritius Ltd.,
c/o CKLB International Management Ltd., P.O.
Box 80, Felix House, 24 Dr. Joseph Riviere
Street, Port Louis 11602, Mauritius; and

Amari Nickel Holdings Zimbabwe Ltd.,
c/o CKLB International Management Ltd., P.O.
Box 80, Felix House, 24 Dr. Joseph Riviere
Street, Port Louis 11602, Mauritius,

        Plaintiffs,

            v.

Zimbabwe Mining Development Corporation,
90 Mutare Road, Msasa, Harare, Zimbabwe;

The Chief Mining Commissioner, Ministry of
Mines of Zimbabwe,
6th Floor, ZIMRE Centre, Cnr. Leopold Takawira
Street/Kwame Nkrumah Avenue, Private Bag
7709, Causeway, Harare, Zimbabwe;

and the Republic of Zimbabwe,
c/o Head of the Ministry of Foreign Affairs,
Ministry of Foreign Affairs, P.O. Box 4240,
Munhumutapa Building, Cnr. Samora Machel
Avenue/Sam Nujoma Street, Harare, Zimbabwe

        Defendants.

Civil Action No. 1-22-cv-0058-CRC

1

I, JOHN PETER SANGWA, declare under the penalty of perjury under the laws of the United States of America as follows:

1.    I am an Advocate of the Superior Courts for Zambia and founding partner in the Firm of Simeza, Sangwa & Associates in Zambia.

2.    I hold a Bachelor of Laws degree (LLB) and a Master of Laws degree (LLM) from the University of Zambia. I was admitted to the Zambian Bar in 1990. I also hold a Diploma in Trial Advocacy from the National Institute of Trial Advocacy, Southern California Reginal Programme, Los Angeles.

3.    In 1994, my partner and I established the Firm of Simeza, Sangwa & Associates. Between 1990 to 1994, I served as Assistant Lecturer at the University of Zambia, School of Law. From 1994, until 2010, when I resigned to concentrate on my work with the Firm, I served as a full-time lecturer, teaching Constitutional Law and Administrative Law.

4.    In recognition my loyalty, integrity, ability and contribution to the law and the legal profession in Zambia, on 2 May 2013, by Letters Patent, the President of the Republic of Zambia thought it fit to constitute and appoint me to be State Counsel (SC).

5.    I have taken the liberty to refer to the Zimbabwe Mining Development Corporation and the Chief Mining Officer of the Republic of Zimbabwe as the "Judgment Debtors", while Amaplat Mauritius Limited and Amari Nickel Holdings Zimbabwe Limited are referred to as the "Judgment Creditors", unless the context dictates otherwise.

6.    I have been asked by Steptoe & Johnson LLP., who represent the Judgment Creditors to provide a declaration regarding the factual circumstances surrounding the service of the Notice of Registration of the ICC Arbitration Award in 2019, (hereinafter referred to as the "Notice") on the Judgment Debtors.

2

7.    My Firm represented and continue to represent the Judgment Creditors in a number of proceedings in the Zambian courts related to their arbitration with the Judgment Debtors. I am the lawyer in the firm that has been in charge of these cases and as such, I am familiar both with the Zambian proceedings and with the arbitration proceedings to which they related.

8.    By way of background, the Judgment Creditors initiated arbitration against the Judgment Debtors before the International Chamber of Commerce's International Court of Arbitration in Paris, which issued a Ruling directing that the arbitration be seated in Zambia.

9.    In connection with that arbitration, the Judgment Creditors and Judgment Debtors signed Terms of Reference under the ICC's Rules, which unequivocally provided that the Arbitrators would have the power to rule on the Judgment Debtors' jurisdictional defences. A true and correct copy of the Terms of Reference is attached hereto as **Exhibit 1**.

10.   It was the Judgment Debtors rather than the Judgment Creditors who first availed themselves of the Zambian Courts by filing proceedings in the Zambian High Court. In October 2012, the Judgment Debtors filed Cause 2012/HP/1213, in the High Court, seeking to enjoin the arbitration.

11.   The Judgment Debtors initially obtained an *ex parte* temporary restraining order, which the Court eventually discharged after *inter-partes* hearing. One of the reasons for discharging the injunction was that, material facts were withheld from the Court at the time of seeking the *ex-parte* injunction A true and correct copy of the restraining order is attached hereto as **Exhibit 2**, and a true and correct copy of the later ruling vacating it is attached hereto as **Exhibit 3**.

12.    The Arbitral Tribunal proceeded with the arbitration and delivered its Final Award in
       January 2014.[1]

13.    A few days later, the Judgment Debtors again made an application to the Zambian
       High Court in Cause No. 2014/HP/ARB/ 002, to set aside the Final Award. Again,
       they made an *ex parte* application, which briefly led to an *ex parte* order staying
       execution of the award. Thereafter the Judgment Creditors moved to dismiss the
       proceedings in the ground that they were improperly commenced, and the action was
       withdrawn without prejudice, thereby terminating the *ex parte* order staying execution
       of the award.

14.    The Judgment Debtors then commenced a third action under Cause No.
       2014/HP/ARB/ 011, in May 2014 to set aside the award.

15.    Between 2014 and 2018, there was litigation all the way up to the Supreme Court of
       Zambia regarding whether Causes 2014/HP/ARB/011 and 2012/HP/1213 should be
       consolidated. Judgment Creditors opposed the consolidation and ultimately prevailed
       in the Supreme Court.

16.    The Judgment Creditors then applied to dismiss Cause No. 2012/HP/1213 for failure
       to disclose a reasonable cause of action. The High Court granted this application and
       dismissed the action on 25 January 2019. The Judgment Debtors appealed, and that
       appeal was eventually dismissed in August 2021. No further appeal is currently
       pending.

17.    Similarly, the Judgment Creditors applied to dismiss Cause No. 2014/HP/ARB/011
       on the ground that it was not commenced within the three-month limitation period for
       an application to set aside an arbitral award. The Court granted that application on 26

---

[1] Judgment Debtors contended that this was a violation of the temporary restraining order and
moved to initiate contempt proceedings, but the Court's later finding that the *ex parte* order
was issued without jurisdiction (and thus void) mooted this application.

April 2019, and dismissed the action. While a notice of appeal has been filed, the Judgment Debtors have taken no steps to prosecute their appeal.

18.   With no pending proceedings in the High Court seeking to enjoin enforcement of the Award, on 19 July 2019, the Judgment Creditors moved the High Court to register the arbitration award as a judgment. The application was heard *ex parte*, consistent with the usual procedure for registering arbitration awards in Zambia.

19.   On 12 August 2019, the Registrar of the High Court signed an Order registering the Final Award (hereinafter referred to as the "Order") thereby giving the Judgment Creditors the right to enforce the Final Award dated 12 January 2014, in the same manner as a judgment or order of the High Court for Zambia. A true and correct copy of the Order registering the Final Award is attached hereto as **Exhibit 4.**

20.   The Final Award was registered in the Register of Arbitration Awards in the High Court for Zambia at the Commercial Registry at Lusaka on 12 August 2019, and on 19 August 2019, the Notice as required by the Rules, was filed with the Court. A true and correct copy of the Notice is attached hereto as **Exhibit 5.**

21.   According to the Order the Judgment Debtors had the right to apply to set aside the Order of 12 August 2014, within 30 days from the date of service. The Award was, therefore, not open to enforcement in Zambia until after the expiration of the 30 days from the date of service of the Order.

22.   With the Order signed, on 20 August 2019, my Firm proceeded to serve the Order and the Notice on the Judgment Debtors through their Advocates Messrs Ranchhod Chungu – Advocates, who have been representing the Judgment Debtors throughout the proceedings in Zambia, under cover of the letter dated 19 August 2019. According to the said letter Messrs Ranchhod Chungu – Advocates were required to acknowledge receipt of the Order and Notice by signing a copy of the letter of 19 August 2019,

which they did by stamping and signing a copy of the letter. A true and correct copy of the letter dated 19 August 2019, signed, and stamped by Messrs Ranchhod Chungu – Advocates is attached hereto as **Exhibit 6**.

23.     Before serving the Order and Notice under cover of the letter of 19 August 2019, on the Judgment Debtors through the Advocates, specifically, my Associate, Leah Musenge contacted a lawyer in the firm of Ranchhod Chungu - Advocates by the name of Ms Dinah Nundwe who had conduct of the matters on behalf of the Judgment Debtors to confirm whether her firm had instructions to receive the Order and Notice on behalf of their clients. Ms Nundwe confirmed that her Firm had instructions to accept the service of the Order and the Notice.

24.     It was only after receiving the confirmation from Ms Nundwe, did my Firm send the letter of 19 August 2019, accompanied with the Notice and Order. With the confirmation from Messrs Ranchhod Chungu - Advocates that they had instructions to receive the Order and Notice on behalf of the Judgment Debtors, no application for leave to serve outside the jurisdiction was necessary. The service occurred within the jurisdiction.

25.     Service on a party's Advocates is a recognised mode of service of Court documents on a party to the High Court proceedings in Zambia. This is provided for under Order 10, rule 5 of the High Court Rules, which reads: "Personal service of the writ on the defendant shall not be required where the defendant's advocate undertakes in writing to accept service on behalf of the defendant."

26.     Furthermore, under Zambian law, where service of the Court documents has not been effected according to the Court rules, and therefore irregular, the right course of action is not to ignore the service of the documents but to move the Court to set aside the service. No such application has been made by the Judgment Debtors.

27.   No steps have been taken by the Judgment Creditors to vacate or set aside the registration of the Final Award. Furthermore, Messrs Ranchhod Chungu – Advocates have not returned the Order or the Notice on the premise that they had misrepresented that they had instructions to receive these documents on behalf of the Judgment Debtors or for any other reason.

28.   Under Zambian law, service is effective regardless of whether an affidavit of service has been filed with the Court. It is only when a judgment creditor wishes to issue a writ of execution against a judgment debtor that the judgment creditor must present an affidavit of service to establish that the Order and Notice were served the Notice.

29.   Before the writ of execution can issue against the assets of the Judgment Debtors in Zambia, an affidavit of service will have to be filed with the Court first to prove that the Order and Notice were served on the Judgment Debtors. However, because Judgment Creditors have not identified any assets of the Judgment Debtors in Zambia against which they could issue a writ of execution, no affidavit of service has been filed with the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ---- 20th ---- September 2022, at ---------- Lusaka ----------, Zambia.

---------------------------------------
JOHN PETER SANGWA, SC

# EXHIBIT 1

*Exhibit 1*



INTERNATIONAL | INTERNATIONAL | LEADING DISPUTE
COURT OF | CENTRE | RESOLUTION
ARBITRATION* | FOR ADR | WORLDWIDE

# TERMS OF REFERENCE

**INTERNATIONAL CHAMBER OF COMMERCE (ICC)**
**INTERNATIONAL COURT OF ARBITRATION**

33-43 avenue du Président Wilson, 75116 Paris, France
**T** +33 (0)1 49 53 29 05  **F** +33 (0)1 49 53 29 33
**E** arb@iccwbo.org   www.iccarbitration.org



# ICC INTERNATIONAL COURT OF ARBITRATION

## CASE No. 17720/ARP/MD/TO

### 1. AMAPLAT MAURITIUS LTD

(Mauritius)

### 2. AMARI NICKEL HOLDINGS ZIMBABWE LTD

(Mauritius)

**vs/**

### 1. ZIMBABWE MINING DEVELOPMENT CORPORATION

(Zimbabwe)

### 2. THE CHIEF MINING COMMISSIONER, MINISTRY OF MINES, ZIMBABWE

(Zimbabwe)

This document is a certified true copy of the original of the Terms of Reference established in conformity with the Rules of Arbitration of the ICC International Court of Arbitration.

IN THE MATTER OF AN INTERNATIONAL CHAMBER OF COMMERCE
ARBITRATION CASE NO. 17720/ARP

BETWEEN:

      1.     **AMAPLAT MAURITIUS LIMITED**
      2.     **AMARI NICKEL HOLDINGS ZIMBABWE LIMITED**

                                                          **Claimants**

                              – and –

      1.     **ZIMBABWE MINING DEVELOPMENT CORPORATION**
      2.     **THE CHIEF MINING COMMISSIONER, MINISTRY OF MINES, ZIMBABWE**

                                                          **Respondents**

### TERMS OF REFERENCE

1.   **PARTIES**

1.1   The First Claimant is Amaplat Mauritius Limited (**"Amaplat"**), a company incorporated under the laws of Mauritius. The Second Claimant is Amari Nickel Holdings Zimbabwe Limited (**"Amari"**), also a company incorporated under the laws of Mauritius. Amari is a wholly-owned subsidiary of Amari Resources International Limited, an international resource investment company focused on exploration and mining in sub-Saharan Africa. The Claimants have their principal place of business at Amari, 3rd Floor, Melrose Boulevard, Melrose Arch, Johannesburg, South Africa.

1.2   The First Respondent is Zimbabwe Mining Development Corporation (**"ZMDC"**), a body corporate established under the Zimbabwe Mining Development Corporation Act (Cap. 21:08) of the Republic of Zimbabwe (**"the Act"**) having its address at Ground Floor, MMCZ Building, 90 Mutare Road, Msasa, Harare, Zimbabwe. ZMDC's business includes investing in mining and mining development on behalf of the Government of Zimbabwe.

1.3   The Second Respondent is The Chief Mining Commissioner, Ministry of Mines, Zimbabwe, having his address at 7th Floor, Zimre Centre, Private Bag CY 7709, Causeway, Harare, Zimbabwe.

2.   **ADDRESSES FOR PURPOSES OF NOTIFICATION**

2.1   The addresses of the parties to which notifications or communications arising in the course of the arbitration may validly be made are;

      (1)   **The Claimants:** To their lawyers, Advocate Neil Lazarus SC and Advocate Courtenay Wright, Group One, Sandown Chambers, Sandown Village, Maude Street

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

CERTIFIED TRUE COPY OF THE ORIGINAL
PARIS, 20 March 2014

**Andrea CARLEVARIS**
Secretary General

2

corner Gwen Lane, Sandown, South Africa. Telephone +27 11 290 4000; fax +27 11 783 6331/4; email neill@blts.co.za; courtenay.wright@gmail.com; *and* David H Botha, Du Plessis & Kruger Attorneys (Ref: P J Du Plessis/ss), 4th Floor National Bank Building, 84 Market Street corner Simmonds, PO Box 8013 Johannesburg 2000, South Africa. Telephone +27 11 838 1214; fax +27 11 836 8740; email pdp@bdk.co.za.

(2)     **The Respondents:** To their lawyers, Mutamangira & Associates, 2nd Floor Travel Plaza, Cnr Mazoe and J Chinamano, Harare, Zimbabwe. Telephone +263 799249/702436; fax +263 799249; email jacob@mutamangira.co.zw.

2.2     Any change to the Claimants' principal place of business or the Respondents' addresses or the contact details of their respective lawyers listed in this section must be immediately notified to all the parties, each member of the Arbitral Tribunal ("**the Tribunal**") and the Secretariat of the International Court of Arbitration of the ICC ("**the Secretariat**"). Otherwise, any communication or notification sent to the addresses specified in this section will be regarded as valid.

2.3     All written communications or notifications to or by the parties (including pleadings, submissions, witness statements and exhibits) shall be valid if sent by email to the parties' representatives to the email addresses shown in this section (with PDF or Word attachments, unless the documents in question are too big to be attached to the email).

2.4     Apart from short or routine correspondence, which may be set out in the body of an email, letters should be attached as a PDF to the email.

2.5     With the exception of correspondence from or to the Tribunal or between the representatives of the parties, confirmation paper copies of documents (including pleadings, submissions, witness statements and exhibits) sent by email should, unless requested otherwise by the parties or the Tribunal, be provided and sent by courier or post to the other party and the Tribunal.

2.6     Notifications or communications shall be deemed to be received on a day if received by email before 18.00 hours local time on that day, provided this is a business day in the place of receipt.



3

2.7     A copy of any communication by any party to the Tribunal shall be sent simultaneously and by the same means to the other parties and to the Secretariat at ICC International Court of Arbitration (**"the Court"**), 38 Cours Albert 1ᵉʳ, 75008 Paris, France. Telephone +33 1 49 53 28 36; fax +33 1 49 53 57 78; email: ica4@iccwbo.org.

3.     **RELEVANT BACKGROUND**

3.1     ZMDC hold 45% of the shares in Zimari Nickel (Pvt) Ltd (**"Zimari Nickel"**), a joint venture company incorporated by those parties to prospect for nickel and develop a mine pursuant to a Memorandum of Understanding between Amari Holdings Ltd (**"Amari BVI"**), a company incorporated in the British Virgin Islands, and ZMDC dated 22 November 2007 (**"the Nickel MOU"**). According to the Claimants, Amari holds 55% of the shares in Zimari Nickel but this is disputed by the Respondents.

3.2     By a Deed of Novation dated 6 June 2008 between Amari BVI, Amari and ZMDC, with effect from 1 May 2008 Amari BVI was released and discharged from its rights and obligations pursuant to the Nickel MOU upon Amari's undertaking to Amari BVI and ZMDC to perform Amari BVI's obligations pursuant to the Nickel MOU and be bound by its terms and conditions as if Amari had been the original party to the Nickel MOU in place of Amari BVI. By clause 3.1 of the Deed of Novation, Amari BVI and ZMDC acknowledged that Amari would be solely entitled to the entire rights and benefits under the Nickel MOU as if Amari were the original party to it in place of Amari BVI.

3.3     ZMDC holds 50% of the shares in Zimari Platinum (Pvt) Ltd (**"Zimari Platinum"**), a joint venture company incorporated by those parties to prospect for various metals and develop a mine pursuant to a Memorandum of Understanding between Amaplat and ZMDC dated 25 July 2008 (**"the Platinum MOU"**). According to the Claimants, Amaplat holds 50% of the shares in Zimari Platinum but this is disputed by the Respondents.

3.4     The Nickel and the Platinum MOUs (together **"the MOUs"**) were concluded by Mr M J Nunn on behalf of the Amari BVI's and Amaplat respectively and by Mr Dominic Mubayiwa, ZMDC's General Manager, on ZMDC's behalf.

3.5     By a letter dated 10 November 2010 from ZMDC to the Claimants, ZMDC *inter alia* noted that there was "*a corrupt relationship which unduly influenced the signing of the* [Platinum MOU]"; stated that there was "*no Joint Venture Agreement regulating our relationship*"; and concluded that:



4

> *"As a result of the above, we advise you that your conduct is unacceptable, improper and directly undermines the basic tenets of corporate governance principles which we so cherish and adhere to. It contravenes the Zimbabwean laws and we reserve the right to report you for prosecution. Your conduct goes to the core of our relationship and as such we are no longer prepared to engage yourselves for negotiations to the next stage of a Joint Venture Agreement. In fact our relationship terminated for both platinum and nickel properties."*

3.6    By a letter dated 22 November 2010 in reply, the Claimants *inter alia* disputed ZMDC's allegations and its entitlement to terminate the MOUs and maintained that those agreements were legally binding and of full force and effect.

3.7    By letters dated 14 January 2011, ZMDC reiterated its position that the MOUs had been *"cancelled"*.

## 4.    SUMMARY OF THE PARTIES' RESPECTIVE CLAIMS AND RELIEF SOUGHT

4.1    The purpose of the summaries set out below is to fulfil the requirements of Article 18(1)(c) of the ICC Rules of Arbitration in force as from 1 January 1998 **("the Rules")**, without prejudice to any further allegations, arguments or contentions contained in the pleadings or submissions filed to date or to be filed.

4.2    No factual or legal statement or omission in the summary of either party is to be interpreted as a waiver of any issue of fact or law. By signing these Terms of Reference, neither party subscribes to, or acquiesces in, the summary of the other party's position set out below.

### The Claimants

4.3    The Claimants' contentions appear from the Request for Arbitration and attached Statement of Claim dated 31 January 2011 **("the Request")**; the Notice of Amendment to the Statement of Claim dated 12 May 2011; the Amended Statement of Claim dated 25 May 2011; the Replication **("the Reply")** and Notice of Amendment to the Statement of Claim each dated 29 August 2011; and the Notice of Amendment to the Statement of Claim dated 9 November 2011.

4.4    The Claimants contend that:

(1)    The Tribunal has jurisdiction to hear and determine the dispute.



(2)     The MOUs remain valid and binding.[1]

(3)     The Respondents have waived any right that they might otherwise have had or else are estopped from contending that the MOUs are not valid and binding as, with knowledge of the purported invalidities on which they now rely, they gave effect to and implemented the MOUs in various respects.[2]

(4)     Contrary to the Respondents' allegations, the necessary board and shareholders approval was secured in respect of the Nickel MOU. Alternatively, ZMDC is estopped from relying on any failure to secure such approval as a result of its failure to use its best endeavours to procure it;[3] and the Respondents have waived any right that they may otherwise have had or else are estopped from contending that such approval was not obtained.[4] Also, the Deed of Novation constituted an express or implied renewal of the Nickel MOU such that a new agreement on identical terms to the Nickel MOU (as supplemented by the Deed of Novation) came into existence.[5]

(5)     Contrary to the Respondents' allegations:

          (a)     the Minister's approval in terms of the Act was not a term of the MOUs and the absence of such approval does not have the legal effect for which the Respondents contend;

          (b)     such approval was in fact obtained;

          (c)     the Respondents are estopped from contending that such approval was not obtained.[6]

---

[1] Reply §15.

[2] *Ibid.*, §4, 5 and 16.

[3] *Ibid.*, §8.

[4] *Ibid.*, §9 and 10.

[5] *Ibid.*, §11.

[6] *Ibid.*, §12 to 14.

6

(6)     Contrary to the Respondents' allegations, there was no corrupt relationship between ZMDC's General Manager and the Claimants entitling ZMDC to repudiate the MOUs or at all.[7]

(7)     In the event that the Amari is not a shareholder in Zimari Nickel and/or that Amaplat is not a shareholder in Zimari Platinum or the MOUs are for any reason invalid or unenforceable, ZMDC has been unjustly enriched at Amaplat's expense in an amount of US$574,000,000 alternatively US$287,500,000 and at Amari's expense in an amount of US$55,000,000 alternatively US$27.500,000 or such other amounts as the Tribunal may determine.[8]

4.5     In the above circumstances, the Claimants seek:

(1)     a declaration that the MOUs are valid and binding;

(2)     a declaration that ZMDC is bound to continue to give effect to and implement the MOUs;[9]

(3)     damages in the sums of US$287,500,000 and US$27,500,000, in the event that ZMDC fails to give effect to or implement the MOUs;[10]

(4)     restitution to the Claimants of the sums referred to in paragraph 4.4(7) above;[11]

(5)     interest at the rate of 15.5% from the date of any award until the date of payment;

(6)     an order that the Respondents pay the Claimants' legal and other costs of the arbitration.

---

[7] *Ibid.,* §19 and 20.

[8] Notice of Amendment to the Statement of Claim dated 9 November 2011 §12.

[9] *Ibid.,* §13.

[10] Notice of Amendment to the Statement of Claim dated 12 May 2011; the Amended Statement of Claim §26 to 28; Notice of Amendment to the Statement of Claim dated 29 August 2011.

[11] Notice of Amendment to the Statement of Claim dated 9 November 2011 §14.


COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
NATIONAL CHAMBER OF COMMERCE

**The Respondents**

4.6     The Respondents' contentions appear from the *"First and Second Respondent's* [sic] *Statement of Opposition* dated March 2011 **("the Answer")** sent to the Secretariat by email on 22 March 2011 (under cover of a letter 17 March 2011).

4.7     The Respondents contend that:

     (1)     The Tribunal lacks jurisdiction to determine the present dispute because:

          (a)     the Nickel MOU lapsed on 31 December 2007 pursuant to Article 9 thereof and became of no force or effect; and the arbitration provisions in Article 11 thereof are an integral part of the Nickel MOU which also lapsed and consequently became of no force or effect.[12]

          (b)     The MOUs are invalid and tainted with illegality under the laws of Zimbabwe for non-compliance with the mandatory provisions of the Act which required that any agreement entered into by ZMDC must be approved by the Minister of Mines and Mining Development **("the Minister")**. To give effect to the arbitration clause of an agreement tainted with illegality is to grant specific performance of the illegal agreement and it is contrary to the public policy of the Republic of Zimbabwe effectively to grant such specific performance.[13]

     The remainder of the Respondents' contentions are without prejudice to their challenge to the Tribunal's jurisdiction.

     (2)     A condition precedent to the Nickel MOU was not fulfilled since the necessary board and shareholders' written approval on or before 31 December 2007 was not secured for it. Consequently, the Effective Date (as defined therein) of the Nickel MOU never arose and the Nickel MOU never became operative or else lapsed after that date.[14]

---

[12] Answer §9.

[13] *Ibid.,* §10.

[14] *Ibid.,* §11 to 16.

8

(3)     The MOUs were repudiated by ZMDC on the grounds that they were procured by reason of a corrupt relationship between its General Manager and the Claimants. This position is not saved in respect of the Nickel MOU by the Deed of Novation.[15]

(4)     Since ZMDC failed to obtain the Minister's approval for its acquisition of shares in Zimari Nickel and Zimari Platinum as required by paragraphs 20 and 21 of the Schedule to the Act:

    (a)     ZMDC lacked the capacity to enter into the MOUs, which are accordingly null and void; and

    (b)     the MOUs are tainted with illegality and the Claimants cannot seek specific performance thereof.[16]

(5)     No joint venture agreement as contemplated by the MOUs was ever entered into.[17]

(6)     The Claimants are not shareholders in Zimari Nickel and Zimari Platinum.[18]

(7)     There is no basis for and the Claimants are not entitled to restitution of the sums claimed or to any sums on the ground of unjust enrichment or otherwise.

4.8     In the above circumstances, the Respondents seek[19]:

(1)     A declaration that the Tribunal lacks jurisdiction in respect of the dispute.

(2)     Alternatively, if the Tribunal has jurisdiction, the dismissal of the Claimants' claims.

(3)     An order that the Claimants shall pay their legal and other costs.

---

[15] *Ibid.*, §17 to 24 and 35.

[16] *Ibid.*, §25 to 28.

[17] *Ibid.*, §29 to 31.

[18] *Ibid.*, §32 and 33.

[19] *Ibid.*, §50.

COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
CHAMBRE DE COMMERCE INTERNATIONALE
INTERNATIONAL CHAMBER OF COMMERCE

9

## 5.    THE ARBITRATION CLAUSES

5.    Article 11 of the Nickel MOU and Article 9 of the Platinum MOU provide that:

> "*In the event of a dispute or disputes arising, such disputes, controversies or differences between the Parties, which may arise out of or in relation to the MOU, and which cannot be settled by the Board, the parties shall first try to resolve it amicably through negotiation. In the event that no settlement can be reached through negotiation in reasonable time, any Party may submit the dispute to the ICC International Court of Arbitration in Paris for arbitration in accordance with the procedural rules of arbitration of the said Arbitration Court in effect at the time of applying arbitration, the award of which shall be final and binding upon the Parties. The language in Arbitration shall be in English.*"

## 6.    ISSUES TO BE DETERMINED

6.1    The issues to be determined shall be those resulting from the parties' submissions, statements and pleadings which are relevant to the determination of the parties' respective claims and defences and any further questions of fact or law which the Tribunal, in its own discretion, may deem necessary or appropriate to decide upon, after hearing the parties, for the purpose of resolving the present dispute.

6.2    The issues which may have to be determined (but not necessarily all of these and not necessarily in the following order) are:

(1)    Does the Tribunal have jurisdiction to hear and determine the dispute?

(2)    Are the MOUs valid and binding? In that regard:

(a)    Did the Nickel MOU ever become operative and, if so, did it lapse after 31 December 2007 on the grounds that the necessary board and shareholder approvals was not secured in respect of it?

(b)    If any necessary board and shareholder approval was not secured in respect of the Nickel MOU:

(i)    is ZMDC estopped from relying on any failure to secure such approval?

(ii)    have the Respondents waived any right they may otherwise have had or else are estopped from contending that such approval was not obtained?



10

(iii)    is the effect of the Deed of Novation to bring into existence a new agreement on identical terms to the Nickel MOU (as supplemented by the Deed of Novation?

(c)    was the Minister's approval in terms of the Act in fact obtained in respect of the MOU?

(d)    if not, are the Respondents estopped from contending that such approval was not obtained?

(e)    Was ZMDC entitled to terminate the MOUs on the grounds that they were procured by reason of a corrupt relationship between its General Manager and the Claimants?

(f)    What is the effect, if any, of ZMDC's failure to obtain the Minister'a approval for its acquisition of shares in Zimari Nickel and Zimari Platinum as required by paragraphs 20 and 21 of the Schedule to the Act?

(g)    Was no joint venture agreement as contemplated by the MOUs ever entered into; and, if that is the case, what are the consequences in the context of the present dispute?

(h)    Have the Respondents waived any right that they might otherwise have had or else are they estopped from contending that the MOUs are not valid and binding as, with knowledge of the purported invalidities on which they now rely, they gave effect to and implemented the MOUs in various respects?

(3)    Are the Claimants shareholders in Zimari Nickel and Zimari Platinum?

(4)    If the MOUs are valid and binding, are the Claimants entitled to a declaration to that effect?

(5)    If the MOUs are valid and binding, are the Claimants entitled to a declaration that ZMDC is bound to continue to give effect to and implement the MOUs?



11

(6)    Are the Claimants entitled to damages in the event that ZMDC fails to give effect to or implement the MOUs and, if so, in what amount?

(7)    In the event that the Amari is not a shareholder in Zimari Nickel and/or that Amaplat is not a shareholder in Zimari Platinum or the MOUs are for any reason invalid or unenforceable, has ZMDC has been unjustly enriched at the Claimants' expense and, if so, is ZMDC liable to make restitution to the Claimants and, if so, in what amounts?

(8)    If the MOUs are not valid and binding, are the Respondents entitled to have the Claimants' claim dismissed?

(9)    What is the incidence and amount of any interest which should be awarded to the Claimants?

(10)    What is the incidence and amount of legal and other costs?

## 7.    **THE ARBITRATION**

7.1    The arbitration clauses did not specify the number of arbitrators.

7.2    By paragraph 9 of the Request, the Claimants requested the appointment of a Sole Arbitrator.

7.3    By a letter dated 10 March 2011 from Mutamangira & Associates, the Respondents stated that they objected to the appointment of a Sole Arbitrator and requested the appointment of three arbitrators.

7.4    The parties were unable to agree on the number of arbitrators.

7.5    The parties were also unable to agree on the place of the arbitration.

7.6    On 12 May 2011, the Court decided *inter alia*:

(1)    pursuant to Article 8(2) of the Rules that the matter would be submitted to three arbitrators;



12

(2)    pursuant to Article 14(1) of the Rules to fix Lusaka, Zambia, as the place of the arbitration.

7.7    On 27 September 2011, the Secretary General of the Court, pursuant to Article 9(2) of the Rules, confirmed Judge Meyer Joffe as co-arbitrator upon the joint nomination of the Claimants and confirmed Mr James Prince Mutizwa as co-arbitrator upon the joint nomination of the Respondents.

7.8    On 27 October 2011, pursuant to Article 9(3) of the Rules the Court appointed Mr Stuart Isaacs QC then of 3-4 South Square, Gray's Inn, London WC1R 5HP and now of Berwin, Leighton Paisner, Adelaide House, London Bridge, London EC4R 9HA as Chairman of the Tribunal, upon the proposal of the United Kingdom National Committee.

7.9    In accordance with the Court's decision taken on 12 May 2011 pursuant to Article 14(1) of the Rules, the place of the arbitration is Lusaka, Zambia.

7.10    The applicable procedural rules which govern the proceedings before the Tribunal shall be those resulting from the Rules. Where the Rules are silent, the applicable procedural rules shall be such rules as may be agreed upon from time to time by and between the Tribunal and the parties; and, failing such agreement, as may be determined by the Tribunal.

7.11    In accordance with the arbitration clauses, the language of the arbitration is English.

7.12    In accordance with Article 12.7 of the Nickel MOU and Article 10.8 of the Platinum MOU, the present dispute is to be determined under the laws of Zimbabwe.

7.13    If either party fails within the prescribed time to present its case or comply with any direction of the Tribunal at any stage of the proceedings, the Tribunal may, of its own volition or at the other party's request, after reasonable notice to the parties, proceed with the arbitration and make an award.

## 8.    ACKNOWLEDGMENT OF THE PARTIES

8.1    By signing these Terms of Reference, the parties acknowledge that they agree to submit to this arbitration and expressly waive any procedural objections they may have with respect to known events, including the appointment of the Tribunal.



13

8.2    The Tribunal's role and function includes (with the parties' agreement) assisting the parties to resolve their dispute at any stage of the proceedings and by any means, including a negotiated settlement. If the parties request such assistance from the Tribunal, it will be on the basis that the parties expressly agree that the provision of such assistance shall not disqualify the Tribunal from continuing to serve. Such express agreement shall be considered to be an effective waiver of any potential conflict of interest that may arise from the Tribunal's participation in such process or from information which the Tribunal may learn in the process. If the assistance by the Tribunal does not lead to final settlement of the dispute, the parties remain bound by their waiver. However, notwithstanding such agreement, the Tribunal shall resign if, as a consequence of its involvement in the settlement process, it develops doubts as to its ability to remain impartial or independent in the future course of the arbitration proceedings.

8.3    A party shall inform the Tribunal, the ICC and the other parties about any direct or indirect relationship between the party (or a company in the same group as the party or a company in which a party has a material interest) and the Tribunal. The party shall provide this information on its own initiative as soon as the party becomes aware of such relationship.

## 9.    **CONFIDENTIALITY**

9.    Unless disclosure is required by (1) statute, ordinance or regulation or (2) to protect or pursue a legal right of the parties, the parties and the Tribunal undertake as a general principle to preserve the private and confidential nature of this arbitration and, in particular, all the documents produced by the other party in the proceedings not otherwise in the public domain.

## 10.    **AGREEMENT TO TERMS OF REFERENCE**

10.1    The Terms of Reference are signed in seven originals on the dates as shown below by the legal representatives of the parties hereto, who hereby represent that they have the authority to execute this document on behalf of their respective party.

10.2    Without prejudice to the provisions of Articles 18(3) and 24(1) of the Rules, the date of the Chairman's signature on the Terms of Reference shall be for all purposes the date of the Terms of Reference.



14

10.3    Each original of the Terms of Reference forms an original arbitration agreement for the purposes of Articles II and IV(1) of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

**Signed and dated in Johannesburg, Republic of South Africa on 28 November 2011**

**David H Botha, Du Plessis & Kruger for and on behalf of the Claimants**

**Mutamangira & Associates for and on behalf of the Respondents**

**Judge Meyer Joffe, co-arbitrator**

**James Prince Mutizwa, co-arbitrator**

**Stuart Isaacs QC, chairman**

CHAMBRE DE COMMERCE INTERNATIONALE
COUR INTERNATIONALE D'ARBITRAGE
INTERNATIONAL COURT OF ARBITRATION
INTERNATIONAL CHAMBER OF COMMERCE

CERTIFIED TRUE COPY OF THE ORIGINAL
PARIS, 20 March 2014

**Andrea CARLEVARIS**
Secretary General
ICC International Court of Arbitration

# EXHIBIT 2

*"Exhibit 2"*

IN THE HIGH COURT FOR ZAMBIA                                    2012/HPC/ 1213
AT THE PRINCIPAL REGISTRY
HELD AT LUSAKA
(Civil Jurisdiction)
In the matter of :      Section 10 & 11 of the Arbitration Act, No. 19 of 2000
and
In the matter of:       An Application by Zimbabwe Mining Development Corporation
                        for the removal of Stuart Isaacs, SC and Mr. Justice Meyer Joffe
                        as Arbitrators

Between

Zimbabwe Mining Development Corporation              Applicant
and
Amaplat Mauritius Limited                            1st Respondent
Amari Nickel Holdings Zimbabwe Limited               2nd Respondent
Stuart Isaacs, SC                                    3rd Respondent
Mr. Justice Meyer Joffe                              4th Respondent
The Chief Mining Officer of the
Republic of Zimbabwe (N.O)                           5th Respondent

---

EX PARTE ORDER OF INTERIM INJUNCTION PURSUANT TO ORDER XXVII OF
THE RULES OF THE HIGH COURT, CHAPTER 27 OF THE LAWS OF ZAMBIA AS
READ WITH ORDER 29 OF THE RULES OF THE SUPREME COURT PRACTICE,
1999 EDITION

---

UPON READING the Affidavit of JACOB MUTEVEDZI.

AND UPON HEARING Counsel for the Applicant.

AND UPON the Applicant by its Counsel undertaking to abide by any Order that the
Court may make as to damages in case the Court shall hereafter be of the opinion that
the Applicant shall have sustained any loss by reason of this Order which the
Applicant's ought to pay:

IT IS HEREBY ORDERED AND DIRECTED THAT the 3rd and 4th Respondents whether by themselves, servants or agents, howsoever otherwise be restrained, and an injunction is hereby granted restraining them from acting as Arbitrators in the dispute between the Applicant and the 1st and 2nd Respondents AND from continuing the said arbitral proceedings until further Order if at all

AND that the Inter Parte hearing of this matter will be before the Honorable Mr/Mrs. Justice F.M. Lengalenga on the 18th day of November 2012 at 10 - 00 hours in the before noon.

## PENAL NOTICE

TAKE NOTICE that if you the within named Respondents or your Agents/Servants disobey this injunction Order, you will be liable to imprisonment and/or fine for contempt of Court.

Dated at Lusaka the _____ 18th _____ day of _____ October _____ 2012.


_____
JUDGE


Per: _____

Messrs Ranchhod, Chungu Advocates
Plot 11058, Zimbabwe House
Haile Selasie Avenue
Longacres
P.O Box FW 235
LUSAKA
ADVOCATES FOR THE APPLICANT

# EXHIBIT 3

Exhibit 3

**IN THE HIGH COURT FOR ZAMBIA**                    **2012/HP/1213**
**HOLDEN AT LUSAKA**
(Civil Jurisdiction)

**IN THE MATTER OF:**      SECTION 10 & 11 OF THE ARBITRATION ACT
                          № 19 OF 2000

                          and

**IN THE MATTER OF:**      AN APPLICATION BY ZIMBABWE MINING
                          DEVELOPMENT CORPORATION FOR THE
                          REMOVAL OF STUART ISAACS, SC AND MR
                          JUSTICE MEYER JOFFE AS ARBITRATORS

**BETWEEN:**

>       **ZIMBABWE MINING**                    **Applicant**
>       **DEVELOPMENT CORPORATION**
>
>       **and**
>
>       **AMAPLAT MAURITIUS LIMITED**      **1st Respondent**
>
>       **AMARI NICKEL HOLDINGS**          **2nd Respondent**
>       **ZIMBABWE LIMITED**
>
>       **STUART ISAACS, SC**              **3rd Respondent**
>
>       **MR JUSTICE MEYER JOFFE**         **4th Respondent**
>
>       **THE CHIEF MINING OFFICER OF**    **5th Respondent**
>       **THE REPUBLIC OF ZIMBABWE**

**Coram:**   Honourable Lady Justice F. M. Lengalenga in chambers at
            Lusaka.

R2

**For the applicant**    :    Mr. P. Chungu – Messrs Ranchhod
                               Chungu Advocates

**For the 1st and 2nd**       Mr. A. Dudhia – Messrs Musa Duhia &
**respondents**          :    Company

## R U L I N G

### CASES REFERRED TO:

1. **AMERICAN CYNAMID COMPANY v ETHICON LTD (1975) AC 396.**
2. **PRESTON v LUCK (1884) 27 CH D 492.**
3. **SHELL & BP (ZAMBIA) LTD v CONIDARIS & OTHERS (1975) ZR 174.**
4. **ZAMBIA STATE INSURANCE CORPORATION v DENNIS MULUKELELA (1990-1992) ZR 18 (SC).**
5. **ZIMCO PROPERTIES LTD v LAPCO (1988-89) ZR 93.**
6. **ALBON (t/a N. A. CARRIAGE COMPANY) v NAZA MOTOR TRADING SDN BHD (2005) 1 ALL ER 351**
7. **HILARY MUKOSA v MICHEAL RONALDSON (1993-94) ZR 26.**
8. **HINA FURNISHING LUSAKA LTD v MWAISENI PROPERTIES LTD (1983) ZR 42.**

This is the applicant's application for an order of interim injunction to restrain the 3rd and 4th respondents from continuing to act as Arbitrators in the dispute between the applicant and the 1st and 2nd respondents and from continuing the arbitral proceedings or at all.  The application which is made pursuant to Order 27 of the Rules of the High Court, Chapter 27 of



the Laws of Zambia as read with Order 29 of the Rules of the Supreme Court Practice, 1999 Edition, is supported by an affidavit sworn by one Jacob Mutevedzi, a Zimbabwean national and Attorney at Law practicing in the firm of Mutamangira and Associates and the applicants appointed legal representative.  He deposed that he had been verily informed by the advocates acting on the applicant's behalf in these proceedings, Messrs Ranchhod Chungu Advocates that there were presently before this court, proceedings to impugn the independence and impartiality of the 2nd and 3rd respondents in relation to the arbitral proceedings aforementioned. He deposed further that the applicant is a body corporate established in terms of the Zimbabwe Mining Development Corporation Act (Chapter 21:08) of the Republic of Zimbabwe **("the Act")** whose business includes, *inter alia,* investing in mining and mining development on behalf of the Government of Zimbabwe.  He further deposed that on or around the 22nd November, 2007, ZMDC, and Amari Holdings Limited **("Amari BV1")** concluded a Memorandum of Understanding for joint prospecting for Nickel and the development of a Nickel mine **("the Nickel MOU").**

Jacob Mutevedzi also deposed that by a Deed of Novation **("the Deed")** dated 6th June, 2008 between Amari BV1, Amari and ZMDC, with effect from 1st May, 2008 Amari BV1 was released and discharged from its rights and obligations pursuant to the Nickel MOU upon Amari's undertaking to Amari BV1 and ZMDC to perform Amari BV1's obligations pursuant to the Nickel MOU and be bound by its terms and conditions as if Amari had been the original party to the Nickel MOU in place of Amari BV1.



R4

He added that by Clause 3.1 of the Deed of Novation, Amari BV1 acknowledged that Amari would be solely entitled to the entire rights and benefits under the Nickel MOU as if Amari were the original party to it in place of Amari BV1.

In paragraph 7 of his affidavit, Jacob Mutevedzi deposed that on or about the 25th July, 2008 ZMDC and Amaplat concluded a Memorandum of Understanding to prospect for platinum and related metals and to develop a mine **("The Platinum MOU").** He deposed further that the Nickel and Platinum MOUs (together **"the MOUs"**) were concluded by Mr. M. J. Nunn **("Nunn")** on behalf of Amari BV1 and Amaplat respectively and by Mr. Dominic Mubaiwa **("Mubaiwa"),** the ZMDC's General Manager, on ZMDC's behalf.

Further in paragraph 9, the deponent herein stated that by a letter dated 10th November, 2010 from ZMDC to the respondents, the ZMDC unequivocally resiled from the MOUs and *inter alia* noted that there was **"a corrupt relationship which unduly influenced the signing of the Platinum MOU,"** stated that there was **"no Joint Venture Agreement regulating our relationship."** Further on in the ZMDC expressed their displeasure at the respondent's conduct which was described as unacceptable, improper and as directly undermining the basic tenets of corporate governance principles and their relationship was declared as terminated for both platinum and nickel properties. A copy of the said letter was annexed and exhibited as **"JM1."**

Jacob Mutevedzi stated that, therefore, in terms of the arbitration clauses of the MOUs, the respondents declared a dispute and referred the matter to the International Court of Arbitration **("the ICA")**. He added that the ICA duly set up an arbitral Tribunal in terms of its Rules of Court **("the Rules")** to hear the matter and he attached and exhibited as **"JM2,"** a copy of the Tribunal's Terms of Reference. He deposed that the Tribunal was constituted as follows:

> **"13.1   Stuart Isaacs QC of the United Kingdom nominated by the United Kingdom ICC National Committee (Chairman);**
>
> **13.2   Judge Meyer Joffe of South Africa and respondent's nominee (co-arbitrator); and**
>
> **13.3   Mr. James Prince Mutizwa of Zimbabwe and applicant's nominee (co-arbitrator)."**

The deponent herein stated further that the arbitral proceedings in issue were commenced on 14th August, 2012 and hearings were actually concluded in Cape Town, South Africa on 14th and 15th August, 2012 when the applicant mounted a challenge against the 3rd and 4th respondents on the basis that they were biased. He deposed in paragraph 13 of the affidavit that the applicant's contention and apprehension with regard to the impartiality of the Arbitrators arose out of the proceedings on 15th

August, 2012. He added that the applicant raised concerns on that issue and wrote to the International Chamber of Commerce International Court of Arbitration to that effect in accordance with arbitration agreement. He further deposed that following the request for the Arbitrators to recuse themselves from continuing to preside over the arbitral proceedings, the International Chamber of Commerce International Court of Arbitration responded to the applicant's request in a ruling dated 27th September, 2012 and denied the request for recusal and he attached and exhibited it as **"JM3."**

Jacob Mutevedzi also deposed that the applicant and the 2nd and 3rd respondents had entered into a validly binding Arbitration Agreement and had, by consent appointed Zambia as the seat of arbitration and he annexed and exhibited as **"JM4"** and **"JM5"** respectively, the Arbitration Agreement and evidence of appointment of Zambia as the seat of arbitration.

He deposed further that on the basis of the agreement/s of the parties, the applicant commenced proceedings to impugn the independence and impartiality of the 2nd and 3rd respondents and seeks their removal from the proceedings. The deponent added that at the last hearing of the proceedings presided over by the 2nd and 3rd respondents and in accordance with the ruling exhibited as **"JM3,"** the hearings are expected to reconvene after a 3rd Arbitrator is appointed. He stated further that should the proceeding be convened and the hearings

conducted, the applicant will be prejudiced as it has mounted a challenge against the 2nd and 3rd respondents in this court and that it is in the interest of justice that they be restrained from continuing to act until the issues in this action are concluded and determined.   Jacob Mutevedzi further stated that he verily believes that the applicant has an arguable claim with high chances of success once the issues are determined and that if the 2nd and 3rd respondents are not restrained, they will convene the hearings and determine the dispute despite the applicant's challenge and that such as event would gravely and adversely affect the applicant's position and interests and rights and occasion damage that cannot be atoned for in damages.


After the 1st and 2nd respondents' affidavit in opposition to application for injunction filed into court on 7th November, 2012 was expunged from the court record on account of containing extraneous matter and, therefore, considered to be scandalous and defective in its content, a further affidavit in opposition was filed into court on 16th November, 2012.  The said affidavit in opposition was sworn by Ian Small Smith, a South African national who deposed that he is a Director of both the 1st and 2nd respondents and that he is also a practicing attorney and consultant at BDK Attorneys, situated at 84 Market Street, Marshall town, Johannesburg.  He added that he has also been the legal advisor to the Board of the 1st and 2nd respondents from time to time and attended all the hearings in the arbitral proceedings between the parties.  He deposed

further that he is duly authorised to represent the 1st and 2nd respondents in these proceedings and he exhibited **"ISS1,"** a copy of the Resolutions which confirm his authority.   Ian Small Smith further deposed that the Nickel MOU and Platinum MOU were the product of fair and honest negotiations which were free of corruption and he added that he had been advised by Counsel that this is not an issue which this court is required to investigate as the same would be determined by the arbitral tribunal.  He also confirmed that the applicant wrote to the 1st and 2nd respondents purporting to resile from the said MOUs and the issue was referred to the International Court of Arbitration **(the "ICA")** which duly set up an arbitral tribunal to hear the dispute and he added that the parties signed the submission to the arbitration and the terms of reference of the arbitration. He deposed that the arbitral tribunal comprised of Judge Meyer Joffe, Mr. James Prince Mutiziwa and Mr. Stuart Isaacs, QC who he described respectively as a distinguished retired South African judge of considerable experience, applicant's appointed arbitrator and a distinguished international Queen's Counsel.

Ian Small Smith stated that the applicant renewed its jurisdictional challenge against the appointed arbitrators as a preliminary point at the arbitration proceedings and the Tribunal ruled that it was not appropriate to determine the jurisdictional challenge as a preliminary point and that it would be determined as part of the final award and he exhibited **"ISS2,"** copies from pages 42 to 43 of the record.  He stated further that under the Rules to which the arbitration was subject, there can be no further

challenge by the applicant until after the award is delivered. The deponent further stated that despite the Rules prohibiting the challenge, the applicant proceeded to commence this action before the High Court for Zambia.

He deposed further that the applicant in this matter is seeking the same reliefs that it had already earlier sought before the ICA and the Tribunal and which reliefs have already been refused by both forums. He also stated that he believes that the applicant is forum shopping as it seeks a lengthy court litigation in order to illegally derail the Tribunal from adjudicating the merits of the dispute between the applicant and the 1st and 2nd respondents.

Ian Small Smith further stated that he had been advised by Counsel that the Arbitration Act does not permit a party to an international arbitration to obtain an injunction restraining arbitrators from acting as such and from continuing the arbitration proceedings. He added that the 3rd and 4th respondents are obliged to continue with the arbitration and to make an award in terms of both the Rules of the ICA and Arbitration Act.

The deponent of the affidavit in opposition stated in paragraph 28 thereof that he had been advised by Counsel and verily believes that the injunction restraining the 3rd and 4th respondents from sitting in the arbitral proceedings offends the basic principles of international arbitration law including the Arbitration Act. He stated that the 1st and 2nd

despite the fact that they proceeded in isolation and without a third arbitrator. He also deposed that the applicant disclosed in its application that the challenge was mounted relating to the impartiality of the 3rd and 4th respondents and that the ICA reached a decision on that question and it did not hide any material facts and he added that the allegation that it did so in unfounded and baseless.

Jacob Mutevedzi stated further that the response made by the 3rd and 4th respondents to the challenge does not contain any material facts which would have influenced the court to make a contrary decision on the grant of the ex-parte order. He clarified that those responses deal with the impartiality or otherwise of the tribunal and will be determined in the substantive hearing and they were not a factor in the grant of the order of injunction.

The deponent herein concluded by stating that the bias of the 3rd and 4th respondents is evident in the manner that they elected to respond to these proceedings when they indicated that they do not intend to participate in the proceedings and that they would leave it to the 1st and 2nd respondents to defend the claims by the applicant and he attached and exhibited as **"JM2"** a copy of a letter dated 26th October, 2012 to that effect.

The parties herein also filed into court written submissions, skeleton arguments and list of authorities to support their respective positions in the matter.

Counsel for the applicant, Mr. Paulman Chungu submitted that the applicant's application is made pursuant to Order 29, Rule 1 of the Rules of the Supreme Court Rules (1999 Edition). He submitted further that the principles and guidelines to be followed by the court on the hearing of the application for grant of interlocutory applications for grant of an injunction were laid down in the renowned case of **AMERICAN CYANAMID COMPANY v ETHICON LTD[1].** Counsel for the applicant further submitted that in **PRESTON v LUCK[2]** it was held that the following guidelines are to be considered before granting an injunction:

    **(i)**    **Whether there is a serious question of law to be determined at trial**

    **(ii)**    **Whether the applicant will suffer irreparable damage if the injunction is not granted**

    **(iii)**    **Whether the balance of convenience lies in favour of granting the injunction.**

He added that these principles were adopted with approval by the Supreme Court of Zambia in the case of **SHELL & BP (ZAMBIA) LTD v**

**CONIDARIS & OTHERS**[3] and he submitted that the applicant's case is fully captured under the principles outlined above.

Mr. Paulman Chungu argued on behalf of the applicants that there is a clear right to relief in that the impartiality of the 3rd and 4th respondents have been called into question and they would like the question to be determined whether the 3rd and 4th respondents have conducted themselves in a manner that tends to compromise their impartiality and independence. He added that if the respondents are allowed to continue the proceedings they may render a decision and make an award to the detriment of the applicant and that the court ought to interfere to preserve the status quo without waiting for the right to be finally established at trial.

He relied on Order 29 Rule 1(4) of the Rules of the Supreme Court, 1999 which states that all that needs to be seen is whether the applicant has prospects of success which substance and reality exist odds against success do not defeat him and that that may also be referred to as serious issues to be tried. Counsel for the applicant contended that at this stage, the need only show that there is an uncertainty at the interlocutory stage and he relied on the case of **PRESTON v LUCK** which was approved in the case of **ZAMBIA STATE INSURANCE CORPORATION v DENNIS MULUKELELA**[4]. He contended further that the assertion that the arbitrators were both individually and collectively biased is indisputable and he submitted that it is dear that the 3rd respondent and his mindset were



predisposed from the beginning to perceive the applicant as running a strategy to prevent the rendering of an award.

Mr. Paulman Chungu submitted that the challenge against the 4th respondent cannot be faulted as the 4th respondent demonstrated a clear lack of impartiality when he persistently passed prejudicial and biased commentaries against Zimbabwe and the applicant as epitomised in his perception of a propensity to lawless expropriation on the part of Zimbabwe. He submitted that there are serious matters to be tried and that the applicant opines that no reasonable court applying its mind to the challenge against the 3rd and 4th respondents would have dismissed it and that in the circumstances, in the quest for recourse, the applicant is left with no option but to turn to the supervisory jurisdiction of the court of the seat of arbitration.

It was submitted on behalf of the applicant that the injury to be suffered would be irreparable and cannot be atoned for in damages and that the recourse which a party has to an arbitral processes as provided in section 17 of the Arbitration Act Nº 19 of 2000, particularly section 17(2)(a)(i) to (v) does not permit for a challenge of the impartiality of the arbitrators. Counsel for the applicant argued that if the applicant is not granted a remedy at this stage and the award is permitted to be delivered, the applicant will have no opportunity under the law to impugn the impartiality and assert the bias of the 3rd and 4th respondents and that that would result in irreparable injury which is permanent and cannot be compensated in damages or at all. He submitted further that Order 29

Rule 1(5) of the Rules of the Supreme Court provides that the governing principle is that the court should first consider whether, if the plaintiff succeeds at trial, he will be adequately compensated by damages for any loss caused by the refusal to grant an interlocutory injunction.

Mr. Paulman Chungu submitted further that the applicant will suffer irreparable damage if the 3rd and 4th respondents are allowed to continue acting as Arbitrators and that the loss will be more than a mere inconvenience and that the balance should be interpreted in favour of the applicant. He relied on the case of **ZIMCO PROPERTIES LTD v LAPCO**[5] where the Supreme Court stated:

> **"We must make it clear that the question of balance of convenience between the parties only arises if the harm done will be irreparable and damages will not suffice..."**

In the present case, Counsel for the applicant submitted that in those circumstances, the balance of convenience weighs more in favour of the court granting an order for injunction and that the respondents will not be prejudiced by the granting of an injunction. He submitted further that inspite of the principle of non-interference in arbitrations, in some circumstances, the courts have granted an injunction to restrain the commencement of an arbitration or to continue a foreign arbitration. He added that some of the reasons that have been cited for the exercise of this power by the courts have been instances where there is oppressive,



vexatious or unconscionable conduct. Counsel for the applicant further submitted that the clear bias and impartiality shown by the 3rd and 4th respondents amounts to unconscionable conduct warranting the court to restrain them from continuing the arbitration until the questions are determined by the court in the substantive proceedings in the matter. He relied on the case of **ALBON (T/A N A CARRIAGE COMPANY) v NAZA MOTOR TRADING SDN BHD[6].**

Further, on the issue of disclosure of material facts, Mr. Paulman Chungu submitted that the applicant made full and frank disclosure of all relevant facts. He submitted further that this requirement for disclosure does not presuppose that all facts should be necessarily disclosed even if those facts are irrelevant and that the fact of the objection raised by the 3rd and 4th respondents is not material for consideration when granting an injunction. He added that those facts will be relevant, if at all, at the stage that the court is called upon to consider the substantive claims in this action.

Counsel for the applicant also referred to section 28 of the Arbitration Act, № 19 of 2000 which provides that an arbitrator is not liable for anything done or committed to be done in good faith in the discharge of his functions. He submitted that where it can be shown that the act or omission was in bad faith then the arbitrator is liable for that act. In this case, the applicant contends that the bias and impartiality are acts in bad



faith and that for that reason the 3rd and 4th respondents would not be immune to suit according to Counsel's submission.

The applicant contended further that the affidavit in opposition sworn by Ian Small Smith is defective in form and content and that the authority of Ian Small Smith is purportedly derived from his position as Director of the 1st and 2nd respondents and that the resolution he exhibited as **"ISS1"** and that exhibited document was purportedly extracted from a resolution of the 1st respondent made on 13th November, 2013 and the resolution was signed off on 16th November, 2012.   Counsel for the applicant argued further that it is evident that the Clerk of Court who commissioned the affidavit in Zambia did not see the certified copy of the extract of the resolution and it further does not bear any stamp or mark of nay officer in South Africa where it was extracted and that it is not in compliance with section 3(d) of the Authentication of Documents Act, Chapter 75 of the Laws of Zambia.  He submitted that if the contents of the affidavit in opposition are disregarded the only evidence which will be available for the court to consider will be that of the applicant.

The applicant, therefore, prayed that the order for interim injunction that was granted by this court be extended and the injunction be confirmed.

Counsel for the 2nd and 3rd respondents began by submitting on the principles of injunction law which I will not restate to avoid repetition as

the same has already been submitted on by Counsel for the applicant. He argued that firstly, the applicant has no cause of action to support the injunction or the originating summons as the applicant made its challenge against the 3rd and 4th respondents under the Rules of the International Court of Arbitration and lost and he added that under those Rules, there is no right of appeal against the challenge.  He submitted further that the arbitrators have immunity under the Arbitration Act Nº 19 of 2000 and cannot be sued and that as such the entire action is misconceived in law.

Secondly, it is contended that the applicant submitted to the arbitral proceedings and participated in it by agreeing to and signing the terms of reference with the arbitrators and that the applicant has not shown that it has suffered or is likely to suffer irreparable injury in doing what it agreed to do.  Counsel for the 1st and 2nd respondents submitted that the allegation of bias on the part of the 3rd and 4th respondent is completely baseless and untrue and that under the Arbitration Act the applicant can challenge the award after it is delivered.  They contended that as such no irreparable injury will be suffered by the applicant if the injunction is not granted.

Thirdly, it was submitted that in view of the fact that the applicant has a statutory right to challenge the award after it is delivered, then the court is being invited to find that the balance of convenience lies in favour of vacating the injunction.  Counsel for the 2nd and 3rd respondents submitted further that unless the arbitral proceedings are allowed to

proceed it will make a mockery of arbitration as an alternative dispute resolution process since under the Arbitration Act and its First Schedule (the "Model Law") arbitrators are allowed to rule on their own jurisdiction and control their own process. He strongly urged the court not to allow the applicant to subvert the entire purpose of arbitration by allowing it to sue arbitrator and to injunct existing arbitral proceedings, which were voluntarily entered into.

Counsel for the 1st and 2nd respondents on this issue finally contended that the applicant omitted material facts from this court when it applied *ex-parte* and that therefore, the applicant had not come to court with **"clean hands"** as the entire purpose of this application is to derail the arbitration.

With regard to the issue of the right to relief, he submitted that the issue that the applicant seeks to have determined by this court in the originating summons has already been determined by the International Court of Arbitration (ICA) and that the matter is *res judicata*. He added that a decision having been rendered by the arbitrators and the matter being *res judicata,* there cannot be any clear right to relief for the applicant in these proceedings. He further contended that based on article 13(3) of the Model Law this court has no power to grant the injunctive relief sought by the applicant and that, therefore, the applicant has no clear right to the relief sought in its originating summons. He also noted that the applicant brought its application under sections 10 and 11 of the Arbitration Act and

he submitted that section 10 only applies where proceedings were commenced in court and the court finds that there was an arbitration agreement. Counsel for the 1st and 2nd respondents submitted that, therefore, section 10(1) of the Arbitration Act cannot apply to these proceedings and that as such the originating summons have no legal basis. He submitted that based on the foregoing this court has no power to grant the injunction herein or even to hear the originating summons.

Thirdly, Counsel for the 1st and 2nd respondents submitted that an applicant must also demonstrate that he has reasonable prospects of success in the action as was held in the case of **HILARY MUKOSA v MICHAEL RONALDSON**[7] before he can be granted an injunction. He submitted further that the challenge against the 4th respondent was based on a fundamental misunderstanding of the import and purpose of the questions put to Mr. Mark Summers by the 4th respondent and that they accordingly maintained that there was no reasonable prospects of success for the applicant herein.

It was further contended that the Arbitration Act does not permit a party to an international arbitration to obtain an injunction restraining arbitrators from acting as such and from continuing the arbitration proceedings and it was submitted that, therefore, this action is misconceived in law. Counsel for the 1st and 2nd respondents submitted that the grounds upon which the Zambian courts are entitled to refuse to recognise the arbitral award are governed by section 17 of the Arbitration

Act which includes the right to challenge the independence of the arbitrators. He submitted further that the applicant has no legal basis under Zambian law to make this application to remove the arbitrators and that any challenge it wants to make can only be made after the final award has been delivered. On the issue of immunity of the arbitrators, namely the 3rd and 4th respondents he relied on section 28 of the Arbitration Act which provides:

> "**28(1)** **An arbitrator, an arbitral or other institution or a person authorised by or under this Act to perform any function in connection with arbitral proceedings is not liable for anything done or omitted in good faith in the discharge or purported discharge of that function.**"

He further submitted from the foregoing, that this court action is misconceived in law and that to allow the applicant to personally sue the arbitrators is highly irregular in law.

The fifth issue raised by the 1st and 2nd respondents is that of balance of convenience and prejudice to the 1st and 2nd respondents and it was submitted that where any doubt exists as to plaintiff's rights or if the violation of an admitted right is denied, the court takes into consideration the balance of convenience to the parties. Counsel for the 1st and 2nd respondents submitted that the burden of showing the greater inconvenience is on the plaintiff as was established in the **SHELL & BP**

**(ZAMBIA) LTD** case.  He submitted that the applicant will not suffer if the arbitration proceedings continue and are finally determined by the tribunal. He added that the applicant has a remedy as it can challenge the award under section 17 of the Arbitration Act and that the 3rd and 4th respondents are obliged in terms of both the Rules of the ICA and the Zambian Arbitration Act to continue with the arbitration and to make an award.

With respect to the issue of failure to disclose, Counsel for the 1st and 2nd respondents contended that there was no basis for the applicant not to have given the respondents notice of its intention to approach this court for relief and that the only reason why it did not give notice is because it wanted to ambush the 1st and 2nd respondents.  He submitted that the applicant misled this court by not disclosing material and relevant facts at the time it sought and obtained the *ex parte* order; and further by not drawing the court's attention to the express provisions of the Act which stipulate that this court has no power to grant injunctive relief restraining the continuation of the arbitration process.  Counsel for the 1st and 2nd respondents argued that had proper disclosure been made this court would not have granted the order and he relied on the case of **HINA FURNISHING LUSAKA LTD v MWAISENI PROPERTIES LTD**[8] wherein this court held that he who comes to equity must come with clean hands or else the court may not exercise its discretion to grant the remedy he seeks.

In conclusion, Counsel for the 1st and 2nd respondents submitted that the application for the injunction is misconceived in law and that this court has no jurisdiction to grant the injunction.  He further submitted that the applicant suppressed material facts and laws from this court and are merely trying to frustrate the arbitral proceedings means that they have not come to court with clean hands and that as such the applicant does not deserve the exercise of this court's equitable jurisdiction in its favour.  He finally submitted that no irreparable injury will be suffered by the applicant if the arbitral proceedings that the applicant submitted to proceeds and he reiterated that the balance of convenience is in favour of vacating the injunction and he urged the court to discharge the *ex parte* injunction that was granted on 15th October, 2012.

I have carefully considered the application for an injunction to restrain the 3rd and 4th respondents from continuing to act as Arbitrators in the dispute between the 1st and 2nd respondents and from continuing the arbitral proceedings or at all.  The affidavit evidence in support of the application, in opposition and in reply is quite comprehensive and I will not go into it. The law relating to the granting of injunction has also been adequately stated so it only remains for this court to determine whether this is a proper case in which to grant this discretionary remedy.  What emerged from the arguments before this court is that the applicant having submitted to the arbitral proceedings and participated in it by agreeing to and signing the terms of reference with the arbitrators could not turn around and challenge the arbitral process before the conclusion.  Further, it is clear under the provisions of the Arbitration Act that the applicant can

challenge the award after it is delivered so that no irreparable injury would be suffered if the injunction is not granted.

Another issue that arose is that the applicant having challenged the 3rd and 4th respondents under the Rules of the International Court of Arbitration and lost had no right of appeal against the challenge. The action by the applicant is perceived as being misconceived in law as the abitrators have immunity under the Arbitration Act No. 19 of 200.

There was also an allegation that the applicant had not come to court with "clean hands" as the purpose of this application was to derail the arbitration process.

Learned Counsel for the 1st and 2nd respondents raised the issue of sections 10, and 11 of the Arbitration Act which only apply where proceedings were commenced in court and the court finds that there is an arbitration agreement. However, this was not the position in this case which was brought under sections 10 and 11 of the Act, and as such the question of jurisdiction comes in. It was further contended that the Arbitration Act does not permit a party to an international arbitration to obtain an injunction restraining arbitrators from acting as such and from continuing the arbitration proceedings and that this action is misconceived in law.

Having considered the issues raised in this application, I am satisfied upon perusal of the provisions of the Arbitration Act, particularly sections 10, 11, 13 and 17 that this matter is not properly before this court in terms of jurisdiction and the fact that the applicant can challenge the award after it is made. To restrain the arbitrators from acting as such and from

continuing the arbitration proceeding is contrary to the spirit of the provisions of the Arbitration Act and is intended to subvert the arbitral process thereby making a mockery of the same.

It also has become apparent that the applicant suppressed material facts and laws from this court thereby misleading it to grant the ex-parte order of injunction. Clearly, from the aforestated, not only is this matter improperly before this court but the applicant has failed to demonstrate that his is likely to suffer irreparable injury or damage, as he has recourse to challenging the final arbitral award.

In conclusion, I find that this court has no jurisdiction to deal with this matter under sections 10 and 11 of the Arbitration Act No 19 of 2000 and I, accordingly decline to confirm the order of interim injunction granted ex-parte on 18th October, 2012. I, hereby, accordingly discharge the said injunction with costs. Leave to appeal is granted.

DATED this ...........19th........... day of June, 2014 at Lusaka.

F. M. LENGALENGA
JUDGE

# EXHIBIT 4

Exhibit 14



2019/HPC/ARB/No. 0337

IN THE HIGH COURT FOR ZAMBIA
AT THE COMMERCIAL REGISTRY
AT LUSAKA
(Civil Jurisdiction)

IN THE MATTER OF SECTION 18 OF THE ARBITRATION ACT No. 19 OF 2000
AND
IN THE MATTER OF ARBITRAL AWARD IN CASE No. 17720/ARP/MD/ TO THE ICC
INTERNATIONAL COURT OF ARBITRATION

BETWEEN:

| | |
|---|---|
| AMAPLAT MAURITIUS LIMITED | FIRST PLAINTIFF |
| AMARI NICKEL HOLDINGS ZIMBABWE LIMITED | SECOND PLAINTIFF |
| AND | |
| ZIMBABWE MINING DEVELOPMENT | FIRST DEFENDANT |
| CORPORATION | |
| THE CHIEF MINING COMMISSIONER MINISTRY | SECOND DEFENDANT |
| OF MINES OF ZIMBABWE | |

--------------------------------------------------------------------------------

EX PARTE ORDER FOR LEAVE TO REGISTER AND ENFORCE THE FINAL ARBITRATION
AWARD

Pursuant to Section 18 of the Arbitration Act, No. 19 of 2000 and Rules 15 and 16 of the
Arbitration (Court Proceedings) Rules, 2001

--------------------------------------------------------------------------------

UPON HEARING Counsel for the Plaintiffs

AND UPON reading the Affidavit of one IAN SMALL-SMITH

IT IS HEREBY ORDERED pursuant to Section 18 of the Arbitration Act No. 19 of
2000, that the Plaintiffs be at liberty to enforce in the same manner as a judgment or
order to the same effect the Final Award dated 12th January 2014, of the Arbitrators:
Stuart Isaacs QC, Chairman; Professor Doug Jones AO, as Co-Arbitrator; and Chikwendu

Madumere as Co-Arbitrator appointed pursuant to Clause 11 of the Nickel Memorandum of Understanding dated 22nd November 2007, and Clause 9 of the Platinum Memorandum of Understanding dated 25th July 2008, made between the Plaintiffs and the Defendants.

AND that the Plaintiffs do bear the costs of and occasioned by this application.

PROVIDED THAT within 30 days after service of this Order on them, the Defendants may apply to set aside this Order and the award shall not be enforced until after the expiration of that period or if the Defendants apply within that period to set aside, until the application is finally disposed of.

Dated the ------------------ 9th ------------- day of ------- August ----------- 2019.

-----------------------------------------------------------------------

THE HONOURABLE REGISTRAR

This Order was drawn by:

**SIMEZA, SANGWA & ASSOCIATES**

Advocates for the Plaintiffs
Suite C, The Coliseum
Bwinjimfumu Road
Rhodes Park
LUSAKA
Tel.: 211 227484/227574
Fax No.: 211 220568
Email: info@simezasangwa.co.zm

# EXHIBIT 5

*Exhibit 5*

2019/HPC/ARB/NO. 0337

IN THE HIGH COURT FOR ZAMBIA
AT THE COMMERCIAL REGISTRY
HOLDEN AT LUSAKA
(Civil Jurisdiction)



IN THE MATTER OF SECTION 18 OF THE ARBITRATION ACT No. 19 OF 2000
AND
IN THE MATTER OF ARBITRAL AWARD IN CASE No. 17720/ARP/MD/ TO THE ICC
INTERNATIONAL COURT OF ARBITRATION

BETWEEN:

| | |
|---|---|
| AMAPLAT MAURITIUS LIMITED | FIRST PLAINTIFF |
| AMARI NICKEL HOLDINGS ZIMBABWE LIMITED | SECOND PLAINTIFF |
| AND | |
| ZIMBABWE MINING DEVELOPMENT | FIRST DEFENDANT |
| CORPORATION | |
| THE CHIEF MINING COMMISSIONER MINISTRY | SECOND DEFENDANT |
| OF MINES OF ZIMBABWE | |

-------------------------------------------------------------------------------------------------------

### NOTICE OF REGISTRATION OF AN AWARD

Pursuant to Rule 19(1) of the Arbitration (Court Proceedings) Rules, 2001

-------------------------------------------------------------------------------------------------------

To:

(a) ZIMBABWE MINING DEVELOPMENT CORPORATION, Ground Floor, MMCZ
Building, 90, Mutare Road, Msasa, Harare, Zimbabwe; and

(b) THE CHIEF MINING COMMISSIONER, MINISTRY OF MINES, ZIMBABWE, Seventh
Floor, Zimre Centre, Private Bag CY 7709, Causeway, Harare, Zimbabwe.

TAKE NOTICE that the Final Arbitration Award dated 12th January 2014, rendered by the Arbitrators: Stuart Isaacs QC, Chairman; Professor Doug Jones AO, as Co-Arbitrator; and Chikwendu Madumere as Co-Arbitrator appointed pursuant to Clause 11 of the Nickel Memorandum of Understanding dated 22nd November 2007, and Clause 9 of the Platinum Memorandum of Understanding dated 25th July 2008, made between the Plaintiffs and the Defendants has been registered in the Register of Arbitration Awards in the High Court for Zambia at the Commercial Registry at Lusaka on 12th August 2019.

## PARTICULARS

### 1. Description of the Award Registered and Order for Registration

[1]     In the matter of an International Chamber of Commerce Arbitration Case No. 17720/ARP/MD/TO in the case of *Amaplat Mauritius Limited and Amari Nickel Holdings Zimbabwe Limited v Zimbabwe Mining Development Corporation and the Chief Mining Commissioner, Ministry of Mines, Zimbabwe*, the Tribunal comprising Stuart Isaacs QC, Chairman; Professor Doug Jones AO, as Co-Arbitrator; and Chikwendu Madumere as Co-Arbitrator, on 12th January 2014, ordered:

  (a)  the First Defendant, Zimbabwe Mining Development Corporation to pay Amaplat Mauritius Limited damages in the sum of US$42,882,000;

  (b)  the First Defendant, Zimbabwe Mining Development Corporation to pay Amari Nickel Holdings Zimbabwe Limited damages in the sum of US$3,900,000;

  (c)  the Defendants, Zimbabwe Mining Development Corporation and the Chief Mining Commissioner, Ministry of Mines, Zimbabwe to pay the legal and other costs and expenses incurred by Amaplat Mauritius Limited and Amari Nickel Holdings Zimbabwe Limited in the sum of US$2,220,583.74;

  (d)  the Defendants, Zimbabwe Mining Development Corporation and the Chief Mining Commissioner, Ministry of Mines, Zimbabwe to pay the costs of the arbitration incurred by Amaplat Mauritius Limited and Amari Nickel Holdings Zimbabwe Limited in the sum of US$900,000; and

(e)   the First Defendant, Zimbabwe Mining Development Corporation to pay interest on the damages referred to (a) and (b) above and on the legal and other costs and expenses referred to in (c) above and on the costs of the arbitration referred to in (d) above incurred by Amaplat Mauritius Limited and Amari Nickel Holdings Zimbabwe Limited at the rate of 5% per annum from the date of the Final Award until the date of payment.

[2]   The Final Arbitration Award was registered in the High Court for Zambia at Lusaka, on 12th August 2019, in the Register of Arbitration Awards as Final Arbitration Award No. 001 of 2019.

## 2. Name and Address of the Judgment Debtors and/ or Advocates on Whom Documents May be Served:

(a)   The Judgment Debtors are: ZIMBABWE MINING DEVELOPMENT CORPORATION of Ground Floor, MMCZ, Building, 90, Mutare Road, Msasa, Harare, Zimbabwe and THE CHIEF MINING COMMISSIONER, MINISTRY OF MINES, ZIMBABWE of Seventh Floor, Zimre Centre, Private Bag CY 7709, Causeway, Harare, Zimbabwe; whose advocates

(b)   RANCHOD CHUNGU ADVOCATES of Zimbabwe House, Plot No. 11058, Haile Selassie Avenue, LUSAKA.

## 3. Name and Address of the Judgment Creditors' Advocates on Whom Documents May be Served is:

**SIMEZA, SANGWA & ASSOCIATES** whose address for service is Suite C, The Coliseum, Bwinjimfumu Road, Rhodes Park, Tel: +260-211-227574, Fax: +260-211-220568, email: info@simezasangwa.com, P.O Box 36824, Lusaka, Zambia.

NOTES:

1. The Judgment Debtor has a right to apply to have the registration set aside.

2. The application to set aside registration of an award must be made within the period of 30 days from the date of service of this Notice, which is the period stated in the Order granting leave to register the Final Arbitration Award dated 12th August 2019.

3. The Award shall not be enforced until after the expiration of that period or if the Defendants apply within that period to set aside, until the application is finally disposed of.

Dated the ---------- 19th ------------------ day of---- August ------------------- 2019.

### Endorsement to be made within three days after service

THIS Notice was served by me ------------------------------------------------------------------

at -----------------------------------------------------------------------------------------------------

------------------------------------------------------------------------------------------------------

------------------------------------------------------------------------------------------------------

------------------------------------------------------------------------------------------------------

------------------------------------------------------------------------------------------------------

on the ------------------------ day of ------------------------------------------------------ 2019.

Endorsed the --------------------------- day of ------------------------------------------- 2019.

This Notice was filed by:

**SIMEZA, SANGWA & ASSOCIATES**

Advocates for the Plaintiffs
Suite C, The Coliseum
Bwinjimfumu Road
Rhodes Park
LUSAKA
Tel.: +211 227 484/227 574
Fax No.: +260 211 220568
Email: info@simezasangwa.com

# EXHIBIT 6

*Exhibit 6*

# Simeza | Sangwa
AND ASSOCIATES

Our Ref.: A55/JPS/2019

19th August 2019

Ranchhod Chungu Advocates
Zimbabwe House
Plot No. 11058
Haile Selassie Avenue
LUSAKA

Dear Sirs

**Amaplat Mauritius Limited and Another v Zimbabwe Mining Development Corporation and Another – 2019/HPC/0337**

Further to the telephone conversation of Friday 16th August 2019, in the afternoon between our Miss Nkonde and your Ms Dinah Nundwe in which you confirmed that you have instructions to receive the Order granting leave to register and enforce, and the Notice of Registration of the Final Arbitral Award, on behalf of your clients Zimbabwe Mining Development Corporation and the Chief Mining Commissioner of the Ministry of Mines of Zimbabwe, find attached, by way of service on you, the Order and Notice of Registration of the Final Arbitral Award.

Kindly acknowledge receipt of the same by signing and returning copy of the letter.

Yours faithfully

*Simeza, Sangwa & Associates*

RANCHHOD, CHUNGU ADVOCATES
2 0 AUG 2019
RECEIVED
Email: info@ranchhodchungu.com

The Colosseum, Bwinjimfumu Road, Rhodespark
Block C, Stand No. F/284a/157
P.O. Box 36824 Lusaka, Zambia
Tel: +260 211 227484/227574, Fax: +260 211 220568
E-mail: info@simezasangwa.com

Robert M. Simeza S.C.
John P. Sangwa S.C.
Patricia Simeza-Nkhoma
Luckson Mwamba
Elizabeth S. Chungu

Nkhumbwizya Alikipo
Christine C. Lundu
Jeffrey Chimankata
Musenge L. Nkonde
Mwenya Nalusenga

Kashinga Kaoma
Chimwemwe Ngoma
Chawezi Ngoma
Mandela Nkunika
Mwila Balungu
Watopa Chingela