**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Amaplat Mauritius Ltd., <br> c/o CKLB International Management Ltd., <br> P.O. Box 80, Felix House, 24 Dr. Joseph <br> Riviere Street, Port Louis 11602, Mauritius; <br> and <br><br> Amari Nickel Holdings Zimbabwe Ltd., <br> c/o CKLB International Management Ltd., <br> P.O. Box 80, Felix House, 24 Dr. Joseph <br> Riviere Street, Port Louis 11602, Mauritius, <br><br>               Plaintiffs, <br><br>      v. <br><br> Zimbabwe Mining Development Corporation, <br> 90 Mutare Road, Msasa, Harare, Zimbabwe; <br><br> The Chief Mining Commissioner, Ministry of <br> Mines of Zimbabwe, <br> 6th Floor, ZIMRE Centre, Cnr. Leopold <br> Takawira Street/Kwame Nkrumah Avenue, <br> Private Bag 7709, Causeway, Harare, <br> Zimbabwe; <br><br> and the Republic of Zimbabwe, <br> c/o Head of the Ministry of Foreign Affairs, <br> Ministry of Foreign Affairs, P.O. Box 4240, <br> Munhumutapa Building, Cnr. Samora Machel <br> Avenue/Sam Nujoma Street, Harare, <br> Zimbabwe: <br><br>               Defendants. | Civil Action No. 1-22-cv-0058-CRC |

I, Michael M. Mundashi, declare under penalty of perjury under the laws of the United States of America as follows:

1.  A true and correct copy of my CV is attached hereto as Exhibit 1.

2.  I am an Advocate of the High Court for Zambia having been admitted to the Zambian Bar on 20 December, 1985 and therefore, have over 36 years post qualifying experience. I am the Managing Partner of the firm of Mulenga Mundashi Legal Practitioners (**"MMLP"**), which I co- founded in 1999.

3.  I am being compensated for my work in connection with this matter at a rate of US$ 450 (United States Dollars Four Hundred and Fifty). My fees are in no way contingent on the nature of my conclusions, the presentation of those conclusions in testimony, or the outcome of any proceeding.

4.  I have not previously been retained by any party in connection with any filing made in this or any other court and consider myself to be a disinterested and impartial authority on Zambian law and practice with relevant professional experience.

5.  I have been retained by Steptoe & Johnson LLP, counsel for Amaplat Mauritius Limited ("Amaplat Limited") and Amari Nickel Holdings Zimbabwe Limited ("Amari Holdings") (collectively the "Plaintiffs") to provide expert opinion on certain questions of Zambian law that I understand may be relevant to the proceedings in the United States in this matter. I have been asked, specifically, to give expert evidence as to the following issues (I) Waiver of Immunity where the Arbitration Proceedings are as a result of the Commercial Transaction; (II) Requirements for service of process on a foreign state-owned company in Zambia in a proceeding commenced ex parte to register an arbitral award as a judgment; (III) Whether valid service would always be reflected in a court file such as through an affidavit of service? (VI) When is the registration of an arbitral award complete?

6. I set out in the Appendix to this declaration the materials which I have considered when forming my opinion.

7. By way of background, upon its independence in 1964, Zambia adopted the common law of England, together with some statutes in force in England at that time, as the basis of its legal system until amended by the Zambian Parliament.

8. Thus, in the absence of Zambian statutes or case law on point, Zambian courts are heavily influenced by English law sources in determining what the common law is. Just as in England, Zambia holds customary international law to form a part of the common law.

9. We shall begin by firstly providing an analysis on how Zambian law relies on English law.

10. The starting point in understanding how English common law applies to Zambia is the Constitution of Zambia, Chapter 1 of the laws of Zambia as amended by Act No. 2 of 2016 (the "**Constitution**"). Attached hereto is Exhibit 2 a true copy of the said Constitution.

11. Article 7 of the Constitution provides that the laws of Zambia consist of;

    (a) the Constitution;
    (b) laws enacted by Parliament;
    (c) statutory instruments;
    (d) Zambian customary law which is consistent with this Constitution; and
    (e) **the laws and statutes which apply or extend to Zambia, as prescribed.**

12. The above Article of the Constitution recognizes any prescribed laws which apply or extend to Zambia as part of the laws of Zambia. The provisions of the Constitution must be read together with the provisions of the English law (Extent of Application) Act, Chapter 11 of the laws of Zambia as amended by Act No. 6 of 2011 (the "**English Extent of Application Act**"). Attached

hereto is Exhibit 3 a true copy of the English Extent of Application Act. Section 2 of the English Extent of Application Act provides as follows;

*"Subject to the provisions of the Constitution and to any other written law—*

*(a) the common law;*

*(b) the doctrines of equity;*

*(c) the statutes which were in force in England on 17th August, 1911, being the commencement of the Northern Rhodesia Order in Council, 1911; and*

*(d) any statutes of a later date than that mentioned in paragraph (c) in force in England, now applied to the Republic, or which shall apply to the Republic by an Act of Parliament, or otherwise;*

*shall be in force in the Republic.*

13. A reading of the above provision demonstrates that English common law, among others, is applicable in Zambia. It is however noteworthy that the applicability of English common law in Zambia is subject to the provisions of the Constitution and any other written law. Put simply, the provisions of any written law on any particular issue in Zambia override the position at common law. Further, English Common law is only of persuasive value and may, in certain circumstances not bind the Courts in Zambia. The Supreme Court in the case of **Isaac Lungu v Mbewe Kalikeka Appeal No. 114 of 2013** had the opportunity to pronounce itself on the applicability of English common law in Zambia. Attached hereto is Exhibit 4 a true copy of the said **Isaac Lungu Case**. The Supreme Court in the **Isaac Lungu Case** held as follows;

> *"We wish to state that the position as put by counsel for the appellant is no longer the same with the passing of the English Law (Extent of Application) (Amendment) Act No. 6 of 2011. By this amendment, and of course subject to the provisions of the Constitution and to any other written law, (a) the common law; (b) the doctrines of equity; (c) the statutes which were in force in England on 17th August, 1911.....; and (d) any statute of a later date than that mentioned in (c) in force in England, now applied to Zambia, or which shall apply by an Act of Parliament, or otherwise, shall be in force in Zambia."*

I. **Waiver Of Immunity Where The Arbitration Proceedings Are As A Result Of Commercial Transaction**

14. While the Zambian courts have not ruled on whether an arbitration agreement *standing alone* would waive state immunity, in this case, it is unnecessary to resolve the question because Zambia has adopted the "restrictive" theory of state immunity and does not provide immunity for commercial transactions by sovereigns, provided that jurisdiction in Zambia would otherwise be proper.

15. Thus, the parties involved cannot claim absolute immunity where the arbitration proceedings are as a result of a commercial transaction. The Supreme Court in the case of **Antonio Ventriglia and Manuela Ventriglia v The Eastern and Southern Development Bank and Another (2010) ZR, 486** held that the 1st Respondent could not claim absolute immunity as it entered into a commercial transaction with the appellants. Attached hereto is Exhibit 5 a true copy of the **Antonio Ventriglia Case**. The Supreme Court in the **Antonio Ventriglia Case** held as follows:

> "...there is a general acceptance of the principle of the international customary law on granting absolute immunity to acts described as jure imperii and not to acts described as jure gestionis. He conceded to the argument that, international customary law's general principle is that, except by consent of sovereign States, the Courts of any country will not implead a foreign sovereign State in a claim for damages. The thesis behind this is that if the Courts entertained a claim against a sovereign State, and if there was a judgement against such a State, the Courts would be called upon to execute that judgement. As such, that execution would destroy the relations between States and lead to such repercussions impossible to foresee..., this was one side of the coin. On the other side of the coin, is the proposition that, <u>legal entities should abide by the rules of the market and that there should be accountability for their actions...it is trite law that immunity, granted to State actors, is absolute, whereas the immunities given to treaty bodies, engaged in commercial activities, are restrictive</u>...Lord Denning ...in the celebrated case of Rahimtoola v Nizam of Hyderabad (1),... expounded this principle this way: "if the dispute brings into question for instance the legislative or international transaction of a foreign government, or the policy of its executive, the Court should grant immunity if asked to do so, because it does offend the dignity of a sovereign to have the merits of such a dispute canvassed in the domestic Courts of another country: <u>but if the dispute concerns for instance, the</u>

*commercial transactions of a foreign government (whether carried on by its own departments or agencies or by setting up separate legal entities), and it arises properly within the territorial jurisdiction of our Courts, there is no ground for granting immunity."*

*... a treaty body once it engages in commercial activities, brings itself on equal footing with an individual it is dealing with. The accepted principle of international customary law is that, absolute immunity is accorded to only acts of a governmental nature described in Latin as jure imperii. But restrictive immunity is accorded to acts of commercial nature, jure gestions. Lord Denning in the case of I congreso del Partido (7) put it this way:*

*"actions, whether commenced in personam or in rem, were to be decided according to the restrictive theory of sovereign immunity so that a State had no absolute immunity as regards commercial or trading transactions. Whether an act of a sovereign State attracted sovereign immunity depend on whether the act in question was a private act (jure gestionis), or a sovereign or public act (jure imperii) and the fact that the act was done for governmental or political reasons would not convert what would otherwise be an act of jure gestiouis, or an act of private law into one done jure imperii."*

*In considering whether State immunity should be granted, the Court had to consider the whole context in which the claim against the State was made, with a view to deciding whether the relevant act on which the claim was based should, in the context, be considered as fairly within an area of activity, trading or commercial or otherwise, of a private law character in which the State has chosen to engage, or whether the relevant act should be considered as having been done outside that area and within the sphere of sovereignty.*

16. The Court of Appeal in the case of **Legal Resources Foundation Limited v Norwegian Ministry of Foreign Affairs Appeal No. 118/2018** delivered on 27 June 2019 cited with authority the English decision in the case of **Thai Tapiola Services v Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies Imports and Shopping Winf (1975) All ER 961** and held as follows;

-6-

> *"A foreign Government which enters into an ordinary commercial transaction with a trader must honour its obligations like other traders and if it fails to do so, it should be subjected to the same laws and answerable to the same tribunals as they are"*

17. Attached is Exhibit 6 and 7 being true copies of the said **Legal Resources Foundation Case** and **Thai Tapiola Services Case** respectively.

18. The Court of Appeal in the **Legal Resources Foundation Limited v Norwegian Ministry of Foreign Affairs Case** went on to hold as follows:

> *"We accept the modalities of the principle of restrictive immunity as elucidated by the authors of the principles of Public International Law… which are used by among others, governments of numerous states. The principles are useful in resolving the issue of state immunity. The method commonly referred to is the distinction between acts Jure Imperil (acts of sovereign authority) and acts jure gestonis (acts of private character). The basic criteria appears to be whether the key transaction was based on a private law relationship, such as contract. Another form of this approach is to state that the act is jure genestonis and therefore, not immune if the transaction can be made by an individual."*

19. The learned author of **Principles of Public International Law, Ian Bromnlie 4th Edition, Claredon Press, Oxford 1990** which was cited with authority by the Court of Appeal in the **Legal Resources Foundation Limited v Norwegian Ministry of Foreign Affairs Case** opine as follows:

> *"In any event the courts and government of a number of states apply the principle of restrictive immunity and therefore it is necessary to examine the modalities of its application… The Legal system of the forum state is competent in respect of proceedings concerning legal disputes arising from relationship of a private law character to which a foreign state or (its agent) is a party: the class relationship referred to includes (but is not confined to) the following legal categories of commercial contracts; contracts for the supply of services, loans and financing agreements; guarantees or indemnities in respect of financial obligations, ownership, possession, use of property…"*

20. Attached is Exhibit 8 a true copy of an excerpt from the book, **Principles of Public International Law, Ian Bromnlie 4th Edition, Claredon Press, Oxford 1990.**

21. In light of the above, if a commercial instrumentality of a foreign sovereign, such as Zimbabwe Mining Development Company, entered into a commercial agreement providing for the development of mining resources, then both the commercial character of its transactions and the fact that it was established as a separate entity to enter into commercial transactions would mean that any arbitration award resulting from the dispute would be outside the scope of Zimbabwe's common law state immunity.

22. I further note that, by arbitrating before the International Chamber of Commerce, the Defendants agreed that "[b]y submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made." ICC Rules (1998) at Rule 28(6). Attached is Exhibit 9 a true copy of the ICC Rules (1998)

23. While the plainly commercial nature of the disputes here makes this express agreement unnecessary to resolve whether the Zambian courts had jurisdiction, the existence of an express agreement to waive rights to prevent carrying out the award further reaffirms my view that, even if the Defendants had any state immunity, they waived it.

II.    **Requirements for service of process on a foreign state-owned company in Zambia in a proceeding commenced ex parte to register an arbitral award as a judgment**

24. I understand that the Defendants in this action also contend that service of process in the Zambian recognition proceeding was improper because of the lack of an application for service outside the jurisdiction. As explained below, that is incorrect. While an application for service outside of the jurisdiction would *ordinarily* be required to serve a foreign party, Zambian law also provides that service out of the jurisdiction is unnecessary when the party's Zambian counsel agrees to accept service. Accepting service in this manner is commonly done, since it saves the expense of applying for service outside of the jurisdiction, both as a matter of courtesy and because a party that refused to accept service and then lost the proceeding would have to pay for the costs of the application for service outside the jurisdiction.

25. The law regulating arbitration proceedings before the courts in Zambia is the Arbitration (Court Proceedings) Rules, Statutory Instrument No. 75 of 2001 (the "**Arbitration Rules**"). Attached is Exhibit 10 a true copy of the Arbitration Rules. Rule 36 of the Arbitration Rules provides for "service out of jurisdiction" as follows:

> *(1) Service out of the jurisdiction of any originating summons or an order made on such summons, may be effected with the leave of the Court if the arbitration to which the summons or order relate is governed by the law of Zambia or has been, is being, or is to be held in Zambia.*

> *(2) Service out of jurisdiction of an originating summons for leave to register and enforce an award may be effected with the leave of the court whether or not the arbitration is governed by the law of Zambia.*

> *(3) An application for the grant of leave under this Rule shall be supported by an affidavit stating the grounds on which the application is made, and stating in what place or country the person to be served is, or probably maybe found; and leave shall not be granted unless the Court considers that the case is a proper one for service out of the jurisdiction under this rule.*

26. This sets forth the ordinary rule that service of process outside the jurisdiction requires leave of court.

27. Similarly, the provisions of Rule 19 of the Arbitration Rules provide as follows:

> *(1) The applicant shall file in court a written notice of the registration of the award and serve it on the other parties-*

> *(a) in the case of a party within the jurisdiction, by personal service as in the case of a writ of summons, unless some other mode of service is ordered; or*

*(b) in the case of a party outside the jurisdiction, in accordance with the rules applicable to the service of a writ of summons out of the jurisdiction.*

*(2) The notice of registration shall state*

*(a) the full particulars of the award registered and the order for registration;*

*(b) the date of registration;*

*(c) the name and address of the judgment creditor or the judgment creditor's legal practitioner or agent on whom, and at which any summons issued by the other party may be served;*

*(d) the name and address of the judgment creditor;*

*(e) the right of the judgment debtor to apply on the grounds specified in section seventeen of the Act to have the registration set aside; and*

*(f) in accordance with the term of the order giving leave to register, within what time from the date of service of the notice an application to set aside the registration may be made:*

*(3) Within three days from the date of service or within such extended period as may in special circumstances, be allowed by order of the court, the notice or a copy thereof shall be endorsed be the person serving the notice with the date on which service was affected, and if the notice is not so endorsed, the judgment creditor shall not issue execution on the award without the leave of the court or a Judge.*

*(4) An affidavit of service of a notice referred to in sub rule (2) shall state on what day it was endorsed in the manner required by sub-rule (3).*

28. However, pursuant to Order X Rule 4 of the High Court Rules, Chapter 27 of the Laws of Zambia (the "**High Court Rules**") a party who has been sued or appeared in person, can give notice in writing to the opposing party or his/her advocate through their advocate that such advocate is

authorised to act in the cause or matter on their behalf. The said Order X, Rule 4 of the High Court Rules provides as follows:

> *"Where a party, after having sued or appeared in person, has given notice in writing to the opposite party or his advocates, through an advocate, that such advocate is authorized to act in the cause or matter on his behalf, all writs, notices, pleading, summonses, orders, warrants and other documents, proceedings and written communications, which ought to be delivered to or served upon the party on whose behalf the notice is given, shall thereafter be delivered to or served upon such advocates. Such notice shall contain all the particulars required from an advocate by Order VII or XI, as the case may be.*

29. Additionally, Order X Rule 5 of the High Court Rules affirms that personal service of the writ on the defendant shall not be required where the defendant's advocate undertakes in writing to accept service on behalf of the defendant. The said Order X, Rule 5 of the High Court Rules provides as follows:

> *"Personal service of the writ on the defendant shall not be required where the defendant's advocates undertakes in writing to accept service on behalf of the defendant"*

30. Attached is Exhibit 11 a true copy of the said High Court Rules.

31. The foregoing provisions show that service on a party's counsel of record is a recognised mode of service on a party to the proceedings. In sum, service of process on counsel of record in Zambia for the parties is sufficient for service purposes, even where leave of court to serve outside the jurisdiction would otherwise be required. The requirement for leave of court to serve outside the jurisdiction is a procedural requirement that can be voluntarily waived by one's counsel agreeing to accept service.

III.   **Whether valid service would always be reflected in a court file such as through an affidavit of service?**

32. On our analysis, we conclude that valid service would not always be reflected in a court file such as through an Affidavit of service. The basis for our position is the case of **Chimanga Changa**

-11-

**Limited v Stephen Chipango Ngombe Vol. 1 ZR 208 (SC)** where the Supreme Court of Zambia held as follows:

> There is no doubt that rules of Court do require that parties to a dispute must be served with any Court process including a notice of hearing, so that they can react to the process. The rationale behind this requirement is the common law principle of natural justice.

33. Attached is Exhibit 12 a true copy of the said Chimanga Changa Case. Further, I have also attached Exhibit 13 a true copy of the Defendant's Expert Report which I considered in preparing my report.

34. In the foregoing case, an appellant advanced a ground of appeal arguing that the court below erred in law in concluding trial without proof of service of the notice of hearing on the appellant. The Supreme Court held that:

> There is no exclusively sacrosanct method to prove service of process. While an affidavit of service would lay the issue of service to rest, service can be provided through endorsement on a letter or other circumstances. A Court is at liberty to infer from the circumstances of the case whether a litigant is aware of the hearing date…there is no assertion in this case that there was no service of the Notice of Hearing but rather, that there was no proof of service. We are mindful that the appellant was at liberty to apply to the Court to set aside the judgment and seek leave to present its evidence but it never did so. A litigant using a compound address appeared in obedience to the Notice of Hearing while the appellant, with a town address did not. It is therefore difficult, to accept that the appellant did not receive the notice. In the circumstances of this case, we cannot fault the trial Court for having proceeded. Insisting on proof of service rather than the fact as to whether service was effected lends credence to an assumption that service was effected. The appellant's arguments on the first ground of appeal have not persuaded us to find that the Notice of Hearing was not served or indeed, that Counsel for the appellant was at the time, not aware of the date of hearing.

35. The above decision of the Supreme Court illustrates the fact that valid service of court documents can be effected and generally the Court may proceed to hear a matter without necessarily having an affidavit of service on the court file.

36. However, for purposes of levying execution on a registered Arbitral Award, Rule 20 (3) of the Arbitration Rules requires a party wishing to issue a writ of execution upon a registered Arbitral Award to file in the High Court an affidavit of service of the Notice of registration and of any order made by the court in relation to the Arbitral Award registered. The net effect of the aforementioned provision is that the filing of an Affidavit of Service into Court is a condition precedent to levying execution of a registered Arbitral Award, but not to the judgment on the Arbitral Award being final, valid, and enforceable.

**IV.    When is the registration of an arbitral award complete?**

37. The registration of an arbitral award is complete when the High Court issues or signs an order granting leave to register the award and enters the arbitral award in the register at the High Court. Rule 17 of the Arbitration Rules requires a Judgment Creditor to draw up an order giving leave to register an award. The said order is not required to be served on the Judgment Debtor. Further, Rule 18 of the Arbitration Rules requires the High Court to keep at every registry, a register of arbitration awards ordered to be registered under the Arbitration Rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  /  16th September

-13-

# EXHIBIT 1

**ANNEX**

**MUNDASHI, MUSONDA
MICHAEL, S.C.**



1.      Michael has 36 years' post qualifying experience in both the public and private sectors.  He holds a Bachelor of Laws degree obtained from the University of Zambia where he graduated in December 1984.  As a law student, Michael achieved the following honours:

　　1.1      1982 - Chitalu Sampa Mwanakatwe Memorial award as the best 2nd year law student;

　　1.2      1983 - Professor Craig Memorial Award for best third year law student; and

　　1.3      1984 - Professor Bentsi- Echil Award for best graduating law student.

2.      Michael was admitted to the Zambian bar on 20 December 1985 after successfully completing the Law Institute legal practitioners qualifying examinations. He joined a private law firm in Ndola, Mwanawasa and Company as an Associate advocate handling both civil and criminal litigation.

3.      Between 1988 and March 1994, prior to entering private practice, Michael worked at the Zambia State Insurance Corporation Limited as In-House Counsel rising to the position of Head of the Legal Department.

4.      Between 1 April 1994 and 31 December 1997, Michael worked at the newly established Zambia Revenue Authority (**"ZRA"**) as Head of Legal. On 1 April 1998, Michael was appointed as the First Chairman of the Revenue Appeals Tribunal (now renamed as the Tax Appeals Tribunal).[1]

---

[1] The Tax Appeal Tribunal Act of 2015 renamed the Revenue Appeals Tribunal as the Tax Appeals Tribunal

5.     On 1 January 1998, Michael went into private practice and co-founded Mundashi & Associates which became Mulenga Mundashi & Company in 1999 after the merger with M. Mulenga & Company and later became Mulenga Mundashi Legal Practitioners ("**MMLP**"). Michael has been key in driving the firm for the past 20 years which is now recognized as a leading law firm in Zambia and ranked by Chambers Global. Individually, Michael is ranked in Band 1 by Chambers Global as a leading lawyer in Zambia in the General Business law and Dispute Resolution category.

6.     Together with some of his colleagues in the firm, he has contributed Chambers Publications on Zambia on dispute Country practice and procedure and Arbitration. He is Managing Partner of the firm and heads the unit that is involved in dispute resolution and arbitration. Over the years he has handled complex commercial litigation and arbitration before the Zambian High Courts, Supreme Court and Arbitral Tribunals. He has also served as an Expert Witness (instructed by DLA Piper) in an international arbitration under the ICC Rules with the seat of arbitration in London.

7.     He has handled a number of high-profile disputes before Arbitral Tribunals constituted under the London Court of International Arbitration, International Chamber of Commerce and the Permanent Court of Arbitration (**"PCA"**) rules. The latter instruction was a *pro bono* brief at the request of the Zambian Government, which required assistance during the oral hearings of the Arbitration before a PCA tribunal sitting in London. This is the only occasion on which Michael has been instructed directly by the Zambian Government.

8.     Between 2002 and 2005, Michael defended the then President of the Republic of Zambia, Levy Mwanawasa, in the Supreme Court of Zambia in a case concerning the disputed results of the 2001 Zambian presidential elections.

9.     Michael has also represented Zambian and international corporations in procurement challenges against the Zambian Government and the Zambia Public Procurement Authority (**"ZPPA"**) and has served as a presiding Arbitrator in a dispute arising from a procurement contract that was awarded

under the Public Procurement Act.

10.   He is the lead counsel on the Zambian legal team for Vedanta Resources Holdings Limited challenging the takeover of its Zambian Konkola Copper Mines Plc (**"KCM"**) through a purported liquidation action instigated by a minority shareholder in KCM which is an alter ego of the Zambian Government.

11.   In March 2009, Michael was conferred with the rank and dignity of State Counsel in recognition of his distinguished career at the Zambian bar.

12.   Between 2005 and 2017, Michael has served as Independent Non-Executive Director and Chairman (between 2009 and 2017) of Standard Chartered Bank Zambia Plc and other leading companies in Zambia.

**Contact Details**

Contact numbers: +260 211 254266/ +260 977 775538

Email address: mmundashi@mmlp.co.zm

# EXHIBIT 2

GOVERNMENT OF ZAMBIA

# ACT

**No. 2 of 2016**

Date of Assent: 5th January, 2016

**An Act to amend the Constitution of Zambia.**

[ 5th January, 2016

ENACTED by the Parliament of Zambia.

**1.** This Act may be cited as the Constitution of Zambia (Amendment) Act, 2016, and shall be read as one with the Constitution of Zambia, in this Act referred to as the Constitution.

**2.** The Constitution is amended by the repeal of the Preamble and the substitution therefor of the following:

PREAMBLE

WE, THE PEOPLE OF ZAMBIA:

ACKNOWLEDGE the supremacy of God Almighty;

DECLARE the Republic a Christian Nation while upholding a person's right to freedom of conscience, belief or religion;

UPHOLD the human rights and fundamental freedoms of every person;

COMMIT ourselves to upholding the principles of democracy and good governance;

RESOLVE to ensure that our values relating to family, morality, patriotism and justice are maintained and all functions of the State are performed in our common interest;

CONFIRM the equal worth of women and men and their right to freely participate in, determine and build a sustainable political, legal, economic and social order;

*Margin notes:*
Enactment

Short title

Cap. 1

Repeal and replacement of Preamble

RECOGNISE AND UPHOLD the multi-ethnic, multi-racial, multi-religious and multi-cultural character of our Nation and our right to manage our affairs and resources sustainably in a devolved system of governance;

RESOLVE that Zambia shall remain a unitary, multi-party and democratic sovereign State;

RECOGNISE AND HONOUR the freedom fighters who fought for the independence of our Nation in order to achieve liberty, justice and unity for the people of Zambia;

AND DIRECT that all State organs and State institutions abide by and respect our sovereign will;

DO HEREBY SOLEMNLY ADOPT AND GIVE TO OURSELVES THIS
CONSTITUTION:

Repeal and
replacement
of Parts I
and II

**3.**    The Constitution is amended by the repeal of Parts I and II and the substitution therefor of the following Parts:

PART I

SUPREMACY OF CONSTITUTION

Supremacy
of
Constitution

**1.** (1)  This Constitution is the supreme law of the Republic of Zambia and any other written law, customary law and customary practice that is inconsistent with its provisions is void to the extent of the inconsistency.

(2)    An act or omission that contravenes this Constitution is illegal.

(3)    This Constitution shall bind all persons in Zambia, State organs and State institutions.

(4) The validity or legality of this Constitution is not subject to challenge by or before a State organ or other forum.

(5) A matter relating to this Constitution shall be heard by the Constitutional Court.

Defence of
Constitution

**2.**    Every person has the right and duty to—

*(a)* defend this Constitution; and

*(b)* resist or prevent a person from overthrowing, suspending or illegally abrogating this Constitution.

Continuous
effect of
Constitution

**3.**    The operation of this Constitution shall not be affected by an unlawful act to overthrow, suspend or illegally abrogate its provisions.

**4.** (1) Zambia is a sovereign Republic under a constitutional form of governance.

(2) The Republic consists of the territory defined in an Act of Parliament.

(3) The Republic is a unitary, indivisible, multi-ethnic, multi-racial, multi-religious, multi-cultural and multi-party democratic State.

(4) The Republic shall not be ceded in whole or in part.

(5) The Republic may enter into a union or other form of inter-state organisation, which action shall not be construed as ceding the Republic.

Republic of Zambia

**5.** (1) Sovereign authority vests in the people of Zambia, which may be exercised directly or through elected or appointed representatives or institutions.

(2) Power that is not conferred by or under this Constitution on any State organ, State institution, State officer, Constitutional office holder or other institution or person is reserved for the people.

(3) The people of Zambia shall exercise their reserved power through a referendum, as prescribed.

Sovereign authority

**6.** (1) The national symbols of the Republic are the—

*(a)* National Flag;

*(b)* National Anthem;

*(c)* Coat of Arms;

*(d)* Public Seal; and

*(e)* National Motto.

(2) The form, words, description and use of the national symbols shall be as prescribed.

National symbols

**7.** The Laws of Zambia consist of—

*(a)* this Constitution;

*(b)* laws enacted by Parliament;

*(c)* statutory instruments;

*(d)* Zambian customary law which is consistent with this Constitution; and

*(e)* the laws and statutes which apply or extend to Zambia, as prescribed.

Laws of Zambia

PART II

NATIONAL VALUES, PRINCIPLES AND ECONOMIC POLICIES

National
values and
principles

**8.**   The national values and principles are—

*(a)* morality and ethics;

*(b)* patriotism and national unity;

*(c)* democracy and constitutionalism;

*(d)*  human dignity, equity, social justice, equality and non-discrimination;

*(e)*  good governance and integrity; and

*(f)*  sustainable development.

Application
of national
values and
principles

**9.**  (1)  The national values and principles shall apply to the —

*(a)* interpretation of this Constitution;

*(b)* enactment and interpretation of the law; and

*(c)* development and implementation of State policy.

(2) The President shall, once in every year, report to the National Assembly the progress made in the application of the values and principles specified under this Part.

Basis of
economic
policies

**10.**  (1)  The Government shall create an economic environment which encourages individual initiative and self-reliance among the people, so as to promote investment, employment and wealth.

(2) The Government shall promote the economic empowerment of citizens so that they contribute to sustainable economic growth and social development.

(3) The Government shall promote local and foreign investment and protect and guarantee such investment through agreements with investors and other countries.

(4) The Government shall not compulsorily acquire an investment, except under customary international law and subject to Article 16 (1).

(5) Where the investment compulsorily acquired under clause (4) was made from the proceeds of crime no compensation shall be paid by the Government.

Repeal and
replacement
of Part IV

**4.**    The Constitution is amended by the repeal of Part IV and the substitution therefor of the following Part:

PART IV

C<small>ITIZENSHIP</small>

**33.**   A person who was a citizen of Zambia, immediately before the commencement of this Constitution, shall continue to be a citizen of Zambia and shall retain the same citizenship category from the date the citizenship was acquired.

*Existing citizenship*

**34.**   Citizenship may be acquired by birth, descent, registration or adoption in accordance with this Part.

*Categories of citizenship*

**35.**   (1)  A person born in Zambia is a citizen by birth if, at the date of that person's birth, at least one parent of that person is or was a citizen.

*Citizenship by birth*

(2)   A child found in Zambia who is, or appears to be, of not more than eight years of age and whose nationality and parents are not known, shall be presumed to be a citizen by birth.

(3)   For the purposes of this Part, a person born aboard—

    *(a)* a registered ship or aircraft of a country, shall be deemed to have been born in the country of registration of the ship or aircraft; or

    *(b)* an unregistered ship or aircraft of a country, shall be deemed to have been born in that country.

**36.**   A person born outside Zambia is a citizen by descent if, at the date of that person's birth, at least one parent of that person is or was a citizen by birth or descent.

*Citizenship by descent*

**37.**   (1)  Subject to clause (2), a person is entitled to apply to the Citizenship Board of Zambia to be registered as a citizen if that person has attained the age of eighteen years and—

*Citizenship by registration*

    *(a)* was born in Zambia and has been ordinarily resident in Zambia for a period of at least five years;

    *(b)* was born outside Zambia, has or had an ancestor who is, or was, a citizen and has been ordinarily resident in Zambia for a period of at least five years; or

    *(c)* has been ordinarily resident in Zambia for a continuous period of at least ten years;

immediately preceding that person's application for registration, as prescribed.

(2)    Notwithstanding clause (1), a person who is, or was married to a citizen, for a period of at least five years, is entitled to apply to the Citizenship Board of Zambia, to be registered as a citizen, as prescribed.

Citizenship by adoption

**38.**    A child who is not a citizen and who is adopted by a citizen shall be a citizen on the date of the adoption.

Dual citizenship

**39.**    (1)  A citizen shall not lose citizenship by acquiring the citizenship of another country.

(2)    A citizen who ceased to be a citizen, before the commencement of this Constitution as a result of acquiring the citizenship of another country, shall be entitled to apply, as prescribed, to the Citizenship Board of Zambia, for citizenship and the Citizenship Board of Zambia shall bestow citizenship on that person.

Renunciation and deprivation of citizenship

**40.**    (1)  A citizen—

*(a)* may renounce citizenship as prescribed; or

*(b)* shall be deprived of citizenship if that citizenship was acquired by means of fraud, false representation or concealment of a material fact.

(2)    The process and procedures to be followed by the Citizenship Board of Zambia when granting or depriving a person of citizenship shall be prescribed.

Citizenship Board of Zambia

**41.**    (1)  There is established the Citizenship Board of Zambia.

(2)    The composition, appointment and tenure of office of members of, and procedures to be followed by, the Citizenship Board of Zambia shall be prescribed.

Entitlements of citizen

**42.**    A citizen is entitled to—

*(a)* the rights, privileges and benefits of citizenship as provided in this Constitution or as prescribed; and

*(b)* a document of identification issued by the State to citizens.

Responsibilities of citizen

**43.**    (1)  A citizen shall —

*(a)* be patriotic to Zambia and promote its development and good image;

*(b)* pay taxes and duties lawfully due and owing to the State;

*(c)* protect and conserve the environment and utilise natural resources in a sustainable manner;

  *(d)* maintain a clean and healthy environment;

  *(e)* provide national, defence and military service when called upon by the State; and

  *(f)* co-operate with law enforcement agencies for the maintenance and enforcement of law and order.

(2)   A citizen shall endeavour to—

  *(a)* acquire basic understanding of  this Constitution and promote its ideals and objectives;

  *(b)* register and vote, if eligible, in national and local government elections and referenda;

  *(c)* develop one's abilities to the greatest possible extent through acquisition of knowledge, continuous learning and the development of skills;

  *(d)* foster national unity and live in harmony with others; and

  *(e)* understand and enhance Zambia's place in the international community.

**44.**   A reference in this Part to the citizenship of the parent of a person at the time of the birth of that person shall, in relation to a person born after the death of that person's parent, be construed as a reference to the citizenship of the parent at the time of the parent's death.

Reference to citizenship of parent

PART V

REPRESENTATION OF THE PEOPLE

**Electoral Systems and Process**

**45.**   (1)  The electoral systems provided for in Article 47 for the election of President, Member of Parliament or councillor shall ensure—

Principles of electoral systems and process

  *(a)* that citizens are free to exercise their political rights;

  *(b)* universal adult suffrage based on the equality of a vote;

  *(c)* fair representation of the various interest groups in society; and

  *(d)* gender equity in the National Assembly or council.

(2)   The electoral process and system of administering elections shall ensure—

(a) that elections are free and fair;

(b) that elections are free from violence, intimidation and corruption;

(c) independence, accountability, efficiency and transparency of the electoral process;

(d) a simple and practical system of voting and tabulating votes; and

(e) timely resolution of electoral disputes.

Franchise **46.** A citizen who has attained the age of eighteen years is entitled to be registered as a voter and vote in an election by secret ballot.

Electoral systems **47.** (1) Elections to the office of President shall be conducted directly, under a majoritarian electoral system, where the winning candidate must receive more than fifty percent of the valid votes cast, and in accordance with Article 101.

(2) Elections to the National Assembly shall be conducted under a first-past-the-post electoral system in accordance with Article 68.

(3) Elections to councils shall be conducted under a first-past-the-post electoral system, and in accordance with Articles 153 and 154.

(4) A constituency and a ward shall return only one member to the National Assembly and council, respectively.

Electoral process **48.** The electoral process for electing a President, Member of Parliament or councillor shall be prescribed.

System for administering elections **49.** The system of administering elections shall be prescribed.

Access to media **50.** A political party and a candidate contesting an election shall have access to the media, especially during election campaigns.

Independent candidates **51.** A person is eligible for election as an independent candidate for a National Assembly seat if the person—

(a) is not a member of a political party and has not been a member of a political party for at least two months immediately before the date of the election; and

*(b)* meets the qualifications specified in Article 70 for election as a Member of Parliament.

**52.**   (1)  A candidate shall file that candidate's nomination paper to a returning officer, supported by an affidavit stating that the candidate is qualified for nomination as President, Member of Parliament or councillor, in the manner, on the day, and at the time and place set by the Electoral Commission by regulation.

(2)  A returning officer shall, immediately on the filing of a nomination paper, in accordance with clause (1), duly reject the nomination paper if the candidate does not meet the qualifications or procedural requirements specified for election to that office.

(3)  The information contained in a nomination paper and affidavit shall be published by the Electoral Commission, as prescribed.

(4)  A person may challenge, before a court or tribunal, as prescribed, the nomination of a candidate within seven days of the close of nomination and the court shall hear the case within twenty-one days of its lodgement.

(5)  The processes specified in clauses (1) to (4) shall be completed at least thirty days before a general election.

(6)  Where a candidate dies, resigns or becomes disqualified in accordance with Article 70, 100 or 153 or a court disqualifies a candidate for corruption or malpractice, after the close of nominations and before the election date, the Electoral Commission shall cancel the election and require the filing of fresh nominations by eligible candidates and elections shall be held within thirty days of the filing of the fresh nominations.

**53.**   (1)  Where only one candidate is nominated for election as President, Member of Parliament or councillor, by the date and time set by the Electoral Commission for receiving nominations and at the close of the nomination period, that candidate shall be declared duly elected.

Nominations

Unopposed candidates

(2)    A person may, within seven days of a declaration made in accordance with clause (1), challenge the declaration, as prescribed.

(3)    The processes specified in clauses (1) and (2) shall be completed at least thirty days before a general election.

Electoral code of conduct

**54.**    A candidate and a political party shall comply with a prescribed electoral code of conduct.

Losing candidate not eligible for certain appointments

**55.**    A candidate who loses an election as a President, Vice-President, Member of Parliament or councillor is not eligible, during the term of that National Assembly or council, for appointment as—

*(a)* Minister; or

*(b)* Provincial Minister.

Election date for general elections

**56.**  (1)  A general election shall be held, every five years after the last general election, on the second Thursday of August.

(2) The day on which a general election is held shall be a public holiday.

By-elections

**57.**  (1)  Where a vacancy occurs in the office of Member of Parliament, mayor, council chairperson or councillor, a by-election shall be held within ninety days of the occurrence of the vacancy.

(2) A by-election shall not be held within the one hundred-and-eighty day period that precedes a general election.

(3) The Electoral Commission shall, by regulation, set the place where, and the date and time when, a by-election is to be held.

### Constituencies, Wards and Delimitation

Constituencies, wards and delimitation

**58.**    (1)  Zambia shall be divided into constituencies and wards for purposes of elections to the National Assembly and councils, respectively.

(2)    The number of constituencies shall be equal to the number of seats of elected members in the National Assembly.

(3)    The number of wards in a district shall be prescribed.

(4)    The Electoral Commission shall determine the names and boundaries of constituencies and wards.

(5)   The Electoral Commission shall, at intervals of not more than ten years, review the names and boundaries of constituencies and wards.

(6)   The names and details of the boundaries of constituencies and wards shall be published in the *Gazette* and shall come into effect on the next dissolution of Parliament or councils.

(7)   A person may apply to the Constitutional Court for review of a decision of the Electoral Commission made under this Article.

**59.**   The Electoral Commission shall, in delimiting the boundaries of constituencies and wards—

> *(a)* take into account the history, diversity and cohesiveness of the constituency or ward;
>
> *(b)* have regard to population density, trends and projections;
>
> *(c)* ensure that the number of inhabitants in each constituency or ward is reasonable, taking into account the means of communication and geographical features;
>
> *(d)* ensure that constituencies and wards are wholly within districts; and
>
> *(e)* seek to achieve an approximate equality of constituency and ward population, subject to the need to ensure adequate representation for urban and sparsely populated areas.

Matters to take into account when delimiting constituencies and wards

## Political Parties

**60.**   (1)  A political party has the right to—

> *(a)* disseminate information on social and economic programmes of a national character and of its political ideology;
>
> *(b)* sponsor candidates for election or nomination to a State office in respect of which elections are required to be held; and
>
> *(c)* conduct primary elections for the selection of candidates.

Political parties

(2)   A political party shall—

> *(a)* promote the values and principles specified in this Constitution;
>
> *(b)* have a national character;
>
> *(c)* promote and uphold national unity;

*(d)* promote and practice democracy through regular, free and fair elections within the party;

*(e)* respect the right of its members to participate in the affairs of the political party;

*(f)* respect the right of its members to seek redress from a court or tribunal when aggrieved by a decision of the political party; and

*(g)* subscribe to and observe the code of conduct for political parties, as prescribed.

(3) A political party shall not—

*(a)* be founded on a religious, linguistic, racial, ethnic, tribal, gender, sectoral or provincial basis or engage in propaganda based on any of these factors;

*(b)* engage in or encourage violence or intimidate its members, supporters, opponents or other persons;

*(c)* engage in corrupt practices; and

*(d)* except as prescribed, use public resources to promote its interest or that of its members.

(4) The following shall be prescribed with regard to political parties:

*(a)* the establishment and management of a Political Parties' Fund to provide financial support to political parties with seats in the National Assembly;

*(b)* the accounts of political parties which are funded under the Political Parties' Fund and the submission of audited accounts by political parties;

*(c)* the sources of funds for political parties;

*(d)* the maximum amount of money to be used for campaigns during elections; and

*(e)* matters incidental to matters specified in this clause.

Renumbering and renaming of Part V

**5.**   The Constitution is amended by the renumbering of Part V as Part VI, and the deletion of the heading to that Part and the substitution therefor of the following heading and sub-heading:

Case 1:22-cv-00058-CRC   Document 28-2   Filed 09/23/22   Page 32 of 546

LEGISLATURE

### Legislative Authority

**6.**   The Constitution is amended by the repeal of Articles 62 to 78 inclusive and the substitution therefor of the following:

*Repeal and replacement of Articles 62 to 78*

**61.**   The legislative authority of the Republic derives from the people of Zambia and shall be exercised in a manner that protects this Constitution and promotes the democratic governance of the Republic.

*Principles of legislative authority*

**62.**   (1)   There is established the Parliament of Zambia which consists of the President and the National Assembly.

*Parliament, vesting of legislative authority and Members of Parliament*

(2)   The legislative authority of the Republic is vested in and exercised by Parliament.

(3)   A person or body, other than Parliament, shall not have power to enact legislation, except as conferred by this Constitution.

(4) A member of the National Assembly shall be referred to as a Member of Parliament.

**63.**   (1)   Parliament shall enact legislation through Bills passed by the National Assembly and assented to by the President.

*Functions of Parliament and National Assembly*

(2)   The National Assembly shall oversee the performance of executive functions by—

*(a)* ensuring equity in the distribution of national resources amongst the people of Zambia;

*(b)* appropriating funds for expenditure by State organs, State institutions, provincial administration, local authorities and other bodies;

*(c)* scrutinising public expenditure, including defence, constitutional and special expenditure;

*(d)* approving public debt before it is contracted; and

*(e)* approving international agreements and treaties before these are acceded to or ratified.

**64.**   (1)   A Member of Parliament or Minister may introduce a Bill in the National Assembly.

*Introduction of Bills in National Assembly*

(2) The expenses of drafting and introducing a Bill in the National Assembly shall be a charge on the Consolidated Fund.

**65.**   (1)   A Money Bill shall be introduced by a Minister.

*Money Bills*

(2)    A Money Bill means a Bill that provides for, among other matters—

*(a)* the imposition, repeal, remission, alteration or regulation of taxes;

*(b)* the imposition of charges on the Consolidated Fund or any other public fund, or the variation or repeal of any of those charges;

*(c)* the appropriation, receipt, custody, investment, issue or audit of accounts of public monies;

*(d)* the grant of public money to a person or authority or the variation or revocation of such grant;

*(e)* the raising or guaranteeing of a loan or the repayment of it; or

*(f)* matters incidental to matters specified in  this clause.

(3) A Bill that confers emoluments on State officers or Constitutional office holders shall only be introduced in the National Assembly if the emoluments are recommended by the Emoluments Commission.

Presidential assent and referral

**66.**    (1)  Where a Bill is presented to the President for assent, the President shall, within twenty-one days after receipt of the Bill—

*(a)* assent to the Bill; or

*(b)* refer the Bill to the National Assembly for reconsideration, indicating any reservation that the President has concerning the Bill.

(2)    Where the President refers the Bill to the National Assembly for reconsideration, in accordance with clause (1) *(b),* the National Assembly may—

*(a)* amend the Bill taking into account the President's reservation; or

*(b)* pass the Bill, without amendment, by a vote supported by at least two-thirds of the Members of Parliament.

*Constitution of Zambia (Amendment)*      **[No. 2 of 2016   23**

(3)   Where the National Assembly passes the Bill with amendments, in accordance with clause (2) *(a),* the Speaker shall submit the Bill to the President for assent.

(4)   Where the National Assembly passes the Bill, in accordance with clause (2) *(b)*—

   *(a)* the Speaker shall, within seven days of passing the Bill, resubmit the Bill to the President; and

   *(b)* the President shall, within seven days of receipt of the Bill, assent to the Bill.

(5)   Where the National Assembly fails to pass the Bill, in accordance with clause (2) *(b)*, the Bill shall not be presented to the National Assembly in that session.

(6)   Where the President does not assent to a Bill within the periods prescribed in clauses (1) and (4), the Bill shall be considered assented to upon the expiry of those periods.

**67.** (1) Article 62 or 63 shall not prevent Parliament from conferring on a person or authority power to make statutory instruments.

Statutory instruments

(2)   A statutory instrument shall be published in the *Gazette*—

   *(a)* not later than twenty-eight days after it is made; or

   *(b)* in the case of a statutory instrument which will not have the force of law unless it is approved by a person or an authority, other than a person or an authority by which it was made, not later than twenty-eight days after it is so approved;

and if the statutory instrument is not so published, it is void from the date on which it was made.

(3)   A person may challenge a statutory instrument, for its constitutionality, within fourteen days of the publication of the statutory instrument in the *Gazette*.

(4)   Where the Constitutional Court considers that a challenge of a statutory instrument is frivolous or vexatious, the Constitutional Court shall dismiss the action.

(5)   Where the Constitutional Court decides that a provision of a statutory instrument is inconsistent with a provision of this Constitution, that statutory instrument is void from the date on which it was made.

(6)    A Member of Parliament who intends to challenge a statutory instrument, on its constitutionality, shall follow the procedure laid down in the Standing Orders of the National Assembly.

*Elections to National Assembly and Members of Parliament*

Election and composition of National Assembly

**68.**   (1) A Member of Parliament shall be elected in accordance with Article 47 (2) and this Article.

(2)    The National Assembly shall consist of—

  *(a)* one hundred and fifty-six members directly elected on the basis of a simple majority vote under the first-past-the-post system;

  *(b)* not more than eight nominated members;

  *(c)* the Vice-President;

  *(d)* the Speaker; and

  *(e)* the First and Second Deputy Speakers.

Nominated Members of Parliament

**69.**   (1)  The President may nominate a person referred to in Article 68 (2) *(b)* where the President considers it necessary to enhance the representation of special interests, skills or gender in the National Assembly.

(2)    A person may be nominated as a Member of Parliament if the person qualifies to be elected as such under Article 70.

(3)    A person who was a candidate for election in the last preceding general election or a subsequent by-election is not eligible to be nominated as a  Member of Parliament

Qualifications and disqualifications of Members of Parliament

**70.** (1)   Subject to clause (2), a person is eligible to be elected as a Member of Parliament, if that person—

  *(a)* is a citizen;

  *(b)* is  at least twenty-one years old;

  *(c)* is  a registered  voter;

*Constitution of Zambia (Amendment)*     **[No. 2 of 2016   25**

    *(d)* has obtained, as a minimum academic qualification, a grade twelve certificate  or its equivalent; and

    *(e)* declares that person's assets and liabilities, as prescribed.

(2)   A person is disqualified from being elected as a Member of Parliament if that person—

    *(a)*   is validly nominated as a candidate in a presidential election;

    *(b)* is a public officer or Constitutional office holder;

    *(c)* is a judge or judicial officer;

    *(d)* has a mental or physical disability that would make the person incapable of performing the legislative function;

    *(e)* is an undischarged bankrupt;

    *(f)*     is serving a sentence of imprisonment for an offence under a written law;

    *(g)* has, in the immediate preceding five years, served a term of imprisonment of at least three years;

    *(h)* has, in the immediate preceding five years, been removed from public office on grounds of gross misconduct; or

    *(i)*     holds or is acting in an office, as prescribed, the functions of which involve or are connected with the conduct of elections.

**71.**   A nomination for election to the National Assembly is valid if the candidate—

    Nominations for election to National Assembly

    *(a)* has paid a prescribed election fee to the Electoral Commission; and

    *(b)* is supported by at least fifteen persons registered as voters in the constituency in which the candidate is standing for election**.**

Vacation of
office as
Member of
Parliament
and
dissolution
of political
party

**72.** (1)  A Member of Parliament shall, except the Speaker and the First Deputy Speaker, vacate the seat in the National Assembly upon a dissolution of Parliament.

(2)    The office of Member of Parliament becomes vacant if the member—

*(a)* resigns by notice, in writing, to the Speaker;

*(b)* becomes disqualified for election in accordance with Article 70;

*(c)* acts contrary to a prescribed code of conduct;

*(d)* resigns from the political party which sponsored the member for election to the National Assembly;

*(e)* is expelled from the political party which sponsored the member for election to the National Assembly;

*(f)* ceases to be a citizen;

*(g)* having been elected to the National Assembly, as an independent candidate, joins a political party;

*(h)* is disqualified as a result of a decision of the Constitutional Court; or

*(i)* dies.

(3)    The office of a nominated Member of Parliament becomes vacant if the member—

*(a)* resigns by notice, in writing, to the speaker;

*(b)* is disqualified under Article 70;

*(c)* acts contrary to a prescribed code of conduct;

*(d)* ceases to be a citizen;

*(e)* dies; or

*(f)* has the member's nomination revoked by the President.

(4)     A person who causes a vacancy in the National Assembly due to the reasons specified under clause (2) *(a), (b), (c), (d), (g)* and *(h)* shall not, during the term of that Parliament—

   *(a)* be eligible to contest an election; or

   *(b)* hold public office.

 (5)     Where a Member of Parliament is expelled as provided in clause (2) *(e)*, the member shall not lose the seat until the expulsion is confirmed by a court, except that where the member does not challenge the expulsion in court and the period prescribed for challenge lapses, the member shall vacate the seat in the National Assembly.

(6)     Where a court determines that an expulsion of a member, as provided in clause (2) *(e)*, was not justified, there shall be no by-election for that seat and the member shall opt to—

   *(a)* remain a member of the political party and retain the seat; or

   *(b)* resign from the political party and retain the seat as an independent member.

(7)     Where a court determines that an expulsion of a member, as provided in clause (2) *(e)*, was justified, the member shall vacate the seat in the National Assembly.

(8)     Where a vacancy occurs in the National Assembly,  the Speaker shall, within seven days of the occurrence of the vacancy, inform the Electoral Commission of the vacancy, in writing, and a by-election shall be held in accordance with Article 57.

(9)     If a political party is dissolved, a Member of Parliament shall retain the member's seat as an independent member.

**28   No. 2 of 2016]**      *Constitution of Zambia (Amendment)*

Petition of
election of
Member of
Parliament

**73.** (1)  A person may file an election petition with the High Court to challenge the election of a Member of Parliament.

(2)   An election petition shall be heard within ninety days of the filing of the petition.

(3)   A person may appeal against the decision of the High Court to the Constitutional Court.

(4)   A Member of Parliament whose election is petitioned shall hold the seat in the National Assembly pending the determination of the election petition.

Leader of
Government
Business and
Leader of
Opposition

**74.** (1)  The President shall appoint the Vice-President to be the Leader of Government Business in the National Assembly.

(2)   The opposition political party with the largest number of seats in the National Assembly shall elect a Leader of the Opposition from amongst the Members of Parliament who are from the opposition.

**Proceedings of National Assembly**

Sittings of
National
Assembly

**75.** (1)  The Speaker shall, within thirty days after a general election, by notice in the *Gazette,* appoint a date for the first sitting of the National Assembly for that term.

(2) There shall be at least three sittings of the National Assembly in a session of Parliament which shall be held at such times and on such days as the Speaker appoints.

(3)   Notwithstanding clause (2), the President, or two-thirds of the Members of Parliament, may, in writing, request the Speaker to summon a sitting of the National Assembly, as prescribed.

Freedom of
speech,
powers,
privileges
and
immunities

**76.** (1)  A Member of Parliament has freedom of speech and debate in the National Assembly and that freedom shall not be ousted or questioned in a court or tribunal.

(2)   A Member of Parliament shall have the powers, privileges and immunities,  as  prescribed.

**77.**   (1) Subject to this Article and Article 78, the National Assembly shall regulate its own procedure and make Standing Orders for the conduct of its business.

Procedure of National Assembly

(2)   The proceedings of the National Assembly shall not be invalid due to—

*(a)* a vacancy in its membership; or

*(b)* the presence or participation of a person not entitled to be present at, or to participate in, the proceedings of the National Assembly.

(3)   There shall preside at a sitting of the National Assembly—

*(a)* the Speaker;

*(b)* in the absence of the Speaker, the First Deputy Speaker;

*(c)* in the absence of the First Deputy Speaker, the Second Deputy Speaker; or

*(d)* in the absence of the Second Deputy Speaker, another Member of Parliament as the members may elect for that sitting.

(4)   The quorum for a meeting of the National Assembly shall be one-third of the Members of Parliament.

**78.**   (1) Except as otherwise provided in this Constitution, a question proposed for decision in the National Assembly shall be determined by a majority of the Members of Parliament present and voting.

Voting in National Assembly

(2)   On a question proposed for decision in the National Assembly —

*(a)* the Speaker shall have no vote; and

*(b)* in the case of a tie, the question shall be lost.

**7.**   The Constitution is amended by the repeal of Articles 80 to 90 inclusive and the substitution therefor of the following:

Repeal and replacement of Articles 80 to 90

Committees
of National
Assembly

**80.**   (1)  The National Assembly may establish parliamentary committees.

(2)   Parliamentary committees shall be established at the first sitting of the National Assembly after a general election and after the election of the Speaker and the Deputy Speakers.

(3)   The National Assembly shall, in selecting members of a parliamentary committee, ensure that there is equitable representation of the political parties holding seats in the National Assembly and independent Members of Parliament.

(4)   The Standing Orders shall provide for the categories, functions and procedures of parliamentary committees.

Term and
prorogation
of Parliament

**81.**   (1)  The term of Parliament shall be five years commencing from the date that the Members of Parliament are sworn into office after a general election and ending on the date that Parliament is dissolved.

(2)   The National Assembly may, when the Republic is at war, by resolution supported by a simple majority vote of the Members of Parliament, extend the term of Parliament for not more than twelve months at a time.

(3)   Parliament shall stand dissolved ninety days before the holding of the next general election.

(4)   Subject to clauses (5), (6) and (7), the President may dissolve Parliament if the Executive cannot effectively govern the Republic due to the failure of the National Assembly to objectively and reasonably carry out its legislative function.

(5)   Where the President intends to dissolve Parliament in accordance with clause (4), the President shall inform the public and refer the matter, within seven days, to the Constitutional Court.

(6)   The Constitutional Court shall hear the matter, referred to it in accordance with clause (5), within seven days of receipt of the matter.

(7)    The Constitutional Court shall, where it decides that the situation in clause (4) exists, inform the President and the President shall dissolve Parliament.

(8)    Where Parliament is dissolved under clauses (3) and (4), the President shall, until the President-elect assumes office, continue to perform the executive functions, in accordance with Article 104.

(9)    Where Parliament is dissolved under clauses (3) and (4), general elections shall be held within ninety days of the dissolution.

(10)    The President may, due to a state of war, state of public emergency or threatened state of public emergency, after the dissolution of Parliament and before the holding of general elections, recall the National Assembly that was dissolved.

(11)    The President may, in consultation with the Speaker, prorogue Parliament by proclamation.

### Speaker, Deputy Speakers and Officers of National Assembly

**82.**  (1)  The Members of Parliament shall elect, by secret ballot, a Speaker of the National Assembly from a list of names of persons, who are qualified to be elected as Members of Parliament, but are not Members of Parliament, submitted to the National Assembly by—

Speaker and Deputy Speakers of National Assembly

*(a)* the President; and

*(b)* political parties holding seats in the National Assembly.

(2)    A person is qualified to be elected as Speaker of the National Assembly if that person—

*(a)* is a citizen by birth or descent;

*(b)*  does not have dual citizenship;

*(c)* has been ordinarily resident in Zambia;

*(d)* is at least thirty-five years old;

(e) has obtained, as a minimum academic qualification, a grade twelve certificate or its equivalent;

(f) declares that person's assets and liabilities, as prescribed;

(g) has paid that person's taxes or  made arrangements satisfactory to the appropriate tax authority for the payment of the taxes; and

(h) is not a Member of Parliament.

(3)   There shall be two Deputy Speakers of the National Assembly who are not members of the same political party and of the same gender.

(4)   The Members of Parliament shall elect, by secret ballot, the First Deputy Speaker from a list of three names, selected by the political parties represented in the National Assembly, from among persons who are qualified to be elected as Members of Parliament but are not Members of Parliament.

(5)   The Members of Parliament shall elect, by secret ballot, the Second Deputy Speaker from among their number.

(6)   The Members of Parliament shall elect a Speaker and the Deputy Speakers—

(a) when the National Assembly first sits after a general election; and

(b) if the office of Speaker or Deputy Speaker becomes vacant.

(7)   The office of Speaker or Deputy Speaker shall become vacant if the Speaker or Deputy Speaker—

(a) becomes disqualified under Article 70 (2);

(b) resigns by notice, in writing, to the President;

(c) is removed from office in accordance with Article 83; or

(d) dies.

(8)   When the office of Speaker or Deputy Speaker becomes vacant, business shall not be transacted in the National Assembly, other than an election to the office of Speaker or Deputy Speaker.

**83.** (1)  A Member of Parliament, supported by at least one-third of the Members of Parliament, may move a motion for the removal of the Speaker or a Deputy Speaker, alleging that the Speaker or Deputy Speaker has—

Removal of Speaker on specified grounds

(*a*) violated this Constitution;

(*b*) a mental or physical disability that makes the Speaker or Deputy Speaker incapable of performing the functions of the office of Speaker or Deputy Speaker; or

(*c*) committed gross misconduct.

(2)    The motion shall specify the particulars of the allegation.

(3)    Where a motion is supported by a resolution of two-thirds of the Members of Parliament, the Speaker or Deputy Speaker shall be suspended from office and the National Assembly shall refer the matter to a parliamentary committee.

(4)    The parliamentary committee, to which the matter has been referred in accordance with clause (3), shall, within seven days of the reference—

(*a*) investigate the matter, and the Speaker or Deputy Speaker has the right to appear, be heard and be represented before the parliamentary committee; and

(*b*) report to the National Assembly whether or not the particulars of the allegations specified in the motion have been substantiated.

(5)    Where the parliamentary committee reports that the particulars of the allegation against the Speaker or Deputy Speaker—

(*a*) are not substantiated, the National Assembly  shall, on a motion supported by the votes of not less than two-thirds of the Members of Parliament, taken by secret ballot, resolve that the Speaker or Deputy Speaker—

(i)    did not commit the violations specified in the motion; and

(ii)   be reinstated; or

(*b*) are substantiated, the National Assembly shall, on a motion supported by the votes of not less than two-thirds of the Members of Parliament, taken by secret ballot, resolve that the Speaker or Deputy Speaker has committed the violations specified in the motion and that the Speaker or Deputy Speaker cease to hold office forthwith.

(6)   Where a resolution is made, in accordance with clause (5) *(b)*, an election of Speaker or Deputy Speaker shall be conducted within seven days of the resolution, in accordance with Article 82.

Clerk of National Assembly

**84.**   (1)   There shall be a Clerk of the National Assembly who shall be appointed by the Parliamentary Service Commission, subject to ratification by the National Assembly.

(2)   A person shall not be appointed Clerk of the National Assembly unless that person has the academic qualifications, experience and skills prescribed.

(3)   Subject to clause (5), the Clerk of the National Assembly shall retire on attaining the age of sixty-five years.

(4)   The Clerk of the National Assembly may retire, with full benefits, on attaining the age of sixty years.

(5)   The National Assembly may, by a resolution supported by the votes of not less than two-thirds of the Members of Parliament, remove the Clerk of the National Assembly on the same grounds and procedure that apply to the removal of a judge.

(6)   The Clerk of the National Assembly may resign from office by three months' notice, in writing, to the Speaker.

Officers of National Assembly

**85.**   There shall be appointed such officers in the department of the Clerk of the National Assembly, as prescribed.

### General Parliamentary Matters

Presidential address to National Assembly and presidential messages

**86.**   (1)   The President shall, at least twice in every year, attend and address the National Assembly.

(2)   The President may, at any time during the term of Parliament, send a message to the National Assembly which shall be read by the Leader of Government Business or by a Minister designated by the President.

Vote of censure

**87.**   (1)   The National Assembly may censure a Minister or Provincial Minister where the Members of Parliament are dissatisfied with the conduct or performance of the Minister or Provincial Minister.

(2)   The proceedings to censure a Minister or Provincial Minister shall be commenced by a notice of motion, submitted to the Speaker, signed by at least one-third of the Members of Parliament, stating the grounds in support of the motion.

(3)    The Speaker shall, on receipt of the notice of motion submitted in accordance with clause (2), cause a copy of the notice of motion to be given to the Minister or Provincial Minister.

(4)    The notice of motion to censure a Minister or Provincial Minister shall not be debated until after the expiry of seven days from the date the notice of motion is submitted to the Speaker.

(5)    The National Assembly may pass a vote of censure on a Minister or Provincial Minister by resolution supported by two-thirds of the votes of the Members of Parliament.

**88.**    (1)  A citizen may petition the National Assembly to initiate the enactment, amendment or repeal of legislation.

Right to petition and make comments

(2)    A citizen may comment on a deliberation, statement or decision of the National Assembly.

(3)    The manner of petitioning and commenting referred to in this Article shall be prescribed.

**89.**    (1)  The National Assembly shall facilitate public involvement in the legislative process.

Public access and participation

(2)    The National Assembly or a parliamentary committee shall not exclude the public or media from its sittings, unless there are justifiable reasons for the exclusion and the Speaker informs the public or media of the reasons.

**8.**    The Constitution is amended by the repeal of Parts VI to XIV inclusive and the substitution therefor of the following:

Repeal and replacement of Parts VI to XIV

PART VII

Executive

**Executive Authority**

**90.**    The Executive authority derives from the people of Zambia and shall be exercised in a manner compatible with the principles of social justice and for the people's well-being and benefit.

Principles of executive authority

**91.**    (1)  There shall be a President of the Republic who shall be the Head of State and Government and Commander-in-Chief of the Defence Force.

Presidency and vesting of executive authority

(2)    The executive authority of the State vests in the President and, subject to this Constitution, shall be exercised directly by the President or through public officers or other persons appointed by the President.

(3)    The President shall, in exercise of the executive authority of the State—

*(a)* respect, uphold and safeguard this Constitution;

*(b)* safeguard the sovereignty of the Republic;

*(c)* promote democracy and enhance the unity of the Nation;

*(d)* respect the diversity of the different communities of Zambia;

*(e)* promote and protect the rights and freedoms of a person; and

*(f)*    uphold the rule of law.

Executive functions of President

**92.**    (1)  The President shall perform, with dignity, leadership and integrity, the acts that are necessary and expedient for, or reasonably incidental to, the exercise of the executive authority.

(2)    Without limiting the other provisions of this Constitution, the President shall—

*(a)* appoint ambassadors, high commissioners, plenipotentiaries, diplomatic representatives and consuls;

*(b)* receive and accredit foreign ambassadors, high commissioners, plenipotentiaries, diplomatic representatives, consuls and heads of international organisations;

*(c)* negotiate and sign international agreements and treaties and, subject to the approval of the National Assembly, ratify or accede to international agreements and treaties;

*(d)* establish, merge and dissolve Government ministries, subject to the approval of the National Assembly;

*(e)* appoint persons as are required by this Constitution or any other law to be appointed by the President;

*(f)* appoint persons as are required to perform special duties for the Executive;

*(g)* confer honours;

*(h)* sign and promulgate proclamations as specified in this Constitution or as prescribed;

*(i)* initiate Bills for submission to, and consideration by, the National Assembly; and

*(j)* perform other functions specified by this Constitution or as prescribed.

**93.** (1) A decision or instruction of the President shall be in writing under the President's signature.

(2)   The signature of the President on an instrument shall be under Public Seal.

**94.** (1) Where the performance of an executive function is expressed by this Constitution to be subject to approval by the National Assembly, the National Assembly shall, in the sitting next after receipt of the request for approval, give the approval within twenty-one days of the commencement of the sitting.

(2)   Where an approval is not given within the period specified in clause (1) or the National Assembly unreasonably refuses to give an approval as requested, the President shall refer the matter to the Constitutional Court for hearing and the decision of the Constitutional Court is final.

(3)   Where the Constitutional Court decides that the refusal or delay by the National Assembly was justified, the President shall comply with the order of the Court.

(4)   Where the Constitutional Court decides that the refusal or delay by the National Assembly was unreasonable, the National Assembly shall proceed to approve the matter.

**95.**   (1)   Where in this Constitution an appointment to an office or the taking of a measure by the President is subject to ratification by the National Assembly, the National Assembly shall, in the sitting next after receipt of the request for ratification, give its ratification within twenty-one days of the commencement of the sitting.

(2)   Where ratification is not given within the period specified in clause (1), the President shall propose another measure or appoint another person to that office and submit that measure or appointment for ratification by the National Assembly.

(3)   Where the National Assembly refuses or delays the ratification for the second time, the President shall propose another measure or appoint another person to that office and shall submit that measure or appointment for ratification by the National Assembly.

(4)   Where the National Assembly refuses or delays the ratification of the measure or appointment for the third time, that measure or appointment shall take effect.

Confirmation of presidential decisions and instructions

Approval of appointments and measures by National Assembly

Ratification of appointments and measures by National Assembly

Advisory
Committee
on
prerogative
of mercy

**96.** (1) There shall be an Advisory Committee on the prerogative of mercy which shall consist of persons appointed by the President.

(2) The Advisory Committee shall advise the President on an action or a decision to be taken in relation to a person convicted of an offence by a court or court-martial.

(3) A member of the Advisory Committee shall hold office at the pleasure of the President.

(4) The President may preside at a meeting of the Advisory Committee.

(5) The Advisory Committee shall determine its own procedure for meetings.

Prerogative
of mercy

**97.** (1) The President may, on the advice of the Advisory Committee—

    *(a)* conditionally or unconditionally, pardon a person convicted of an offence;

    *(b)* substitute a less severe form of punishment imposed on a person by a court; or

    *(c)* remit the whole or part of a fine, penalty or forfeiture.

(2) A person who is sentenced to death may request the President, either directly or through a representative, for a pardon or commutation of the sentence.

Protection of
President
from legal
proceedings

**98.** (1) A person shall not institute or continue civil proceedings against the President or a person performing executive functions, as provided in Article 109, in respect of anything done or omitted to be done by the President or that person in their private capacity during the tenure of office as President.

(2) The President shall not, in the President's private capacity during the tenure of office as President, institute or continue civil proceedings against a person.

(3) For purposes of clauses (1) and (2), where a law limits the time within which proceedings may be brought against a person, the term of office shall not be taken into account in calculating the period of time.

(4) Subject to clause (9), the President or a person performing executive functions, as provided in Article 109, is immune from criminal proceedings which immunity continues after that person ceases to hold or perform the functions of that office.

(5) Where there is *prima facie* evidence that a person who held the office of President or who performed executive functions committed an offence whilst in office or during the period that person performed executive functions, the President shall submit a report, outlining the grounds relating to the offence allegedly committed, to the National Assembly, requesting the National Assembly to remove the immunity from criminal proceedings of that person.

(6) Where the National Assembly receives a report, submitted in accordance with clause (5), the National Assembly shall constitute a select committee to scrutinise the grounds submitted and determine whether or not there is a *prima facie* case, based on the grounds submitted, that warrants the removal of the immunity from criminal proceedings, and recommend its decision to the National Assembly.

(7) The person who held the office of President or who performed executive functions has the right to appear, be represented and be heard before the select committee constituted under clause (6).

(8) Where the select committee, constituted under clause (6), recommends the removal of immunity from criminal proceedings from the person who held the office of President or who performed executive functions, the National Assembly may remove the immunity in respect of the alleged offence, by a resolution supported by a vote of not less than two-thirds of the Members of Parliament.

(9) Where immunity is removed, in accordance with clause (8), the person who held the office of President or who performed executive functions, shall be charged with the offence for which the immunity from criminal proceedings was removed.

(10) Where a court acquits the person who held the office of President or who performed executive functions, of an offence for which that person's immunity from criminal proceedings was removed, the immunity of that person shall, for all purposes, be deemed not to have been removed, without further proceedings.

(11) The process for the removal of immunity, provided for under this Article, shall not apply to an impeachable offence under Article 108.

### Election of President

Returning
officer for
presidential
elections

**99.**   The Chairperson of the Electoral Commission shall be the Returning Officer in an election to the office of President.

Qualifications
and
disqualifica-
tions for
nomination
as
presidential
candidate

**100.**   (1) A person qualifies to be nominated as a candidate for election as President if that person—

*(a)* is a citizen by birth or descent;

*(b)* has been ordinarily resident in Zambia;

*(c)* is at least thirty-five years old;

*(d)* is a registered voter;

*(e)* has obtained, as a minimum academic qualification, a grade twelve certificate or its equivalent;

*(f)* is fluent in the official language;

*(g)* has paid that person's taxes or has made arrangements, satisfactory to the appropriate tax authority, for the payment of the taxes;

*(h)* declares that person's assets and liabilities, as prescribed;

*(i)* pays the prescribed election fee on, or before, the date fixed for the delivery of nomination papers; and

*(j)* is supported by at least one hundred registered voters from each Province.

(2)   A person is disqualified from being nominated as a candidate for election as President if that person—

*(a)* is a public officer;

*(b)* has dual citizenship;

*(c)* is holding or acting in a Constitutional office or other public office;

*(d)* is a judge or judicial officer;

*(e)* was removed from public office on grounds of gross misconduct in the immediate preceding five years;

*(f)* has a mental or physical disability that would make the person incapable of performing the executive functions;

*(g)* is an undischarged bankrupt;

*(h)* is serving a sentence of imprisonment; or

*(i)* has, in the immediate preceding five years, served a term of imprisonment of at least three years.

**101.** (1)  A President shall be elected by registered voters in accordance with Article 47 (1) and this Article.

Election of
President

(2)   The Returning Officer shall declare the presidential candidate who receives more than fifty percent of the valid votes cast during the election as President-elect.

(3)   If at the initial ballot a presidential candidate does not receive more than fifty percent of the valid votes cast, a second ballot shall be held within thirty-seven days of the initial ballot, where the only candidates shall be the presidential candidates who obtained—

   *(a)* the highest and second highest number of valid votes cast in the initial ballot; or

   *(b)* an equal number of the valid votes cast  in the initial ballot, being the highest votes amongst the presidential candidates that stood for election to the office of President.

(4)   A person may within seven days of the declaration made under clause (2), petition the Constitutional Court to nullify the election of a presidential candidate who took part in the initial ballot on the ground that—

   *(a)* the person was not validly elected; or

   *(b)* a provision of this Constitution or other law relating to presidential elections was not complied with.

(5)   The Constitutional Court shall hear an election petition filed in accordance with clause (4) within fourteen days of the filing of the petition.

(6)   The Constitutional Court may, after hearing an election petition—

   *(a)* declare the election of the presidential candidate valid;

   *(b)* nullify the election of the presidential candidate; or

   *(c)* disqualify the presidential candidate from being a candidate in the second ballot.

(7)   A decision of the Constitutional Court made in accordance with clause (6) is final.

(8)   The presidential candidate who obtains the majority of the valid votes cast in the second ballot shall be declared President-elect.

Disqualifi-
cation for
run-off

**102.**   (1)  If a presidential candidate—

(a) resigns for a reason other than health;

(b) becomes disqualified as specified in Article 100; or

(c) is disqualified by a decision of the Constitutional Court in accordance with Article 101;

the presidential candidate shall not take part in the second ballot and the candidate who scored the third highest number of valid votes cast in the initial ballot shall be a presidential candidate in the second ballot, together with the remaining presidential candidate that had initially qualified for the second ballot.

(2)   If a presidential candidate—

(a) dies; or

(b) resigns due to ill-health;

before the taking of a second ballot, the running mate to that presidential candidate in the initial ballot shall assume the place of that presidential candidate.

(3)   The presidential candidate who assumed the place of the previous presidential candidate in accordance with clause (2) shall appoint a running mate.

(4)   Where both presidential candidates—

(a) resign;

(b) become disqualified under Article 100;

(c) become disqualified by a decision of the Constitutional Court under Article 101; or

(d) die;

before the taking of the second ballot, fresh nominations shall be filed with the Electoral Commission, as prescribed.

Election
petition

**103.**   (1)  A person may, within seven days of the declaration of a President-elect, petition the Constitutional Court to nullify the election of the President-elect on the ground that—

(a) the person was not validly elected; or

(b) a provision of this Constitution or other law relating to presidential elections was not complied with.

(2)   The Constitutional Court shall hear an  election petition relating to the President-elect within fourteen days of the filing of the petition.

(3)   The Constitutional Court may, after hearing an election petition—

    *(a)* declare the election of the President-elect valid; or

    *(b)* nullify the election of the President-elect and Vice-President-elect.

(4)   A decision of the Constitutional Court under clause (3) is final.

(5)   Where the election of the President-elect and Vice-President-elect is nullified by the Constitutional Court, a presidential election shall be held within thirty days from the date of the nullification.

**104.**   (1) The President-elect shall be sworn into office and assume office in accordance with Article 105.

  *Transition period before assuming office*

(2)   Subject to clauses (3) and (4), where the Returning Officer declares a presidential candidate as President-elect, the incumbent shall continue to perform the executive functions until the President-elect assumes office, except the power to—

    *(a)* make an appointment; or

    *(b)* dissolve the National Assembly.

(3)   Where an election petition is filed against the incumbent, under Article 103 (1), or an election is nullified, under Article 103(3) *(b)*, the Speaker shall perform the executive functions, except the power to—

    *(a)* make an appointment; or

    *(b)* dissolve the National Assembly.

(4)   Subject to Article 105 and except where the incumbent is the President-elect, the incumbent President shall, on the assumption of office by the President-elect, begin and complete the procedural and administrative handing over of the executive functions, to the President-elect, within fourteen days from the day the President-elect assumes office.

### Assumption of Office, Tenure of Office and Vacancy

**105.**   (1) The President-elect shall assume office after being sworn in by the Chief Justice or, in the absence of the Chief Justice, the Deputy Chief Justice.

  *Assumption of office*

(2)   The President-elect shall be sworn into office on the Tuesday following—

*(a)* the seventh day after the date of the declaration of the presidential election results, if no petition has been filed in accordance with Article 103; or

*(b)* the seventh day after the date on which the Constitutional Court declares the election to be valid.

(3)   Subject to clause (4), where the President-elect dies, resigns or is for a reason unable to assume office, the Vice-President-elect shall be sworn into, and assume the office of President, in accordance with clause (1).

(4)   Subject to clause (5), where the inability of the President-elect to assume office is as a result of an event or circumstance beyond the control of the President-elect, the Vice-President-elect shall not be sworn into office.

(5)   A political party whose presidential candidate was declared President-elect or another person shall, within three days from the date on which the President-elect should have been sworn into office, petition the Constitutional Court to determine whether or not the inability of the President-elect to assume office is permanent.

(6)   Where the Constitutional Court decides that the inability of the President-elect to assume office is permanent, the Vice-President-elect shall be sworn into office as President and assume office in accordance with clause (1).

(7)   The Vice-President-elect who assumes office as President, in accordance with clause (3) or (6), shall appoint a person as Vice-President, subject to approval by the National Assembly, signified by a vote of not less than two-thirds of the Members of Parliament.

(8)   Where the Vice-President elect who is supposed to assume the office of President as specified in clause (3) or (6) dies, resigns or is for another reason unable to assume the office of President—

*(a)* the Speaker shall perform the executive functions; and

*(b)* a presidential election shall be held within sixty days of the occurrence of the vacancy.

(9)   The Speaker shall, perform the executive functions assumed in accordance with clause (8) except the power to make an appointment or dissolve the National Assembly.

(10)   The Speaker shall, when the President-elect assumes office, complete the procedural and administrative handing over process within thirty days.

**106.**   (1)  The term of office for a President is five years which shall run concurrently with the term of Parliament, except that the term of office of President shall expire when the President-elect assumes office in accordance with Article 105.

(2)   A President shall hold office from the date the President-elect is sworn into office and ending on the date the next President-elect is sworn into office.

(3)   A person who has twice held office as President is not eligible for election as President.

(4)   The office of President becomes vacant if the President—

   *(a)* dies;

   *(b)* resigns by notice in writing to the Speaker of the National Assembly; or

   *(c)* otherwise ceases to hold office under Article 81,107 or 108.

(5)   When a vacancy occurs in the office of President, except under Article 81—

   *(a)* the Vice-President shall immediately assume the office of President; or

   *(b)* if the Vice-President is unable for a reason to assume the office of President, the Speaker shall perform the executive functions, except the power to—

       (i) make an appointment; or

       (ii) dissolve the National Assembly;

   and a presidential election shall be held within sixty days after the occurrence of the vacancy.

(6)   If the Vice-President assumes the office of President, in accordance with clause (5)*(a)*, or a person is elected to the office of President as a result of an election held in accordance with clause 5*(b)*, the Vice-President or the President-elect shall serve for the unexpired term of office and be deemed, for the purposes of clause (3)—

   *(a)* to have served a full term as President if, at the date on which the President assumed office, at least three years remain before the date of the next general election; or

   *(b)* not to have served a term of office as President if, at the date on which the President assumed office, less than three years remain before the date of the next general election.

Removal of
President on
grounds of
incapacity

**107.** (1) A Member of Parliament, supported by at least one-third of the Members of Parliament, may move a motion for the investigation of the physical or mental capacity of the President to perform executive functions.

(2) The motion moved in accordance with clause (1) shall specify the particulars of the allegation.

(3) Where the motion is supported in the National Assembly by a resolution of two-thirds of the Members of Parliament—

*(a)* the Speaker shall, within forty-eight hours of the adoption of the resolution, inform the Chief Justice of the resolution; and

*(b)* the Chief Justice shall immediately inform the President of the resolution, whereupon the President shall cease to perform the executive functions and the Vice-President shall perform the executive functions, except the power to—

(i) make an appointment; or

(ii) dissolve the National Assembly.

(4) The Chief Justice shall, within seven days of being informed of the resolution of the National Assembly, constitute a medical board, in consultation with the body responsible for regulating health practitioners, to inquire into the physical or mental capacity of the President.

(5) A medical board shall consist of not less than three persons selected from among persons who are registered as health practitioners.

(6) A medical board, constituted under clause (5), shall examine the President and report to the Chief Justice, within fourteen days of the constitution of the medical board, whether or not the President is capable of performing the executive functions.

(7) Where the medical board reports that the President is capable of performing the executive functions, the Chief Justice shall, within forty-eight hours of the receipt of the medical report, cause a copy of the report to be presented to the National Assembly which shall resolve that the President should resume performing the executive functions.

(8)   Where the medical board reports that the President is not capable of performing the executive functions, the Chief Justice shall, within forty-eight hours of the receipt of the medical report, cause a copy of the report to be presented to the National Assembly which shall resolve that the President should cease to hold office and the Vice-President shall assume the office of President in accordance with Article 106 (5).

(9)   This Article applies to the Vice-President.

**108.**   (1)  A Member of Parliament, supported by at least one-third of the Members of Parliament, may move a motion for the impeachment of the President alleging that the President has committed—

Impeachment of President

    *(a)* a violation of a provision of this Constitution or other law;

    *(b)* a crime under international law; or

    *(c)* gross misconduct.

(2)   The motion, moved in accordance with clause (1), shall specify the particulars of the allegation.

(3)   Where a motion, moved in accordance with clause (1), is supported, in the National Assembly, by a resolution of two-thirds of the Members of Parliament—

    *(a)* the Speaker shall, within forty-eight hours of the adoption of the resolution, inform the Chief Justice of the resolution; and

    *(b)* the Chief Justice shall immediately inform the President of the resolution, whereupon the President shall cease to perform the executive functions and the Vice-President shall perform the executive functions, except the power to—

        (i) make an appointment; or

        (ii) dissolve the National Assembly.

(4)   The Chief Justice shall, within seven days of being informed of the resolution of the National Assembly, appoint a tribunal, in consultation with the Judicial Service Commission, which shall consist of a chairperson and not less than two other members from among persons who hold, have held or qualify to hold, the office of judge.

(5)   The tribunal appointed under clause (4) shall, within thirty days of its appointment—

    *(a)* investigate the matter relating to the impeachment of the President; and

    *(b)* report to the Chief Justice as to whether or not the particulars of the allegations specified in the motion have been substantiated.

(6)    The President has the right to appear and be represented before the tribunal during its investigation.

(7)    The Chief Justice shall, on receipt of the report referred to in clause (5) *(b)*, immediately submit the report to the National Assembly.

(8)    Where the tribunal reports that the particulars of an allegation against the President—

    *(a)* is not substantiated, the National Assembly shall, on a motion supported by the votes of not less than two-thirds of the Members of Parliament, taken by secret ballot, resolve that—

        (i) the President did not commit the violations specified in the motion; and

        (ii) further proceedings shall not be taken with respect to the allegation; or

    *(b)* is substantiated, the National Assembly shall, on a motion supported by the votes of not less than two-thirds of the Members of Parliament, taken by secret ballot, resolve that the President has committed the violations specified in the motion and that the President should cease to hold office forthwith.

(9)    The President shall, on the passing of a resolution in accordance with—

    *(a)* clause (7) *(a)*, resume to perform the executive functions; or

    *(b)* clause (7) *(b)*, cease to hold office and be amenable to prosecution without the need to lift the immunity under Article 98.

(10)    Where a motion is moved in accordance with clause (1), the President shall not dissolve Parliament.

(11)    This Article applies to the Vice-President.

**109.**   (1)  If the President leaves Zambia or is absent from office, the Vice-President shall perform the executive functions specified, in writing, by the President until the President returns to office or revokes the authority.

Performance of executive functions during absence of President

(2)   Where the Vice-President is incapable of performing the executive functions, as specified under clause (1), the President shall appoint a member of the Cabinet to perform the executive functions until the—

*(a)* Vice-President is able to perform those functions;

*(b)* President returns to office; or

*(c)* President revokes the authority.

(3)   Where the President is unable to appoint a member of Cabinet to perform the executive functions, in accordance with clause (2), Cabinet may elect one of its members to perform the executive functions until the—

*(a)* Vice-President is able to perform those functions;

*(b)* President returns to office; or

*(c)* President revokes the authority.

## Vice-President

**110.**   (1)  There shall be a Vice-President for the Republic who shall be the running mate to a presidential candidate in a presidential election.

Vice-President, election to office and swearing in

(2)   The qualifications and disqualifications applying to a presidential candidate apply to the person selected by the presidential candidate to be the running mate.

(3)   An election to the office of Vice-President shall be conducted at the same time as that of an election to the office of President so that a vote cast for a presidential candidate is a vote cast for the running mate, and if the presidential candidate is elected, the running mate shall be considered to have been elected.

(4)   A Vice-President-elect shall be sworn into office by the Chief Justice or, in the absence of the Chief Justice, the Deputy Chief Justice.

(5)   The Vice-President shall assume office on the same day that the President assumes office.

Tenure of office of Vice-President and vacancy

**111.**  (1)  The term of office for a Vice-President is five years.

(2)  A Vice-President shall hold office from the date the Vice-President-elect is sworn into office and ending on the date the next President-elect is sworn into office.

(3)  A person who has twice held the office of Vice-President shall not be selected as a running mate.

(4)  The office of Vice-President becomes vacant if the Vice-President—

(a) dies;

(b) resigns by notice in writing to the President;

(c) otherwise ceases to hold office under Article 81,107 or 108; or

(d) assumes the office of President.

(5)  Where a vacancy occurs in the office of Vice-President, except as provided under Article 81, the President shall appoint another person to be Vice-President and the National Assembly shall, by a resolution supported by the votes of not less than two-thirds of the Members of Parliament, approve the appointment of that person as Vice-President.

(6)  The person who assumes office as Vice-President, in accordance with clause (5), shall serve for the unexpired term of office and be deemed for the purposes of clause (3)—

(a) to have served a full term as Vice-President if, at the date on which the Vice-President assumed office, more than three years remain before the date of the next general election; or

(b) not to have served a term of office as Vice-President if, at the date on which the Vice-President assumed office, less than three years remain before the date of the next general elections.

Functions of Vice-President

**112.**  (1)  The Vice-President shall be answerable to the President in the performance of the functions of Vice-President.

(2)  The Vice-President shall—

(a) perform the functions that are assigned to the Vice-President by the President;

(b) perform the executive functions during the periods specified in this Constitution; and

(c) assume the office of President as specified in Article 106 (5).

**Cabinet Ministers**

113.   There shall be a Cabinet consisting of the—

(a) President;

(b) Vice-President;

(c) Ministers;  and

(d) Attorney-General, as *ex-officio* member.

114.   (1)  The functions of Cabinet are as follows:

(a) approve and cause to be implemented Government policy;

(b) approve Government Bills for introduction to the National Assembly;

(c) approve and cause the national budget to be presented to the National Assembly;

(d) recommend the accession and ratification of international agreements and treaties to the National Assembly;

(e) recommend, for approval of the National Assembly—

(i) loans to be contracted by the State; and

(ii) guarantees on loans contracted by State institutions or other institutions; and

(f) advise the President on matters relating to the performance of executive functions.

(2)   Cabinet shall take collective responsibility for Cabinet decisions.

115.   (1)   Subject to this Article, Cabinet shall regulate its own procedure.

(2)   Cabinet shall meet at least once in every month to perform its functions as specified in Article 114.

(3)   The Secretary to the Cabinet shall, in consultation with the President, call for meetings of Cabinet.

(4)   There shall preside at meetings of Cabinet—

(a) the President;

(b) in the absence of the President, the Vice-President; or

*Cabinet*

*Functions of Cabinet*

*Proceedings of Cabinet meetings*

*(c)* in the absence of the Vice-President, a member of Cabinet appointed by the President.

(5)   Where the President is unable to appoint a member of Cabinet to preside at a meeting of Cabinet, the members of Cabinet present at the meeting may elect one of the members to preside.

(6)   The President may, in consultation with the Secretary to the Cabinet, invite a person whose presence is desirable to attend and participate in the deliberations of a meeting of Cabinet but that person shall have no vote.

Ministers

**116.**   (1)   The President shall appoint a prescribed number of Members of Parliament as Ministers.

(2)   A Minister shall be responsible, under the direction of the President, for the policy and strategic direction of a Ministry, department or other State institution, as assigned by the President.

(3)   The office of Minister becomes vacant if—

*(a)* the Minister is removed from office by the President;

*(b)* the Minister resigns, by notice in writing to the President;

*(c)* in the case of a nominated Member of Parliament, the nomination is revoked;

*(d)* the Minister dies;

*(e)* another person assumes the office of President; or

*(f)* the Minister has a mental or physical disability that makes the Minister incapable of performing the functions of that office.

Provincial Minister

**117.**   (1)   The President shall appoint a Provincial Minister for each Province from among  Members of Parliament.

(2)   The office of Provincial Minister becomes vacant if—

*(a)* the Provincial Minister is removed from office by the President;

*(b)* the Provincial Minister resigns, by notice in writing to the President;

*(c)* the Provincial Minister dies;

*(d)* another person assumes the office of President;

*(e)* the Provincial Minister has a mental or physical disability that makes the Provincial Minister incapable of performing the functions of that office; or

(f) in the case of a nominated Member of Parliament, the nomination is revoked.

(3)   A Provincial Minister shall—

(a) be the head of Government in the Province;

(b) ensure that national policies are implemented in all districts in the Province; and

(c) ensure that the concurrent functions of the Province and the exclusive functions of the local authorities are performed in accordance with this Constitution and other laws.

PART VIII

JUDICIARY

**Judicial Authority, System of Courts and Independence**

**118.**   (1)  The judicial authority of the Republic derives from the people of Zambia and shall be exercised in a just manner and such exercise shall promote accountability.

Principles of judicial authority

(2)   In exercising judicial authority, the courts shall be guided by the following principles:

(a) justice shall be done to all, without discrimination;

(b) justice shall not be delayed;

(c) adequate compensation shall be awarded, where payable;

(d) alternative forms of dispute resolution, including traditional dispute resolution mechanisms, shall be promoted, subject to clause (3);

(e) justice shall be administered without undue regard to procedural technicalities; and

(f) the values and principles of this Constitution shall be protected and promoted.

(3)   Traditional dispute resolution mechanisms shall not—

(a) contravene the Bill of Rights;

(b) be inconsistent with other provisions of this Constitution or other written law; or

(c) be repugnant to justice and morality.

**119.**   (1)  Judicial authority vests in the courts and shall be exercised by the courts in accordance with this Constitution and other laws.

Vesting of judicial authority and performance of judicial function

(2)   The courts shall perform the following judicial functions:

*(a)* hear civil and criminal matters; and

*(b)* hear matters relating to, and in respect of, this Constitution.

(3)    Except as otherwise provided in this Constitution, other law or as ordered by a court, the proceedings of a court shall be in public.

System of court

**120.**    (1)  The Judiciary shall consist of the superior courts and the following courts:

*(a)* subordinate courts;

*(b)* small claims courts;

*(c)* local courts; and

*(d)* courts, as prescribed.

(2)    The courts  shall be courts of record, except that local courts shall progressively become courts of record.

(3)    The following matters shall be prescribed:

*(a)* processes and procedures of the courts;

*(b)* jurisdiction, powers and sittings, of the Industrial Relations Court, Commercial Court, Family Court, Children's Court and other specialised courts;

*(c)* classification and divisions of the subordinate courts;

*(d)* classification and divisions of the local courts;

*(e)* jurisdiction and composition of subordinate courts, small claims courts, local courts and other prescribed courts; and

*(f)* grading of judicial officers and staff of subordinate courts, local courts and other prescribed courts.

(4)    The courts, except the Supreme Court and the Constitutional Court, shall be devolved to the Province and progressively to districts.

(5)    Superior courts shall sit as circuit courts in districts, in accordance with a circuit schedule issued by the Chief Justice.

Ranking of Supreme and Constitutional Courts

**121.**    The Supreme Court and Constitutional Court rank equivalently.

Functional independence of Judiciary

**122.**    (1)  In the exercise of the judicial authority, the Judiciary shall be subject only to this Constitution and the law and not be subject to the control or direction of a person or an authority.

Case 1:22-cv-00058-CRC    Document 28-2    Filed 09/23/22    Page 66 of 546

(2)    A person and a person holding a public office shall not interfere with the performance of a judicial function by a judge or judicial officer.

(3)    The Judiciary shall not, in the performance of its administrative functions and management of its financial affairs, be subject to the control or direction of a person or an authority.

(4)    A person and a person holding a public office shall protect the independence, dignity and effectiveness of the Judiciary.

(5)    The office of a judge or judicial officer shall not be abolished while there is a substantive holder of the office.

**123.**    (1)  The Judiciary shall be a self-accounting institution and shall deal directly with the Ministry responsible for finance in matters relating to its finances.

Financial independence of Judiciary

(2)    The Judiciary shall be adequately funded in a financial year to enable it effectively carry out its functions.

**Establishment, Jurisdiction and sittings of Superior Courts**

**124.**    There is established the Supreme Court which consists of—

Establishment and composition of Supreme Court

*(a)* the Chief Justice;

*(b)* the Deputy Chief Justice; and

*(c)* eleven other judges or a higher number of judges, as prescribed.

**125.**    (1)  Subject to Article 128, the Supreme Court is the final court of appeal.

Jurisdiction of Supreme Court

(2)    The Supreme Court has—

*(a)* appellate jurisdiction to hear appeals from the Court of Appeal; and

*(b)* jurisdiction conferred on it by other laws.

(3)    The Supreme Court is bound by its decisions, except in the interest of justice and development of jurisprudence.

**126.**    (1)  The Supreme Court shall be constituted by an uneven number of not less than three judges, except when hearing an interlocutory matter.

Sittings of Supreme Court

(2)    The Supreme Court shall be constituted by one judge when hearing an interlocutory matter.

(3)   The full bench of the Supreme Court shall be constituted by an uneven number of not less than five judges.

(4)   The Supreme Court shall be presided over by—

*(a)* the Chief Justice;

*(b)* in the absence of the Chief Justice, the Deputy Chief Justice; and

*(c)* in the absence of the Deputy Chief Justice, the most senior judge of the Supreme Court, as constituted.

Establishment and composition of Constitutional Court

**127.**   There is established the Constitutional Court which consists of—

*(a)* the President of the Constitutional Court;

*(b)* the Deputy President of the Constitutional Court; and

*(c)* eleven other judges or a higher number of judges, as prescribed.

Jurisdiction of Constitutional Court

**128.**   (1) Subject to Article 28, the Constitutional Court has original and final jurisdiction to hear—

*(a)* a matter relating to the interpretation of this Constitution;

*(b)* a matter relating to a violation or contravention of this Constitution;

*(c)* a matter relating to the President, Vice-President or an election of a President;

*(d)* appeals relating to election of Members of Parliament and councillors; and

*(e)* whether or not a matter falls within the jurisdiction of the Constitutional Court.

(2)   Subject to Article 28 (2), where a question relating to this Constitution arises in a court, the person presiding in that court shall refer the question to the Constitutional Court.

(3)   Subject to Article 28, a person who alleges that—

*(a)* an Act of Parliament or statutory instrument;

*(b)* an action, measure or decision taken under law; or

*(c)* an act, omission, measure  or decision by a person or an authority;

contravenes this Constitution, may petition the Constitutional Court for  redress.

(4)    A decision of the Constitutional Court is not appealable to the Supreme Court.

**129.**    (1)  The Constitutional Court shall be constituted by an uneven number of not less than three judges, except when hearing an interlocutory matter.

Sittings of Constitutional Court

(2)    The Constitutional Court shall be constituted by one judge when hearing an interlocutory matter.

(3)    The full bench of the Constitutional Court shall be constituted by an uneven number of  not less than five judges.

(4)    The Constitutional Court shall be presided over by—

*(a)* the President of the Constitutional Court;

*(b)* in the absence of the President of the Constitutional Court, the Deputy-President of the Constitutional Court; and

*(c)* in the absence of the Deputy-President of the Constitutional Court, the most senior judge of the Constitutional Court, as constituted.

**130.**    There is established the Court of Appeal which consists of such number of judges as prescribed.

Establishment and composition of Court of Appeal

**131.**    (1)  The Court of Appeal has jurisdiction to hear appeals from—

Jurisdiction of Court of Appeal

*(a)* the High Court;

*(b)* other courts, except for matters under the exclusive jurisdiction of the Constitutional Court; and

*(c)* quasi-judicial bodies, except a local government elections tribunal.

(2)    An appeal from a decision of the Court of Appeal shall be made to the Supreme Court with leave of the Court of Appeal.

**132.**    (1)  The Court of Appeal shall be constituted by an uneven number of not less than three judges, except when hearing an appeal in an interlocutory matter.

Sittings of Court of Appeal

(2)    The Court of Appeal shall be constituted by one judge when hearing an interlocutory matter.

Establishment and composition of High Court

**133.**    (1)  There is established the High Court which consists of—

*(a)* the Chief Justice, as an *ex-officio* judge;  and

*(b)* such number of judges as prescribed.

(2)    There are established, as divisions of the High Court, the Industrial Relations Court, Commercial Court, Family Court and Children's Court.

(3)    The Chief Justice may constitute, by statutory instrument, specialised courts of the High Court to hear specific matters.

(4)    The composition of courts specified in clauses (2) and (3) shall be prescribed.

Jurisdiction of High Court

**134.**    The High Court has, subject to Article 128—

*(a)* unlimited and original jurisdiction in civil and criminal matters;

*(b)* appellate and supervisory jurisdiction, as prescribed; and

*(c)* jurisdiction to review decisions, as prescribed.

Sittings of High Court

**135.**    The High Court shall be constituted by one judge or such other number of judges as the Chief Justice may determine.

### Chief Justice and other Judges

Chief Justice

**136.**    (1)  There shall be a Chief Justice who is the head of the Judiciary.

(2)    The Chief Justice shall—

*(a)* be responsible for the   administration of the Judiciary;

*(b)* ensure that a judge and judicial officer perform the judicial function with dignity, propriety and integrity;

*(c)* establish procedures to ensure that a judge and judicial officer independently exercise judicial authority in accordance with the law;

*(d)* ensure that a judge and judicial officer perform the judicial function without fear, favour or bias; and

*(e)* make rules and give directions necessary for the efficient and effective administration of the Judiciary.

**137.** (1)  There shall be a Deputy Chief Justice who shall—

*(a)* perform the functions of the Chief Justice, when the Chief Justice is absent or there is a vacancy in the office of Chief Justice;

*(b)* assist the Chief Justice in the administration of the Judiciary; and

*(c)* perform the functions assigned by the Chief Justice.

(2)  The President shall, in consultation with the Judicial Service Commission, designate a judge of the Supreme Court to perform the functions of the Deputy Chief Justice where—

*(a)* the office of the Deputy Chief Justice is vacant;

*(b)* the Deputy Chief Justice is acting as Chief Justice; or

*(c)* the Deputy Chief Justice is for a reason unable to perform the functions of that office.

Deputy
Chief Justice

**138.** (1)  There shall be a President of the Constitutional Court who is the head of the Constitutional Court.

(2)  The President of the Constitutional Court shall be responsible for the administration of the Constitutional Court under the direction of the Chief Justice.

President of
Constitutional
Court

**139.** (1)  There shall be a Deputy President of the Constitutional Court who shall—

*(a)* perform the functions of the President of the Constitutional Court, when the President of the Constitutional Court is absent or there is a vacancy in the office of President of the Constitutional Court;

*(b)* assist the President of the Constitutional Court in the administration of the Constitutional Court; and

*(c)* perform the  functions assigned by the President of the Constitutional Court.

(2)  The President shall, in consultation with the Judicial Service Commission, designate a judge of the Constitutional Court to perform the functions of the Deputy President of the Constitutional Court where—

*(a)* the office of the Deputy President of the Constitutional Court is vacant;

Deputy
President of
Constitutional
Court

*(b)* the Deputy President of the Constitutional Court is acting as President of the Constitutional Court; or

*(c)* the Deputy President of the Constitutional Court is for a reason unable to perform the functions of that office.

Appointment of judges

**140.**   The President shall, on the recommendation of the Judicial Service Commission and subject to ratification by the National Assembly, appoint the—

*(a)* Chief Justice;

*(b)* Deputy Chief Justice;

*(c)* President of the Constitutional Court;

*(d)* Deputy President of the Constitutional Court; and

*(e)* other judges.

Qualification for appointment as judge

**141.**   (1)  A person qualifies for appointment as a judge if that person is of proven integrity and has been a legal practitioner, in the case of the—

*(a)* Supreme Court, for at least fifteen years;

*(b)* Constitutional Court, for at least fifteen years and has specialised training or experience in human rights or constitutional law;

*(c)* Court of Appeal, for at least twelve years; or

*(d)* High Court, for at least ten years.

(2) A person appointed as judge to a specialised court shall have the relevant expertise, as prescribed.

Tenure of office of judge

**142.**   (1)  A judge shall retire from office on attaining the age of seventy years.

(2) A judge may retire, with full benefits, on attaining the age of sixty-five years.

(3) The Chief Justice and President of the Constitutional Court shall hold office for not more than ten years and may, thereafter, continue as a judge of the Supreme Court or Constitutional Court, subject to clause (1).

(4) A judge who has retired is not eligible for appointment as a judge.

(5) A judge may resign from the office of judge by notice, in writing, to the President.

(6) Where a judge is appointed or assigned to an office, which is not an office in the judiciary and that judge wishes to take up the appointment, the judge shall resign from the office of judge.

**143.**   A judge shall be removed from office on the following grounds:

Removal of judge from office

> *(a)* a mental or physical disability that makes the judge incapable of performing judicial functions;
>
> *(b)* incompetence;
>
> *(c)* gross misconduct; or
>
> *(d)* bankruptcy.

**144.** (1)  The removal of a judge may be initiated by the Judicial Complaints Commission or by a complaint made to the Judicial Complaints Commission, based on the grounds specified in Article 143.

Procedure for removal of judge

(2) The Judicial Complaints Commission shall, where it decides that a *prima facie* case has been established against a judge, submit a report to the President.

(3) The President shall, within seven days from the date of receiving the report, submitted in accordance with clause (2), suspend the judge from office and inform the Judicial Complaints Commission of the suspension.

(4) The Judicial Complaints Commission shall, within thirty days of the judge being suspended from office, in accordance with clause (3)—

> *(a)* hear the matter against the judge on the grounds specified in Article 143 *(b), (c)* and *(d)*; or
>
> *(b)* constitute a medical board, in consultation with the body responsible for regulating health practitioners, to inquire into the matter against the judge based on the ground specified in Article 143*(a).*

(5) Where the Judicial Complaints Commission decides that an allegation based on a ground specified in Article 143*(b), (c)* and *(d)* is—

   *(a)* not substantiated, the Judicial Complaints Commission shall recommend, to the President, the revocation of the judge's suspension and the President shall immediately revoke the suspension; or

   *(b)* substantiated, the Judicial Complaints Commission shall recommend, to the President, the removal of the judge from office and the President shall immediately remove the judge from office.

(6) The proceedings under clause (4) *(a)* shall be held in camera and the judge is entitled to appear, be heard and be represented by a legal practitioner or other person chosen by the judge.

(7) The medical board, constituted in accordance with clause (4) *(b),* shall consist of not less than three registered health practitioners.

(8) The medical board shall, within thirty days of being constituted, examine the judge and report to the Judicial Complaints Commission on the judge's capacity to perform the judicial functions.

(9) Where the medical board recommends to the Judicial Complaints Commission that the judge is—

   *(a)* physically or mentally capable of performing the judicial functions, the Judicial Complaints Commission shall recommend to the President the revocation of the judge's suspension and the President shall immediately revoke the suspension; or

   *(b)* not physically or mentally capable of performing the judicial functions, the Judicial Complaints Commission shall recommend to the President the removal of the judge from office and the President shall immediately remove the judge from office.

(10) A judge who refuses to submit to an examination, in accordance with clause (8), shall immediately be removed from office by the President.

**Judicial Officers and Chief Administrator**

**145.** (1) The Judicial Service Commission shall appoint judicial officers, as prescribed.

Appointment and retirement of judicial officers

(2) The qualification for appointment as judicial officer shall be prescribed.

(3) A judicial officer shall retire on attaining the age of sixty-five years.

(4) A judicial officer may retire, with full benefits, on attaining the age of fifty-five years.

**146.** (1) There shall be a Chief Administrator for the Judiciary who shall be appointed by the Judicial Service Commission.

Chief Administrator of Judiciary

(2) The functions and qualifications of the Chief Administrator for the Judiciary shall be prescribed.

PART IX

GENERAL PRINCIPLES OF DEVOLVED GOVERNANCE

**System of Devolved Governance**

**147.** (1) The management and administration of the political, social, legal and economic affairs of the State shall be devolved from the national government level to the local government level.

System of devolved governance

(2) The concurrent and exclusive functions of the national, provincial and local government levels are as listed in the Annex and as prescribed.

(3) The different levels of government shall observe and adhere to the following principles:

(a) good governance, through democratic, effective and coherent governance systems and institutions;

(b) respect for the constitutional jurisdiction of each level of government;

(c) autonomy of the sub-structures; and

(d) equitable distribution and application of national resources to the sub-structures.

**148.** (1) Local governance shall be undertaken through sub-structures.

Sub-structures of local government

(2) The Government shall provide adequate resources for the performance of the functions of the sub-structures.

## PART X
### PROVINCES, DISTRICTS, WARDS AND PROVINCIAL ADMINISTRATION

### Provinces, Districts and Wards

Provinces, districts and wards

**149.** (1) The President may, subject to the approval of the National Assembly, create or divide a Province or merge two or more Provinces, as prescribed.

(2) A Province shall consist of such number of districts, as prescribed.

(3) A district shall consist of such number of wards, as prescribed.

(4) A Province, district and ward shall be delimited, as prescribed.

(5) Without prejudice to clause (1), sixty percent or more of the registered voters in a Province may petition the President to—

   *(a)* merge a Province with another Province; or

   *(b)* divide a Province into two or more Provinces.

(6) Where the President receives a petition under clause (5), and after due inquiry, the President may, by statutory order, declare the merger of the Province with another Province or the division of the Province into two or more Provinces, subject to ratification by the National Assembly.

(7) Where the National Assembly ratifies the establishment of a new Province under this Article, the Electoral Commission shall delineate the boundaries of the Province created.

### Provincial Administration

Provincial administration

**150.** (1) There shall be established for each Province an administrative secretariat, which shall consist of—

   *(a)* a Provincial Minister;

   *(b)* a provincial Permanent Secretary; and

   *(c)* other staff, as prescribed.

(2) The provincial secretariat shall have overall responsibility of the Province and perform other functions as prescribed.

PART XI

LOCAL GOVERNMENT

**System of Local Government**

**151.** (1) There is established a local government system where—

*System of local government*

(a) functions, responsibilities and resources from the national Government and provincial administration are transferred to the local authorities in a co-ordinated manner;

(b) the people's participation in democratic governance is promoted;

(c) co-operative governance with the national Government, provincial administration and local authorities is promoted to support and enhance the developmental role of local government;

(d) the capacity of local authorities to initiate, plan, manage and execute policies in respect of matters that affect the people within their respective districts is enhanced;

(e) social, spatial, financial and economic planning, at the district level, is developed, prioritised and promoted;

(f) a sound financial base is established for each local authority with reliable and predictable sources of revenue;

(g) the performance of persons employed by the national Government and provincial administration to provide services in the sub-structures is overseen by local authorities;

(h) the provision of Government services is monitored and projects are implemented in sub-structures;

(i)    accountability of local authorities is ensured; and

(j) the right of local authorities to manage their affairs and to form partnerships, networks and associations to assist in the management of their respective districts and further their development is recognised.

(2) The local government system shall—

(a) be based on democratically elected councils;

(b) promote democratic and accountable exercise of power;

(c) foster national unity;

(d) ensure that services are provided to sub-structures in an equitable and sustainable manner;

(e) promote social and economic development;

(f) promote a clean, safe and healthy environment; and

(g) encourage the involvement of communities and community organisations in matters of local government.

Local authorities

**152.** (1) A local authority shall—

(a) administer the district;

(b) oversee programmes and projects in the district;

(c) make by-laws; and

(d) perform other prescribed functions.

(2) The national Government and the provincial administration shall not interfere with or compromise a local authority's ability or right to perform its functions.

(3) There shall be a council for each local authority.

(4) There shall be a Town Clerk or Council Secretary for each local authority and other staff of the local authority, as prescribed.

Election of councillors, composition of councils and tenure

**153.** (1) A councillor shall be elected in accordance with Article 47(3) by registered voters resident within the district.

(2) A council shall consist of the following councillors—

(a) persons elected in accordance with clause (1);

(b) a mayor or council chairperson elected in accordance with Article 154; and

(c) not more than three chiefs representing chiefs in the district, elected by the chiefs in the district.

(3) The system of electing chiefs specified in clause (2) (b) shall be prescribed.

(4) A person qualifies to be elected as a councillor, excluding councillors specified under clause (2) *(b)*, if that person—

(a) is not a Member of Parliament;

(b) is not less than nineteen years of age;

(c) has obtained, as a minimum academic qualification, a grade twelve certificate or its equivalent;

    *(d)* is a citizen or a holder of a resident permit, resident in the district; and

    *(e)* has a certificate of clearance showing   the  payment of council taxes, where applicable.

(5)  A council may invite a person, whose presence is in its opinion desirable, to attend and to participate in the deliberations of the council but that person shall have no vote.

(6)  The term of a council shall be five years commencing from the date the councillors are sworn into office after a general election and ending on the date Parliament is dissolved.

**154.** (1)  There shall be a mayor and deputy mayor or council chairperson and deputy council chairperson for every council, as prescribed.

(2)  A mayor and council chairperson shall be elected—

    *(a)* directly, in accordance with Article 47 (3) during elections for councillors, as prescribed; and

    *(b)* for a term of five years and may be re-elected for one further term of five years.

(3) A deputy mayor and a deputy council chairperson shall be elected by the councillors from amongst themselves.

**155.**   A councillor shall act in a manner that is consistent with a councillor's civic duties and responsibilities, as prescribed.

**156.**   Councillors shall be collectively and individually accountable to the national Government  and residents in their wards and districts, for the performance of their functions.

**157.** (1)  A councillor shall vacate office on dissolution of a council.

(2)  The office of councillor becomes vacant if—

    *(a)* the councillor ceases to be a resident of the district;

    *(b)* the councillor resigns by one month's notice, in writing, to the mayor or council chairperson;

    *(c)* the councillor  becomes disqualified for election under Article 153;

    *(d)* the result of an election for that councillor is nullified by a local government elections tribunal established in accordance with Article 159;

Mayor, deputy mayor, council chairperson and deputy council chairperson

Conduct of councillor

Accountability of councillors

Vacation of office of councillor and vacancies

*(e)* the councillor acts contrary to the code of ethics provided for in Article 155;

*(f)*    the councillor has a mental or physical disability that makes the councillor incapable of performing the functions of councillor; or

*(g)* the councillor dies.

(3) Where a councillor resigns in accordance with clause (2) *(b), (c), (d)* and *(e)* the councillor shall not be eligible for re-election as councillor for the duration of the term of that council.

By-election for council

**158.** (1) Where a vacancy occurs in the office of mayor, council chairperson or councillor—

*(a)* the Town Clerk or Council Secretary of the local authority shall, within seven days of the occurrence of the vacancy,  inform the Electoral Commission, in writing, of the vacancy; and

*(b)* a by-election shall be held in accordance with Article 57.

(2)   If a person is elected to the office of mayor, council chairperson or councillor in a by-election, that mayor, council chairperson or councillor shall serve for the unexpired term of the council and be deemed—

*(a)* to have served a full term as mayor, council chairperson or councillor if, at the date on which the councillor assumed office, at least three years remain before the date of the next general election; or

*(b)* not to have served a term of office as mayor, council chairperson or councillor, if, at the date on which the councillor assumed office, less than three years remain before the date of the next general election.

Local government elections tribunals and petitions

**159.** (1) The Chief Justice shall establish such number of *ad hoc* local government elections tribunals as are necessary to hear whether—

*(a)* a person has been validly elected as a councillor; or

*(b)* the office of a councillor has become vacant.

(2) A local government elections tribunal shall be presided over by a magistrate of competent jurisdiction sitting with two legal practitioners appointed by the Chief Justice.

(3) A person may file an election petition with a local government elections tribunal to challenge the election of a councillor.

(4) An election petition shall be heard within thirty days of the filing of the petition.

(5) A person may appeal a decision of a local government elections tribunal to the Constitutional Court.

(6) A councillor whose election is petitioned shall hold the seat in the council pending the determination of the election petition.

(7) The Chief Justice shall make rules for the functions, composition, appointment of members, tenure of office of members, procedures and jurisdiction of a local government elections tribunal.

**160.** A person who obtains a judgment against a local authority may enforce the judgment against the local authority after one year from the date of the delivery of the judgment.

*Enforcement of judgment against local authority*

**161.** A local authority is competent to levy, impose, recover and retain local taxes, as prescribed.

*Revenue of local authorities*

**162.** (1) There is established the Constituency Development Fund.

*Constituency Development Fund*

(2) The appropriation of monies to the Constituency Development Fund and the management, disbursement, utilisation and accountability of the Constituency Development Fund shall be prescribed.

**163.** (1) There is established the Local Government Equalisation Fund.

*Local Government Equalisation Fund and funds for local authorities*

(2) Parliament shall annually appropriate monies to the Local Government Equalisation Fund which shall be disbursed by the Ministry responsible for finance to local authorities.

(3) The Government may provide additional funds and grants to a local authority, as prescribed.

**164.** The following shall be prescribed:

*Legislation on local authorities*

(a) regulation of local authorities;

(b) sub-structures and their relationships;

(c) financial control and accountability of a local authority;

(d) raising of loans, grants and other financial instruments by local authorities;

(*e*) election of councillors;  and

(*f*) the effective implementation of this Part.

PART XII

CHIEFTAINCY AND HOUSE OF CHIEFS

Institution of
chieftaincy
and
traditional
institutions

**165.**  (1)  The institution of chieftaincy and traditional institutions are guaranteed and shall exist in accordance with the culture, customs and traditions of the people to whom they apply.

(2) Parliament shall not enact legislation which—

(*a*) confers on a person or authority the right to recognise or withdraw the recognition of a chief; or

(*b*) derogates from the honour and dignity of the institution of chieftaincy.

Status of
institution of
chieftaincy

**166.**   The institution of chieftaincy—

(*a*) is a corporation sole with perpetual succession and capacity to sue and be sued; and

(*b*) has capacity to hold property in trust for its subjects.

Rights and
privileges of
chiefs

**167.**  A chief—

(*a*) may own property in a personal capacity; and

(*b*) shall enjoy privileges and benefits—

(i)    bestowed on the office of chief by or under culture, custom and tradition; and

(ii) attached to the office of chief, as prescribed.

Participation
of chiefs in
public affairs

**168.** (1) Subject to clause (2), a chief may seek and hold a public office.

(2) A chief who seeks to hold office in a political party or election or appointment to a State office, except that of councillor,  shall abdicate the chief's throne.

(3)    The role of a chief in the management, control and sharing of natural and other resources in the Chiefdom shall be prescribed.

House of
Chiefs and
function

**169.** (1)  There is established a House of Chiefs.

(2) The House of Chiefs shall consist of five chiefs from each province, elected by the chiefs in a Province, as prescribed.

*Constitution of Zambia (Amendment)*      **[No. 2 of 2016   71**

(3) The members of the House of Chiefs shall annually elect a Chairperson and Vice-Chairperson of the House of Chiefs, from amongst themselves.

(4) Notwithstanding clause (3), the assumption of office as Chairperson and Vice-Chairperson of the House of Chiefs shall rotate annually amongst the chiefs from each province.

(5) The functions of the House of Chiefs are to —

(a) consider and discuss a Bill relating to custom or tradition referred to it by the President, before the Bill is introduced into the National Assembly;

(b) initiate, discuss and make recommendations to the National Assembly regarding socio-economic development in the Province;

(c) initiate, discuss and decide on matters relating to customary law and practice;

(d) initiate, discuss and make recommendations to a local authority regarding the welfare of communities in a local authority;

(e) make proposals on areas in customary law that require codification;

(f) advise the Government on traditional and customary matters; and

(g) perform other functions as prescribed.

**170.** (1)  A Member of the House of Chiefs—

(a) shall hold office for a term of five years and is eligible for election for a further term of five years; and

(b) may resign by one month's notice, in writing, to the Chairperson.

(2) The office of a member of the House of Chiefs becomes vacant if the Chief—

(a) dies;

(b) ceases to be a chief;

(c) resigns;

Tenure of
office and
vacancy

(d) is convicted of an offence;

(e) is an undischarged bankrupt; or

(f) has a mental or physical disability that makes the chief incapable of performing the functions of a member of the House of Chiefs.

Staff of House of Chiefs

**171.** (1) There shall be a Clerk of the House of Chiefs and other staff, as prescribed.

(2) The office of the Clerk of the House of Chiefs and other staff of the House of Chiefs are offices in the public service.

Legislation on House of Chiefs

**172.** The following matters shall be prescribed—

(a) the procedures and processes of the House of Chiefs;

(b) the emoluments of the Clerk and other staff of the House of Chiefs;

(c) the application of the privileges and immunities of a Member of Parliament to a member of the House of Chiefs; and

(d) other matters necessary for the better carrying out of the purposes of this Part.

PART XIII

PUBLIC SERVICE

**Values and Principles**

Values and principles of public service

**173.** (1) The guiding values and principles of the public service include the following—

(a) maintenance and promotion of the highest standards of professional ethics and integrity;

(b) promotion of efficient, effective and economic use of national resources;

(c) effective, impartial, fair and equitable provision of public services;

(d) encouragement of people to participate in the process of policy making;

(e) prompt, efficient and timely response to people's needs;

(f)    commitment to the implementation of public policy and programmes;

(g) accountability for administrative acts;

*(h)* proactively providing the public with timely, accessible and accurate information;

*(i)* merit as the basis of appointment and promotion;

*(j)* adequate and equal opportunities for appointments, training and advancement of members of both gender and members of all ethnic groups; and

*(k)* representation of persons with disabilities in the composition of the public service at all levels.

(2)   The values and principles specified in clause (1) apply to service—

*(a)* at national, provincial and local government levels; and

*(b)* to all State organs and State institutions.

(3)   A public officer shall not be—

*(a)* victimised or discriminated against for having performed functions in good faith in accordance with this Constitution or other law; or

*(b)* removed from office, reduced in rank or otherwise punished without just cause and due process.

### Constituting Offices for Public Service

**174.**   (1)   Subject to the recommendations of the relevant Service Commission, the power to constitute offices for the public service and to abolish those offices vests in the President.

Constituting offices for public service

(2)   The President shall not abolish an office in the public service while there is a substantive holder of the office.

(3)   The President may, by statutory instrument, declare that an office constituted by the President shall not be an office in the public service.

(4)   Appointment to an office declared by the President not to be an office in the public service shall be made by the President.

**175.**   For the purposes of this Constitution, a person shall not be considered as holding an office in the public service by reason only that the person is in receipt of emoluments in respect of service under or for the Government.

Holding of office in public service

### Constitutional Office Holders

Secretary to Cabinet

**176.** (1) There shall be a Secretary to the Cabinet who shall be appointed by the President, in consultation with the Civil Service Commission, subject to ratification by the National Assembly.

(2) The Secretary to the Cabinet shall—

(a) be chief advisor to the President on the management of the public service;

(b) be the head of the public service and responsible to the President for securing the general efficiency and effectiveness of the public service;

(c) ensure that public services are delivered to the public efficiently;

(d) in accordance with instructions of the President—

(i) arrange the affairs of Cabinet;

(ii) attend meetings of Cabinet;

(iii) cause to be written and kept minutes of meetings of Cabinet; and

(iv) convey decisions made by Cabinet to appropriate authorities;

(e) monitor the implementation of Government policies and Cabinet decisions; and

(f) perform other functions as prescribed.

(3) A person qualifies to be appointed as Secretary to the Cabinet if that person has or had at least ten years experience as a permanent secretary or equivalent rank.

(4) The term of office of the Secretary to the Cabinet shall be five years, subject to renewal for further terms.

(5) The Secretary to the Cabinet may resign from office by giving three months' notice, in writing, to the President.

Attorney-General

**177.** (1) There shall be an Attorney-General, who shall be appointed by the President, subject to ratification by the National Assembly.

(2) The Attorney-General shall not hold another public office.

(3) The Attorney-General shall be a person qualified to be appointed as a judge.

(4)   The Attorney-General shall not be subject to the direction or control of a person or an authority in the performance of the Attorney-General's functions.

(5)   The Attorney-General is the chief legal adviser to the Government and shall—

   *(a)* be head of the Attorney-General's Chambers;

   *(b)* sign Government Bills to be presented to the National Assembly;

   *(c)* represent the Government in civil proceedings to which Government is a party;

   *(d)* give advice on an agreement, treaty or convention to which Government intends to become a party or in respect of which the Government has an interest before they are concluded, except where the National Assembly otherwise directs, and subject to conditions as prescribed; and

   *(e)* perform other functions, as prescribed.

(6)   The Attorney-General's Chambers shall be devolved to the Provinces and progressively to districts.

**178.** (1) The office of the Attorney-General becomes vacant if—

   *(a)* the Attorney-General is removed from office by the President;

   *(b)* another person assumes  the office of President;

   *(c)* the Attorney-General dies; or

   *(d)* the Attorney-General has a mental or physical disability that makes the Attorney-General incapable of performing the functions of that office.

Vacancy in office of Attorney-General

(2)   The Attorney-General may resign from office by giving three months' notice, in writing, to the President.

**179.** (1) There shall be a Solicitor-General who shall be appointed by the President, subject to ratification by the National Assembly.

Solicitor-General

(2)   A person qualifies for appointment as Solicitor-General if that person is qualified for appointment as a judge.

(3) The Solicitor-General shall not hold another public office.

(4)   The office of Solicitor-General becomes vacant if—

*(a)* the Solicitor-General is removed from office by the President;

*(b)* another person assumes  the office of President;

*(c)* the Solicitor-General dies; or

*(d)* the Solicitor-General has a mental or physical disability that makes the Solicitor-General incapable of performing the functions of that  office.

(5)  The Solicitor-General shall assist the Attorney-General in the performance of the Attorney- General's functions.

(6) A function conferred on the Attorney-General by this Constitution or other law shall be performed by the Solicitor-General when the Attorney-General is unable to act owing to illness or absence from office for a reason.

(7)   The Solicitor-General may resign from office by giving three months' notice, in writing, to the President.

Director of Public Prosecutions

**180.**  (1)  There shall be a Director of Public Prosecutions who shall be appointed by the President, subject to ratification by the National Assembly.

(2) A person qualifies for appointment as Director of Public Prosecutions if that person—

*(a)* has experience in undertaking criminal trials; and

*(b)* is qualified to be appointed as a judge.

(3) The Director of Public Prosecutions is the chief prosecutor for the Government and head of the National Prosecutions Authority.

(4)The Director of Public Prosecutions may—

*(a)* institute and undertake criminal proceedings against a person before a court, other than a court-martial, for an offence alleged to have been committed by that person;

*(b)* take over and continue criminal proceedings instituted or undertaken by another person or authority; and

*(c)* discontinue, at any stage before judgment is delivered, criminal proceedings instituted or undertaken by the Director of Public Prosecutions or another person or authority.

*Constitution of Zambia (Amendment)*   **[No. 2 of 2016   77**

(5) For the purposes of clause (4), an appeal from a judgment, a case stated or to a question of law reserved shall be part of the criminal proceedings.

House of Chiefs and functions

(6) The power conferred on the Director of Public Prosecutions under clause (4)*(c)* shall not be exercised in relation to an appeal by a convicted person, a case stated or a question of law reserved at the instance of that person.

(7) The Director of Public Prosecutions shall not be subject to the direction or control of a person or an authority in the performance of the functions of that office, except that the Director of Public Prosecutions shall have regard to the public interest, administration of justice, the integrity of the judicial system and the need to prevent and avoid abuse of the legal process.

(8) The functions of the Director of Public Prosecutions may be exercised in person or by a public officer or legal practitioner, authorised by the Director of Public Prosecutions, acting under the general or special instructions of the Director of Public Prosecutions.

(9) The National Prosecutions Authority shall be established as prescribed and shall devolve to the provinces and progressively to the districts.

**181.**   Where the Director of Public Prosecutions is absent from Zambia or is unable to perform the functions of office due to illness or other cause, the President shall appoint a person qualified to perform the functions of Director of Public Prosecutions to perform those functions until that appointment is revoked or until the Director of Public Prosecutions returns to office.

Performance of functions of Director of Public Prosecutions during absence, illness or other cause

**182.** (1) Subject to this Article, the Director of Public Prosecutions shall retire from office on attaining the age of sixty years.

Tenure of office of Director of Public Prosecutions

(2) The Director of Public Prosecutions may retire, with full benefits, on attaining the age of fifty-five years.

(3) The Director of Public Prosecutions may be removed from office on the same grounds and procedure as apply to a judge.

(4) The Director of Public Prosecutions may resign from office by three months' notice, in writing, to the President.

Secretary to Treasury

**183.**   (1)   There shall be a Secretary to the Treasury who shall be appointed by the President, in consultation with the Civil Service Commission, subject to ratification by the National Assembly.

(2)   The Secretary to the Treasury shall be the chief controlling officer of the Government.

(3)   The Secretary to the Treasury shall—

(a)   be responsible and accountable for—

(i) the proper financial management and expenditure of public monies appropriated to a State organ, Province, local authority, State institution or other prescribed body; and

(ii) monies raised from sources within or outside Zambia by a Province, local authority, State institution or other prescribed body;

(b) oversee the formulation and implementation of the macro-economic frameworks and socio-economic plans of the Republic;

(c) provide a regulatory framework for sound financial management;

(d) cause to be prepared annual estimates of revenue and expenditure, supplementary estimates of expenditure and the budget; and

(e) carry out other prescribed functions.

(4)   A person qualifies to be appointed as Secretary to the Treasury if that person qualifies for appointment as Governor of the Bank of Zambia.

(5)   The term of office of the Secretary to the Treasury shall be five years, subject to renewal for further terms.

(6)   The Secretary to the Treasury may resign from office by three months' notice, in writing, to the President.

Permanent Secretaries

**184.**   (1)   The President shall, on the advice of the Civil Service Commission, appoint a Permanent Secretary for a Province, ministry or department.

(2)   A Permanent Secretary shall—

(a) carry out or cause to be carried out the portfolio functions of the provincial administration, ministry or department;

(b) advise the Minister or provincial Minister with respect to the activities, projects and programmes of the Province, ministry or department;

(c) cause to be implemented the policies of the Government and decisions of Cabinet;

(d) be responsible and accountable for the proper financial management and expenditure of public monies appropriated to the Province, ministry or department; and

(e) be responsible and accountable for the management of human resources in the provincial secretariat, ministry or department.

## Public Officers

**185.**   (1)  The President has, in accordance with and subject to the other provisions of this Constitution, the power to—

Appointment of public officers

(a) appoint and confirm public officers;

(b) exercise disciplinary control over public officers; and

(c) terminate the employment of a public officer.

(2)   The President's functions, as specified in clause (1), shall be exercised by the relevant Service Commission as specified in this Constitution and as prescribed.

(3)   A person shall not be regarded as disqualified for appointment to an office to which a public officer is qualified to be appointed by reason only that the office is held by a person who is on leave of absence pending relinquishment of that office.

(4)   A function of a service commission may be delegated to a public officer, as prescribed.

**186.**   (1)  A public officer who seeks election, or is appointed, to a State office shall resign.

Participation in politics

(2)   Clause (1) applies to a Constitutional office holder.

## PART XIV
### PENSION BENEFIT

**187.**   (1)  An employee, including a public officer and Constitutional office holder, has a right to a pension benefit.

Pension benefit

(2)   A pension benefit shall not be withheld or altered to that employee's disadvantage.

(3)    The law to be applied with respect to a pension benefit–

*(a)* before the commencement of this Constitution, shall be the law that was in force immediately before the date on which the pension benefit was granted or the law in force at a later date that is not less favourable to that employee; and

*(b)* after the commencement of this Constitution, shall be the law in force on the date on which the pension benefit was granted or the law in force at a later date that is not less favourable to that employee.

Review of pension benefit and tax exemption

**188.**    (1) A pension benefit shall be reviewed periodically to take into account actuarial assessments.

(2)    A pension benefit shall be exempt from tax.

Payment of pension benefits

**189.**    (1) A pension benefit shall be paid promptly and regularly.

(2)    Where a pension benefit is not paid on a person's last working day, that person shall stop work but the person's name shall be retained on the payroll, until payment of the pension benefit based on the last salary received by that person while on the payroll.

PART XV

DEFENCE AND NATIONAL SECURITY

Principles relating to Defence Force and national security services

**190.**    (1) The Defence Force and national security services shall—

*(a)* be nationalistic, patriotic, professional, disciplined and competent;

*(b)* be non-partisan;

*(c)* not further the interests or cause of a particular organisation; and

*(d)* not act against a political interest or cause permitted in this Constitution or as prescribed.

(2)    Clause (1) shall not prevent a member of the Defence Force and national security services from registering as a voter or voting in an election or a referendum.

Status of Defence Force and national security services

**191.**    The Defence Force and national security services shall be—

*(a)* subordinate to civilian authority, as vested in the State organs; and

(b) adequately and properly equipped to enable them effectively perform their functions.

**192.** (1) There is established the Defence Force of Zambia consisting of— | Establishment of Defence Force and functions

(a) the Zambia Army;

(b) the Zambia Air Force;

(c) the Zambia National Service, as an auxiliary unit; and

(d) other units, as prescribed.

(2) The Defence Force shall—

(a) preserve and defend the sovereignty and territorial integrity of the Republic;

(b) foster harmony and understanding between the Zambia Army, Zambia Air Force, an auxiliary unit and members of society; and

(c) co-operate with State organs and State institutions in times of public emergencies and national disasters.

**193.** (1) There are established the following national security services— | Establishment of national security services and functions

(a) the Zambia Police Service;

(b) the Zambia Security Intelligence Service;

(c) the Zambia Correctional Service; and

(d) any other national security service, as prescribed.

(2) The Zambia Police Service shall—

(a) protect life and property;

(b) preserve peace and maintain law and order;

(c) ensure the security of the people;

(d) detect and prevent crime;

(e) uphold the Bill of Rights;

(f) foster and promote good relationships with the Defence Force, other national security services and members of society; and

(g) perform other functions as prescribed.

(3)   The Zambia Security Intelligence Service shall—

(a) ensure national security by undertaking security intelligence and counter intelligence;

(b) prevent a person from suspending, overthrowing or illegally abrogating this Constitution; and

(c) perform other functions as prescribed.

(4)   The Zambia Correctional Service shall—

(a) manage, regulate and ensure the security of prisons and correctional centres; and

(b) perform other functions as prescribed.

Qualification to serve in Defence Force and national security service

**194.**   A person is qualified to serve as a member of the Defence Force and national security services if the person is—

(a) a citizen who does not hold dual citizenship; and

(b) qualified as prescribed.

Deployment outside Republic

**195.**   (1)  The President may deploy personnel of the Defence Force outside the Republic.

(2)   Where the President deploys personnel of the Defence Force outside the Republic, the President shall, as soon as is reasonably practicable, inform the National Assembly of the deployment.

Prohibition of activities relating to defence and national security

**196.**   Except as provided in this Constitution, a person shall not—

(a) raise or participate in the raising of an armed force;

(b) establish or participate in the establishment of a defence force or national security service; or

(c) establish or participate in the establishment of a unit of the Defence Force or  national security service.

Legislation on Defence Force and national security services

**197.**   The following shall be prescribed:

(a) the regulation of the Defence Force and national security services;

(b) the organs and structures of the Defence Force and national security services;

(c) the operations and administration of the Defence Force and national security services;

(d) the recruitment of persons into the Defence Force and national security services, which shall reflect the regional diversity of the people of Zambia;

*Constitution of Zambia (Amendment)*     **[No. 2 of 2016   83**

(e) the appointment, qualifications,  placement, transfer, discipline and retirement of defence and security chiefs and other personnel of the Defence Force and national security services;

(f) the emoluments of personnel and members of the Defence Force and national security services;

(g) the procedures and processes for deployment of the personnel of the Defence Force; and

(h) other functions as prescribed.

PART XVI

PUBLIC FINANCE AND BUDGET

**198.**   The guiding principles of public finance include the following:

(a) transparency and accountability in the development or formulation of macro-economic frameworks, socio-economic plans and the budget;

(b) promotion of a public finance system that ensures that—

    (i) the burden of taxation is shared fairly;

    (ii) revenue raised nationally is shared equitably among the different levels of government; and

    (iii) expenditure promotes the equitable development of the country;

(c) sustainable public borrowing to ensure inter-generational equity; and

(d) prudent and responsible use of public resources.

Principles relating to public finance

**199.**   (1)  A tax shall not be imposed, except as prescribed.

(2)   Where legislation confers power on a person or an authority to waive or vary a prescribed tax the power shall be exercised through a statutory instrument.

(3)   A report explaining the waiver or variation of a tax shall be submitted to the National Assembly within twenty-one days of the publication of the statutory instrument.

Imposition of tax

**200.**   (1)  There is established a Consolidated Fund to which shall be credited the revenues and other monies accruing to the Treasury.

Consolidated Fund

(2)   Clause (1) does not apply to monies—

*(a)* prescribed for a public fund established for a specific purpose; or

*(b)* that a State organ or State institution may retain for the purpose of defraying the expenses of the State organ or State institution, as prescribed.

Withdrawal from Consolidated Fund

**201.**   (1)   Monies shall not be withdrawn from the Consolidated Fund except—

*(a)* to meet expenditure charged on the Consolidated Fund by this Constitution or as prescribed; or

*(b)* where the issuance of those monies has been authorised by a warrant signed by the President, an Appropriation Act or a Supplementary Appropriation Act in accordance with Article 203.

(2)   The investment or lending of monies forming part of the Consolidated Fund, in accordance with Articles 206 and 207, respectively, shall not be considered a withdrawal from the Consolidated Fund.

Annual financial estimates of revenue and expenditure

**202.**   (1) The Minister responsible for finance shall prepare and lay before the National Assembly in each financial year, not later than ninety days before the commencement of the next financial year, estimates of revenue and expenditure for the Republic.

(2)   The Minister responsible for finance shall, when presenting the estimates of revenue and expenditure, in accordance with clause (1), specify the maximum limits that the Government intends to borrow or lend in that financial year.

(3)   In a year where a general election is held, the Minister responsible for finance shall cause to be prepared and laid before the National Assembly, within ninety days of the swearing in of the President, estimates of revenue and expenditure for the Republic for the next financial year.

(4)   The National Assembly may vary estimates of revenue and expenditure but shall not amend the total amount of estimates of revenue and expenditure.

(5)   The National Assembly shall, by a resolution of the Members of Parliament, approve the financial estimates of revenue and expenditure for the next financial year.

**203.** (1) Where estimates of revenue and expenditure have been approved by the National Assembly in accordance with Article 202, the Minister responsible for finance shall lay, before the National Assembly for enactment, an Appropriation Bill in respect of the approved estimates of expenditure.

(2) The Minister responsible for finance shall, where the amount appropriated in an Appropriation Act for a financial year is insufficient to meet expenditure in that financial year, lay before the National Assembly for approval, in accordance with Article 202 (5), a supplementary estimate of expenditure.

(3) Where a supplementary estimate of expenditure has been approved by the National Assembly, the Minister responsible for finance shall lay, before the National Assembly for enactment, a Supplementary Appropriation Bill in respect of the approved supplementary estimate of expenditure.

(4) Where there is an urgent need to incur expenditure for a purpose that has not been appropriated under the Appropriation Act for that financial year and it would not be in the public interest to delay the appropriation of the expenditure until a supplementary estimate is approved by the National Assembly, in accordance with clauses (2) and (3), the President may, subject to Article 204, issue a warrant authorising the expenditure and withdrawal from the Consolidated Fund.

(5) The Minister responsible for finance shall present the warrant referred to in clause (4) to the relevant parliamentary committee for approval.

(6) The parliamentary committee shall consider the warrant within forty-eight hours of its presentation by the Minister responsible for finance.

(7) Where expenditure is incurred in accordance with clause (4), the Minister responsible for finance shall, in that financial year, lay an Excess Expenditure Appropriation Bill before the National Assembly for enactment.

(8) Where it is not practicable to lay an Excess Expenditure Appropriation Bill before the National Assembly, in accordance with clause (7), the Minister responsible for finance shall lay the Excess Expenditure Appropriation Bill before the National Assembly during the first sitting of the National Assembly after the end of the preceding financial year.

Appropriation Act, Supplementary Appropriation Act and Excess Expenditure Appropriation Act

Limitation and conditions of warrant

**204.** (1)  The issuance of a warrant, in accordance with Article 203 (4), shall be subject to limitations and conditions, as prescribed.

(2)    The President shall, immediately after signing a warrant in accordance with Article 203 (4), cause a copy of the warrant to be transmitted to the Auditor-General and Parliament.

Budget and planning legislation

**205.**    The following shall be prescribed:

*(a)* the financial management and regulation of public funds;

*(b)* the preparation of medium and long-term financing frameworks and development plans;

*(c)* the budget preparation process;

*(d)* public participation, at all levels of government, in the formulation of financing frameworks, development plans and preparation of annual budgets;

*(e)* the content of the financial report of the Republic provided for in Article 211; and

*(f)* the control and disbursement of appropriated funds.

Investment of public funds

**206.** (1)  Monies forming part of the Consolidated Fund may be invested into readily marketable securities and deposits or other secure investments, with a financial institution approved by the Minister responsible for finance.

(2)    The investment of monies made in accordance with clause (1) shall be prescribed.

Borrowing and lending by Government

**207.** (1)  The Government may, as prescribed—

*(a)* raise a loan or grant on behalf of itself, a State organ, State institution or other institution;

*(b)* guarantee a loan on behalf of a State organ, State institution or other institution; or

*(c)* enter into an agreement to give a loan or grant out of the Consolidated Fund, other public fund or public account.

(2)    Legislation enacted under clause (1) shall provide—

*(a)* for the category, nature and other terms and conditions of a loan, grant or guarantee, that will require the approval by the National Assembly before the loan, grant or guarantee is executed; and

    *(b)* that any monies received in respect of a loan or grant approved by the National Assembly shall be paid into the Consolidated Fund, or other public fund or public account.

**208.**   (1)   A public debt shall be a charge on the Consolidated Fund or other public fund.

Public debt

(2)   For the purposes of this Article, "public debt" includes the interest on that debt, sinking fund payments in respect of that debt and the costs, charges and expenses incidental to the management of that debt.

**209.**   (1)   There is established a Compensation Fund for the purpose of settling claims against the State.

Compensation Fund

(2)   The management of the Compensation Fund shall be prescribed.

**210.**   (1)   A State organ, State institution and other public office shall procure goods or services, in accordance with a system that is fair, equitable, transparent, competitive and cost-effective, as prescribed.

Public procurement and disposal of State assets

(2)   A major State asset shall be sold, transferred or otherwise disposed of, as prescribed, subject to the approval of the National Assembly signified by a vote of at least two-thirds of the Members of Parliament.

(3) For the purposes of this Article, "major State asset" includes a parastatal and equity held by the Government, as prescribed.

**211.**   (1)   The Minister responsible for finance shall, within three months after the end of each financial year, prepare and submit to the Auditor-General the financial report of the Republic in respect of the preceding financial year.

Financial report of Republic

(2) The Auditor-General shall, within two months of receipt of the financial report, examine the financial report and express an opinion on the report.

(3) The Minister responsible for finance shall, within one month after the receipt of the Auditor-General's opinion, lay the financial report, with the Auditor-General's opinion, before the National Assembly.

(4)   The financial report shall include information on—

    *(a)* revenue received by the Republic during that financial year;

(b) the expenditure of the Republic during that financial year;

(c) gifts, donations and aid-in-kind received on behalf of the Republic in that financial year, their value and how they were disposed of;

(d) debt repayments;

(e) payments made in that financial year for purposes other than expenditure;

(f) the financial position of the Republic at the end of that financial year; and

(g) other information as prescribed.

Auditor-General's report

**212.**    The Auditor-General shall, not later than nine months after the end of a financial year, submit an audit report to the President and the National Assembly, on the accounts of the Republic audited in respect of the preceding financial year.

PART XVII

Central Bank

Bank of Zambia

**213.**    (1)  There is established the Bank of Zambia which shall be the central bank of the Republic.

(2)    The functions of the Bank of Zambia are to—

(a) issue the currency of the Republic;

(b) determine monetary policy; and

(c) regulate banking and financial services, banks, financial and non-banking institutions, as prescribed.

(3)    There is constituted a Board of Directors for the Bank of Zambia whose composition shall be prescribed.

(4)    The functions of the Bank of Zambia vest in the Board of Directors and shall be performed as prescribed.

(5)    The Bank of Zambia shall not be subject to the direction or control of a person or an authority in the performance of its functions.

Governor of Bank of Zambia

**214.**    (1) There shall be a Governor of the Bank of Zambia who shall be appointed by the President, subject to ratification by the National Assembly, and who shall be—

(a) a citizen;

(b) a person who has specialised training and experience in economics, finance, accounting, banking, law or other field relevant to banking, as prescribed; and

(c) a person of proven integrity.

(2)   The Governor shall be the Chairperson of the Board of Directors.

215.   The following shall be prescribed:

(a) additional functions, operations and management of the Bank of Zambia;

(b) appointment, qualifications and tenure of office of the Board of Directors;

(c) election of a Vice-Chairperson of the Board of Directors;

(d) tenure of office and emoluments of the Governor;

(e) appointment, qualifications, tenure of office, functions and emoluments of the Deputy-Governor;

(f) recruitment, and emoluments of members of staff of the Bank of Zambia; and

(g) other matters necessary for the performance of the functions of the Bank of Zambia.

Legislation on Bank of Zambia

## PART XVIII
### SERVICES, COMMISSIONS AND OTHER INDEPENDENT OFFICES

216.   A commission shall—

(a) be subject only to this Constitution and the law;

(b) be independent and not be subject to the control of a person or an authority in the performance of its functions;

(c) act with dignity, professionalism, propriety and integrity;

(d) be non-partisan; and

(e) be impartial in the exercise of its authority.

Principles relating to commissions

## Parliamentary Service Commission

217.   (1)  There is established the Parliamentary Service.

(2)   The office of the Clerk of the National Assembly, members of staff of the Parliamentary Service Commission and  members of staff of the office of the Clerk, as prescribed, are offices in the Parliamentary Service.

Parliamentary Service

90    No. 2 of 2016]        *Constitution of Zambia (Amendment)*

Parliamentary
Service
Commission

**218.** (1) There is established the Parliamentary Service Commission.

(2)   The Parliamentary Service Commission shall—

*(a)* appoint the Clerk of the National Assembly;

*(b)* constitute offices in the Parliamentary Service;

*(c)* appoint, confirm, promote and hear appeals from officers of the Parliamentary Service;

*(d)* ensure efficient and effective functioning of the National Assembly;

*(e)* have financial oversight of the Parliamentary Service and the  National Assembly; and

*(f)* perform such other functions as prescribed.

### Judicial Service Commission

Judicial
Service

**219.** (1) There is established the Judicial Service.

(2)   The office of judge, judicial officer, the members of staff of the Judicial Service Commission and such other officers as prescribed, are offices in the Judicial Service.

Judicial
Service
Commission

**220.** (1) There is established the Judicial Service Commission.

(2)   The Judicial Service Commission shall—

*(a)* constitute offices in the Judicial Service;

*(b)* make recommendations to the President on the appointment of judges;

*(c)* appoint, confirm, promote and hear appeals from judicial officers; and

*(d)* carry out a function provided for in this Constitution, or as prescribed.

### Civil Service Commission

Civil Service

**221.** (1) There is established the Civil Service.

(2)   The office of the Secretary to the Cabinet, Secretary to the Treasury, Deputy Secretary to the Cabinet, civil servants, the members of staff of the Civil Service Commission and other public officers as prescribed, are offices in the Civil Service.

**222.** (1) There is established the Civil Service Commission.

(2) The Civil Service Commission shall—

*(a)* constitute offices in the Civil Service;

*(b)* appoint, confirm, promote and hear appeals from officers in the Civil Service, excluding a Constitutional office holder; and

*(c)* perform such other functions as prescribed.

Civil Service Commission

## Teaching Service Commission

**223.** (1) There is established the Teaching Service.

(2) The teachers serving as public officers excluding civil servants, the members of staff of the Teaching Service Commission and other public officers, as prescribed, are offices in the Teaching Service.

Teaching Service

**224.** (1) There is established the Teaching Service Commission.

(2) The Teaching Service Commission shall—

*(a)* constitute offices in the Teaching Service;

*(b)* appoint, confirm, promote and hear appeals from officers of the Teaching Service; and

*(c)* perform such other functions as prescribed.

Teaching Service Commission

## Zambia Correctional Service Commission

**225.** (1) There is established the Zambia Correctional Service Commission for the Zambia Correctional Service established in Article 193.

(2) The office of Commissioner-General of Correctional Service, Deputy Commissioners-General of Correctional Service, Commissioners of Correctional Service, Assistant Commissioners of Correctional Service, Correctional officers and wardens, members of staff of the Zambia Correctional Service Commission and such other public officers as prescribed, are offices in the Zambia Correctional Service.

(3) The Zambia Correctional Service Commission shall—

*(a)* constitute offices in the Zambia Correctional Service;

*(b)* appoint, confirm, promote and hear appeals from officers of the Zambia Correctional Service; and

*(c)* perform such other functions as prescribed.

Zambia Correctional Service Commission

### Zambia Police Service Commission

Zambia
Police
Service
Commission

**226.** (1) There is established the Zambia Police Service Commission for the Zambia Police Service established in Article 193.

(2) The office of the Inspector-General of Police, the Deputy Inspector-General of Police, police officers, the members of staff of the Zambia Police Service Commission and other public officers as prescribed, are offices in the Zambia Police Service.

(3) The Zambia Police Service Commission shall—

*(a)* constitute offices in the Zambia Police Service;

*(b)* appoint, confirm, promote and hear appeals from officers of the Zambia Police Service; and

*(c)* perform such other functions as prescribed.

### Local Government Service Commission

Local
Government
Service

**227.** (1) There is established the Local Government Service.

(2) The office of the Town Clerk, Council Secretary, members of staff of the Local Government Service Commission, the members of staff of local authorities and other local government staff, as prescribed, are offices in the Local Government Service.

Local
Government
Service
Commission

**228.** (1) There is established the Local Government Service Commission.

(2) The Local Government Service Commission shall—

*(a)* appoint the Town Clerk and Council Secretary of a local authority;

*(b)* constitute offices in the Local Government Service;

*(c)* appoint, confirm, promote and hear appeals from officers of the Local Government Service;

*(d)* ensure efficient and effective functioning of local authorities; and

*(e)* perform such other functions as prescribed.

### Electoral Commission of Zambia

Electoral
Commission
of Zambia

**229.** (1) There is established the Electoral Commission of Zambia which shall have offices in Provinces and progressively in districts.

(2)    The Electoral Commission shall—

*(a)* implement the electoral process;

*(b)* conduct elections and referenda;

*(c)* register voters;

*(d)* settle minor electoral disputes, as prescribed;

*(e)* regulate the conduct of voters and candidates;

*(f)* accredit observers and election agents, as prescribed;

*(g)* delimit electoral boundaries; and

*(h)* perform such other functions as prescribed.

## Human Rights Commission

**230.**    (1)  There is established the Human Rights Commission which shall have offices in the Provinces and progressively in districts.

Human Rights Commission

(2)    The Human Rights Commission shall ensure that the Bill of Rights is upheld and protected.

(3)    The Human Rights Commission shall—

*(a)* investigate and report on the observance of rights and freedoms;

*(b)* take necessary steps to secure appropriate redress where rights and freedoms are violated;

*(c)* endeavour to resolve a dispute through negotiation, mediation or conciliation;

*(d)* carry out research on rights and freedoms and related matters;

*(e)* conduct civic education on rights and freedoms; and

*(f)* perform such other functions as prescribed.

## Gender Equity and Equality Commission

**231.**    (1)  There is established the Gender Equity and Equality Commission which shall have offices in the Provinces and progressively in districts.

Gender Equity Equality Commission

(2)    The Gender Equity and Equality Commission shall promote the attainment and mainstreaming of gender equality.

(3)   The Gender Equity and Equality Commission shall—

*(a)* monitor, investigate, research, educate, advise and report on issues concerning gender equality;

*(b)* ensure institutions comply with legal requirements and other standards relating to gender equality;

*(c)* take steps to secure appropriate redress to complaints relating to gender inequality, as prescribed; and

*(d)* perform such other functions as prescribed.

## Emoluments Commission

Emoluments Commission

**232.**   (1)  There is established the Emoluments Commission.

(2)   The Emoluments Commission shall determine, on the recommendation of the relevant authority or commission, the emoluments  of public officers, chiefs and members of the House of Chiefs, as provided in this Constitution or as prescribed.

## Lands Commission

Lands Commission

**233.**   (1)  There is established the Lands Commission which shall have offices in all Provinces and progressively in districts.

(2)   The Lands Commission shall administer, manage and alienate land, on behalf of the President, as prescribed.

## State Audit Commission

State Audit Commission

**234.**   (1)  There is established the State Audit Commission.

(2)   The State Audit Commission shall—

*(a)* subject to Article 249 (2) oversee the operations of the office of the Auditor-General, as prescribed;

*(b)* make recommendations to the President on the appointment of the Auditor-General; and

*(c)* perform such other functions as prescribed.

## Investigative Commissions

Investigative Commissions

**235.**   There is established the following investigative commissions:

*(a)* the Anti-Corruption Commission;

*(b)* the Drug Enforcement Commission; and

*(c)* the Anti-Financial and Economic Crimes Commission.

### Judicial Complaints Commission

**236.**   (1)  There is established the Judicial Complaints Commission.

(2)   The Judicial Complaints Commission shall—

Judicial
Complaints
Commission

(*a*) enforce the Code of Conduct for judges and judicial officers;

(*b*) ensure that judges and judicial officers are accountable to the people for the performance of their functions;

(*c*) receive complaints lodged against a judge or judicial officer, as prescribed;

(*d*) hear a complaint against a judge or judicial officer, as prescribed;

(*e*) make recommendations to the appropriate institution or authority for action; and

(*f*) perform such other functions as prescribed.

### Police Public Complaints Commission

**237.**   (1)   There is established the Police Public Complaints Commission.

Police Public
Complaints
Commission

(2)   The Police Public Complaints Commission shall—

(*a*) receive and investigate complaints against police actions;

(*b*) investigate complaints against police actions which result in serious injury or death of a person;

(*c*) make recommendations to the appropriate institution or authority for action; and

(*d*) perform such other functions as prescribed.

### General Provisions Relating to Commissions

**238.**   (1)  A commission shall be a self-accounting institution which deals directly with the Ministry responsible for finance in matters relating to its finances.

Financial
independence
of
commissions

(2)   A commission shall be adequately funded in a financial year to enable it to effectively perform its functions.

**239.**   The expenses of a commission, including emoluments payable to, or in respect of, persons serving with that commission, shall be a charge on the Consolidated Fund.

Expenses of
commissions

Qualifications of members of commissions

**240.** A person qualifies to be appointed as a member of a commission if that person—

(a) is a citizen;

(b) is permanently resident in Zambia;

(c) has not, in the immediate preceding five years, served a term of imprisonment of at least three years;

(d) declares that person's assets and liabilities, as prescribed;

(e) has paid that person's taxes or has made arrangements satisfactory to the appropriate tax authority for the payment of the taxes;

(f) does not have a mental or physical disability that would make the person incapable of performing the functions of office;

(g) is not serving a sentence of imprisonment for an offence under a law; and

(h) has other qualifications, as prescribed.

General powers of commissions

**241.** A commission—

(a) shall appoint its staff;

(b) may refer matters within its mandate to appropriate State organs or State institutions for action;

(c) may initiate its own investigations and receive complaints from a person on matters within its mandate;

(d) shall take measures to ensure that State institutions and other persons comply with its decisions; and

(e) shall submit annual reports to the National Assembly on its accounts and activities as prescribed.

Legislation on commissions

**242.** The functions, composition, appointment of members, tenure of office of members, processes and procedures, operations, administration, structures, finances and financial management of a commission shall be prescribed.

### Other Independent Offices
### Public Protector

Public Protector

**243.** (1) There shall be a Public Protector who shall be appointed by the President, on the recommendation of the Judicial Service Commission, subject to ratification by the National Assembly.

(2)   A person qualifies for appointment as Public Protector if that person—

    *(a)* is qualified to be appointed as a judge; and

    *(b)* does not hold a State office or Constitutional office.

(3)   The office of Public Protector shall be decentralised to the Provinces and progressively to districts, as prescribed.

(4)   The procedures, staff, finances, financial management, administration and operations of the office of the Public Protector shall be prescribed.

**244.**   (1) The Public Protector may investigate an action or decision taken or omitted to be taken by a State institution in the performance of an administrative function.

Functions of Public Protector

(2)   For purposes of clause (1), an action or decision taken or omitted to be taken is an action or decision which is—

    *(a)* unfair, unreasonable or illegal; or

    *(b)* not compliant with the rules of natural justice.

(3)   For purposes of clauses (1) and (2), the Public Protector may—

    *(a)* bring an action before a court;

    *(b)* hear an appeal by a person relating to an action or decision taken or omitted to be taken in respect of that person; and

    *(c)* make a decision on an action to be taken against a public officer or Constitutional office holder, which decision shall be implemented by an appropriate authority.

(4)   The Public Protector shall not be subject to the direction or control of a person or an authority in the performance of the functions of office.

(5)   The Public Protector has the same powers as those of the High Court in—

    *(a)* enforcing the attendance of witnesses and examining them on oath;

    *(b)* examining witnesses outside Zambia;

    *(c)* compelling the production of documents;

    *(d)* enforcing decisions issued by the Public Protector; and

    *(e)* citing a person or an authority for contempt for failure to carry out a decision.

(6)   A person summoned to give evidence or to produce a document before the Public Protector is entitled, in respect of that evidence or the production of the document, to the same privileges and protection as those that a person would be entitled to before a court.

(7)   An answer by a person to a question put by the Public Protector is not admissible in evidence against that person in civil or criminal proceedings, except for perjury.

Limitation of powers of Public Protector

**245.**   The Public Protector shall not investigate a matter which—

*(a)* is before a court, court martial  or a quasi-judicial body;

*(b)* relates to an officer in the Parliamentary Service or Judicial Service;

*(c)* involves the relations or dealings between the Government and foreign government or an international organisation;

*(d)* relates to the exercise of the prerogative of mercy; or

*(e)* is criminal in nature.

Performance of functions of Public Protector during absence, illness or other cause

**246.**   Where the Public Protector is absent from Zambia or is unable to perform the functions of office due to illness or other cause, the President shall appoint a person qualified to perform the functions of the Public Protector until that appointment is revoked or until the Public Protector returns to office.

Tenure of office of Public Protector

**247.**   (1)  Subject to this Article, the Public Protector shall retire from office on attaining the age of sixty years.

(2) The Public Protector may retire, with full benefits, on attaining the age of fifty-five years.

(3) The Public Protector may be removed from office on the same grounds and procedure as apply to a judge.

(4) The Public Protector may resign from office by three months' notice, in writing, to the President.

Report to National Assembly

**248.**   The office of the Public Protector shall report to the National Assembly on matters concerning its affairs.

### Auditor-General

Auditor-General

**249.**   (1)  There shall be an Auditor-General who shall be appointed by the President, on the recommendation of the State Audit Commission, subject to ratification by the National Assembly.

(2)   The office of Auditor-General shall be decentralised to the Provinces and progressively to districts, as prescribed.

(3)   The following shall be prescribed:

*(a)* the qualifications of the Auditor-General;

*(b)* the operations and management of the office of the Auditor-General;

*(c)* the recruitment, supervision, grading, promotion and discipline of the staff of the Auditor-General; and

*(d)* the finances of the office of the Auditor-General.

**250.**   (1)   The Auditor-General shall—

Functions of Auditor-General

*(a)* audit the accounts of—

(i) State organs, State institutions, provincial administration and local authorities; and

(ii) institutions financed from public funds;

*(b)* audit the accounts that relate to the stocks, shares and stores of the Government;

*(c)* conduct financial and value for money audits, including forensic audits and any other type of audit, in respect of a project that involves the use of public funds;

*(d)* ascertain that money appropriated by Parliament or raised by the Government and disbursed—

(i) has been applied for the purpose for which it was appropriated or raised;

(ii) was expended in conformity with the authority that governs it; and

(iii) was expended economically, efficiently and effectively; and

*(e)* recommend to the Director of Public Prosecutions or a law enforcement agency any matter within the competence of the Auditor-General, that may require to be prosecuted.

(2)   The Auditor-General shall not be subject to the direction or control of a person or an authority in the performance of the functions of office.

Performance of functions of Auditor-General during absence, illness or other cause

**251.**   Where the Auditor-General is absent from Zambia or is unable to perform the functions of office due to illness or other cause, the President shall appoint a person qualified to perform the functions of the Auditor-General until that appointment is revoked or until the Auditor-General returns to office.

Tenure of office of Auditor-General

**252.**   (1)   Subject to this Article, the Auditor-General shall retire from office on attaining the age of sixty years.

(2)   The Auditor-General may retire, with full benefits, on attaining the age of fifty-five years.

(3)   The Auditor-General may be removed from office on the same grounds and procedure as apply to a judge.

(4)   The Auditor-General may resign from office by three months' notice, in writing, to the President.

PART XIX

LAND, ENVIRONMENT AND NATURAL RESOURCES

**Land**

Principles of land policy

**253.**   (1)   Land shall be held, used and managed in accordance with the following principles:

*(a)* equitable access to land and associated resources;

*(b)* security of tenure for lawful land holders;

*(c)* recognition of indigenous cultural rites;

*(d)* sustainable use of land;

*(e)* transparent, effective and efficient administration of land;

*(f)* effective and efficient settlement of land disputes;

*(g)* river frontages, islands, lakeshores and ecologically and culturally sensitive areas—

(i) to be accessible to the public;

(ii) not to be leased, fenced or sold; and

(iii) to be maintained and used for conservation and preservation activities;

*(h)* investments in land to also benefit local communities and their economy; and

*(i)* plans for land use to be done in a consultative and participatory manner.

**254.** (1) Land shall be delimited and classified as State land, customary land and such other classification, as prescribed.

Classification and alienation of land and land tenure

(2) The President may, through the Lands Commission, alienate land to citizens and non-citizens, as prescribed.

(3) Land shall be held for a prescribed tenure.

### Environment and Natural Resources

**255.** The management and development of Zambia's environment and natural resources shall be governed by the following principles:

Principles of environmental and natural resources management and development

*(a)* natural resources have an environmental, economic, social and cultural value and this shall be reflected in their use;

*(b)* the person responsible for polluting or degrading the environment is responsible for paying for the damage done to the environment;

*(c)* where there are threats of serious or irreversible damage to the environment, lack of full scientific certainty shall not be used as a reason for postponing cost-effective measures to prevent environmental degradation;

*(d)* the conservation and protection of ecologically sensitive areas, habitats, species and other environment shall be done in a sustainable manner;

*(e)* respect for the integrity of natural processes and ecological communities;

*(f)* benefits accruing from the exploitation and utilisation of the environment and natural resources shall be shared equitably amongst the people of Zambia;

*(g)* saving of energy and the sustainable use of renewable energy sources shall be promoted;

*(h)* reclaiming and rehabilitation of degraded areas and those prone to disasters shall be promoted;

*(i)* unfair trade practices in the production, processing, distribution and marketing of natural resources shall be eliminated;

*(j)* origin, quality, methods of production, harvesting and processing of natural resources shall be regulated;

*(k)* equitable access to environmental resources  shall be promoted;

*(l)*    effective participation of people in the development of relevant policies, plans and programmes; and

*(m)* access to environmental information to enable people preserve, protect and conserve the environment.

Protection of environment and natural resources

**256.**   A person has a duty to co-operate with State organs, State institutions and other persons to—

*(a)* maintain a clean, safe and healthy environment;

*(b)* ensure ecologically sustainable development and use of natural resources;

*(c)* respect, protect and safeguard the environment; and

*(d)* prevent or discontinue an act which is harmful to the environment.

Utilisation of natural resources and management of environment

**257.**   The State shall, in the utilisation of natural resources and management of the environment—

*(a)* protect genetic resources and biological diversity;

*(b)* implement mechanisms that minimise waste;

*(c)* promote appropriate environment management systems and tools;

*(d)* encourage public participation;

*(e)* protect and enhance the intellectual property in, and indigenous knowledge of, biodiversity and genetic resources of local communities;

*(f)* ensure that the environmental standards enforced in Zambia are of essential benefit to  citizens; and

*(g)* establish and implement mechanisms that address climate change.

PART XX

GENERAL PROVISIONS

Official language and use and status of local languages

**258.**   (1) The official language of Zambia is English.

(2) A language, other than English, may be used as a medium of instruction in educational institutions or for legislative, administrative or judicial purposes, as prescribed.

(3) The State shall respect, promote and protect the diversity of the languages of the people of Zambia.

**259.** (1) Where a person is empowered to make a nomination or an appointment to a public office, that person shall ensure—

Nominations and appointments

 *(a)* that the person being nominated or appointed has the requisite qualification to discharge the functions of the office, as prescribed or specified in public office circulars or establishment registers;

 *(b)* that fifty percent of each gender is nominated or appointed from the total available positions, unless it is not practicable to do so; and

 *(c)* equitable representation of the youth and persons with disabilities, where these qualify for nomination or appointment.

(2) A person empowered to make a nomination or appointment to a public office shall, where possible, ensure that the nomination or appointment reflects the regional diversity of the people of Zambia.

**260.** A person assuming a public office, member of the House of Chiefs, and presidential appointee, shall take an Oath of Office and such other oath, as prescribed, before carrying out the duties of office.

Oath of office and prescribed oaths

**261.** A person holding a public office shall act in accordance with a code of conduct and ethics, as prescribed for that office.

Code of conduct and ethics

**262.** A person holding a public office shall not act in a manner, or be in a position, where the personal interest of that person conflicts, or is likely to conflict, with the performance of the functions of office.

Conflict of interest

**263.** A person holding a public office shall, before assuming office or leaving office, make a declaration of their assets and liabilities, as prescribed.

Declaration of assets

**264.** (1) A public officer, chief and member of the House of Chiefs, shall be paid such emoluments as recommended by the relevant authority or commission and determined by the Emoluments Commission.

Emoluments payable under Constitution

(2) The emoluments of a State officer, councillor, Constitutional office holder and a judge shall be determined by the Emoluments Commission, as prescribed.

(3) The emoluments of a person holding a public office, chief and member of the House of Chiefs shall not be altered to the disadvantage of that person during that person's tenure of office.

(4) A person holding a public office shall not, while in office, hold another office which pays emoluments.

Funding, expenses and emoluments charge on Consolidated Fund

**265.**   (1)   A public office shall be adequately funded to enable it to effectively perform its functions.

(2) The expenses of a State organ, State institution and public office shall be a charge on the Consolidated Fund.

(3) The emoluments payable under this Constitution or as prescribed, shall be a charge on the Consolidated Fund.

Definitions

**266.**   In this Constitution, unless the context otherwise requires—

" adult " means a person who has attained, or is above, the age of nineteen years;

" Bill " means a draft of a proposed law to be enacted by Parliament;

" Bill of Rights " means the human rights and fundamental freedoms set out in Part III, and includes their status, application, interpretation, limitations, derogations, non-derogations and enforcement;

" by-election " means an election to fill a vacancy in the office of a Member of Parliament or councillor;

" candidate " means a person contesting a presidential, parliamentary or local government election;

" chief " means a person bestowed as chief and who derives allegiance from the fact of birth or descent, in accordance with the customs, traditions, usage or consent of the people in a chiefdom;

" child " means a person who has attained, or is below, the age of eighteen years;

" circuit schedule " means a table showing dates, districts, time and place where a court is to sit and hear matters in any period of twelve months;

" citizen " means a citizen of Zambia;

" civil servant " means a public officer appointed by the Civil Service Commission;

" civil society " means a group of persons, who are not part of the Government, who associate for the purpose of advancing or protecting particular interests;

" commission " means a commission established under Part XVIII of this Constitution;

" constituency " means an area into which Zambia is divided for purposes of elections to the National Assembly;

" Constitutional Court " means the Constitutional Court established in this Constitution;

" Constitutional office " means the office of the Attorney-General, Solicitor-General, Director of Public Prosecutions, Public Protector, Auditor-General, Secretary to the Cabinet, Secretary to the Treasury and Permanent Secretary;

" Constitutional office holder " means a person holding or acting in a Constitutional office;

" council " includes a city, municipal or town council;

" council chairperson " means a person elected chairperson of a town council in accordance with Article 154;

" councillor " means a member of a council elected in accordance with Article 153;

" court " means a court of competent jurisdiction established by or under this Constitution;

" Court of Appeal " means the Court of Appeal established in this Constitution;

" devolution " means a form of decentralisation where there is a transfer of rights, functions and powers or an office from the central government  or State institution to a sub-national authority or the bringing of a service that is provided at central government level to, or opening of a branch of a public office or institution at, a sub- national level, and the word "devolved" shall be construed accordingly;

" disability " means a permanent physical, mental, intellectual or sensory impairment that alone, or in combination with social or environmental barriers, hinders the ability of a person to fully or effectively participate in an activity or perform a function as specified in this Constitution or as prescribed;

" discrimination " means directly or indirectly treating a person differently on the basis of that person's birth, race, sex, origin, colour, age, disability, religion, conscience, belief, culture, language, tribe, pregnancy, health, or marital, ethnic, social or economic status;

" district " means an administrative unit of a Province as provided in Article 149;

" election " means an election to the  office of President, National Assembly or a council;

" Electoral Commission " means the Electoral Commission of Zambia established in this Constitution;

" emoluments " include salaries, allowances, benefits and rights that form an individual's remuneration for services rendered, including pension benefits or other benefits on retirement;

" Emoluments Commission " means the Emoluments Commission established in this Constitution;

" executive authority " means the power and the right to execute executive functions;

" executive functions " means the functions of the President set out in this Constitution;

" *ex-officio* " means a person who is appointed as a member by virtue of office;

" First Deputy Speaker " means the person elected as First Deputy Speaker in accordance with Article 82 (4);

" freedom fighter " means a person who fought for the independence of the former protectorate of Northern Rhodesia to become the Republic of Zambia;

" function " includes powers and duties;

" gender " means female or male and the role individuals play in society as a result of their sex and status;

" general election " means Presidential, National Assembly and local government elections when held on the same day;

" gross misconduct " means—

(a) behaviour which brings a public office into disrepute, ridicule or contempt;

(b) behaviour that is prejudicial or inimical to the economy or the security of the State;

(c) an act of corruption; or

(d) using or lending the prestige of an office to advance the private interests of that person, members of that person's family or another person;

" health practitioner " means a person registered as a health practitioner as prescribed;

" High Court " means the High Court established in this Constitution;

" individual " means a natural person;

" judge " means a person appointed as a judge of a superior court;

" judgment " includes a decision, an order or decree of a court or an authority, as prescribed;

" judicial authority " means the power and right to perform judicial functions;

" judicial function " means the functions of the Judiciary set out in this Constitution;

" judicial officer " includes a magistrate, local court magistrate, registrar and such officers as prescribed;

" legislative authority " means the power and right to perform legislative functions;

" legislative functions " means the functions of the legislature set out in this Constitution;

" local authority " means a council and it's secretariat consisting of persons appointed by the Local Government Service Commission;

" local government " means governance at the local level;

" local government elections tribunal " means a tribunal established in accordance with Article 159;

" Local Government Equalisation Fund " means a fund established in accordance with Article 163;

" mayor " means a person elected mayor of a city or  municipal council in accordance with Article 154;

" Member of Parliament " means a person who is member of the National Assembly;

" Minister " means a Cabinet Minister;

" oath " includes an affirmation;

" older member of society " means a person who has attained, or is above, the age of sixty years;

" opposition " means a political party which is not the political party in government;

" ordinarily resident " means residing in a place for a prescribed period of time;

" Parliament " means the President and the National Assembly;

" parliamentary committee " means a committee established in accordance with Article 80;

" pension benefit " includes a pension, compensation, gratuity or similar allowance in respect of a person's service;

" person " means an individual, a company or an association of persons, whether corporate or unincorporate;

" person with disability " means a person with a permanent physical, mental, intellectual or sensory impairment;

" political party " means an association whose objectives include the contesting of elections in order to form government or influence the policy of the national or local government;

" power " includes privilege, authority and discretion;

" prescribed " means provided for in an Act of Parliament;

" President-elect " means the presidential candidate who has been declared by the Returning Officer as having won the presidential election;

" presidential candidate " means a person nominated to stand for election as President in accordance with Article 52 (1);

" presidential election " means an election to the office of President, and includes the election of a Vice-President as a running mate to the President;

" property " includes a vested or contingent right to, or interest in, or arising from—

   *(a)* land, permanent fixtures on, or improvements to, land;

   *(b)* goods or personal property;

   *(c)* intellectual property; or

   *(d)* money, choses in action or negotiable instruments;

" provincial administration " means the administrative secretariat established in accordance with Article 150;

" Provincial Minister " means a person appointed Provincial Minister by the President;

" public media " means media owned, operated or controlled by the Government;

" public office " means an office whose emoluments and expenses are a charge on the Consolidated Fund or other prescribed public fund and includes a State office, Constitutional office and an office in the public service, including that of a member of a commission;

" public officer " means a person holding or acting in a public office, but does not include a State officer, councillor, a Constitutional office holder, a judge and a judicial officer;

" public service " means service in the Civil Service, the Teaching Service, Defence Force and National Security Service, the Zambia Correctional Service, the Zambia Police Service, Emoluments Commission, State Audit Commission, Lands Commission, Electoral Commission, Human Rights Commission, Gender Equity and Equality Commission, the Anti-Corruption Commission, Drug Enforcement Commission, the Anti-Financial and Economic Crimes Commission, the Police and Public Complaints Commission, and service as a constitutional office holder, service in other offices, as prescribed;

" rights and freedoms " means the human rights and fundamental freedoms provided for in the Bill of Rights;

" Republic " means the Republic of Zambia;

" returning officer " means a person who is a returning officer for a parliamentary or local authority election and "Returning Officer" means the Chairperson of the Electoral Commission in a presidential election;

" running mate " means a person who is selected by a presidential candidate to stand with the presidential candidate in a presidential election so that the person becomes the Vice-President if that presidential candidate is elected as President;

" Second Deputy Speaker " means the person elected as Second Deputy Speaker in accordance with Article 82 (5);

" Service Commission " means a commission established under Articles 218, 220, 222, 224, 225, 226, and 228;

" session " means a period not exceeding twelve months, within the term of the National Assembly, of sittings of the National Assembly, which commence on the first day of sitting after a general election or prorogation of Parliament and ends with a prorogation or dissolution of Parliament;

" sitting " means a meeting of the National Assembly, within a session, which concludes with an adjournment, and includes a parliamentary committee meeting;

" Speaker " means the person elected Speaker of the National Assembly in accordance with Article 82 (1);

" State institution " includes a ministry or department of the Government, a public office, agency, institution, statutory body, commission or company in which the Government or local authority has a controlling interest, other than a State organ;

" State office " includes the office of President, Vice-President, Speaker, Deputy Speaker, Member of Parliament, Minister and Provincial Minister;

" State officer " means a person holding or acting in a State office;

" State organ " means the Executive, Legislature or Judiciary;

" statutory instrument " means a proclamation, regulation, rule, by-law, order or other similar legal instrument made under a power conferred by this Constitution or an Act of Parliament;

" subordinate court " means a court subordinate to the High Court;

" sub-national " means an administrative division of government at provincial or district level;

" sub-structure " includes a district, ward and village;

" superior court " means the Supreme Court, Constitutional Court, Court of Appeal and High Court established in accordance with this Constitution;

" Supreme Court " means the Supreme Court  established in this Constitution;

" tax " includes rates, levies, charges, tariffs, fees, tolls and duties;

" term " means a period of five years commencing when the National Assembly first sits, after a general election, and ending when Parliament is dissolved;

" Treasury " means the office, in the Ministry responsible for finance, which receives, keeps, receipts, manages and disburses public funds;

" Vice-President-elect " means the person declared as having been duly elected as a Vice-President after a presidential election;

" ward " means a unit into which a district is divided for purposes of electing councillors;

" young person " means a person who has attained the age of fifteen years, but is below the age of nineteen years; and

" youth " means a person who has attained the age of nineteen years, but is below the age of thirty-five years.

Interpretation of Constitution

**267.** (1)  This Constitution shall be interpreted in accordance with the Bill of Rights and in a manner that—

*(a)* promotes its purposes, values and principles;

*(b)* permits the development of the law; and

*(c)* contributes to good governance.

(2) If there is a conflict between the English  version of this Constitution and a different language version, the English  version shall prevail.

(3) A provision of this Constitution shall be construed according to the doctrine that the law is continuously in force and accordingly—

*(a)* a function may be performed, as occasion requires, by the person holding the office to which the function is assigned;

*(b)* a reference to a person holding an office includes a reference to the person lawfully performing the functions of that office at a particular time;

*(c)* a reference to an office, State organ, State institution or locality shall be read with any modification necessary to make it applicable in the circumstances;

*(d)* a reference in a provision applying that provision to another provision shall be read with any modification necessary to make it applicable in the circumstances and any reference to the modified provision shall apply as modified; and

(e) a reference to an office, body or organisation, where that office, body or organisation has ceased to exist, is a reference to its successor or to the equivalent office, body or organisation performing the functions.

(4) A provision of this Constitution to the effect that a person, an authority or institution is not subject to the direction or control of a person or an authority in the performance of a function, does not preclude a court from exercising jurisdiction in relation to a question as to whether that person, authority or institution has performed the function in accordance with this Constitution or other laws.

**268.**   In this Constitution, unless the context otherwise requires— *Grammatical variation*

(a) a word in the singular includes the plural and a word in the plural includes the singular; and

(b) a word or expression  defined, shall be read with any grammatical variation or similar expression of that word or expression.

**269.**   For the purposes of this Constitution, in computing time, unless a contrary intention is expressed— *Computation of time*

(a) a period of days from the happening of an event or the doing of an act shall be considered to be exclusive of the day on which the event happens or the act is done;

(b) if the last day of the period is a Saturday, Sunday or public holiday ("excluded day"), the period shall include the next  day;

(c) where an act or a proceeding is directed or allowed to be done or taken on a specified day and that day is an excluded day, the act or proceeding shall be considered as done or taken in due time if it is done or taken the next day; and

(d) where an act or a proceeding is directed or allowed to be done or taken within a time not exceeding six days, an excluded day shall not be counted in the computation of the time.

Power to appoint includes power to remove

**270.**   In this Constitution, unless a contrary intention is expressed, power to appoint a person to hold or act in an office includes the power to confirm appointments, to exercise disciplinary control over the person holding or acting in the office and to remove that person from office.

Implied power

**271.**   In this Constitution, a power given to a person or an authority to do or enforce the doing of an act, includes the necessary and ancillary powers to enable that person or authority to do or enforce the doing of the act.

Legislation to give effect to Constitution

**272.**   Parliament may enact legislation to give effect to an Article or a provision in this Constitution which—

(a) confers a function or jurisdiction on a person, office, institution, council or commission;

(b) provides for a process or procedure to be taken, followed or prescribed;

(c) requires an action, a measure or decision to be taken or provided;

(d) requires a remedy or compensation to be given;

(e) prohibits an action or measure;

(f) deals with a specific subject-matter or general matter that would require to be legislated on in order to give effect to the Constitution; or

(g) generally requires something to be prescribed.

Power to make statutory instrument, resolution or direction

**273.**   In this Constitution, a power conferred on a person or an authority to make a statutory instrument, a resolution or direction, includes the power to amend or revoke the statutory instrument, resolution or direction.

Time for performance of function

**274.**   A function conferred in this Constitution may be performed as occasion requires.

Exercise of power between publication and commencement of Acts

**275.**   Where an Article provides for a power exercisable by making a statutory instrument to—

(a) make an appointment; or

(b) do any other thing for the purposes of the Article;

the power may be exercised at any time on or after the date of publication of the statutory instrument in the *Gazette*.

ANNEX

(*Article* 147  (2))

FUNCTIONS OF NATIONAL, PROVINCIAL AND LOCAL LEVELS OF
DEVOLVED GOVERNMENT

**A.   Exclusive national functions**

· Elections

· Foreign and international affairs

· Budget

· Taxation including customs and excise

· Airports, other than district airports

· Casinos, racing, gambling and wagering, excluding lotteries
  and sports pools

· Disaster management  and public emergency

· National parks, national botanical gardens and resources

· National forests

· passports and National Registration

· Prisons

· Refugees

· Registration of Births and Deaths

· Wildlife

· Water resources  management

· Energy and hydro electricity

· Petroleum and lubricants

· Public roads

· Defence, security, maintenance of law and order

· Citizenship and immigration

· Public enterprises

· Regulation of commerce and manufacturing

· Road traffic regulation

· Land, mines, minerals and natural resources

· Census and statistics

· Traditional leadership

· National archives

· National libraries

·  National museums

· Tertiary Education

**B.   Concurrent national and provincial functions**

· administration of justice

· legal affairs

· Administration of forests

· Agriculture

· Animal control and diseases

· Consumer protection

· Cultural matters

· Customary law

· Education at all levels, excluding tertiary education

· Environmental management

· Health services

· Housing

· Industrial promotion

· Language policy and the regulation of official languages

· Nature conservation

· Parliamentary Business

· legislative procedures and processess

· Pollution control

· Population development

· Property transfer tax

· Public procurement

· Public transport

· Public works only in respect of the needs of provincial administration

· Provincial spatial planning and development

· Soil conservation

· Tourism, trade and commerce

· Urban and rural development

· Welfare services

· Industrial and labour relations

· Resettlement

· Investment

· Telecommunication

**C.   Local Authorities exclusive functions**

· Pollution control

· Building regulations

· Child-care facilities

· Electricity

· Fire fighting services

· Local tourism

· District airports, Aerodromes and Airships

· District planning

· District health services

· District public transport

· District public works only in respect of the needs of Districts in the discharge of councils responsibilities to administer functions specifically assigned to them under this Constitution or other law

· Levies, tariffs and tolls

· Pontoons, ferries, jetties, piers and harbours, excluding the regulation of international and national shipping and matters related thereto

· Storm water management systems in built-up areas

· Trading

· Water and sanitation services limited to potable water supply systems and domestic waste-water and sewage disposal systems

· Veterinary services, excluding regulation of the veterinary profession

· Vehicle licensing

· Abattoirs

· Ambulance services

· Archives

· Libraries

· Liquor licencing

· Museums

· Local spatial planning

· Cultural matters

· Recreation and amenities

· Sport

· Roads and traffic automation and maintenance

· Amusement facilities

· Billboards and the display of advertisements in public places

· Cemeteries, funeral parlours and crematoria

· Local cleansing

· Control of public nuisances

· Control of undertakings that sell liquor to the public

· Facilities for the accommodation, care and burial of animals

· Fencing and fences

· Licensing of dogs

· Licensing and control of undertakings that sell food to the public

· Local amenities

· Local sport facilities

· Markets

· Local parks and recreation

· Local roads

· Noise pollution

· Pounds

· Public places

· Refuse removal, refuse dumps and solid waste disposal

· Street trading

· Street lighting

· Traffic and parking

· Gardens and landscaping

———————

# EXHIBIT 3

*English Law (Extent of Application)*          [**No.  6 of 2011 73**
*(Amendment)*

GOVERNMENT OF ZAMBIA

# ACT

**No.  6 of 2011**

Date of Assent:12th April,2011

**An Act to amend the English Law (Extent of Application) Act.**

[15th April, 2011

**ENACTED** by the Parliament of Zambia.                    Enactment

   **1.**   This Act may be cited as the English Law (Extent of    Short title
Application) (Amendment) Act, 2011, and shall be read as one
with the English Law (Extent of Application) Act, in this Act referred    Cap. 11
to as the principal Act.

   **2.**   The principal Act is amended by the deletion of section *two*    Repeal and
and the substitution therefor of the following:                      replacement
                                                                     of section 2

    2.   Subject to the provisions of the Constitution and to    Extent of
any other written law—                                              application
                                                                     of English
                                                                     law
      *(a)* the common law;                              Cap. 1

      *(b)* the doctrines of equity;

      *(c)* the statutes which were in force in England on
           17th August, 1911, being the commencement
           of the Northern Rhodesia Order in Council,
           1911; and

      *(d)* any statutes of a later date than that mentioned in
           paragraph *(c)* in force in England, now applied
           to the Republic, or which shall apply to the
           Republic by an Act of Parliament, or otherwise;

  shall be in force in the Republic.

———————

*Copies of this Act can be obtained from the Government Printer,*
*P.O. Box 30136, 10101 Lusaka. Price K1000 each.*

**74**

.  .   59, 2010

# EXHIBIT 4

**IN THE SUPREME COURT OF ZAMBIA**          APPEAL N0. 114/2013

**HOLDEN AT NDOLA**

(Civil Jurisdiction)


**BETWEEN:**

**ISAAC LUNGU**                                          **APPELLANT**

**AND**

**MBEWE KALIKEKA**                              **RESPONDENT**


**CORAM:  CHIBESAKUNDA Ag CJ, WANKI JS AND KAOMA Ag. JS**

**On 14th June, 2013 and 02nd April, 2014**


For the Appellant:        Mr. C. Magubbwi - Messrs Magubbwi & Associates

For the Respondent:     Mr. Q. K. Mumba - Messrs Quinton M. Kalonde & Company

---

**JUDGMENT**

---

**Kaoma, Ag JS delivered the Judgment of the Court.**


**Cases referred to:**

1. **Ruth Kumbi v Robinson Kaleb Zulu S.C.Z Judgment No. 9 of 2009**
2. **Krige and Another v Christian Council of Zambia (1975) Z.R. 15**
3. **Lindsay Parkinson and Company Limited v Triplan Limited (1973) 2 All E.R. 273**
4. **Darlington v Mitchell Construction Company Limited (1966) Z.R. 10**

J2

5. **Evan v Bartlam (1937) 2 All ER 646**
6. **Borniface K. Mwale v Zambia Airways Corporation Ltd (In Liquidation) 1998 Z.R. 71**
7. **Chikuta v Chipata Rural Council (1974) Z.R. 241**
8. **Keary Development v Tarmac Construction (1995) 3 ALL ER 534**

**Legislation referred to:**

1. **English Law (Extent of Application) (Amendment) Act No. 14 of 2002**
2. **English Law (Extent of Application) (Amendment) Act No. 6 of 2011**
3. **Rules of the Supreme Court, 1999 Edition**
4. **Supreme Court Rules, Cap 25**
5. **High Court Rules, Cap 27**

This is an appeal against a ruling of the High Court, dated 31st October, 2011 which upheld the order of the Deputy Registrar that the appellant should pay security for costs in the sum of K40,000,000.00 (now K40,000.00) to the respondent before his appeal to the judge at chambers could be prosecuted.

The background of this matter is that on 21st September, 2005 the appellant and the respondent signed a loan agreement in which the respondent advanced to the appellant a sum of K20.0 million and the appellant pledged title deeds of his house No. 35909 Kabelenga/Dr. Damie Road also known as subdivision 'R9' of Farm no. 748 'NJO' Ndola as security for the loan. The loan was to be repaid by 21st October, 2005 together with interest of K10.0 million.

If the loan was repaid after that date there would be additional interest of K5.0 million raising the amount payable to K35.0 million. Then repayment of the loan and all interest accrued thereon was to be completed on 22nd November, 2005. If there was delay in completing the repayment after that date, the appellant would automatically forfeit the house given as security.

The appellant defaulted prompting the respondent to instruct his advocates to start the process of transferring ownership of the house into his name. On 6th July, 2007 the appellant commenced proceedings against the respondent in the Subordinate Court at Ndola seeking a number of reliefs, including a declaration that the interest rates of 300% to 600% per annum chargeable under the loan agreement were unconscionable, punitive, contrary to law and therefore illegal, and an order that the respondent's intended sale of the house without obtaining an order of possession and sale or a foreclosure order was irregular and illegal and if any sale had been perfected it was null and void.

In his defence the respondent had pleaded that the interest rates were agreed upon, and that he was entitled to sell the house

in issue. He also counterclaimed, inter alia, payment of the loaned amount, damages for loss of business, and foreclosure and sale of the security pledged by the appellant.

On 9th December, 2008 the respondent commenced a fresh action against the appellant in the High Court for possession and vesting of title of the property in accordance with the loan agreement. On 6th February, 2009 the respondent obtained judgment in default of appearance and defense before the Deputy Registrar on 22nd June, 2009 the appellant applied before the Deputy Registrar to dismiss the action for duplicity or to set aside the default judgment on the ground that there was a similar case pending in the Subordinate Court. On 19th March, 2010 before the application was heard, the respondent moved the Subordinate Court to dismiss the appellant's action for want of prosecution. The matter was dismissed on the ground that there had been inordinate delay to prosecute it. On 2nd June, 2010 the appellant moved the Subordinate Court to stay and set aside the default order dismissing his action for want of prosecution.

Following that the Deputy Registrar heard the application to dismiss the respondent's action for duplicity and/or to set aside the default judgment. The respondent argued that there was no duplicity as there was no longer any action pending in the Subordinate Court. On 4th October, 2010 the Deputy Registrar ruled that there was no similarity in the two actions and no proof that the subordinate court matter which was dismissed was still pending.

On 26th October, 2010 the appellant appealed to a judge in chambers. The appeal was never given a hearing date. On 24th March, 2011, the respondent moved the Deputy Registrar under Order 40(7) of the High Court Rules for an order that the appellant pays security for costs before hearing of his appeal. On 13th May the Deputy Registrar directed the appellant to pay K40,000,000,00 security, within 7 days, before his appeal could be heard.

Dissatisfied with that decision, on 8th of June, 2011, the appellant appealed to the Judge in chambers. He alleged that the Deputy Registrar failed to observe that there had been a multiplicity of processes by the respondent which eclipsed the appeal and made

it impossible for the appeal to be heard before those processes. He also alleged that the Deputy Registrar erred when he held that there was failure by the appellant to present the appeal, as the appeal had never been allocated a date of hearing and had never come up prior to the ruling. He further alleged that the court in making its order for costs disregarded the very important aspect of considering the merits of his appeal and of the settled legal position that security for costs cannot be ordered against a person who is compelled to take proceedings which are merely defensive.

In her ruling the learned Judge observed that the security for costs related only to the appeal against the ruling of the Deputy Registrar of 4th October, 2010; that the respective actions commenced by the parties were diverse and there could be no claim for duplicity; and that the security for costs did not relate to the main action where the appellant was taking a defensive action. She further stated that the appellant was not, by taking up the appeal against that ruling, trying to defend himself and was not even compelled to appeal against the ruling. Therefore, he was not taking a defensive action, but was just trying to unnecessarily delay the

conclusion of the case. She concluded that the Deputy Registrar was on firm ground when he ordered security for costs; and that the appellant should pay the security for costs before the appeal could be prosecuted and bear the costs of the appeal.

Aggrieved by that decision, the appellant has now appealed to this Court raising two grounds of appeal namely:

1. **That the court below erred when it observed that the Deputy Registrar's order for security for costs does not relate to the main action wherein the defendant, now appellant is taking a defensive action when in fact and conversely the said order for all intents and purposes relates to the appellant's filed opposition/objection to the main or substantive action.**

2. **That the lower court erred in fact when it found and concluded that the defendant had an option of either appealing or not against the said order of the Deputy Registrar and that by taking the option of appealing there against was not acting defensively but was unnecessarily delaying the case.**

At the hearing of the appeal both learned counsel relied on their written Heads of Argument. In his submissions on the first ground of appeal, Mr. Magubbwi, counsel for the appellant, argued that the Judge's ruling was borne out of misapprehension of the facts or processes on the record. He submitted that the Judge

observed that the ruling of the Deputy Registrar was prompted by the appellant's application to set aside the default judgment and/or dismiss the action for duplicity. In counsel's view, however, the Judge erred when she stated that security for costs does not relate to the main action where the defendant is taking defensive action against the plaintiff'. That by so holding, she wrongly failed to appreciate the simple fact that the appellant's application was and is in fact an objection to set aside the default judgment or defensive process to the respondent's main action.

It is counsel's contention that by reason of misdirection at law and in fact, the lower court wrongly endorsed the Deputy Registrar's order for security for costs and placed itself outside the provisions of Order 23 rule 3/3 of the Rules of the Supreme Court, 1999 Edition which states that security for costs cannot be required from a defendant who is exercising his right to defend himself against attack, nor from a person who is compelled to litigate or to take proceedings which are merely defensive. That the said provision by virtue of section 2 (e) of the **English Law (Extent of**

**Application) (Amendment) Act No. 14 of 2002**[2] is of statutory effect and binding on our courts.

To reinforce this argument, counsel also referred us to **Ruth Kumbi v Robinson Kaleb Zulu**[1] where we held that:

> **"Now by statute, the Zambian courts are bound to follow all the rules and procedure followed in England as stated in the 1999 edition of the white book. The entire provisions of the Rules of the Supreme Court as expounded in the white book, 1999 edition, including the decided cases, are now Zambian law by statute and as such binding on the Zambian Courts".**

He submitted that we should overturn the lower court's finding and reverse the order for the payment of security for costs.

On ground two, Mr. Magubbwi argued that the holding of the lower court that the appellant in appealing against the order of the Deputy Registrar was not acting in his defence as he had an option of either appealing or not, was wrong in fact and law. He said that the appeal relates to the appellant's challenge to the respondent's proceedings arising from the application to set aside default judgment and/or to dismiss the proceedings for duplicity, so the said holding is superfluous and wrong in fact and law and should

be reversed. He contended further that the order for security for costs endorsed by the Judge puts a caveat upon the appellant from challenging the Deputy Registrar's decision that dismissed his defence/objection to the proceedings.

He submitted that the decision estops the appellant from benefiting from Order 23 rule 3/3 RSC which does not permit an order for security against a defendant. He said in line with the **Ruth Kumbi**[1] case the appellant is denied from enjoying a statutory provision. To buttress his argument, he cited **Krige and Another v Christian Council of Zambia**[2] where Baron DCJ in delivering the judgment of the Court referred to the principle that one cannot set up an estoppel against a statute. He asked us to set aside the order for security for costs as the lower court acted contrary to the law by stopping the appellant from benefiting from the provisions of Order 23 rule 3/3 RSC. He prayed that the appeal be allowed with costs.

On behalf of the respondent, Mr. Mumba argued both grounds of appeal together. In brief he submitted that the learned Judge was on firm ground when she held that the appellant had an option whether or not to appeal the ruling of the Deputy Registrar, and he

was not taking a defensive action, but was trying to unnecessarily delay the conclusion of the case. He said appealing against a Judge's ruling over an order of payment of security for costs cannot be said to be a defensive action as such action can only relate to the main action.

He argued further that Order 40(7) of the **High Court Rules** and Rule 56 of the **Supreme Court Rules, Cap 25** have similar provisions on payment of security for costs and that the latter rule further provides that 'the court may make compliance with any such order a condition precedent to the entertainment of any appeal'. Mr. Mumba said that by Order 23/1–3/16 RSC, security cannot be required from a defendant who is exercising his right to defend himself against attack. But he said that the appellant is a debtor, who has evaded payment since September, 2005 and that the appeal is petty and frivolous.

He submitted further that since the writ and statement of claim were served on him on 4th January, 2009, the appellant has failed to file appearance and defence, but has preoccupied himself with countless applications and absenteeism from various dates of

hearing given by the court. That he does not deny liability, but purports to argue on interest when he executed the loan agreement.

To fortify this argument counsel referred us to the English case of **Sir Lindsay Parkinson and Company Limited v Triplan Limited**[3] and contended that the respondent has a high degree of succeeding in his claim against the appellant. He submitted that in the affidavit in support of summons for an interim/interlocutory order of injunction at pages 3-4 of the Supplementary Record of Appeal, the appellant acknowledged his indebtedness and is not putting up any defensive action. Therefore, the rulings of the Deputy Registrar and the Judge must be upheld.

In counsel's view, this is in fact a matter in which the High Court should have ordered the appellant to furnish or pay further security for costs. He referred us to **Darlington v Mitchell Construction Company Limited**[4] and **Evans v Batlam**[5].

In the Further Heads of Argument he stated that under Order 23 RSC, a defendant will not qualify for protection if in the opinion of the court there appears to be no merit or the matter is not likely

to succeed. That the person seeking the protection afforded by Order 23, must show that he is able and ready to defend himself which the appellant has failed to do. That the appellant's appeal to the Judge in chambers cannot be said to be a challenge to the respondent's proceedings arising from a default judgment and to dismiss the action for duplicity; and that the two applications were interlocutory and did not relate to the main action.

He submitted also that if the appellant had over the years filed appearance and defence he could call this a defensive action. That the Judge cannot be faulted, and she did not put a caveat or stop the appellant from exercising his right. He said that **Kriges v Christian Council of Zambia**[2] has no bearing on this case. Finally he urged us to dismiss the appeal with costs and to order the appellant to bear the costs of the proceedings in the court below and to bar or prevent the appellant from taking any further step or action until he pays security for costs as ordered.

We have considered the record of appeal and the submissions of learned counsel. We have identified two issues arising from the grounds of appeal. The first is whether the order for security for

costs related only to the appeal and not the main action. The second is whether the order for security prevented the appellant from pursuing a genuine claim. We will deal with the two issues together as they are interrelated. We shall also look at the factors that may be taken into account on an application for security.

In **Darlington v Mitchell Construction Company Limited**[4] cited by Mr. Mumba, Evans Ag, J, applying **Evans v Batlam**[5], stated that a Judge who hears an appeal from a Registrar must exercise his judgment and discretion anew and independently as though the matter came before him for the first time though he must give the weight it deserves to the registrar's decision. This is the correct position even today.

Before we consider the two issues raised for decision we want to deal with the submission by Mr. Magubbwi that by virtue of section 2(e) of the **English Law (Extent of Application) (Amendment) Act No. 14 of 2002**[2], and **Ruth Kumbi v Robinson Kaleb Zulu**[1] the provisions of Order 23 Rule 3/3 of the RSC, 1965 Edition and of the RSC or White Book 1999 Edition are of statutory effect and binding on our courts**.** We wish to state that the position

as put by counsel for the appellant is no longer the same with the passing of the **English Law (Extent of Application) (Amendment) Act No. 6 of 2011[8]**.

By this amendment, and of course subject to the provisions of the Constitution and to any other written law, (a) the common law; (b) the doctrines of equity; (c) the statutes which were in force in England on 17th August, 1911…..; and (d) any statute of a later date than that mentioned in (c) in force in England, now applied to Zambia, or which shall apply by an Act of Parliament, or otherwise, shall be in force in Zambia.

However, English practice and procedure rules only apply in so far as there is a lacuna in our rules or practice and procedure. We do not resort to English practice and procedure when our own rules and procedures are clear and comprehensive. In **Chikuta v Chipata Rural Council[7]** we stated at page 243 that the practice and procedure in the High Court is laid down in the High Court Rules, and that where the same are silent or not comprehensive, recourse should be had to the English White Book**.**

To this effect we have noted that Order 40(7) of the High Court Rules, Cap 27 and Rule 56 of the Supreme Court Rules, Cap 25 provide for the issue of security for costs. However, as the learned Judge was referred to Order 23 rule 3 RSC and she actually referred to it, we shall determine this appeal in terms of both the High Court Rules and the White Book 1999 edition.

We turn now to the merits of the appeal. It is trite that a successful party in litigation is usually entitled to have a substantial part of his costs paid by the losing party. However, the costs of every suit or matter and of each particular proceeding therein are in the discretion of the Court (See Order 40(1) and (6) of the High Court Rules).

With regard to security for costs, Order 40 rule 7 of the High Court Rules provides as follows:

> **"The Court or a Judge may, on the application of any defendant, if it or he thinks fit, require any plaintiff in any suit, either at the commencement or any time during the progress thereof, to give security for costs to the satisfaction of the Court or a Judge, by deposit or otherwise, or to give further or better security, and may require any defendant to give security, or further or better**

**security for the costs of any particular proceeding undertaken in his interest".**

We had the opportunity in **Borniface K. Mwale v Zambia Airways Corporation Ltd (In Liquidation)** [6] to discuss the issue of security for costs. We held as follows:

> **"According to Rule 1 of Order 40 of the High Court Rules, costs are monies incurred in defending oneself or in proving one's case. Therefore, costs do not include the actual amount claimed. Security for costs is generally provided by the plaintiff. However, the proceedings in which the defendant can be ordered to provide security for costs are only those proceedings taken in his own interest. To hold otherwise would be a paradox since the defendant is forced to appear before court to defend his rights".**

Clearly Order 40 rule 7 places discretion on the Court or the Judge in deciding whether or not to grant security for costs. It is also clear from the foregoing rule and authority that security for costs can be ordered against a plaintiff or a defendant in a matter. Suffice to add that for a defendant it is only in proceedings taken in his interest, such as a counterclaim, that a plaintiff can apply for security in respect of the costs of that counterclaim.

Order 23 rule 1 RSC 1999, also deals with the circumstances in which the Court may, on an application made by a defendant, order security for costs 'if having regard to all the circumstances of the case, it thinks it just to do so. The circumstances are (a) the plaintiff is ordinarily out of the jurisdiction, or (b) the plaintiff (not being a plaintiff who is suing in a representative capacity) is a nominal plaintiff who is suing for the benefit of some other person and there is reason to believe that he will be unable to pay the costs of the defendant if ordered to do so, or (c) the plaintiff's address is not stated in the writ or other originating process or is incorrectly stated, or (d) the plaintiff has changed his address during the proceedings with a view to evading consequences of the litigation.

We ought to add that the circumstances listed above have been widely used in our jurisdiction to apply for security for costs under Order 40 rule 7 of the High Court Rules, Cap 27. Again it is clear that the Court has a complete or real discretion whether to order security, and it will act in light of all the relevant circumstances of the case. In other words, the court must carefully consider the effect of making such an order, and in the light thereof

to determine to what extent or for what amount a plaintiff (or the defendant as the case may be), may be ordered to provide security for costs (see paragraph 23/3/3 RSC 1999).

In **Sir Lindsay Parkinson & Co Ltd v Triplan Ltd[3]**, Lord Denning MR highlighted the circumstances that the Court might take into account on an application for security as follows:

1. **Is the claim bona fide and not a sham?**
2. **Does the claimant have a reasonably good prospect of success?**
3. **Is there an admission by the defendant on the pleadings or elsewhere that money was due?**
4. **Is there a substantial payment into court, or an 'open offer' of payment?**
5. **Is the application for security being used oppressively so as to try to stifle a genuine claim?**
6. **Is the claimant's want of means brought about by any conduct by the defendant, such as delay in payment or doing their part of the work?**
7. **Is the application for security made at a late stage of the proceedings?**

We have considered the circumstances that led to the order for security in this case. We note firstly that the respondent's affidavits at pages 138 and 170 of the Record of Appeal did not disclose

circumstances that would warrant security against a defendant. We repeat what we said in **Borniface K. Mwale**[6] that ordering security for costs against a defendant who is a party that is forced to appear before a court by a party commencing the proceedings is a paradox.

Secondly, while the Judge admitted that the appellant's appeal to a Judge in chambers dated 26th October, 2010 had never been given a hearing date, and that the appellant could not be blamed for the delay in prosecuting the appeal, she still acknowledged that the main matter had taken long and thus placed the blame on the appellant when he had no control over the setting of a hearing date. This came out clearly when the Judge said the appellant was not, by taking up the appeal against the order for costs, trying to defend himself and that he had an option to appeal or not to appeal.

We accept as submitted by counsel for the respondent that the court faced with an application for security will look into the prospects of success. But the court will not be enthusiastic about considering the merits of the claim unless it is possible to clearly demonstrate, one way or another, that there is a high degree of probability of success or failure. In this case it does not seem that

the learned Judge considered the prospects of success of the claim or of the appeal when she confirmed security of K40,000,000.00.

Further, the possibility or probability that the appellant will be deterred from pursuing his appeal by an order for security for costs is a sufficient reason for not ordering security. We are aware that the burden to show that a security for costs order would probably have the effect of stifling litigation is on the claimant and that the Court ought to weigh the injustice to a claimant if prevented from pursuing a proper claim by an order for security with the possible injustice to the defendant if they could not recover their costs (See **Keary Development v Tarmac Construction**[8]). In this case it is clear that the appellant's appeal will not be heard if the security is not paid.

Furthermore, both parties' conduct in the proceedings ought to be taken into account. We accept that the appellant's failure to file a defence resulted in the default judgment and that there was an acknowledgement on the record that the amount loaned was owed. However, the appellant had the right to challenge the high interest rates on the loaned amount and he was granted leave to

appeal out of time to the Judge in chambers against the Deputy Registrar's order for security for costs.

The respondent is not without blame. He commenced fresh proceedings in the High Court when similar proceedings over the same facts and subject matter were pending in the subordinate court. We are alive to the fact that the learned Judge below held that the two actions were diverse, but it is clear from the pleadings that there was duplicity. There was also an unexplained delay by the court itself to hear the appeal. As we have said the appeal was never given a hearing date up to the time of the order for security.

In addition, the respondent moved the subordinate court to dismiss the appellant's action challenging the high interest rates on the loaned amount before the application to set aside default judgment and/or to dismiss the High Court action for duplicity could be heard by the Deputy Registrar. Furthermore, he applied for security for costs five months after the appeal against the order for security was filed (though security can be granted at any stage of the proceedings). This conduct on the part of the respondent ought to have been looked at seriously.

We have since established from the case record at the Ndola Subordinate Court that the matter that was dismissed for want of prosecution was in fact restored on 14th June, 2011 by Magistrate Yvonne Nalomba and on 20th May, 2013 the matter was re-allocated to Magistrate Chongo Chitundu for trial on the merits. As late as 12th December, 2013 there was an application by the appellant's advocates to pay a sum of K10,000.00 out of court. In other words the appellant's action at the subordinate court is still subsisting.

The learned Judge below seemed to accept that under Order 23/3/3 RSC 1965 (Order 23/3/23 RSC 1999), security for costs cannot be required from a defendant who is exercising his right to defend himself against attack nor from a person who is compelled to litigate or to take proceedings which are merely defensive, but she observed that the order for security for costs does not relate to the main action where the defendant is taking a defensive action.

It is not clear to us from the order for security for costs that the order related only to the appeal against the dismissal of the application to dismiss action for duplicity and/or to set aside default judgment. We agree with the argument by Mr. Magubbwi

that the appellant's aforesaid application and the subsequent appeal which was never given a date of hearing, was a defensive action and that the order for security affected not only the appeal, but the main action as well.

Even if we were to agree with the learned Judge that the security for costs order related only to the appeal, we still find the amount of K40,000,000.00 to be excessive, and unjustified. We cannot fathom out what expenses the respondent would incur in defending the appeal before the Judge in chambers. We are not even sure how the security for costs of K40,000,000.00 was arrived at. The respondent's affidavits in support of the application for security did not even indicate the amount of costs incurred so far or the estimated costs of the appeal or indeed the estimated future costs.

We want to make it very clear that the court must award only such sum of money as will provide a 'sufficient security', which must be reasonable, in all the circumstances of the case. In fact such a high amount of security undermines access to justice and the appellant's ability to seek and obtain a remedy through the

court. We emphasise that there is no access to justice where the justice system is financially inaccessible to litigants. We again encore our decision in the **Borniface K. Mwale**[6] case that costs do not include the actual amount claimed. In the present case it seems to us that the amount of security included the loaned amount.

In conclusion we agree with Mr. Magubbwi that the order for security barred the appellant from seeking redress and that it was being used oppressively to stifle him from prosecuting a genuine appeal. We disagree with Mr. Mumba that this is a matter in which the learned Judge should have ordered further security for costs.

We are satisfied that the learned Judge in exercising her discretion in this case misdirected herself in law and in principle when she confirmed the order for security of costs in the sum of K40,000,000.00 against the appellant who was the defendant in the matter as he did not choose to embark on the litigation and he had the right to defend himself and to appeal to the Judge in chambers.

For the reasons stated above, we allow the appeal. We set aside the order for security and direct that the appellant's appeal be

**J26**

heard immediately before a different Judge at Ndola. However, we order each party to bear own costs.

.........................................................

L. P. CHIBESAKUNDA

**ACTING CHIEF JUSTICE**

...................................................

M. E. WANKI

**SUPREME COURT JUDGE**

...................................................

R. M. C. KAOMA

**ACTING SUPREME COURT JUDGE**

# EXHIBIT 5

ANTONIO VENTRIGLIA MANUELA VENTRIGLIA V EASTERN AND SOUTHERN AFRICAN TRADE AND DEVELOPMENT BANK


SUPREME COURT.

CHIBESAKUNDA, MWANAMWAMBWA AND CHIBOMBA, JJS.

9TH APRIL, 2009 AND 21ST APRIL, 2010.

(S.C.Z. JUDGEMENT NO. 13 OF 2010).


Flynote


[Constitutional Law] - Immunity from suit - International organisation - Whether a commercial transaction is covered by the principle of absolute immunity.


[Civil Procedure] - Appeal - A point not raised in the Court below may not be raised on appeal.


[Civil Procedure] - Receipt of evidence on appeal - When permissible.



Headnote


The plaintiff issued a writ out of the Commercial Registry claiming for:


(a) A declaration that the defendant having failed to perform its obligations under the loan agreement to declare a dispute and refer the dispute for arbitration should not be seen to benefit out of its own default, and as such the purported appointment of the Receiver under the provisions of the said Agreement be declared a nullity;

(b) An order that the dispute be declared and that the matter be referred to Arbitration as per clause 16.12 of the Loan Agreement made between the 1st and 2nd defendants;

(c) An order for an interim and interlocutory injunction restraining the Receiver, his agents, servants, or whosoever from performing  duties of a Receiver until the determination of this matter or any further Court order;

(d) Damages for undue loss of business of the plaintiff's credibility and credit worthiness;

(e) Damages for loss of business;

(f) Aggravated damages;

(g) Costs; and

(h) Any other relief the Court may deem fit.

Before hearing the substantive claim, the 1st respondent raised a preliminary issue under Order 14A of the Rules, of the Supreme Court and sought a declaration that the 1st respondent enjoyed absolute immunity and as such was not amenable to any Court proceeding in Zambia. The learned trial judge held that the 1st respondent did not waive its diplomatic immunity and therefore the suit against the 1st respondent was therefore a nullity. Hence the appeal.

1. It has been laid down in a plethora of authorities that in order not to ambush the other party, only issues that were pleaded and or raised in the Court below can be raised on appeal because the Supreme Court is a Court of record and only in very exceptional cases is the Supreme Court obliged to receive evidence.

2. Issues which are not pleaded but which are nevertheless raised in a trial Court without any objection from the other side cannot be ignored and a Court has an obligation to consider such issues.

3. The immunities and privileges enjoyed by treaty bodies are the same as the diplomatic immunities accorded to State actors.

4. The Vienna Convention apart from being part of the statutory law, is also part of international customary law.

5. International organizations enjoy statutory or treaty immunity accorded to them by the treaties creating them.

6. It is trite international customary law that except by consent of the parties the Courts universally will not implead another sovereign State's claim for damages.

7. It is also trite international customary law that foreign States, and or legal bodies which carry out duties of the State are conferred absolute immunity jure imperi, for non-commercial activities and that legal bodies whether States or legal entities involved in commercial activities can only invoke restrictive immunity.

8. The notion of restrictive immunity which has received universal recognition underscore a duty of States to guarantee the fundamental rights of access to justice for members of the public who engage in commercial activities with treaty bodies.

9. The trial judge misdirected himself in holding that the respondent was covered by absolute immunity.

10. The 1st respondent entered into a commercial transaction with the appellants, as such is not covered by the principle of absolute immunity. The principle of restrictive immunity has to be invoked.

Cases referred to:

1.      Rahimoola v Nizam of Hyderabad [1952] 3 ALL E.R. 441.

2.      Zoora v Waldnk ZK [1964] 2 ALL E.R 256.

3.      Thai Europe Tapioca Service Limited v Government of Pakistan, [1975] ALL E.R. 961.

4.      Alfred Dunhill of London inc v the Republic of Cuba [1976] US Supreme Court.

5.      Owners of Ship Philippine Admiral v Wallen Shipping (Hong Kong) and Others [1976] 1 ALL E.R. 77.

6.      Trendtex Trading Corporation Limited v Central Bank of Nigeria [1977]1 ALL E.R. 88.

7.      I congreso Del Partido [1981] 2 ALL E.R. 1064.

8.      Planmount Limited v Republic of Zaire [1981] 1 ALL E.R.1109.

9.      Fao v Nazarale Previrdnsetridege Asende Industrial, Judgement No. 53 1982.

10.     Customs & Exercise Commission v APJ Samex and Chanil Synthetic Bibre Industry Co. Limited, 3rd Party (1983).

11.     Owners of the Ship Philippine Admiral v Wallen Shipping (Hong Kong) Limited and Others [1976] 1 ALL E.R. 77.

12.     Standard Charted Bank v International Tin Council & Others [1986] 3 ALL E.R. 257.

13.     Re International Tin Council [1987] 1 ALL E.R. 890.

14.     Maclaine Watson & Co. Ltd v Department of Trade & Industry & Related Appeals [1988] 3 ALL E.R. 257.

15.     Shearson Lehman Bross inc v Madaine Watson & Company Ltd and Re. (International Tin Council Intervening) No. 2 [1988] 1 ALL E.R. 116; (1988). 1 W.L.R. 16.

16.     Avalon Motors Ltd (in Receivership) v Gadsden and Another (1998) Z.R.4.

17.     Chipeta and Others v Zambia Printing Company Limited (1999) Z.R. 181.

18.     Holland Lampen-Wolfe [2000] 3, ALL E.R. 832.

19.     Eastern and Southern African Trade and Development Bank PTA Bank and Another v Ogang (Law African. Com-Delivered on 29/1/2001).

20.     Nkongolo Farms Limited v Zambia National Commercial Bank Limited and Others (2007) Z.R. 149.

21.     Tononolea Steels Limited v The PTA Bank.

22.     Companie Naviera Vascoongada v Trading Corporation Limited (1939).

Legislation referred to:

1. Constitution of Zambia, cap 1, Article 18.

2. Diplomatic Immunities and Privileges Act, cap 20, s 4 read with Statutory Instrument No. 123 of 1992.

3. Rules of the Supreme Court (White Book), Order 14 A.

Works referred to:


1. D.G. Fortman, Beating of the State at its Own Game: An Inquiry into the Intricacies of Sovereign and Separation of Powers.

2. Judicial Decision of the Question Relating to the UN and Related International Organisations.

3. Prof. K. K. Mwenda, Common Market of Eastern and Southern Africa (COMESA). In journal of International Law Volume 6 (2009).

4. L.G. Muthanga, Law in the Making. The Lawyer Magazine No. 14th October, 1999.

5. Halsbury Laws of England "4th Edition, Volume 18.

6. Preferential Trade Area Charter, Articles 42 and 48.

7. Common Market for Eastern and Southern Africa Charter.

8. Universal Declaration of Human Rights, Article 10, and 16.


V.B. Malambo SC, of Messrs Malambo and Company with S. Mambwe and A Siwila of Messrs Mambwe and Siwila and Company for the appellant.


M. Mundashi, SC, of Messrs Mulenga Mundashi and Company, with J.P. Sangwa of Messrs Simeza Sangwa and Associates for the respondents.


JUDGMENT


CHIBESAKUNDA, J.S.: delivered the judgement of the Court.

The Court, for convenience sake, heard two appeals, Appeal No. 11 of 2009, and Appeal No. 32 of 2009, together. By consent of the parties, these two appeals had been consolidated: Appeal No. 32 was against a High Court Ruling dated 28th October, 2008. The High Court in an application under Order 14(A) of the RSC 1999 Edition, had ruled for reasons stated in that Ruling, that the 1st respondent was covered by Diplomatic Immunity as provided under section 4 of the Diplomatic Immunity and Privileges Act. Therefore, the first respondent was not amenable to any Court proceedings in Zambia and as such the proceedings against it were a nullity and misconceived. Consequently, the injunction granted against the 2nd respondents in favour of the two appellants was discharged. The second Ruling, dated 7th November, 2008, in Appeal No. 11 of 2009, the High Court, in an application by the two appellants for a stay of the High Court Ruling of the 28th October, rejected and therefore refused to restore the injunction which was discharged as a result of its Ruling of 28th October, 2008, that the 1st respondent was not amenable to Court proceedings in Zambia. The High Court ruled that, this was so because the action against the 1st respondent was a nullity as the 1st respondent enjoyed diplomatic immunity, so there was, therefore, no cause of action against the 1st respondent, and the 2nd respondent for the Court to stay. The appellants, aggrieved by these two rulings, have come to this Court to challenge them.


The brief history of this matter is that, before the High Court, in writ taken out of the Commercial Registry, the two appellants had claimed for:

(a) A declaration that the defendant having failed to perform its obligations under the loan agreement to declare a dispute and refer the dispute for arbitration, should not be seen to benefit out of its own default, and as such the purported appointment of the Receiver under the provisions of the said Agreement be declared a nullity;

(b) An order that the dispute be declared and that the matter be referred to Arbitration as per clause 16.12 of the Loan Agreement made between the 1st and 2nd defendants;

(c) An order for an interim and interlocutory injunction restraining the Receiver, his agents, servants or whomsoever from performing duties of a Receiver until the determination of this matter or any further Court order;

(d) Damages for undue loss of the plaintiffs credibility and creditworthiness;

(e) Damages for  loss of business

(f) Aggravated Damages;

(g) Costs; and

(h) Any other relief the Court may deem fit.

The endorsement on the writ was elaborated in the Statement of claim. We will not restate the statement of claim.

The 1st respondent in its defence pleaded, inter alia, that: "As an international organisation, is immune from the jurisdiction of the Courts in the Republic of Zambia by virtue of section 4 of the Diplomatic Immunities and Privileges Act, Chapter 20 of the Laws of Zambia, and preliminary point under Order 14(A) of the RSC 1999 Edition, which resulted in the Ruling of 28th October, 2008.

 Before dealing with the issues before the High Court, we will restate briefly the history of this case. According to the statement of claim and the affidavit evidence before the Court, the history of this case is briefly that, the two appellants were shareholders in a Company registered as Zambezi Portland Cement Limited. The 1st respondent is a body corporate, a financial Institution providing banking and financial services and established by charter pursuant to Chapter 9 of the Treaty for Establishment of Preferential Trade Area for Eastern and Southern Africa States with its registered office as NSSF Complex, 23rd Floor Bishops Road, Nairobi, Kenya.

The 2nd respondent is a Receiver Manager for Zambezi Portland Cement Limited, appointed by the 1st respondent. Sometime in 2005, this company, Zambezi Portland Cement Limited applied for a loan from the 1st respondent for the construction of a cement making plant in Ndola, on the Copperbelt Province of the Republic of Zambia. The 1st respondent accepted the proposals and agreed to finance the project with an initial loan of US$12,000,000. A Loan Agreement to that effect was executed. After the execution of this loan facility Agreement, the 1st respondent executed a mortgage deed and debenture covering five properties including the property on which the cement making plant is situated. On and about September, 2005, the parties again executed a plant and assessment deed where Zambezi Portland Cement Limited agreed to pledge its rights and interests in prospecting Licence No. 193 and 168/1 to the 1st respondent once all the formalities of changing title from the third party were concluded. After that, it was then realized that the repayment schedule, as agreed in the Loan Agreement, would not be achieved due to the delay in the construction of the plant. The parties, therefore, agreed on variation of the Loan Agreement. The parties executed the deed of variation of 2006 and 2007.

As the construction of the plant was going on in 2006, it became apparent that construction costs had gone beyond the estimated costs and that additional funding was needed to complete the project. So, the appellants sourced an additional US$13,000,000 from Barclays Bank. Again even this additional US$13,000,000 was not sufficient to complete the construction of this project. By December, 2007, only 95% of the project was completed. Therefore, having exhausted the whole US$13,000,000, a further loan, was required. The appellants in order to secure another loan approached the Trust Merchant Bank of Congo DRC

to source for US$7,000,000, to complete the plant. In order to secure this loan a property known as Plot No. 1468 was pledged as security.

The appellants' position at the High Court was that they never defaulted on loan repayment to the 1st respondent as the loan repayment was re-scheduled to begin on 30th June, 2008, and that the first instalment was in fact made on 3rd July, 2008, and that this payment, was acknowledged by the 1st respondent. The appellants were, therefore, surprised that the 1st respondent wrote to them giving notice of default on 4th July, 2008. Before a response could be given to them, the 1st respondent again gave them a notice of default on 8th July, 2008, demanding immediate payment of the whole loan aforesaid, before a response would be given to the 1st Respondent to its notice of demand and demand for immediate payment, on the 14th of July, 2008, one, Robert Mbonani Simeza (now the 2nd respondent) issued a letter to the appellants stating that he was appointed as Receiver by the 1st respondent and that he enclosed a notice to that effect. Their argument before the High Court was that even if there was that breach alleged to have been committed by Zambezi Portland Limited on Certificate of Title No. 10571, the valuation of the cement plant, on which the 1st respondent had security, was three times the amount lent and it was therefore unreasonable for the 1st respondent to appoint a Receiver. Their argument also is that if the 1st respondent had wanted title deeds of the property pledged to the Trust Merchant Bank, they should have resorted to the method of settling the dispute stipulated on the Loan Agreement which was to declare a dispute.

According to the appellants, the appointment of the 2nd respondent as Receiver therefore was, done in bad faith. They argued further that at law, a Receiver cannot be appointed for a company which is a going concern. In fact, the Receiver was appointed just two weeks before the said project was to be commissioned. Therefore, there was no reason for appointing a Receiver.

The 1st and 2nd respondents' position was that the two appellants defaulted in their repayment of the loan which they obtained from the 1st respondent. Because of this failure, the 1st respondent appointed the 2nd Respondent as Receiver to execute all the debts under the debenture and mortgage executed between the 1st and 2nd respondent's position also is that the two appellants ceased to be shareholders in Zambezi Portland Cement Limited. Zambezi Portland Cement Limited had failed to meet its payments obligation in the loan Agreement upon due notice.

The appellants, after issuing a writ against the 1st and 2nd respondents, applied for an injunction ex-parte. This was granted ex-parte.

Before hearing the substantive claim, the 1st respondent raised a preliminary issue under Order 14(a) of the RSC, 1999 Edition (15). In this application, the 1st respondent sought a declaration from the Court that as per Statutory Instrument No. 123 of 1992, as read together with cap 20 of the Laws of Zambia, and its own Charter, it enjoyed absolute immunity and as such was not amenable to any Court proceedings in Zambia.

Mr Sangwa for respondents argued that under section 4 of cap 20, the President of the Republic of Zambia has declared certain entities to be immune from any Court processes in Zambia. He argued that the President issued the Statutory Instrument No. 123 of 1992, to confer diplomatic immunity on the 1st respondent. Therefore, the issuance of the writ against the 1st and 2nd Respondents was irregular. He cited two cases; (i) Shearson Lehman Bros Inc v Maclaine Watson & (Company Ltd, & Re International Tin Council Intervening (13) and (ii) Standard Charted Bank v International Tin Council and Another (12) in support of his argument. According to him, the claim by the appellants that the 1st respondent waived its

immunity under clause 16 of the mortgage deed was not legally tenable as according to the authorities, only the express waiver would be regarded as a waiver at law.

In response Mr Musaluke and Mr Muya, for the two Appellants, argued: (1) that, although the 1st respondent enjoyed treaty immunity, it nonetheless had waived this immunity under clause 16 of the mortgage deed; (2) that there is a development in international customary law of the concept of restrictive immunity which is that sovereign immunity cannot be invoked in matters relating to commercial activities between States. Restrictive immunity doctrine had developed in cases where States through international organisations or by themselves have engaged in commercial transactions. In support of this argument, they cited the celebrated case of I congreso del Partido (7) as authority.

We will not restate the full arguments by both parties in this application on this preliminary issue raised under Order 14(A) of the RSC 1999 Edition, before the High Court save to state that on this preliminary issue raised by the respondent, the learned trial judge held that: "Under the circumstances, I hold that 1st defendant did not waive its diplomatic immunity under S.I. No. 123 of 1992 aforementioned. This suit against the 1st defendant is therefore a nullity". Consequently, the lower Court discharged the ex parte injunction hence this appeal before this Court.

Before this Court, Mr Malambo SC, leading the arguments on behalf of the appellants, addressed this Court extensively and admirably on the jurisprudential growth of the body of international law since World War II, after the establishment of treaty bodies, such as the World Bank, IMF, UN, PTA etc., on this branch of law on the international organisations' immunity. In his argument, he brought out the intensity of this debate on the applicability, or opposability of these principles of absolute or restrictive immunity. He argued that there is a general acceptance of the principle of the international customary law on granting absolute immunity to acts described as jure imperii and not to acts described as jure gestionis. He conceded to the argument that, international customary law's general principle is that, except by consent of sovereign States, the Courts of any country will not implead a foreign sovereign State in a claim for damages. The thesis behind this is that if the Courts entertained a claim against a sovereign State, and if there was a judgement against such a State, the Courts would be called upon to execute that judgement. As such, that execution would destroy the relations between States and lead to such repercussions impossible to foresee. The learned State counsel further pointed out that, this was one side of the coin. On the other side of the coin, he went on, is the proposition that, legal entities should abide by the rules of the market and that there should be accountability for their actions. He submitted that usually, in such cases there is also the inclusion of arbitration clauses. He argued that it is trite law that immunity, granted to State actors, is absolute, whereas the immunities given to treaty bodies, engaged in commercial activities, are restrictive. He cited the cases of Rahimtoola v Nizam of Hyderabad (1), Trendtex Trading Corporation Limited v Central Bank of Nigeria (6), Alfred Dunhill of London Inc v Republic of Cuba (4) I congreso del Partido (7), Holland v Larmpen – Wolfe (18), Planmount Limited v Republic of Zaire (8), Owners of the Ship Philippine Admiral v Wallen Shipping (Hong Kong) Limited and Others (5) and an Italian case of FAO vs D-Preivide NZE Asiyende (9) drawing a distinction between the concept of absolute immunity enjoyed between sovereign States, and restrictive immunity granted to treaty bodies engaged in commercial activities. He referred to Lord Denning as the pioneer of this approach in the celebrated case of Rahimoola v Nizam of Hyderabad (1), where he expounded this principle this way: "if the dispute brings into question for instance the legislative or international transaction of a foreign government, or the policy of its executive, the Court should grant immunity if asked to do so, because it does offend the dignity of a sovereign to have the merits of such a dispute canvassed in the domestic Courts of another country: but if the dispute concerns for instance, the commercial transactions of a foreign government (whether

carried on by its own departments or agencies or by setting up separate legal entities), and it arises properly within the territorial jurisdiction of our Courts, there is no ground for granting immunity:"Lord Denning continued to propound this thesis of restrictive immunity in another celebrated case of Trendex Trading Company Limited v Central Bank of Nigeria (6). This approach was equally followed in the case of Thai Europe Service Limited v Government of Pakistan (3). Underpinning all these authorities is  the school of thought according to Mr Malambo, SC., that a treaty body once it engages in commercial activities, brings itself on equal footing with an individual it is dealing with. The accepted principle of international customary law is that, absolute immunity is accorded to only acts of a governmental nature described in Latin as jure imperii. But restrictive immunity is accorded to acts of commercial nature, jure gestions. Lord Denning in the case of I congreso del Partido(7) put it this way:

"actions, whether commenced in personam or in rem, were to be decided according to the restrictive theory of sovereign immunity so that a State had no absolute immunity as regards commercial or trading transactions. Whether an act of a sovereign State attracted sovereign immunity depend on whether the act in question was a private act (jure gestionis), or a sovereign or public act (jure imperii) and the fact that the act was done for governmental or political reasons would not convert what would otherwise be an act of jure gestiouis, or an act of private law into one done jure imperii."

In considering whether State immunity should be granted, the Court had to consider the whole context in which the claim against the State was made, with a view to deciding whether the relevant act on which the claim was based should, in the context, be considered as fairly within an area of activity, trading or commercial or otherwise, of a private law character in which the State has chosen to engage, or whether the relevant act should be considered as having been done outside that area and within the sphere of sovereignty.

Mr Malambo also quoted Lord Wilberforce in the same case as having explained this theory this way: "It is necessary to start from first principle. The basis on which one State is considered to be immune from the territorial jurisdiction of the Courts of another State is that of 'par in parem... which effectively means that the sovereign or governmental acts of one State are not matters on which the Courts of other States will adjudicate". The relevant exception, or limitation, which has been engrafted on the principle of immunity of States, under the so called restrictive theory, arises from the willingness of State to enter into commercial or other private law transaction with individuals. It appears to have two main foundations. (a) It is necessary in the interest of justice of individuals having such transactions with States to allow them to bring such transactions before the Courts...(b) To require a State to answer a claim based on such transactions does not involve a challenge to or inquiry into any act of sovereignty or governmental act to the State. It is, in accepted phrases, neither a threat to the dignity of that State nor any interference with its Sovereign functions. (emphasis ours) Lord Wilberforce concluded: "the restrictive theory does not and could not deny capability of a State to resort to sovereign or governmental actions. It merely asserts that acts done within the trading or commercial activity are not immune. The inquiry has to be made whether they were within or outside that activity." (emphasis ours). The House of Lords restated and applied the above principles in the case of Holland v Lampen – Wolfe (18). In his judgement, Lord Millet said: "Until 1975, England, almost alone of the major trading nations, continued to adhere to a pure, absolute doctrine of State immunity. In the 1970s mainly under the influence of Lord Denning M.R., we abandoned that position and adopted the so called restrictive theory of State immunity under which acts of a commercial nature do not attract State immunity even if done for governmental or political reasons. This development of the common law was confirmed by your Lordships' House in the I Congreso (7) case in relation to acts committed before the passing of the 1978 Act."

According to State Counsel, from 1975, the Courts in Britain and in Europe have invoked this principle of restrictive immunity in cases such as Planmount Limited v Republic of Zaire (8) and the Privy Council in the case of Owners of the Ship Phillippine Admiral v Wallen Shipping (Hong Kong) Limited and others (11).

Mr Malambo SC, argued further that this was in line with the general provisions of international law and equity, which requires that such immunity from jurisdiction is meant to be granted to such international organisations whilst balancing that with the principle of protecting and guaranteeing the fundamental rights and legitimate interests of ordinary citizens. These members of public must equally be afforded judicial protection. Their individual's right to access to justice under Article 10 of the Universal Declaration of Human Rights (UDH) ought to be guaranteed. This concept is known as restrictive immunity. He argued that, that right of international customary law of immunity granted to international organisations should not negate the right of those individuals' access to justice in cases where international organisations have joined the market place in commercial activities because these entities have placed themselves on equal footing with the members of the public that they have entered into commercial intercourse with. He argued that they should be held accountable for their actions.

Referring to the facts before this Court, Mr Malambo SC, submitted that the holding by the learned trial judge that the suit against the 1st respondent was a nullity as the 1st respondent enjoyed absolute immunity from suit in the Zambia Courts even before he examined the nature of the action against the 1st respondent, was a gross misdirection by the learned trial judge. According to State Counsel, this approach no longer represents the internal law.

In his further arguments, State Counsel argued that, the learned trial judge treated this legal issue rather casually, a legal issue that has serious implications on the fundamental rights of access to justice for impartial and fair determination of the members of public' proprietary rights. To accept as the Learned trial Judge did that the 1st respondent was entitled to absolute immunity from suit even before examining whether the facts on which it claimed immunity were jure imperii  or jure getionis, was a gross misdirection. According to State Counsel, the proper approach should have been as Lord Denning put it in his judgement in the case Trendex Trading Corporation Limited v Central Bank of Nigeria (6), that is to examine the claim of immunity by the 1st Respondent. He cited further the case of Companie Naviera Vascongada v SS Christina (22) and the case of the Trendex Trading Corporation Limited (2), in which case Lord Denning held that even in the absence of arbitration clause, if a foreign sovereign entity enters into an agreement, it is obliged and bound like any other trader.

According to Mr Malambo, SC, public international customary law which has received wide acceptance internationally is that even the immunity and privilege accorded depend on the nature of the activities involved in the agreement. This development of international law has been accepted as a correct interpretation of the Vienna Convention. He argued that it is a fallacy to allege that the Vienna Convention is not applicable to treaty bodies. In his view all the important statutory instruments under cap 20 of ours laws were crafted on the provisions of the Vienna Convention. He argued that all the immunities described under Article 29 and 36 of the Vienna Convention (20) were incorporated in the statutory instruments made under cap 20. On the argument that, cap 20 is divided into two segments, the first dealing with sovereignty immunity and the second segment dealing with international organisations immunity, he argued that cap. 20 was enacted before the creation of such bodies as PTA Bank. This explains why cap 20 is constructed in that way because its main body is the Vienna Convention. However, he went on to argue that if one examined these statutory instruments, one would find that immunities and privileges conferred on the treaty bodies are derived from the Vienna Convention. His argument however, was that these statutory instruments which derive authority from the Convention cannot be interpreted differently from the Vienna

Convention. According to him, paragraphs, 1595 – 1597 of the Halsbury Laws of England 4th Edition supports this proposition. Citing the case of Zoora vs Waldnk Zake (2), he argued further that the immunities and privileges enjoyed by diplomatic missions are the same as those enjoyed by treaty bodies. There is no difference and these immunities given to treaty bodies do not depend on treaties but on international law as interpreted by the Courts. He argued that the Vienna Convention is part of the internal customary law. He argued that the various statutory instruments that have been drawn under section 4 of cap 20 relating to immunities of treaty bodies cannot have different interpretations from the Vienna Convention. Under the body of international law there is a doctrine of restrictive immunity when it comes to treaty bodies engaged in commercial activities. His main argument is therefore that, the learned trial judge misdirected himself in refusing to accept this development of the law.

As regards the injunction, State Counsel argued that the findings by the learned trial judge that the two appellants were no longer shareholders in Zambezi Portland Cement Limited, was not supported by any evidence before him. State Counsel Malambo further pointed out that even the learned trial judge's holding at p.12 of Vol.(1) of the record of appeal, that: "The plaintiffs have not disputed or challenged the defendant's  assertions. If it is true that the plaintiffs are not shareholders in Zambezi Portland Cement Limited, then they are not entitled to protection by way of an interlocutory injunction", was not supported by any evidence on record. He pointed out that contrary to that holding, the two appellants did dispute the challenge the first respondent's assertions on the ownership of the shares. The affidavit evidence before the Court by the appellants established that the issue of ownership was being hotly contested by the two appellants. He referred to page 593 of Vol. 2 of the record of appeal which indicates that this issue was being hotly contested. According to State Counsel Malambo, the learned trial judge used reasons which were not supported by the evidence on record, as basis for rejecting the injunction. He argued that this was a miscarriage of justice.

Mr Malambo SC, further pointed out that according to the learned trial judge, he discharged the injunction on grounds; (1) that, the appellants had commenced an action on the basis of being shareholders of Zambezi Portland Cement Limited; (2) that the appellants did not disclose the material facts namely that, they seized to be shareholders in Zambezi Portland Cement Limited on or about 4th June, 2007. These two grounds according to State Counsel, has already submitted, were not supported by any evidence on record. The learned State Counsel pointed  to the statement produced before the Court from the Registrar of Companies and argued that the document before the Court, established that the two appellants were the only shareholders in Zambezi Portland Cement Limited even at the time the High Court discharged the injunction. He therefore urged the Court to uphold the appeal.

   Mr Siwila in support of Malambo SC, submitted that his only point was to echo his submissions before the lower Court. According to Mr Siwila, although the 1st respondent enjoyed diplomatic immunity as per the PTA treaty, nevertheless, it had waived this immunity by signing the mortgage deed with clause 16. According to Mr Siwila, by signing this mortgage deed willingly and voluntarily, they submitted themselves to the jurisdiction of the Zambian Courts. So the 1st respondent was amenable to the jurisdiction of the Zambian Courts. We will not restate his argument on the discharging of the injunction. Mr Mambwe did not make any submissions.

Mr Mundashi SC, leading the response for the respondent made only two points leaving the main argument to Mr Sangwa. His first point in response is that all the arguments canvassed by Malambo SC were never raised in the Court below. Therefore, these new issues cannot be raised before this Court. He submitted that Malambo SC was not in the lower Court and as such may not have realized that the two counsels, who represented the two appellants, conceded to the fact that the 1st respondent enjoyed immunity and as such was not amenable to the Zambian Courts' jurisdiction.

His second point was that cap 20 is set in two distinct segments. In the first segment, section 3 deals with the domestication of the Vienna Convention. In the second segment, section 4 spells out the immunities of treaty bodies such as the 1st respondent. So far as Mundashi SC was concerned, there is no blanket application of a Vienna Convention in Zambia. The first segment of cap 20 is confined to dealing with the immunity of the States and this is the segment which deals with the domestication of the Vienna Convention. The second portion of cap 20 deals with the immunities conferred on treaty bodies. So the Vienna Convention has no application to treaty bodies, and therefore as equally no application to this case before this Court.

On ground 2 Mr Mundashi SC, accepted that the issue of ownership of shares was not as settled as put by learned trial judge in his judgement. He also accepted that the learned trial judge knew or ought to have known by the time he discharged the injunction that the issue of ownership of shares was still contentious and that this issue was still pending before the High Court. However, as far as he was concerned, at the time the appellants applied for this ex-parte injunction, which was granted, they had an obligation to disclose the fact that the ownership of shares was still contentious. So, according to the law, they were being punished for failure to disclose this material fact.

 Mr Sangwa, augmenting the arguments by Mr Mundashi SC, argued spiritedly and extensively, firstly that, the arguments by Mr Malambo SC, were new as these were never canvassed in the Court below. He argued that, infact, the argument by Mr Malambo SC, were at variance with the arguments which were before the High Court on behalf of the appellants. Then Mr Sangwa argued that the Ruling of 28th October, 2008, which is now subject of this appeal, resulted from an application pursuant to Order 14A of the Rules of the Supreme Court, 1999 edition (21) calling upon the Court to make a specific finding on whether or not the 1st respondent was immune from suit and legal process by virtue of the provisions of the Diplomatic Immunities and Privileges Act, and Diplomatic Immunity and Privileges of the Common Market for Eastern and Southern African Development Bank, Statutory Instrument No. 123 of 1992. The 1st respondent had also prayed that should the High Court answer the said question in the affirmative, it should declare the whole claim null and void and set it aside.

The Court below agreed that the 1st respondent had immunity from suit and legal process by virtue of Statutory Instrument 123, and section 4 of cap 20 as read with the COMESA Treaty. According to Mr Sangwa the two learned counsel representing the appellants accepted that, the 1st respondent was immune from any legal process in Zambia by virtue of the COMESA Treaty and cap.20 of the Laws of Zambia. Their only contention in the Court below was that, by virtue of clause 16 in the mortgage deed, the 1st respondent had waived its immunity. Mr Sangwa argued that there was no mention of this concept of restrictive immunity or even any argument on the development of international customary law on the concept of restrictive immunity. The thrust of his argument is that these doctrines of absolute immunity and restrictive immunity had nothing to do with the 1st respondent's immunity. According to him, this treaty body and its privileges are defined in the treaties creating it. He then argued that the 1st respondent is a creation of various statutes and treaties. As such its claims of immunity are from COMESA and PTA Treaties to which Zambia was a party and cap 20 of the laws of Zambia. He argued that Zambia voluntarily enacted the Diplomatic Immunities' Act cap. 20 in which section 4, gave effect to Zambia's treaty obligations. He quoted section 4 and went into details on the definition and characteristics of an international organisation relating to the 1st respondent.

He cited the case of Maclaine Watson & Co. Ltd v Department of Trade & Industry (14), in defining the attributes of an international organisation. He went on to say that, the Court held in this case that:     "The expression 'international organisation' is a term of art in public

international law. It is a body or entity created by agreement between States or other entities in international law". He went on to argue that, treaty organisations can only enjoy such immunities as are conferred on them by the treaties that created them and that such treaties are given legal effect by statute in member States. According to him, this is what happened to the 1st respondent. He submitted that the 1st respondent has now claimed immunity conferred upon it pursuant to provisions of the Charters which Zambia was party to and that these immunities have been given legal effect by the Diplomatic Immunities Act, cap. 20 of the Laws of Zambia. He argued that by Article 174 of the Preferential Trade Area for Eastern and Southern African States Charter, signed by Zambia, which committed itself to recognize some of these institutions created under the Preferential Trade Area for Eastern and Southern Africa, and that these were to continue to operate under their respect charters.

Mr Sangwa continued to argue that, although he accepted totally the jurisprudential arguments of the State Counsel Malambo as reflecting the international customary law, according to him, these are relevant to the case before the Court because (a) the law as propounded by Lord Denning in the case Trendex Trading Corporation Limited v Central Bank of Nigeria (6), can only be invoked where parties claiming immunity are Foreign Sovereign States; (b) according to him, the decision in Trendex Trading (6) case was never founded on the interpretation of the Vienna Convention. So given the scenario, he argued the entire concept of absolute or restrictive immunity had nothing to do with the Vienna Convention. He argued that there should be no connection between the rational in the Trendex Trading (6) case on the development of this restrictive immunity theory to the Vienna Convention and the case before the Court.

He submitted that the two concepts or approaches i.e. absolute and or restrictive immunity are certainly part of the international customary law. But the Vienna Convention and other treaties have dictated their own terms. He went on to submit that the 1st respondent as a treaty body is therefore not claiming that it is immune from suit and legal process in Zambia as was in Trendex Trading (6) case. It is seeking immunity on the basis; (1) of the COMESA treaty an Agreement between each Member State; (2) the provisions of the Diplomatic Immunities Act, cap 20 of the laws of Zambia, and (3) on the Statutory Instrument No. 123 of 1992. The 1st respondent is not a State, it cannot therefore, claim state immunity. He cited the case of Standard Charted Bank v International Tin Council & Others (12) emphasizing that the treaties and legislation invariably confer on the international organisation and treaty bodies in question the legal capacities of a body corporate. They confer such privileges and immunities which are decreed in the treaties. Accordingly, he argued, the concepts of absolute immunity and restrictive immunity have nothing to do with the international organisations which are treaty bodies, international organisations only enjoyed such privileges, no more no less, as stated in the treaties creating them. This is why in the Court below the respondent relied entirely on the provisions of Statutory Instrument No. 123 of 1992, section, 4 of cap 20 of the Laws of Zambia, Article 174 of the COMESA Charter and Article 42 of the PTA Charter (28), which clearly defined the 1st respondent's privileges and immunities. He urged this Court to adopt the definition of an international organisation as pronounced in the case of Maclaine Waton & Co. Ltd v Department of Trade & Industry & Related Appeals (14), and urged this Court to apply that definition to the 1st respondent.

He referred further to the case of Standard Chartered Bank v International Tin Council and Others (12) and again urged this Court to adopt the ratio decidendi in that case. He therefore argued that the 1st respondent was entitled to the immunity stipulated in Article 174 5(4) of the COMESA treaty and Article 42 of the PTA Charter, which have been given legal effect by section 4 of cap 20, and Statutory Instrument No. 123 of 1992, unless the same was expressly waived by the 1st respondent.

On this argument, that the 1st respondent waived its immunity under clause 16 of the mortgage deed, which appears at page 19 of the record, he argued that clause 4 of Statutory Instrument No. 123 of 1992 (Diplomatic Immunity and Privileges of COMESA PTA Bank) requires a waiver to be express. His argument is that clause 16 even if given liberal interpretation, cannot be held to be a waiver as stipulated in clause 4 referred to supra. He argued that clause 16 if stripped off what is irrelevant to this case, simply means that when it comes to the realization of the security given by Zambezi Portland Cement Limited, in the exercise of any rights reserved under the mortgage deed, the 1st respondent would have to follow the Zambian law. So clause 16 of the mortgage deed was not a waiver by the 1st respondent even by any stretch of imagination. He argued that in finding out whether clause 16 was a waiver, this Court should adopt the approach which the English Court adopted in Standard Charted Bank v International Tin Council & Others (12). The Court held that: "As in most cases of pure construction, much turns on the initial impression which the words create. The Language of Art 6(1) (a) did not first reading, and does not now after detailed exegesis, strike me as containing any limitation on the time at which the waiver, to be effective, must be made. The waiver must be express." In augmenting this argument he referred to Article 3 of the Agreement between member States which reads: "the Common Market, its property and assets wherever located and by whomsoever held shall enjoy immunity from every form of legal process, except in so far as in any particular case it has expressly waived its immunity. It is however, understood that no waiver of immunity shall extend to any measure of execution."(emphasis ours). So in line with this provision, he urged this Court to dismiss this argument on waiver

Mr Sangwa canvassed the view that as per the sited case of Re-International Tin Council (15), the concept of restrictive immunity does not apply to the 1st respondent. According to Mr Sangwa, an international organisation like the 1st respondent, once incorporated, is merely a means by which member States engaged in collective enterprise, agree to carry on the project in the atmosphere of common interests. So if a group of member States carry out this enterprise collectively through a medium of an international organisation, no one Member State either by executive, legislative or judicial action can assume the management of that enterprise, or subject it to its own domestic law.

On ground 2 in relation to the appeal against the discharge of an ex-parte injunction by the learned trial judge, Mr Sangwa argued that the appellants had a duty to disclose to the learned trial judge at the ex-parte injunction stage that there was a dispute on ownership of shares in Zambezi Portland Cement Limited. He argued that the appellant in an affidavit in support of ex-parte injunction on 6th September, 2008, did not disclose that material fact. They obtained the ex-parte injunction without disclosing this material fact. The fact was only fully disclosed when the respondents applied to set aside this ex-parte injunction on the 13th September, 2008. He argued that it is trite law that since they ought to have disclosed at that stage of getting the ex-parte order that ownership of shares in this company was contentious. The Court was punishing them for that.

The second argument is that even if this Court was to reject this argument, in the alternative, there is still no legal basis for the learned trial judge to have granted an injunction to the appellants. Mr Sangwa argued that, this is so because in line with the trite injunction law, there was no prospect of their claim succeeding because; (a) there is this issue of immunity from legal process by the 1st respondent; (b) on the basis of the maxim that "He who comes to equity must come with clean hands," the appellant had not come to equity with clean hands because; (i) the Appellants defaulted in their obligation under clause 3(d) of the Loan Agreement. (ii) The certificate of title which was supposed to remain in the name of the 1st respondent as part and parcel of security provided for in the first loan was instead used by the appellants to secure another loan from the Trust Merchant Bank of Congo for US$7million.

Mr Sangwa argued that on the foregoing, the appellant did not come to Court with clean hands. Further, Mr Sangwa pointed out that it is trite law that a Court will not grant an interlocutory injunction unless the right to relief is clear and unless the injunction is necessary to protect the claimant from irreparable damage to be suffered by the appellants and the right to relief was not clear. So again he asked this Court to dismiss this appeal.

In response to these arguments by Mr Mundashi, SC and Mr Sangwa, Mr Malambo SC, responded firstly that, there was no contradiction between his arguments and those of the two counsel before the High Court. His argument before this Court is an elaboration of what the two counsel presented before the lower Court. He pointed out that in their arguments before the lower Court, the two learned counsel cited the case of I congreso del Partido (7), a celebrated case because Lord Denning pioneering in this field of the law, propounded the doctrine of restrictive immunity. He argued that in this celebrated case of I congreso del Partido(7), Lord Denning in pioneering this concept of restrictive immunity enunciated the principle of law of restrictive immunity.

According to State Counsel Malambo, the learned trial judge ignored this argument and concluded in the way he did without dealing with these issues presented before him. Further, State Counsel Malambo argued that in concluding the way he did, the learned trial judge failed to analyse the nature of activities of the 1st respondent which were subject to the agreement and thus determining whether or not such activities fell under the activities covered by absolute immunity: jure imperii, or whether or not such activities were of a commercial nature to be covered by the doctrine of restrictive immunity: jure gestionis. He argued that in the alternative, should the Court hold that the 1st respondent was protected by Article 4 of cap 20, his other argument is that, the 1st respondent under clause 16 of the mortgage deed waived that immunity.

In response with regard to the issue of the discharge of the ex-parte injunction, Mr Malambo SC, argued that, the learned trial judge made certain findings of fact that were not supported by any evidence. He based his decision to discharge the injunction on these findings of fact and as such misdirected himself. He, therefore, urged this Court to uphold the appeal.

We have given much thoughtful consideration to the issues raised in this appeal. Hence our taking time. These issues in this appeal, in our view, are seminal, providing future development of the law in Zambia on this principle of jurisdictional immunity of the States and the international organisations. This branch of the law has been an unknown sea to the Zambian Courts. We must pay tribute to counsel on both sides for presenting arguments to this Court spiritedly and convincingly, these arguments have been of great assistance to the Court.

Before dealing with substantive arguments, we will deal with the preliminary issues raised by Mr Mundashi, State Counsel, and Mr Sangwa on behalf of the respondents. Their arguments before us are that, the issues raised on the doctrine of absolute and or restrictive immunity were never pleaded nor raised before the High Court. Both counsel argued that the appellants before the Court accepted that the 1st respondent enjoyed immunity from the legal process and as such was not amenable to any Court process in Zambian Courts, because of Article 174 (5) of the COMESA Charter (27) as read together with Article 42 of the PTA Charter, which has been given legal effect in Zambia by section 4 of cap 20 and Article 4 of Statutory Instrument No. 123 of 1992.

According to both counsel, the argument being advanced before this Court are at variance with the arguments which were advanced by both counsel for the appellants before the High Court. According to counsel for the respondents, as per plethora of authorities, the appellants therefore cannot be allowed to raise fresh issues before this Court.

We agree that, that principle of law has been laid down in a plethora of authorities by this Court that in order not to ambush the other party, only issues that were pleaded and raised in the Court below can be raised in this Court as this is a Court or record. Only in very exceptional cases is this Court obliged to receive fresh evidence. But that statement on issues not raised before the lower Court is not cast iron. We have held that issues which were not pleaded but which were nevertheless raised in the Court below, without any objection from the other side, cannot be ignored and the Court has an obligation to consider such issues. See the case of Nkongolo Farms Limited v Zambia National Commercial Bank Limited and Others (20). At first blush it would appear Mr Mundashi, SC, and Mr Sangwa's arguments are correct, but on further scrutiny of the matter, we are satisfied that, looking at the record at page 604, the issues relating to the doctrines of absolute and restrictive immunity were raised by counsel for the appellant's citation of the case of I congreso del Partido (7). We agree with Mr Malambo Sate Counsel that, the arguments before us are further development of the issues which were raised in the High Court: See the case of Chipeta and Others v Zambia Printing Company Ltd (17). We also agree with Mr Malambo Sc, that the learned trial judge made no mention of these issues in his Ruling of 28th October, 2008. That was misdirection and miscarriage of justice. As Mr Malambo State Counsel pointed out that the learned trial Judge ignored or casually dealt with these major issues by the appellants. We will therefore, address our minds to these issues raised by the appellants.

Looking at all of these issues canvassed in this appeal, we hold the view that, the issues raised in this appeal represent a development of the international law on the applicability and or opposability of the two doctrines of absolute immunity and restrictive immunity. Before we delve into these schools of thought, the view we hold is that the argument before this Court is not whether or not, the 1st respondent did not enjoy immunity from suit or any legal process, because we agree with Mr Mundashi SC, and Mr Sangwa that the appellants did not deny that the 1st Respondent, by virtue of Article 174(5) of the COMESA Charter, read together with Article 42 of the PTA Charter, and Section 4 of cap 20 and Statutory Instrument No. 123 of 1992, was accorded immunity from legal suit and process in Zambia. It is trite law that the respondent's claim for immunity is based primarily on international customary law which has accorded immunity to public international organisations at least for their non commercial activities. See the Miskolc Journal of International Law by Professor K K Mwenda page 61. Rather, the questions before this Court are: (1) what is the nature of the immunity accorded to the 1st respondent? (2) what is the extent of that immunity from any suit and legal process? (3) can treaty or international law supersede our Acts of Parliament?

In response to the first question, we agree with Mr Malambo SC, that the immunities and privileges enjoyed by treaty bodies are the same as diplomatic immunities accorded to State actors. The immunities granted to State actors in Zambia are the same as the diplomatic immunities granted to treaty bodies. Hence the title of cap 20 of the Laws of Zambia says: "Diplomatic Immunities Act". Even Statutory Instrument No. 123 of 1992, is titled "Diplomatic Immunities and Privileges of COMESA" So, these treaty bodies' immunities do not depend on treaties only; they have to be interpreted against the background of international law (See Article 2 of the COMESA Charter). We also agree with Mr Malambo SC, that immunities conferred on treaty bodies in accordance with section 4 of cap 20, are derived from the Vienna Convention. The Vienna Convention, besides being part of statutory law is as much part of the treaty law as it is part of the international customary law. It is binding, as codified international customary law. It is binding also because it has acquired the force of custom through general practice accepted as law. So, we agree with State Counsel Malambo that, the various Statutory Instruments that have been drawn under Section 4 of Cap 20(26), relating to immunities and privileges cannot have different interpretation form the Vienna Convention or International Customary Law.

On the next question, as to what is the nature of that immunity accorded to the 1st Respondent, Mr Mundashi, Sate Counsel and Mr Sangwa admirably tried to convince us that the 1st respondent's immunity and privileges are stipulated in the treaties which created it, nothing more and nothing less. According to them, this principle derives its authority from a well known principle of international customary law that an international organisation enjoys statutory or treaty immunity accorded to it by the treaty or treaties creating it. This theory is based on a well established principle that, an international organisation cannot confer on itself privileges and immunities. It can only enjoy the privileges and immunities granted to it by its member States.

Mr Mundashi SC and Mr Sangwa further argued that, in the case before us, it is wrong to look elsewhere in dealing with this matter other than to look at these Charters (COMESA and PTA) which created the 1st respondent and also to look at section 4 cap 20, and Statutory Instrument No. 123 of 1992, whose provisions gave legal effect to the 1st respondent's claim of jurisdictional immunity. Attractive as this argument may be, we find this argument not in consonance with the COMESA Charter which says in its Article 21 that, the establishment of the Common Market for Eastern and Southern Africa (COMESA) has to be with due regard "to the principles of international law governing relations between sovereign States, and the principles of liberty, fundamental freedoms and the rule of law (our own emphasis)…."

The 1st respondent is one of the principal organs of COMESA. In our view, therefore, the privileges and immunities that have been accorded to the 1st respondent have to be in tandem with the acceptable principles of the international law governing relations between sovereign States and principles of liberties, fundamental freedoms and the rule of law. Since it is trite international customary law that except by consent of the parties, the Courts universally will not implead another sovereign State's claim for damages and since it is equally trite international customary law for damages and since it is equally trite international customary law that foreign sovereign States and or legal bodies who carry out duties of the State are conferred absolute immunity jure imperii for non-commercial activities and that, legal bodies whether State or legal entities involved in commercial activities for the States can only invoke restrictive immunity (see Professor Mwenda's article 'Miskolc Journal of International Law,  the immunities and privileges conferred on the 1st respondent COMESA, PTA treaties and given legal effect by section 4 of Cap 20 and Statutory Instrument No. 123 of 1992 have to be interpreted against that background.

In a Kenyan Court of Appeal case of Tononolea Steels Limited v The PTA Bank (21), which dealt with the issue of 1st respondent's claim of absolute immunity, the brief facts, as narrated by Professor K. K. Mwenda in his article 'Miskolc Journal of International Law' are that Tononolea Steels Limited (21) had a financing importation contract in the order of the amount of US$80,000,000.00. There was an alleged breach of the agreement between the 1st respondent and Tononolea Steel Limited (21). This company then took the 1st respondent to Court. The 1st respondent claimed absolute immunity as provided in the COMESA, PTA Treaties, read together with the Kenyan domestic law, which give legal effect to these treaty obligations. The Kenyan Court of Appeal in three different judgments, delivered by three different judges, dismissed the claim of absolute immunity by the 1st respondent. One of the three judges opined that: "it is inconceivable that the Government of Kenya could knowingly disregard such an important rule of international law and grant PTA Bank absolute immunity from every form of legal process extending to even its commercial activities."This judgement has been subjected to severe criticism by those who advocate for absolute immunity for international organisations. (See Professor Mwenda's article 'Miskolc Journal of International Law').

In another case in which the 1st respondent claimed absolute immunity before the COMESA Court is the case of Eastern and Southern African Trade Development PTA Bank and Another

Ogang, the COMESA Court dealt with a dispute in which one Martin Ogang alleged that he had been wrongfully dismissed by the Board of the 1st respondent. The 1st respondent in making its own claim placed great emphasis of its jurisdictional immunity in Article 48 of the PTA Bank Charter which says: "(1)...Actions may be brought against the Bank in the territories of the Member States or elsewhere in a Court of competent jurisdiction. 2. No action shall be brought against the Bank by members of the Bank or persons acting for or deriving claims from them..."In the Court's first hearing Martin Ogang was granted a suspension order to stop the 1st respondent from enforcing its decision to terminate his employment contract. On the seconds instance, the issues before the Court included the following: (a) to determine whether or not the 1st respondent, an international financial institution, was immune from jurisdiction of the COMESA Court and (b) to resolve the claim made by the 1st respondent and Dr Michael Gondwe, the applicants, that since Mr Martin Ogang, did not state the law upon which the 1st respondent could be made to stand before the COMESA Court, Mr Martin Ogang had no locus standi. The Court invoked Article 42 of its Charter which sates: (2) No action shall be brought against the Bank by members of the Bank or persons acting for or deriving claims from them. However, members of the Bank shall have recourse to such special procedures for the settlement of disputes between the Bank and its members as may be prescribed in this Charter or in the regulations of the Bank made in accordance with the terms of contracts entered into with the Bank." The COMESA Court ruled that the 1st respondent's immunity was applicable only in actions brought to COMESA Court by its members and that these were member States and or financial institutions and therefore did not include individual members of the public. The Court therefore ruled that the immunity provided under Article 42 of the PTA Charter (before clauses 1 − 2 were amended), did not apply to actions brought by individuals to COMESA Court. The COMESA Court also ruled that its decisions take precedence over decisions of national Courts in the interpretation of its Charter.

Article 2 and the two cases we have cited, fortify our view that, the interpretation of the 1st respondent's immunities and privileges as spelt out in the treaties, have to have due regard to all these provisions of international law, fundamental freedoms and principles of liberties and the rule of law. Mr Malambo SC, has argued rightly in or view, that this development of the law on the applicability of restrictive immunity, which is receiving universal recognition underscores a duty of States to guarantee the fundamental rights of access to justice for members of the public who engage in commercial activities with the treaty bodies.

We adopt Wilberforce's words in the case of I congreso del Partido (7), when he says: "It is necessary in the interest of justice of individuals having such transactions with States to allow them to bring such transactions before the Courts...."

Article 10-16 of UDHR spells out this fundamental human right of access to justice. We are alive to the fact that, the UDHR is not a treaty and therefore not binding qua international convention. Nonetheless, our view is that even with that stated, the UDHR is binding on the basis that, it is part of the international customary law codified. It is equally binding because the provisions of the UDHR have acquired the force of custom through general practice accepted as law. Also, and even more persuasive, our Constitution in Article 18 as a grund norm of our laws has incorporated all the elements of this fundamental human right (that is access to justice). Defining this fundamental Human Rights, Profesor de Gaay Fortman in his Article, "Beating the State at its own Game, An Inquiry into the Intricacies of Sovereignty and the Separation of Powers says: "the link with public justice points to duty rather than mere discretionary power. A real step forward in this connection is the current emphasis on the other side of the sovereign coin: the responsibility to protect. In other words, sovereignty in the sense of the execution of national authority implies responsibility rather than just discretion."

Therefore, although human rights are not hieratical, the Courts have, in balancing and weighing between these fundamental human rights given an edge to fundamental human rights such as the right to access to justice. Therefore, using this approach, our country is under a duty by virtue of Article 18 of our Constitution read together with Article 10 and 16 of the UDHR to guarantee this fundamental human right of access to justice and to equality before the law to the appellants. According to Professor de Gaay Fortman, in the same article referred to above, analyzing this fundamental right after September 11th 2001 attacks on USA, and the consequential arrests and detentions of a number of people without trial has this to say on this duty of ensuring this fundamental right of access to justice:"………the legality principle the rule of law implies that everyone, including the State itself and its functionaries, is subject to the law in the sense of clear and unambiguous rules and standards that generally have no retroactive effect…."

The next question is, can treaty law or international customary law supersede our domestic law. As we have already ruled that the diplomatic immunities and privileges enjoyed by treaty bodies are the same as the diplomatic immunities and privileges accorded to State actors, these have been given legal effect by section 4 of cap 20. The diplomatic immunities and privileges of the 1st respondent are part of treaty law as well as our statutory law. The question is, is there any conflict between our subsidiary legislation on cap 20(28) and the treaty law in COMESA, PTA and our Constitution on the right to access to justice? Our Constitution which is a grund norm of our laws as already stated in our judgement, has incorporated the provisions of this right of access to justice (see Article 18 of our Constitution). So there is a conflict between our Constitution and the subsidiary legislation in cap 20, our Constitution prevails. In this case therefore, the right of access to justice has an edge over the consideration of the treaty obligations under COMESA and PTA treaties as domesticated in section 4 and Statutory Instrument No. 123 of 1992.

So, although we see some merit in the arguments by Mr Mundashi, SC and Mr Sangwa that the 1st respondent being an international financial institution created to pursue public purposes of facilitating reconstruction and development to a much larger community within member States by promoting regional trade and investment and as such therefore requires immunity from suit so that they can be allowed to perform their functions unhampered by adhering to rules and regulations in different member States, and as such should enjoy some immunity, nonetheless, we adopt the approach by Lord Denning in Trendex (6), and I congreso del Partido (7), and  other European Courts, the Italian Courts, American Courts and Kenyan Courts. We are therefore persuaded to hold that the learned trial judge misdirected himself in holding that the 1st respondent was covered by absolute immunity. We hold that the facts disclosed establish with no doubt that the 1st respondent entered into a commercial transaction with the appellants and as such is not covered by the principle of absolute immunity. The principle of restrictive immunity has to be invoked.

Mr Malambo SC and Mr Siwila both argued that in the alternative, should the Court hold that the 1st respondent was covered by the doctrine of absolute immunity, then the Court should consider clause 16 in the mortgage deed. Since we have already held that there is merit in the argument that the learned trial Judge misdirected himself when he ruled that the 1st respondent enjoyed absolute immunity, we will not go too much in the arguments on this point. However, looking at clause 16, we agree with Mr Mundashi SC and Mr Sangwa that there was no express waiver of immunity. Article 4, of Statutory Instrument No. 123 provides that there has to be express waiver on immunity before it can be enforced.

Coming to ground 2 the thrust of this ground is that, the learned trial judge erred when he held that the appellants failed to disclose that they ceased to be shareholders in Zambezi

Portland Cement Limited, and as such were not entitled to any equitable remedy of an injunction. Mr Mundashi, SC and Mr Sangwa have argued that although such a finding was not supported by evidence that the appellants were no longer shareholders, nonetheless, the appellants are being punished for failing to disclose, this material fact that ownership of shares was contentious at the stage the appellants applied for an ex-parte injunction.

We understand the argument but have difficulties in accepting that argument. The findings of the learned trial judge at page 12 of the record were: "the fact that the Plaintiffs (now appellants) ceased to be shareholders in the company aforementioned was a very material fact. The suppression of that fact, with a further claim that they are shareholders when they are not, means that the injunction cannot be sustained."

Therefore, the argument of Mr Mundashi SC, and Mr Sangwa cannot be accepted. The learned trial judge based his conclusion on his holding that the appellants were no longer shareholders in the company, which was a wrong holding as it was not supported by any evidence before the learned trial judge.

In the alternative, it has been argued that even if the learned trial judge misdirected himself on that finding as a basis for refusing to grant interlocutory injunction, applying the well established principles in granting or rejecting application for an interlocutory injunction, the appellants would not have been granted that relief as their claim were not established. Also according to the respondents, the appellants did not come to equity with clean hands in that they failed to honour their obligation in the Loan Agreement by not surrendering the title deed to the 1st respondent and by failure to pay as stipulated in the Loan Agreement. In addition, Mr Sangwa argued that as the appellants came to Court seeking this relief after the Receiver had been appointed they were no longer an interested party and as such cannot seek for any remedy.

We have considered these arguments. Firstly, we agree that there was evidence on record that the Appellants were still directors of Zambezi Portland Cement Limited using the authority of Avalon Motors Limited in Receivership v Gadsden and Another (16), as already stated we are satisfied that the learned trial judge based his rejection to grant the appellant an injunction on his conclusions which were not supported by any evidence on record. He concluded wrongly that the appellants were to be punished because they had failed to disclose the facts that they ceased to be shareholders. So he misdirected himself.

Coming to the other argument by Mr Sangwa that even if there was no misdirection, the lower Court would not have granted the appellants the injunction since the appellants did not have a clear claim of right. We hold that there are two main contentious issues which were to be dealt with at trial stage, these are: (1) whether or not the 1st respondent was right to appoint the 2nd respondent as a Receiver at that stage;(2) whether or not there was a breach of the Loan Agreement between Zambezi Portland Cement Limited and the 1st respondent. Looking at these two issues, we are satisfied that there was need for an interlocutory injunction to be granted to the appellants to protect property pendete lite. We therefore find merit on ground 2 as well. In sum total, the appeal succeeds. We award costs to the appellants, to be agreed upon or to be taxed in default.

Appeal Allowed.

# EXHIBIT 6

**IN THE COURT OF APPEAL FOR ZAMBIA**   **APPEAL NO.118/2018**
**HOLDEN AT LUSAKA**
(*Civil Jurisdiction*)

**BETWEEN:**

**LEGAL RESOURCES FOUNDATION**          **APPELLANT**
**LIMITED**

**AND**

**NORWEGIAN MINISTRY OF FOREIGN**          **RESPONDENT**
**AFFAIRS**

*Coram: Chisanga J.P, Makungu, Kondolo, JJA*
*On the 16th day of October, 2018 and ...27th. day of June, 2019.*

*For the Appellant: Mr. K.Chenda and L. Mwamba – Messrs Simeza*
*Sangwa Legal Practitioners.*

*For the Respondent:  Mr. S. Bwalya – Solly Patel Hannir & Lawrence* ✓

---

# JUDGMENT

**MAKUNGU, JA** delivered the Judgment of the court.

### *Cases referred to:*

1. *Thai Tapiola Services Limited v. Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies Imports and Shopping Wing (1975) 3 ALL ER 961*
2. *Rahimtoola v. Nizam of Hyderabad and Another (1958) AC 379*
3. *Congresso Del Partido (1982) 2 ALL ER 1064*
4. *Attorney General v. Roy Clarke (2008) ZR 38*
5. *Eugine Linyulu Isalambo v. Barbro Ekvall (2016) eKLR*
6. *Talaso Lepalat v. The Embassy of the Federal Republic of Germany and 2 others (2015) eKLR*

7. *Thai- Europe  Tapioca Services Limited v. Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies Imports and Shipping Wing (1975) 3 ALL ER 961*
8. *Baccus S.R.L v. Servicio Nacional Del Trigo (1956) 3 ALL ER 715*
9. *Lewanika and Others v. Chiluba (1998) ZR 79*
10. *Rawdan v. Rawdan (1972) 3 ALL ER 977*
11. *Kuwait Airways Corporation v. Iraq Airways Company and another (1995) 3 ALL ER 694*

## Legislation referred to:

1. *The Diplomatic Immunities and Privileges Act, Chapter 20 of the Laws of Zambia.*
2. *The High Court Act, Chapter 27 of the Laws of Zambia*
3. *The Court of Appeal Rules, Statutory Instrument No. 65 of 2016*
4. *British Acts Extension Act Chapter 10 of the Laws of Zambia*
5. *The English Law (Extent of Application) Act  Chapter 11 of the Laws of Zambia*

## Other authorities referred to:

1. *Bryan A. Garner, Black's Law Dictionary, (2009) 9th Edition*
2. *Fox. H and Webb. P., The Law of State Immunity, 3rd Ed (Oxford University Press: Oxford) 2013.*
3. *Halsbury's Laws of England, 4th Edition.*
4. *Hardy. M. J. L., Modern Diplomatic Law. 1968. Manchester University Press.*
5. *Sen. B., A Diplomat's Handbook of International Law and Practice, (Springer Netherlands) 1965.*
6. *Principles of Public International Law, Ian Bromnlie, 4th Edition, Claredon Press: Oxford 1990*
7. *Draft Articles on Diplomatic intercourse and Immunities.*
8. *Modern Diplomatic Law Press) Manchester University 1968 Hardy M.J.L*
9. *The Law of State Immunity Fox. H.and Webb. P. 3rd Edition (Oxford University Press: Oxford) 2013*

**-J2-**

This appeal arises from a decision of the High Court dated 11th October, 2017. The matter was commenced sometime in October, 2014. The defendant, now respondent sought to set aside process on grounds that the service of process effected at the Royal Norwegian Embassy was irregular as it breached the inviolability of the diplomatic mission. On 5th December, 2014 the learned Deputy Registrar made a ruling dismissing the respondent's preliminary objection.

The appellant appealed to the Judge in chambers who heard the appeal and delivered the ruling on 11th October, 2018. The learned Judge determined that there is a lacuna in our laws with respect to service of court process to special persons such as diplomatic missions and foreign states. She therefore referred to Section 12 (1) of the **State Immunity Act 1978.** She referred to Article 22 of the **United Nations Convention on Jurisdictional Immunities of States and Their Property** which provides for service of court process on special persons. On the basis of the said laws, she found that the service of process on the respondent was done in breach of the inviolability of the diplomatic mission. The learned Judge's opinion was that the issuance of any court process was not under the scope of communications envisaged in the contract

-J3-

between the parties.   She upheld the appeal and set aside the originating process for irregularity.   It is this decision that has led to the appeal before us. There are four grounds of appeal couched as follows:

1. *The court below erred in law by holding that service of process on the Royal Norwegian Embassy was done in breach of the inviolability of diplomatic mission.*
2. *The court below erred in law by relying on section 12 (1) of the United Kingdom States Immunity Act, 1978.*
3. *The court below erred in law by holding that Article 22 of the United Nations Convention on Jurisdiction Immunities of States and Their Property applies to Zambia even though the same has not been ratified by Zambia.*
4. *The court below misdirected itself in law when it held that the contract between the appellant and the respondent was out of the realm of matters upon which foreign states can be sued.*

The respective advocates for the parties filed written heads of argument in support of their positions. At the hearing of the appeal, counsel for the appellant, Mr. Mwamba relied on the said heads of argument wherein grounds 3 and 4 were argued together as stated below:

The lower court's conclusion that the issuance of court process was not under the scope of communication envisioned in the contract between the parties was premised on the holding that the contract was out of the realm of matters for which foreign states can be sued.  He referred to the case of ***Thai Europe Tapiola Services Limited v. Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural supplies Imports and Shipping Wing*** [1] where Lord Denning MR held as follows:

> ***"The general principle is undoubtedly that, except by consent, the courts of this country will not issue their process so as to entertain a claim against the foreign service for debt and damages."***

Mr. Mwamba's interpretation of the above holding is that court process cannot be issued against a foreign state unless that state consents.  He submitted that there was a contract between the parties wherein the respondent undertook to provide financial support to the appellant's programme for legal services to the indigent. Therefore, there was need to determine whether the respondent consented to being sued. If the answer is in the affirmative, it is immaterial whether or not the contract was a commercial transaction. Reference was made to clause 10.4 of the agreement between the parties, which reads:

-J5-

*"If any dispute arises relating to the implementation or interpretation of this contract, the parties shall consult with a view to reaching a solution.*

*Any disputes that cannot be solved amicably shall be referred to the competent Zambian Court and settled in accordance with the Zambian law. The court venue shall be Lusaka High Court."*

In light of the foregoing, counsel submitted that the parties had agreed to have any dispute arising from the said agreement dealt with by the High Court in Lusaka.  The respondent waived its immunity and availed itself to being sued in the Zambian Court. The contract was not out of the realm of disputes for which foreign states can be sued.  He further argued that even if the position were to the contrary, the argument that the contract falls in the category where foreign states can be sued would stand.  In this regard, he refers to **Article 30 of the Vienna Convention** which provides as follows:

*"A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving state. He shall also enjoy immunity from its civil and administrative jurisdiction except in the case of:*

*d. an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving state outside his official functions."*

**-J6-**

On the basis of Article 30 above, counsel was of the view that diplomatic immunity does not extend to an action relating to a commercial activity entered into by a diplomatic agent outside his official functions. To fortify this, he referred to the case of **Rahimtoola v. Nizam of Hyderabad and another** [2] where Lord Denning held as follows:

> *"But if the dispute concerns for instance, the commercial transactions of a foreign government (whether carried by its own departments or agencies or by setting up separate legal entities), and it arises properly within the territorial jurisdiction of our courts, there is no ground for granting immunity."*

Counsel also relied on the case of **Congresso Del Partido** [3] where Lord Wilberforce stated at page 1070 as follows:

> *"It is necessary to start from the first principle. The basis on which one state is considered to be immune from the territorial jurisdiction of the courts of another state is that of 'par in parem.' which effectively means that sovereign or governmental acts of one state are not matters on which the courts of other state will adjudicate.*
>
> *The relevant exception, or limitation which has been engrafted on the principle of immunity of states, under restrictive theory, arises from the willingness of states to*

*enter into commercial or other private law transactions with individuals. It appears to have two main foundations: (a) It is necessary in the interest of justice for individuals having such transactions with states to allow them to bring such transactions before the courts. (b) To require a state to answer a claim based on such transactions does not involve a challenge to or inquiry into any act of sovereignty or governmental act of the state. It is, accepted that it poses, neither a threat to the dignity of that state nor any interference with its sovereign actions."*

Counsel argued that immunity of foreign states does not extend to commercial transactions entered into by the foreign state with private parties. That even though the lower court appreciated this limit on immunity of foreign states by relying on Article 10 of the **United Nations Convention on Jurisdiction Immunities of the States and Their Property**, there was a misdirection in determining what amounts to commercial activity. According to learned counsel, a perusal of page 15 of the Judgment shows that the court was of the view that the contract was for a grant and not a commercial activity. The said portion of the Judgment reads in part as follows:

*"It is not in dispute that the plaintiff approached the defendant for financial help which the defendant undertook to provide in form of a grant..."*

Black's Law Dictionary defines commercial activity as follows:

*"An exemption from the rule of sovereign immunity, permitting a claim against a foreign state to be adjudicated in the courts of another state if the claim arises from private acts undertaken by the foreign state, as opposed to the state public acts."*

Counsel further referred to **Principles of Public International Law,** where the learned authors state the following on restrictive immunity of diplomatic agents:

*"In any event the courts and government of a number of states apply the principle of restrictive immunity and therefore it is necessary to examine the modalities of its application.  The method most commonly referred to is the distinction between acts jure imperil (acts of sovereign authority) and acts jure gestionis (acts of a private law character), and the merits of this distinction must be examined.  The basic criterion appears to be whether the key transaction was accompanied on the basis of a private law relationship, such as a contract. Another form of this approach is to state that the act is jure questionis, and therefore not immune, if the transaction can be made by an individual."*

-J9-

Counsel further submitted that the definition of commercial activity depends on whether the transaction is private or public. If the same is public, then immunity applies and where it is private, it is said to be a commercial transaction. Counsel took the position that the contract between the parties was a private activity making it a commercial activity. In the same vein, it was pointed out that the same authors have posited that loans and financing agreements are among some of the agreements that fall within the realm of private transactions or commercial activities as follows:

> *"The Legal system of the forum state is competent in respect of proceedings concerning legal disputes arising from relationships of a private law character to which a foreign state or (its agent) is a party: the class relationship referred to includes (but is not confined to) the following legal categories of commercial contracts; contracts for the supply of services, loans and financing agreements; guarantees or indemnities in respect of financial obligations, ownership, possession, use of property ..."*

In arguing this point, the direction counsel took was that in this case, the agreement was for the financing of the appellant's legal services to the indigent, which without any shred of doubt falls within the categories of transactions termed commercial activities.

Further that, the parties contemplated that personal service was to be effected on the other party. According to counsel, suggesting otherwise would render clause 10.4 of the contract redundant as one would sue but hold onto the documents because they cannot effect service.  Therefore, counsel referred us to Order 10 of the High Court rules which provides that service of process is good if it is left at the premises of the defendant. That the service of process in this case was not irregular as it was in compliance with Order 10 of the High Court Rules.

The appellant's counsel submitted further that the lower court should not have relied on Article 10 of the **United Nations Convention on Jurisdictional Immunities** as the same has not been ratified and domesticated by the Zambian laws.  To fortify this argument, counsel relied on the case of ***Attorney General v. Roy Clarke*** [4] wherein the Supreme Court held as follows:

> ***"In applying and controlling Zambian statutes, courts of law can take into account international instruments to which Zambia is a signatory. However, these instruments are only of persuasive value, unless they are domesticated in the laws."***

-J11-

In light of the foregoing, it was submitted that the lower court did not refer to any specific provision under Article 10 of the **United Nations Convention on Jurisdiction Immunities of the States and their Property**.   There was no analysis of the said provision by the Court.   If it had done so, it would have come to the conclusion that the contract between the appellant and the respondent was a commercial contract.   Counsel also stated that Sub Articles 2 (a) and (b) of the said Article 10 states that where there is a commercial transaction or where the parties consent, immunity does not apply.

In arguing ground 1, Mr. Mwamba referred us to **Section 8 of the Diplomatic and Privileges Act** which states as follows:

> *"8.   (1)   The President may by order direct that this section shall apply to any State specified in the order, being a State with which a treaty or other international agreement applicable to Zambia is in force providing for matters for which provision is made by this section.*

> *(2) Subject to the provisions of subsection (4), a consular office of a State to which this section applies shall not be entered by a police officer or other person acting in the execution of any warrant or other legal process or in the exercise of a power of entry under any written law, except with the consent of the consular officer or of his nominee*

-J12-

> *or, if that consent is withheld or cannot be obtained, with*
> *the consent of the Minister: ..."*

Mr. Mwamba stated that **Article 22 of the Vienna Convention** which is domesticated in Zambia provides as follows:

> *"1. The premises of the mission shall be inviolable. The*
> *agents of the receiving state may not enter them, except*
> *with the consent of the head of the mission."*

According to learned counsel, the reading of the two sections shows that the principle of inviolability of the diplomatic mission is only applicable between the receiving state and the foreign state and not to private citizens of a receiving state such as the appellant.

It was argued further that both **Section 8 of the Diplomatic Immunities and Privileges Act** and Article 22 of the **Vienna Convention** subject the inviolability of the mission to the consent of the state. Thus, the foreign state may waive the inviolability principle. The respondent consented to service of process, thereby waiving "the inviolability of mission" principle.  Counsel referred us to clause 1.1 of the Agreement between the appellant and the respondent which reads in part that "all communication to the Ministry of Foreign Affairs (MFA) in regard to the contract shall be

**-J13-**

directed to the Norwegian Embassy in Lusaka." He stated that the said term of the contract was complied with by the appellant.

In arguing ground 2, the appellant's counsel submitted that the lower court should not have relied on the **United Kingdom States Immunity Act of 1978** as the same was not on the list of statutes applicable to Zambia according to the schedule of the **British Acts (Extension) Act.** That the said Act is also not applicable under the **English Law (Extent of Application) Act** as it was enacted after 1911. There is no law in Zambia that permits the courts in Zambia to resort to the substantive laws of England where there is a lacuna. Section 10 of the **High Court Act** only vests the Courts with jurisdiction as regards procedure and practice and not substantive laws. Counsel's stance was that the lower Court erred when it relied on the substantive law of England. This error was also seen when the Court relied on the case of ***Kuwait Airways Corp v. Iraq Airways Co and another*** which case was interpreting the provision of the law which is not applicable to Zambia. He argued that the reliance by the Court on such laws led to the wrong conclusion that the service was in violation of the inviolability principle. He reiterated that the respondent cannot plead immunity as it entered into a commercial transaction

**-J14-**

thereby subjecting itself to the rules of the High Court. There was consent on the part of the respondent regarding service of court process. He therefore urged us to allow the appeal and send the matter back for hearing before another Judge of the High Court.

In countering the arguments put forward on behalf of the appellant, learned counsel for the respondent, Mr. Bwalya equally relied on the heads of argument filed herein on 23rd August, 2018. The order of his arguments was as set by the appellant's counsel, except that ground 3 was argued independent of ground 4.

In response to ground 4, Mr. Bwalya submitted that the Appellant has advanced two arguments on the lower Court's finding that the contract between the parties fell outside the realm of matters upon which foreign states can be sued and these were as follows:

i. *That the Respondent contractually consented to or waived its immunity to be sued by the Appellant; and alternatively;*

ii. *That the contract between the Appellant and the Respondent perfectly fall within the realm of contracts for which foreign states (the Respondent) can be sued.*

Counsel submitted on the appellant's second argument first as he was of the view that if the answer was favourable to the respondent, the first argument would be rendered irrelevant.

Mr. Bwalya submitted that Article 31 of the **Vienna Convention on Diplomatic Relations ("The Vienna Convention")**, which is domesticated and forms part of the First Schedule to the **Diplomatic Immunities and Privileges Act,** Chapter 20 of the Laws of Zambia ("the DIP Act") immunizes foreign states from civil suits save for suits relating to, among other things commercial activities.

Counsel was of the view that there was a misapprehension of the expression "commercial activities" on the part of the appellant when it submitted that what makes an activity or a transaction commercial is its private nature, i.e. if it is was made with or by an individual.   The appellant was further pushing the edge of the envelope by submitting that *"the fact that the parties subjected themselves to the jurisdiction of the Zambian Courts in the event of a dispute is a clear indication that it is a commercial transaction."* According to Mr. Bwalya, these arguments were bereft of merit. He submitted that the lower Court did not misapprehend the meaning

of a commercial transaction or activity. As the 'expression commercial activity' was defined on page 14 of the Ruling as follows:

> *"An activity, such as operating a business, conducted to make a profit."*

Counsel stated that the foregoing definition was given credence by the Court of Kenya in the case of **Eugine Linyulu Isalambo v. Barbro Ekvall** [5] in relation to which Judge Nzioki wa Makau held:

> *"From the above, it is clear that commercial activity as expressed in the Vienna Convention does not apply to activities incidental to daily life but rather to commercial activities engaged in for personal profits outside official duties."*

Counsel submitted further that, the Kenyan Courts have explained the meaning of commercial activity as envisaged under Article 31 of the Vienna Convention and in this regard Judge Lenaola concluded in the Kenyan case of **Talaso Lepalat v. The Embassy of The Federal Republic of Germany and 2 Others** [6] that:

> *"In order to determine whether a transaction is commercial, it is therefore necessary to consider its nature and not its purpose."*

-J17-

On the basis of the above definition, counsel submitted that the interaction of or the contract between the appellant and the respondent was not undertaken to cause the respondent any form of profit. In addition, a consideration of the nature of the contract confirms that the said contract is not, for all intents and purposes, one that could reasonably be said to relate to a commercial activity. He urged us to look into the contents of the said contract appearing on pages 31 to 37 of the record of appeal. To support his argument, learned counsel, Mr. Bwalya, invited us to portions of the contract which read as follows:

> *"Legal Resources Foundation (LRF) has in letter dated 9th August, 2009 requested the Norwegian Ministry of Foreign Affairs (MFA) for financial support to Legal Resources Foundation Strategic Plan 2010-2011, MFA has decided to comply with the request, and the two parties agree as follows...*
>
> *The Contract sets forth the terms and procedures for MFA's assistance to the Programme as outlined in the Agreed Programme Summary in Annex I...*
>
> *The Goal of the Programme is to attain social justice, an informed public human rights and a sustainable human rights culture in Zambia.*
>
> *Upon completion of the Programme, any unutilized funds, including accrued interests, shall be returned to MFA,*

*unless the parties have agreed in writing upon the utilization of such funds."*

According to counsel, the reading of the whole contract with emphasis on, among the reproduced portion of the contract, shows that the contract does not relate to a commercial activity as envisaged in article 31 of the **Vienna Convention**, upon which a civil suit can be sustained against the respondent.

Additionally, the said contract outlines only obligations of the appellant and not of the respondent.  It only brings out what the respondent may do as "Contributions."  It was his argument that the respondent was merely offering gratuitous financial assistance to the appellant pursuant to and in fulfillment of its functions under the Vienna Convention in article 3 of merely promoting friendly relations between the sending State and the receiving State, and developing their economic, cultural and scientific relations.

He went on to state that the contract between the appellant and the respondent did not relate to a commercial transaction or activity for which the respondent can be sued. Therefore, the lower court was right to have held that the said contract falls outside the

realm of contracts for which the respondent can be sued. He therefore, answered the first question negatively.

In addressing this issue whether the respondent continually consented to or waived its immunity to be sued by the appellant, counsel began by restating what was contained in paragraph 9 to 15 of the appellant's Heads of Argument. We shall not belabor to regurgitate the same as it is duly noted in the earlier part of this Judgment. He argued that the respondent did not waive its immunity to be sued simply because it consented to or submitted to the jurisdiction of Zambian Courts. To fortify this argument, he referred us to the learned authors of **Halsbury's Laws of England, 4ᵗʰ Edition** at page 798, particularly paragraph **1555** where it is posited thus:

> *"A foreign sovereign state may waive its immunity and submit to the jurisdiction of the English courts. This may be done, for example, by entering an unconditional appearance to the action begun against it, with full knowledge of its right to immunity and with proper authority from the competent organs of the state. <u>To be effective, waiver must take place at the time at which the court is asked to exercise jurisdiction; it cannot be inferred from a previous contract to submit to the court's jurisdiction, or from an agreement to submit to</u>*

> *__arbitration__, nor from an application to set aside an arbitration award. Costs awarded cannot be recovered by execution, and even if the state has submitted to the jurisdiction it does not thereby waive the right to remove its property from the jurisdiction."* (As underlined by counsel for emphasis only).

Mr. Bwalya went on to submit that the foregoing perfectly comports with the English Court's pronouncement in the case of **Thai-Europe v. Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies Imports and Shipping Wing** [7] in which **Lawton LJ** endorsed a previous court's decision on the point at page 967 as follows:

> *"A sovereign independent state does not by entering into a trading contract with a foreigner lose its immunity from process in England courts as regards matters arising out of the contract and that a sovereign independent state by making a submission to arbitration in this country does not lose its immunity from being impleaded in the courts of this country. Nothing could be clearer."*

Relying on the above, counsel was of the view that a foreign state cannot waive its immunity from being sued by submitting to the jurisdiction of the court of a receiving state. He contended that the

appellant misunderstood Lord Denning's expression *"except by consent"* in the **Thai-Europe** case.

He went on to state that the respondent did not enter unconditional appearance to the action instituted against it by the appellant. Even if it did, the appellant would still have had to prove that the appearance was entered with full knowledge of the respondent's right to immunity and with proper authority from a representative of the respondent. This position was affirmed by the majority in the case of ***Baccus S.R.L. v Servicio Nacional Del Trigo.*** [8] Therefore, the answer to the second question is also in the negative and ground 4 is devoid of merit, he submitted.

With respect to ground three, Mr. Bwalya referred us to pages 21 and 22 of the Record of Appeal wherein the lower court found as follows:

> *"It is significant to note that Article 22 of the United Nations Convention on Jurisdictional Immunities of States and Their Property provides for service of Court Process. The said Article 22 provides as follows; ... In circumstance (sic) where we have a lacuna in our laws we look up to other jurisdiction for guidance. In light of the law discussed above, certainly the service of Court process on the Royal*

*Norwegian Embassy in the manner it was done was in breach of the inviolability of the diplomatic mission."*

Counsel submitted that the appellants have referred to Article 22 of the **United Nations Convention on Jurisdiction Immunities of States and Their Property** in their arguments. The lower court referred to both Articles 10 and 22 of the said Convention. Article 22 deals with service of court process on foreign states while Article 10 provides for instances in which State immunity cannot be invoked. He therefore urged us to deem ground 3 as abandoned.

Counsel went on to state that if ground 3 is not deemed to have been abandoned, then his brief response thereto would be as follows:

The lower court's reference to Article 22 was a mere indication that it may look to the provisions of other laws for guidance where there is a lacuna in our laws. The Court did not expressly or impliedly hold that Article 22 applies to Zambia, like the appellant asserts. The statement of the Court cannot be said to be a *"holding"* which is defined by **Black's Law Dictionary** as: *"to adjudge or decide as a matter of law (as opposed to fact)...to direct and bring about officially".* He submitted therefore that the appellant has

not demonstrated how the lower Court relied on the said Article[s] *"as though they have a force of law in Zambia."*

According to Mr. Bwalya, proceeding to consider ground 3 which purports to attack the lower Court's pronouncement on Article 22, when the arguments thereunder relate to Article 10, would amount to considering a "new" ground of appeal skillfully "sneaked in" without leave of court contrary to the provisions of **Order X Rule 9(3) of The Court of Appeal Rules, 2016.** He finally urged us to dismiss ground three for lack of merit.

In countering ground 1 counsel submitted that the appellant has suggested that the principle of inviolability of diplomatic mission only applies to states and not private citizens and that the appellant did not breach the inviolability of the respondent by serving the court process upon it. This argument is based on the combined interpretation of section 8 of the DIP Act and Article 22 of the Vienna Convention. The appellant has not attempted to provide any independent authority to augment its arguments in support of ground 1.

He reiterated his contention made before the lower court that service of court process on a diplomatic mission is repugnant to

the principle of inviolability accorded under Article 22 of the Vienna Convention and generally under international customary practices.

He further submitted that the **Draft Articles on Diplomatic Intercourse and Immunities** with Commentaries of the International Law Commission provides the following in relation to Article 22 of the UN Convention *vis-à-vis* the principle of inviolability:

> *"A special application of this principle is the rule that no writ may be served within the premises of the mission, and that no summons to appear before a court may be served in the premises by a process server. Even if the process servers do not enter the premises but carry out their duty at the door, such an act would constitute an infringement of the respect due to the mission. The service of such documents should be effected in some other way."*

In addition, Michael James Langely Hardy in his book *Modern Diplomatic Law* stated on page 45 as follows:

> *"The mere service of process has traditionally been regarded as in itself an affront to the dignity and respect due to the mission, and therefore forbidden even where the writ was served without crossing the threshold-as where the process server lay in wait at the door...the*

*International Law Commission decided in its commentary at least not to forbid the possible use of means which did not involve physical violation of the premises. At the Vienna Conference, however, an amendment introduced by Japan, designed to obtain a definite ruling one way or the other, was withdrawn 'on the understanding that it was the unanimous interpretation of the Committee that no writ could be served, even by post within the premises of a diplomatic mission'. On the basis the sole channel for the service of process is through the ministry for foreign affairs."*

Mr. Bwalya went on to state that similarly, Hazel Fox and Philippa Webb have commented on the sanctity enjoyed by premises of diplomatic missions in relation to service of court process in the book entitled **The Law of State Immunity** in the following terms:

*"The presence of a foreign state's diplomatic mission within the forum territory cannot qualify as legal presence within the jurisdiction for purposes of service of process or submission to proceedings. Service of process is an exercise of sovereignty, and to perform such an act in relation to diplomatic mission is contrary to Article 22 of the Vienna Convention on Diplomatic Relations."*

According to counsel, it is clear that service of court process on premises of a diplomatic mission constitutes an infringement accorded to states by the principle of inviolability.  The appellant's

argument that the principle does not apply to private citizens, if accepted, would result into an absurdity as it would defeat the rationale for which the principle was promulgated.

Counsel's response to the argument that the respondent consented to service of process being affected on its premises and thereby waived its right to contest the principle of inviolability was that the expression **'All communication'** in the agreement between the parties cannot reasonably be interpreted to cover service of court process. The said interpretation is not in line with the rules of construction. Even assuming it was, it cannot be taken to amount to waiver. Waiver of immunity to be sued, cannot be inferred from a foreign state's participation in the execution of a contract in respect of which, as established above, it enjoys immunity from suit.  We were on this basis urged to dismiss ground 1 for lack of merit.

Mr. Bwalya responded to the second ground of appeal by emphasizing his arguments under ground one, especially what the learned authors of **Modern Diplomatic Law** state in paragraph 22.7, that *the sole channel for the service of process is*

*through the ministry for foreign affairs*. That this perfectly comports with the decision in the **Kuwait** [12] Case.

Mr. Bwalya disputed the appellant's indirect argument that service of court process on the respondent was justified under Order 10 of the High Court Rules. He relied on the learned authors of **The Law of State Immunity** referred to above. He stated further that Order 10 of the High Court Rules adequately provides litigants with an avenue to adopt for purposes of effecting service of court process on parties situated outside the jurisdiction. The appellant completely misunderstood the law on the mode of service on diplomatic missions. A reading of the relevant portion of the passages that resulted into ground two will show that the lower court was merely drawing guidance from the international provisions that it relied upon and was merely soliciting for inspiration on a procedural point of law when it found itself at crossroads. Even concluding that the lower court did, in fact, **rely** on the UK Act, it is not true, as argued on behalf of the appellant, that alone prompted the lower court to hold that *the service of process* [on the Respondent] *was in violation of the inviolability principle*. The lower Court referred to other provisions of the law including the provisions of our Diplomatic and Privileges Act. He

submitted that the second ground of appeal lacks merit and urged us to dismiss it also.

In conclusion, Mr. Bwalya submitted that the appeal presents a perfect opportunity for this Honourable Court to make an authoritative pronouncement on the propriety of effecting service of process on premises of diplomatic missions in our jurisdiction. This would in essence serve as a representation of the attitude that our jurisdiction has towards international relations.  He therefore urged us to dismiss the entire appeal with costs.

In his oral submissions, Mr. Bwalya referred us to the case of *Lewanika and Others v. Chiluba* [10] wherein the Supreme Court held that the **English Family Law Reform Act of 1969** applies to our jurisdiction and that Section 9 of the **High Court Act** facilitates the application of Acts that are passed in England. Therefore, the lower court was on firm ground when it relied on the Act of England.

In reply, Mr. Mwamba submitted that there is no legal basis for restricting the definition of a commercial activity as one conducted to make a profit. Counsel was of the view that foreign missions enter into agreements for the supply of goods by private citizens or

provision of certain services such as cleaning.  It would be absurd to state that such agreements are not commercial in nature. He maintained that a commercial activity depends on whether or not the transaction is public or private.  He placed reliance on the case of ***Talaso Lepalat*** [6] wherein it was held that:

> "***In order to determine whether a transaction is commercial, it is necessary to consider its nature and not its purpose.***"

That this position defeats the respondent's arguments because in effect, the respondent is stating that the transaction should be determined on its purpose vis profit making. This confusion emanates from the fact that the transaction relates to a grant from the respondent to the appellant.  Further that, although it was a grant, it was embodied in a contract imposing contractual obligations on both parties giving either party the right to sue.

With respect to consent on the part of the respondent to being sued, Mr. Mwamba argued that the issue was not whether or not the respondent waived its immunity as argued by the appellant but that of consent. The authorities cited by the respondent cannot help because they are inapplicable to this court.

He went on to state that ground 3 has not been abandoned. The gist of the appellant's argument under ground three is not whether the lower court relied on Article 10 or 22 but that the **United Nations Convention on Jurisdictional Immunities** is not applicable to Zambia.

Mr. Mwamba submitted further that the respondent has cited various authorities defining the inviolability principle but has not shown how the definition assails the appellant's argument that it is not applicable to private individuals. Assuming it was applicable to individuals, the respondent did under clause 1.1 appoint the embassy as its agent and that all communication was to be made through the embassy. The appellant was therefore within its right to serve the process on the mission. Assuming that the service of process on the mission is restricted, it would only make the process irregular and not the entire action as irregularity does not nullify an action.

He augmented his arguments orally by submitting that Section 10 of the High Court Act states when law and practice observed in England can be resorted. The **Lewanika** case cited by counsel for the respondent was decided in 1998 prior to the 2011 amendment

of the High Court Act. Therefore, the Court erred to rely on an Act of Parliament from the UK which has not been imported by either Chapter 10 or 11 of the Laws of Zambia.

We have carefully considered the record of appeal as well as the written and oral submissions made on behalf of both parties.

We shall deal with the grounds of appeal in the order that the appellant's advocate addressed them.

With respect to the fourth ground, we note that in deciding whether the contract between the parties was outside the realm of matters upon which foreign states can be sued, the lower court on page 15 of the ruling appealed against looked at Article 31 (1) (c) of the **Vienna Convention on Diplomatic Relations** which undisputedly applies to Zambia as the **Diplomatic Immunities and Privileges Act** gives effect to it.

**Article 31 (1) (c)** provides:

> "*1. A **diplomatic agent** shall enjoy immunity from the Criminal Jurisdiction of the Receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of;*

> c. *an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving state outside his official functions.*"

(Underlined for emphasis only)

The lower court also considered the definition of the term commercial activity under **Black's Law Dictionary** 9th edition at page 38:

> *"An activity, <u>such as</u> operating a business, conducted to make a profit."*

(Underlined for emphasis)

The case of **Thai- Europe Tapica Service Limited** was also taken into account by the lower court with regard to Lord Denning's pronouncements in relation to state immunity as follows:

> *"A foreign Government which enters into an ordinary commercial transaction with a trader must honour its obligations like other traders and if it fails to do so, it should be subjected to the same laws and answerable to the same tribunals as they are."*

The lower court also considered Article 10 of the **United Nations Convention on Jurisdictional Immunities of States and Their Property**.

We have found it imperative in considering the fourth ground of appeal to comment on the laws relied upon by the lower court;

Firstly, Article 31 (1) (c) of the **Diplomatic Immunities and Privileges Act** pertains to a "diplomatic agent." Blacks Law Dictionary at page 76 defines diplomatic agent as, "A National Representative in one of four categories:

(1) Ambassadors, (2) envoys and Minister plenipotentiary (3) Ministers resident accredited to the sovereign, or (4) Charges d' affaires accredited to the Minister of foreign affairs."

According to Article 1 of the Vienna Convention, a "diplomatic agent" is the head of the mission or a member of the diplomatic staff of the mission."

The respondent herein: The Norwegian Ministry of Foreign Affairs cannot reasonably be described as a "diplomatic agent." Our understanding is that a diplomatic agent is an individual falling in the categories stated in the two definitions given above and not a Ministry or a State.

The lower court therefore misdirected itself by relying on Article 31 (1) (c) of the **Vienna Convention on Diplomatic Relations** as that Section is inapplicable to the matter.

The **Europe Tapica Services Limited** case is indeed applicable to this case as it relates to state immunity and the respondent herein represents the Norwegian Government "a foreign government."

The question therefore is whether the respondent entered into an ordinary commercial transaction with the appellant in order for it to be subjected to the same laws and answerable to the same tribunals as the appellant.

It is clear that the contract between the parties was for financial assistance to be rendered to the appellant by the respondent in form of a grant.

**Black's Law Dictionary** at page 325 defines Commercial activity as:

> "*(1). Relating to, or involving the buying and selling of goods mercantile < commercial advertising>*
>
> *(2) Resulting or occurring from commercial or exchange < commercial gains>.*
>
> *(3) Employed in trade engaged in commerce< commercial traders>*
>
> *(4) Manufactured for the markets: put up for trade < commercial products*

(5) *Relating to, or involving the ability of a trade of a product or business to make a profit<commercial potential> e.t.c."*

As for commercial activity, the same Dictionary says **"see Activity.(1)"** Our understanding is that this means commercial activity relates to or involves the buying and selling of goods, mercantile as stated under (1) in the definition of commercial.

Taking into account the above definitions of commercial activity and the case of **Talaso Lepalat** [6] on the nature of the transaction between the parties, our position is that the transaction was not commercial. Clause 2 of the contract confirms this, as it clearly provides:

*"2.1 MFA shall, subject to parliamentary appropriation, make available a financial grant not exceeding NOK 6,000,000 (Norwegian Kroner six million) (the grant to be used exclusively to finance the programme during the planned period 2010 – 2011*

*2.2 Upon completion of the programme, any unutilised funds, including accrued interests, shall be returned to MFA, unless the parties have agreed in writing upon the utilisation of such funds."*

As rightly pointed out by the appellant's counsel "commercial activity exception" according to Black's Law Dictionary is " An

exemption from the rule of sovereign immunity permitting a claim against a foreign state to be adjudicated in the courts of another state if the claim arises from private acts undertaken by the foreign state, as opposed to the state's public acts.   See restrictive principle of sovereign immunity, jure Gestionis, jure imperil."

Counsel for the respondent has referred us to the principles of public international law on the restrictive principle of sovereign immunity as propounded by the authors of the principles of Public International Law *(supra)*.

The Kenyan cases of **Eugine Lingulu Isalambo v. Barbro Ekvall** [5] and **Talaso Lepalat v. Embassy of the Federal Republic of Germany and 2 others** [6] are not binding on us but merely persuasive.  However, we accept the position in the **Talaso Lepalat** case that:

> **"*In order to determine whether a transaction is commercial, it is necessary to consider its nature and not its purpose.*"**

The **Eugine Lingulu Isalambo** case relates to immunities of state agents and is therefore inapplicable.

We accept the modalities of the principle of restrictive immunity as elucidated by the authors of the principles of Public International Law *supra* which are used by among others, governments of numerous states. The principles are useful in resolving the issue of state immunity. The method commonly referred to is the distinction between acts *jure imperil* (acts of sovereign authority) and acts *jure gestonis* (acts of private character). The basic criteria appears to be whether the key transaction was based on a private law relationship, such as contract. Another form of this approach is to state that the act is *jure gestonis* and therefore, not immune, if the transaction can be made by an individual.

In the present case, our examination of the contract between the parties leads us to the conclusion that it concerns acts *jure gestonis*. Therefore, the courts of this country are competent in respect of proceedings concerning legal disputes arising from that contract as they pertain to private law.

Furthermore, the contract does not relate to acts of sovereign authority (*jure imperil*). The case of **Rahimtola v. Nizam of Hyderabad and another** [2] involved commercial activity of a diplomatic agent. Our view is that it is inapplicable to this case

**-J38-**

because we are dealing with foreign sovereign state immunity and not the immunity of a diplomatic agent.

The case of **Congresso Del Partido** applies as we totally accept the *ratio decidendi* and adopt it. We shall not repeat the holding quoted on page 8 of this judgment as it is lengthy. Suffice to say that to require the respondent herein to answer a claim based on such a transaction does not involve a challenge to or inquiry into any act of sovereignty or government act of the state. It poses neither a threat to the dignity of Norway nor any interference with its sovereign actions.

We also accept that according to clause 10 .14 of the agreement between the parties dated 10th March 2010, the parties agreed that all disputes arising from the implementation or interpretation of the contract that could not be resolved amicably, be settled in accordance with the Zambian law.

The respondent's counsel has argued that the respondent did not waive its immunity to be subjected to the Zambian courts because according to Halsbury's laws of England 4th edition at page 798 paragraph 1555:

-J39-

*"To be effective waiver must take place at the time at which the court is asked to exercise jurisdiction; it cannot be inferred from a previous contract to submit to the courts jurisdiction, or from an agreement to submit to arbitration."*

This position was buttressed in the case of **Thai Europe** [7] although the issue in that case was of a sovereign independent State entering into a trading contract with a foreigner.

In the present case, the respondent's grievance as can be seen from the affidavit in support of summons to set aside originating process for irregularity on pages 26 – 27 of the record of appeal was that the writ of summons and statement of claim were served on the Royal Norwegian Embassy without permission from the Norwegian diplomatic mission or that of any diplomat to enter the premises and perform the purported service. Further that the Norwegian diplomatic mission is inviolable and that the plaintiff ought to have applied to serve court process out of jurisdiction.

We are therefore of the considered view that the respondent raised no issue of waiver of state immunity to submit to the jurisdiction of the Zambian courts. It only raised issues of defective commencement of action and service of process. The issue of waiver of state immunity was brought in by the lower court when

**-J40-**

dealing with the question whether issuance of court process was under the scope of communication envisaged in the contract.

On the facts of this particular case, Clause 10.4 of the contract between the parties' amounts to waiver by the respondent of its immunity from being sued in Zambia.   There is no copy of the memorandum of appearance on record, but we can safely assume that it was a conditional memorandum of appearance which enabled the respondent to quickly apply to set aside process for alleged irregularity. Although a conditional memorandum of appearance was entered, it did not entail that there was no waiver of immunity to be sued as the respondent's grievances were that no leave to issue writ for service out of the jurisdiction was obtained and that the process was served at the Royal Norwegian Embassy which is inviolable.

The view we take is that this case falls under the exception to the rule of sovereign immunity and commercial activity therefore the appellant is permitted in international law to sue the respondent.

The case of **Thai Tapiola Services Limited** [1] relates to issuance of court process as to entertain a claim against the Foreign Service

for debt or damages.  Foreign Service is defined under Black's Law Dictionary as:

"*1. United States Foreign Service*

*2. Forensic Service*

*3. Hist.*

*A feudal service performed by a tenant outside the fee.*"

The view we take is that the respondent herein is not a foreign service and therefore the case of **Thai Tapiola Services Limited** [1] is inapplicable to the facts of this case.  Ground 4 therefore has merit.

It is clear from pages 21 – 24 of the record, which are pages 12 and 15 of the ruling respectively, that the lower court referred to Articles 10 and 22 of the **United Nations Convention on Jurisdictional Immunities of States and Their Property** and on pages R15 and R16 the court clearly acknowledged that Zambia has not ratified the said convention.  We must state that the essence of the third ground of appeal as we understand it is that the court erred in law and fact by referring to a Convention which does not apply to Zambia as it is unclear whether Zambia has signed that Convention.

In paragraphs 36 – 40 of the appellants heads of argument, the appellant advanced contentions in relation to the third ground of appeal. We therefore find the respondent's assertion that no arguments were advanced in support of ground 3 to be baseless. There is no premise upon which we could deem ground 3 as abandoned even though the lower court also referred to Article 10 of the said Convention which Article was not mentioned in ground 3 as it appears in the memorandum of appeal.

There is no evidence that Zambia is a signatory to the **United States Convention on Jurisdiction Immunities of States and Their Property**. We therefore take it that the lower court erred when it referred to that Convention because according to the case of the **Attorney General v. Roy Clarke,** [4] courts in this country can take into account international instruments to which Zambia is a signatory. Such instruments are merely of persuasive value, unless they are domesticated in the laws of Zambia.

We are of the view that the lower court did not rely on the said **United States Convention on Jurisdiction Immunities of States and Their Property** as though it has the force of law in Zambia. The lower court did not hold that the Convention applies

**-J43-**

to Zambia.  For the foregoing reasons, ground 3 partially succeeds in that there was no justification for referring to that Convention.

On ground one, we shall firstly consider **Article 22 Sub Articles 1 and 2 of the Vienna Convention** which provide as follows:

*"1.  The premises of the mission shall be inviolable. The agents of the receiving state may not enter them, except with the consent of the head of the mission."*

*"2.  The receiving state is under a special duty to take all appropriate steps to protect the premises of the mission against any intrusion or damages and to prevent any disturbance of the peace of the mission or impairment of its dignity."*

*"3.  The Premises of the mission, their furnishings and other property thereon and the means of transport of the mission shall be immune from search, requisition, attachment or execution."*

It is clear from the above provisions that the premises of a mission such as the Royal Norwegian Embassy in Zambia is inviolable.

We cannot accept Mr. Mwamba's submission that the principle of inviolability of diplomatic mission is only applicable between the receiving state and the foreign state and not to private citizens of the receiving state.  That is because the subject provisions relate

to the state and "any other person" as shown under **Section 8 Sub Section (2) of the Diplomatic and Privileges Act** quoted herein on page J11 and the first part of **Article 22 of the Vienna Convention**: ***"The premises of the mission shall be inviolable."*** This sentence is general and it applies to the state as well as private citizens.

It is also clear that legal process may be served on a consular office with the consent of the consular officer or his nominee, or if that consent is withheld or cannot be obtained, with the consent of the Minister where sections 8 (1) and (2) are applicable.

We therefore accept Mr. Mwamba's submission that the inviolability of the mission can be waived. The question is, how can the inviolability of a mission be waived? The appellant has argued that by endorsing Clause 1.1 of the agreement between the parties which says in part that: ***"All communication to MFA in regard to this Contract shall... be directed to the Norwegian Embassy in Lusaka,"*** the respondent waived the inviolability of the Royal Norwegian Embassy. According to the appellant's counsel "all communication" includes court process."

On this issue, we place reliance on the **Draft Articles on Diplomatic Intercourse and Immunities with Commentaries of the International Law Commission** *supra* cited by the respondent's counsel.  As regards the principle of inviolability *vis a vis* Article 22 of the Vienna Convention, it is clear that service of a writ of summons on a mission is prohibited as it constitutes an infringement of the respect due to the mission.  We also accept the statement by Micheal James Langely Hardly in his Book Diplomatic Law referred to by the respondent's counsel, that service of process has traditionally been regarded as in itself an affront to the dignity and respect due to the mission, and therefore forbidden.   We accordingly hold that the sole channel for the service of process is through the Ministry of Foreign Affairs under the circumstances of the case.  We are also fortified by the authors of the Law of State Immunity that:

> *"The presence of a foreign state's diplomatic mission within the forum territory cannot qualify as legal presence within the jurisdiction for purposes of service of process or submission to proceedings. Service of process is an exercise of sovereignty and to perform such an act in relation to diplomatic mission is contrary to Article 22 of the Vienna Convention on Diplomatic Relations."*

The expression "All communication in regard to the contract shall be directed to the Norwegian Embassy in Lusaka" under Clause 1.1 of the subject contract, cannot reasonably be interpreted to cover service of court process as seen from the international laws on inviolability of foreign missions cited by the respondent's counsel. The service of the writ of summons on the premises of the Norwegian Embassy was therefore unacceptable as it was in breach of the inviolability of the Embassy or diplomatic mission.

Although the Royal Norwegian Embassy premises formed part of the territory of the receiving state (Zambia), it was improper to serve the court process at the embassy because Order 10 rule 3 of the High Court Act does not relate to service on foreign states or special persons but to the requirement of leave to issue process for service outside jurisdiction. Service on foreign states and diplomats is governed by International law.

The case of **Radwan v. Radwan** [11] clarified the issue of inviolability of diplomatic premises as follows:

> *"Although diplomatic premises were inviolable by the agents of the receiving state, they nevertheless formed part of the territory of that state.*

*"...But there are two popular myths about diplomats and their immunities which we must clear away: one is that an embassy is foreign territory, and the other is that a diplomat can incur no legal liabilities in the country in which he is serving. The first is a confusion between territory or property and jurisdiction over it, and it is important to clarify it for it has sometimes arisen over ships and aircraft. <u>The building occupied by a foreign embassy and the land on which it stands are part of the territory of what we call the receiving state: it is therefore under the jurisdiction of that state.</u> But the members of the mission and their activities in the embassy are primarily under the control and jurisdiction of the sending state. International law avoids conflict between these jurisdictions by laying down rules to cover the whole field of diplomatic relations. These rules have been embodied in the Vienna Convention 1961, which may be taken as reflecting existing law and practice. This Convention, and that on Consular Relations drawn up in 1963, are among the first steps—we shall meet others on the law of the sea—in the successful codification of international law. <u>The premises of a mission are inviolable, and the local authorities may enter them only with the consent of the head of the mission. But this does not make the premises foreign territory or take them out of the reach of the local law for many purposes: for example, a commercial transaction in an embassy may be governed by the local law.</u>"*

(underlined by the court for emphasis only)

With regard to the second ground of appeal, we totally accept the submission made on behalf of the appellant. The **State Immunity Act 1978** is not mentioned in the schedules annexed to the **British Acts (Extension) Act** and the **English law (extension of application Act** which schedules indicate the laws applicable to Zambia.

We therefore hold the view that the court below erred by relying on the **States Immunity Act 1978** as reliance on it was unjustified. The lower court also erred to rely on the case of **Kutwait Airways Corporation v. Iraq Airways Company and Others,** which interpreted the said Act.

For the foregoing reasons, the 2nd ground of appeal has merit and it is upheld.

All things considered, the appeal succeeds on grounds 2 and 4 and partially succeeds on ground 3. Ground 1 fails. It is on record that the Royal Norwegian Embassy is no longer operational in Zambia. It is also a notorious fact that the embassy was closed a few months ago.

Commencing court action is one thing, service of court process is another in international law.  In this case, service of process was irregular and rightly rejected.

On the issuance of court process for service out of jurisdiction, Order 10 Rule 16 of the High Court Act provides in part:

> *"An application for leave to issue for service out of the jurisdiction a writ of summons, originating summons, or originating notice of motion may be made ex- parte to the court or a Judge on deposit of the writ, summons or notice with the registrar together with an affidavit in support of such application."*

In the present case, the appellant ought to have sought leave to issue the writ for service out of jurisdiction.  Lack of such leave renders the writ irregular.  It is therefore our resolve that the originating process was improperly issued and we uphold the lower court's decision to set it aside albeit for a different reason.

Under the circumstances, it is only practical that the appellant goes back to the drawing board.  We order that each party shall bear its own costs.

..........................................
**F.M. CHISANGA**
**JUDGE PRESIDENT**
**COURT OF APPEAL**

..........................................
**C.K. MAKUNGU**
**COURT OF APPEAL JUDGE**

..........................................
**M.M. KONDOLO, SC**
**COURT OF APPEAL JUDGE**

**-J51-**

# EXHIBIT 7

Case 1:22-cv-00058-CRC   Document 28-2   Filed 09/23/22   Page 233 of 546

<div style="margin-left:auto">

*a*

of   19  .  *a*

NTY COURT]

            Plaintiff
            Defendant

the defendant in the issue
a child of the family;   AB  *b*
riod of one year ending with
be]

        19  ,    it

               *c*

       19  .

       of 19  .
               *d*

NTY COURT]

            Plaintiff
            Defendant

he parties and having taken

ted as a child of the family;  *e*
; for a period of one year
: the case may be]

iff's costs of this issue (or as

       19  .

</div>

# Thai-Europe Tapioca Service Ltd v Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies Imports and Shipping Wing)

COURT OF APPEAL, CIVIL DIVISION
LORD DENNING MR, LAWTON AND SCARMAN LJJ
9th, 10th, 11th, 15th JULY 1975

*Constitutional law – Foreign sovereign state – Immunity from suit – Exceptions – Commercial transaction – Action arising out of commercial transaction – Department of foreign government – None of the incidents of transaction taking place within jurisdiction – Contract for sale of goods by German charterers to Pakistani corporation – Charterparty providing that corporation liable to shipowners for demurrage – Vessel on which goods shipped delayed in Karachi because of state of war – Corporation dissolved and assets and liabilities transferred to Pakistani government – Action by shipowners against Pakistani government for demurrage – Whether government entitled to immunity from suit.*

On 30th September 1971 the plaintiffs, who carried on business in Hamburg, chartered a vessel to a Polish company. She was to proceed to Gdansk in Poland, load a cargo of fertiliser and sail to Karachi. The charterparty contained a demurrage clause of £400 per running day, which was to be settled directly between the owners and receivers without any responsibility on the part of the charterers. The charterparty also contained an arbitration clause under which any dispute was to be settled 'in London in accordance with the law and procedure prevailing there'. The cargo was consigned to the order of the National Bank of Pakistan Agriculture Development Corporation at Lahore. The bill of lading provided that all the terms, conditions, liabilities and exceptions in the charter were to be incorporated into it and it was endorsed to the corporation, which took up the documents and paid for the goods. The goods were shipped in October. The vessel arrived at Karachi on 2nd December and gave notice of readiness. On 6th or 7th December Karachi was bombed by hostile Indian aircraft and the vessel was seriously damaged. Discharge of the vessel's cargo was finally completed on 24th Febrary 1972, 83 days from the date of giving notice of readiness. The plaintiffs claimed that demurrage was payable for 67 days at £400 per day and on 31st August 1973 applied to the High Court in England under RSC Ord 11 for leave to issue a writ against the corporation and serve notice of the writ outside the jurisdiction. Leave was granted and the plaintiffs issued a writ on 4th September 1973 claiming £26,968·61. Before notice of the writ had been served however, the plaintiffs learnt that the corporation had been dissolved and its assets and liabilities assumed by a department of the government of Pakistan. Accordingly on 14th December 1973 the plaintiffs amended their writ making the government department defendants. The government department entered a conditional appearance and applied to set the writ aside claiming sovereign immunity. The plaintiffs contended that a sovereign state which engaged in trade was not entitled to claim immunity.

**Held** – The general principle was that, except by consent, the English courts would not issue their process so as to entertain a claim against a foreign sovereign for debt or damages. The plaintiffs' action did not fall into any of the recognised exceptions to the rule since the cause of action had arisen entirely out of a commercial transaction none of the incidents of which had taken place within the jurisdiction. Accordingly the writ would be set aside (see p 965 *b* and *e*, p 967 *a* to *d* and *g*, p 968 *c* and *d*, p 969 *c* and *d* and p 970 *b*, post).

                                                                 *11*

# Thai-Europe Tapioca Service Ltd v Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies Imports and Shipping Wing)

COURT OF APPEAL, CIVIL DIVISION

LORD DENNING MR, LAWTON AND SCARMAN LJJ

9th, 10th, 11th, 15th JULY 1975

*Constitutional law – Foreign sovereign state – Immunity from suit – Exceptions – Commercial transaction – Action arising out of commercial transaction – Department of foreign government – None of the incidents of transaction taking place within jurisdiction – Contract for sale of goods by German charterers to Pakistani corporation – Charterparty providing that corporation liable to shipowners for demurrage – Vessel on which goods shipped delayed in Karachi because of state of war – Corporation dissolved and assets and liabilities transferred to Pakistani government – Action by shipowners against Pakistani government for demurrage – Whether government entitled to immunity from suit.*

On 30th September 1971 the plaintiffs, who carried on business in Hamburg, chartered a vessel to a Polish company. She was to proceed to Gdansk in Poland, load a cargo of fertiliser and sail to Karachi. The charterparty contained a demurrage clause of £400 per running day, which was to be settled directly between the owners and receivers without any responsibility on the part of the charterers. The charterparty also contained an arbitration clause under which any dispute was to be settled 'in London in accordance with the law and procedure prevailing there'. The cargo was consigned to the order of the National Bank of Pakistan Agriculture Development Corporation at Lahore. The bill of lading provided that all the terms, conditions, liabilities and exceptions in the charter were to be incorporated into it and it was endorsed to the corporation, which took up the documents and paid for the goods. The goods were shipped in October. The vessel arrived at Karachi on 2nd December and gave notice of readiness. On 6th or 7th December Karachi was bombed by hostile Indian aircraft and the vessel was seriously damaged. Discharge of the vessel's cargo was finally completed on 24th Febrary 1972, 83 days from the date of giving notice of readiness. The plaintiffs claimed that demurrage was payable for 67 days at £400 per day and on 31st August 1973 applied to the High Court in England under RSC Ord 11 for leave to issue a writ against the corporation and serve notice of the writ outside the jurisdiction. Leave was granted and the plaintiffs issued a writ on 4th September 1973 claiming £26,968·61. Before notice of the writ had been served however, the plaintiffs learnt that the corporation had been dissolved and its assets and liabilities assumed by a department of the government of Pakistan. Accordingly on 14th December 1973 the plaintiffs amended their writ making the government defendants. The government department entered a conditional appearance and applied to set the writ aside claiming sovereign immunity. The plaintiffs contended that a sovereign state which engaged in trade was not entitled to claim immunity.

**Held** – The general principle was that, except by consent, the English courts would not issue their process so as to entertain a claim against a foreign sovereign for debt or damages. The plaintiffs' action did not fall into any of the recognised exceptions to the rule since the cause of action had arisen entirely out of a commercial transaction none of the incidents of which had taken place within the jurisdiction. Accordingly the writ would be set aside (see p 965 *b* and *e*, p 967 *a* to *d* and *g*, p 968 *c* and *d*, p 969 *c* and *d* and p 970 *b*, post).

11

*The Parlement Belge* [1874-80] All ER Rep 104, *Compania Mercantil Argentina v United States Shipping Board* [1924] All ER Rep 186, *Compania Naviera Vascongada v SS Cristina* [1938] 1 All ER 719 and dictum of Lord Denning in *Rahimtoola v HEH the Nizam of Hyderabad* [1957] 3 All ER at 463, 464 applied.

*The Porto Alexandre* [1918-19] All ER Rep 615 doubted.

**Notes**

For immunity of a foreign sovereign from process, see 8 Halsbury's Laws (4th Edn) para 410, and for cases on the subject, see 1 Digest (Repl) 54-61, 406-450.

**Cases referred to in judgments**

*Annefield, The owners of the ship Annefield v Owners of the cargo lately laden on board the ship Annefield* [1971] 1 All ER 394, [1971] P 168, [1971] 2 WLR 320, [1971] 1 Lloyd's Rep 1, CA.

*Charkieh, The* (1873) LR 4 A & E 59, 42 LJ Adm 17, 28 LT 513, 1 Asp MLC 581, 1 Digest (Repl) 57, 418.

*Compania Mercantil Argentina v United States Shipping Board* (1924) 93 LJKB 816, [1924] All ER Rep 186, 131 LT 388, CA, 1 Digest (Repl) 57, 419.

*Compania Naviera Vascongada v SS Cristina* [1938] 1 All ER 719, [1938] AC 485, 107 LJP 1, 159 LT 394, 19 Asp MLC 159, HL, 1 Digest (Repl) 129, 154.

*Isbrandtsen Tankers Inc v President of India* (1971) 446 F 2d 1198.

*Mellenger v New Brunswick Development Corpn* [1971] 2 All ER 593, [1971] 1 WLR 604, CA, 8(2) Digest (Reissue) 665, 38.

*Morgan v Larivière* (1875) LR 7 HL 423, 44 LJ Ch 457, 32 LT 41, HL; *affg* sub nom *Larivière v Morgan* (1872) 7 Ch App 550, 1 Digest (Repl) 56, 414.

*Njegos, The* [1936] P 90, [1935] All ER Rep 863, 105 LJP 49, 155 LT 109, 18 Asp MLC 609, 41 Com Cas 149, 2 Digest (Repl) 443, 156.

*Parlement Belge, The* (1880) 5 PD 197, [1874-80] All ER Rep 104, 42 LT 273, 4 Asp MLC 234, CA, 1 Digest (Repl) 121, 70.

*Philippine Admiral, The* [1974] 2 Lloyd's Rep 568.

*Porto Alexandre, The* [1920] P 30, [1918-19] All ER Rep 615, 89 LJP 97, 122 LT 661, 15 Asp MLC 1, 1 Ll L Rep 191, CA, 1 Digest (Repl) 129, 152.

*President of India v Metcalfe Shipping Co Ltd* [1969] 3 All ER 1549, [1970] 1 QB 289, [1969] 3 WLR 1120, [1969] 2 Lloyd's Rep 476, CA, Digest (Cont Vol C) 25, 156c.

*Rahimtoola v HEH the Nizam of Hyderabad* [1957] 3 All ER 441, [1958] AC 379, [1957] 3 WLR 884, HL; *rvsg* sub nom *Nizam of Hyderabad v Jung* [1957] 1 All ER 257, CA, 1 Digest (Repl) 59, 434.

*Swiss Israel Trade Bank v Government of Salta and Banco Provincial de Salta* [1972] 1 Lloyd's Rep 497.

*Union of India v E B Aaby's Rederi A/S* [1974] 2 All ER 874, [1974] 3 WLR 269, HL.

*Victory Transport Inc, owner of the SS Hudson v Comisaria General de Abastecimientos y Transportes, voyage charterer of the SS Hudson* (1964) 336 F 2d 354.

**Cases also cited**

*Baccus SRL v Servicio Nacional del Trigo* [1956] 3 All ER 715, [1957] 1 QB 438, CA.

*Brunswick (Duke) v King of Hanover* (1844) 6 Beav 1.

*Buck v Attorney-General* [1965] 1 All ER 882, [1965] Ch 745, CA.

*Duff Development Co Ltd v Government of Kelantan* [1923] 1 Ch 385, CA.

*Johore (Sultan) v Abubakar Tunku Aris Bendahara* [1952] 1 All ER 1261, [1952] AC 318, PC.

*Kahan v Pakistan Federation* [1951] 2 KB 1003, CA.

*Krajina v The Tass Agency* [1949] 2 All ER 274, 93 Sol Jo 539, CA.

*Mighell v Sultan of Johore* [1894] 1 QB 149, [1891-4] All ER Rep 1010, CA.

*United States of America and Republic of France v Dollfus Mieg et Cie SA and the Bank of England* [1952] 1 All ER 572, [1952] AC 582, HL.

ts    [1975] 3 All ER

CA    Thai-Europe v Govt of Pakistan (Lord Denning MR)    963

*ania Mercantil Argentina v United*
*Naviera Vascongada v SS Cristina*   a
*Rahimtoola v HEH the Nizam of*

d.

ee 8 Halsbury's Laws (4th Edn)   b
epl) 54-61, 406-450.

*the cargo lately laden on board the*
71] 2 WLR 320, [1971] 1 Lloyd's   c

LT 513, 1 Asp MLC 581, 1 Digest

*aard* (1924) 93 LJKB 816, [1924] All

All ER 719, [1938] AC 485, 107   d
epl) 129, 154.
2d 1198.
 All ER 593, [1971] 1 WLR 604,

LT 41, HL; *affg* sub nom *Larivière*
14.
49, 155 LT 109, 18 Asp MLC 609,   e

Rep 104, 42 LT 273, 4 Asp MLC

615, 89 LJP 97, 122 LT 661, 15   f
152.
 All ER 1549, [1970] 1 QB 289,
gest (Cont Vol C) 25, 156c.
ll ER 441, [1958] AC 379, [1957]
aad v Jung* [1957] 1 All ER 257,

*rovincial de Salta* [1972] 1 Lloyd's   g
, [1974] 3 WLR 269, HL.
aria General de Abastecimientos y
6 F 2d 354.

15, [1957] 1 QB 438, CA.   h

745, CA.
] 1 Ch 385, CA.
] 1 All ER 1261, [1952] AC 318,   j

539, CA.
R Rep 1010, CA.
*s Mieg et Cie SA and the Bank of*

---

*Wadsworth v Queen of Spain, De Haber v Queen of Portugal* (1851) 17 QB 171.
*a*   *Ysmael (Juan) & Co v Government of Indonesia* [1954] 3 All ER 236, [1955] AC 72, PC.

### Interlocutory appeal

This was an appeal by the plaintiffs, Thai-Europe Tapioca Service Ltd, against the order of Cusack J dated 20th November 1974 dismissing an appeal by the plaintiffs against an order of Master Ritchie dated 23rd July 1974 whereby he set aside the writ,
*b*   issued by the plaintiffs on 4th September 1973 and subsequently amended, against the defendants, the Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies (Imports and Shipping Wing), claiming (i) demurrage in the sum of £26,996·61, alternatively £26,558·89, or damages, and (ii) interest. The facts are set out in the judgment of Lord Denning MR.

*c*   *Bernard Rix* for the plaintiffs.
*David Kemp QC* and *Anthony Hallgarten* for the defendants.

*Cur adv vult*

*d*   15th July. The following judgments were read.

**LORD DENNING MR.** The plaintiffs are the disponent owners of the vessel Harmattan. They carry on business in Hamburg in West Germany. On 30th September 1971 they let her on a voyage charter to a Polish company CIECH. She was to proceed to Gdansk in Poland and there load a cargo of fertiliser in bags, carry it to Karachi in Pakistan and deliver it there. The charterparty was on the Gencon form
*e*   and contained this provision about demurrage:

'Should the vessel be detained beyond the time allowed at loading and discharging ports demurrage to be paid by the charterers respectively receivers at the rate of £400 per running day ... Demurrage/despatch at the port of discharge to be settled directly between the Owners/Receivers without any responsibility
*f*   of the charterers.'

The charterparty also contained this arbitration clause: 'Any dispute arising under this Charter Party shall be settled by arbitration in London in accordance with the law and procedure prevailing there.'

On 16th October 1971 the Polish charterers shipped the fertiliser on to the Harmattan
*g*   at Gdansk. It was over 12,000 metric tons. The master issued a bill of lading on the Gencon bill form. It named charterers CIECH as the shippers. The port of discharge was Karachi. The goods were consigned to the order of the National Bank of Pakistan with direction to notify the West Pakistan Agricultural Development Corporation at Lahore.

The bill of lading provided: 'All the terms conditions liberties and exceptions of
*h*   the Charter are herewith incorporated.' But that, of course, did not incorporate the arbitration clause into the bill of lading: see *The Annefield*[1]. The bill of lading was endorsed to the West Pakistani Agricultural Development Corporation. They took up the documents and paid for the goods. The property in the goods thereupon passed to the West Pakistan Agricultural Development Corporation. The corporation took the goods on the terms of the bill of lading which incorporated the terms of the
*j*   charterparty and the payment of demurrage, but not the arbitration clause. No doubt it was governed by English law: see *The Njegos*[2]. But that was its only connection with England.

On 2nd December 1971 the Harmattan arrived at Karachi and gave notice of

1   [1971] 1 All ER 394, [1971] P 138
2   [1936] P 90, [1935] All ER Rep 863

readiness. She had to wait for a berth, but the charter provided that 'time lost in
waiting for berth to count as discharging time'. Five days later, on 6th or 7th December  *a*
1971, whilst she was still waiting, the port of Karachi was bombed by hostile aircraft
from India. The Harmattan was hit and seriously damaged. She was subsequently
taken to a discharging berth where the cargo was discharged and the West Pakistan
Agricultural Development Corporation took delivery of it. Discharge was finally
completed on 24th February 1972, a total of 83 days from the time she gave notice of
readiness. So the cargo was taken off but the vessel itself became a constructive total  *b*
loss. After allowing for lay-time of 16 days, the plaintiffs said that demurrage was
payable for 67 days at £400 a day. They claimed demurrage from the West Pakistan
Agricultural Development Corporation on the ground that they were the receivers
of the cargo and liable under the bill of lading, because it incorporated the terms of
the charterparty that 'demurrage' was to be settled directly between the owners
and receivers. The claim was refused.                                              *c*

On 31st August 1973 the plaintiffs applied to the High Court in England for leave
to issue a writ against the West Pakistan Development Corporation and to serve
it out of the jurisdiction on the ground that the proper law of the contract was English
law. The master gave leave. On 4th September 1973 the plaintiffs issued the writ
claiming damages in the sum of £26,968.61. Before the writ was served, however,
the solicitors for the government of Pakistan told the shipowners that the West  *d*
Pakistan Agricultural Development Corporation no longer existed. It had been
dissolved and had been succeeded by the Government of Pakistan, Ministry of Food
and Agriculture Directorate of Agricultural Supplies (Export and Shipping Wing).
So on 14th December 1973 the plaintiffs amended the writ and made the Govern-
ment of Pakistan Ministry, Directorate etc defendants instead of the West Pakistan
Agricultural Development Corporation. Notice of the writ was given to the directorate  *e*
at Lahore. The defendants, by their London solicitors, entered a conditional appearance
and applied to set aside the writ. They claimed sovereign immunity. On 23rd
July 1974 the master here set aside the writ. On 20th November 1974 the judge
affirmed the decision. The plaintiffs now appeal to this court.

The solicitor to the Government of Pakistan at Islamabad has made an affidavit
saying:                                                                            *f*

'The Directorate of Agricultural Supplies has no corporate or other status save
as a department attached to the Food and Agricultural Division of the Federal
Government of Pakistan. The Directorate has no legal entity separate from the
government of Pakistan and it cannot sue or be sued by, the government of
Pakistan. The government of Pakistan as a foreign sovereign state does not consent
to submit to the jurisdiction of this Honourable Court and be impleaded in the  *g*
present proceedings. The plaintiffs can, however, if they so desire and subject
to the law of Pakistan, sue the government of Pakistan in the courts of Pakistan.'

There has also been produced the Pakistan ordinance under which the West Pakistan
Development Corporation carried on its commercial operations. It provided for its
dissolution by art 82. It gave the defendants power to declare that the corporation  *h*
should be dissolved from a named date and that from that date—

'(a) all properties, funds and dues which immediately before the said date
were vested in or were realisable by the Corporation shall vest in and be realisable
by the Government (b) all liabilites which immediately before the said date
were enforceable against the Corporation, shall be assumed by and be enforceable
by the Government.'                                                              *j*

Under the powers of the ordinance the West Pakistan Agricultural Development
Corporation was dissolved in 1972 and its liabilities assumed by the government of
Pakistan.

Now the plaintiffs, as I have said, seek to sue in England the government of
Pakistan. They have no contract at all with that government. Their only right is by

[1975] 3 All ER

ter provided that 'time lost in
ys later, on 6th or 7th December
was bombed by hostile aircraft
maged. She was subsequently
:harged and the West Pakistan
y of it. Discharge was finally
om the time she gave notice of
self became a constructive total
intiffs said that demurrage was
urrage from the West Pakistan
d that they were the receivers
se it incorporated the terms of
l directly between the owners

ligh Court in England for leave
nent Corporation and to serve
· law of the contract was English
73 the plaintiffs issued the writ
the writ was served, however,
) longer existed. It had been
nt of Pakistan, Ministry of Food
s (Export and Shipping Wing).
he writ and made the Govern-
its instead of the West Pakistan
writ was given to the directorate
entered a conditional appearance
sovereign immunity. On 23rd
oth November 1974 the judge
his court.

slamabad has made an affidavit

io corporate or other status save
icultural Division of the Federal
10 legal entity separate from the
e sued by, the government of
n sovereign state does not consent
e Court and be impleaded in
ter, if they so desire and subject
akistan in the courts of Pakistan.'

e under which the West Pakistan
al operations. It provided for its
r to declare that the corporation
n that date—

nmediately before the said date
ation shall vest in and be realisable
nmediately before the said date
be assumed by and be enforceable

tistan Agricultural Development
s assumed by the government of

in England the government of
vernment. Their only right is by

the law of Pakistan under the ordinance. The government of Pakistan claim
sovereign immunity. They are ready to let the claim be considered in the courts of
Pakistan, but not in England. The question is whether they are entitled to immunity.

Counsel for the plaintiffs has taken us through a fascinating study of sovereign
immunity and its development. But I do not think we need follow him today through
all its ramifications. The general principle is undoubtedly that, except by consent,
the courts of this country will not issue their process so as to entertain a claim against
a foreign sovereign for debt or damages. The reason is that, if the courts here once
entertained the claim, and in consequence gave judgment against the foreign
sovereign, they could be called on to enforce it by execution against its property here.
Such execution might imperil our relations with that country and lead to repercussions
impossible to foresee. We have quite recently had examples in our courts where this
general principle has been applied. One was the decision of this court in *Mellenger
v New Brunswick Development Corpn*[1]. Another was the decision of MacKenna J in
*Swiss Israel Trade Bank v Government of Salta and Banco Provincial de Salta*[2]. The general
principle has also been recognised by many European countries in the European
Convention of 1972 on state immunity. Article 15 says that a contracting state shall
be entitled to immunity from the jurisdiction of the court of another contracting
state if the proceedings do not fall within certain exceptions; and that the court shall
decline to entertain such proceedings even if the state does not appear. It has also
been recognised by the United States of America in *Isbrandtsen Tankers v President
of India*[3]. The Court of Appeals of the Second Circuit in New York upheld the claim to
sovereign immunity. It gave this reason[4]: 'a judicial decision against the govern-
ment of a foreign nation could conceivably cause severe international repercussions,
the full consequences of which the courts are in no position to predict.'

So it seems to me that the general principle must be applied unless it comes within
any of the recognised exceptions. But the exceptions are several and they are important.
Some are already recognised; others are coming to be recognised. I will state
some of them.

First, a foreigner has no immunity in respect of land situate in England. If he
takes a lease of land and fails to pay the rent, the lessor can institute proceedings for
forfeiture. If he borrows money on mortgage of land here and fails to pay the interest,
the mortgagee can pursue his usual remedies: see *The Charkieh*[5] by Sir Robert
Phillimore.

Second, a foreign sovereign has no immunity in respect of trust funds here or money
lodged for the payment of creditors. The English beneficiary or creditor can ask the
English courts to adjudicate on the claim, even though the foreign government
declines to appear: see *Larivière v Morgan*[6].

Third, a foreign sovereign has no immunity in respect of debts incurred here for
services rendered to its property here. If it owns a trading vessel which goes aground
on our shores, the tugs which pull it off are entitled to be paid, and, if not paid, the
vessel can be arrested. *The Porto Alexandre*[7] (which decided otherwise) would be decided
differently today, having regard to the Brussels Convention of 1926 and to the criti-
cism to which that case has been subjected in the House of Lords in *Compania Naviera
Vascongada v SS Cristina*[8]. Likewise if a foreign government owns a motor vehicle
here and sends it to a garage here to be repaired, the repairer is entitled to be paid,
and if not paid, he can claim a lien on the car. This exception is further supported

1   [1971] 2 All ER 593, [1971] 1 WLR 604
2   [1972] 1 Lloyd's Rep 497
3   (1971) 446 F 2d 1198
4   446 F 2d at 1200
5   (1873) LR 4 A & E 59 at 97
6   (1872) 7 Ch App 550
7   [1920] P 30, [1918-19] All ER Rep 615
8   [1938] 1 All ER 719, [1938] AC 485

by the decision of the Hong Kong Court of Appeal in *The Philippine Admiral*[1]. It is
now under appeal to the Privy Council.

Fourth, a foreign sovereign has no immunity when it enters into a commercial
transaction with a trader here and a dispute arises which is properly within the
territorial jurisdiction of our courts. If a foreign government incorporates a legal
entity which buys commodities on the London market, or if it has a state department
which charters ships on the Baltic Exchange, it thereby enters into the market
places of the world, and international comity requires that it should abide by the rules
of the market. Usually the contract contains an arbitration clause, in which case,
of course, there is a voluntary submission to the jurisdiction of the arbitrators and
the supervision of them by the courts: see, for instance, *President of India v Metcalfe
Shipping Co Ltd*[2].

But even if there is no arbitration clause—or for any reason it is inapplicable—a
foreign government which enters into an ordinary commercial transaction with a
trader here must honour its obligations like other traders, and if it fails to do so, it
would be subject to the same laws and amenable to the same tribunals as they: see,
for instance, *Union of India v E B Aaby's Rederi A/S*[3] where the Indian government
declined to pay general average contribution in breach of the undertaking given by
the High Commissioner in London. This fourth exception has been recognised in the
courts of the United States in respect of transactions which are properly within the
territorial jurisdiction of those courts. In a case in 1964, *Victory Transport Inc, owner
of the SS Hudson v Comisaria General de Abastecimientos y Transportes*[4], an American
ship had been chartered to carry a cargo of wheat from Alabama to a Spanish port.
It was chartered by the Spanish Ministry of Commerce. The charter contained a
provision for arbitration in New York. The vessel sustained damage in the Spanish
port. The United States owner of the ship sued in the United States courts to compel
arbitration. Sovereign immunity was claimed. The claim was rejected by the United
States Court of Appeals of the Second Circuit.

I may perhaps say that I had occasion to study sovereign immunity in *Rahimtoola
v HEH the Nizam of Hyderabad*[5]. I took more pains about it than any other case in
which I have taken part. On coming back to it now, I would adhere to all I said then
and in particular[6]:

'... sovereign immunity should not depend on whether a foreign government
is impleaded, directly or indirectly, but rather on the nature of the dispute ...
Is it properly cognisable by our courts or not? If the dispute brings into question,
for instance, the legislative or international transactions of a foreign government,
or the policy of its executive, the court should grant immunity if asked to do so
... but if the dispute concerns, for instance, the commercial transactions of a
foreign government (whether carried out by its own departments or agencies
or by setting up separate legal entities), and it arises properly within the terri-
torial jurisdiction of our courts, there is no ground for granting immunity.'

This test would apply to all the exceptions which I have stated. I would stress particu-
larly the necessity that the dispute should 'arise properly within the territorial juris-
diction of our courts'. By this I do not mean merely that it can be brought within the
rule for service out of the jurisdiction under RSC Ord 11, r 1. I mean that the dispute
should be concerned with property actually situate within the jurisdiction of our
courts or with commercial transactions having a most close connection with England

1  [1974] 2 Lloyd's Rep 568
2  [1969] 3 All ER 1549, [1970] 1 QB 289
3  [1974] 2 All ER 874, [1974] 3 WLR 269
4  (1964) 336 F 2d 354
5  [1957] 3 All ER 441, [1958] AC 379
6  [1957] 3 All ER at 463, 464, [1958] AC at 422

he Philippine Admiral¹. It is

it enters into a commercial
hich is properly within the
rnment incorporates a legal
or if it has a state department
eby enters into the market
at it should abide by the rules
ration clause, in which case,
liction of the arbitrators and
e, President of India v Metcalfe

r reason it is inapplicable—a
mmercial transaction with a
ers, and if it fails to do so, it
e same tribunals as they: see,
here the Indian government
of the undertaking given by
on has been recognised in the
hich are properly within the
. Victory Transport Inc, owner
y Transportes⁴, an American
a Alabama to a Spanish port.
ce. The charter contained a
ained damage in the Spanish
nited States courts to compel
m was rejected by the United

eign immunity in Rahimtoola
out it than any other case in
ould adhere to all I said then

hether a foreign government
he nature of the dispute . . .
dispute brings into question,
ions of a foreign government,
it immunity if asked to do so
commercial transactions of a
wn departments or agencies
ies properly within the terri-
or granting immunity.'

stated. I would stress particu-
ly within the territorial juris-
it it can be brought within the
, r 1. I mean that the dispute
ithin the jurisdiction of our
lose connection with England

---

such that, by the presence of parties or the nature of the dispute, it is more properly cognisable here than elsewhere.

But none of the exceptions applies in the present case. None of the transactions here occurred within the territorial jurisdiction of these courts. They are as far off as the moon. Here a state corporation in Pakistan agreed to buy fertilisers from a firm in Poland. They may even have bought them from a government department in Poland. The goods were shipped by a Polish concern on a vessel owned by a German company and carried to Karachi. When there, the vessel was bombed by hostile aircraft and damaged. The shipowners claimed demurrage. The state department in Pakistan has since been dissolved, but its assets and liabilities have been taken over by the Pakistan government. I can see no possible justification for these courts asking the government of Pakistan to come here to contest the claim. That sovereign has offered to let the case be decided by the courts of Pakistan. Seeing that the delay occurred at Karachi, that is a very proper forum.

In my opinion this case comes within the very first principle which I stated, that a foreign sovereign cannot be personally impleaded in our courts save within the exemptions recognised by law; and this case is within none of the exemptions.

I would therefore uphold the sovereign immunity and dismiss the appeal.

**LAWTON LJ.** I am grateful to counsel on both sides for the interesting, subtle, learned and illuminating submissions which they have made to this court. Unlike Lord Denning MR and Scarman LJ, I am unfamiliar with this branch of the law. It was to me an unknown sea; but, if I may say so, early on Friday last I sighted three clear sailing marks. It is true that one of them has been under consideration by the harbour commissioners, if I may so describe the Lords of Appeal, in *Compania Naviera Vascongada v SS Cristina*¹, who had doubts whether it was properly sited. But the other two have long been where they are. Those three sailing marks are *The Parlement Belge*², *The Porto Alexandre*³ (the one which has been criticised), *Compania Mercantil Argentina v United States Shipping Board*⁴. All three cases are decisions of this court. The first two, *The Parlement Belge*² and *The Porto Alexandre*³ were claims in rem. The third, which I will refer to as the *United States Shipping Board* case⁴, was not. It was an action against the US Shipping Board claiming repayment of freight alleged to have been overpaid by the plaintiff. It was an action in personam, as in this case. The court considered the arguments, looked at the authorities and came to this conclusion: that a sovereign independent state does not by entering into a trading contract with a foreigner lose its immunity from process in English courts as regards matters arising out of the contract and that a sovereign independent state by making a submission to arbitration in this country does not lose its immunity from being impleaded in the courts of this country. Nothing could be clearer. The point which was argued and decided in that case is substantially the same point as that which has been argued in this case. I can see no substantial difference. It follows, so it seems to me, that the ordinary rule of stare decisis must follow.

It was submitted on behalf of the appellants that since 1924 the views of jurists all over the world about the immunity of sovereign states which engage in trade have changed; and that in many parts of the world courts have decided that states engaging in trade should lose their sovereign immunity when so doing. We have to concern ourselves with the law of this country. It may be that at some future date the House of Lords will consider the three cases to which I have referred; but they have not done so yet.

---

1   [1938] 1 All ER 719, [1938] AC 485
2   (1880) 5 PD 197, [1874-80] All ER Rep 104
3   [1920] P 30, [1918-19] All ER Rep 615
4   (1924) 93 LJKB 816, [1924] All ER Rep 186

Case 1:22-cv-00058-CRC   Document 28-2   Filed 09/23/22   Page 241 of 546

In my judgment it is most important that rules of this kind should not be altered
save by the appropriate judicial or legislative body. Every working day all over the
world those engaged in international trade make agreements. Very often they are
made by word of mouth or by telex messages. What has been so agreed is often
incorporated into pro forma documents which are used all over the world. Those
who make agreements of these kinds very often seek to embody in these the law of
this country. They would be unlikely to do so if the law became like some con-
tinental street names, changing every decade or so. I can see no reason at all for de-
parting from rules which have been recognised by the commercial world now for
nearly 100 years. Those who provide in these contracts that English law shall apply
know what they are doing and they know what to expect from our courts. I would
dismiss the appeal.

**SCARMAN LJ.** I agree. In my opinion we are precluded by authority from accepting
the submission made to this court on behalf of the plaintiffs. I think there is now a
great weight of United Kingdom authority to support the principles of the law as
recognised and declared in *Compania Naviera Vascongada v SS Cristina*[1]. In that
case Lord Atkin said that the law is to be found in two propositions of international
law engrafted into our domestic law. I quote from his opinion[2]:

> 'The first is that the courts of a country will not implead a foreign sovereign. That
> is, they will not by their process make him against his will a party to legal pro-
> ceedings, whether the proceedings involve process against his person or seek to
> recover from him specific property or damages. The second is that they will
> not by their process, whether the sovereign is a party to the proceedings or not,
> seize or detain property which is his, or of which he is in possession or control.'

Lord Atkin then did refer to the fact that there were some possible limitations on
the second principle. But he added that in his opinion it was well settled that it,
i e sovereign immunity, applied both to property used for the commercial purposes
of the sovereign and to personal private property. Lord Thankerton introduced a
note of doubt as to the universality of the assertion made by Lord Atkin; and this
note of doubt which he introduced has been developed by subsequent obiter dicta
in our courts. But it is a note of doubt which in my judgment does not assist the
plaintiffs. His doubt is best and most succinctly expressed in the passage[3] where
he said he had some doubt whether the proposition that a foreign sovereign state
cannot be impleaded is an absolute one. He then quoted a well-known passage
from *The Parlement Belge*[4], and in so doing indicated that in his view this passage does
state the principle of the matter. I pick up the quotation where Lord Thankerton
is quoting[3] from the words of Brett LJ in *The Parlement Belge*[5]:

> 'The exemption of the person of every sovereign from adverse suit is admitted
> to be a part of the law of nations. An equal exemption from interference by any
> process of any court of some property of every sovereign is admitted to be a part
> of the law of nations.'

Then Lord Thankerton continued[3]:

> 'This passage suggests that the absolute exemption is of the person of the
> sovereign from adverse suit, but that, in the case where property of a sovereign

1   [1938] 1 All ER 719, [1938] AC 485
2   [1938] 1 All ER at 720, 721, [1938] AC at 490
3   [1938] 1 All ER at 723, [1938] AC at 494
4   (1880) 5 PD 197, [1874-80] All ER Rep 104
5   5 PD at 205, [1874-80] All ER Rep at 109

Case 1:22-cv-00058-CRC   Document 28-2   Filed 09/23/22   Page 242 of 546

is not admitted by the agreement of nations to be exempt, actions *in rem* against such property which is within the territorial jurisdiction is available, even if the sovereign be invited to contest the suit, if he so choose.'

Judicial and academic opinion has moved to some extent along the path there indicated by Lord Thankerton; and today there is a developing view that some property of a sovereign may not be entitled to the benefit of the doctrine of sovereign immunity when that property is within the territorial jurisdiction. It would be an interesting discussion in some case other than the present one to explore in what circumstances such property may be made amenable to the jurisdiction of the court. The most familiar of the suggested exceptions is where property is used in the course of commercial operations; it is suggested, for example, that the *Porto Alexandre*[1] may have to be reconsidered. But we are not in this case concerned with a plea of immunity from suit of property belonging to, or claimed by, a foreign sovereign within the territory of our jurisdiction. We are concerned simply with an action in personam the cause of action in which, as pleaded, arises entirely out of a transaction of commerce, none of the incidents of which took place in this jurisdiction. Indeed, I would think the facts of this case are a salutary reminder of the unwisdom of developing judicially an exception to, or a restrictive view of, sovereign immunity unsupported so far by decided authority in this court or in the House of Lords and not yet dealt with by the legislature. Lord Denning MR has indicated how strange it would be on the facts of this case if sovereign immunity were not upheld. I confess that, after listening to the eloquent and erudite argument of counsel for the plaintiffs, it was with a touch of sadness that I was drawn back to the realities of the case by the opening words of counsel for the defendants. He said it would be an unwarrantable extension of the jurisdiction of Her Majesty to admit this action in these courts. He submitted that, so far from the issue being whether or not there is immunity for the foreign sovereign in regard to a cause of action arising within the jurisdiction, the plaintiffs were seeking by a procedural twist to give our courts an extra-territorial jurisdiction. I think this does accord with the reality of the situation, and, like Lord Denning MR, I do not find it difficult to understand the embarrassment felt by the government of Pakistan at having to litigate in these courts a cause of action arising out of a situation created by the state of war that was affecting the port of Karachi in December 1971.

Lord Macmillan in his speech in *The Cristina*[2] put the principle of the matter as follows:

'It is an essential attribute of the sovereignty of this realm, as it is of all sovereign independent states, that it should possess jurisdiction over all persons and things within its territorial limits, and in all causes, civil and criminal, arising within these limits.'

He then pointed out that the immunity of a sovereign from suit is a reservation or an exception to that principle. The principle has little or no application to the facts of this case; for the cause of action arises overseas, and there is no 'res' within the jurisdiction.

Finally, counsel for the plaintiffs in the course of an interesting argument, did submit that we should take account of the developing consensus of juristic and judicial opinion all over the world in favour of what may briefly be called the commercial exception to the absolute character of the doctrine of sovereign immunity. I do not think myself it is open to this court to go further than the journey already taken in the House of Lords and the Court of Appeal in the cases to which we have been referred. I think it is important to realise that a rule of international law, once incorporated into our law by decisions of a competent court, is not an inference of fact but a rule of law. It

1  [1920] P 30, [1918-19] All ER Rep 615
2  [1938] 1 All ER at 725, [1938] AC at 496, 497

therefore becomes part of our municipal law and the doctrine of stare decisis applies
as much to that as to a rule of law with a strictly municipal provenance. This has
been stated again and again in the cases to which counsel for the defendants drew
our attention and it is to be found, I think, by necessary implication in the speech
of Lord Macmillan in *The Cristina*[1]. I think therefore that it is not open to this court
to apply a new rule or view developing in the international field if it be inconsistent
with a rule already incorporated into our law by a decision of the Court of Appeal
or the House of Lords. This is a case in which I do not regret, for the reasons given
by Lord Denning MR, that we should give effect to the principle of immunity recog-
nised by the House of Lords in *The Cristina*[2]. The general rule that a foreign sovereign
is immune from suit governs it, and I, therefore, agree that the appeal must be
dismissed.

*Appeal dismissed. Leave to appeal to the House of Lords refused.*

Solicitors: *Holman, Fenwick & Willan* (for the plaintiffs); *Loxley, Sanderson & Morgan*
(for the defendants).

Gavin Gore-Andrews Esq Barrister.

# W v W (financial provision: lump sum)

FAMILY DIVISION
SIR GEORGE BAKER P
10th JULY 1975

*Divorce – Financial provision – Matters to be considered by court when making order –
Property and other financial resources party has or is likely to have in foreseeable future –
Interest of wife in house shared with another man – Wife cohabiting with man as his mistress –
House in joint names of wife and man – Wife having made no contribution to cost of purchase –
Wife and man living in house as family with their illegitimate child and wife's children –
Whether wife's interest in house to be regarded as property or other financial resources which
she had or was likely to have in the foreseeable future – Matrimonial Causes Act 1973, s 25(1)(a).*

The parties were married in 1964. There were two children of the marriage. Their
married life was a somewhat turbulent one, marked by alleged acts of violence on
the part of the husband, the last of which led to him being charged with assault
occasioning actual bodily harm in consequence of which he was bound over to keep
the peace. The parties were involved in legal proceedings on more than one occasion
but in each case they were reconciled. In 1970 the husband bought a house in his
sole name which became the matrimonial home. In April 1972 the wife left the
husband, taking the children, and in May she was granted a decree nisi of divorce,
based on the husband's conduct. That decree was made absolute in August. Shortly
afterwards the wife began to have intercourse with S. In March 1973 she became
pregnant by S and in consequence went to live with him. In November S bought
a new house on a 100 per cent mortgage. S was anxious to marry the wife but she
was unwilling. The wife made no contribution to the cost of purchasing the house
but it was transferred into the joint names of S and the wife. The wife and S lived
there together as a family with the children, including S's illegitimate child when
it was born. In ancillary proceedings following her divorce from the husband the
wife applied, inter alia, for a lump sum order. At the date of the hearing the equity

1   [1938] 1 All ER at 725, [1938] AC at 497
2   [1938] 1 All ER 719, [1938] AC 485

# EXHIBIT 9


**Title:**

ICC Arbitration Rules 1998



**Table of Contents:**

Rules of Arbitration of the International Chamber of Commerce
    Foreword
        The ICC Rules of Optional Conciliation
    Introductory Provisions
        Article 1 - International Court of Arbitration
        Article 2 - Definitions
        Article 3 - Written Notifications or Communications; Time Limits
    Commencing The Arbitration
        Article 4 - Request for Arbitration
        Article 5 - Answer to the Request; Counterclaims
        Article 6 - Effect of the Arbitration Agreement
    The Arbitral Tribunal
        Article 7 - General Provisions
        Article 8 - Number of Arbitrators
        Article 9 - Appointment and Confirmation of the Arbitrators
        Article 10 - Multiple Parties
        Article 11 - Challenge of Arbitrators
        Article 12 - Replacement of Arbitrators
    The Arbitral Proceedings
        Article 14 - Place of the Arbitration
        Article 15 - Rules Governing the Proceedings
        Article 16 - Language of the Arbitration
        Article 17 - Applicable Rules of Law
        Article 18 - Terms of Reference; Procedural Timetable
        Article 19 - New Claims
        Article 20 - Establishing the Facts of the Case
        Article 21 - Hearings
        Article 22 - Closing of the Proceedings
        Article 23 - Conservatory and Interim Measures
    Awards
        Article 24 - Time Limit for the Award
        Article 25 - Making of the Award
        Article 26 - Award by Consent
        Article 27 - Scrutiny of the Award by the Court
        Article 28 - Notification, Deposit and Enforceability of the Award
        Article 29 - Correction and Interpretation of the Award
    Costs
        Article 30 - Advance to Cover the Costs of the Arbitration
        Article 31 - Decision as to the Costs of the Arbitration
    Miscellaneous
        Article 32 - Modified Time Limits
        Article 33 - Waiver
        Article 34 - Exclusion of Liability
        Article 35 - General Rule

**Content:**

# Rules of Arbitration of the International Chamber of Commerce

## Foreword



During the last quarter of the twentieth century, international commercial arbitration has gained worldwide acceptance as the normal means of resolving international commercial disputes. National laws on arbitration have been modernised on all continents. International treaties on arbitration have been signed or adhered to with impressive success. Arbitration has become part of the curriculum of large numbers of law schools. With the gradual removal of political and trade barriers and the rapid globalisation of the world economy, new challenges have been created for arbitration institutions in response to the growing demand of parties for certainty and predictability, greater rapidity and flexibility as well as neutrality and efficacy in the resolution of international disputes. There has been a substantial increase not only in the number of cases, their complexity, the amounts in dispute and the diversity of the parties, but also in the demands made on the process by the parties.

Since the International Court of Arbitration was established in 1923, ICC arbitration has been constantly nourished by the experience gathered by the ICC International Court of Arbitration in the course of administering some ten thousand international arbitration cases, now involving each year parties and arbitrators from over 100 countries and from a diversity of legal, economic, cultural and linguistic backgrounds.

The present ICC Rules of Arbitration, in effect as of January 1, 1998, constitute the first major revision of the Rules in more than 20 years, following an intensive, worldwide consultation process. The changes made are designed to reduce delays and ambiguities and to fill certain gaps, taking into account the evolution of arbitration practice. The basic features of the ICC arbitration system have not been altered, however, notably its universality and flexibility, as well as the central role played by the International Court of Arbitration in the administration of arbitral cases.

Every ICC arbitration is conducted by an arbitral tribunal with responsibility for examining the merits of the case and rendering a final award. Each year, ICC arbitrations are held in some 40 countries, in several languages and with arbitrators of some 60 different nationalities. The work of those arbitral tribunals is monitored by the ICC International Court of Arbitration, which meets at least three (and often four) times a month all year round. Presently composed of some 65 members from over 55 countries, the Court's function is to organise and supervise arbitrations held under the ICC Rules of Arbitration. The Court must remain constantly alert to changes in the law and the practice of arbitration in all parts of the world and must adapt its working methods to the evolving needs of parties and arbitrators. For the day-to-day management of cases in several languages, the ICC Court is supported by a Secretariat based at the headquarters of the International Chamber of Commerce, in Paris.

Although the ICC Rules of Arbitration have been especially designed for arbitrations in an international context, they may also be used for non-international cases.

## The ICC Rules of Optional Conciliation

The current ICC Rules of Conciliation entered into force on January 1, 1988. Conciliation is a process independent of arbitration. It remains entirely optional unless the parties have otherwise agreed. The ICC Rules of Arbitration do not require the parties to attempt conciliation prior to commencing an arbitration. So, too, the Rules permit conciliation to be attempted without requiring that the dispute be referred to arbitration thereafter if the conciliation effort is unsuccessful.

The ICC recommends that all parties wishing to make reference to ICC arbitration in their contracts use the following standard clause.

> "All disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."

Parties are reminded that it may be desirable for them to stipulate in the arbitration clause itself the law governing the contract, the number of arbitrators and the place and language of the arbitration. The parties' free choice of the law governing the contract and of the place and language of the arbitration is not limited by the ICC Rules of Arbitration.

Attention is called to the fact that the laws of certain countries require that parties to contracts expressly accept arbitration clauses, sometimes in a precise and particular manner.

# Introductory Provisions



# Article 1 - International Court of Arbitration

1. The International Court of Arbitration (the "Court") of the International Chamber of Commerce (the "ICC") is the arbitration body attached to the ICC. The statutes of the Court are set forth in Appendix I. Members of the Court are appointed by the Council of the ICC. The function of the Court is to provide for the settlement by arbitration of business disputes of an international character in accordance with the Rules of Arbitration of the International Chamber of Commerce (the "Rules"). If so empowered by an arbitration agreement, the Court shall also provide for the settlement by arbitration in accordance with these Rules of business disputes not of an international character.

2. The Court does not itself settle disputes. It has the function of ensuring the application of these Rules. It draws up its own Internal Rules (Appendix II).

3. The Chairman of the Court, or, in the Chairman's absence or otherwise at his request, one of its Vice-Chairmen shall have the power to take urgent decisions on behalf of the Court, provided that any such decision is reported to the Court at its next session.

4. As provided for in its Internal Rules, the Court may delegate to one or more committees composed of its members the power to take certain decisions, provided that any such decision is reported to the Court at its next session.

5. The Secretariat of the Court (the "Secretariat ") under the direction of its Secretary General (the "Secretary General") shall have its seat at the headquarters of the ICC.

# Article 2 - Definitions

In these Rules:

(i)      "Arbitral Tribunal" includes one or more arbitrators
(ii)     "Claimant" includes one or more claimants and "Respondent" includes one or more respondents.
(iii)    "Award" includes, inter alia, an interim, partial or final Award.

# Article 3 - Written Notifications or Communications; Time Limits

1. All pleadings and other written communications submitted by any party, as well as all documents annexed thereto, shall be supplied in a number of copies sufficient to provide one copy for each party, plus one for each arbitrator, and one for the Secretariat. A copy of any communication from the Arbitral Tribunal to the parties shall be sent to the Secretariat.

2. All notifications or communications from the Secretariat and the Arbitral Tribunal shall be made to the last address of the party or its representative for whom the same are intended, as notified either by the party in question or by the other party. Such notification or communication may be made by delivery against receipt, registered post, courier, facsimile transmission, telex, telegram or any other means of telecommunication that provides a record of the sending thereof.

3. A notification or communication shall be deemed to have been made on the day it was received by the party itself or by its representative, or would have been received if made in accordance with the preceding paragraph.

4. Periods of time specified in, or fixed under the present Rules, shall start to run on the day following the date a notification or communication is deemed to have been made in accordance with the preceding paragraph. When the day next following such date is an official holiday, or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall commence on the first following business day. Official holidays and non-business days are included in the calculation of the period of time. If the last day of the relevant period of time granted is an official holiday or a non-business day in the country where the notification or communication is deemed to have been made, the period of time shall expire at the end of the first following business day.

# Commencing The Arbitration

## Article 4 - Request for Arbitration

1. A party wishing to have recourse to arbitration under these Rules shall submit its Request for Arbitration (the



"Request") to the Secretariat, which shall notify the Claimant and Respondent of the receipt of the Request and the date of such receipt.

2. The date on which the Request is received by the Secretariat shall, for all purposes, be deemed to be the date of the commencement of the arbitral proceedings.

3. The Request shall, inter alia, contain the following information:

(a)     the name in full, description and address of each of the parties;
(b)     a description of the nature and circumstances of the dispute giving rise to the claims;
(c)     a statement of the relief sought, including, to the extent possible, an indication of any amount(s) claimed;
(d)     the relevant agreements and, in particular, the arbitration agreement;
(e)     all relevant particulars concerning the number of arbitrators and their choice in accordance with the provisions of Articles 8, 9 and 10, and any nomination of an arbitrator required thereby; and f) any comments as to the place of arbitration, the applicable rules of law and the language of the arbitration.

4. Together with the Request, the Claimant shall submit the number of copies thereof required by Article 3(1) and shall make the advance payment on administrative expenses required by Appendix III ("Arbitration Costs and Fees") in force on the date the Request is submitted. In the event that the Claimant fails to comply with either of these requirements, the Secretariat may fix a time limit within which the Claimant must comply, failing which the file shall be closed without prejudice to the right of the Claimant to submit the same claims at a later date in another Request.

5. The Secretariat shall send a copy of the Request and the documents annexed thereto to the Respondent for its Answer to the Request once the Secretariat has sufficient copies of the Request and the required advance payment.

6. When a party submits a Request in connection with a legal relationship in respect of which arbitration proceedings between the same parties are already pending under these Rules, the Court may, at the request of a party, decide to include the claims contained in the Request in the pending proceedings provided that the Terms of Reference have not been signed or approved by the Court. Once the Terms of Reference have been signed or approved by the Court, claims may only be included in the pending proceedings subject to the provisions of Article 19.

## Article 5 - Answer to the Request; Counterclaims

1. Within 30 days from the receipt of the Request from the Secretariat, the Respondent shall file an Answer (the "Answer") which shall, inter alia, contain the following information:

(a)     its name in full, description and address;
(b)     its comments as to the nature and circumstances of the dispute giving rise to the claim(s);
(c)     its response to the relief sought;
(d)     any comments concerning the number of arbitrators and their choice in light of the Claimant's proposals and in accordance with the provisions of Articles 8, 9 and 10, and any nomination of an arbitrator required thereby; and
(e)     any comments as to the place of arbitration, the applicable rules of law and the language of the arbitration.

2. The Secretariat may grant the Respondent an extension of the time for filing the Answer, provided the application for such an extension contains the Respondent's comments concerning the number of arbitrators and their choice, and, where required by Articles 8, 9 and 10, the nomination of an arbitrator. If the Respondent fails to do so, the Court shall proceed in accordance with these Rules.

3. The Answer shall be supplied to the Secretariat in the number of copies specified by Article 3(1).

4. A copy of the Answer and the documents annexed thereto shall be communicated by the Secretariat to the Claimant.

5. Any counterclaim(s) made by the Respondent shall be filed with its Answer and shall provide:

(a)     a description of the nature and circumstances of the dispute giving rise to the counterclaim(s); and
(b)     a statement of the relief sought, including, to the extent possible, an indication of any amount(s) counter-claimed.

6. The Claimant shall file a Reply to any counterclaim within 30 days from the date of receipt of the counterclaim(s) communicated by the Secretariat. The Secretariat may grant the Claimant an extension of time for filing the Reply.

## Article 6 - Effect of the Arbitration Agreement



1. Where the parties have agreed to submit to arbitration under the Rules, they shall be deemed to have submitted ipso facto to the Rules in effect on the date of commencement of the arbitration proceedings unless they have agreed to submit to the Rules in effect on the date of their arbitration agreement.

2. If the Respondent does not file an Answer, as provided by Article 5, or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement, the Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is prima facie satisfied that an arbitration agreement under the Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself. If the Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed. In such a case, any party retains the right to ask any court having jurisdiction whether or not there is a binding arbitration agreement.

3. If any of the parties refuses or fails to take part in the arbitration or any stage thereof, the arbitration shall proceed notwithstanding such refusal or failure.

4. Unless otherwise agreed, the Arbitral Tribunal shall not cease to have jurisdiction by reason of any claim that the contract is null and void or allegation that it is non-existent provided that the Arbitral Tribunal upholds the validity of the arbitration agreement. The Arbitral Tribunal shall continue to have jurisdiction to determine the respective rights of the parties and to adjudicate their claims and pleas even though the contract itself may be non-existent or null and void.

# The Arbitral Tribunal

## Article 7 - General Provisions

1. Every arbitrator must be and remain independent of the parties involved in the arbitration.

2. Before appointment or confirmation, a prospective arbitrator shall sign a statement of independence and disclose in writing to the Secretariat any facts or circumstances which might be of such a nature as to call into question the arbitrator's independence in the eyes of the parties. The Secretariat shall provide such information to the parties in writing and fix a time limit for any comments from them.

3. An arbitrator shall immediately disclose in writing to the Secretariat and to the parties any facts or circumstances of a similar nature which may arise during the arbitration.

4. The decisions of the Court as to the appointment, confirmation, challenge or replacement of an arbitrator shall be final and the reasons for such decisions shall not be communicated.

5. By accepting to serve, every arbitrator undertakes to carry out his responsibilities in accordance with these Rules.

6. Insofar as the parties have not provided otherwise, the Arbitral Tribunal shall be constituted in accordance with the provisions of Articles 8, 9 and 10.

## Article 8 - Number of Arbitrators

1. The disputes shall be decided by a sole arbitrator or by three arbitrators.

2. Where the parties have not agreed upon the number of arbitrators, the Court shall appoint a sole arbitrator, save where it appears to the Court that the dispute is such as to warrant the appointment of three arbitrators. In such case, the Claimant shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the decision of the Court, and the Respondent shall nominate an arbitrator within a period of 15 days from the receipt of the notification of the nomination made by the Claimant.

3. Where the parties have agreed that the dispute shall be settled by a sole arbitrator, they may, by agreement, nominate the sole arbitrator for confirmation. If the parties fail to nominate a sole arbitrator within 30 days from the date when the Claimant's Request for Arbitration has been received by the other party, or within such additional time as may be allowed by the Secretariat, the sole arbitrator shall be appointed by the Court.

4. Where the dispute is to be referred to three arbitrators, each party shall nominate in the Request and the Answer,



respectively, one arbitrator for confirmation by the Court. If a party fails to nominate an arbitrator, the appointment shall be made by the Court. The third arbitrator, who will act as chairman of the Arbitral Tribunal, shall be appointed by the Court, unless the parties have agreed upon another procedure for such appointment, in which case the nomination will be subject to confirmation pursuant to Article 9. Should such procedure not result in a nomination within the time limit fixed by the parties or the Court, the third arbitrator shall be appointed by the Court.

## Article 9 - Appointment and Confirmation of the Arbitrators

1. In confirming or appointing arbitrators, the Court shall consider the prospective arbitrator's nationality, residence and other relationships with the countries of which the parties or the other arbitrators are nationals and the prospective arbitrator's availability and ability to conduct the arbitration in accordance with these Rules. The same shall apply where the Secretary General confirms arbitrators pursuant to Article 9(2).

2. The Secretary General may confirm as co-arbitrators, sole arbitrators and chairmen of Arbitral Tribunals persons nominated by the parties or pursuant to their particular agreements, provided they have filed a statement of independence without qualification or a qualified statement of independence has not given rise to objections. Such confirmation shall be reported to the Court at its next session. If the Secretary General considers that a co-arbitrator, sole arbitrator or chairman of an Arbitral Tribunal should not be confirmed, the matter shall be submitted to the Court.

3. Where the Court is to appoint a sole arbitrator or the chairman of an Arbitral Tribunal, it shall make the appointment upon a proposal of a National Committee of the ICC that it considers to be appropriate. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, the Court may repeat its request or may request a proposal from another National Committee that it considers to be appropriate.

4. Where the Court considers that the circumstances so demand, it may choose the sole arbitrator or the chairman of the Arbitral Tribunal from a country where there is no National Committee, provided that neither of the parties objects within the time limit fixed by the Court.

5. The sole arbitrator or the chairman of the Arbitral Tribunal shall be of a nationality other than those of the parties. However, in suitable circumstances and provided that neither of the parties objects within the time limit fixed by the Court, the sole arbitrator or the chairman of the Arbitral Tribunal may be chosen from a country of which any of the parties is a national.

6. Where the Court is to appoint an arbitrator on behalf of a party which has failed to nominate one, it shall make the appointment upon a proposal of the National Committee of the country of which that party is a national. If the Court does not accept the proposal made, or if the National Committee fails to make the proposal requested within the time limit fixed by the Court, or if the country of which the said party is a national has no National Committee, the Court shall be at liberty to choose any person whom it regards as suitable. The Secretariat shall inform the National Committee, if one exists, of the country of which such person is a national.

## Article 10 - Multiple Parties

1. Where there are multiple parties, whether as Claimant or as Respondent, and where the dispute is to be referred to three arbitrators, the multiple Claimants, jointly, and the multiple Respondents, jointly, shall nominate an arbitrator for confirmation pursuant to Article 9.

2. In the absence of such a joint nomination and where all parties are unable to agree to a method for the constitution of the Arbitral Tribunal, the Court may appoint each member of the Arbitral Tribunal and shall designate one of them to act as chairman. In such case, the Court shall be at liberty to choose any person it regards as suitable to act as arbitrator, applying Article 9 when it considers this appropriate.

## Article 11 - Challenge of Arbitrators

1. A challenge of an arbitrator, whether for an alleged lack of independence or otherwise, shall be made by the submission to the Secretariat of a written statement specifying the facts and circumstances on which the challenge is based.



www.Trans-Lex.org - Please cite as:  www.trans-lex.org/750200

2. For a challenge to be admissible, it must be sent by a party either within 30 days from receipt by that party of the notification of the appointment or confirmation of the arbitrator, or within 30 days from the date when the party making the challenge was informed of the facts and circumstances on which the challenge is based if such date is subsequent to the receipt of such notification.

3. The Court shall decide on the admissibility, and, at the same time, if necessary, on the merits of a challenge after the Secretariat has afforded an opportunity for the arbitrator concerned, the other party or parties and any other members of the Arbitral Tribunal, to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

## Article 12 - Replacement of Arbitrators

1. An arbitrator shall be replaced upon his death, upon the acceptance by the Court of the arbitrator's resignation, upon acceptance by the Court of a challenge or upon the request of all the parties.

2. An arbitrator shall also be replaced on the Court's own initiative when it decides that he is prevented de jure or de facto from fulfilling his functions, or that he is not fulfilling his functions in accordance with the Rules or within the prescribed time limits.

3. When, on the basis of information that has come to its attention, the Court considers applying Article 12(2), it shall decide on the matter after the arbitrator concerned, the parties and any other members of the Arbitral Tribunal have had an opportunity to comment in writing within a suitable period of time. Such comments shall be communicated to the parties and to the arbitrators.

4. When an arbitrator is to be replaced, the Court has discretion to decide whether or not to follow the original nominating process. Once reconstituted, and after having invited the parties to comment, the Arbitral Tribunal shall determine if and to what extent prior proceedings shall be repeated before the reconstituted Arbitral Tribunal.

5. Subsequent to the closing of the proceedings, instead of replacing an arbitrator who has died or been removed by the Court pursuant to Articles 12(1) and 12(2), the Court may decide, when it considers it appropriate, that the remaining arbitrators shall continue the arbitration. In making such determination, the Court shall take into account the views of the remaining arbitrators and of the parties and such other matters that it considers appropriate in the circumstances.

# The Arbitral Proceedings

### Article 13 - Transmission of the File to the Arbitral Tribunal

The Secretariat shall transmit the file to the Arbitral Tribunal as soon as it has been constituted, provided the advance on costs requested by the Secretariat at this stage has been paid.

## Article 14 - Place of the Arbitration

1. The place of the arbitration shall be fixed by the Court unless agreed upon by the parties.

2. The Arbitral Tribunal may, after consultation with the parties, conduct hearings and meetings at any location it considers appropriate unless otherwise agreed by the parties.

3. The Arbitral Tribunal may deliberate at any location it considers appropriate.

## Article 15 - Rules Governing the Proceedings

1. The proceedings before the Arbitral Tribunal shall be governed by these Rules, and, where these Rules are silent, by any rules which the parties or, failing them, the Arbitral Tribunal may settle on, whether or not reference is thereby made to the rules of procedure of a national law to be applied to the arbitration.

2. In all cases, the Arbitral Tribunal shall act fairly and impartially and ensure that each party has a reasonable opportunity to present its case.


## Article 16 - Language of the Arbitration

In the absence of an agreement by the parties, the Arbitral Tribunal shall determine the language or languages of the arbitration, due regard being given to all relevant circumstances, including the language of the contract.

## Article 17 - Applicable Rules of Law

1. The parties shall be free to agree upon the rules of law to be applied by the Arbitral Tribunal to the merits of the dispute. In the absence of any such agreement, the Arbitral Tribunal shall apply the rules of law which it determines to be appropriate.

2. In all cases the Arbitral Tribunal shall take account of the provisions of the contract and the relevant trade usages.

3. The Arbitral Tribunal shall assume the powers of an amiable compositeur or decide ex aequo et bono only if the parties have agreed to give it such powers.

## Article 18 - Terms of Reference; Procedural Timetable

1. As soon as it has received the file from the Secretariat, the Arbitral Tribunal shall draw up, on the basis of documents or in the presence of the parties and in the light of their most recent submissions, a document defining its Terms of Reference. This document shall include the following particulars:

(a)   the full names and descriptions of the parties;
(b)   the addresses of the parties to which notifications and communications arising in the course of the arbitration may be made;
(c)   a summary of the parties' respective claims and of the relief sought by each party, with an indication to the extent possible of the amounts claimed or counterclaimed;
(d)   unless the Arbitral Tribunal considers it inappropriate, a list of issues to be determined;
(e)   the full names, descriptions and addresses of the arbitrators;
(f)   the place of the arbitration; and
(g)   particulars of the applicable procedural rules and, if such is the case, reference to the power conferred upon the Arbitral Tribunal to act as amiable compositeur or to decide ex aequo et bono.

2. The Terms of Reference shall be signed by the parties and the Arbitral Tribunal. Within two months of the date on which the file has been transmitted to it, the Arbitral Tribunal shall transmit to the Court the Terms of Reference signed by it and by the parties. The Court may extend this time limit pursuant to a reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

3. If any of the parties refuses to take part in the drawing up of the Terms of Reference or to sign the same, they shall be submitted to the Court for approval. When the Terms of Reference are signed in accordance with Article 18(2) or approved by the Court, the arbitration shall proceed.

4. When drawing up the Terms of Reference, or as soon as possible thereafter, the Arbitral Tribunal, after having consulted the parties, shall establish in a separate document a provisional timetable that it intends to follow for the conduct of the arbitration and shall communicate it to the Court and the parties. Any subsequent modifications of the provisional timetable shall be communicated to the Court and the parties.

## Article 19 - New Claims

After the Terms of Reference have been signed or approved by the Court, no party shall make new claims or counterclaims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the Arbitral Tribunal, which shall consider the nature of such new claims or counterclaims, the stage of the arbitration and other relevant circumstances.

## Article 20 - Establishing the Facts of the Case

1. The Arbitral Tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means.



www.Trans-Lex.org - Please cite as: *www.trans-lex.org/750200*

2. After studying the written submissions of the parties and all documents relied upon, the Arbitral Tribunal shall hear the parties together in person if any of them so requests or, failing such a request, it may of its own motion decide to hear them.

3. The Arbitral Tribunal may decide to hear witnesses, experts appointed by the parties or any other person, in the presence of the parties, or in their absence provided they have been duly summoned.

4. The Arbitral Tribunal, after having consulted the parties, may appoint one or more experts, define their terms of reference and receive their reports. At the request of a party, the parties shall be given the opportunity to question at a hearing any such expert appointed by the Tribunal.

5. At any time during the proceedings, the Arbitral Tribunal may summon any party to provide additional evidence.

6. The Arbitral Tribunal may decide the case solely on the documents submitted by the parties unless any of the parties requests a hearing.

7. The Arbitral Tribunal may take measures for protecting trade secrets and confidential information.

## Article 21 - Hearings

1. When a hearing is to be held, the Arbitral Tribunal, giving reasonable notice, shall summon the parties to appear before it on the day and at the place fixed by it.

2. If any of the parties, although duly summoned, fails to appear without valid excuse, the Arbitral Tribunal shall have the power to proceed with the hearing.

3. The Arbitral Tribunal shall be in full charge of the hearings, at which all the parties shall be entitled to be present. Save with the approval of the Arbitral Tribunal and the parties, persons not involved in the proceedings shall not be admitted.

4. The parties may appear in person or through duly authorized representatives. In addition, they may be assisted by advisers.

## Article 22 - Closing of the Proceedings

1. When it is satisfied that the parties have had a reasonable opportunity to present their cases, the Arbitral Tribunal shall declare the proceedings closed. Thereafter, no further submission or argument may be made, or evidence produced, unless requested or authorized by the Arbitral Tribunal.

2. When the Arbitral Tribunal has declared the proceedings closed, it shall indicate to the Secretariat an approximate date by which the draft Award will be submitted to the Court for approval pursuant to Article 27. Any postponement of that date shall be communicated to the Secretariat by the Arbitral Tribunal.

## Article 23 - Conservatory and Interim Measures

1. Unless the parties have otherwise agreed, as soon as the file has been transmitted to it, the Arbitral Tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate. The Arbitral Tribunal may make the granting of any such measure subject to appropriate security being furnished by the requesting party. Any such measure shall take the form of an order, giving reasons, or of an Award, as the Arbitral Tribunal considers appropriate.

2. Before the file is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim or conservatory measures. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an Arbitral Tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the Arbitral Tribunal. Any such application and any measures taken by the judicial authority must be notified without delay to the Secretariat. The Secretariat shall inform the Arbitral Tribunal thereof.

# Awards



## Article 24 - Time Limit for the Award

1. The time limit within which the Arbitral Tribunal must render its final Award is six months. Such time limit shall start to run from the date of the last signature by the Arbitral Tribunal or of the parties of the Terms of Reference, or, in the case of application of Article 18(3), the date of the notification to the Arbitral Tribunal by the Secretariat of the approval of the Terms of Reference by the Court.

2. The Court may extend this time limit pursuant to a reasoned request from the Arbitral Tribunal or on its own initiative if it decides it is necessary to do so.

## Article 25 - Making of the Award

1. When the Arbitral Tribunal is composed of more than one arbitrator, an Award is given by a majority decision. If there be no majority, the Award shall be made by the chairman of the Arbitral Tribunal alone.

2. The Award shall state the reasons upon which it is based.

3. The Award shall be deemed to be made at the place of the arbitration and on the date stated therein.

## Article 26 - Award by Consent

If the parties reach a settlement after the file has been transmitted to the Arbitral Tribunal in accordance with Article 13, the settlement shall be recorded in the form of an Award made by consent of the parties if so requested by the parties and if the Arbitral Tribunal agrees to do so.

## Article 27 - Scrutiny of the Award by the Court

Before signing any Award, the Arbitral Tribunal shall submit it in draft form to the Court. The Court may lay down modifications as to the form of the Award and, without affecting the Arbitral Tribunal's liberty of decision, may also draw its attention to points of substance. No Award shall be rendered by the Arbitral Tribunal until it has been approved by the Court as to its form.

## Article 28 - Notification, Deposit and Enforceability of the Award

1. Once an Award has been made, the Secretariat shall notify to the parties the text signed by the Arbitral Tribunal, provided always that the costs of the arbitration have been fully paid to the ICC by the parties or by one of them.

2. Additional copies certified true by the Secretary General shall be made available on request and at any time to the parties, but to no one else.

3. By virtue of the notification made in accordance with Paragraph 1 of this Article, the parties waive any other form of notification or deposit on the part of the Arbitral Tribunal.

4. An original of each Award made in accordance with the present Rules shall be deposited with the Secretariat.

5. The Arbitral Tribunal and the Secretariat shall assist the parties in complying with whatever further formalities may be necessary.

6. Every Award shall be binding on the parties. By submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made.

## Article 29 - Correction and Interpretation of the Award

1. On its own initiative, the Arbitral Tribunal may correct a clerical, computational or typographical error, or any errors of similar nature contained in an Award, provided such correction is submitted for approval to the Court within 30 days of the date of such Award.



www.Trans-Lex.org - Please cite as:  *www.trans-lex.org/750200*

2. Any application of a party for the correction of an error of the kind referred to in Article 29(1), or for the interpretation of an Award, must be made to the Secretariat within 30 days of the receipt of the Award by such party, in a number of copies as stated in Article 3(1). After transmittal of the application to the Arbitral Tribunal, it shall grant the other party a short time limit, normally not exceeding 30 days, from the receipt of the application by that party to submit any comments thereon. If the Arbitral Tribunal decides to correct or interpret the Award, it shall submit its decision in draft form to the Court not later than 30 days following the expiration of the time limit for the receipt of any comments from the other party or within such other period as the Court may decide.

3. The decision to correct or to interpret the Award shall take the form of an addendum and shall constitute part of the Award. The provisions of Articles 25, 27 and 28 shall apply mutatis mutandis.

# Costs

## Article 30 - Advance to Cover the Costs of the Arbitration

1. After receipt of the Request, the Secretary General may request the Claimant to pay a provisional advance in an amount intended to cover the costs of arbitration until the Terms of Reference have been drawn up.

2. As soon as practicable, the Court shall fix the advance on costs in an amount likely to cover the fees and expenses of the arbitrators and the ICC administrative costs for the claims and counterclaims which have been referred to it by the parties. This amount may be subject to readjustment at any time during the arbitration. Where, apart from the claims, counterclaims are submitted, the Court may fix separate advances on costs for the claims and the counterclaims.

3. The advance on costs fixed by the Court shall be payable in equal shares by the Claimant and the Respondent. Any provisional advance paid on the basis of Article 30(1) will be considered as a partial payment thereof. However, any party shall be free to pay the whole of the advance on costs in respect of the principal claim or the counterclaim should the other party fail to pay its share. When the Court has set separate advances on costs in accordance with Article 30(2), each of the parties shall pay the advance on costs corresponding to its claims.

4. When a request for an advance on costs has not been complied with, and after consultation with the Arbitral Tribunal, the Secretary General may direct the Arbitral Tribunal to suspend its work and set a time limit, which must be not less than 15 days, on the expiry of which the relevant claims, or counterclaims, shall be considered as withdrawn. Should the party in question wish to object to this measure it must make a request within the aforementioned period for the matter to be decided by the Court. Such party shall not be prevented on the ground of such withdrawal from reintroducing the same claims or counterclaims at a later date in another proceeding.

5. If one of the parties claims a right to a set-off with regard to either claims or counterclaims, such set-off shall be taken into account in determining the advance to cover the costs of arbitration in the same way as a separate claim insofar as it may require the Arbitral Tribunal to consider additional matters.

## Article 31 - Decision as to the Costs of the Arbitration

1. The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative costs fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitral proceedings, as well as the fees and expenses of any experts appointed by the Arbitral Tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.

2. The Court may fix the fees of the arbitrators at a figure higher or lower than that which would result from the application of the relevant scale should this be deemed necessary due to the exceptional circumstances of the case. Decisions on costs other than those fixed by the Court may be taken by the Arbitral Tribunal at any time during the proceedings.

3. The final Award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

# Miscellaneous

## Article 32 - Modified Time Limits



www.Trans-Lex.org - Please cite as: *www.trans-lex.org/750200*

1. The parties may agree to shorten the various time limits set out in these Rules. Any such agreement entered into subsequent to the constitution of an Arbitral Tribunal shall become effective only upon the approval of the Arbitral Tribunal.

2. The Court, on its own initiative, may extend any time limit which has been modified pursuant to Article 32(1) if it decides that it is necessary to do so in order that the Arbitral Tribunal or the Court may fulfil their responsibilities in accordance with these Rules.

## Article 33 - Waiver

A party which proceeds with the arbitration without raising its objection to a failure to comply with any provision of these Rules, or of any other rules applicable to the proceedings, any direction given by the Arbitral Tribunal, or any requirement under the arbitration agreement relating to the constitution of the Arbitral Tribunal, or to the conduct of the proceedings, shall be deemed to have waived its right to object.

## Article 34 - Exclusion of Liability

Neither the arbitrators, nor the Court and its members, nor the ICC and its employees, nor the ICC National Committees shall be liable to any person for any act or omission in connection with the arbitration.

## Article 35 - General Rule

In all matters not expressly provided for in these Rules, the Court and the Arbitral Tribunal shall act in the spirit of these Rules and shall make every effort to make sure that the Award is enforceable at law.

### Referring Principles:

IV.2.5 - Holidays and non-business days

XIII.3.9 - Waiver of right to object

# EXHIBIT 10

**GOVERNMENT OF ZAMBIA**

STATUTORY INSTRUMENT No. 75 of 2001

**The Arbitration Act**
(Act No. 19 of 2000)

**(S.I. No. 75) The Arbitration (Court Proceedings) Rules, 2001**

**ARRANGEMENT OF RULES**

**PART I PREMILINARY**

1. Short Tile
2. Interpretation
3. Designation of courts

**PART II STAY OF PROCEEDINGS**

4. Practice of the High Court, Industrial Relations Court, and Lands Tribunal on application for stay of proceedings
5. Practice in the Subordinate Courts on application for stay of proceedings
6. Rules applicable to applications for stay of proceedings
7. Form of summons, notice of motion etc.
8. Costs on application for stay of proceedings

**PART III REQUEST FOR INTERIM MEASURES OF PROTECTION**

9. Application for interim measure of protection

**PART IV APPOINTMENT OF ARBITRATORS**

10. Application for appointment of arbitrator

**PART V PROCEDURE FOR CHALLENGE OF ARBITRATOR OR JURISDICTION OF THE ARBITRAL TRIBUNAL**

11. Procedure for challenge of arbitrator or jurisdiction of arbitral tribunal

**PART VI REQUESTS FOR EXECUTORY ASSISTANCE**

12. Meaning of executor assistance

**13.**Application for executor assistance

**PART VII ENFORCEMENT OF AWRDS**

**14.**Meaning of judgment creditor and judgment debtor
**15.**Registration of awards
**16.**Application for registration and enforcement
**17.**Order for registration and enforcement
**18.**Registration of awards
**19.**Notice of registration
**20.**Issue of execution
**21.**Form of writ for enforcement
**22.**Other court processes for enforcement

**PART VIII SETTINGS ASIDE AN AWARD**

**23.**Application for setting aside
**24.**Suspension of setting aside proceedings

**PART IX PROVISIONS TO ENSURE CONFIDENTIALITY OF ARBITRATION**

**25.**Confidentiality of proceedings
**26.**Custody of records, registers and documents
**27.**Prohibition against inspection, search, disclosure or communication
**28.**Proceedings to be held in camera
**29.**Unlawful publication, communication or disclosure of proceedings
**30.**Register or arbitration proceedings
**31.**Particulars to be entered in register

**PART X SERVICE OF PROCESS ND CODUCT OF PROCEEDINGS**

**32.**Service of summons
**33.**Service of originating summons
**34.**Service of affidavit in opposition
**35.**Additional affidavit
**36.**Service out of the jurisdiction
**37.**Court assistance in taking evidence
**38.**General application of High Court or Subordinate Court Rules
**39.**Order for costs
**40.**Reference of application by Registrar to Judge
**41.**Appeals from Registrar to Judge

**42.**Forms

**43.**Fees

IN EXRCISE of the powers contained in section thirty-two of the Arbitration Act, 2001, the following Rules are hereby made:

PART I

## PRELIMINARY

**1.**   These Rules may be cited as the Arbitration (Court Proceedings) Rules, 2001.

Short Title

**2.**   In these Rules, unless the context otherwise requires-

Interpretation

"Act" means the Arbitration Act, 2001;

"Defendant" includes any party against whom relief is sought in legal proceedings as a party thereto;

"Judge" include a Judge of the High Court, the Chairman and Deputy Chairman of the industrial Relations Court or the Lands Tribunal;

"Plaintiff" includes a party seeking in legal proceedings against any other party;

Act   No.   19   of 2000

"Register" includes the registrar, a deputy registrar and a district registrar of the High Court, Industrial Relations Court or the Lands Tribunal.

**3.** In addition to the High Court, the Industrial Relations Court, the Lands Tribunal all subordinate courts are hereby designated as courts having jurisdiction, with the meaning of section two of the Act, to the extent provided in these Rules.

Designation   of Courts

**4.** (1) An application, under section ten of the Act to the High Court, Industrial Relations Court or the Lands Tribunal for the stay of legal proceedings which are he subject of an arbitration agreement shall be made by summons in the same proceedings to the Registrar of the court or, if the proceedings are pending before a Judge, to a Judge.

Practice   in   High Court,   Industrial Relations   Court and         Lands Tribunal         on application       for stay           of proceedings

(2) An application referred to in sub-rule (1) shall be supported by an affidavit-

support shall be served on all the parties to the legal proceedings either by way of personal service or by letter sent by post to the address shown in the proceedings or to the last known address of each of the parties at least ten days before the return day.

(4) A party served with the notice of motion under sub-rule (3) may, within four days after service, file an affidavit in opposition or in answer and serve a copy thereof up the other party at least tow days before the return day.

(5) Additional affidavits may only be filed with the leave of the court.

(6) A party affected by a decision, order or direction of a Subordinate Court may appeal to the High Court within fourteen days after the decision, order or direction and in accordance with the Rules of that court.

**6.**   (1) After service of process, an application for the stay of proceedings in pending legal proceedings shall be disposed of by the court in accordance with the Rules of each particular court.

Rules applicable to applications for stay

**7.**   The form of summons, notice of motion, affidavits and other processes to be used in applications for stay of pending legal proceedings shall be in accordance with the forms prescribed for use in each particular court.

Form of summons, notice motion, etc

**8.**   The court or a Judge may determine the costs of an application under this Part or reserve them to the discretion of the arbitrator and may make any other appropriate order relating to such costs.

Costs an application for stay of proceedings

PART III

**REQUESTS FOR INTERM MEASURES OF PROTECTION**

**9.**   (1) An application under section eleven of the act, to a court for an interim measure of protection shall be made to a Judge of the High Court by originating summons.

(2) An application for an interim measure of protection in the course of an application for the stay of proceedings may be made to the Court before which those proceedings are held and by ordinary summons.

(3) The application for an interim measure of protection shall be supported by an affidavit-

(a) exhibiting a copy of the arbitration agreement;
(b) stating the nature of the interim measure required;
(c) stating the particulars of the subject-matter of the dispute in respect of which the interim measure is sought;
(d) stating the particulars of any person in possession of the subject-matter of the dispute and that person's address;
(e) stating the particulars of any arbitral proceedings pending;
(f) exhibiting any ruling or finding of fact made in pending arbitral proceedings;
(g) giving an undertaking to pay damages in case the court or the arbitrator decides to discharge the interim measure or to order the payment of damages; and
(h) stating any other facts relevant to the application.

(4) An application for an interim measure of protection which is urgent may be made to the court ex parte by affidavit, in accordance with the Rules of the Court, upon filing the originating summons; and the application shall be heard inter partes on the return day stated in the originating summons.

(5) Where an application for an interim measure of protection is urgent, it shall be accompanied by a certificate of urgency.

(6) Rules of the court relating to ex parte application, service there of and disposal or urgent applications shall apply to applications for interim measures of protection.

(7) An ex parte order granting an interim measure of protection may be discharged by the court in accordance with the rules of the court upon cause being shown.

## PART IV

## APPOINTMENT OF ARBITRATIONS

**10.**   (1) An application to the court, under section twelve of the Act, for the appointment of an arbitrator shall be made by originating summons before the Registrar of the High court.

Application for appointment of arbitrator

(2) An application for the appointment of an arbitrator may by made by ordinary summons in the course of an application for stay of proceedings.

(3) An application referred in sub-rule (1) shall be supported by an affidavit-

(a) exhibiting a copy of the arbitration agreement;

(b) stating facts in support of the application, including steps taken to secure the appointment of an arbitrator; and

(c) stating the name, address and qualifications of any proposed arbitrator.

## PART V

## PROCEDURE FOR CHALLENGE OF ARBITRATOR OR JURISDICTION OF THE ARBITRAL TRIBUNAL

**11.**  (1) An application-

(a) to decide on a challenge by a party, of an arbitrator, under Article 13(3) of the First Schedule to the Act;

(b) to decide on any controversy regarding the termination of the mandate of an arbitrator under Article 14(1) of the First Schedule to the Act; or

(c) to decide on the jurisdiction of an arbitral tribunal under Article 16(3) of the First Schedule to the Act.

> Procedure for challenge of arbitrator or jurisdiction of arbitral tribunal.

Shall be made by originating summons to a Jude of the High court.

(2) The application referred to in sub-rule(1) shall be supported by an affidavit-

(a) exhibiting a copy of the arbitration agreement;

(b) stating the facts in support of the application including steps taken in the arbitral proceedings;

(c) exhibiting any ruling or finding of fact made in the arbitral proceedings; and

(d) stating the name, occupation and qualification of the arbitrator.

(3) The affidavit shall be accompanied by such other evidence with respect to the matter referred to in Articles 13(3), 14(1) and 16(3) of the First Schedule to the Act as may be necessary.

## PART VI

## REQUESTS FOR EXECUTORY ASSISTANCE

**12.**  The Executory assistance under this Part includes-

Meaning of executory assistance

(a) an order by a court directing a person to obey or comply with orders or directions made by an arbitral tribunal under section fourteen of the Act

(b) an order by a court directing the sheriff of Zambia, an Under sheriff or a court bailiff or the Police to execute an order of an arbitral tribunal;

(c) an order by a  court compelling a witness to produce documents or for summons or subpoena ad testifacandum to issue at the instance of the court; or

(d) any other order of the court as will ensure that the order of the arbitral tribunal made under section fourteen, is not rendered ineffectual.

**13.**  (1) An application to the court by an arbitral tribunal or a party for executory assistance under section fourteen of the Act shall be made by originating summons to a Judge of the High Court.

Application for executory assistance

(2) The application referred to in sub-rule (1) shall be supported by an affidavit-

(a) exhibiting a copy of the arbitration agreement;
(b) stating the fact relied upon;
(c) giving details of the steps taken in the pending arbitral proceedings and the particulars of such proceedings;
(d) stating the nature of the executory assistance required;
(e) stating the particulars of persons holding any property relevant to the arbitration agreement and the situation of the property; and
(f) exhibiting any ruling or finding of fact made in the pending arbitral proceedings.

(3) An application for executory for executory assistance which is urgent may be made to the court ex parte by affidavit in accordance with the Rules of the court upon filing the originating summons, and the application shall be heard inter partes on the return day stated in the originating summons.

(4) Where an application for executory assistance is urgent, it shall be accompanied by a certificate or urgency.

(5) Rules of the court relating to ex-parte applications, service

thereof and disposal of urgent applications shall apply to application for executory assistance.

(6) An ex parte order granting executory assistance may be discharged by the court in accordance with the rules of the court upon cause being shown.

**PART VII**

**ENFORCMENT OF AWARDS**

**14.** In this Part-

"Judgment creditor" means the person seeking the enforcement of an ward; and

"Judgment debtor" means the party to the award against whom the award is invoked.

Meaning of judgment creditor and judgment debtor

**15.** A party that wishes to enforce an ward recognized as binding in terms of section  eighteen of the Act shall register the award and comply with the provisions of this Part.

Registration of awards

**16.** An application for the registration and enforcement of an award shall be made be ex parte originating summons to the register of the High Court.

Application for registration and enforcement

(2) An application for the registration and enforcement of an award shall be supported by an affidavit-

(a) exhibiting the duty authenticated original award or a duly certified copy thereof;

(b) exhibiting the original arbitration agreement or a duly certified copy thereof;

(c) exhibiting a duly certified translation of the award and the arbitration agreement if they are not in the official language;

(d) specifying the rate of interest sought by the deponent or the amount of interest which has become due under the award;

(e) stating the full name, title, trade or business of the respondent so far as is known to the deponent; and

(f) stating to the best of information and belief of the deponent;

(i) that the applicant is entitled to enforce the award;

(ii) that at the date of the application, the award has not been satisfied, or if the award has been not been satisfied , or if the award has been satisfied in part, stating the amount or any other matter which remains unsatisfied.

(iii) if the award is a foreign award, that at the date of the application the award can be enforced by execution in the country in which it was made; and

(vi) that the award is valid and binding on the parties and has not been set aside or suspended in Zambia or in the country  in which, or under the law of which, it was made.

(3) Where the sum payable under the award is expressed in a currency other than currency of the Republic of Zambia, the affidavit shall also state the amount which that sum represents in the currency of the Republic, Calculated at the average rate of exchange prevailing at the date of enforcement of the award.

(4) The court may in respect of an application for registration order the applicant to find security for the costs of the application and of any proceedings which may thereafter be brought to set aside the registration to the award.

(5) If an application for setting aside or for the suspension of an award has been made in accordance with section nineteen of the Act to a court of the country in which the ward was made, the court dealing with the application for registration and enforcement may, adjourn its decision and direct the applicant to issue summons and serve the application and the affidavit upon the other party.

(6) If an application for setting aside or for the suspension of an award has been made to a court in the country or under the law of which the award was made, the judgment creditor may apply to the court for an order compelling the debtor to provide appropriate security.

(7) An application for security under sub rule (7) shall be by Order        for

summons and supported by an affidavit of facts.

<div style="float:right">registration and enforcement</div>

**17.**  (1) An order giving leave to register an award shall be drawn up by or on behalf of the judgment creditor and the order shall not be required to be served on the judgment debtor.

(2) An order referred to in sub rule (1) shall state a period, not exceeding ninety days from the date of receipt of the award by the applicant, within which an application may be made to set aside the registration and shall contain a notification that execution of the award will not issue until expiration of that period.

<div style="float:right">Register        of awards</div>

**18.**  (1) There shall be kept at every Registry of the High Court a register of arbitration awards ordered to be registered under these Rules.

(2) The Registrar shall record in the register, in relation to each award, the following:

(a) the registration number;
(b) the date of registration;
(c) the full particulars of the award registered and the order for registration;
(d) the name and address of the judgment creditor or the judgment creditor's legal practitioner or agent on whom , and at which any summons or other court process issued  by the judgment debtor may be served;
(e) the name and address of the judgment debtor;
(f) the amount due under the award or any other order made under the award for the transfer, possession or delivery of property; and
(g) the rate of interest or amount of interest due under the award.

<div style="float:right">Notice        of registration</div>

**19.**  (1) The applicant shall file in court a written notice of the registration of the award and serve it on the other parties-

(a) in the case of a party within the jurisdiction, by personal service as in the case of a writ of summons, unless some other mode of service is ordered; or

(b) in the case of a party outside the jurisdiction, in accordance with the rules applicable to the service of a writ of summons out of the jurisdiction.

(2) The notice of registration shall state-

(a) the full particulars of the award registered and the order for registration;

(b) the date of registration;

(c) the name and address of the judgment creditor or the judgment creditor's legal practitioner or agent on whom, and at which any summons issued by the other party may be served;

(d) the name and address of the judgment creditor;

(e) the right of the judgment debtor to apply on the grounds specified in section seventeen of the Act to have the registration set aside; and

(f) in accordance with the term of the order giving leave to register, within what time from the date of service of the notice an application to set aside the registration may be made:

(3) Within three days from the date of service or within such extended period as may in special circumstances, be allowed by order of the court, the notice or a copy thereof shall be endorsed b the person serving the notice with the date on which service was affected, and if the notice is not so endorsed, the judgment creditor shall not issue execution on the award without the leave of the court or a Judge.

(4) An affidavit of service of a notice referred to in sub-rule (2) shall state on what day it was endorsed in the manner required by sub-rule (3).

**20.** (1) Execution shall not issue on a registered award until after the expiration of the period specified in the order giving leave to register as the period within which an application may be made to set aside the registration.

(2) If an application is made to set aside the registration of the award, execution shall not issue until the application has been disposed of.

(3) The party wishing to issue execution upon a registered award shall file in court an affidavit of service of the notice of registration and of any order made by the court in relation to the

Issue of execution

Form of writ of execution

award registered.

**21.**   In the case of a registered award the form of a writ of execution or fieri-facias shall be varied as follows:

For the words "which said sum of money and interest were lately before us in the High court for Zambia" etc., there shall be substituted the words:" which said sum of money and interest were lately in...... (describing    the arbitration in which the award was rendered)", etc." which award has been duly registered", etc., and which award has been duly registered in the High Court for Zambia pursuant to the Arbitration Act, 2000".

Other        court
processes        of
enforcement

**22.**    A party entitled to enforce an award may invoke any of the processes available under the High Court Rules for the enforcement of judgments, including writs of possessions, writs of fieri facias and writs of elegit.

PART VIII

**SETTING ASIDE AN AWARD**

**23.**   (1) An application, under section seventeen of the Act, to set aside an award shall be made by originating summons to a Judge of the High court.

Application for
setting aside

(2) The application referred to in sub-rule (1) shall be supported by an affidavit-

   (a) exhibiting the original award or a certified copy thereof;

   (b) exhibiting   the   original   arbitration   agreement   or   duly
        certified copy thereof;

   (c) stating   to   the   best   of   the   knowledge   and   belief   of   the
        deponent,   the   facts   relied   upon   in   support   of   the
        application; and

   (d) stating   the   date   of   receipt   of   the   award   by   the   party
        applying to set aside the award.

(3) The affidavit shall be accompanied by such other evidence with respect to the matters referred to in subsection (2) of section seventeen of the Act, as may be necessary to support the application.

(4) On an application to set aside an award, the court may

direct that an issue between the parties shall be stated and tried and may give such direction in relation to the trial of such issue as may be necessary, to make any other considered necessary in the circumstances.

**24.** (1) An application, under subsection (4) of section seventeen of the Act, to suspend setting aside proceedings shall be made by summons to the Judge hearing the application for setting aside.

Suspension of setting aside proceedings

(2) The application referred to in sub-rule (1) shall be supported by an affidavit deposing to the relevant facts.

## PART IX

## PROVISIONS TO ENSURE CONFIDENTIALITY OF ARBITRATION

**25.** Applications made to a court in relation to arbitral proceedings shall be treated with utmost confidentiality.

Confidentiality of proceedings

**26.** All records, registers and other documents relating to legal proceedings under the Act shall, while they are in the custody of the court, be confidential and shall be kept in a place of special security.

Custody of records, registers and documents

**27.** (1) Except as is required or authorized by or under the Act, any law or by these Rules , or with the leave of the court, no document or order held by or lodged with the court in legal proceedings under the Act shall be open to inspection or search by any person, except the parties, their legal practitioners or their representatives; and no copy of any such document or order, or of an extract from any such document or order , shall be taken by or issued to any person.

Prohibition against inspection, search, disclosure or communication

(2) Section twenty-seven of the act, *mutatis mutandis*, apply to proceedings under these Rule.

**28.** All legal proceedings under these Rules shall be held in camera.

Proceedings to be held in camera

**29.** Any person who, in contravention of Rules 25, 26 and 27 publishes, communicates or discloses any information relating to proceedings under the Act commits contempt of court and is liable, on conviction, to the same penalties prescribed in section one hundred and sixteen of the Penal Code.

Unlawful publication communication or disclosure of legal proceedings
Cap. 87

**30.** All legal proceedings under the Act shall be recorded in a

Register of arbitral proceedings

separate register to be called the register of arbitral proceedings, which shall be maintained at the Principal Registry and all District Registries of the High Court.

**31.** The following particulars shall be entered in the register of arbitral proceedings, in respect of each legal proceedings: <span style="float:right">Particulars to be entered in register</span>

- (a) cause number, with the abbreviations/ARB as part of the number;
- (b) date of filing;
- (c) names of parties;
- (d) name of arbitrator;
- (e) date and details of award; and
- (f) any remarks relevant to the arbitral proceedings.

## PART X

## SERVICE OF PROCESS AND CONDUCT OF PROCEDURES

**32.** Summons issued under these Rules, shall be served at least seven clear days before the return day, unless provided or ordered otherwise. <span style="float:right">Service of summons</span>

**33.** An originating summons and any support affidavit issued under these Rules shall be served at least fourteen days before the return day. <span style="float:right">Service of originating summons</span>

**34.** A party served with a originating summons or summons and an affidavit may, within seven days after service, file an affidavit in opposition or in answer and shall deliver a copy of that party's affidavit to the party serving the originating summons or summons at least two clear days before the return day. <span style="float:right">Service of affidavit in opposition</span>

**35.** Additional affidavits, other than those specified in these Rules, shall not be filed in legal proceedings without the leave of the court or a Judge. <span style="float:right">Additional affidavits</span>

**36.** (1) Service out of the jurisdiction of any originating summons or an order made on such summons, may be effected with the leave of the Court if the arbitration to which the summons or order relate is governed by the law of Zambia or has been, is being, or is to be held in Zambia. <span style="float:right">Service out of Jurisdiction</span>

(2) Service out of jurisdiction of an originating summons for leave to register and enforce an award may be effected with the leave of the court whether or not the arbitration is governed by the law of Zambia.

(3) An application for the grant of leave under this Rule shall be supported by an affidavit stating the grounds on which the application is made, and stating in what place or country the person to be served is, or probably maybe found; and leave shall not be granted unless the Court considers that the case is a proper one for service out of the jurisdiction under this rule.

PART XI

## COURT ASSISTANCE IN TAKING EVIDENCE

**37.** (1) An application under Article 27 of the first Schedule to the Act to a court by an arbitral tribunal or a party for assistance in taking evidence shall be made by originating summons before the Registrar.

*Court assistance in taking evidence*

(2) The application referred to under sub-rule (1) shall be supported by an affidavit-

(a) exhibiting the arbitration agreement;
(b) giving details and particulars of the arbitration and the stage of the arbitral proceedings; and
(c) stating the type of assistance required in taking evidence.

(3) The originating summons and affidavit shall be served on all the parties and, if the arbitral tribunal is not the originator of the application, on the tribunal.

PART XIII

## GENERAL

**38.** (1) Where these Rules do not provide for ay particular matter or do not make sufficient provision enabling a court to dispose of a matter before it or to enable a party to prosecute its case, the Rules of the High Court or of the subordinate court, as the case may be, relating to civil proceedings with these Rules.

*General application of High court or Subordinate Court rules*

(2) Parties to legal proceedings shall also be entitled to make ancillary and incidental applications and to invoke other necessary court processes, available under the High court Rules, in dealing with applications under these Rules.

**39.** Upon hearing an application under these rules, the Court or

a Judge may order the costs to be in the arbitration or reserve them in the discretion of the arbitrator or may make such other order as the court or the Judge may deem fit.

Orders for costs

**40.**   If an application under these Rules appears to the Registrar proper for the decision of a Judge, the Registrar may refer it to a Judge and the Judge may either dispose of the proceedings or refer the application to the Registrar with such directions as the Judge may think fit.

Reference of application by Registrar to Judge

**41.**   (1) Except as otherwise provided in the Act, a party affected by a decision of the Registrar under these Rules, may appeal there from to a Judge at Chambers and the appeal shall be by notice in writing to attend before the Judge without a fresh summons, within seven days after the decision complained of, or such further time as may be allowed by the Judge or the Registrar.

Appeals from Registrar to Judge

   (2) Unless otherwise ordered, there shall be allowed at least two clear days between service of the notice of appeal and he return day.

**42.**   The forms in the First Schedule may be used in all matters , causes and proceedings to which they are applicable, under these Rules  with such variations as circumstances may require.

Forms

**43.**   (1) The fees specified in the Second Schedule shall be payable in respect of applications to the High court by the party at whose instance they are incurred, and may afterwards be recovered as costs of the cause, if the court or a Judge so orders.

Fees

   (2) The court fees payable in respect of applications for the stay of legal proceedings under Part II of these Rules, shall be those payable in respect of civil matters before the court in which the proceedings are held.

**FIRST SCHEDULE**
(Rule 41)

REPUBLIC OF ZAMBIA

H.C. ARB 1

GENERAL TITLE OF ORIGINATING SUMMONS AND OTHER DOCUMENTS IN LEGAL PROCEEDINGS

IN THE HIGH COURT ZAMBIA                2…………/H……./ARB/No…………(a)

AT THE PRINCIPAL/DISTRICT REGISTRY (b)

IN THE MATTER OF THE ARBITRATION ACT, 2000

AND

IN THE MATTER OF AB ARBITRATION

BETWEEN:

A.B.                                          PLAINTIFF

AND

C.D.                                          DEFENDANT

…………………………………………………………(c)

    (a) Here put in the year, letter and number, in an action commenced in the principal Registry at Lusaka, the letters shall be HP.  In actions commenced in the Ndola, Kitwe or Livingstone District Registries respectively the letters shall be, HN, HK or HL respectively.

    (b) delete if inapplicable

    (c) insert description of document.


REPUBLIC OF ZAMBIA

HC.ARB 2

ORIGINATING SUMMONS
(General Title)

LET C.D. of ……………………… attend before the Learned Deputy/District Registrar [or Judge] in Chambers at the High Court [Lusaka/Ndola/Kitwe etc] on the

Day………………… of……………………………2…………at hours on

The hearing of an application by the Plaintiff A B of

That

DATED the……………………….. day of ……………. 2…………….

This Summons was taken out by:

Of

Advocate for the said Plaintiff whose address for service is at …………………….
And whose postal address for service is at

[or this Summons was taken out by:

of………………………….agent for

 of…………………………. Advocate for the said Plaintiff whose address is as stated above]

   [or where the Plaintiff sues in person.  This Summons was taken out by the said Plaintiff who resides at………………………………… and (if the Plaintiff does not reside within the Jurisdiction) whose address for services is

   **Note:**  If a Defendant does not attend personally or by his Counsel or Advocate at the time and place above mentioned such order will be made as the Court may think just and expedient.

   **Note:**  A defendant served with this summons and a supporting Affidavit may within 7 days after service of this summons on him, counting the day of service, lodge with the Court an Affidavit in Opposition Origin Answer, in accordance with the Rules of the Court.

REPUBLIC OF ZAMBIA
EX PARTE ORIGINATING SUMMONS            H.C. ARB 3
(General Title)

LET ALL PARTIES CONCERNED attend before the learned Deputy/District Registrar [or Judge] in Chambers at the High Court…………………. On the …………………………………………. Day of …………….2…………. at …………… hours on the hearing of an application by AB that

Dated the………………… Day of……………………….. 2……………..

This summons was taken out by:
Of...........................................
[agent for ........................... of ...................................................]

Advocate for the Plaintiff/Defendant.

REPUBLIC OF ZAMBIA

H.C. ARB 4
CERTIFICATE OF URGENCY
(General Title)

I,............................. The Advocate having the care and conduct of this matter on behalf of the Plaintiff/Defendant [or where the party sues in person.................... the plaintiff/Defendant in this Act in this action].   DO HEREBY CERITFY that the application for [Interlocutory Injunction/executory assistance/interim measure of protection (1)] filed herewith is of utmost urgency and calls for immediate determination, on the grounds that:

Dated the .......................... day of ....................,2...........


Signed:


Advocate for the Plaintiff/Defendant

(1) Describe nature of relief application.

REPUBLIC OF ZAMBIA

SUMMONS
H. C. ARB 5
(General Title)

LET ALL PARTIES CONCERNED attend before the Learned Deputy/District Registrar [or Judge] in Chambers at.............................. on the ...................... day of ...........................
2................. at ................hours on the hearing of an application on the part of.............................
For an Order that

Dated at......................... this................ day of....................,2................

This  summons  was  taken  out  by:..............................of.........................Advocates  for  the

|    |                                                        |     |                      |
|----|--------------------------------------------------------|-----|----------------------|
|    | the proceedings                                        | 56  | The     Search form  |
| 13 | On filing a Notice of Registration of an Award         | 84  | The filed copy       |
| 14 | On filing a Certificate of Urgency                     | 45  | The filed copy       |
| 15 | Any filing of Notice not specifically provided for     | 45  | The filed copy       |
| 16 | On filing a Notice of Appeal to Judge in Chambers      | 168 | The filed copy       |

# EXHIBIT 11

The Laws of Zambia

REPUBLIC OF ZAMBIA

**THE HIGH COURT ACT**

**CHAPTER 27 OF THE LAWS OF ZAMBIA**

**CHAPTER 27 THE HIGH COURT ACT**

THE HIGH COURT ACT

ARRANGEMENT OF SECTIONS

PART I PRELIMINARYPART I

PRELIMINARY

*Section*

1.      Short title
2.      Interpretation


PART II CONSTITUTION OF THE COURTPART II

CONSTITUTION OF THE COURT

3.      Establishment of Court
4.      Powers and jurisdiction of Judges
5.      Trial with assessors


PART III OFFICERS OF THE COURTPART III

OFFICERS OF THE COURT

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

6. Registrars
7. Powers, etc., of Registrar and other officers of the Court
8. Directions by the Chief Justice as to duties and functions

## PART IV JURISDICTION AND LAWPART IV
### JURISDICTION AND LAW

9. Jurisdiction
10. Practice and procedure
11. Probate and divorce jurisdiction
12. Rules as to application of English statutes
13. Law and equity to be concurrently administered
14. Execution of instruments by order of the Court
15. Form of writs, etc.
16. Restriction of vexatious actions
17. Appeals in civil matters
17A. Completion of proceedings

## PART V SITTINGS AND DISTRIBUTION OF BUSINESSPART V
### SITTINGS AND DISTRIBUTION OF BUSINESS

*Section*
18. Place of sitting
19. Sessions
20. Special provisions as to Lusaka, and all Courts with Resident Judges and District Registrars
21. Adjournment of Court, etc., in absence of Judge

## PART VI POWERS OF TRANSFERPART VI
### POWERS OF TRANSFER

22. Transfer in criminal cases
23. Transfer between Judges, etc.
24. Transfer to local courts
25. Manner of transfer
26. Effect of order of transfer

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

## PART VII EVIDENCEPART VII
### EVIDENCE

27.   Summoning and compelling attendance of witnesses

28.   Refusal to be sworn or to give evidence

29.   Evidence of bystander

30.   Evidence of prisoners

31.   Allowances to witnesses

32.   Commissioners of the Court

33.   Inspection

34.   Evidence of African customary law and assessors thereof

35.   Record of evidence, etc.

36.   Oaths, etc.

37.   Recording of proceedings

38.   Perjury

## PART VIII DISTRICT REGISTRIESPART VIII
### DISTRICT REGISTRIES

*Section*

39.   Establishment of district registries and appointment of District Registrars

40.   Seals of district registries

41.   Powers of District Registrars

42.   Removal of proceedings

## PART IX MISCELLANEOUSPART IX
### MISCELLANEOUS

43.   Fees

44.   Rules of court

45.   High Court Rules Committee

46.   Repeal and savings

47.   Validation of certain rules of court

**CHAPTER 27**

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

HIGH COURT

**An Act to amend the law with respect to the jurisdiction and business of the High Court, and with respect to the officers and offices of the High Court, and otherwise with respect to the administration of justice and the validation of certain acts.**

[7*th November*, 1960]

41 *of* 1960
43 *of* 1961
70 *of* 1963
25 *of* 1964
20 *of* 1966
30 *of* 1967
24 *of* 1968
38 *of* 1969
3 *of* 1972
13 *of* 1994
*Government Notices*
303 *of* 1964
497 *of* 1964
*Statutory Instrument*
63 *of* 1964

PART I PRELIMINARYPART I

PRELIMINARY

**1.**   This Act may be cited as the High Court Act.

Short title

**2.**  (1)  In this Act, unless the context otherwise requires-

Interpretation

"action" means a civil proceeding commenced by writ or in such other manner as may be prescribed by rules of court, but does not include a criminal proceeding by the People;

"cause" includes any action, suit or other original proceeding between a plaintiff and a defendant and any criminal proceeding;

"Clerk of Sessions" means an officer of the Court appointed as a Clerk of Sessions under the provisions of subsection (3) of section *nineteen*;

"committed for trial" includes every case of a person ordered to be tried on information before the Court, whether imprisoned or admitted to bail;

"Court" means the High Court;

"defendant" includes every person, other than a plaintiff, served with any writ of summons or process, or served with notice of, or entitled to attend, any proceedings in a civil cause, and also every person charged under any process of the Court with any crime or offence;

"district registry" means a district registry established under the provisions of section *thirty-nine*;

"Judge" includes the Chief Justice and any Puisne Judge of the Court;

"judgment" includes a decree;

"matter" includes every proceeding in the Court not in a cause;

"plaintiff" includes every person asking any relief (otherwise than by way of counter-claim as a defendant) against any other person by any form of proceeding, whether writ, petition or otherwise;

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

"practitioner" has the meaning assigned to it in section *two* of the Legal Practitioners Act;                                                                      Cap. 30

"principal registry" means the office of the Registrar at Lusaka;                Cap. 30

"qualified person" has the meaning assigned to it in section *eleven* of the Legal Practitioners Act;

"Session" means a sitting of the Court at a time and place appointed under the provisions of section *nineteen* for the purpose of transacting any of the business set forth in the said section;

"Sessions Town" means Lusaka, Ndola, and any place appointed under the provisions of paragraph (*b*) of subsection (1) of section *nineteen*;

"suit" includes action.

(2)  Any reference in this Act to any officer of the Court by title shall, unless the context otherwise requires, mean the person appointed to the office concerned under the provisions of this Act, and shall include any person lawfully performing the functions of such office and, to the extent that any person is empowered to exercise part only of such functions, such person.

(*As amended by S.I. No.* 63 *of* 1964)

## PART II CONSTITUTION OF THE COURTPART II

### CONSTITUTION OF THE COURT

**3.** (1)  The High Court, as constituted by the Constitution, shall be the High Court of Judicature for Zambia.                                                      Establishment of Court
Cap. 1

(2)  The Court shall be deemed to be duly constituted during, and notwithstanding, any vacancy in the office of the Chief Justice or of any Puisne Judge.

(*As amended by S.I. No.* 63 *of* 1964)

**4.**  Subject to any express statutory provision to the contrary, all the Judges shall have and may exercise, in all respects, equal power, authority and jurisdiction, and, subject as aforesaid, any Judge may exercise all or any part of the jurisdiction by this Act or otherwise vested in the Court, and, for such purpose, shall be and form a Court.        Powers and jurisdiction of Judges

**5.**  The trial of any civil cause or matter may, if the presiding Judge so decides, be held with the aid of assessors, the number of whom shall be two or more as to such Judge seems fit.                                                                         Trial with assessors

(2)  Where a trial is held with the aid of assessors under this section, all the provisions of the Criminal Procedure Code relating to assessors shall, so far as the same are applicable and subject to any rules of court, apply to such trial.            Cap. 88

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

284 of 546

None

The Laws of Zambia

## PART III OFFICERS OF THE COURTPART III

### OFFICERS OF THE COURT

**6.** (1) There shall be a Registrar of the High Court and one or more Deputy Registrars, who shall be appointed by the Judicial Service Commission.

(2) The Public Service Commission may appoint Assistant Registrars, Deputy Assistant Registrars and other officers of the Court.

(3) No person shall be appointed to be or to act as Registrar or Deputy Registrar unless he is a qualified person.

*(As amended by G.N. No.* 303 *of* 1964)

*Registrars*

**7.** (1) The Registrar and Deputy Registrars shall, subject to any rules of court, have the same jurisdiction, powers and duties as a Master of the Supreme Court of Judicature, and a Registrar of the High Court, in England, and, in addition, shall have such further jurisdiction, powers and duties as the Chief Justice may by rule prescribe.

(2) Officers of the Court other than the Registrar, Deputy Registrars and District Registrars shall have such jurisdiction and powers as the Chief Justice may by rule prescribe.

(3) Rules made under the provisions of this section may make provision for and concerning appeals from decisions of the Registrar, Deputy Registrars and other officers of the Court.

(4) Subject to the general or special directions of the Chief Justice or to the directions of the Court in any particular cause or matter, the manner in which the Deputy Registrars and other officers of the Court carry out the duties imposed upon them by this or any other written law or otherwise shall be under the control and superintendence of the Registrar.

*Powers, etc., of Registrar and other officers of the Court*

**8.** The Chief Justice may give such directions as he thinks fit as to the duties to be carried out by, and for the apportionment of functions among, the officers of the Court, and, without prejudice to the generality of the power hereby conferred, such directions may specify, either by name or office, the officers of the Court who shall be responsible for the issue of summonses, warrants and writs of execution, for the registration of orders and judgments, for the taxing of bills of costs, for the keeping of the records of the proceedings of the Court, and for the custody of and other matters relating to fines, fees and other moneys paid into or out of the Court.

*Directions by the Chief Justice as to duties and functions*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

PART IV JURISDICTION AND LAWPART IV

JURISDICTION AND LAW

**9.** (1)  The Court shall be a Superior Court of Record, and, in addition to any other jurisdiction conferred by the Constitution and by this or any other written law, shall, within the limits and subject as in this Act mentioned, possess and exercise all the jurisdiction, powers and authorities vested in the High Court of Justice in England.

Jurisdiction.
Cap. 1

(2)  The jurisdiction vested in the Court shall include the judicial hearing and determination of matters in difference, the administration or control of property or persons, and the power to appoint or control guardians of infants and their estates, and also keepers of the persons and estates of idiots, lunatics and such as, being of unsound mind, are unable to govern themselves and their estates.

*(As amended by S.I. No. 63 of 1964)*

**10.**  The jurisdiction vested in the Court shall, as regards practice and procedure, be exercised in the manner provided by this Act and the Criminal Procedure Code, or by any other written law, or by such rules, order or directions of the Court as may be made under this Act, or the said Code, or such written law, and in default thereof in substantial conformity with the law and practice for the time being observed in England in the High Court of Justice.

Practice and procedure
Cap. 88

*(As amended by No 25 of 1964)*

**11.** (1)  The jurisdiction of the Court in divorce and matrimonial causes and matters shall, subject to this Act and any rules of court, be exercised in substantial conformity with the law and practice for the time being in force in England.

Probate and divorce jurisdiction

(2)  The law and practice for the time being in force for the Probate, Divorce and Admiralty Divisions of the High Court of Justice in England with respect to the Queen's Proctor shall, subject to rules of court and to any rules made under the provisions of the Colonial and Other Territories (Divorce Jurisdiction) Acts, 1926 to 1950, of the United Kingdom, apply to the Attorney-General.

(3)  The jurisdiction of the Court in probate causes and matters shall, subject to this Act and any rules of court, be exercised in substantial conformity with the law and practice in force in England on the 17th August, 1911 (being the commencement of the Northern Rhodesia Order in Council, 1911).

(4)  No probate of a will or letters of administration granted prior to the commencement of this Act to any person shall be invalid by reason only that the right to the grant was determined in accordance with any law in force in England after the 17th August, 1911.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(5)  No suit or other legal proceedings shall be instituted against any person by reason only that the deceased person's estate was administered in accordance with the law in force in England after the 17th August, 1911.

*(As amended by No.* 70 *of* 1963)

**12.** (1)  All statutes of the Parliament of the United Kingdom applied to Zambia shall be in force so far only as the limits of the local jurisdiction and local circumstances permit.

Rules as to application of English statutes

(2)  For the purpose of facilitating the application of the statutes referred to in subsection (1), it shall be lawful for the Court to construe the same with such verbal alterations, not affecting the substance, as may be necessary to make the same applicable to the proceedings before the Court.

(3)  Every Judge or officer of the Court having or exercising functions of the like kind or analogous to the functions of any Judge or officer referred to in any statute mentioned in subsection (1), shall be deemed to be within the meaning of the provisions thereof relating to such last-mentioned Judge or officer, and whenever the Great Seal or any other seal of a court is mentioned in any such statute it shall be read as if the seal of the Court or of a district registry, as the case may be, were substituted therefor.

**13.**   In every civil cause or matter which shall come in dependence in the Court, law and equity shall be administered concurrently, and the Court, in the exercise of the jurisdiction vested in it, shall have the power to grant, and shall grant, either absolutely or on such reasonable terms and conditions as shall seem just, all such remedies or reliefs whatsoever, interlocutory or final, to which any of the parties thereto may appear to be entitled in respect of any and every legal or equitable claim or defence properly brought forward by them respectively or which shall appear in such cause or matter, so that, as far as possible, all matters in controversy between the said parties may be completely and finally determined, and all multiplicity of legal proceedings concerning any of such matters avoided; and in all matters in which there is any conflict or variance between the rules of equity and the rules of the common law with reference to the same matter, the rules of equity shall prevail.

Law and equity to be concurrently administered

**14.**   Where any person neglects or refuses to comply with a judgment or order directing him to execute any conveyance, contract or other document, or to endorse any negotiable instrument, the Court may, on such terms and conditions, if any, as may be just, order that the conveyance, contract or other document shall be executed or that the negotiable instrument shall be endorsed by such person as the Court may nominate for that purpose, and a conveyance, contract, document or instrument so executed or endorsed shall operate and be for all purposes available as if it had been executed or endorsed by the person originally directed to execute or endorse it.

Execution of instruments by order of the Court

**15.**   All writs, precepts and mandatory process to be used, issued or awarded by the Court shall run and be in the name of the President, and shall be sealed with the seal of the Court.

Form of writs, etc.

*(As amended by S.I. No.* 63 *of* 1964)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**16.** (1) If, on application made by the Attorney-General under this section, the Court is satisfied that any person has habitually and persistently and without any reasonable ground instituted vexations legal proceedings, whether in the Court or in any subordinate court, and whether against the same person or against different persons, the Court may, after hearing such person or giving him an opportunity of being heard, order that no legal proceedings shall, without leave of the Court or a Judge, be instituted by him in any court, and that any legal proceedings instituted by him in any court before the making of such order shall not be continued by him without such leave, and such leave shall not be given unless the Court or a Judge is satisfied that the proceedings are not an abuse of the process of the Court and that there is *prima facie* ground for such proceedings.

*Restriction of vexatious actions*

(2) A copy of any order made under the provisions of this section shall be published in the *Gazette*.

*(As amended by No.* 30 *of* 1967)

**17.** (1) Civil appeals from subordinate courts shall be heard by one Judge except where in any particular case the Chief Justice shall direct that the appeal shall be heard by two Judges.

*Appeals in civil matters*

(2) Where an appeal is heard by a bench of two Judges under the provisions of this section and they are divided in opinion, the appeal shall be dismissed.

**17A.** (1) Where the presiding Judge is, on account of illness, death, relinquishment or cesser of jurisdiction or any other similar cause, unable to deliver a judgment already prepared by him, then the Chief Justice may direct that another Judge of the High Court shall deliver in open court the judgment prepared by the presiding Judge and shall, thereafter, complete the proceedings of the case as if he had himself heard and determined the case:

*Completion of proceedings*

Provided that the judgment shall be dated and signed by the Judge at the time of delivering it.

(2) In any case where a Judge has been appointed (whether before or after the *(1)commencement of Act No. 3 of 1972) to be or to act as the Supreme Court Judge, he shall complete any proceedings already commenced before him, and for this purpose he shall be deemed to retain the position and powers which he held immediately before his being so appointed.

* 30th March, 1972.

*(No.* 3 *of* 1972)

PART V SITTINGS AND DISTRIBUTION OF BUSINESSPART V

SITTINGS AND DISTRIBUTION OF BUSINESS

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**18.**   The sittings of the Court shall usually be held in such buildings within Zambia as the Chief Justice may assign as Court Houses for that purpose, but in case the Court shall sit in any other building or place within the limits of jurisdiction for the transaction of legal business, the proceedings shall be as valid, in every respect, as if the same had been held in any such Court House.

*Place of sitting*

(*As amended by G.N. No.* 303 *of* 1964)

**19.** (1)  The Chief Justice may by statutory order under his hand appoint-

*Sessions*

    (*a*)   the times at which Sessions shall normally be held in Lusaka, Ndola, Kitwe, Livingstone Mansa, Solwezi, Kabwe, Mongu, Kasama and Chipata for the trial of persons committed for trial before the Court by subordinate courts within such Provinces or Districts as may be so appointed; and

    (*b*)   the places, other than Lusaka, Ndola, Kitwe, Livingstone, Kabwe, Mongu, Kasama, Chipata, Mansa and Solwezi and the times at which Sessions shall normally be held for the trial of persons committed for trial before the Court by subordinate courts within such Provinces or Districts as may be so appointed, and for the trial of civil cases and the disposal of all other legal business pending within such Provinces or Districts.

(2)  A Judge may, whenever the business of the Court shall so require, by order under his hand appoint-

    (*a*)   the time at which a special Session shall be held at any Sessions Town for the purpose of dealing with any of the matters mentioned in subsection (1); or

    (*b*)   the place, other than a Sessions Town, and the time at which a special Session shall be held for such purposes as such Judge shall specify.

(3)  The Chief Justice may appoint an officer of the Court to be the Clerk of Sessions in respect of any particular Session, or in respect of any group or series of Sessions or in respect of any Sessions held by a particular Judge.

**20.** (1)  Subject to any rules of court relating to sittings and vacations, the Court shall be open throughout the year in Lusaka, all Courts with Resident Judges and in district registries, except on Sundays and public holidays, for the transaction of general legal business pending therein other than trial on information of criminal cases, and the Court may at any time hear and determine any causes or matters pending in the Court, other than such criminal cases, upon notice to the parties and otherwise as shall be determined by rules of court or as shall seem just and reasonable.

*Special provisions as to Lusaka, and all Courts with Resident Judges and District Registrars*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)   Whenever it appears to the Chief Justice that it is expedient that any criminal matter arising out of proceedings in any subordinate court in any Province or District other than those appointed under the provisions of paragraph (a) of subsection (1) of section *nineteen* should be heard and determined at Lusaka or any other Court with a Resident Judge the Chief Justice may direct that such matter shall be so heard and determined:

Provided that, in the case of a criminal appeal, whether by way of case stated or otherwise, the appellant shall, except where the Chief Justice has directed that such appeal shall be heard by two Judges, be entitled, by written notice to the Court, to require that such appeal shall be heard and determined at the next Session to be held in respect of the Province or District concerned.

**21.**   In case the Judge before whom any cause or matter is to be heard or by whom any Session is to be held for any reason is unable or fails to attend on the day appointed, and no other Judge attends in his stead, the Court or Session shall stand adjourned from day to day until a Judge shall attend or until the Court or Session shall be adjourned or closed by order under the hand of a Judge or an officer of the Court or of a magistrate.

*Adjournment of Court, etc., in absence of Judge*

## PART VI POWERS OF TRANSFERPART VI

### POWERS OF TRANSFER

**22.**   The provisions of this Part as to the transfer of causes and matters shall apply to criminal causes only so far as the same are not inconsistent with the provisions of the Criminal Procedure Code relating to the transfer of such causes.

*Transfer in criminal cases*
*Cap. 88*

**23.**   (1)   Any cause or matter may, at any time or at any stage thereof, and either with or without the application of any of the parties thereto, be transferred from one Judge to another Judge by an order of the Judge before whom the cause or matter has come or been set down:

*Transfer between Judges, etc.*

Provided that no such transfer shall be made without the consent of the Judge to whom it is proposed to transfer such cause or matter.

(2)   Any cause or matter may, at any time or at any stage thereof, and either with or without the application of any of the parties thereto, be transferred by the Court or a Judge from any subordinate court to any other subordinate court or to the Court, or from the Court to any subordinate court, or from any Session or sitting of the Court to any other Session or sitting.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

(3) A transfer to a subordinate court under the provisions of subsection (2) shall take effect notwithstanding the provisions of section *four* of the Subordinate Courts Act, and for the purpose of any such transfer the subordinate court concerned shall be deemed to have jurisdiction throughout Zambia, but no such transfer shall be deemed to enlarge the limits set upon the civil jurisdiction of subordinate courts by the provisions of Part III of the said Act or to confer any jurisdiction in excess thereof. Cap. 28

(4) Where any transfer has been made under the provisions of subsection (2), any person affected by such transfer may make application to the Court or to the Judge, as the case may be, making such transfer for an order setting aside such transfer or for an order transferring the cause or matter to the subordinate court of some District other than that to which it was first transferred, or to the Court, and the Court or the Judge shall, on such application, make such order as, in the circumstances, may be just and reasonable.

(*As amended by No*. 25 *of* 1964)

Transfer to local courts
Cap. 29

**24.** (1) Any cause or matter may, at any time or at any stage thereof, and either with or without the application of any of the parties thereto, be transferred by the Court or a Judge from the Court to any local court recognised under the provisions of the Local Courts Act having jurisdiction over such cause or matter.

(2) Before making any order under the provisions of subsection (1), the Court or the Judge shall satisfy himself that the making of such order will not be contrary to the interests of justice or cause undue inconvenience to the parties, and shall record his reasons for ordering such transfer, and the fact of such transfer shall be recorded in the appropriate Court register.

(*As amended by No*. 25 *of* 1964)

Manner of transfer

**25.** The powers of transfer conferred by this Part shall be exercised by means of an order under the hand of a Judge or the Registrar and the seal of the Court, and any such order may apply to any particular cause or matter in dependence or generally to all such causes or matters as may be described in such order, and, in the latter case, may extend to future causes or matters as well as to such as may, at the time of the making of such order, be in dependence:

Provided that such power of transfer in any particular cause or matter may, in any case of urgency, be exercised by means of a telegraphic communication from the Judge or the Registrar concerned followed by a subsequent order as required by this section, and any such telegraphic communication shall have effect as if it were an order under the hand of a Judge or the Registrar and the seal of the Court.

(*As amended by No*. 25 *of* 1964)

Effect of order of transfer

**26.** Every order of transfer made under this Part shall operate as a stay of proceedings before the court or Judge from which or from whom the proceedings are to be transferred in any cause or matter to which such order is applicable, and the process and proceedings in every such cause or matter, and an attested copy of all entries in the books of the court from which transfer is made shall, where necessary, be transmitted to the court or Judge to which or to whom the same shall be transferred, and such cause or matter shall be continued, heard and determined by such court or Judge.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

## PART VII EVIDENCEPART VII

### EVIDENCE

27.  (1)  In any suit or matter, and at any stage thereof, the Court, either of its own motion or on the application of any party, may summon any person within the jurisdiction to give evidence, or to produce any document in his possession or power, and may examine such person as a witness and require him to produce any document in his possession or power, subject to just exceptions.

(2)  If any person summoned as in subsection (1) provided, having reasonable notice of the time and place at which he is required to attend and after tender of his reasonable travelling expenses to and from the Court, fails to attend accordingly and does not excuse his failure to the satisfaction of the Court, he shall, independently of any other liability, be guilty of a contempt of court, and may be punished therefor, and may be proceeded against by warrant to compel his attendance.

(3)  Nothing in this section contained shall be construed so as to make it lawful in any criminal proceeding for any person to refuse or fail to attend as a witness or to give evidence on the ground that his expenses have not first been paid or provided for.

*Summoning and compelling attendance of witnesses*

28.    If, in any suit or matter, any person, whether appearing in obedience to a summons or brought up under warrant, being required to give evidence, refuses to take an oath or make an affirmation in lieu thereof, or to answer any question lawfully put to him, or to produce any document in his possession or power, and does not excuse his refusal to the satisfaction of the Court, he shall independently of any other liability, be guilty of a contempt of court, and the Court may, by warrant, commit him to prison, there to remain until he consents to take the oath or make an affirmation, or to answer duly, or to produce any such document, as the case may be.

*Refusal to be sworn or to give evidence*

29.    Any person present in court, whether a party or not in a cause or matter, may be compelled by the Court to give evidence or to produce any document in his possession or power, in the same manner and subject to the same rules as if he had been duly summoned to attend and give evidence or to produce such document, and may be dealt with under the provisions of section *twenty-eight* for any refusal to obey the order of the Court.

*Evidence of bystander*

30.    A Judge may issue a warrant under his hand to bring up any person confined as a prisoner under any sentence or otherwise, to be examined as a witness in any cause or matter depending in the Court, and the gaoler or person in whose charge such prisoner may be shall obey such warrant by bringing up such prisoner in custody and delivering him to an officer of the Court:

*Evidence of prisoners*

Provided that this section shall not apply in any case to which section *sixty-four* of the Prisons Act applies.

*Cap. 97*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

292 of 546

The Laws of Zambia

**31.** (1)  It shall be lawful for the Court, in civil as well as criminal proceedings, to order and to allow to all persons required to attend or be examined as witnesses such sum of money as the Chief Justice may, by rule made with the concurrence of the Minister responsible for finance, prescribe, as well for defraying the reasonable expenses of such persons as for allowing them a reasonable compensation for their trouble and loss of time.

<div style="text-align: right">Allowances to witnesses</div>

(2)  All sums of money allowed under the provisions of this section shall be payable, in civil proceedings, by the party on whose behalf the witness is called, and shall be recoverable as ordinary costs of suit unless the Court shall otherwise order, and in criminal proceedings they shall, where not ordered to be paid by the person convicted or the prosecutor, be paid out of the general revenues of the Republic.

**32.** (1)  A Judge may, in respect of any proceedings in the Court, appoint any person or persons to be a Commissioner or Commissioners for taking affidavits and declarations and receiving production of documents, or for taking and receiving the evidence of witnesses on interrogatories or otherwise.

<div style="text-align: right">Commissioners of the Court</div>

(2)  Any order of the Court or of a Judge for the attendance and examination of witnesses or the production of documents before any Commissioner appointed under the provisions of this section and within the jurisdiction of the Court shall be enforced in the same manner as an order to attend and be examined or produce documents before the Court.

**33.**  In any cause or matter, the Court may make such order for inspection by the Court, the parties or witnesses of any real or personal property the inspection of which may be material to the determination of the matter in dispute, and may give such directions with regard to such inspection as to the Court may seem fit.

<div style="text-align: right">Inspection</div>

**34.** (1)  The Court may, in any cause or matter in which questions of African customary law may be material to the issue-

<div style="text-align: right">Evidence of African customary law and assessors thereof</div>

    (*a*)    call as witnesses thereto chiefs or other persons whom the Court considers to have special knowledge of African customary law;

    (*b*)    call any such chiefs or persons to its assistance as assessors of African customary law;

    (*c*)    consult, if it shall think fit and, to such extent as to it seems proper, give effect to any book or publication which the Court shall consider to be an authority on African customary law.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)  It shall be the duty of assessors called under the provisions of subsection (1) to advise the Court on all matters of African customary law which may arise in the cause or matter concerned, and to tender their opinions to the Court on such cause or matter generally, but in reaching its decision the Court shall not be bound to conform to such opinions.

(3)  Assessors called under the provisions of subsection (1) shall be paid such fees and allowances as the Chief Justice may, by rule made with the concurrence of the Minister responsible for finance, determine, and such fees and allowances shall be paid out of the general revenues of the Republic unless the Court, in any particular civil cause or matter, orders that they shall be costs in the proceedings concerned.

**35.**  (1)  Save as hereinafter in this section provided, no person shall be entitled as of right at any time or for any purpose to inspection or a copy of a record of evidence given in any case before the Court, or to a copy of the notes of the Court, save as may be expressly provided by rules of court.

Record of evidence, etc.

(2)  Any party to any cause or matter before the Court shall, on payment of such fee as may be prescribed by rules of court, be entitled to a copy of the record of evidence given in such cause or matter.

(3)  The Director of Public Prosecutions shall, without payment of fee, be entitled to the record of evidence given in any criminal proceedings before the Court.

(*As amended by S.I. No.* 63 *of* 1964)

**36.**  (1)  Whenever an oath is required to be taken under the provisions of this or any other law, or in order to comply with any such law, the following provisions shall apply:

Oaths, etc.

(*a*)  The person taking the oath shall hold, if a Christian, a copy of the Gospels of the Four Evangelists or of the New Testament, or, if a Jew, a copy of the Old Testament, in his uplifted right hand, or, if he be physically incapable of so doing, he may hold such copy otherwise, or, if necessary such copy may be held before him by the officer administering the oath, and shall say or repeat after such officer the words "I swear by Almighty God that . . ." followed by the words of the oath prescribed by law or by the practice of the court, as the case may be:

Provided that if any person desires to take the oath in the form and manner in which an oath is usually administered in Scotland, he shall be permitted to do so.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*b*)   If the person taking the oath is neither a Christian nor a Jew, he may take the oath in any manner which he declares to be, or accepts as, binding on his conscience or which is lawful according to any law, and in particular he may do so by raising his right hand and saying or repeating after the officer administering the oath the words "I swear by Almighty God that . . ." followed by the words of the oath prescribed by law or by the practice of the court, as the case may be:

Provided that if the person taking the oath is physically incapable of raising his right hand, he may say or repeat the words of the oath without raising his right hand.

(*c*)   If any person shall express any objection to taking an oath or desires to make an affirmation in lieu thereof, he may make such affirmation without being further questioned as to the grounds of such objection or desire, or otherwise, and in such case there shall be substituted for the words "I swear by Almighty God" aforesaid the words "I do solemnly and sincerely affirm" and such consequential variations of form as may be necessary shall thereupon be made.

(2)   Notwithstanding any other provision contained in this section, any person may be required to make an affirmation in the form specified in paragraph (*c*) of subsection (1) if it is not reasonably practicable to administer an oath to him in the manner appropriate to his religious belief, and for the purposes of this subsection "reasonably practicable" means reasonably practicable without inconvenience or delay.

(3)   Where any oath has been duly administered and taken, the fact that the person to whom such oath was administered had, at the time of taking such oath, no religious belief, or had a religious belief other than that to which the oath taken normally applies, shall not for any purpose affect the validity of such oath.

(4)   For the purposes of this section, "officer" means any person duly authorised by law to administer oaths, and shall include any Assistant Registrar, Deputy Assistant Registrar and official interpreter administering an oath in the presence of a Judge or the Registrar or other person authorised by any law to administer oaths.

(*As amended by No.* 43 *of* 1961)

**37.**   The proceedings in any cause or matter before the Court shall be taken down and recorded in such manner as may be prescribed by rules of court.

Recording o proceedings

(*As amended by No.* 43 *of* 1961)

**38.** (1)   The Court, if it appears to it that a person has been guilty of perjury in any proceeding before it, may, after calling upon such person to show cause why he should not be punished as for a contempt of court, commit him to prison for any term not exceeding six months, with or without hard labour, or fine him any sum not exceeding one hundred penalty units, or impose both such penalties upon him, in each such case as for a contempt of court.

Perjury

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)   Any penalty imposed under this section shall be a bar to any other criminal proceedings in respect of the same offence.

(*As amended by Act No. 13 of* 1994)


## PART VIII DISTRICT REGISTRIESPART VIII

### DISTRICT REGISTRIES


**39.** (1)  The Chief Justice may, by statutory notice, establish in such places as are specified in such notice, district registries for the Provinces or Districts set out in such notice, from which such writs of summons for the commencement of actions in the Court may be issued, and wherein such other proceedings may be taken, as may be prescribed by rules of court.

Establishment of district registries and appointment of District Registrars

(2)   The Chief Justice may, at any time by statutory notice, vary or revoke any notice issued under the provisions of subsection (1).

(3)  The Chief Justice may appoint any qualified person to be the District Registrar of any district registry.

(4)  Every District Registrar shall be an officer of the Court.

**40.** (1)  In every district registry there shall be used such seal as the Chief Justice may direct.

Seals of district registries

(2)   The seal of the district registry shall be impressed upon every document required by this Act or by rules made thereunder or by any other written law to be so sealed, and all such documents and all exemplifications and copies thereof, purporting to be sealed with the seal of a district registry, shall be received in evidence within Zambia without further proof.

(3)  For the purposes of this section, "seal" means any device capable of making an imprint, whether embossed or otherwise, on paper.

(*As amended by No. 25 of* 1964)

**41.**   District Registrars shall have power to administer oaths and shall perform such of the functions of the Registrar with respect to any proceedings in the Court as the Chief Justice may by rule prescribe or as may be directed by any special order of the Court.

Powers of District Registrars

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**42.** (1)  Any party to any proceedings commenced in a district registry may, at any time, apply to the Court or a Judge to remove such proceedings from such district registry to the principal registry or to another district registry, and the Court or Judge may thereupon, if the Court or Judge thinks fit, order that the proceedings be transferred accordingly, and the proceedings and such original documents, if any, as have been filed therein shall, upon receipt of such order, be transmitted by the District Registrar concerned to the principal registry or to such other district registry, and the proceedings shall thenceforth continue in the same manner as if they had been originally commenced in the principal registry or such other district registry, as the case may be.

*Removal of proceedings*

(2)  The Court or a Judge may order the removal of any proceedings from the principal registry to a district registry, and, in such case, the provisions of subsection (1) shall, *mutatis mutandis*, apply.


PART IX MISCELLANEOUSPART IX

MISCELLANEOUS


**43.**      The Chief Justice may, by statutory instrument, make rules regulating all matters connected with the deposits and fees to be payable in respect of any step taken or thing done in any cause or matter before the Court, including the amount (whether fixed or according to a scale or according to a percentage) of such fees, and the method (whether in money, by revenue stamp or otherwise) and the time of payment of such fees.

*Fees*

*(2)***44.** (1)  Rules of court may be made, by statutory instrument, under this Act for the following purposes:

*Rules of court*

*See section 8 of the Evidence Act (Cap. 43).

(*a*)   for regulating and prescribing the procedure (including the method of pleading) and the practice to be followed in the Court in all causes and matters whatsoever, including matrimonial causes and matters, in or with respect to which the Court has for the time being jurisdiction (including the procedure and practice to be followed in the principal registry and in district registries), and any matters incidental to or relating to any such procedure or practice, including (but without prejudice to the generality of the foregoing provision) the manner in which and the time within which, any applications which under the provisions of this or any other written law are to be made to the Court are to be made;

(*b*)   for regulating and prescribing the procedure on appeals, other than criminal appeals, from any court or person to the Court, and the procedure in connection with the transfer of proceedings under this Act;

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*c*)  for regulating the sittings of the Court and of Judges whether sitting in Court or in chambers, and for regulating and prescribing the vacations to be observed by the Court and the offices and registries thereof, and for providing for the hearing during the vacations of all such applications and such other matters as may require to be immediately or promptly heard;

(*d*)  for prescribing what part of the business which may be transacted and of the jurisdiction which may be exercised by a Judge in chambers may be transacted or exercised by the Registrar and other officers of the Court;

(*e*)  for prescribing the forms to be used in connection with any cause or matter before the Court;

(*f*)  for regulating the expenses of parties and witnesses, their amount, and the method and time of payment thereof;

(*g*)  for regulating the means by which particular facts may be proved, and the mode in which evidence thereof may be given, in any proceedings or on any application in connection with or at any stage of any procedings;

(*h*)  for regulating and prescribing the procedure and practice to be followed in any proceedings in the Court under the provisions of the Lands Acquisition Act;    *Cap. 189*

(*i*)  for regulating or prescribing any other matter which is to be regulated or prescribed by rules of court under any of the provisions of this Act.

(2)  Where any written law provides for the making of rules of court and the power to make such rules-

(*a*)  is expressly conferred upon the High Court; or

(*b*)  is not expressly conferred upon any specified authority or person;

such rules shall be made in the same manner as rules of court under this Act.

(*As amended by S.I. No.* 63 *of* 1964 *and No.* 24 *of* 1968)

**45.**  (1)  Rules of court made under this Act shall be made by a committee, to be known as the High Court Rules Committee and hereinafter referred to as the Committee, which shall consist of-    *High Court Rules Committee* *Cap. 31*

The Chief Justice.

Two Puisne Judges appointed by the Chief Justice.

Two practitioners nominated by the Council established under the provisions of the Law Association of Zambia Act, and appointed by the Chief Justice.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)   A practitioner shall not be nominated, or, if nominated shall not be appointed, to the Committee unless-

(*a*)   he holds a current practising certificate issued under the provisions of the Legal Practitioners Act; and

Cap. 30

(*b*)   his name has been on the roll of practitioners, kept under the provisions of the said Act, for a period of not less than three years.

(3)   A practitioner appointed to the Committee shall continue to be a member thereof for a period of one year from the date of his appointment:

Provided that-

(i)   should no practitioner be nominated in sufficient time to allow his appointment to the Committee to become effective before the expiration of the term of office of his predecessor, the latter shall continue in office until his successor is appointed; and

(ii)   a practitioner shall cease to be a member of the Committee immediately he ceases to hold a valid practising certificate.

(4)   The Chief Justice shall be the chairman of the Committee, shall convene all meetings thereof, and shall have a casting as well as a deliberative vote.

(5)   The quorum for any meeting of the Committee shall be the chairman and two other members.

(6)   Nothing done by the Committee shall be invalid only by reason of any vacancy in the membership thereof or of the absence of any member from Zambia.

(7)   The Committee may transact its business by way of circulation of papers, and in any such case it shall not be necessary to convene a meeting of the Committee, but no business shall be considered to have been completed under this subsection unless and until all members of the Committee for the time being in Zambia have communicated their views thereon to the secretary of the Committee in writing.

(8)   The Chief Justice may appoint the Registrar or any other officer of the Court to be the secretary of the Committee.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**46.**    The High Court Act, Chapter 3 of the 1960 Edition of the Laws, is hereby repealed:

Repeal and savings

Provided that such repeal shall not affect any appointment made under the provisions of the said Act and any such appointment shall be deemed to have been made under the provisions of this Act.

**47.**    Where, prior to the enactment of this Act, any Act given power to the High Court to make rules of court, any rules of court made by the Chief Justice in purported exercise of any such power shall be, and shall be deemed always to have been, as valid as if they had been made by the High Court in exercise of such power.

Validation of certain rules of court

## SUBSIDIARY LEGISLATION

HIGH COURT                                                                    CAP. 27

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

| | |
|---|---|
| RULES MADE UNDER THE HIGH COURT ACT-CHAPTER 3 OF THE 1960 EDITION OF THE LAWS | *Government Notices*<br>193 *of* 1933<br>44 *of* 1936<br>50 *of* 1937 |
| (*Section* 15 *of the Interpretation and General Provisions Act*) | 142 *of* 1943<br>218 *of* 1944 |
| THE HIGH COURT RULES | 165 *of*1950<br>174 *of* 1950<br>311 *of* 1952 |
| Rules by the High Court Rules Committee | 312 *of* 1952<br>252 *of* 1954<br>22 *of* 1958 |

*Government Notices*
193 *of* 1933
44 *of* 1936
50 *of* 1937
142 *of* 1943
218 *of* 1944
165 *of*1950
174 *of* 1950
311 *of* 1952
312 *of* 1952
252 *of* 1954
22 *of* 1958
80 *of*1958
93 *of*1958
98 *of* 1958
113 *of* 1958
171 *of* 1958
235 *of* 1958
275 *of* 1958
106 *of* 1959
275 *of* 1959
136 *of* 1960
309 *of* 1960
311 *of* 1960
76 *of* 1962
179 *of* 1964
206 *of* 1964
207 *of* 1964
497 *of* 1964
Act 57 *of* 1964
*Statutory Instruments*
37 *of* 1964
63 *of* 1964
396 *of* 1967
252 *of* 1968
305 *of* 1968
92 *of* 1980
102 *of* 1980
6 *of* 1984
30 *of* 1984
105 *of* 1986
208 *of* 1986
92 *of* 1988
174 *of* 1990
109 *of* 1994
47 *of* 1995
71 *of* 1997
88 *of* 1997

**1.**   These Rules may be cited as the High Court Rules.   Title

**2.**   In these Rules, unless the context otherwise requires-   Interpretation

"District Registry" means a District Registry directed to be established under section *thirty-nine* of the Act;

"legal practitioner" means a practitioner as defined by the Legal Practitioners Act;   Cap. 30

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

"Principal Registry" means the office of the Registrar at Lusaka;

"Probate Registry" means the branch of the Principal Registry that is set aside for the purpose of the exercise of probate jurisdiction;

"proper officer" means the Registrar or any Deputy Registrar, District Registrar or Assistant Registrar and all Clerks to Judges and any other person especially appointed in that behalf by the Registrar;

"Registrar" means the Registrar of the High Court, and includes a Deputy Registrar and a District Registrar;

"Registry" includes the Principal Registry and a District Registry;

"taxing master" means the Registrar of the High Court, a Deputy Registrar or a District Registrar;

"taxing officer" means a taxing master or an Assistant Registrar empowered by rule made under section *seven* of the Act to tax bills of costs.

(*As amended by Nos.* 106 *and* 275 *of* 1959, *No.* 309 *of* 1960, *No.* 76 *of* 1962 *and Act No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**3.** These Rules are divided into the following Orders:                     Orders

| Order | I. | General Forms of Process, Fees, etc. |
|---|---|---|
| Order | II. | Computation of Time |
| Order | III. | Miscellaneous Provisions |
| Order | IV. | Employment of Barristers and Advocates |
| Order | V. | Evidence |
| Order | VI. | Writs of Summons and Originating Process |
| Order | VII. | Endorsement of Address |
| Order | VIII. | Concurrent Writs |
| Order | IX. | Renewal of Writ |
| Order | X. | Service of Process |
| Order | XI. | Appearance |
| Order | XII. | Default of Appearance |
| Order | XIII. | Leave to Sign Judgment and Defend where Writ Specially Endorsed |
| Order | XIV. | Parties |
| Order | XV. | Particulars of Claim |
| Order | XVI. | Alteration of Parties |
| Order | XVII. | Discontinuance of Suits |
| Order | XVIII. | Amendment |
| Order | XIX. | Orders of Directions |
| Order | XX. | Default of Pleading |
| Order | XXI. | Admissions |
| Order | XXII. | Settlement of Issues |
| Order | XXIII. | Inquiries and Accounts |
| Order | XXIV. | Appearance of Parties |
| Order | XXV. | Arrest of Defendant under Section 10 of Debtors Act |
| Order | XXVI. | Interim Attachment of Property |
| Order | XXVII. | Injunctions, etc. |
| Order | XXVIII. | Equitable Relief, Counter-claim, Set-off |
| Order | XXIX. | Payment into and out of Court and Tender |
| Order | XXX. | Applications and Proceedings in Chambers and in Court |
| Order | XXXI. | Place and Mode of Trial and Setting Down for Trial |
| Order | XXXII. | Recording of Proceedings |
| Order | XXXIII. | Postponement of Hearing |
| Order | XXXIV. | Order of Business |
| Order | XXXV. | Non-attendance of Parties at Hearing |
| Order | XXXVI. | Judgment |
| Order | XXXVII. | Recording of Judgments |
| Order | XXXVIII. | Affiliation and Maintenance of Children Act |
| Order | XXXIX. | Review |
| Order | XL. | Costs |

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

## ORDER I

O. 1

GENERAL FORMS OF PROCESS. FEES, ETC.

**1.** The signature of a Judge or the Registrar, as the case may be, on any writ or process shall not be necessary in addition to sealing, unless signature is particularly prescribed by some law or rule of court.

Sealing of process

(*No.* 106 *of* 1959)

**2.** The forms in the First Schedule, or forms to the like effect, may be used in all matters, causes and proceedings to which they are applicable, with such variations as circumstances may require.

Forms

**3.** In proceedings for which forms are not provided in the First Schedule or prescribed by any Act or rules or orders of court, the Registrar may, subject to the approval of the Court, from time to time, frame the forms required, using as guides those which may have been provided.

Provision for additional forms

**4.** The fees specified in the Second Schedule shall be paid by the party at whose instance they are incurred, and may be afterwards recovered as costs of cause, if the Court or a Judge shall so order. The Court or a Judge may, on account of the poverty of any party, although such party may not have been formally admitted to sue or defend as a pauper, or for other sufficient reasons, dispense, if it or he sees fit, with the payment of any fees.

Fees

**5.** The court fees or any other fees payable under these Rules shall be paid by stamps, cash, postal or bank certified cheque.

Mode of payment of fees

(*As amended by S.I. Nos.* 71 *and* 88 *of* 1997).

**6.** The document on which a fee is to be paid shall be the document indicated in the Third Column of the Second Schedule, Parts 1 to 5. The fees shall be paid before the document is presented at the Registry or District Registry concerned, and unless so paid, the docu-ment shall not be accepted.

Acceptance of document on payment of fees

(*As amended by S.I. No.* 71 *of* 1997)

**7.** The proper officer of the court whose duty it is to receive any document shall ensure that a proper fee is paid on any document before accepting the same.

Duty of officers

(*As amended by S.I. No.* 71 *of* 1997)

The Laws of Zambia

**8.** (1)  When any document not requiring to be paid for is inadvertently paid for or when the fees paid exceed those laid down in the Second Schedule, Parts 1 to 5 inclusive, or the document is not presented to or is not accepted for filing by the Court, the document may at the instance of the party by whom it was so paid for, be cancelled and substituted.

*Refund of fees paid in certain cases*

(2)  The proper officer of the Court may refund the fees paid on any document cancelled under the provisions of sub-rule (1) to the party who paid the fees:

*O. 1. 2*

Provided that-

(i)   the application is made to the proper officer of the Court within thirty days of the date of cancellation of such document; and

(ii)  the application is accompanied by the cancelled document which shall be attached by the proper officer of the Court to the voucher in support of the refund and shall henceforth be the property of the Government.

(*As amended by S.I. No.* 71 *of* 1997)

**9.**   *Revoked by S.I. No.* 71 *of* 1997.

**10.**   *Revoked by S.I. No.* 71 *of* 1997.

**11.**    Except as otherwise provided by these Rules, costs shall be allowed to legal practitioners and taxed in accordance with the scale of costs set forth in the Third Schedule.

*Scale of costs*

(*No.* 165 *of* 1950)

ORDER II

COMPUTATION OF TIME

**1.**    Where, by any section of the Act, or any order or rule of court, or any special order, or the course of the Court, any limited time from or after any date or event is appointed or allowed for the doing of any act or the taking of any proceeding, and such time is not limited by hours, the following rules shall apply:

*How to be made*

(*a*)   The limited time shall not include the day of the date or of the happening of the event, but shall commence at the beginning of the day next following that day.

*Commence-ment of a limited time*

(*b*)   The act or proceeding must be done or taken at latest on the last day of the limited time.

*When act to be done*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*c*)   When the limited time is less than six days, the following days shall not be reckoned as part of the time, namely, Saturdays, Sundays and any public holidays.

Saturdays, Sundays and holidays

(*a*)   When the time expires on one of those days, the act or proceeding shall be considered as done or taken in due time, if it is done or taken on the next day afterwards, not being one of those days.

Time expiring on Saturday, Sunday or holdiday

(*As amended by S.I. No. 37 of 1964*)

**2.**   Parties may, by consent, enlarge or abridge any of the times fixed for taking any step, or filing any document, or giving any notice, in any suit.  Where such consent cannot be obtained, either party may apply to the Court or a Judge for an order to effect the object sought to have been obtained with the consent of the other party, and such order may be made although the application for the order is not made until after the expiration of the time allowed or appointed.

O. 2, 3
Enlargement or abridgement of time

**3.**   In any cause or matter in which there has been no proceeding for one year from the last proceeding had, the party who desires to proceed shall give one month's notice to the other party of his intention to proceed. A summons on which no order has been made shall not, but notice of trial although countermanded shall be deemed a proceeding within this rule.

Length of notice after delay of one year

(*No.* 106 *of* 1959)

**4.**   Summonses may be issued and pleadings may be amended, delivered or filed during the last eleven days of the Michaelmas and Christmas vacations respectively, but pleadings shall not be amended, delivered or filed during any other part of such vacations unless by the direction of the Court or a Judge.

When pleadings may be delivered in the Michaelmas and Christmas vacations

(*No.* 309 *of* 1960)

**5.**   Save as in the last preceding rule mentioned, the time of the Michaelmas and Christmas vacations in any year shall not be reckoned in the computation of times appointed or allowed in accordance with these Rules for amending, delivering or filing any pleadings unless otherwise directed by the Court or a Judge.

Michaelmas and Christmas vacations not generally to be reckoned in time for delivery, etc., of pleadings

(*No.* 309 *of* 1960)

ORDER III

MISCELLANEOUS PROVISIONS

**1.**   The sittings of the Court for the hearing of causes and matters shall ordinarily be public; but the Court may, for a reason to be specified by it on the minutes, hear any particular cause or matter in the presence only of the parties, with their legal advisers, if any, and the officers of the Court.

Public or private sittings of Court

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

2.    Subject to any particular rules, the Court or a Judge may, in all causes and matters, make any interlocutory order which it or he considers necessary for doing justice, whether such order has been expressly asked by the person entitled to the benefit of the order or not.

<div style="float:right">What orders to be made</div>

3.    The Registrar may transact all such business and exercise all such authority and jurisdiction in respect of the same as under the Act or these Rules may be transacted or exercise by a Judge at chambers, except in respect of the following proceedings and matters, that is to say:

<div style="float:right">Jurisdiction of Registrar<br>O. 3</div>

    (*a*)    All matters relating to criminal proceedings or to the liberty of the subject;

    (*b*)    Appeals from District Registrars;

    (*c*)    Injunctions;

    (*d*)    Reviewing taxation of costs, save as provided in Order XL, rules 3 and 4.

(*As amended by No.* 309 *of* 1960)

4.    The Registrar shall keep an account of all moneys received and all payments made by him in the performance of his duties, and, for the purpose of keeping the said account, shall cause to be opened at a bank, to be approved by the Court, an account to be called "The High Court Account", and payments of money into and out of such account shall be made in such manner and subject to such conditions as the Court may direct.

<div style="float:right">Registrar to open and keep banking account</div>

5.    Causes or matters pending in the Court may, by order of the Court or a Judge, be consolidated, and the Court or a Judge shall give any directions that may be necessary as to the conduct of the consolidated actions.

<div style="float:right">Consolidation of causes or matters</div>

6.    If, in any cause or matter, any accused person, party, witness or other person is unable to speak or understand the English language, the Court or a Judge may direct a fit and proper person to attend and interpret the proceedings so far as may be necessary. Before so interpreting, such person shall swear an oath in the following form:

<div style="float:right">Interpreter</div>

"I swear that I will well and truly interpret and explanation make of all such matters and things as shall be required of me to the best of my skill and understanding. So help me God."

7.    (1)  When any fee has been paid in respect of a document, the officer authorised to receive the fee shall endorse an initial on the document stating the fee paid and the number of the receipt recording the payment.

<div style="float:right">Receipts</div>

(2)  The officer of the Court authorised to receive any fee for any matter or thing done or performed shall, before doing or performing such matter or thing, ensure that the proper fee is paid.

(*As Amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

## ORDER IV

O. 4, 5

### EMPLOYMENT OF BARRISTERS AND ADVOCATES

**1.** A party suing or defending by a barrister or advocate in any cause or matter shall be at liberty to change his advocate in such cause or matter, without an order for that purpose, upon notice of such change being filed in the office of the Registrar. But, until such notice is filed and a copy served, the former advocate shall be considered the advocate of the party until final judgment, unless allowed by the Court or a Judge, for any special reason, to cease from acting therein; but such advocate shall not be bound, except under express agreement or unless re-engaged, to take any proceedings in relation to any appeal from such judgment.

Change of practitioners during the hearing of a cause or matter

**2.** (1) When it shall appear to the Court that any civil cause or matter has been commenced or carried on maliciously or without probable grounds, and the party by whom or on whose behalf such cause or matter has been so commenced or carried on has been represented therein by a barrister or advocate who had knowledge of such malice or lack of probable grounds, or if it shall appear that any barrister or advocate has, by any sort of deceit, induced his client to enter into or continue any litigation, every such barrister or advocate shall, on failure of his client to pay any costs which he may be ordered to pay, be liable, if the Court so orders, to pay the amount thereof to the party to whom costs are given. Such failure shall be deemed to have taken place if the client shall have refused or neglected to make payment after a demand has been made on him, although no process of execution may have been issued against him.

Liability to pay costs

(2) This rule shall not be construed to restrict the liability of any barrister or advocate in respect of the misconduct referred to in sub-rule (1) or any other misconduct for which he would otherwise be punishable.

## ORDER V

### EVIDENCE
I-*Exclusion of Witnesses*

**1.** On the application of either party, or on its own motion, the Court may order witnesses on both sides to be kept out of court; but this rule does not extend to the parties themselves or to their professional representatives, although intended to be called as witnesses.

Ordering witnesses out of court

**2.** The Court may, during any trial, take such means as it considers necessary and proper for preventing communication with witnesses who are within the Court House or its precincts awaiting examination.

Preventing communication with witnesses

II-*Documentary Evidence*

*O. 5*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

3.      Entries in books of account, kept in the course of business with such a reasonable degree of regularity as shall be satisfactory to the Court or a Judge, shall be admissible in evidence whenever they refer to a matter into which the Court or a Judge has to inquire, but shall not alone be sufficient evidence to charge any person with liability.

*Entries in books of account*

4.      The Government *Gazette* in Zambia and any Government *Gazette* of any Commonwealth Country may be proved by the bare production of the Government *Gazette*.

*Government Gazettes*

(*As amended by S.I. No.* 63 *of* 1964 *and S.I. No.* 71 *of* 1997)

5.      All Proclamations, Acts of State, whether legislative or executive, nominations, appointments, and other official communications of the Government, appearing in any *Gazette* referred to in the last preceding rule may be proved by the production of such *Gazette*, and shall be *prima facie* proof of any fact of a public nature which they were intended to notify.

*Proof of Proclamations, etc.*

6.      On matters of public history, literature, science or art, the Court or a Judge may refer, if it or he shall think fit, for the purposes of evidence, to such published books, maps or charts as the Court or a Judge shall consider to be of authority on the subject to which they relate.

*Books of science, maps, charts, etc.*

7.      Books printed or published under the authority of the government of a foreign country and purporting to contain the statutes, code or other written law of such country, and also printed and published books of reports of the decisions of the courts of such country, and books proved to be commonly admitted in such courts as evidence of the law of such country, shall be admissible as evidence of the law of such country.

*Foreign law*

8.      All maps made under the authority of any government or of any public municipal body, and not made for the purpose of any litigated question, shall *prima facie* be deemed to be correct, and shall be admitted in evidence without further proof.

*Public maps*

9.      Whenever any book or other document is of such a public nature as to be admissible in evidence on its mere production from the proper custody, and no Act or statute exists which renders its contents provable by means of a copy, any copy thereof or extract therefrom shall be admissible in evidence, if it purports to be signed and certified as a true copy or extract by the officer to whose custody the original is entrusted.

*Examined or certified copies of documents admissible in evidence*

10.      Any person, whether a party or not, in a cause or matter may be summoned to produce a document, without being summoned to give evidence; and, if he cause such document to be produced, the Court or a Judge may dispense with his personal attendance.

*Production of documents without giving evidence*

III-*Affidavits*

O. 5

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**11.**   Before an affidavit is used in any proceeding for any purpose, the original shall be filed in the Court, and the original or an office copy shall alone be recognised for any purpose by the Court or a Judge.

<div style="text-align: right">Affidavits to be filed</div>

**12.**   An affidavit shall not be admitted which is proved to have been sworn before a person on whose behalf the same is offered, or before his Advocate, or before a partner or clerk of his Advocate.

<div style="text-align: right">Not to be sworn before certain persons</div>

**13.**   The Court or a Judge may permit an affidavit to be used notwithstanding it is defective in form according to these Rules, if the Court or a Judge is satisfied that it has been sworn before a person duly authorised.

<div style="text-align: right">Defective in form</div>

**14.**   A defective or erroneous affidavit may be amended and re-sworn, by leave of the Court or a Judge, on such terms as to time, costs or otherwise as seem reasonable.

<div style="text-align: right">Amendment and re-swearing</div>

**15.**   An affidavit shall not contain extraneous matter by way of objection or prayer or legal argument or conclusion.

<div style="text-align: right">No extraneous matter</div>

**16.**   Every affidavit shall contain only a statement of facts and circumstances to which the witness deposes, either of his own personal knowledge or from information which he believes to be true.

<div style="text-align: right">Contents of affidavits</div>

**17.**   When a witness deposes to his belief in any matter of fact, and his belief is derived from any source other than his own personal knowledge, he shall set forth explicitly the facts and circumstances forming the ground of his belief.

<div style="text-align: right">Grounds of belief to be stated</div>

**18.**   When the belief of a witness is derived from information received from another person, the name of his informant shall be stated, and reasonable particulars shall be given respecting the informant, and the time, place and circumstances of the information.

<div style="text-align: right">Informant to be named</div>

**19.**   Where any document referred to in an affidavit and exhibited thereto is a handwritten document other than a statement of account, book of account or extract therefrom, there shall also be exhibited therewith a typewritten or printed copy thereof certified in such affidavit to be a true and correct copy of the original.

<div style="text-align: right">Copies of exhibits</div>

(*No.* 106 *of* 1959)

**20.**   The following rules shall be observed by Commissioners and others before whom affidavits are taken:

<div style="text-align: right">Rules in taking affidavits</div>

   (*a*)   Every affidavit taken in a cause or matter shall be headed in the Court and in the cause or matter.

<div style="text-align: right">To be properly entitled</div>

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

| | | |
|---|---|---|
| (b) | It shall state the full name, trade or profession, residence and nationality of the witness. | Description of witness |
| (c) | It shall be in the first person and divided into convenient paragraphs, numbered consecutively. | O. 5<br>In first person |
| (d) | Any erasure, interlineation or alteration made before the affidavit is sworn shall be attested by the Commissioner, who shall affix his signature or initials in the margin immediately opposite to the interlineation, alteration or erasure. | Erasures, etc., to be attested |
| (e) | Where an affidavit proposed to be sworn is illegible or difficult to read, or is, in the judgment of the Commissioner, so written as to facilitate fraudulent alteration, he may refuse to swear the witness, and require the affidavit to be re-written in an unobjectionable manner. | If improperly written |
| (f) | The affidavit shall be signed by the witness (or, if he cannot write, marked by him with his mark in the presence of the Commissioner). | Witness to sign |
| (g) | The jurat shall be written, without interlineation, alteration or erasure (unless the same be initialed by the Commissioner), immediately at the foot of the affidavit, and towards the left side of the paper, and shall be signed by the Commissioner. | Form of jurat |
| | It shall state the date of the swearing and the place where it is sworn. | Date and place |
| | It shall state that the affidavit was sworn before the Commissioner or other officer taking the same. | In presence of Commissioner |
| | Where the witness is illiterate or blind, it shall state the fact, and that the affidavit was read over (or translated into his own language in the case of a witness not having sufficient knowledge of English), and that the witness appeared to understand it. | Illiterate or blind witness |
| | Where the witness makes a mark instead of signing, the jurat shall state that fact, and that the mark was made in the presence of the Commissioner. | Marksmen |
| | Where two or more persons join in making an affidavit, their several names shall be written in the jurat, and it shall appear by the jurat that each of them has been sworn to the truth of the several matters stated by him in the affidavit. | Joint affidavit |
| (h) | The Commissioner shall not allow an affidavit, when sworn, to be altered in any manner without being re-sworn. | If affidavit altered, to be re-sworn |

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

| | | |
|---|---|---|
| (*i*) | If the jurat has been added and signed, the Commissioner shall add a new jurat on the affidavit being re-sworn; and, in the new jurat, he shall mention the alteration. | New jurat |
| (*j*) | The Commissioner may refuse to allow the affidavit to be re-sworn, and may require a fresh affidavit. | New affidavit |
| (*k*) | The Commissioner may take, without oath, the declaration of any person affirming that the taking of any oath whatsoever is, according to his religious belief, unlawful, or who, by reason of immature age or want of religious belief, ought not, in the opinion of the Commissioner, to be admitted to make a sworn affidavit. The Commissioner shall record in the attestation the reason of such declaration being taken without oath. | Declarations without oath O. 5 |
| (*l*) | Every certificate on an exhibit referred to in an affidavit signed by the Commissioner before whom the affidavit is sworn shall be marked with the short title of the cause or matter. | Certificate on exhibit |

(*As amended by No.* 106 *of* 1959)

IV-*Objections to Evidence*

21.     In every case, and at every stage thereof, any objection to the reception of evidence by a party affected thereby shall be made at the time the evidence is offered:

When to be made

Provided that the Court may, in its discretion, on appeal, entertain any objection to evidence received in a subordinate court, though not objected to at the time it was offered.

(*As amended by No.* 218 *of* 1944)

22.     Where a question proposed to be put to a witness is objected to, the Court or a Judge, unless the objection appears frivolous, shall, if required by either party, take a note of the question and objection, and mention on the notes whether the question was allowed to be put or not and, if put, the answer to it.

Where question objected to

23.     Where a document is produced and tendered in evidence and rejected by the Court or a Judge, the document shall be marked as having been so tendered and rejected.

Marking of rejected documents

V-*Taking of Evidence*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**24.** In the absence of any agreement between the parties, and subject to these Rules, the witnesses at the trial or any suit shall be examined *viva voce* and in open court; but the Court may at any time, for sufficient reason, order that any particular fact or facts may be proved by affidavit, or that the affidavit of any witness may be read at the hearing or trial, on such conditions as the Court may think reasonable; or that any witness whose attendance in court ought, for some sufficient cause, to be dispensed with be examined by interrogatories or otherwise before an officer of the Court or other person:

*Evidence of witnesses, how taken*

Provided that, where it appears to the Court that the other party *bona fide* desires the production of a witness for cross-examination, and that such witness can be produced, an order shall not be made authorising the evidence of such witness to be given by affidavit.

**25.** In any suit, the Court may, in its discretion, if the interests of justice appear absolutely so to require (for reasons to be recorded in the minutes of the proceedings), admit an affidavit in evidence, although it is shown that the party against whom the affidavit is offered in evidence has had no opportunity of cross-examining the person making the affidavit.

*O. 5*
*Admission of affidavits*

**26.** The Court or a Judge may, in any suite where it shall appear necessary for the purpose of justice, make any order for the examination, before any officer of the Court or other person, and at any place, of any witness or person, and may order any deposition so taken to be filed in the Court, and may empower any party to any such suit to give such deposition in evidence therein on such terms, if any, as the Court or a Judge may direct.

*Evidence on commission*

**27.** Evidence on commission, when not directed to be taken upon interrogatories previously settled, shall be taken, as nearly as may be, as evidence at the hearing of a suit, and then the notes of the evidence shall be read over to the witness and be signed by him. If the witness refuses, the officer of the Court or other person shall add a note of his refusal, and the statement may be used as if he had signed it.

*How to be taken*

**28.** Evidence may be taken in like manner, on the application of any person, before suit instituted, where it is shown to the satisfaction of the Court or a Judge on oath that the person applying has good reason to apprehend that a suit will be instituted against him in the Court, and that some person within the jurisdiction at the time of the application can give material evidence respecting the subject of the apprehended suit, but that he is about to leave the jurisdiction, or that, from some other cause, the person applying will lose the benefit of his evidence if it be not at once taken; and the evidence so taken may be used at the hearing, subject to just exceptions:

*Evidence before suit instituted*

Provided always that the Court or a Judge may impose any terms or conditions with reference to the examination of such witness, and the admission of his evidence, as to the Court or a Judge may seem reasonable.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

29.    Any party desiring to give in evidence any deed or other instrument which shows upon the face of it that it has been duly executed may deliver to the opposite party, not less than four clear days before the return day, a notice in writing specifying the date and nature of and the parties to such deed or instrument, and requiring the opposite party to admit that the same was executed as it purports to have been, saving all just exceptions as to its admissibility, validity and contents; and if, at or before the hearing of the suit, the party so notified shall neglect or refuse to give such admission, the Court or a Judge may adjourn the hearing in order to enable the party tendering such deed or instrument to obtain proof of the due execution thereof, and, upon production of such proof, the Court or a Judge may order the costs of such proof to be paid by the party so neglecting or refusing, whether he be the successful party or not.

*Facilities for proving deed, etc.*
*O. 5, 6*

30.    Where the Court or a Judge to which or to whom application is made for the issue of a commission for the examination of a person residing at a place not within Zambia is satisfied that the evidence of such person is necessary, the Court may issue such commission or a letter of request.

*Commission or letter of request*

31.    The Court shall not issue any commission or letter of request abroad for the taking of evidence, unless and until the person applying for the issue of such commission or letter of request shall have paid into court by way of deposit, or shall have given approved security for, such sum as the Court or a Judge shall consider sufficient to cover the expenses incurred, or likely to be incurred, in connection with and in consequence of the grant of any such application.

*Not to issue until sum deposited in court to cover cost thereof*

## ORDER VI

### WRITS OF SUMMONS AND ORIGINATING PROCESS

1.  (1)  Except for petitions under the Constitution and Matri-monial Causes Acts and applications for writs of habeas corpus, every action in the Court shall, notwithstanding the provisions of any other written law, be commenced by writ of summons endorsed with or accompanied by a full statement of claim.

*Commencement of proceedings*

(2)  The Court shall not issue any writ of summons which is not endorsed with or accompanied by a full statement of claim.

(3)  The proper officer shall seal with the official seal the writs of summons and the statement of claim where such statement of claim is on a separate sheet and shall return the copies to the person commencing the action.

(*As amended by S.I. No. 71 of 1997*)

2.    Every writ of summons shall be in the appropriate form as set out in the First Schedule with such variations as circumstances may require.

*Form of writ of summons*

(*As amended by S.I. No. 71 of 1997*)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**3.** Every writ of summons shall bear the date on the day on which it shall be issued, and shall be tested in the name of the Chief Justice or, if the office of the Chief Justice be vacant, in the name of the Judge or other person appointed to perform the functions of the Chief Justice.

*Writs to be tested*

(*No.* 106 *of* 1959 *as amended by No.* 309 *of* 1960, *S.I. No.* 63 *of* 1964 *and S.I. No.* 71 *of* 1997)

**4.** Every writ of summons shall be endorsed with a statement of the nature of the claim made, or of the relief or remedy required and shall, subject to the other provisions of these Rules, state a time (to be fixed by the Registrar) within which appearance must be entered by the party sued or to be served.

*O. 6
Endorsement of writ of summons*

(*As amended by S.I. No.* 71 *of* 1997)

**5.** No writ of summons shall be issued unless the proper fees have been paid.

*Payment of fees*

(*As amended by S.I. No.* 71 *of* 1997)

**6.** (1) Whenever the plaintiff's claim is for a debt or liquidated demand only, the endorsement, besides stating the nature of the claim, shall state the amount claimed for debt or in respect of such demand, and for costs respectively, and shall further state that the defendant can pay the amount claimed and costs-

*Endorsement where claim is liquidated*

    (*a*) into Court if the plaintiff or one of the two or more co-plaintiffs is resident ouside Zambia or is acting by order or on behalf of a person so resident, or if the defendant is making the payment by order or on behalf of a person so resident; or

    (*b*) in all other cases to the plaintiff, his advocate  or agent; and that the payment shall be made within the time allowed for appearance, and that upon such payment further proceedings will be stayed:

      Provided that where the defendant pays the amount into Court under this rule he shall give notice of the payment to the plaintiff, his advocate or agent, in Form 17 set out in the First Schedule.

(2) The endorsement for costs required by sub-rule (1) shall be as set out in Form 4 in the First Schedule.

(3) The defendant may, notwithstanding a payment under this rule, have the costs taxed, and if more than one-sixth shall be disallowed, the plaintiff's advocate shall pay the costs of taxation.

(*As amended by S.I. No.* 71 *of* 1997)

**7.** Every writ of summons shall be sealed by the proper officer and shall thereupon be deemed to be issued.

*Sealing*

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

8.     The plaintiff or his advocate shall, on presenting any writ or summons for sealing, leave with the proper officer a copy, written or printed or partly written and partly printed of the writ and all the endorsement thereto, and the copy shall be signed by or for the advocate, or by the plaintiff himself if he is proceeding in person.

*Procedure on sealing*

(*As amended by S.I. No.* 71 *of* 1997)

9.     The proper officer receiving the copy shall file it and an entry of the filing thereof shall be made in a book to be called the Civil Causes Register, which is to be kept in the manner which civil causes registers are now kept, and the action shall be distinguished by the date of the year, the letters and a number, in the manner in which causes are now distinguished in such registers.

O. 6, 7
Filing and marking

(*As amended by S.I. No.* 71 *of* 1997)

10.     Every action shall, upon being commenced, be assigned to a Judge who shall be responsible to monitor its pace and eventually hear the cause.

Assignment of cause on filing to trial Judge

(*No.* 106 *of* 1959 *as amended by S.I. No.* 71 *of* 1997)

ORDER VII

ENDORSEMENT OF ADDRESS

(*No.* 106 *of* 1959)

1.  (1)  The advocate of a plaintiff suing by an advocate shall endorse upon the writ of summons-

Where the plaintiff sues by advocate

    (*a*)    the address of the plaintiff;

    (*b*)    his own name or firm and his own place of business and the postal address thereof; and

    (*c*)    if his place of business and postal address or either of them be more than ten kilometres from the Registry at which the writ is issued, a proper place and postal address or either of them, as the case may require, which shall be not more than ten kilometres from such Registry;

and either of the addresses which are not more than ten kilometres from such Registry shall be his address for service for the purposes of these Rules.

(2)  Where any such advocate is only agent of another advocate, he shall, in addition to the matters set out in sub-rule (1), add the name or firm and place of business of the principal advocate.

(*As amended by S.I. No.* 71 *of* 1997)

2.  (1)  A plaintiff suing in person shall endorse upon the writ of summons his place of residence, his postal address and his occupation.

Where plaintiff sues in person

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)   If his place of residence and postal address are not more than ten kilometres from the Registry at which the writ is issued, either of such addresses shall be an address for service for the purposes of these Rules, and if his place of residence and postal address or either of them be more than ten kilometres from such Registry, or if he has no place of residence or postal address, the plaintiff shall also endorse on the writ of summons a proper place and postal address or either of them, as the case may require, which shall not be more than ten kilometres from such Registry and either of the addresses within the limit aforesaid shall in such case be his address for service. **O.7, 8**

(*As amended by S.I. No. 71 of 1997*)

**3.**   An address for service shall be an address where notices, pleadings, orders, summonses, warrants and other documents, proceedings and written communications, if not required to be served personally, may be left for or posted to the plaintiff or his advocate, as the case may be. **Address for service**

**4.**   Where notice of a writ of summons is to be served on a defendant in pursuance of Order X, rule 18, the endorsements required by the preceding rules of this Order shall be made both on the writ and on the notice. **Where notice is served in lieu of writ**

**5.**   Where proceedings are commenced otherwise than by writ of summons, the preceding rules of this Order shall apply to the process by which the proceedings are originated as they apply to a writ of summons. **Proceedings not commenced by writ**

ORDER VIII

CONCURRENT WRITS

(*No.* 106 *of* 1959)

**1.**   The plaintiff in any action may, at any time of or at any time during twelve months after the issuing of the original writ of summons, issue one or more concurrent writ or writs, each concurrent writ to bear *teste* of the same day as the original writ, and to be marked with a seal bearing the word "concurrent" and the date of issuing the concurrent writ; and such seal shall be impressed upon the writ by the proper officer: **Concurrent writ, how issued**

Provided always that such concurrent writ or writs shall only be in force for the period during which the original writ in such action shall be in force.

**2.**   A concurrent originating summons may be issued in the same manner, *mutatis mutandis*, as a concurrent writ of summons. **Concurrent originating summons**

**3.**   A writ for service within the jurisdiction may be issued and marked as a concurrent writ with one for service, or whereof notice in lieu of service is to be given, out of the jurisdiction; and a writ for service or whereof notice in lieu of service is to be given, out of the jurisdiction, may be issued and marked as a concurrent writ with one for service within the jurisdiction. **Concurrent writs for service within and without the jurisdiction**

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**4.**    An originating summons for service within the jurisdiction may be issued and marked as a concurrent originating summons with one for service out of the jurisdiction; and an originating summons for service out of the jurisdiction may be issued and marked as a concurrent originating summons with one for service within the jurisdiction.

O. 8, 9, 10
Concurrent originating summons for service within and without the jurisdiction

## ORDER IX

### RENEWAL OF WRIT

(*No.* 106 *of* 1959)

**1.**    No original writ of summons shall be in force, for more than twelve months from the day of the date thereof, including the day of such date; but if any defendant therein named shall not have been served therewith the plaintiff may, before the expiration of the twelve months, apply to the Court or a Judge for leave to renew the writ; and the Court or Judge if satisfied that reasonable efforts have been made to serve such defendant, or for other good reasons, may order that the original or concurrent writ of summons be renewed for six months from the date of such renewal inclusive, and so from time to time during the currency of the renewed writ. And the writ shall in such case be renewed by being marked with the seal of the Court and bearing the date of the day, month and year of such renewal; such seal to be impressed upon the writ by the proper officer, upon delivery to him by the plaintiff or his Advocate of a memorandum in Form 12 in the First Schedule, with such variations as circumstances may require; and a writ of summons so renewed shall remain in force and be available to prevent the operation of any statute whereby the time for the commencement of the action may be limited, and for all other purposes, from the date of the issuing of the original writ of summons.

Original writ in force for 12 months. Renewal seal

**2.**    The production of a writ of summons purporting to be marked with the seal of the Court, showing the same to have been renewed in manner aforesaid, shall be sufficient evidence of its having been so renewed, and of the commencement of the action as of the first date of such renewed writ for all purposes.

Effect of renewal

## ORDER X

### SERVICE OF PROCESS

**1.**  (1)  Personal service of a petition, notice, summons, order or other document, of which service is required may be made by any person.

Service may be effected by any person

(2)  Any person serving any document shall, on the request of the party served, explain to such party the contents of such document.

Document to be explained.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(3)  Any person serving a writ of summons or other originating process, default of appearance to which would, under Order X11, entitle the plaintiff to enter final judgment, shall request the party served to acknowledge receipt by signing on the original or other copy of the process or on some other document tendered for the purpose, and the fact of any refusal to sign shall be so endorsed by the person serving.

O. 10
Acknowledgement of service

(*S.I. No.* 37 *of* 1964 *and S.I. No.* 30 *of* 1984)

**2.**  (1)  All writs, notices, pleadings, orders, summonses, warrants and other documents, proceedings and written communications, in respect of which personal service is not requisite, shall be sufficiently served if left at the address for service of the person to be served, as defined by Orders VII and XI, with any person resident at or belonging to such place, or if posted in a prepaid registered envelope addressed to the person to be served at the postal address for service as aforesaid:

Mode and time of service, where not personal

Provided that, where service under this rule is made by registered post, the time at which the document so posted would be delivered in the ordinary course of post shall be considered as the time of service thereof.

(2)  This rule does not apply in the case of documents for which special provisions for service have been made by any written law.

(*As amended by No.* 106 *of* 1959 *S.I. No.* 63 *of* 1964)

**3.**  Where personal service of any writ, notice, pleading, summons, order, warrant or other document, proceeding or written communication is required and it is made to appear to the Court or a Judge that prompt personal service cannot be effected, the Court or a Judge may make such order for substituted or other service, or for the substitution for service of notice by letter, public advertisement or otherwise, as may be just. Every application to the Court or a Judge for an order to be made under this rule shall be supported by an affidavit setting forth the grounds upon which the application is made.

Substituted service

(*As amended by No.* 106 *of* 1959)

**4.**  Where a party, after having sued or appeared in person, has given notice in writing to the opposite party or his advocate, through a advocate, that such advocate is authorised to act in the cause or matter on his behalf, all writs, notices, pleadings, summonses, orders, warrants and other documents, proceedings and written communications, which ought to be delivered to or served upon the party on whose behalf the notice is given, shall thereafter be delivered to or served upon such advocate. Such notice shall contain all the particulars required from an advocate by Order VII or XI, as the case may be.

Service upon advocate of party formerly appearing in person

(*As amended by No.* 106 *of* 1959)

**5.**  Personal service of the writ on the defendant shall not be required where the defendant's advocate undertakes in writing to accept service on behalf of the defendant.

O. 10
Service of writ of summons

(*As amended by No.* 109 *of* 1994)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

6.    Where service is personal, the document to be served shall be delivered to the person to be served himself. Service shall be completely effected by the delivery of a duplicate or attested copy of any document, without the exhibition of any original.

*Personal service*

7.    Where no appearance has been entered for a party, or where a party or his advocate, as the case may be, has omitted to give an address for service, all writs, notices, pleadings, orders, summonses, warrants and other documents, proceedings and written communications in respect of which personal service is not requisite may be served by filing them with the Registrar.

*Service where no appearance or no address for service*

8.    An order for service may be varied, from time to time, with respect to the mode of service directed by the order.

*Varying order of service*

9.    Service in a civil cause shall not be made on Sunday, Good Friday or Christmas Day.

*Dies non*

10.    When the party to be served is in the service of the Government, the Registrar may transmit a duplicate of the document to be served to the head officer of the department in which such party is employed, for the purpose of being served on him, if it shall appear to the Court or a Judge that it may be most conveniently so served, and such head officer shall cause the same to be served on the proper party accordingly.

*Service on Government officers*

11.    (1)   Where partners are sued in the name of their firm, the writ or other document shall be served either upon any one or more of the partners, or at the principal place within the jurisdiction of the business of the partnership upon any person having, at the time of the service, the control or management of the partnership business there; and such service shall be deemed good service upon the firm.

*On partners*

(2)   Where a writ is issued against a firm, every person upon whom it is served shall be informed by notice in writing given at the time of such service whether he is served as a partner or as a person having the control or management of the partnership business, or in both characters. In default of such notice, the person served shall be deemed to be served as a partner.

(3)   Service of a writ or other court process on a body corporate other than a company shall be effected on any office bearer.

(*As amended by S.I. No.* 71 *of* 1997)

12.    Where the person on whom service is to be effected is a prisoner in a prison, it shall be sufficient service to deliver the writ or document at the prison to the gaoler or person appearing to be the head officer in charge thereof, who shall cause the same to be served on such prisoner.

O. 10
*On prisoner*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**13.**   Where the person on whom service is to be effected is employed and dwells in any lunatic or other public asylum or in any prison, it shall be sufficient service to deliver the writ or document to the gatekeeper or lodgekeeper of such asylum or prison, who shall cause the same to be served on such person.

*On person in asylum or prison*

**14.**   Where the suit is against a defendant residing out of but carrying on business within the jurisdiction in his own name, or under the name of a firm, through an authorised agent, and such suit is limited to a cause of action which arose within the jurisdiction, the writ or document may be served by giving it to such agent, and such service shall be equivalent to personal service on the defendant.

*Where defendant resides out of but carries on business within jurisdiction*

**15.**   Service out of the jurisdiction of a writ of summons, originating summons or originating notice of motion, or of a notice of such writ of summons, originating summons or notice of motion may be allowed by the Court or a Judge whenever-

*When service out of the jurisdiction allowed*

(*a*)   The whole subject-matter of the action is land situate within the jurisdiction (with or without rents or profits), or the perpetuation of testimony relating to land within the jurisdiction; or

(*b*)   Any act, deed, will, contract, obligation, or liability affecting land or hereditaments situate within the jurisdiction, is sought to be construed, rectified, set aside, or enforced in the action or matter; or

(*c*)   Any relief is sought against any person domiciled or ordinarily resident within the jurisdiction; or

(*d*)   The action is for the administration of the personal estate of any deceased person, who at the time of his death was domiciled within the jurisdiction, or for the execution (as to property situate within the jurisdiction) of the trusts of any written instrument, of which the person to be served is a trustee, which ought to be executed according to the law of Zambia; or

(*e*)   The action is one brought to enforce, rescind, dissolve, annual or otherwise affect a contract or to recover damages or other relief for or in respect of the breach of a contract-

(i)   made within the jurisdiction; or

(ii)   made by or through an agent trading or residing within the jurisdiction on behalf of a principal trading or residing out of the jurisdiction; or

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(iii)    by its terms or by implication to be governed by Zambian law;      O.10

or it is one brought in respect of a breach committed within the jurisdiction of a contract wherever made, even though such breach was preceded or accompanied by a breach out of the jurisdiction which rendered impossible the performance of the part ofthe contract which ought to have been performed within the jurisdiction; or

(*f*)    The action is founded on a tort committed within the jurisdiction; or

(*g*)    Any injunction is sought as to anything to be done within the jurisdiction, or any nuisance within the jurisdiction is sought to be prevented or removed, whether damages are or are not also sought in respect thereof; or

(*h*)    Any person out of the jurisdiction is a necessary or proper party to an action properly brought against some other person duly served within the jurisdiction; or

(*i*)    The action is by a mortgagee or mortgagor in relation to a mortgage of personal property situate within the jurisdiction and seeks relief of the nature or kind following, that is to say, sale, foreclosure, delivery of possession by the mortgagor, redemption, re-conveyance, delivery of possession by the mortgagee; but does not seek (unless and except so far as permissible under paragraph (e)) any personal judgment or order for payment of any moneys due under the mortgage.

(*No.* 218 *of* 1944 *as amended by S.I. No.* 63 *of* 1964)

**16.**    An application for leave to issue for service out of the jurisdiction a writ of summons, originating summons, or originating notice of motion or a concurrent writ of summons, originating summons or originating notice of motion may be made *ex parte* to the Court or a Judge on deposit of the writ, summons or notice with the Registrar together with an affidavit in support of such application. The affidavit shall state-

    Application for leave to serve out of jurisdiction

(*a*)    the grounds upon which the application is made and the facts which bring the plaintiff's case within the class in respect of which service out of the jurisdiction may be allowed;

(*b*)    that the deponent is advised and believes that the plaintiff has a good cause of action or right to relief;

(*c*)    in what place or country the defendant resides or probably may be found;

(*d*)    whether the defendant is a citizen of Zambia or not.

(*No.* 218 *of* 1944 *as amended by S.I. No.* 63 *of* 1964)

**17.**    Substituted service out of the jurisdiction of a writ, summons or notice issued for service within the jurisdiction cannot be ordered but if a concurrent writ, summons or notice for service out of the jurisdiction is issued then substituted service out of the jurisdiction of such concurrent writ, summons or notice may be allowed. A writ, summons or notice issued for service out of the jurisdiction may be ordered to be served by substituted service whether outside the jurisdiction or within the jurisdiction and either with or without the issue of any concurrent writ, summons or notice.

    O. 10
Substituted service out of the jurisdiction

(*No.* 218 *of* 1944)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**18.**   Where a writ of summons, originating summons or originating notice of motion is issued for service out of the jurisdiction upon a person not being a citizen of Zambia, notice thereof and not the originating process itself shall be served upon such person.

*Service on foreign person in foreign country*

(*No.* 218 *of* 1944 *as amended by S.I. No.* 63 *of* 1964)

**19.**   Where the officer of Court or person charged with the service of any writ or document on any person is prevented by the violence or threats of such person, or any other person in concert with him, from personally serving the writ or document, it shall be sufficient to inform the person to be served of the nature of the writ or document, and to leave the writ or document as near such person as is practicable.

*Where violence threatened*

**20.**   In all cases where service of any writ or document shall have been effected by a bailiff or other officer of Court, a certificate of service in Form 14 in the First Schedule signed by such bailiff or other officer shall, on production, without proof of signature, be *prima facie* evidence of service.

*Certificate of service*

(*As amended by No.* 106 *of* 1959)

**21.**   In all cases the bailiff or other officer of Court charged with the service of any particular process shall not later than fourteen days after the receipt of the process render a return in Form 16 in the First Schedule to the Court in duplicate and the duplicate thereof shall thereupon be despatched by the proper officer to the party requiring the same to be served, or his Advocates, specifying whether the same has been served and, if not, giving reasons why the same has not been so served.

*Return*

(*No.* 106 *of* 1959)

**22.**   The person serving a writ of summons shall, within three days at most after such service, endorse on the writ the day of the month and week of the service thereof, otherwise the plaintiff shall not be at liberty (except where service shall have been effected by an officer of the Court appointed under Part VIII of the Act) in case of non-appearance to proceed by default; and every affidavit of service of such writ shall mention the day on which such endorsement was made. This rule shall apply to substituted as well as other service.

*Endorsement on service O.10*

(*No.* 106 *of* 1959)

**23.**   Where, in any civil or commercial matter pending before a court or tribunal of a foreign county, a letter of request from such court or tribunal for service on any person within the jurisdiction of any process or citation in such matter is transmitted to the Minister responsible for foreign affairs and such Minister considers that it is desirable that effect should be given to the same, the following procedure shall be adopted:

*Transmission of letter of request*

(*a*)   The letter of request for service shall be accompanied by a translation thereof in the English language, and by two copies of the process or citation to be served and two copies thereof in the English language, and shall be transmitted to the Court by the Permanent Secretary, Ministry of Foreign Affairs;

*Translation required*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*b*)   Service of the process or citation shall be effected by an officer of the Court; | Service by officer of the Court

(*c*)   Such service shall be effected by delivering to and leaving with the person to be served one copy of the process to be served and one copy of the translation thereof, in accordance with the rules and practice of the Court regulating service of process; | Service, how to be effected

(*d*)   After service has been effected the process server shall return to the Registrar one copy of the process, together with the evidence of service by affidavit of the person effecting the service verified by a person empowered to take oaths, and particulars of charges for the cost of effecting such service; | Report of service to Registrar

(*e*)   The particulars of charges for the cost of effecting service shall be submitted to the taxing master of the Court, who shall certify the correctness of the charges or such other amount as shall be properly payable for the cost of effecting service; | Taxing master to certify charges

(*f*)   The Registrar shall forward to the Permanent Secretary, Ministry of Foreign Affairs, for transmission to the foreign country concerned, the letter of request for service received from the foreign country together with the evidence of service, with a certificate appended thereto in Form 49 in the First Schedule, with such variations as circumstances may require, duly sealed with the seal of the Court; | Letter of request to be returned to Ministry of Foreign Affairs

(*g*)   Upon the application of the Attorney-General, the Court or a Judge may make all such orders for substituted service or otherwise as may be necessary to give effect to the above procedure. | Substituted service

(*As amended by S.I. No.* 63 *of* 1964)

**24.**   Where, in any civil or commercial matter pending before a court or tribunal in any foreign country with which a Convention in that behalf has been or shall be made and applied to the Republic, a request for service of any document on a person in Zambia is received by the Court from the consular or other authority of such country, the following procedure shall, subject to any special provisions contained in the Convention, be adopted: | O. 10, 11
Service of foreign documents in Zambia

(*a*)   The service shall be effected by the delivery of the original or a copy of the document, as indicated in the request, and a copy of the translation to the party or person to be served in person by an officer of the Court;

(*b*)   No court fees shall be charged in respect of this service. The particulars of charges of the officer employed to effect service shall be submitted to the taxing master of the Court, who shall certify the amount properly payable in respect thereof;

(*c*)The Registrar shall transmit to the consular or other authority making the request a certificate establishing the fact and the date of service in person, or indicating the reason for which it has not been possible to effect it, and, at the same time, shall notify to the said consular or other authority the amount of the charges certified under paragraph (*b*).

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

ORDER XI
APPEARANCE

(*No.* 106 *of* 1959)

**1.**   (1)  A defendant shall enter appearance to a writ of summons by delivering to the proper officer sufficient copies of memorandum of appearance in writing dated on the day of their delivery, and containing the name of the defendant's advocate, or stating that the defendant is defending in person. The defendant shall at the same time deliver to the proper officer sufficient copies of the defence and counter claim if any:

Mode of entering appearance

Provided that before delivering the memorandum and defence, the defendant shall be at liberty to apply for further and better particulars of the statement of claim within the period specified for delivery of the memorandum and defence.

(2)  A memorandum of appearance not accompanied by a defence shall not be accepted.

(3)  The proper officer shall seal the memorandum of appearance and defence and shall return the copies to the person filing them for service upon the plaintiff.

(*As amended by S.I. No.* 71 *of* 1997)

**2.**   (1)  In the case of a defendant desiring to enter the appearance in person, the defendant may, in lieu of delivering to the proper officer the memorandum of appearance and defence, enter the appearance through the post by sending to the proper officer by pre-paid registered letter-

O. 11
Appearance by post

(*a*)   sufficient copies of the memorandum of appearance duly completed;

(*b*)   sufficient copies of the defence and counter claim, if any; and

(*c*)   two envelopes each sufficiently stamped, one addressed to the plaintiff's advocate or to the plaintiff if he sues in person at the postal address for service, and the other addressed to the postal address of the defendant entering the appearance.

(2)  On receipt of these documents the proper officer shall forthwith enter the appearance as of the date of receipt of the memorandum of appearance and defence and shall seal them with the official seal showing the date on which they are sealed and shall post a copy to the defendant:

Provided that no appearance shall be accepted which is received out of time.

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**3.** (1)   A defendant shall, on the day of entering the appearance to a writ of summons, give notice of the appearance to the plaintiff's advocate or if a plaintiff sues in person, to the plaintiff by:

<div align="right">Notice of appearance</div>

    (*a*)    leaving copies of the sealed memorandum of appearance and defence at the address given for service: or

    (*b*)    sending the copies of the memorandum of appearance and defence by pre-paid letter directed to the postal address for service and posted on the date of entering the appearance in due course of post.

(2)   Sub-rule (1) shall not apply to a defendant entering an appearance in person through the post under rule 2.

*(As amended by S.I. No.* 71 *of* 1997)

**4.** (1)   The advocate of a defendant appearing by advocate shall state in the memorandum of appearance-

<div align="right">Defendant's address for service</div>

    (*a*)    his own place of business and the postal address thereof; and

    (*b*)    if his place of business and postal address or either of them be more than ten kilometres from the Registry in which the cause or matter is pending, a proper place and postal address or either of them, as the case may require, which shall be not more than ten kilometres from such Registry;

<div align="right">O. 11</div>

and either of the addresses which are not more than ten kilometres from such Registry shall be his address for service for the purposes of these Rules.

(2)   Where any such advocate is only agent of another advocate, he shall, in addition to the matters set out in sub-rule (1), add the name or firm and place of business of the principal Advocate.

*(As amended by S.I. No.* 71 *of* 1997)

**5.** (1)   A defendant appearing in person shall state in the memorandum of appearance his place of residence and postal address.

<div align="right">When defendant appears in person</div>

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)  If his place of residence and postal address are not more than ten kilometres from the Registry in which the cause or matter is pending, either of such addresses shall be an address for service for the purposes of these Rules and if his place of residence and postal address or either of them be more than ten kilometres from such Registry, or if he has no place of residence or postal address, the defendant shall also state in the memorandum of appearance a proper place and postal address or either of them, as the case may require, which shall not be more than ten kilometres from such Registry and either of the addresses within the limit aforesaid shall in such case be an address for service.

*(As amended by S.I. No. 71 of 1997)*

| | |
|---|---|
| **6.**   If the memorandum does not contain such address it shall not be received; and if any such address shall be illusory or fictitious, the appearance may be set aside by the Court or a Judge, on the application of the plaintiff. | Memorandum irregular, address fictitious |
| **7.**   An address for service shall be an address where notices, pleadings, orders, summonses, warrants and other documents, proceedings and written communications, if not required to be served personally, may be left for or posted to the defendant or his Advocate, as the case may be. | Address for service |
| **8.**   The memorandum of appearance shall be in Form 18 in the First Schedule, with such variations as circumstances may require. | Memorandum of appearance |
| **9.**   Upon receipt of a memorandum of appearance, the proper officer shall forthwith enter the appearance in the Civil Causes Register. | Officer to enter memorandum |
| **10.**   Where persons are sued as partners in the name of their firm, they shall appear individually in their own names; but all subsequent proceedings shall, nevertheless, continue in the name of the firm. | Appearance of partners |
| **11.**   Where a writ is served under Order X, rule 11 (2), upon a person having the control or management of the partnership business, no appearance by him shall be necessary unless he is a member of the firm sued. | O. 11 No appearance except by partners |

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**12.** Any person served as a partner under Order X, rule 11, but who denies that he was a partner or liable as such at any material time, may enter an appearance stating therein that he does so as "a person served as a partner in the defendant firm, but who denies that he was a partner at any material time". Such appearance as long as it stands shall be treated as an appearance for the firm. If an appearance is so entered (A) the plaintiff may apply to set it aside on the ground that the person entering it was a partner or liable as such, or may leave that question to be determined at a later stage of the proceedings; or (B) the person entering the appearance may apply to set aside the service on him on the ground that he was not a partner or liable as such; or he may at the proper time deliver a defence denying either or both (1) his liability as a partner, (2) the liability of the defendant firm in respect of the plaintiff's claim. An order may, on the application of either party at any time, be made that the questions as to the liability of the person served and the liability of the defendant firm may be tried in such manner and at such time or times as the Court or a Judge may think fit.

*Appearance under protest of person served as partner*

**13.** If two or more defendants in the same action shall appear by the same advocate and at the same time, the names of all the defendants so appearing shall be inserted in one memorandum.

*Defendants appearing by same advocate*

**14.** A advocate not entering an appearance in pursuance of his written undertaking so to do shall be liable to an attachment.

*Advocate not entering appearance*

**15.** A defendant may appear at any time before judgment.

*Time of appearance*

**16.** Any person not named as a defendant in a writ of summons for the recovery of land may, by leave of the Court or a Judge, appear and defend, on filing an affidavit showing that he is in possession of the land either by himself or by his tenant.

*Recovery of land*

**17.** Any person appearing to defend an action for the recovery of land as landlord, in respect of property whereof he is in possession only by his tenant, shall state in his appearance that he appears as landlord.

*Landlord appearing*

**18.** Where a person not named as defendant in any writ of summons for the recovery of land has obtained leave of the Court or a Judge to appear and defend, he shall enter an appearance, according to the foregoing rules of this Order, intituled in the action against the party named in the writ as defendant, and shall forthwith give notice of such appearance to the plaintiff's advocate, or to the plaintiff if he sues in person, and shall in all subsequent proceedings be named as a party defendant to the action.

*Recovery of land, person not named defendant*

**19.** Any person appearing to a writ of summons for the recovery of land shall be at liberty to limit his defence to a part only of the property mentioned in the writ, describing that part with reasonable certainty in his memorandum of appearance, or in a notice intituled in the action and signed by him or his advocate. Such notice shall be served within four days after appearance; and an appearance, where the defence is not limited as above mentioned, shall be deemed an appearance to defend for the whole.

*O. 11, 12 Recovery of land limiting defence*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**20.**   The notice mentioned in rule 19 shall be in Form 19 in the First Schedule, with such variations as circumstances may require.

<div style="text-align: right;">Form of notice</div>

**21.**   A defendant before appearing shall be at liberty, without obtaining an order to enter or entering a conditional appearance, to take out a summons or serve notice of motion to set aside the service upon him of the writ or of notice of the writ, or to discharge the order authorising such service.

<div style="text-align: right;">Motion to set aside writ</div>

**22.**   The parties served with an orginating summons shall, save as otherwise provided, before they are heard, enter appearances, and give notice thereof. A party so served may appear at any time before the hearing of the summons. If he appears at any time after the time limited by the summons for appearance he shall not, unless the Court or a Judge shall otherwise order, be entitled to any further time for any purpose, than if he had appeared according to the summons.

<div style="text-align: right;">Appearance to originating summons</div>

## ORDER XII

### DEFAULT OF APPEARANCE

**1.** (1)  Where the writ of summons is endorsed for a liquidated demand, and the defendant fails, or all the defendants if more than one, the plaintiff may enter final judgment for any sum not exceeding the sum endorsed on the writ together with interest at the rate specified, if any, to the date of the judgment and costs, upon an affidavit or certificate, as the case may be, of due service being filed.

<div style="text-align: right;">Liquidated demand endorsed. First Schedule, Form 30</div>

<div style="text-align: right;">(<em>As amended by S.I. No.</em> 71 <em>of</em> 1997)</div>

(2)  Where the writ of summons is endorsed for a liquidated demand and there are several defendants, of whom one or more appear to the writ, and another or others of them fail to appear, the plaintiff may enter final judgment, as in sub-rule (1), against such as have not appeared and may issue execution upon the judgment without prejudice to his right to proceed with the action against those that have appeared.

<div style="text-align: right;">Liquidated demand. Several defendants</div>

<div style="text-align: right;">(<em>As amended by S.I. No.</em> 71 <em>of</em> 1997)</div>

(3)  Where the writ of summons is endorsed with a claim of pecuniary damages only, or for detention of goods with or without a claim of pecuniary damages, and the defendant fails, or all the defendants, if more than one, fail to appear, the plaintiff may enter interlocutory judgment, and a writ of inquiry shall issue to assess the value of the goods and the damages, or the damages only, as the case may be, in respect of the causes of action disclosed by the endorsement on writ of summons:

<div style="text-align: right;">Damages or detention of goods O. 12</div>

Provided that the Court or a Judge may order particulars to be filed before any assessment of damages, and may order that, instead of a writ of inquiry, the value and amount of damages, or either of them, shall be ascertained in any way which the Court or Judge may direct.

<div style="text-align: right;">(<em>As amended by S.I. No.</em> 71 <em>of</em> 1997)</div>

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(4)   Where the writ is endorsed as in the last preceding sub-rule mentioned, and there are several defendants, of whom one or more appear to the writ and another or others of them fail to appear, the plaintiff may sign interlocutory judgment against the defendant or defendants so failing to appear, and the value of the goods and the damages, or either of them, as the case may be, may be assessed, as against the defendant or defendants suffering judgment by default, at the same time as the trial of the action or issue therein against the other defendant or defendants, unless the Court or a Judge shall otherwise direct:

Provided that the Court or a Judge may order that, instead of a writ of inquiry or trial, the value and amount of damages, or either of them, shall be ascertain in any way which the Court or a Judge may direct.

*Damages or detention of goods. Several defendants*

(5)   Where the writ is endorsed with a claim for pecuniary damages only, or for detention of goods with or without a claim for pecuniary damages, and is further endorsed for a liquidated demand, whether specially or otherwise, and any defendant fails to appear to the writ, the plaintiff may enter final judgment for the debt or liquidated demand, interest and costs against the defendant or defendants failing to appear, and interlocutory judgment for the value of the goods and the damages, or the damages only, as the case may be, and proceed as mentioned in such of the preceding sub-rules as may be applicable.

*Damages, detention of goods and liquidated demand*

(6)   In case no appearance shall be entered in an action for the recovery of land within the time limited by the writ for appearance, or if an appearance be entered but the defence be limited to part only, the plaintiff shall be at liberty to enter a judgment that the person whose title is asserted in the writ shall recover possession of the land, or of the part thereof to which the defence does not apply.

*Recovery of land*

(7)   Where the plaintiff has endorsed a claim for mesne profits, arrears of rent, double value, or damages for breach of contract or wrong or injury to the premises claimed, upon a writ for the recovery of land, he may enter judgment as in the last preceding sub-rule mentioned for the land; and may proceed as in the other proceding sub-rules mentioned as to such other claim so endorsed.

*Mense profits*
*O. 12, 13*

(8)   In all actions not otherwise specifically provided for by the other sub-rules, in case the party served with the writ of summons does not appear within the time limited for appearance, upon the filing by the plaintiff of a proper affidavit or certificate of service, the action may proceed as if such party had appeared.

(*As amended by S.I. No. 71 of 1997*)

*Default of appearance in actions not otherwise specifically provided for*

(9)   In any action in which the plaintiff is claiming any relief of the nature or kind specified in Order XXX, rule 14, no judgment shall be entered in default of appearance without the leave of the Court or a Judge who may require the application for leave to be supported by such evidence as might be required if relief were being sought on originating summons under Order XXX, rule 14, and may require notice of such evidence to be given to the defendant and to such other person (if any) as the Court or a Judge may think proper.

(*As amended by No. 218 of 1944, No. 106 of 1959 and S.I. No. 71 of 1997*)

*Default of appearance to proceedings under O. 30, r. 14*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**2.**   Where judgment is entered pursuant to the provisions of this Order, it shall be lawful for the Court or a Judge to set aside or vary such judgment upon such terms as may be just.

*Setting aside judgment by default*

ORDER XIII

LEAVE TO SIGN JUDGMENT AND DEFEND WHERE WRIT SPECIALLY ENDORSED

**1.**   Where the defendant appears to a writ of summons specially endorsed under rule 9 of Order VI, the plaintiff may, on affidavit made by himself, or by any other person who can swear positively to the facts, verifying the cause of action and the amount claimed (if any), and stating that in his belief there is no defence to the action, apply to the Court or a Judge for liberty to enter final judgment for the amount so endorsed, together with interest, if any, or for recovery of the land (with or without rent or mesne profits) or for the delivering up of a specific chattel, as the case may be, and costs. The Court or a Judge may thereupon, unless the defendant by affidavit, by his own *viva voce* evidence or otherwise shall satisfy him that he has a good defence to the action on the merits, or disclose such facts as may be deemed sufficient to entitle him to defend, make an order empowering the plaintiff to enter judgment accordingly.

*Summary judgment on specially endorsed writ O. 14*

(*As amended by No.* 218 *of* 1944)

**2.**   The application by the plaintiff for leave to enter final judgment under rule 1 shall be made by summons returnable not less than four clear days after service, accompanied by a copy of the affidavit and exhibits referred to therein.

*O. 13, 14 Four day summons for leave to sign judgment. FirstSchedule, Form 22*

**3.**   Where leave, whether conditional or unconditional, is given to defend, the Court or a Judge shall have power to give all such directions as to the further conduct of the action as might be given on a summons for directions under Order XIX, and may order the action to be forthwith set down for trial.

*Court may treat summons for directions*

**4.** (1)  The costs of and incident to all applications under rule 1 shall be dealt with by the Registrar on the hearing of the application, who shall order by and to whom and when the same shall be paid, or may refer them to the Judge at the trial:

*Costs under rule 1*

Provided that, in case no trial afterwards takes place, or no order as to costs is made, the costs are to be costs in the cause.

(2)  If the plaintiff makes an application under rule 1 where the case is not within the rule, or where the plaintiff, in the opinion of the Registrar, knew that the defendant relied on a contention which would entitle him to unconditional leave to defend, in any of such cases the application may be dismissed with costs to be paid forthwith by the plaintiff.

*Costs of application when same dismissed*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

## ORDER XIV

### PARTIES

**1.** If any plaintiff sues, or any defendant is sued, in any representative capacity, it shall be expressed on the writ. The Court or a Judge may order any of the persons represented to be made parties either in lieu of, or in addition to, the previously existing parties.

Suit on behalf of others

**2.** Where a person has jointly with other persons an alleged ground for instituting a suit, all those other persons ought ordinarily to be made parties to the suit.

Joint ground of suit

**3.** Where more persons than one have the same interest in one suit, one or more of such persons may be authorised to sue or to defend in such suit for the benefit of or on behalf of all parties so interested.

Where joint interest, parties may be authorised to sue or defend for others

**4.** Where a person has a joint and several demand against two or more persons, either as principals or sureties, it is not necessary for him to bring before the Court as parties to a suit concerning that demand all the persons liable thereto, and he may proceed against any one or more of the persons severally or jointly and severally liable. Where a defendant claims contribution, indemnity or other remedy or relief over against any other person, he may apply to have such person made a party to the suit.

Joint and several demand
O. 14

**5.** (1) If it shall appear to the Court or a Judge, at or before the hearing of a suit, that all the persons who may be entitled to, or claim some share or interest in, the subject-matter of the suit, or who may be likely to be affected by the result, have not been made parties, the Court or a Judge may adjourn the hearing of the suit to a future day, to be fixed by the Court or a Judge, and direct that such persons shall be made either plaintiffs or defendants in the suit, as the case may be. In such case, the Court shall issue a notice to such persons, which shall be served in the manner provided by the rules for the service of a writ of summons, or in such other manner as the Court or a Judge thinks fit to direct; and, on proof of the due service of such notice, the person so served, whether he shall have appeared or not, shall be bound by all proceedings in the cause:

Non-joinder

Provided that a person so served, and failing to appear within the time limited by the notice for his appearance, may, at any time before judgment in the suit, apply to the Court or a Judge for leave to appear, and such leave may be given upon such terms (if any) as the Court or a Judge shall think fit. The Court or a Judge upon the application of any party may give directions for service upon a new party of copies of any writ of summons or other document or process and also may give such other directions in relation to the adding of such new party as justice and the circumstances of the case may require.

(2) The Court or a Judge may, at any stage of the proceedings, and on such terms as appear to the Court or a Judge to be just, order that the name or names of any party or parties, whether as plaintiffs or as defendants, improperly joined, be struck out.

Misjoinder

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(3)  No suit shall be defeated by reason of non-joinder or misjoinder of parties.

(*As amended by No.* 218 *of* 1944)

**6.**     Claims by the Government against any person may be brought by the Attorney-General or by any officer authorised by law to prosecute such claim on behalf of the Government, as the case may be.

Claims by the Government

**7.**     Any persons claiming or being liable as co-partners may sue or be sued in the name of their respective firms (if any); and any party to an action may, in such case, apply to the Court or a Judge for a statement of the names of the persons who are co-partners in any such firm, to be furnished in such manner and verified on oath or otherwise as the Court or a Judge may direct.

Proceedings by or against partners

**8.**     In case a writ states two or more distinct causes of action by and against the same parties, and in the same rights, the Court or a Judge may, either before or at the hearing, if it appears inexpedient to try the different causes of action together, order that the trials be had separately, and make such order as to adjournment and costs as justice requires.

Distinct causes of action in one writ O. 14, 15, 16

**9.**     In case a writ states two or more distinct causes of action, but not by and against the same parties, or by and against the same parties but not in the same rights, the writ may, on the application of any defendant, be amended or dismissed by the Court or a Judge, as justice may require.

Misjoinder of actions

ORDER XV

PARTICULARS OF CLAIM

**1.**     The Court or a Judge may, on the application of the defendant, order further or better particulars.

Further particulars

(*As amended by S.I. No.* 71 *of* 1997)

**2.**     The plaintiff shall not, at the hearing, obtain a judgment for any sum exceeding that stated in the particulars, except for subsequent interest and the costs of suit, notwithstanding that the sum claimed in the writ for debt or damages exceeds the sum stated in the particulars.

Judgment not to exceed claim

(*As amended by S.I. No.* 71 *of* 1997)

**3.**     Particulars of claim shall not be amended except by leave of the Court or a Judge, but the Court or a Judge may, on any application for leave to amend, grant leave, on its appearing that the defendant will not be prejudiced by the amendment:

Amendment of claim

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Provided that the Court or a Judge may refuse leave or grant it, on such terms as to notice, adjournment or costs as justice requires.

(*As amended by S.I. No.* 71 *of* 1997)

## ORDER XVI

### ALTERATION OF PARTIES

**1.** Where, after the institution of a suit, any change or transmission of interest or liability occurs in relation to any party to the suit, or any party to the suit dies or becomes incapable of carrying on the suit, or the suit in any other way becomes defective or incapable of being carried on, any person interested may obtain from the Court or a Judge any order requisite for curing the defect, or enabling or compelling proper parties to carry on the proceedings:

Where change of interest, Court may make order enabling suit to proceed

Provided that any person served with such an order may within such time as the Court or a Judge in the order directs apply to the Court or a Judge to discharge or vary the order.

**2.** The death of a plaintiff or defendant shall not cause the suit to abate, if the cause of action survive.

O. 16
Death of party not to abate suit, if cause of action survives

**3.** If there be two or more plaintiffs or defendants, and one of them die, and if the cause of action survive to the surviving plaintiff or plaintiffs alone, or against the surviving defendant or defendants alone, the suit shall proceed at the instance of the surviving plaintiff or plaintiffs, and against the surviving defendant or defendants.

Cause of action surviving to surviving plaintiff or plaintiffs

**4.** If there be two or more plaintiffs, and one of them die, and if the cause of action shall not survive to the surviving plaintiff or plaintiffs alone, but shall survive to them and the legal representative of the deceased plaintiff jointly, the Court or a Judge may, on the application of the legal representative of the deceased plaintiff, enter the name of such representative in the suit in the place of such deceased plaintiff, and the suit shall proceed at the instance of the surviving plaintiff or plaintiffs, and such legal representative of the deceased plaintiff. If no application shall be made to the Court or a Judge by any person claiming to be the legal representative of the deceased plaintiff, the suit shall proceed at the instance of the surviving plaintiff or plaintiffs; and the legal representative of the deceased plaintiff shall, after notice to appear, be interested in, and shall be bound by the judgment given in the suit, in the same manner as if the suit had proceeded at his instance conjointly with the surviving plaintiff or plaintiffs, unless the Court or a Judge shall see cause to direct otherwise.

Cause of action surviving to surviving plaintiff and legal representative of deceased plaintiff

The Laws of Zambia

**5.** In case of the death of a sole plaintiff, or sole surviving plaintiff, the Court or a Judge may, on the application of the legal representative of such plaintiff, enter the name of such representative in the place of such plaintiff in the suit, and the suit shall thereupon proceed; if no such application shall be made to the Court or a Judge within what it or he may consider a reasonable time by any person claiming to be the legal representative of the deceased sole plaintiff or sole surviving plaintiff, it shall be competent to the Court or a Judge to make an order that the suit shall abate, and to award to the defendant the reasonable costs which he may have incurred in defending the suit, to be recovered from the estate of the deceased sole plaintiff or surviving plaintiff; or the Court or a Judge may, if it or he thinks proper, on the application of the defendant, and upon such terms as to costs as may seem fit, make such order for bringing in the legal representative of the deceased sole plaintiff or surviving plaintiff, and for proceeding with the suit in order to reach a final determination of the matters in dispute, as may appear just and proper in the circumstances of the case.

*Death of sole or surviving plaintiff*

**6.** If any dispute arise as to who is the legal representative of a deceased plaintiff, it shall be competent to the Court or a Judge either to stay the suit until the fact has been duly determined in another suit, or to decide, before the hearing of the suit, who shall be admitted to be such legal representative for the purpose of prosecuting the suit.

*Dispute as to legal representative*

**7.** If there be two or more defendant, and one of them die, and the cause of action shall not survive against the surviving defendant or defendants alone, and also in case of the death of a sole defendant or sole surviving defendant, where the action survives, the plaintiff may make an application to the Court or a Judge specifying the name, description and place of abode of any person whom the plaintiff alleges to be the legal representative of such defendant, and whom he desires to be made the defendant in his stead; and the Court or a Judge shall thereupon enter the name of such representative in the suit in the place of such defendant, and shall issue an order to him to appear on a day to be therein mentioned to defend the suit; and the case shall thereupon proceed in the same manner as if such representative had originally been made a defendant and had been a party to the former proceedings in the suit.

*O. 16, 17*
*Death of one of several defendants or of a sole surviving defendant*

**8.** The bankruptcy of the plaintiff, in any suit which the assignee or trustee might maintain for the benefit of the creditors, shall not be a valid objection to the continuance of such suit, unless the assignee or trustee shall decline to continue the suit and to give security for the costs thereof, within such reasonable time as the Court or a Judge may order; if the assignee or trustee neglect or refuse to continue the suit and to give such security within the time limited by the order, the defendant may, within eight days after such neglect or refusal, plead the bankruptcy of the plaintiff as a reason for abating the suit.

*Bankruptcy of plaintiff*

ORDER XVII

DISCONTINUANCE OF SUITS

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

1.    If, before the date fixed for the hearing, the plaintiff desires to discontinue any suit against all or any of the defendants, or to withdraw any part of his alleged claim, he shall give notice in writing of discontinuance or withdrawal to the Registrar and to every defendant as to whom he desires to discontinue or withdraw. After the receipt of such notice, such defendant shall not be entitled to any further costs, with respect to the matter so discontinued or withdrawn, than those incurred up to the receipt of such notice, unless the Court or a Judge shall otherwise order; and such defendant may apply *ex parte* for an order against the plaintiff for the costs incurred before the receipt of such notice and of attending the Court or a Judge to obtain the order. Such discontinuance or withdrawal shall not be a defence to any subsequent suit. If, in any other case, the plaintiff desires to discontinue any suit or to withdraw any part of his alleged claim, or if a defendant desires to discontinue or withdraw his counter-claim or any part thereof, such discontinuance or withdrawal may, in the discretion of the Court or a Judge, be allowed on such terms as to costs and as to any subsequent suit and otherwise as to the Court or a Judge may seem just.

*Discontinuance of suit*

2.    If any subsequent suit shall be brought before payment of the costs of a discontinued suit, for the same or substantially the same cause of action, the Court or a Judge may order a stay of such subsequent suit until such costs shall have been paid.

*O. 17, 18, 19*
*Stay of subsequent suit*

# ORDER XVIII

## AMENDMENT

1.    The Court or a Judge may, at any stage of the proceedings, order any proceedings to be amended, whether the defect or error be that of the party applying to amend or not; and all such amendments as may be necessary or proper for the purpose of eliminating all statements which may tend to prejudice, embarrass or delay the fair trial of the suit, and for the purpose of determining, in the existing suit, the real question or questions in controversy between the parties, shall be so made. Every such order shall be made upon such terms as to costs or otherwise as shall seem just.

*Under what circumstances*

# ORDER XIX

## ORDER OF DIRECTIONS

1.    The Court or trial Judge shall, not later than fourteen days after appearance and defence have been filed, give directions with respect to the following matters:

*Order of directions*

(*a*)    reply and defence to counter claim, if any;

(*b*)    discovery of documents;

(*c*)    inspection of documents;

(*d*)    admissions;

(*e*)    interrogatories; and

(*f*)    place and mode of trial:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Provided that the period for doing any of these acts shall not exceed 14 days.

**2.** Notwithstanding rule 1, the Court may, for sufficient reason, extend the period within which to do any of the acts specified in rule 1.

Liberty to apply

(*As amended by No.* 71 *of* 1997)

ORDER XX

O. 20, 21

DEFAULT OF PLEADING

**1.** If the plaintiff fails to deliver a defence to the counter claim within the time allowed for that purpose by the order for directions, the defendant may, at the expiration of such time, enter final judgment or interlocutory judgment, as the case may be.

Default of plaintiff in delivering defence to counter claim

(*As amended by S.I. No.* 71 *of* 1997)

**2.** In probate actions, if any defendant defaults in filing a memorandum of appearance and defence, the action may proceed to trial, notwithstanding the default

Probate action

(*As amended by S.I. No.* 71 *of* 1997)

**3.** Any judgment by default, whether under this Order of under any of these Rules, may be set aside by the Court or a Judge, upon such terms as to costs or otherwise as the Court or Judge may think fit.

Setting aside judgment by default

(*As amended by S.I. No.* 71 *of* 1997)

**4.** In proceedings against the Government, no judgment for the plaintiff shall be entered in default of pleading without the leave of the Court or a Judge, and any application for the leave shall be made by notice of motion or summons served not less than seven days before the return day.

Proceedings against the Government

(*As amended by S.I. No.* 71 *of* 1997)

ORDER XXI

ADMISSIONS

**1.** Any party to a suit may give notice, by his own statement or otherwise, that he admits the truth of the whole or any part of the case stated or referred to in the writ of summons, statement of claim, defence or other statement of any other party.

Notice of admissions

**2.** Any party may call upon any other party to admit, saving just exceptions, any document or fact.

Notice to admit

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

3.    In case of refusal or neglect to admit after notice, the costs of proof of the document or fact shall be paid by the party refusing or neglecting to admit, whatever be the result of the suit, unless the Court or a Judge is of opinion that the refusal or neglect to admit was reasonable.

*Costs on refusal to make reasonable admissions*

4.    If the plaintiff and defendant shall agree as to the terms and conditions on which judgment shall be entered, the Court or a Judge, unless it or he sees good reason to the contrary, shall enter judgment on such terms and conditions.

*Judgment by consent*

5.    If any defendant shall sign a statement admitting the amount claimed in the summons or any part of such amount, the Court or a Judge, on being satisfied as to the genuineness of the signature of the person before whom such statement was signed, and unless it or he sees good reason to the contrary, shall, in case the whole amount is admitted, or in case the plaintiff consents to a judgment for the part admitted, enter judgment for the whole amount or the part admitted, as the case may be, and, in case the plaintiff shall not consent to judgment for the part admitted, shall receive such statement in evidence as an admission without further proof.

*O. 21, 22, 23 Admission by defendants*

6.    A party may apply, on motion or summons, for cancelled judgment on admissions where admissions of facts or part of a case are made by a party to the cause or matter either by his pleadings or otherwise.

*Application on admissions*

*(As amended by S.I. No. 71 of 1997)*

## ORDER XXII

### SETTLEMENT OF ISSUES

1.    The parties shall, on setting down the action for trial, settle the issues in writing by stating the questions in controversy between them and stating the questions of law on admitted facts and questions of disputed fact, or questions partly of law and partly of fact except that this rule shall not apply where the parties appear in person.

*Settlement of issues*

*(As amended by S.I. No. 71 of 1997)*

2.    At any time before the decision of the case, if it shall appear to the Court necessary for the purpose of determining the real question or controversy between the parties, the Court may amend the issues or frame additional issues, on such terms as it shall seem fit.

*Amendment of framing of additional issues*

*(As amended by S.I. No. 71 of 1997)*

## ORDER XXIII

### INQUIRIES AND ACCOUNTS

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**1.** In any civil cause or matter in which all parties interested who are under no disability consent thereto, and also, without such consent, in any civil cause or matter requiring any prolonged examination of documents or accounts or any scientific or local examination which cannot, in the opinion of the Court or a Judge, conveniently be made by the Court in the usual manner, the Court or a Judge may, at any time, on such terms as it or he may think proper, order any question or issue of fact, or any question of account arising therein, to be investigated or tried before a referee, to be agreed on between the parties or appointed by the Court or a Judge.

*Questions of fact or of account may be investigated by referee*

**2.** Where an order has been made under rule 1, the Court or a Judge shall furnish the referee with such part of the proceedings and such information and detailed instructions as may appear necessary for his guidance, and shall direct the parties, if necessary, to attend upon the referee during the inquiry. The instructions shall specify whether the referee is merely to transmit the proceedings which he may hold on the inquiry, or also to report his own opinion on the point referred for his investigation.

*O. 23*
*Instructions to referee*

**3.** The Court or a Judge may, at any stage of the proceedings, direct any necessary inquiries or accounts described in rule 1 to be made or taken, notwithstanding that it may appear that there is some special or further relief sought for or some special issue to be tried, as to which it may be proper that the cause or matter should proceed in the ordinary manner.

*Interim inquiries or accounts*

**4.** The referee may, subject to the order of the Court or a Judge, hold the inquiry at or adjourn it to any place which he may deem most convenient, and have any inspection or view which he may deem expedient for the disposal of the controversy before him. He shall, so far as practicable, proceed with the inquiry *de die in diem.*

*General powers of referee*

**5.** Subject to any order to be made by the Court or a Judge ordering the inquiry, evidence shall be taken at any inquiry before a referee, and the attendance of witnesses may be enforced by subpoena; and every such inquiry shall be conducted in the same manner, as nearly as circumstances will admit, as trials before a Judge, but not so as to make the tribunal of the referee a public court of justice.

*Evidence*

**6.** Subject to any order as mentioned in the last preceding rule, the referee shall have the same authority in the conduct of any inquiry as a Judge when presiding at any trial.

*Referee's authority in the inquiry*

**7.** Nothing in these Rules contained shall authorise any referee to commit any person to prison or to enforce any order by attachment or otherwise; but the Court may, in respect of matters before a referee, make any order of attachment or commitment it may consider necessary.

*Limitation in certain particulars*

**8.** The referee may, before the conclusion of any inquiry before him, or by his report under the reference, submit any question arising therein for the decision of the Court, or state any facts specially.

*Referee may report questions or facts specially*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**9.** The proceedings and report in writing of the referee shall be received in evidence in the case, unless the Court may have reason to be dissatisfied with them, and the Court shall have power to draw such inferences from the proceedings or report as shall be just.

*Effect of report by referee*

**10.** The Court shall have power to require any explanations or reasons from the referee, and to remit the cause or matter, or any part thereof, for further inquiry or consideration to the same or any other referee, as often as may be necessary, and shall pass such ultimate judgment or order as may appear to be right and proper in the circumstances of the case.

*Powers of Court*
*O. 23, 24, 25*

# ORDER XXIV

## APPEARANCE OF PARTIES

**1.** In every civil cause or matter pending before the Court, in case it shall appear, to the satisfaction of the Court or a Judge, that any plaintiff or defendant who may not be represented by counsel or advocate is prevented by some good or sufficient cause from attending the Court in person, the Court or a Judge may, in its or his discretion, permit any other person who shall satisfy the Court or a Judge that he has authority in that behalf to appear for such plaintiff or defendant.

*Court may permit party to appear by proxy*

**2.** Any person doing any act or taking any proceeding in the name or on behalf of another person, not being lawfully authorised thereunto, and knowing himself not to be so authorised, shall be guilty of a contempt of court.

*Proceeding without authority*

# ORDER XXV

*(No. 218 of 1944)*

## ARREST OF DEFENDANT UNDER SECTION 10 OF DEBTORS ACT

**1.** An order to arrest under section *ten* of the Debtors Act shall be made upon affidavit and *ex parte*; but the defendant may at any time apply to the Court or a Judge to rescind or vary the order or to be discharged from custody, or for such other relief as may be just.

*Form of application and order to arrest. Cap. 77*

**2.** It shall be lawful for the Court or a Judge before making the order to arrest, to require the plaintiff to deposit in Court such sum as the Court or a Judge may think sufficient for the costs of arresting the defendant and of conveying him to prison.

*Costs of arrest*

**3.** An order to arrest shall before delivery to the Sheriff be endorsed with the plaintiff's address for service as required by Order VII.

*Endorsement on order to arrest*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

4.   The security to be given by the defendant may be a deposit in Court of the amount mentioned in the order, or a bond to the plaintiff by the defendant and two sufficient sureties (or with the leave of the Court or a Judge either one surety or more than two), or, with the plaintiff's consent any other form of security. The plaintiff may, within four days after receiving particulars of the names and addresses of the proposed sureties, give notice that he objects thereto, stating in the notice the particulars of his objections. In such case the sufficiency of the security shall be determined by the Registrar who shall have power to award costs to either party. It shall be the duty of the plaintiff to obtain an appointment for that purpose, and unless he do so within four days after giving notice of objection, the security shall be deemed sufficient.

*Security by defendant*
*O. 25, 26*

5.   The money deposited, and the security, and all proceedings thereon, shall be subject to the order and control of the Court or a Judge.

*Control of the Court*

6.   Unless otherwise ordered, the costs of and incidental to an order of arrest shall be costs in the cause.

*Costs*

7.   Upon payment into Court of the amount mentioned in the order, a receipt shall be given; and upon receiving the bond or other security, a certificate to that effect shall be given, signed or attested by the plaintiff's advocate if he have one, or by the plaintiff, if he sue in person. The delivery of such receipt or a certificate to the Sheriff or other officer executing the order, shall entitle the defendant to be discharged out of custody.

*Completion of security and discharge from custody*

(*As amended by S.I. No.* 71 *of* 1997)

8.   The Sheriff or other officer named in an order to arrest shall, within two days after the arrest, endorse on the order the true date of such arrest.

*Date of arrest*

9.   The expenses incurred for the subsistence in prison of the person so arrested shall be paid by the plaintiff in the action in advance. The Court or a Judge shall fix whatever allowance it or he shall think sufficient for such subsistence or *per diem*. The amount so disbursed may be recovered by the plaintiff in the suit, unless the Court or a Judge shall otherwise order. The Court or a Judge may release the person so imprisoned on failure by the plaintiff to pay the subsistence money, or in the case of serious illness, order his removal to hospital. During the period of such person's stay in hospital, the subsistence allowance shall be paid by the plaintiff, unless the Court or a Judge shall see fit, in any case, to order otherwise.

*Cost of subsistence of person arrested*

ORDER XXVI

INTERIM ATTACHMENT OF PROPERTY

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**1.** If the defendant, in any suit for an amount or value of fifty thousand kwacha or upwards, with intent to obstruct or delay the execution of any decree that may be passed against him, is about to dispose of his property, or any part thereof, or to remove any such property from the jurisdiction, the plaintiff may apply to the Court or a Judge, either at the time of the institution of the suit, or at any time thereafter until final judgment, to call upon the defendant to furnish sufficient security to fulfil any decree that may be made against him in the suit, and, on his failing to give such security, to direct that any property, movable or immovable, belonging to the defendant, shall be attached until the further order of the Court or a Judge.

*In what cases*
O. 26

(*As amended by S.I. No.* 71 *of* 1997)

**2.** The application shall contain a specification of the property required to be attached and the estimated value thereof, so far as the plaintiff can reasonably ascertain the same; and the plaintiff shall, at the time of making the application, declare that, to the best of his information and belief, the defendant is about to dispose of or remove his property with such intent as aforesaid.

*Application for attachment*

**3.** If the Court or a Judge, after making such investigation as it or he may consider necessary, shall be satisfied that the defendant is about to dispose of or remove his property, with intent to obstruct or delay the execution of the decree, it shall be lawful for the Court or a Judge to order the defendant, within a time to be fixed by the Court or a Judge, either to furnish security, in such sum as may be specified in the order, to produce and place at the disposal of the Court, when required, the said property, or the value of the same, or such portion thereof as may be sufficient to fulfil the decree, or to appear and show cause why he should not furnish security. The Court or a Judge may also, in the order, direct the attachment, until further order, of the whole or any portion of the property specified in the application.

*Form of order*

**4.** If the defendant fail to show such cause, or to furnish the required security within the time fixed by the Court or a Judge, the Court or a Judge may direct that the property specified in the application, if not already attached, or such portion thereof as shall be sufficient to fulfil the decree, shall be attached until further order. If the defendant show such cause, or furnish the required security, and the property specified in the application, or any portion of it, shall have been attached, the Court or a Judge shall order the attachment to be withdrawn.

*Where defendant fails to show cause or give security. First Schedule, Form 29*

**5.** The attachment shall not affect the rights of persons not parties to the suit, and, in the event of any claim being preferred to the property attached before judgment, such claim shall be investigated in the manner prescribed for the investigation of claims to property attached in execution of a decree.

*Rights of third parties not to be affected*

**6.** In all cases of attachment before judgment, the Court or a Judge shall, at any time, remove the same on the defendant furnishing security as hereinbefore required together with security for the costs of the attachment.

*Removal of attachment*

ORDER XXVII

O. 27

INJUNCTIONS, ETC.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**1.**   In any suit in which it shall be shown, to the satisfaction of the Court or a Judge, that any property which is in dispute in the suit is in danger of being wasted, damaged or alienated by any party to the suit, it shall be lawful for the Court or a Judge to issue an injunction to such party, commanding him to refrain from doing the particular act complained of, or to give such order, for the purpose of staying and preventing him from wasting, damaging or alienating the property, as to the Court or a Judge may seem meet, and, in all cases in which it may appear to the Court or a Judge to be necessary for the preservation or the better management or custody of any property which is in dispute in a suit, it shall be lawful for the Court or a Judge to appoint a receiver or manager of such property, and, if need be, to remove the person in whose possession or custody the property may be from the possession or custody thereof, and to commit the same to the custody of such receiver or manager, and to grant to such receiver or manager all such powers for the management or the preservation and improvement of the property, and the collection of the rents and profits thereof, and the application and disposal of such rents and profits, as to the Court or a Judge may seem proper.

*To stay waste, damage or alienation Appointment of receiver*

**2.**   It shall be lawful for the Court or a Judge, on the application of any party to a suit, to make any order for the sale by any person named in such order, and in such manner and on such terms as to the Court or a Judge may seem desirable, of any goods, wares or merchandise, the right to which is in dispute in the suit, which may be of a perishable nature, or likely to depreciate from keeping, or which, for any other just and sufficient reason, it may be desirable to have sold at once.

*Orders for sale of perishable goods*

**3.**   It shall be lawful for the Court or a Judge, upon the application of any party to a suit, and upon such terms as may seem just, to make any order for the detention, preservation or inspection of any property being the subject of such suit, and, for all or any of the purposes aforesaid, to authorise any person or persons to enter upon or into any land or building in the possession of any party to such suit; and, for all or any of the purposes aforesaid, to authorise any samples to be taken, or any observations to be made or experiments to be tried, which may seem necessary or expedient for the purpose of obtaining full information or evidence.

*Detention and inspection of property in dispute*

**4.**   In any suit for restraining the defendant from the committal of any breach of contract or other injury, and whether the same be accompanied by any claim for damages or not, it shall be lawful for the plaintiff, at any time after the commencement of the suit, and whether before or after judgment, to apply to the Court or a Judge for an injunction to restrain the defendant from the repetition or the continuance of the breach of contract or wrongful act complained of, or the committal of any breach of contract or injury of a like kind arising out of the same contract, or relating to the same property or right, and such injunction may be granted by the Court or a Judge on such terms as to the duration of the injunction, keeping an account, giving security or otherwise, as to the Court or a Judge shall seem reasonable and just:

*Orders to restrain breaches of contract or tort O. 27, 28*

Provided that any order for an injunction may be discharged, varied or set aside by the Court or a Judge, on application made thereto by any party dissatisfied with such order.

**5.**   The Court or a Judge may, in every case, before granting an injunction or order as aforesaid, direct such reasonable notice of the application for the same to be given to the opposite party, as it or he shall see fit.

*Notice of application*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**6.**   A Judge may, on application or on his own motion pursuant to an undertaking as to damages, order an assessment of damages arising out of discharged injunction found to have been unjustified, and that the damages shall be assessed by the Registrar.

*Order for assessment of damages*

(*As amended by S.I. No.* 71 *of* 1997)

**7.**   (1)   Without prejudice to the provisions of any other rule, the Court on an application by a party to a marriage shall have jurisdiction to grant an injunction containing one or more of the following provisions, namely-

*Injunctions*

-   (*a*)   a provision restraining the other party to a marriage from molesting the applicant; or

-   (*b*)   a provision restraining the other party from molesting a child living with the applicant whether or not any other relief is sought in the proceedings.

(2)   The provisions of sub-rule (1) shall apply to a man and woman who are living with each other in the same household as husband and wife as it applies to the parties to a marriage and any reference to a marital home shall be construed accordingly.

(*As amended by S.I. No.* 71 *of* 1997)

## ORDER XXVIII

### Equitable Relief, Counter-Claim, Set-Off

**1.**   Every suit implies an offer to do equity in the matter thereof, and admits of any equitable defence.

*Equitable defence*

**2.**   The plaintiff may obtain any such equitable relief as the facts stated and proved entitle him to, though not specifically asked.

*Equitable relief*

**3.**   A defendant in an action may set off, or set up by way of counter-claim against the claim of the plaintiff, any right or claim, whether such set-off or counter-claim sound in damages or not, and such set-off or counter-claim shall have the same effect as a statement of claim in a cross-action so as to enable the Court to pronounce a final judgment in the same action, both on the original and on the cross-claim. But the Court or a Judge may, if, in its or his opinion, such set-off or counter-claim cannot be conveniently disposed of in the pending action, or ought not to be allowed, refuse permission to the defendant to avail himself thereto.

*Counter-claim. Set-off O. 28, 29*

## ORDER XXIX

### Payment into and out of Court and Tender

(*No.* 218 *of* 1944)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**1.** (1)  In any action for a debt or damages the defendant may at any time after appearance upon notice to the plaintiff pay into Court a sum of money in satisfaction of the claim or (where several causes of action are joined in one action) in satisfaction of one or more of the causes of action:

*Payment into Court*

Provided that with a defence setting up tender before action the sum of money alleged to have been tendered must be brought into Court.

(2)  Where the money is paid into Court in satisfaction of one or more of several causes of action the notice shall specify the cause or causes of action in respect of which payment is made and the sum paid in respect of each such cause of action unless the Court or a Judge otherwise order.

(3)  The notice shall state whether liability is admitted or denied and receipt of the notice shall be acknowledged in writing by the plaintiff within three days.

**2.** (1)  Where money is paid into Court under rule 1 the plaintiff may within twenty-one days of the receipt of the notice of payment into Court or, where more than one payment into Court has been made, within twenty-one days of the receipt of the notice of the last payment into Court, accept the whole sum or any one or more of the specified sums in satisfaction of the claim or in satisfaction of the cause or causes of action to which the sum or sums relate, by giving notice to the defendant to that effect and thereupon he shall be entitled to receive payment of the accepted sum or sums in satisfaction aforesaid.

*Plaintiff may take money out of Court*

(2)  Payment shall be made to the plaintiff or on his written authority to his advocate, and thereupon proceedings in the action or in respect of the specified cause or causes of action, as the case may be, shall be stayed.

(3)  If the plaintiff accepts money paid into Court in satisfaction of his claim, or if he accepts a sum or sums paid in respect of one or more specified causes of action, and gives notice that he abandons the other cause or causes of action he may, after four days from payment-out and unless the Court or a Judge otherwise order, tax his costs incurred to the time of payment into Court, and forty-eight hours after taxation may sign judgment for his taxed costs.

*O. 29*

(4)  A plaintiff in an action for libel or slander who takes money out of Court may apply by summons to a Judge in chambers for leave to make in open Court a statement in terms approved by a Judge. The statement must be confined to clearing the character and reputation of the plaintiff and must not attack the defendant or any other person.

(5)  This rule does not apply to Admiralty action or to an action or cause of action in which a defence of tender before action is pleaded.

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**3.**    If the whole of the money in Court is not taken out under rule 2, the money remaining in Court shall not be paid out except in satisfaction of the claim or specified cause or causes of action in respect of which it was paid in and in pursuance of an order of the Court or a Judge, which may be made at any time before, at or after trial.

*Money remaining in Court*

**4.**    (1)   Money may be paid into Court under rule 1 by one or more of several defendants sued jointly or in the alternative, upon notice to the other defendant or defendants.

*Several defendants*

(2)  If the plaintiff elects within twenty-one days after receipt of notice of payment into Court to accept the sum or sums paid into Court, he shall give notice to that effect to each defendant.

(3)   Thereupon all further proceedings in the action or in respect of the specified cause or causes of action, as the case may be, shall be stayed, and the money shall not be paid out except in pursuance of an order of the Court or a Judge dealing with the whole costs of the action or cause or causes of action, as the case may be.

**5.**    A plaintiff or other person made defendant to a counterclaim may pay money into Court in accordance with the foregoing rules, with the necessary modifications.

*Counterclaim*

**6.**    Except in an action to which a defence of tender before action is pleaded or in which a plea under the Libel Acts, 1843 and 1845, of the United Kingdom, has been filed, no statement of the fact that money has been paid into Court under the preceding rules of this Order shall be inserted in the pleadings and no communication of that fact shall at the trial of any action be made to the Judge or assessors until all questions of liability and amount of debt or damages have been decided, but the Judge shall, in exercising his discretion as to costs, take into account both the fact that the money has been paid into Court and the amount of such payment.

*Non-disclosure at trial of payment into Court*

**7.**    (1)   In any cause or matter in which money or damages is or are claimed by or on behalf of an infant or a person of unsound mind suing either alone or in conjunction with other parties, no settlement or compromise or payment or acceptance of money paid into Court, whether before or at or after the trial shall, as regards the claims of any such infant or person of unsound mind, be valid without the approval of the Court or a Judge.

*O. 29*
*Money recovered by infant or person of unsound mind or by widow under Fatal Accidents Acts*

(2)   No money (which expression for the purposes of this rule includes damages) in any way recovered or adjudged or ordered or awarded or agreed to be paid in any such cause or matter in respect of the claims of any such infant or person of unsound mind, whether by verdict or by settlement, compromise payment, payment into Court or otherwise, before or at or after the trial shall be paid to the plaintiff or to the next friend of the plaintiff or to the plaintiff's advocate unless the Court or a Judge shall so direct.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(3)  All money so recovered or adjudged or ordered or awarded or agreed to be paid shall be dealt with as the Court or a Judge shall direct and the said money or any part thereof may be so directed to be paid into Court and to be invested or otherwise dealt with there as may be ordered from time to time.

(4)   The direction referred to in sub-rule (3) may include any general or special directions that the Court or a Judge may think fit to give, including (without prejudice to the generality of the above provision) directions as to how the money is to be applied or dealt with and as to any payment to be made either directly or out of the amount paid into Court to the plaintiff or to the next friend in respect of moneys paid or expenses incurred or for maintenance or otherwise for or on behalf of or for the benefit of the infant or person of unsound mind or otherwise or to the plaintiff's advocate in respect of taxed costs or of the certified difference between party and party and advocate and client costs.

(5)   The provisions of this rule shall also apply to all actions in which damages are claimed or recovered by or on behalf of or adjudged or ordered or awarded or agreed to be paid to an infant or person of unsound mind under the Fatal Accidents Acts, 1846 to 1908, of the United Kingdom. Where such proceedings are taken by or for the benefit of more than one person and the amount recovered is to be divided amongst such persons, the Judge shall divide and apportion the share to be paid to each of the said persons and the amount so apportioned shall be specified in the order or judgment made or directed in the Court.

(6)  Nothing in this rule shall prejudice the lien of a advocate for costs.

(7)   The costs of the plaintiff, or, if more than one, of all the plaintiffs in any such cause or matter or incident to the claims therein or consequent thereon shall be taxed by the Registrar, or, if such cause or matter is proceeding in a District Registry by the District Registrar, as between party and party and as between advocate and client, and the Registrar or District Registrar shall certify the respective amounts of the party and party and advocate and client costs, and the difference (if any) and the proportion of such difference (if any) payable respectively by any adult party to the cause or matter and by or out of the moneys of any party who is an infant or person of unsound mind, and no costs other than those so certified shall be payable to the advocate for any plaintiff in the cause or matter.   O.29, 30

(8)   This rule shall apply to the case of a counter-claim by an infant or a person of unsound mind, the expression plaintiff, plaintiff's advocate and next friend being read as applying to a defendant setting up the counter-claim or his guardian *ad litem*.

This rule shall apply to the case of a lunatic so found by inquisition, the expression next friend or guardian *ad litem* being read if necessary as applying to the committee.

(9)   Money paid into Court or securities purchased under the provisions of this rule, and the dividends or interest thereon, shall be sold, transferred, or paid out to the party entitled thereto, pursuant to the order of the Court or a Judge.

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

## ORDER XXX

APPLICATIONS AND PROCEEDINGS IN CHAMBERS AND IN COURT

(*No.* 218 *of* 1944)

I-*Applications in Chambers*

**1.**   Every application in chambers shall be made by summons.

(*As amended by S.I. No.* 71 *of* 1997)

Application to be by summons

**2.**   The summons shall be in Form 21 set out in the First Schedule, with such variations as circumstances may require, and shall be addressed to all the persons on whom it is to be served.

(*As amended by S.I. No.* 71 *of* 1997)

Form of summons

**3.**   Every summons shall be served two clear days before return thereof, unless in any case it shall be otherwise ordered:

Provided that in case of summonses for time only, the summons may be served on the day previous to the return day.

(*As amended by S.I. No.* 71 *of* 1997)

Service of summons

**4.**   Where any of the parties to a summons fail to attend, whether upon the return of the summons, or at any time appointed for the consideration or further consideration of the matter, the Judge may proceed *ex parte*, if, considering the nature of the case, he think it expedient so to do; no affidavit of non-attendance shall be required or allowed, but the Judge may require such evidence of service as he may think just.

O. 30 Proceeding ex parte where party fails to attend

**5.**   Where the Judge has proceeded *ex parte*, such proceedings shall not in any manner be reconsidered in the Judge's chambers, unless the Judge shall be satisfied that the party failing to attend was not guilty of wilful delay or negligence; and in such case the costs occasioned by his non-attendance shall be in the discretion of the Judge, who may fix the same at the time, and direct them to be paid by the party or his advocate before he shall be permitted to have such proceeding reconsidered, or make such other order as to such costs as he may think just.

Reconsideration of ex parte proceeding. Costs

**6.**   Where a proceeding in chambers fails by reason of the non-attendance of any party, and the Judge does not think it expedient to proceed *ex parte*, the Judge may order such an amount of costs (if any) as he shall think reasonable to be paid to the party attending by the absent party or by his advocate personally.

Costs thrown away by non-attendance of party

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**7.**     Where matters in respect of which summonses have been issued are not disposed of upon the return of the summons, the parties shall attend from time to time without further summons, at such time or times as may be appointed for the consideration or further consideration of the matter.

*Further attend-ance where summonses not fully disposed of*

**8.**     In every cause or matter where any party thereto makes any application at chambers, either by way of summons or otherwise, he shall be at liberty to include in one and the same application all matters upon which he then desires the order or directions of the Court or Judge; and upon the hearing of such application it shall be lawful for the Court or Judge to make any order and give any directions relative to or consequential on the matter of such application as may be just; and such application may, if the Judge thinks fit, be adjourned from chambers into Court, or from Court into chambers.

*What matters to be included in the same summons*
*Adjournment into Court or into chambers*

**9.**     If any matter appears to the Registrar proper for the decision of a Judge, the Registrar may refer the same to a Judge and the Judge may either dispose of the matter or refer the same back to the Registrar with such directions as he may think fit.

*Reference by Registrar to Judge*

**10.**  (1)  Any person affected by any decision, order or direction of the Registrar may appeal therefrom to a Judge at chambers. Such appeal shall be by notice in writing to attend before the Judge without a fresh summons, within seven days after the decision, order or direction complained of, or such further time as may be allowed by a Judge or the Registrar. Unless otherwise ordered, there shall be at least one clear day between service of the notice of appeal and the day of hearing. An appeal from the decision, order or direction of the Registrar shall be no stay of proceedings unless so ordered by a Judge or the Registrar.

*Appeal from Registrar*
*O. 30*

(2)  Any person affected by any decision, order or direction of an Assistant Registrar may appeal therefrom to the Registrar. Such appeal shall be by notice in writing to attend before the Registrar without a fresh summons, within seven days after the decision, order or direction complained of, or such further times as may be allowed by the Registrar or Assistant Registrar. Unless otherwise ordered there shall be at least one clear day between service of the notice of appeal and the day of hearing. An appeal from the decision, order or direction of an Assistant Registrar shall be no stay of proceedings unless so ordered by the Registrar or Assistant Registrar.

*Appeal from Assistant Registrar*

(3)  An appeal from the decision, order or direction of the Registrar on appeal from a decision, order or direction of an Assistant Registrar shall lie to a Judge in accordance with the provisions of sub-rule (1).

*Further appeal from Registrar*

(*As amended by No.* 309 *of* 1960)

(4)  An appeal from the decision or order of the Registrar on assessment of damages shall lie to the Supreme Court; and

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**11.**    The business to be disposed of in chambers shall consist of the following matters, in addition to the matters which under any other rule or by statute or by the law and practice for the time being observed in England and applicable to Zambia may be disposed of in chambers:

Business to be disposed of in chambers

(*a*)    Applications for time to plead, for leave to amend pleadings, for discovery and production of documents, and generally all applications relating to the conduct of any cause or matter;

(*b*)    An application by any person claiming to be interested under a deed, will or other written instrument for the determination of any question of construction arising under the instrument and for a declaration of the rights of the person interested;

(*c*)    An application by any person claiming any legal or equitable right, in a case where the determination of the question whether he is entitled to the right depends upon a question of construction of a statute, for the determination of such question of construction and for a declaration as to the right claimed;

(*d*)    All proceedings in the Court under the Trustee Act, 1893, or under the Land Transfer Act, 1897, of the United Kingdom;

(*e*)    Applications as to the guardianship and maintenance or advancement of infants;

O. 30

(*f*)    Applications connected with the management of property;

(*g*)    Applications for or relating to the sale by auction or private contract of property, and as to the manner in which the sale is to be conducted, and for payment into Court and investment of the purchase money;

(*h*)    All applications for the taxation and delivery of bills of cost and for the delivery by any Advocate of deeds, documents and papers;

(*i*)    All matters which under any other rule or statute were formerly allowed to be commenced by originating summons;

(*j*)    Such other matters as a Judge may think fit to dispose of in chambers.

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**12.** The executors or administrators of a deceased person or any of them and the trustees under any deed or instrument or any of them, and any person claiming to be interested under the trust of any deed or instrument in the relief sought as creditor, devisee, legatee, next of kin, or heir-at-law of a deceased person or as *cestui que trust* or as claiming by assignment or otherwise under any such creditor or other person as aforesaid may take out an originating summons for such relief of the nature or kind following, as may be specified in the summons and as the circumstances may require, that is to say, the determination, without an administration by the Court of the estate or trust, of any of the following questions or matters so far as the same arise in the course of the administration or performance of such estate or trust:

*Originating summons to deal with matters arising out of trusts*

(*a*) any question affecting the rights or interests of the person claiming to be creditor, devisee, legatee, next of kin, or heir-at-law, or *cestui que trust*;

(*b*) the ascertainment of any class of creditors, legatees, devisees, next of kin, or others;

(*c*) the furnishing of any particular accounts by the executors or administrators or trustees, and the vouching (when necessary) of such accounts;

(*d*) the payment into Court of any money in the hands of the executors or administrators or trustees;

(*e*) directing the executors or administrators or trustees to do or abstain from doing any particular act in their character as such executors or administrators or trustees;

(*f*) the approval of any sale, purchase, compromise, or other transaction;

(*g*) the determination of any question arising in the administration of the estate or trust.

O. 30

**13.** Any of the persons named in the last preceding rule may in like manner apply for and obtain an order for-

*Order for administration of estate of deceased, and of trust*

(*a*) the administration of the personal estate of the deceased;

(*b*) the administration of the real estate of the deceased;

(*c*) the administration of the trust;

(*d*) any act to be done or step to be taken which the Court could have ordered to be done or taken if any such administration order as aforesaid had previously been made.

**14.** Any mortgagee or mortgagor, whether legal or equitable, or any person entitled to or having property subject to a legal or equitable charge, or any person having the right to foreclosure or redeem any mortgage, whether legal or equitable, may take out as of course an originating summons, returnable in the chambers of a Judge for such relief of the nature or kind following as may by the summons be specified, and as the circumstances of the case may require; that is to say-

*Originating summons for foreclosure*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Payment of moneys secured by the mortgage or charge;

Sale;

Foreclosure;

Delivery of possession (whether before or after foreclosure) to the mortgagee or person entitled to the charge by the mortgagor or person having the property subject to the charge or by any other person in, or alleged to be in possession of the property;

Redemption;

Reconveyance;

Delivery of possession by the mortgagee.


## II-*Applications in Court*

**15.**   Where any application is authorised to be made to the Court or a Judge, such application, if made to a Judge in Court, shall be made by motion.

*Application by motion*

**16.**   Unless the Court or a Judge give special leave to the contrary, there must be at least four clear days between the service of a notice of motion and the day named on the notice for hearing the motion.

*Length of notice of motion*

**17.**   There shall be served with the notice of motion a copy of any affidavit on which the party moving intends to rely at the hearing of such motion.

*Copy of affidavit to be served with notice*

**18.**   If, at the hearing of the motion, the Court or a Judge shall be of opinion that any person to whom notice has not been given ought to have or to have had such notice, the Court or a Judge may either dismiss the motion, or adjourn the hearing thereof in order that such notice may be given, upon such terms as to the Court or a Judge may seem fit.

*O. 30, 31*
*Where all parties not served*

**19.**   The plaintiff may, by leave of the Court or a Judge, cause any notice of motion to be served upon a defendant with the writ of summons.

*Service with writ of summons*

**20.**   Oral evidence shall not be heard in support of any motion unless by leave of the Court or a Judge.

*Oral evidence*

**21.**   In addition to or in lieu of affidavits, the Court or a Judge may, if it or he thinks expedient, examine any witness *viva voce*, or receive documents in evidence, and may summon any person to attend to produce documents, or to be examined or cross-examined, in like manner as at the hearing of a suit.

*Evidence in addition to or in lieu of affidavits*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**22.**    Such notice as the Court or a Judge, in each case according to the circumstances, considers reasonable shall be given to the persons summoned, and to such persons (parties to the cause or matter or otherwise interested) as the Court or a Judge considers entitled, to inspect the documents to be produced, or to examine the persons summoned, or to be present at their examination, as the case may be.

Notice to parties

**23.**    The evidence of a witness, on examination, shall be taken in like manner, as nearly as may be, as at the hearing of a suit.

Evidence, how taken

**24.**    Upon the hearing of any motion, the Court or a Judge may, on such terms as it or he may deem fit, allow any affidavit to be used, although such affidavit has not been served on the opposite side with the notice of motion.

Affidavit not filed with notice of motion

ORDER XXXI

PLACE AND MODE OF TRIAL AND SETTING DOWN FOR TRIAL

(*No.* 275 *of* 1959)

**1.**  (1)   Except where an order for summary trial has been made, an order for directions in every action shall determine the place and mode of trial, but any order under this rule may be varied by a subsequent order of the Court or a Judge at any time at or before the trial.

Place and mode of trial

(2)  In any action described under sub-rule (1), different questions, whether of fact or law, may be ordered to be tried at different places or by different modes of trial and one or more questions may be ordered to be tried before the others.

(3)  The references in this Order to the summons for directions include references to any summons or application to which the provisions of Order XIX are applicable, with or without modifications.

O. 31

(*As amended by S.I. No.* 71 *of* 1997)

**2.**  (1)   Every order made in an action commenced by writ of summons, which provides for the mode of trial, shall provide for a period within which the plaintiff is to set down the action for trial.

Time within which to set down

(2) Where the plaintiff does not, within the period fixed under sub-rule (1), set the action down for trial, the defendant may set the action down for trial or may apply to the Court of a Judge to dismiss the action for want of prosecution, and on the hearing of any such application, the Court or a Judge may order the action to be dismissed accordingly or may make such other order as the Court or a Judge may seem just.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(3)  Every order in an action described in sub-rule (1) which provides for the mode of trail shall contain an estimate of the length of the trial.

(*As amended by S.I. No.* 71 *of* 1997)

**3.**  (1)  In order to set down for trial an action commenced by writ of summons, the party setting it down shall deliver to the proper
officer a request that the action may be set down for trial at the place specified in the order made on the summons for directions, together with two bundles (one for the use of the Judge and the other, which may be a carbon copy, to serve as the record) each consisting of one copy each of the following documents:

<span style="float:right">Lodging documents when setting down for trail</span>

(*a*)  the writ;

(*b*)  all the pleadings (including affidavits ordered to stand as pleadings);

(*c*)  all inter-locutory orders, together with one copy of any requests or orders for particulars and one copy of any particulars given;

(*d*)  any interrogatories with the answers thereto;

(*e*)  copies of settled issues under Order XXII; and

(*f*)  any other documents likely to be required by the Judge and not otherwise referred to in this sub-rule.

(2)  Each of the bundles referred to in sub-rule (1) shall-

(*a*)  be bound up in book form in chronological order;

(*b*)  have the pages thereof serially numbered;

(*c*)  contain a complete index of the contents therof; and

(*d*)  have endorsed on a backsheet thereon the title of the action together with the names, addresses and telephone numbers of the advocates for the parties, or, in the case of a party who has no advocate, of the party himself.

<span style="float:right">O. 31</span>

(3)  The original bundles referred to in sub-rule (1) (which shall serve as the record) shall bear the receipt number of the fees paid on setting down such action for trial.

(4)  Where a new trial becomes necessary in the case of action commenced by a writ of summons, the procedure for the setting down the action for the new trial shall be that specified in sub-rule (1), (2) and (3) except that-

(*a*)  the bundle referred to in sub-rule (1) (which is to serve as the record) shall be bespoken from the person in whose custody it is and sent to the proper officer; and

(*b*)  there shall be delivered, along with the request that the action be set down, a backsheet with the title of action thereon, and the names, addresses and telephone numbers of the advocates for the parties, or, in the case of a party who has no advocate, of the party himself, duly endorsed with the amount of the fee payable on setting down the action for the new trial.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(5)  In this rule, "proper officer" means-

   (*a*)   in relation to an action to be set down at the Principal Registry for trial, the Registrar, Deputy Registrar, or the Assistant Registrar in charge of civil actions;

   (*b*)   in relation to an action to be set down at a District Registry for trial, the District Registrar or the Assistant Registrar in charge of civil actions.

*(As amended by S.I. No. 71 of 1997)*

**4.**   Except for cases involving constitutional issues or the liberty of an individual or an injunction or where the trial Judge considers the case to be unsuitable for referral, every action may, upon being set down for trial, be referred by the trial Judge for mediation and where mediation fails the trial Judge shall summon the parties to fix a hearing date. The referral order shall be in form 28A in the First Schedule.
*(As amended by S.I. No. 71 of 1997)*

Reference to mediation

**5.**   There shall be kept by the mediation officer or proper officer a list of mediators who have been trained and certified by the court to act in this capacity with the field or fields of bias or experience indicated against each of their names. The mediators shall be of not less than seven years working experience in their respective fields.
*(As amended by S.I. No. 71 of 1997)*

List of mediators

**6.**   The mediator shall sign for and collect from the mediation office or proper officer the record referred to under sub-rule (3) of rule 3 of this Order.
*(As amended by S.I. No. 71 of 1997)*

O. 31
Collection of records by mediator

**7.**   The mediator shall, soon after collecting the record, contact the parties and give them the date, time and venue of the mediation and shall, not more than sixty days from the date of collecting the record, complete the mediation process.
*(As amended by S.I. No. 71 of 1997)*

Conductor of mediator

**8.**   The parties shall appear in person at the mediation. If they are represented, their advocates shall accompany them. If a party is a corporation, partnership, governmental agency, or entity other than an individual, an officer or director of sufficient rank to settle the matter shall attend.
*(As amended by S.I. No. 71 of 1997)*

Appearance before mediator

**9.**   At the commencement of the mediation, the mediator shall read and explain to the parties the statement of understanding on the role of the mediator in form 28B in the First Schedule set out in the Appendix to these Rules, and shall require the parties to sign the form.
*(As amended by S.I. No. 71 of 1997)*

Statement of understanding on role of mediator

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**10.**    The mediator shall not be required to keep a record of the mediation proceedings and any document prepared by the mediator during the proceedings shall, where the mediation fails, be destroyed at the end of the mediation process in the presence of the parties. Statements made during mediation are confidential and privileged, and shall not be used as evidence in any matter. The mediator shall not communicate with any trial Judge about the mediation.

*Record of mediation*

*(As amended by S.I. No.* 71 *of* 1997)

**11.**    (1)  If the mediation fails, the mediator shall not more than ten days after the close of the mediation proceedings, return the record to the mediation office or proper officer with a report in form 28C in the First Schedule to these Rules, stating that the mediation has failed.

*Return of records to mediation office or proper officer*

(2)  The mediation officer or proper officer shall, not more than seven days after receipt of the report referred to in sub-rule (1), submit the record to the trial Judge who shall, not more than fourteen days after receipt of the record from the mediation officer or proper officer summon the parties in terms of rule 5.

*(As amended by S.I. No.* 71 *of* 1997)

**12.**    A mediation settlement in form 28D in the First Schedule to these Rules shall be signed by the parties and the mediator and registered under Order XXXVII, rule 1, and shall have the same force and effect for all purposes as a judgement, order or decision and be enforced in the like manner.

*Registration of Mediation Settlement O. 31, 32*

*(As amended by S.I. No.* 71 *of* 1997)

**13.**    There shall be paid to the mediator a mediation fee as agreed between the parties and the mediator which shall be paid by the parties in equal proportions at the time of lodging documents for trial:

*Mediator fee*

Provided that where the parties and the trial judge fail to agree on the fee, the fee shall be referred to the trial judge for determination.

*(As amended by S.I. No.* 71 *of* 1997)

**14.**    No appeal shall lie against a registered mediated settlement.

*No appeal against settlement*

*(As amended by S.I. No.* 71 *of* 1997)

ORDER XXXII

*(No.* 76 *of* 1962)

RECORDING OF PROCEEDINGS

**1.**    In this Order, unless the context otherwise requires-

*Interpretation*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

"official shorthand writer", "official recording apparatus operator" and "official transcriber" mean a shorthand writer, a recording apparatus operator and a transcriber regularly employed by the Judicature, as the case may be;

"record of proceedings" means a record made in terms of rule 2 or 3;

"recording apparatus" includes any mechanical, electrical, magnetic, electronic or other apparatus whereby speech may be recorded in a form capable of subsequent audible reproduction;

"Registrar" includes Deputy Registrar, District Registrar, Assistant Registrar and Deputy Assistant Registrar;

*(3)"shorthand" includes palantyping or any other system of visible recording of words, other than longhand writing, authorised by the order of the Chief Justice for the recording of proceedings in accordance with this Order;

* Palantype, Pitman's shorthand and Gregg's shorthand authorised by G.N. No. 77 of 1962

"shorthand writer" includes an operator of palantype or other authorised apparatus whereby words may be recorded in shorthand;

"transcriber" means a person who-

(*a*) operates any apparatus for the audible reproduction of a record of proceedings made by recording apparatus; or

*Palantype, Pitman's shorthand and Gregg's shorthand authorised by G.N. No. 77 of 1962.

(*b*) reads any shorthand record of proceedings and transcribes such record into a typewritten or other longhand copy of such record.

O. 32

(*As amended by S.I. No.* 71 *of* 1997)

**2.** (1) In every cause or matter a record of the oral evidence shall, at the discretion of the presiding Judge or Registrar, be made in longhand by the presiding Judge or Registrar or in shorthand by such Judge or Registrar or by an official or other shorthand writer, or by means of recording apparatus.

Recording of evidence

(2) No formal direction by the presiding Judge or Registrar as to the manner of making such record shall be required, except where such record is to be made in shorthand or by means of recording apparatus by a person other than the presiding Judge or Registrar or an official shorthand writer or official recording apparatus operator.

(3) Every such record made in longhand or shorthand shall be made in the English language:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Provided that the presiding Judge or Registrar may direct that the whole or any part of the evidence shall be recorded as well in any other language employed by a witness.

(4)  Every such record made in longhand or in shorthand by a person other than the presiding Judge or Registrar shall be verbatim showing separately each question and the answer thereto.

(5)  Every such record made in longhand or in shorthand by a person other than the presiding Judge or Registrar shall be certified by the writer or shorthand writer who made it to be a true record and such certificate shall be signed and dated by the person who shall make it.

(6)  Every such record made by means of recording apparatus shall be labelled and made secure in the manner directed by the Registrar, by the recording apparatus operator who made it.

(7)  (*a*)  Unless the presiding Judge or Registrar shall otherwise direct, every record of evidence made in shorthand shall be placed in the docket containing the papers relating to the case of which it is a record.

(*b*)  Every record of evidence made by means of recording apparatus, together with any notes thereon, made by a recording apparatus operator shall be filed in accordance with directions given by the Registrar.

**3.**    In every cause or matter, any part of the proceedings other than the oral evidence may, at the discretion of the presiding Judge or Registrar, be recorded in the manner set out in the last preceding rule in so far as the same is applicable, or by the presiding Judge or Registrar making a note in longhand or shorthand, of that part of the proceedings not so recorded. *Recording of proceedings O. 32*

**4.** (1)  No transcript shall be made of a record of proceedings made in shorthand or by means of recording apparatus except by the direction of the presiding Judge or the Registrar: *Transcription of record of proceedings*

Provided that such direction shall not be required where application is made-

(i)    by the Attorney-General for a copy of the record of any criminal proceedings;

(ii)    by the Attorney-General for a copy of the record of any matrimonial proceedings; or

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(iii)     by any party to a cause or matter for a copy of the record of the proceedings in such cause or matter;

or where it is necessary for a transcript of the whole or any part of such record to be made for incorporation in a record of appeal for an appeal to the Supreme Court of Zambia in accordance with the rules of that Court.

(2)  Every record of proceedings which shall be transcribed shall be certified by the transcriber to be a true and correct transcript and such certificate shall be signed and dated by the person who shall make it. A transcript so certified shall, subject to any amendment by the presiding Judge or Registrar, be deemed to be correct, and shall constitute part of the records of the Court.

(*As amended by S.I. No.* 63 *of* 1964 *and S.I. No.* 71 *of* 1997)

**5.** (1)  Application may be made by any person to the Registrar for a transcript to be made of the record of the proceedings in any cause or matter and for a copy of such transcript, or for a copy of any transcript thereof previously made, and he shall state his reasons for such application. The Registrar may, subject to the directions of the presiding Judge, and shall, if the applicant was a party to the cause or matter, authorise the making of a transcript of such proceedings and the supply to the applicant of a copy thereof, or the supply of a copy of any previously existing transcript of such evidence, in either case upon payment of the prescribed fees by the applicant, except where the applicant shall be exempted from the payment of such fees as hereinafter provided. A party who was not exempted from the payment of such fees, shall pay the prescribed fee for making such transcript as well as the fee for the copy.

Supply of copies of transcript and fees therefor

(2)  Any party to any criminal cause or matter at whose request a transcript of the record of proceedings therein is made and a copy thereof supplied, or a copy of any transcript of such proceedings previously made is supplied for the purpose of an appeal to the Supreme Court of Zambia, and who is a poor appellant within the meaning of the Legal Aid Act, shall be totally, or partially, exempted from payment of the prescribed fees for the making of the transcript or the supply of a copy thereof, or of any previously existing transcript, or both, according to the total or partial exemption of payment of fees of the Supreme Court granted to such party in accordance with the Legal Aid Act.

O.32, 33
Cap. 34
Cap. 34

(*As amended by S.I. No.* 63 *of* 1964 *and S.I. No.* 71 *of* 1997)

**6.** (1)  Every official shorthand writer, official recording apparatus operator or official transcriber shall be deemed to be an officer of the Court and shall, before entering on his duties, take before the Registrar an oath or affirmation in the appropriate form prescribed in the Fourth Schedule.

Oaths

(2)  Every shorthand writer, recording apparatus operator or transcriber, other than an official shorthand writer, official recording apparatus operator or official transcriber, shall be a person approved by the presiding Judge or Registrar for employment in recording or transcribing the proceedings in a particular cause or matter and shall for that purpose be deemed to be an officer of the Court. Every such shorthand writer, recording apparatus operator or transcriber shall, before entering on his duties, take before the Registrar an oath or affirmation in the appropriate form prescribed in the Fourth Schedule.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

## ORDER XXXIII

### POSTPONEMENT OF HEARING

**1.**   The Court may postpone the hearing of any civil cause or matter, on being satisfied that the postponement is likely to have the effect of better ensuring the hearing and determination of the questions between the parties on the merits, and is not made for the purpose of mere delay. The postponement may be made on such terms as to the Court seem just.

In what cases

**2.**   Where such an application is made on the grounds of the absence of a witness, the Court shall require to be satisfied that his evidence is material, and that he is likely to return and give evidence within a reasonable time.

Absence of witness

**3.**   Where an application is made for the purpose of enabling the party applying to obtain the evidence of a witness resident out of the jurisdiction, the Court shall require to be satisfied that the evidence of the witness is material, and that he is permanently residing out of the jurisdiction, or does not intend to come within the jurisdiction within a reasonable time.

Witness out of jurisdiction

## ORDER XXXIV

O. 34, 35

### ORDER OF BUSINESS

**1.**   Subject to the provisions of the Act and these Rules, the Court may, in its discretion, appoint any day or days, from time to time, for the hearing of causes and matters, as circumstances require.

Days of sittings

*(As amended by No.* 309 *of* 1960)

**2.**   Subject to special arrangements for any particular day, the business of the day shall be taken, as nearly as circumstances permit, in the following order:

Order of business at sittings

(*a*)   Judgments standing over for delivery;

(*b*)   *Ex parte* motions;

(*c*)   Motions on notice, and arguments on showing cause against orders;

(*d*)   Civil causes and matters for hearing.

The above shall be taken in the order in which they stand in the lists, unless the Court sees fit to vary the order.

## ORDER XXXV

### NON-ATTENDANCE OF PARTIES AT HEARING

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**1.**   Where a civil cause on the cause list has been called, if neither party appears, the Court shall, unless it sees good reason to the contrary, strike the cause out of the cause list.

<div style="float:right">Non-appearance of both parties</div>

**2.**   If the plaintiff does not appear, the Court shall, unless it sees good reason to the contrary, strike out the cause (except as to any counter-claim by the defendant), and make such order as to costs, in favour of any defendant appearing, as seems just:

<div style="float:right">Of plaintiff</div>

Provided that, if the defendant shall admit the cause of action to the full amount claimed, the Court may, if it thinks fit, give judgment as if the plaintiff had appeared.

**3.**   If the plaintiff appears, and the defendant does not appear or sufficiently excuse his absence, or neglects to answer when duly called, the Court may, upon proof of service of notice of trial, proceed to hear the cause and give judgment on the evidence adduced by the plaintiff, or may postpone the hearing of the cause and direct notice of such postponement to be given to the defendant.

<div style="float:right">Of defendant</div>

**4.**   Where the defendant to a cause which has been struck out under rule 2 has a counter-claim, the Court may, on due proof of service on the plaintiff of notice thereof, proceed to hear the counter-claim and give judgment on the evidence adduced by the defendant, or may postpone the hearing of the counter-claim and direct notice of such postponement to be given to the plaintiff.

<div style="float:right">Counter-claim where plaintiff does not appear<br>O. 35, 36</div>

**5.**   Any judgment obtained against any party in the absence of such party may, on sufficient cause shown, be set aside by the Court, upon such terms as may seem fit.

<div style="float:right">Setting aside of judgment made in absence of party</div>

**6.**   Any civil cause struck out may, by leave of the Court, be replaced on the cause list, on such terms as to the Court may seem fit.

<div style="float:right">Relisting of cause struck out</div>

ORDER XXXVI

JUDGMENT

**1.**   The decision or judgment in any suit shall be delivered in open court, unless the Court otherwise directs.

<div style="float:right">Delivery of judgment</div>

**2.**   If the Court reserves judgment at the hearing, parties to the suit shall be served with notice to attend and hear judgment, unless the Court, at the hearing, states the day on which judgment will be delivered, in which case there shall be no further notice.

<div style="float:right">Notice when reserved</div>

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**3.** All parties shall be deemed to have notice of the decision or judgment, if pronounced at the hearing, and all parties served with notice to attend and hear judgment shall be deemed to have notice of the judgment when pronounced.

<div style="float:right">When parties deemed to have notice</div>

**4.** A minute of every judgment, whether final or interlocutory, shall be made, and every such minute shall be a decree of the Court, and shall have the full force and effect of a formal decree. The Court or a Judge may order a formal decree to be drawn up on the application of either party.

<div style="float:right">Minute of judgment: its effect. First Schedule, Form 33</div>

**5.** If the defendant shall have been allowed to set off any demand or counter-claim against the claim of the plaintiff, the judgment shall state what amount, if any, is due to the plaintiff, and what amount, if any, is due to the defendant, and shall be for the recovery of any sum which shall appear to be due to either party. The judgment with respect to any sum awarded to the defendant shall have the same effect and be subject to the same rules as if such sum had been claimed by the defendant in a separate suit against the plaintiff.

<div style="float:right">Where set-off allowed</div>

**6.** A person directed by a decree or order to pay money or do any other act is bound to obey the decree or order without any demand for payment or performance, and, if no time is therein expressed, he is bound to do so immediately after the decree or order has been made (except as to costs, the amount whereof may require to be ascertained by taxation), unless the time shall be enlarged by any subsequent order.

<div style="float:right">Decree to be obeyed without demand</div>

**7.** The Court or a Judge, at the time of making any judgment or order, or at any time afterwards, may direct the time within which the payment or other act is to be made or done, reckoned from the date of the judgment or order, or from some other point of time, as the Court or a Judge thinks fit.

<div style="float:right">O. 36, 37 Court may direct time for payment or performance</div>

**8.** Where a judgment or order is for a sum of money, interest shall be paid thereon at the average of the short-term deposit-rate per annum prevailing from the date of the cause of action or writ as the court or judge may direct to the date of judgment

<div style="float:right">Rate of interest</div>

(*As amended by S.I. No. 71 of 1997*)

**9.** Where any judgment or order directs the payment of money, the Court or a Judge may, for any sufficient reason, order that the amount shall be paid by installments, with or without interest. The order may be made at the time of giving judgment, or at any time afterwards, and may be rescinded or varied upon sufficient cause, at any time. The order shall state that, upon the failure of any installment, the whole amount remaining unpaid shall forthwith become due:

<div style="float:right">Payment by installments and stay of execution</div>

Provided that where there is a default in paying any one installment, there shall be no order for stay of execution on the balance.

(*As amended by S.I. No. 71 of 1997*)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**10.**    Except as provided for under rule 9, the Court or Judge may, on sufficient grounds, order stay of execution of judgment.

*Register of execution*

(*As amended by S.I. No.* 71 *of* 1997)


## ORDER XXXVII

### RECORDING OF JUDGMENTS

(*No.* 309 *of* 1960)


**1.**    Every judgment entered at any Registry of the High Court for a fixed or liquidated sum of money shall be recorded by the proper officer in the Judgments Register which shall be kept there. Any other judgment or order shall be recorded in the Civil Causes Register.

*Register of judgments*

**2.**    Subject as hereinafter provided by this rule, every Judgments Register and the Judgments Section of every Civil Causes Register shall be open for personal inspection during the hours in which a Registry is open to the public.

*Judgment Registers open to inspection*

**3.**    Where it is desired to make a personal search of the Judgments Register or of the Judgments Section of the Civil Causes Register for entries against a named person, the applicant shall first lodge at the Registry in which a search is to be made a form of application in the prescribed form and shall pay the fees prescribed.

*Individual searches First Schedule, Form 50*

**4.**    When it is desired to make general searches, during any calendar year, of the Judgments Register in any Registry of the High Court for entries against any number of unspecified judgment debtors, the applicant shall first apply to the Registrar of the High Court in the prescribed form and, on payment of the prescribed fee, the Registrar of the High Court shall issue or cause to be issued to such applicant a form of permit in the prescribed form. The production of such form of permit signed by the Registrar shall be sufficient authority to make general searches of the Judgments Registers kept in each Registry during the period specified in such permit and at times when such Registers are open for public inspection.

*O. 37, 38 General searches First Schedule, Forms 51 and 52*

**5.**    Where any judgment entered in a Judgments Register or a Civil Causes Register has been set aside, varied or reversed, the Registrar shall insert or cause to be inserted in the Judgments Register or Civil Causes Register, as the case may be, a note to that effect against the record of such judgment.

*Judgments set aside, varied or reversed*

**6.**    Where any judgment entered in a Judgments Register or a Civil Causes Register has been wholly satisfied or complied with, the Registrar shall, on an application in writing made by any party to the action in which the judgment was entered, and upon proof of the satisfaction thereof, insert or cause to be inserted in the Judgments Register or Civil Causes Register, as the case may be, a note to that effect against the record of such judgment.

*Judgments satisfied*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

ORDER XXXVIII

(*No.* 309 *of* 1960)

THE AFFILIATION AND MAINTENANCE OF CHILDREN ACT

I-INTERPRETATION

**1.**   In this Order, unless the context otherwise requires-

Interpretation.

"the Act" means the Affliation and Maintenance of Children Act

Cap. 64

"proper officer" means-

(*a*)    in the case of the High Court, the officer designated by the Registrar for the purposes of the provision of the Act in which the expression occurs: and

(*b*)    in the case of a subordinate court, the clerk of that court;

"register" means the register kept for the purposes of the Act.

(*As amended by S.I. No.* 71 *of* 1997

II-PROCEDURE UNDER PART V OF THE ACT

O. 38

**2.**  (1)  An application for the registration of a maintenance order in a subordinate court may be made-

Registration of orders

(*a*)    on the making of the maintenance order, or an order varying the maintenance order; or

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*b*)     at any time by lodging with the proper officer an affidavit by the applicant, together with a copy thereof, stating-

    (i)     the address and occupation of the person liable to make payments under the order;

    (ii)    the date of service of the order on the person liable to make payments thereunder or, if the maintenance order has not been served, the reason why service has not been effected;

    (iii)   the reason why registration of the order in a magistrate's court is desired;

    (iv)    the amount of any arrears due to the applicant under the order;

    (v)     that the order is not already registered under the Act; and

    (vi)    whether any proceedings are pending, or any writ, warrant or other process is in force, for the enforcement of the order.

(2)  Where the application is granted-

(*a*)     the applicant shall, if he has not already done so, lodge with the proper officer a certified copy of the maintenance order;

(*b*)     no proceedings shall be begun, and no writ, warrant or other process shall be issued for the enforcement of the maintenance order before the registration of the order or before the expiration of fourteen days from the grant of the application, whichever first occurs;

(*c*)     the proper officer shall, on being satisfied within the said period of fourteen days that no such proceedings or process begun or issued before the grant of the application remain pending or in force, submit a certified copy of the order endorsed with the note that the application has been granted, together with a copy of any affidavit lodged under sub-rule (1), to the clerk of the subordinate court for the District in which the person liable to make payments under the order appears to be;

(*d*)     on receipt of notice that the order has been duly registered in the subordinate court, the proper officer shall enter particulars of the registration in the court minutes.

(3)  On receipt of a certified copy of a subordinate court order sent to him pursuant to the Act, the proper officer shall cause the order to be registered in the High Court by filing the copy and making an entry in the register, and shall send notice to the clerk of the subordinate court that the order has been duly registered.

O. 38

(*As amended by S.I. No. 71 of 1997*)

**3.**  (1)  Where the High Court makes an order varying or discharging an order registered in a subordinate court, the proper officer shall send a certified copy of the original order to the clerk of the subordinate court.

Variation or discharge of registered order

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)   Where a certified copy of an order varying a High Court order registered in a subordinate court is received from the clerk of the subordinate court, the proper officer shall file the copy and enter particulars of the variation in the places in which particulars of the registration are required by paragraph (*a*) sub-rule (2), rule 2 to be entered.

(3)   Where a subordinate court varies or refuses to vary a High Court order registered in the subordinate court, an appeal from the variation or refusal shall lie to a Judge of the High Court, and shall be heard by the Judge in chambers or in a court as he shall direct.

(4)   Where a certified copy of an order varying or discharging a subordinate court order registered in the High Court is received from the clerk of the subordinate court, the proper officer shall-

(*a*)   file the copy; and

(*b*)   enter particulars of the variation or discharge in the register.

(*As amended by S.I. No.* 71 *of* 1997)

**4.** (1)   If a person entitled to receive payments under an order registered in the High Court desires the registration to be cancelled, he may give notice under sub-section (1) of *twenty-four* of the Act by notifying the proper officer.

Cancellation of registration

(2)   Where the High Court, on varying or discharging an order registered in a subordinate court, decides to give notice under sub-section (2) of the section *twenty-four* of the Act, the proper officer shall endorse the notice on the certified copy referred to in sub-rule  (1) of rule 3.

(3)   Where notice is given under section *twenty-four* of the Act in respect of an order registered in the High Court, the proper officer, on being satisfied by an affidavit by the person entitled to receive payments under the order that no process for the enforcement of the order issued before the giving of the notice remains in force, shall-

(*a*)   cancel the registration by entering particulars of the notice in the register; and

O. 38

(*b*)   send notice of the cancellation to the clerk of the subordinate court by which the order was made, stating that the cancellation is in consequence of a notice given under subsection (1) of section *twenty-four*.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(4)   Where notice is received from the clerk of a subordinate court that the registration of an order in the High Court has been cancelled, the proper officer shall enter particulars of the cancellation in the places in which particulars of the registration are required by paragraph (*a*), sub-rule (2) of rule 2.

(*As amended by S.I. No.* 71 *of* 1997)

**5.**  (1)  An application for an attachment of earnings order by a person entitled to receive payments under a maintenance order shall be made to the Court or a Judge by summons and the respondent to the application (in this Part called the defendant) shall be the person liable to make payments under the maintenance order.

Application for attachment of earnings order

(2)  Where a maintenance order has been registered and has been entered under its cause number and title, any application for an attachment of earnings order shall be made by summons.

(3)  The summons shall be supported by an affidavit by the applicant stating-

(*a*)    particulars of the maintenance order;

(*b*)    the date of the service of the maintenance order on the defendant or, if the maintenance order has not been served, the reason why service has not been effected;

(*c*)    the amount of any arrears due to the applicant under the maintenance order;

(*d*)    particulars of any proceedings which have been taken for the enforcement of the maintenance order;

(*e*)    the name and address of any person believed to be the defendant's employer;

(*f*)    any of the following particulars relating to the defendant as are known to the applicant:

    (i)    his full name and address;

    (ii)   his age;

    (iii)  his place of work;

    (iv)   the nature of his work;

(*g*)    any other facts relevant to the means of the defendant as are known to the applicant.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(4)  Unless otherwise directed, the summons, together with a copy of the affidavit in support, shall be served on the defendant, either by way of personal service or by post letter sent to the address shown on the original order or the last known address of the defendant, at least fourteen days before the return date; and the defendant may, within ten days after service, file an affidavit in answer and in that case shall deliver a copy of his affidavit to the applicant within twenty-four hours after filing it.

*(As amended by S.I. No.* 71 *of* 1997)

**6.**   An order made under sub-section (1) of section *thirty-four* of the Act (which empowers the Court to order a defendant to give particulars for the purpose of enabling him to be identified) may specify any of the particulars referred to in paragraph (*f*), sub-rule (3) of rule 5 and an attachment of earnings order shall contain such of those particulars as are known to the Court.

*(As amended by S.I. No.* 71 *of* 1997)

**7.**   (1)  An attachment of earnings order shall be in Form 34 set out in the First Schedule and when drawn up by the applicant or his advocate four copies thereof shall be furnished.

(2)  The Court shall cause a copy of every attachment of earnings order and of every order varying or discharging such an order to be served on the defendant and on the person to whom the attachment of earnings order is directed.

(3)  Service on a person other than a corporation shall be effected by sending the copy of the order to him at his last known place of residence or postal address, or, where he is the person to whom the attachment of earnings order is directed, at his place of business or the postal address thereof.

(4)  Service on a corporation shall be effected by sending the copy of the Order to the registered office of the corporation, or, if the corporation has no registered office, to any place where it resides or carries on business:

Provided that where the corporation has requested that any communication relating to the defendant or to the class or description of persons to which he belongs shall be directed to the corporation at a particular address, service may be effected at that address instead of at the registered office of the corporation or a place where it resides or carries on business.

*(As amended by S.I. No.* 71 *of* 1997)

**8.**   Where an attachment of earnings order ceases to have effect and the related maintenance order-

O. 38

Particulars

Form and service of order

Notice of cessation of order

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(a)   was made by the High Court and is not registered in a subordinate court under the Act;

(b)   was made by a subordinate court and is registered in the High Court under the Act; or

(c)   has ceased to be registered in the High Court under section *thirty-two* of the Act;

the proper officer shall give notice of the cessation to the person to whom the order was directed.

*(As amended by S.I. No.* 71 *of* 1997)

O. 38

**9.** (1)  The officer to whom payment is directed to be made under an attachment of earnings order made by the High Court shall give notice where the arrears under the related maintenance order have been discharged by sending the notice in form 35 set out in the First Schedule to the person to whom he is required to pay sums received under the attachment of earnings order and to the defendant.

(2)   Where notice is given under sub-rule (1), the defendant may apply within fourteen days after the date of the notice, for an order discharging or varying the attachment of earnings order; and such an application shall be made to the Court or a Judge by summons returnable not less than four days after service on the person in whose favour the attachment of earnings order was made.

*(As amended by S.I. No.* 71 *of* 1997)

Appropriate variation

**10.** (1)  A person to whom an attachment of earnings order made by the High Court is directed shall give notice under sub-section (4) of section *thirty-three* of the Act (which relates to cases in which such a person is not the defendant's employer) by sending a notice in Form 36 in the First Schedule to the proper officer.

(2)   Where, on receipt of a notice under sub-rule (1), the Court discharges the attachment of earnings order in pursuance of sub-section (3) of section *thirty-two* of the Act, the Court shall cause the person in whose favour the order was made to be notified of the discharge.

*(As amended by S.I. No.* 71 *of* 1997)

Notice of non-employment of defendant

**11.**   Where an attachment of earnings order has been made by the High Court, an application under subsection (1) of section *thirty-five* of the Act (which enables the Court to determine whether payments of a particular class or description are earnings) by the person to whom the order is directed by the defendant or by the person in whose favour the order was made (in this rule called the parties to the order) shall be made to the Court or a Judge by summons returnable not less than four days after service on the parties to the order other than the applicant.

*(As amended by S.I. No.* 71 *of* 1997)

Application for determination whether payments are earnings

ORDER XXXIX

O. 39, 40

REVIEW

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**1.**   Any Judge may, upon such grounds as he shall consider sufficient, review any judgment or decision given by him (except where either party shall have obtained leave to appeal, and such appeal is not withdrawn), and, upon such review, it shall be lawful for him to open and rehear the case wholly or in part, and to take fresh evidence, and to reverse, vary or confirm his previous judgment or decision:

   Provided that where the judge who was seised of the matter has since died or ceased to have jurisdiction for any reason, another judge may review the matter.

*(As amended by S.I. No.* 71 *of* 1997)

**2.**   Any application for review of any judgment or decision must be made not later than fourteen days after such judgment or decision. After the expiration of fourteen days, an application for review shall not be admitted, except by special leave of the Judge on such terms as seem just.

**3.**   The application shall not of itself operate as a stay of execution unless the Judge so orders, and such order may be made, upon such terms as to security for performance of the judgment or decision or otherwise as the Judge may consider necessary. Any money in court in the suit shall be retained to abide the result of the motion or the further order of the Judge.

ORDER XL

COSTS

**1.**   Under the denomination of costs is included the whole of the expenses necessarily incurred by either party on account of any cause or matter, and in enforcing the decree or order made therein, such as the expenses of summoning and of the attendance of the parties and witnesses, and of procuring copies of documents, the fees of court, or the remuneration of referees or mediator.

*(As amended by S.I. No.* 71 *of* 1997)

**2.**   All questions relating to the amount of costs shall, unless summarily determined by the Court, be referred to a taxing officer, and, after notice of taxation to the parties, be ascertained by him.

*(No.* 309 *of* 1960)

**3.** (1)  Any party to any taxation proceedings who is dissatisfied with the allowance or disallowance in whole or in part of any item by a taxing officer, or with the amount allowed by a taxing officer in respect of any item, may apply to the taxing officer to review his decision in respect of that item.

Power of review

Application within 14 days

Application not a stay of proceedings

What included in costs

How amount of costs determined

Application to taxing officer for review O. 40

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)   An application under this rule for review of a taxing officer's decision may be made at any time within fourteen days after that decision or such shorter period as may be fixed by the taxing officer:

Provided that no application under this rule for review of a decision in respect of any item may be made after the signing of the taxing officer's certificate dealing finally with that item.

(3)   Every applicant for review under this rule shall at the time of making his application deliver to the taxing officer objections in writing specifying by a list the items or parts of items the allowance or disallowance of which, or the amount allowed in respect of which, is objected to and stating concisely the nature and grounds of the objection in each case, and shall deliver a copy of the objections to each other party (if any) who attended on the taxation of those items or to whom the taxing officer directs that a copy of the objections shall be delivered.

(4)   Any party to whom a copy of the objections is delivered under this rule may, within fourteen days after delivery of the copy to him or such shorter period as may be fixed by the taxing officer, deliver to the taxing officer answers in writing to the objections stating concisely the grounds on which he will oppose the objections, and shall at the same time deliver a copy of the answers to the party applying for review and to each other party (if any) to whom a copy of the objections has been delivered or to whom the taxing officer directs that a copy of the answers shall be delivered.

(*No.* 309 *of* 1960)

**4.** (1)   Where an application is made under the last foregoing rule for a review of a decision of an Assistant Registrar empowered to tax bills of costs, the review shall be carried out by a taxing master; but, save as aforesaid, a review under the last foregoing rule shall be carried out by the taxing master to whom the taxation was originally assigned.

Review by taxing master

(2)   On reviewing any decision in respect of any item, a taxing master may receive further evidence and may exercise all the powers which he might exercise on an original taxation in respect of that item, including the power to award costs of and incidental to the proceedings before him; and any costs awarded by him to any party may be taxed by him and may be added to or deducted from any other sum payable to or by that party in respect of costs.

(3)   A taxing master who has reviewed a decision in respect of any item shall issue his certificate accordingly and, if requested to do so by any party to the proceedings before him, shall state in his certificate or otherwise in writing by reference to the objections to that decision the reasons for his decision on the review, and any special facts or circumstances relevant to it.

O. 40

(*No.* 309 *of* 1960)

**5.** (1)   Any party who is dissatisfied with the decision of a taxing master to allow or to disallow any item in whole or in part on review under the two last foregoing rules, or with the amount allowed in respect of any item by a taxing master on any such review, may apply to a Judge for an order to review the taxation as to that item or part of an item.

Review of taxing master's certificate by a Judge

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(2)   An application under this rule for review of a taxing master's decision in respect of any item may be made at any time within fourteen days after the taxing master's certificate in respect of that item is signed, or such longer time as the taxing master at the time when he signs the certificate, or the Court at any time, may allow.

(3)   An application under this rule shall be made by summons and shall, except where the Judge thinks fit to adjourn into court, be heard in chambers.

(4)   Unless the Judge otherwise directs, no further evidence shall be received on the hearing of an application under this rule, and no ground of objection shall be raised which was not raised on the review by the taxing master but, save as aforesaid, on the hearing of any such application the Judge may exercise all such powers and discretion as are vested in the taxing master in relation to the subject-matter of the application.

(5)   On an application under this rule the Judge may make such order as the circumstances require, and in particular may order the taxing master's certificate to be amended or, except where the dispute as to the item under review is as to amount only, order the item to be remitted to the same or another taxing master for taxation.

(*No.* 309 *of* 1960)

**6.**   The cost of every suit or matter and of each particular proceeding therein shall be in the discretion of the Court or a Judge; and the Court or a Judge shall have full power to award and apportion costs, in any manner it or he may deem just, and, in the absence of any express direction by the Court or a Judge, costs shall abide the event of the suit or proceeding:

*Costs in discretion of Court*

Provided that the Court shall not order the successful party in a suit to pay to the unsuccessful party the costs of the whole suit; although the Court may order the successful party, notwithstanding his success in the suit, to pay the costs of any particular proceeding therein.

**7.**   The Court or a Judge may, on the application of any defendant, if it or he sees fit, require any plaintiff in any suit, either at the commencement or at any time during the progress thereof, to give security for costs to the satisfaction of the Court or a Judge, by deposit or otherwise, or to give further or better security, and may require any defendant to give security, or further or better security, for the costs of any particular proceeding undertaken in his interest.

*O. 40, 41
Security for costs*

**8.**   Where the Court or a Judge orders costs to be paid, or security to be given for costs by any party, the Court or a Judge may, if it or he thinks fit, order all proceedings by or on behalf of that party in the same suit or proceeding, or connected therewith, to be stayed until the costs are paid or security given accordingly, but such order shall not supersede the use of any other lawful method of enforcing payment.

*Stay of proceedings pending payment or security for costs*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

9.   The Court or a Judge may order any costs to be paid out of any fund or property to which a suit or matter relates.

*Costs out of fund in suit*

10.   Upon taxation of costs, the taxing officer may, in determining the remuneration to be allowed, have regard, subject to any rule of court, to the skill, labour and responsibility involved. If, on having regard to the said matters, the taxing officer considers that there are special reasons why costs in excess of those laid down in the Schedule to the Practitioners (Costs) Order should be allowed in any cause or matter, he may, in respect of any particular application made or business done, allow such costs as seem to him reasonable.

*Discretion of taxing officer*
*S.I. No. 88 of 1980*

(*As amended by No.* 165 *of* 1950, *No.* 309 *of* 1960, *No.* 206 *of* 1964 *and No.* 92 *of* 1980)

11.   In taxation of costs between party and party, nothing shall be allowed in respect of fees paid to the Court beyond what was necessary having regard to the amount recovered on judgment.

*Taxation*

12.   A reference to a page in any provision relating to costs shall mean a sheet of A4 size.

*Definition of page*

(*As amended by S.I. No.* 105 *of* 1986 *and S.I. No.* 174 *of* 1990)

ORDER XLI

ENFORCEMENT OF ORDERS

1.   Any order of the Court or a Judge made in any civil cause or matter may be enforced in the same manner as a decree to the same effect.

*Orders in general*

2.   Any interlocutory order may be enforced by any of the methods applicable thereto by which a final order is enforceable.

*Interlocutory orders*

3.   If any party fails to comply with any order to answer interrogatories, or for discovery or inspection of documents, he shall be liable to attachment. He shall also, if a plaintiff, be liable to have his action dismissed for want of prosecution, and, if a defendant, to have his defence, if any, struck out, and to be placed in the same position as if he had not defended, and the party interrogating or requiring discovery or inspection of documents may apply to the Court or a Judge for an order to that effect, and an order may be made accordingly.

*O. 41, 42*
*Non-compliance with order for discovery*

(*No.* 106 *of* 1959)

4.   Interlocutory orders may also be enforced either in accordance with the provisions of Order XX (wherever applicable) or according to the following provisions:

*Staying proceedings and judgment by default*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

If a plaintiff in a suit makes default or fails in fulfilling any interlocutory order, the Court may, if it thinks fit, stay further proceedings in the suit until the order is fulfilled, or may give a judgment of non-suit against such plaintiff, with or without liberty of bringing any other suit on the same grounds of action, or may make such other order on such terms as to the Court shall seem fit;

If a defendant in any suit makes such default or failure, the Court may give judgment by default against such defendant, or make such other order as to the Court may seem just:

Provided that any such judgment by default may be set aside by the Court, upon such terms as to costs or otherwise as the Court may think fit.

*(As amended by No. 106 of 1959)*

## ORDER XLII

### EXECUTION

**1.**     All property whatsoever, real or personal, belonging to a party against whom execution is to be enforced, and whether held in his own name or by another party in trust for him or on his behalf (except the wearing apparel and bedding of himself or his family and the tools and implements of his trade, if any, to the value of five hundred Kwacha or, in the case of a farmer, one million Kwacha) is liable to attachment and sale in execution of the decree.

*(As amended by No. 235 of 1958 and S.I. No. 71 of 1997)*

Property liable to execution. First Schedule Forms 41 and 43-47

**2.**     In the case of a judgment registered under the provisions of Part V of the Service of Process and Execution of Judgments Act, the form of a writ of execution shall be varied as follows:

For the words "which said sum of money and interest were lately before the High Court for Zambia," etc., there shall be substituted the words "which said sum of money and interest were lately in .......... (describing the Court in which judgment was obtained)," etc., "and which judgment has been duly registered in the High Court for Zambia pursuant to Part V of the Service of Process and Execution of Judgments Act, and the further sum of K        for the costs of the said registration;"

and any warrant issued under any such writ of execution shall be varied in a similar manner.

*(No. 275 of 1959)*

Form of writ of execution for use under the Service of Process and Execution of Judgments Act. Cap. 79 O. 42

**3.**     On any levy on the property of any person to satisfy an order or judgment of Court for the payment of money, the real property of such person shall only be sold if the personal property is insufficient.

Personal property first to be realised

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

4.    In any proceedings by way of elegit any inquisition shall be conducted without oath by the Sheriff, Deputy Sheriff or Under-Sheriff, sitting without a jury, but he may in his discretion sit with assessors, and shall have all the powers of the Court for the summoning of such assessors and payment of their proper fees and expenses, and the High Court may at the request of any party to any such proceedings issue subpoenas for the attendance of witnesses, for payment of whose fees and expenses the Sheriff, Deputy Sheriff or Under-Sheriff may at his discretion make provision by order against any party to such proceedings.

*Proceedings by way of elegit*

(*No.* 235 *of* 1958)

5.   (1)   Except by express leave of the Court or a Judge, a writ of execution in respect of a final judgment entered in default of appearance pursuant to the provisions of Order XII shall be issued only if, and shall not be issued unless-

*Issue of writ of execution*

   (*a*)   a copy of the default judgment entered has been served on the defendant in accordance with the provisions of Order X; and

   (*b*)   a period of seven days has elapsed since the date of service of the default judgment on the defendant.

   (2)  In every case, the writ of execution shall not be issued, except by express leave of the Court or a Judge, until three days after the day of the date of the order or judgment, but if the Court or a Judge sees it fit, it or he may order immediate execution.

(*As amended by S.I. No.* 30 *of* 1984)

6.    No sale of goods taken in execution shall be made until the end of five days next after such goods were seized, unless such goods are perishable, or on the request of the party whose goods are seized. Where the property seized is of a value estimated to exceed fifty thousand kwacha, the sale shall be advertised at least once in a newspaper circulating in the district where the sale is to take place.

*Procedure on execution*
*O. 42*

(*As amended by S.I. No.* 71 *of* 1997)

7.   (1)  In all cases the Sheriff, Under-Sheriff, bailiff or other person charged with the execution of any particular process shall render a return in Form 16 in the First Schedule within seven days after the execution thereof, whether in whole or in part, or after any payment to avoid such execution, specifying the extent to which such process shall have been executed or payment made, and, in the event of the same not being fully executed or payment in full not having been made at the expiration of the first and each succeeding month thereafter, he shall render a return in similar form specifying the reason or reasons why such execution is so incomplete.

*Return of writ*

   (2)   Where the Sheriff, Under-Sheriff, bailiff or other person is charged with the execution of a warrant of commitment or committal, he shall render a return of due execution within seven days after the same shall have been carried into effect or payment or part payment made in lieu, and, in the event of the same not having been carried into effect or payment made as aforesaid at the expiration of fourteen days from the date of receipt thereof and each succeeding fourteen days thereafter, he shall render a return specifying the reason or reasons for such non-execution.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(3)   Any return required to be rendered under the foregoing sub-rules shall be rendered to the Court in duplicate, and the duplicate thereof shall thereupon be despatched by the proper officer to the party's Advocate or to the party himself if he is acting in person, as the case may be, who has required such process or warrant to be executed.

(*No*. 106 *of* 1959)

**8.**   When the Sheriff, Under-Sheriff, bailiff or other person is charged with the levying of an execution, he shall not enter into mere walking possession, nor delay the execution with a view to taking walking possession only, unless and until the person against whom such execution has been issued signs a request and authority for walking possession in Form 42 in the First Schedule.

Walking possession

(*No*. 106 *of* 1959)

**9.**   A writ of execution if unexecuted shall remain in force for one year only from its issue, unless renewed in the manner hereinafter provided; but such writ may, at any time before its expiration, by leave of the Court or a Judge, be renewed by the party issuing it for one year from the date of such renewal, and so on from time to time during the continuance of the renewed writ, either by being marked with a seal of the Court bearing the date of the day, month and year of such renewal, or by such party giving a written notice of renewal to the Sheriff, signed by the party or his advocate, and bearing the like seal of the Court; and a writ of execution so renewed shall have effect, and be entitled to priority, according to the time of the original delivery thereof.

Renewal of writ
O. 42

(*No*. 106 *of* 1959)

**10.**   The production of a writ of execution, or of the notice renewing the same, purporting to be marked with such seal as in the last preceding rule mentioned, showing the same to have been renewed, shall be sufficient evidence of its having been so renewed.

Evidence of renewal

(*No*. 106 *of* 1959)

**11.**   The Registrar may, at any time, take the direction of the Court or a Judge as to any application for execution, and, in the meanwhile, refuse to issue the writ.

Registrar may apply to Court for direction

**12.**   In the case of negotiable instruments or debts due to the judgment debtor and the like, the Registrar shall, when in doubt as to the mode of attachment, take the direction of the Court or a Judge.

Reference to Court for direction

**13.**   Where property attached is in the hands of a third party, notice of the attachment shall be served on such party, and, where such property consists of debts or of shares in a company, notice of the attachment shall be given to the debtor or to the company.

Attachment of property in the hands of other persons

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**14.** Where directions have been given under rule 12, the Court shall have power to summon and examine all such persons as parties and witnesses respectively as it may consider necessary, and shall make such order releasing the property from the attachment, allowing or disallowing the claims of the third parties, and giving directions as to the costs of such inquiry, as it shall think fit, and such order shall be conclusive against all parties with notice thereof.

*Power to summon witnesses, etc.*

(*As amended by No.* 235 *of* 1958)

**15.** Property in the custody or under the control of any public officer in his official capacity shall be liable to attachment in execution of a decree with the consent of the Attorney-General, and property *in custodia legis* shall be liable to attachment by leave of the Court or a Judge. In such cases, the order of attachment must be served on such public officer, or on the Registrar, as the case may be.

*Property in the custody of a public officer or in custodia legis*

**16.** The Court may, at any time, issue a summons to the judgment debtor calling on him to appear and be examined respecting his ability to satisfy the judgment, as to the existence and value of his property and of any debts owing to him; and the judgment debtor may be examined as to the same upon oath.

*Power to examine judgment debtor as to means*

**17.** The Court may also examine any other party or witness it may think fit respecting the matters mentioned in the last preceding rule, and may make interim orders, if necessary, for the preservation of any property available towards the discharge of the decree.

*Power to examine other witnesses*

<div align="center">

ORDER XLIII

INTERPLEADER

</div>

(*No.* 218 *of* 1944)

O. 43

**1.** Relief by way of interpleader may be granted:

*When relief by interpleader granted*

(*a*) Where the person seeking relief (in this Order called the application) is under liability for any debt, money, goods or chattels, for or in respect of which he is or expects to be, sued by two or more parties (in this Order called the claimants) making adverse claims thereto;

(*b*) Where the applicant is a Sheriff or other officer charged with the execution of process by or under the authority of the Court, and claim is made to any money, goods or chattels taken or intended to be taken in execution under any process, or to the proceeds or value of any such goods or chattels by any person other than the person against whom the process is issued.

**2.** The applicant must satisfy the Court or a Judge by affidavit or otherwise-

*Matters to be proved by applicant*

(*a*) that the applicant claims no interest in the subject-matter in dispute, other than for charges or costs; and

(*b*) that the applicant does not collude with any of the claimants; and

(*c*) that the applicant is willing to pay or transfer the subject-matter into Court or to dispose of it as the Court or a Judge may direct.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

3.   The applicant shall not be disentitled to relief by reason only that the titles of the claimants have not a common origin, but are adverse to and independent of one another.

*Adverse titles of claimants*

4.   Where the applicant is a defendant in an action, application for relief may be made at any time after service of the writ of summons.

*When application to be made by a defendant*

5.   The applicant may take out a summons calling on the claimants to appear and state the nature and particulars of their claims, and either to maintain or relinquish them.

*Summons by applicant*

6.   If the application is made by a defendant in an action, the Court or a Judge may stay all further proceedings in the action.

*Stay of action*

7.   If a claimant, having been duly served with the notice of the application, does not appear on the return day or having appeared neglects or refuses to comply with any order made after his appearance, the Court or a Judge may make an order declaring him, and all persons claiming under him, forever barred against the applicant, and persons claiming under him, but the order shall not affect the rights of the claimants as between themselves.

*Failure of claimant to appear or to obey order*
*O. 43, 44, 45*

8.   If the claimants appear at the hearing of the application, the Court or a Judge may order either that any claimant be made a defendant in any action already commenced in respect of the subject-matter in dispute in lieu of or in addition to the applicant, or that an issue between the claimants be stated and tried, and in the latter case may direct which of the claimants is to be plaintiff, and which defendant.

*Order to be made at hearing of application*

9.   The Court or a Judge may, in or for the purposes of any interpleader proceedings, give all such directions for the disposal of any issue including the delivery of any pleadings and other matters and may make all such orders as to costs as may be just and reasonable.

*Incidental orders and costs*

ORDER XLIV

(*No.* 98 *of* 1958)

PROCEDURE ON APPLICATIONS UNDER COMPANIES ACT

1.   The Rules of the Supreme Court of England in force immediately prior to the coming into effect of the Companies Act, 1948, of the United Kingdom, and the general practice therein as regards the procedure on applications under the Companies Act, 1929, of the United Kingdom, shall apply as far as circumstances may permit to all applications made under the Companies Act or any Act in amendment or substitution thereof, except if and so far as any such Act otherwise provides.

*Procedure*
*Cap. 388*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

ORDER XLV

REFERENCE TO ARBITRATION

**1.**   If the parties to a suit are desirous that the matters in difference between them in the suit, or any of such matters, should be referred to the final decision of one or more arbitrator or arbitrators, they may apply to the Court or a Judge, at any time before final judgment, for an order of reference; and the Court or a Judge may, on such application, make an order of reference accordingly.

Order of reference

**2.**   The arbitrators shall be nominated by the parties in such manner as may be agreed upon between them. If the parties cannot agree with respect to the nomination of the arbitrators, or if the persons nominated by them shall refuse to accept the arbitration, and the parties are desirous that the nomination shall be made by the Court or a Judge, the Court or a Judge shall appoint the arbitrators.

Appointment of arbitrators

**3.**   The Court or a Judge shall, by an order under the seal of the Court, refer to the arbitrators the matters in difference in the suit which they may be required to determine, and shall fix such time as it or he may think reasonable for the delivery of the award, and the time so fixed shall be specified in the order.

O. 45
Form of order of reference

**4.**   If the reference be to two or more arbitrators, provision shall be made in the order for a difference of opinion among the arbitrators, by the appointment of an umpire, or by declaring that the decision shall be with the majority, or by empowering the arbitrators to appoint an umpire, or otherwise as may be agreed upon between the parties; or, if they cannot agree, as the Court or a Judge may determine.

Appointment of umpire where necessary

**5.**   When a reference is made to arbitration by an order of the Court or a Judge, the same process to the parties and witnesses whom the arbitrators or umpire may desire to have examined shall issue as in ordinary suits, and persons not attending in compliance with such process, or making any other default, or refusing to give their testimony, or being guilty of any contempt of the arbitrators or umpire during the investigation of the suit, shall be subject to the like disadvantages, penalties and punishments, by order of the Court, on the representation of the arbitrators or umpire, as they would incur for the same offences in suits tried before the Court.

Enforcing attendance of witnesses

**6.**   When the arbitrators shall not have been able to complete the award within the period specified in the order, from want of the necessary evidence or information, or other good and sufficient cause, the Court or a Judge may, from time to time, enlarge the period for delivery of the award, if it or he shall think proper. In any case in which an umpire shall have been appointed, it shall be lawful for him to enter on the reference in lieu of the arbitrators, if they shall have allowed their time, or their extended time, to expire without making an award, or shall have delivered to the Court, or to the umpire, a notice in writing stating that they cannot agree:

Extension of time for making award

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Provided that an award shall not be liable to be set aside only by reason of its not having been completed within the period allowed by the Court or a Judge, unless on proof that the delay in completing the award arose from misconduct of the arbitrators or umpire, or unless the award shall have been made after the issue of an order by the Court or a Judge superseding the arbitration and recalling the suit.

**7.**   If, in any case of reference to arbitration by an order of the Court or a Judge, the arbitrators or umpire shall die, or refuse to act or become incapable of acting, it shall be lawful for the Court or a Judge to appoint a new arbitrator or arbitrators, or umpire, in the place of the person or persons so dying, or refusing to act or becoming incapable of acting. Where the arbitrators are empowered, by the terms of the order of reference, to appoint an umpire, and do not appoint an umpire, any of the parties may serve the arbitrators with a written notice to appoint an umpire; and, if, within seven days after such notice shall have been served, no umpire be appointed, it shall be lawful for the Court or a Judge, upon the application of the party having served such notice as aforesaid, and upon proof to its or his satisfaction of such notice having been served, to appoint an umpire. In any case of appointment under this rule, the arbitrators or umpire so appointed shall have the like power to act in the reference as if their names had been inserted in the original order of reference.

*Power of Court in case of death, incapacity or refusal to act*
*O. 45*

**8.**   The award shall contain a conclusive finding, and may not find on the contingency of any matter of fact being afterwards substantiated or deposed to. It shall comprehend a finding on each of the several matters referred.

*Finding to be positive*

**9.**   It shall be lawful for the arbitrators or umpire, upon any reference by an order of the Court or a Judge, if they think fit, and if it is not provided to the contrary, to state their award as to the whole or any part thereof in the form of a special case for the opinion of the Court.

*Special case for opinion of Court*

**10.**   The Court may, on the application of either party, modify or correct an award where it appears that a part of the award is upon matters not referred to the arbitrators, if such part can be separated from the other part, and does not affect the decision on the matter referred; or where the award is imperfect in form, or contains any obvious error which can be amended without affecting such decision.

*Court may modify or correct award*

**11.**   The Court may also, on the application of either party, make such order as it thinks just respecting the costs of the arbitration, if any question arise respecting such costs or their amount, and the award contain no sufficient provision concerning them.

*Power as to costs*

**12.**   In any of the following cases, the Court shall have power to remit the award, or any of the matters referred to arbitration, for consideration by the arbitrators or the umpire, upon such terms as it may think proper, that is to say:

*Power of Court to remit award for reconsideration*

   (*a*)   If the award has left undetermined some of the matters referred to arbitration, or if it has determined matters not referred to arbitration;

   (*b*)   If the award is so indefinite as to be incapable of execution;

   (*c*)   If an objection to the legality of the award is apparent upon the face of the award.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**13.**   No award shall be liable to be set aside except on the ground of perverseness or misconduct of the arbitrator or umpire. Any application to set aside an award shall be made within fifteen days after the publication thereof.

*Setting aside award*

**14.**   If no application shall have been made to set aside the award, or to remit the same or any of the matters referred for reconsideration, or if the Court shall have refused any such application, either party may file the award in Court, and the award shall thereupon have the same force and effect for all purposes as a judgment.

*Filing award: effect of O. 45, 46*

ORDER XLVI

PROBATE AND ADMINISTRATION

I-*General*

**1.**   When it appears that any paper of a deceased person dying within the jurisdiction, being or purporting to be testamentary, is in the possession or under the control of any person, the Court or a Judge may, in a summary way, whether a suit or proceeding for probate or administration is pending or not, order him to produce the paper.

*Court may order production*

**2.**   Where it appears that there are reasonable grounds for believing that any person has knowledge of any paper being or purporting to be testamentary (although it is not shown that the paper is in his possession or under his control), the Court or a Judge may, in a summary way, whether a suit or proceeding for probate or administration is pending or not, order that he be examined respecting the same orally or on interrogatories, and that he do attend for that purpose, and, after examination, that he do produce the paper.

*Examination respecting testamentary papers*

**3.**   The Court may, of its own motion or on the application of any person claiming an interest under a will, give notice to the executors, if any, therein named, to come in and prove the will or to renounce probate, and they, or some one of them, shall, within fourteen days after notice, come in and prove or renounce accordingly.

*Notice to executor to come in and prove*

**4.**   Suits respecting probate or administration shall be instituted and carried on, as nearly as may be, in the like manner as suits in respect of ordinary claims.

*Form of suits*

**5.**   Where the whole estate of a person, whether testate or intestate, shall not exceed in value the sum of five hundred thousand kwacha, the husband, widow or next of kin, residing within the jurisdiction, may apply to the Registrar personally, or by letter, and the Registrar shall prepare the necessary papers to lead a grant of probate or letters of administration, as the case may be, to the estate of the deceased.

*Small estates*

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

6.    The Registrar shall refuse to proceed with the application if he has reason to believe the estate exceeds the sum of five hundred thousand kwacha.

*Registrar may refuse application*

(*As amended by S.I. No.* 71 *of* 1997)

II-*Custody of Wills*

*O. 46, 47*

7.    Any person may, in his lifetime, deposit for safe custody in the Court his own will, sealed up under his own seal and the seal of the Court, and may, notwithstanding the provisions of rule 9, at any time withdraw such will.

*Testator may deposit will*

(*As amended by S.I. No.* 37 *of* 1964)

8.    Every original will of which probate or administration with will annexed is granted shall be filed and kept in the registry of the Court, in such manner as to secure at once the due preservation and convenient inspection of the same. A copy of every such will, and of the probate and administration, shall be preserved in the registry.

*Custody of wills of which probate granted*

9.    No original will shall be delivered out for any purpose without the direction in writing of the Court. An exemplification of the probate or administration with the will annexed may be obtained from the Court.

*Wills not given out without order of Court*

ORDER XLVII

CIVIL APPEALS

I-*Leave to Appeal*

1. (1)  Every appellant shall give security to the satisfaction of the subordinate court (hereinafter in this Order called "the court below"), either by deposit or by bond in Form 48 in the First Schedule, for payment of all such costs as may be awarded to any respondent by the Court. He shall also pay into the court below the amount of the expense of making up and transmission to the Court of the record of appeal. He shall also give notice of the appeal to all parties directly affected by the appeal, and to such others, as respondents, as the court below thinks fit to direct. If security, payment and notice are so given and made within one month after the application for conditional leave to appeal, and if application for final leave to appeal be filed in the court below not later than seven days after the expiration of such month, then and not otherwise the court below shall give final leave to appeal:

*Conditions of appeal*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Provided that-

(i) the court below, in its discretion, may extend the time for the fulfilment of the conditions of appeal, or of the application for final leave to appeal;

(ii) the court below may, in its discretion, on account of the poverty of an appellant, although such appellant may not have been formally admitted to sue or defend as a pauper, dispense with such security for costs.

(2)  Leave to appeal, if granted by the Court, under rule 4, shall be granted, *mutatis mutandis*, in accordance with the provisions of sub-rule (1).

O. 47

## II-*Limitation of Time for Appeals*

**2.**    After fourteen days from the date of any interlocutory decision, application for leave to appeal shall not be entertained.

From interlocutory orders

**3.**    After one month from the date of a final judgment or decision, application for conditional leave to appeal shall not be entertained by the court below.

From final judgments by leave of the court below

**4.**    After three months from the date of a final judgment or decision, application for conditional leave to appeal shall not be entertained by the Court.

From final judgments by leave of the Court

## III-*Execution or Suspension of Judgment Pending Appeal*

**5.**    An appeal shall not operate as a stay of execution or of proceedings under the judgment or decision appealed from, except so far as the court below or the Court may order, and no intermediate act or proceeding shall be invalidated, except so far as the court below may direct.

Appeal not to operate as stay of execution

## IV-*Grounds of Appeal*

**6.**    The appellant shall, within seven days after obtaining final leave to appeal, file in the court below the grounds of his appeal, and shall cause a copy of such grounds of appeal to be served on the respondent.

Grounds of appeal to be filed

**7.**    On the appellant failing to file the grounds of appeal within the prescribed time, he shall be deemed to have abandoned the appeal, unless the court below or the Court shall see fit to extend the time.

Effect of failure to file grounds of appeal

**8.**    The appellant may, at any time, by leave of the Court, amend or add to the grounds of his appeal.

Amendment of grounds of appeal

## V-*Transmission of Record*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**9.**   On the expiration of fourteen days after final leave to appeal has been given, the court below shall, without the application of any party, make up the record of appeal, which shall consist of the writ of summons, the pleadings (if any), certified copies of all documents admitted as evidence or tendered as evidence and rejected, the notes of the evidence, the judgment or order of the court below and the grounds of appeal. The record of appeal, when completed, shall be forwarded to the Registrar.

<div style="text-align:right">Contents of record of appeal</div>

**10.**   The court below shall not, except for some special cause, take upon itself the charge or the transmission of original letters or documents produced in evidence. These shall be returned to the parties producing them, and the parties must be prepared to produce the originals, if required by the Court, before or at the hearing of the appeal.

<div style="text-align:right">O. 47<br>Production of original letters or documents</div>

<div style="text-align:center">VI-<i>Proceedings in the Court</i></div>

**11.**   After the record of appeal has been transmitted, until the appeal is disposed of, the Court shall be in possession of the whole proceedings as between the parties to the appeal. Every application in the proceedings shall be made to the Court, and not to the court below, but any application may be made through the court below:

<div style="text-align:right">Control by Court while appeal pending</div>

   Provided that, in cases of urgency, the court below may make any interim order to prevent prejudice to the claim of any party pending an appeal, but every such order may be discharged or varied by the Court.

**12.**   The Court may, where necessary, require security for costs or for performance of the orders to be made on appeal, in addition to what the court below has thought fit to direct, and may make any interim order or grant any injunction which the court below is authorised to make or grant, and which may be necessary.

<div style="text-align:right">Additional security</div>

**13.**   If the appeal is from an interlocutory order, the Court shall not cause notice to be given to the parties of the day when the appeal shall be disposed of, unless, in the special circumstances, it thinks fit to do so; but, where a party to the appeal notifies to the Court his desire to attend, he shall be at liberty to do so, and to be heard, at such time as the Court directs.

<div style="text-align:right">Notice to parties in interlocutory appeals</div>

**14.**   If the appeal is from a final judgment or decision, the Registrar shall give notice of the date of hearing, through the court below, to the parties to the appeal.

<div style="text-align:right">Notice to parties in appeals from final judgments</div>

**15.**   (1)  If the appellant fails to appear, in person or by professional representative, when his appeal is called on for hearing, the appeal shall, on proof of service upon him of the notice of the hearing, stand dismissed with costs.

<div style="text-align:right">Failure of appellant to appear</div>

   (2)   When an appeal has been dismissed owing to the non-appearance of the appellant or his professional representative, the Court may, if it thinks fit, and on such terms as to costs or otherwise as it may deem just, direct the appeal to be re-entered for hearing.

<div style="text-align:center">Copyright Ministry of Legal Affairs, Government of the Republic of Zambia</div>

The Laws of Zambia

**16.** If the respondent fails to appear, in person or by professional representative, when the appeal is called on for hearing, the Court shall, on proof of the service upon him of notice of the hearing, proceed to hear the appeal *ex parte.*

Failure of respondent to appear

**17.** (1) Notwithstanding anything in rules 15 and 16 contained, if any party to the appeal is desirous that the appeal should be disposed of without his attendance, either in person or by his professional representative, he shall notify the court below, and the court below shall so inform the Registrar at the time of transmitting the record; and thereupon, if the Court sees fit, it may determine the appeal in the absence of that party.

O. 47
Hearing in absence of parties

(2) If any party so notifies the court below, it shall not be necessary for the Registrar to give him notice of the date of hearing in accordance with rule 14.

**18.** It is not open, as of right, to any party to an appeal to adduce new evidence in support of his original case; but, for the furtherance of justice, the Court may, where it thinks fit, allow or require new evidence to be adduced. A party may, by leave of the Court, allege any facts essential to the issue that have come to his knowledge after the decision of the court below, and adduce evidence in support of such allegations.

New evidence on appeal

**19.** No interlocutory order from which there has been no appeal shall operate so as to bar or prejudice the Court from giving such decision upon the appeal as may seem just.

Interlocutory order not to prejudice decision on appeal

**20.** The Court may, from time to time, make any order necessary for determining the real question in controversy in the appeal, and may amend any defect or error in the record of appeal, and may direct the court below to inquire into and certify its finding on any question which the Court thinks fit to determine before final judgment in the appeal, and, generally, shall have as full jurisdiction over the whole proceedings as if the proceedings had been instituted and prosecuted in the Court as a court of first instance, and may rehear the whole case, or may remit it to the court below to be reheard, or to be otherwise dealt with as the Court directs.

General powers of Court

**21.** The Court shall have power to give any judgment and make any order that ought to have been made, and to make such further or other orders as the case may require, including any order as to costs. These powers may be exercised by the Court, notwithstanding that the appellant may have asked that part of a decision may be reversed or varied, and also be exercised in favour of all or any of the respondents or parties, although such respondents or parties may not have appealed from or complained of the decision.

Power of Court to give any decision or make any order

VII-*Enforcement of Judgments, Decrees or Orders on Appeal*

**22.** Any judgment, decree or order given or made by the Court may be enforced by the Court or by the court below, according as the Court may consider most expedient and may direct.

Execution to be as directed by the Court

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**23.**    When the Court directs any judgment, decree or order to be enforced by the court below, a certificate under seal of the Court and the hand of the presiding Judge setting forth the judgment, decree or order of the Court shall be transmitted by the Registrar to the court below, and the latter shall enforce the judgment, decree or order made by the Court in the terms of the certificate.

O. 47, 48
Execution by court below in terms of certificate

## VIII-*Fees Payable*

**24.**    The fees prescribed in Part 2 of the Second Schedule shall be charged in respect of the matters to which they are respectively assigned, and shall be paid to the Registrar or the court below, as the case may be. The Court or the court below may, on account of the poverty of any party, although such party may not have been formally admitted to sue or defend as a pauper, or for other sufficient reasons, dispense, if it sees fit, with payment of any fees.

Fees

## IX-Ex Parte *Orders*

**25.**    An appeal does not lie, except by special leave of the Court or of the court below, from an order made *ex parte.* Any person aggrieved by such an order may apply, by motion on notice to the other party, to the court by which it was made to vary or discharge it, and an appeal lies from the decision on that application in like manner as from other orders or decisions.

*Ex parte* orders

## ORDER XLVIII

### PROCEEDINGS IN DISTRICT REGISTRIES

**1.**    In any action the plaintiff wherever resident may issue a writ  out of any District Registry.

Writs or other process may be issued out of any District Registry

*(As amended by S.I. No. 71 of 1997)*

**2.**    Causes or matters commenced in a District Registry shall be instituted as causes or matters in that Registry and shall be serially numbered in that Registry.

Title of causes or matters commenced in a District Registry.

*(As amended by S.I. No. 71 of 1997)*

**3.**    (1)    Where a cause or matter is proceeding in a District Registry, all proceedings, except where by the Act or by these Rules it is otherwise provided, or the Court or a Judge shall otherwise order, shall be recorded in the District Registry including the entry of final judgment.

Proceedings to be in a District Registry

(2)  Every final judgment and every order for an account, by reason of the default of the defendant, or by consent, shall be entered in the District Registry in the proper book, in the same manner as a like judgment or order in an action proceeding in Lusaka would be entered in the Principal Registry.

O. 48

*(As amended by S.I. No. 71 of 1997)*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

4.    Where the writ of summons issues out of a District Registry and the plaintiff is entitled to enter interlocutory judgment under any of the rules of Order XII, or where the cause or matter is proceeding in the District Registry and the plaintiff is entitled to enter interlocutory judgment under any of the rules of Order XX, the interlocutory judgment, and, when damages shall have been assessed, final judgment, shall be entered in the District Registry, unless the Court or a judge shall otherwise order.

*Entry of interlocutory judgment in a District Registry*

(*As amended by S.I. No.* 71 *of* 1997)

5.    Where a cause or matter is proceeding in a District Registry, all writs of execution for enforcing any judgment or order therein, and all summonses under the Debtors Act, shall issue from the District Registry, and all costs shall be taxed in the District Registry, unless the Court or a judge shall otherwise direct.

*Writs of execution. Cap. 77*

(*As amended by S.I. No.* 71 *of* 1997)

6.    Where a cause or matter is proceeding in a District Registry, proceedings relating to the following matters:

*Proceedings necessary or incidental to judgment*

(*a*)    leave to issue or renew writs of execution;

(*b*)    examination of judgment debtors for garnishee purposes or under Order XLII, rule 16;

(*c*)    garnishee orders;

(*d*)    charging orders *nisi*; and

(*e*)    interpleader orders;

shall, unless the Court or a Judge shall otherwise order, be taken in the District Registry.

7.    Every application to a District Registrar shall be made in the same manner in which applications in chambers are directed to be made by these Rules.

*Mode of application*

(*As amended by S.I. No.* 71 *of* 1997)

8.    If any matter appears to the District Registrar proper for a decision of a Judge, the District Registrar may refer the same to a Judge, and the judge may either dispose of the matter or refer the same back to the District Registrar with such directions as he may think fit.

*Reference to judge*

(*As amended by S.I. No.* 71 *of* 1997)

9.    An appeal shall lie from the decision, order or direction of a District Registrar in any cause or matter as provided for under rule 10 of Order XXX in the same circumstance and except as hereinafter provided, subject to the same incidents as if the decision, order or direction was made or given by the Registrar in that cause or matter, and the provisions of these Rules with respect to appeals and, in particular, rule 10 of Order XXX shall apply accordingly.

*Appeal from a District Registrar 0.48, 49*

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**10.**   Every District Registrar and other officer of a District Registry shall be subject to the orders and directions of the Court or a Judge, as fully as any other officer of the Court, and every proceeding in a District Registry shall be subject to the control of the Court or a Judge, as fully as a like proceeding in the Principal Registry.

*Control by court or judge*

(*As amended by S.I. No.* 71 *of* 1997)

**11.**   Where under the provisions of the Act, a cause or matter is removed from a District Registry to the Principal Registry or to another District Registry, the party on whose application the order for removal was made shall give to the other party notice of an address for service and a postal address for service, both within twelve kilometres from the Principal or District Registry, as the case may be, to which the cause or matter is removed in all respects as if the writ of summons or other originating process or the appearance had been originally issued or entered in the Principal Registry or in such District Registry, as the case may be.

*Address for service in case of removal*

(*As amended by S.I. No.* 71 *of* 1997)

**12.**   Where a cause or matter is proceeding in a District Registry, all pleadings and other documents required to be filed shall be filed in the District.

*Filing in District Registry*

(*As amended by S.I. No.* 71 *of* 1997)

**13.**   No affidavit or record of the Court shall be taken out of a District Registry without the order of a Judge or of the District Registrar, and no subpoena for the production of any such document shall be issued.

*Affidavit, etc., not to be taken out of District Registry*

(*As amended by S.I. No.* 71 *of* 1997)

**14.**   The forms contained in the First Schedule shall, as far as they are applicable, be used in or for the purpose of the District Registries, with such variations as circumstances require.

*Forms to be used*

(*As amended by S.I. No.* 71 *of* 1997)

ORDER XLIX

(*No.* 309 *of* 1960)

SITTINGS AND VACATIONS

**1.**   The sittings of the Court in Lusaka, Ndola, Kitwe, Kabwe, Mongu, Livingstone, Chipata and Kasama shall be four in every year, that is to say, the Hilary sittings, the Easter sittings, the Trinity sittings, and the Michealmas sittings. The Hilary sittings shall commence on 10th January and terminate on Thursday before Easter; the Easter sittings shall commence on Monday Easter week, and terminate on the Friday before Whit-Sunday; Trinity sittings commence on Tuesday after Whitsun week and terminate on the 22nd August; and the Michaelmas sittings shall commence on the 1st October and terminate on the 10th December.

*Sittings of the Court O. 49*

(*As amended by S.I. No.* 92 *of* 1988)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**2.**     The sittings of the several offices of the Court at the Principal and District Registries shall extend over the whole of the four periods between vacations.

Sittings of Court offices

**3.**  (1)  The vacations to be observed in the several courts and offices of the High Court shall be four in every year, that is to say, the Easter Vacation, the Whitsun vacation, the Michaelmas vacation and the Christmas vacation. The Easter vacation shall commence on Good Friday and terminate on Easter Tuesday; the Whitsun vacation shall commence on the Saturday before Whit Monday and shall terminate on the Tuesday after Whit Sunday; the Michaelmas Vacation shall commence on the 8th August and shall terminate on the 6th September; and the Christmas Vacation shall commence on 11th December and terminate on the 9th January.

Vacation in courts and offices. Trial in Michaelmas and Christmas vacations

(2)  (*a*)  All such applications as required to be immediately or promptly heard shall be heard in vacation by a Vacation Judge.

(*b*)     Any party to a cause or matter may at any time before the end of the said vacation in any year apply by summons to a judge for any order that the cause or matter shall be tried or heard during that vacation, and if the Judge is satisfied that there is urgent need for the trial or hearing to take place in the said vacation he may make an order accordingly and fix a date for the trial or hearing.

(*As amended by S.I. No. 92 of* 1988)

(3)  Any party may at any time after the 17th August in any year and before the close of the Michaelmas vacation in that year apply by summons to a Vacation Judge for the said Michaelmas vacation, or in the absence of such a Judge to a Judge in chambers, for the trial or hearing of any such cause or matter during the said Michaelmas vacation, and such Judge may make an order for the trial or hearing of such cause or matter during the Michaelmas vacation accordingly and fix the date of trial; and any party may at any time after the 5th December in any year and before the close of the Christmas vacation commencing in that year apply by summons to a Vacation Judge for the said Christmas vacation, or, in the absence of such a Judge, to a Judge in chambers, for the trial or hearing of any such cause or matter during the said Christmas vacation, and such Judge may make an order for the trial or hearing of such cause or matter during the Christmas vacation accordingly and fix the date of trial:

Provided that no order for such trial or hearing shall be made unless the Judge is satisfied that there is urgent need for the trial or hearing of the cause or matter during the Michaelmas or Christmas vacation, as the case may be.

O. 49

(4)  The Court or a Judge dealing with an application under Order XIII, rule 3, may, if satisfied that there is urgent need for the trial of the action during the next ensuing Michaelmas or Christmas vacation, as appropriate, order that the trial shall take place in the said Michaelmas or Christmas vacation and shall refer the matter to the Vacation Judge in chambers, or, in the absence of such a Judge, to a Judge in chambers, to fix the date of trial.

(5)  Revoked by *S.I. No. 92 of* 1988

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*As amended by S.I. No.* 63 *of* 1964; *and S.I No.* 92 *of* 1988)

**4.**    The days of the commencement and termination of each sitting and vacation shall be included in such sitting and vacation respectively.

First and last days inclusive

**5.**    The several offices of the Court in the Principal and District Registries shall be open on every day of the year except on Saturdays, Sundays, public holidays and such other days as the Chief Justice may direct in respect of all the offices of the Court or any particular office.

Days on which offices are to be closed

(*As amended by S.I. No.* 37 *of* 1964)

**6.**    Subject to any order of the Chief Justice, the offices of the Court in the Principal and District Registries shall be open to the public on weekdays, other than Saturdays, as follows:

Office hours

    (*a*)    during term from 9 a.m. until 12 noon, and from 2 p.m. to 3 p.m.; and

    (*b*)    during vacation from 9 a.m. to 12 noon.

(*S.I. No.* 37 *of* 1964)

**7.**    The Chief Justice may, from time to time, appoint a Vacation Judge or Vacation Judges for the hearing in Lusaka Ndola, Livingstone, Kitwe, Kabwe, Mongu and Kasama during vacation, of all such applications as may require to be immediately or promptly heard. In default of any appointment of a Vacation Judge for Lusaka or Ndola, as the case may be, the Puisne Judge present thereat who was last appointed a Judge of the Court shall be Vacation Judge.

Appointment of Vacation Judges

**8.**    A Vacation Judge may hear and dispose of all causes, matters and other business ordered to be tried or heard during vacation and all causes, matters and other business specified in rule 3 (4). Any other Judge may sit in vacation for any Vacation Judge or where no Vacation Judge has been appointed for Lusaka and other places as the case may be.

Sittings of Vacation Judges

**9.**    In the interval between the close of any sittings and the commencement of the next sittings, and whenever a Judge is away from his chambers for any reason, the judgments or orders of any Judge may be prosecuted at the chambers of any other Judge by his permission; and in case the prosecution thereof shall not be completed during the interval, the prosecution may be continued at the chambers of the same Judge if and so far as he shall think fit.

O. 49, 50 Prosecution of judgments or orders between sittings

**10.**    Any interval between the sittings of the Court not included in a vacation, shall, so far as the disposal of business by the Vacation Judges is concerned, be deemed to be a portion of the vacation.

Interval between sittings and vacations

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

ORDER L

RECOVERY OF COSTS BY LEGAL PRACTITIONERS

**1.**   In this Order, unless the context otherwise requires-

"fees" include charges and disbursements;

"practitioner" included barrister, Advocate and Notary Public, and the executor, administrator and assignee of a barrister, Advocate or Notary Public.

*Interpretation*

**2.**   No practitioner shall commence any suit for the recovery of any fees for any business done by him until the expiration of one month after he shall have delivered to the party to be charged therewith or sent by registered letter to or left for him at his office, place of business, dwelling-house or last known place of abode a bill of such fees, such bill either being signed by such practitioner (or, in the case of a partnership, by any of the partners, either in his own name or in the name of the partnership) or being enclosed in or accompanied by a letter signed in like manner referring to such bill.

*Bill to be sent before suit*

**3.**   Upon the party to be charged applying to the Court or a Judge, within such month as in the last preceding rule mentioned, it shall be lawful for the Court or a Judge to refer the bill and the demand of the practitioner to be taxed and settled by the taxing master of the Court, and the Court or a Judge shall restrain such practitioner from commencing any suit touching such demand pending such reference.

*Party charged may apply to Court or Judge to tax bill*

**4.**   In case no application shall be made within one month, as in the last preceding rule provided, it shall be lawful for such reference as aforesaid to be made, either upon the application of the practitioner making the demand, or upon the application of the party to be charged, with such directions and subject to such conditions as the Court or Judge making the reference shall think proper, and the Court or a Judge may restrain such practitioner from commencing or prosecuting any suit touching such demand pending such reference, upon such terms as shall be thought proper.

*Where no application to tax made within one month*

**5.**   No such reference as aforesaid shall be directed, upon application made by the party to be charged, after judgment shall have been obtained in any suit for the recovery of the demand of such practitioner as aforesaid, or after the expiration of twelve months after any bill as aforesaid shall have been delivered, sent or left as aforesaid, except under special circumstances to be proved to the satisfaction of the Court or a Judge to which or to whom application for such reference shall be made.

*O. 50*
*When application not to be granted*

**6.**   Upon any reference as aforesaid, if either the practitioner or the party to be charged, having due notice, shall refuse or neglect to attend the taxation, the taxing master may proceed to tax and settle the bill and demand *ex parte.*

*Non-attendance of party at taxation*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**7.** If, on any reference as aforesaid, the party to be charged shall attend on taxation, the cost of the reference shall (except as in rule 8 provided) be paid according to the event of such taxation: that is to say, if such bill, when taxed, be less by a sixth part than the bill delivered, sent or left, then such practitioner shall pay such costs, and if such bill, when taxed, shall not be less by a sixth part than the bill delivered, sent or left, then the party to be charged making such application or so attending shall pay such costs.

*Costs of taxation*

**8.** Every order to be made for any reference as aforesaid shall direct the taxing master to certify what shall be found to be due to or from such practitioner in respect of the bill and demand referred, including the costs of the reference.

*Form of order to be made. Special cases*

Provided that-

(i)   the taxing master may certify specially any circumstances relating to such bill or reference, and the Court or a Judge may make any such order as it or he may think right respecting the costs of such reference;

(ii)   where any reference is made under rule 5, the Court or a Judge may, if it or he thinks fit, give any special directions relative to the cost of such reference.

**9.** It shall not in any case be necessary in the first instance for any practitioner, in proving a compliance with these Rules, to prove the contents of the bill he may have delivered, sent or left, but it shall be sufficient to prove that a bill for fees signed in the manner provided or enclosed in or accompanied by such letter as provided was duly delivered, sent or left.

*Proof of compliance with rules*

**10.** Upon the completion of the taxation of any bill referred as aforesaid, the taxing master shall submit to the Court or a Judge the result of his taxation, including costs, and the amount so submitted shall be final and conclusive as to the amount of the bill and costs:

*Completion of taxation*

Provided that the Court or a Judge may, in its or his discretion, review any such taxation. And it shall be lawful for the Court or a Judge to order that judgment be entered for the amount submitted, unless the retainer is disputed, or to make such other order therein as the Court or a Judge may deem proper.

*O. 50, 51*

**11.** It shall be lawful for the Court or a Judge to make an order for the delivery by any practitioner of any bill of fees for business done by him.

*Court or Judge may order delivery of bill*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**12.**   It shall be lawful for the Court or a Judge to authorise any practitioner to commence a suit for the recovery of his fees against the party chargeable therewith, and also to refer his bill of fees and the demand of the practitioner thereupon to be taxed and settled by the taxing master of the Court, although one month shall not have expired from the delivery of such bill, on proof, to the satisfaction of the Court or a Judge, that there is probable cause for believing that the party chargeable is about to leave Zambia or to become a bankrupt or to take any other steps or to do any other act which, in the opinion of the Court or a Judge, would tend to defeat or delay such practitioner in obtaining judgment.

*Where practitioner may begin suit within month of delivery of bill*

**13.**   All applications made under these Rules to refer any bill to be taxed and settled shall be by summons in the matter of the practitioner concerned.

*Applications to be by motion*

(*As amended by No.* 218 *of* 1944)

ORDER LI

AGENCY ALLOWANCE

(*No.* 218 *of* 1944)

**1.**   Where a advocate or barrister (hereinafter called a country advocate) is either-

*When agency allowance to be paid*

(*a*)   engaged in a cause or matter proceeding in the Registry of the Court and has no place of business within ten kilo-metres from such Registry; or

(*b*)   engaged in a cause or matter proceeding in a District Registry of the Court and has no place of business within ten kilometres from such District Registry; or

(*c*)   engaged in a cause or matter proceeding in the Registry of the Supreme Court of Zambia and has no place of business within ten kilometres of such Registry;

and entrusts such cause or matter to another advocate or barrister (hereinafter called an agent) who has a place of business within the said ten kilometres limit from such Registry, District Registry or Registry of the Supreme Court of Zambia, as the case may be, the agent shall pay or credit to the country advocate such sums by way of agency allowance as are hereinafter mentioned and prescribed.

O. 51, 52

**2.**   The agent shall pay or credit to the country advocate in respect of the profit cost charges of the agent for work entrusted to him as an agent by such country advocate one-third of all such profit cost charges except such parts of the same charges as have been earned by appearance as an advocate in Court or in chambers.

*Amount of agency allowance*

**3.**   No agency allowance shall arise or accrue in respect of conveyancing or subordinate court work or any other business which is not proceeding either in the High Court or the Supreme Court.

*No allowance except in High Court and SupremeCourt of Zambia*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**4.** No advocate or barrister shall under any circumstances give agency allowance to or accept agency allowance from any person who is not admitted to practise in Zambia as a barrister or advocate and who has no *bona fide* office or place of business therein.

No allowance except to practitioners admitted to practise in Zambia

ORDER LII

(*No.* 396 *of* 1967)

PROCEEDINGS BY AND AGAINST THE STATE

**1.** (1) These Rules apply to civil proceedings to which the State Proceedings Act applies and to which the State is a party, subject to the following rules of this Order and without prejudice to any rules made under the Constitution.

Application and interpretation.
Cap. 71
Cap. 1

(2) In this Order, unless the context otherwise requires-

"order against the State" means any order (including an order for costs) made in any civil proceedings by or against the State, or in connection with any arbitration to which the State is a party, in favour of any person against the State or against a public officer as such;

"order" includes a judgment, decree, rule, award or declaration.

**2.** (1) In the case of a writ which begins civil proceedings against the State, the endorsement of claim required by Order VI, rule 4, shall include a statement of the circumstances in which the State's liability is alleged to have arisen and as to the officers concerned.

Particulars to be included in the endorsement of claim

(2) If in civil proceedings against the State the Attorney-General considers that the writ does not contain a sufficient statement as required by this rule, he may, before the expiration of the time limited for appearing, apply to the plaintiff by notice for a further and better statement containing such information as may be specified in the notice.

(3) Where the Attorney-General has given a notice under this rule, the time limited for appearing shall not expire until four days after the Attorney-General has notified the plaintiff in writing that he is satisfied with the statement supplied in compliance with the notice or four days after the Court has, on the application of the plaintiff by summons served not less than seven days before the return day, decided that no further information as to the matters referred to in sub-rule (1) is reasonably required.

O. 52

**3.** (1) Order X shall not apply in relation to the service of any process by which civil proceedings against the State are begun.

Service on the State

(2) Personal service of any document required to be served on the State for the purpose of or in connection with any civil proceedings is not requisite; but where the proceedings are by or against the State, service shall be effected in accordance with the provisions of section *thirteen* of the State Proceedings Act-

Cap. 71

The Laws of Zambia

    (*a*)    by leaving the document at the office of the officer of the Attorney-General's Chambers having the conduct of the proceedings or, if a legal practitioner is acting for the State in the proceedings, at the office of such legal practitioner; or

    (*b*)    by posting it in a prepaid registered envelope addressed to such officer or such legal practitioner at his postal address, provided that the time at which the document so posted would be delivered in the ordinary course of post shall be considered as the time of service thereof; or

    (*c*)    if no such officer has the conduct of the proceedings or if no such legal practitioner is acting, by leaving the document at the Attorney-General's Chambers in Lusaka or Ndola.

**4.** (1)  Notwithstanding Order XXVIII, rule 3, a person may not in any proceedings by the State make any counter-claim or plead a set-off if the proceedings are for the recovery of, or the counter-claim or set-off arises out of a right or claim to repayment in respect of, any taxes, duties or penalties. *(Counter-claim and set-off)*

(2)  Notwithstanding Order XXVIII, rule 3, no counter-claim may be made, or set-off pleaded, without the leave of the Court, by the State in proceedings against the State, or by any person in proceedings by the State.

(3)  Any application for leave under this rule shall be by summons.

**5.**  No application against the State shall be made for summary judgment either under Order XIII, rule 1, or otherwise: *(Summary judgment)*

Provided that a plaintiff may apply by summons for an order that the proceedings be put into a list kept for the trial of short causes.

**6.** (1)  A third party notice for service on the State shall not be issued without the leave of the Court, and the application for the grant of such leave shall be made by summons, and the summons shall be served on the plaintiff and on the Attorney-General. *(O. 52 Third party notices)*

(2)  Leave to issue such a notice shall not be granted unless the Court is satisfied that the Attorney-General is in possession of all such information as he reasonably requires as to the circumstances in which it is alleged that the liability of the State has arisen and as to the officers concerned.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**7.** (1)  In any civil proceedings to which the State is a party any order of the Court made under the powers conferred by section *twenty-five* of the State Proceedings Act shall be construed as not requiring the disclosure of the existence of any document the existence of which it would, in the opinion of a Minister, be injurious to the public interest to disclose.

Discovery and interrogatories.
Cap. 71

(2)  Where in any such proceedings an order of the Court directs that a list of documents made in answer to an order for discovery against the State shall be verified by affidavit, the affidavit shall be made by such officer as the Court may direct.

(3)  Where in any such proceedings an order is made under the said section *twenty-five* for interrogatories to be answered by the State, the Court shall direct by what officer the interrogatories are to be answered.

**8.** (1)  Actions against the State to perpetuate the testimony of witnesses may be instituted in any case in which the State is alleged to have an interest or estate in the honour, title, dignity or office or property in question.

Evidence

(2)  For the avoidance of doubt, it is hereby declared that any powers exercisable by the Court in regard to the taking of evidence are excercisable in proceedings by or against the State as they are exercisable in proceedings between private persons.

**9.**   An application under the proviso to subsection (1) of section *twenty-one* of the State Proceedings Act for a direction that a separate certificate shall be issued under that subsection with respect to the costs (if any) ordered to be paid to the applicant, may be made to the Court *ex parte* without summons.

Execution and satisfaction of orders.
Cap. 71

**10.**   Every application to the Court for an order under section *twenty-four* of the State Proceedings Act restraining any person from receiving money payable to him by the State and directing payment of the money to the applicant or some other person must be made by summons served at least four days before the return day on the Attorney-General and, unless the Court otherwise orders, on the person to be restrained or his legal practitioner; and the application shall be supported by an affidavit setting out the facts giving rise to it and, in particular, identifying the particular debt from the State in respect of which it is made.

Attachment of debts, etc.
0. 52
Cap. 71

**11.**   An application such as is referred to in section *twenty-six* (2) of the State Proceedings Act may be made to the Court at any time before trial by motion or summons, or may be made at the trial of the proceedings.

Applications under section 26 (2) of the State Proceedings Act.
Cap. 71

FIRST SCHEDULE

Sch. 1

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(O. 1, r. 2)

(*No.* 252 *of* 1968)

LIST OF FORMS

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

1. General Title of Writs and Other Documents in a Suit.
2. Writ of Summons for Principal Registry. (O. 6, r. 2.)
3. Writ of Summons for District Registry. (O. 6, r. 2.)
4. Specially Endorsed Writ for Principal Registry. (O. 6, r. 2.)
5. Specially Endorsed Writ for District Registry. (O. 6, r. 2.)
6. Originating Summons for Principal Registry. (O. 6, r. 2.)
7. Originating Summons for District Registry. (O. 6, r. 2.)
8. Originating Summons not Inter Partes for Principal Registry. (O. 6, r. 2.)
9. Originating Summons not Inter Partes for District Registry. (O. 6, r. 2.)
10. Originating Summons Under Order VI, Rules 2 and 6. (O. 6, rs. 2 and 6.)
11. Originating Notice of Motion. (O. 6, r. 2.)
12. Praecipe of Renewed Writ of Summons. (O. 9, r. 1.)
13. Notice of Service on Manager of Partnership. (O. 10, r. 11.)
14. Certificate of Service. (O. 10, r. 20.)
15. Affidavit of Service.
16. Debit and Advice Note. (O. 42, r. 7.)
17. Notice of Payment into Court. (O. 6, r. 10.)
18. Memorandum of Appearance. (O. 11, r. 8.)
19. Notice Limiting Defence. (O. 11, r. 20.)
20. Search.
21. Summons (General Form).
22. Summons under Order XIII. (O. 13, r. 2.)
23. Summons for Directions. (O. 19, r. 1.)
24. Praecipe of Subpoena. (S. 27 of the Act.)
25. Summons to a Witness. (S. 27 of the Act.)
26. Subpoena Duces Tecum. (S. 27 of the Act.)
27. Warrant for Prisoner to Give Evidence. (S. 30 of the Act.)
28. Notice of Hearing.
28A. Referral Order (O. 31, r. 4)
28B. Statement of Understanding: The Role of the Mediator (O. 31, r. 9)
28C. Mediator's Report (O. 31, r. 11)
28D. Mediation Settlement (O. 31, r. 12)
29. Warrant to Attach Property before Judgment. (O. 26, r. 4.)
30. Judgment (Default of Appearance). (O. 12, r. 1.)
31. Judgment (Default of Defence). (O. 20.)
32. Order (General Form).
33. Formal Decree. (O. 36, r. 4.)
34. Attachment of Earnings Order. (O. 38, r. 7.)
35. Notice of Intention to Vary Attachment of Earnings Order. (O. 38, r. 9.)
36. Notice of Non-employment of Defendant. (O. 38, r. 10.)
37. Warrant of Attachment.
38. Warrant of Arrest and Commitment.
39. Certificate after Trial.
40. Praecipe of Fieri Facias.
41. Writ of Fieri Facias. (O. 42, r. 1.)
42. Request and Authority to Under-Sheriff. (Walking Possession.) (O. 42, r. 8.)
43. Praecipe of Elegit (or Re-Elegit). (O. 42, r. 1.)
44. Writ of Elegit. (O. 42, r. 1.)
45. Return to Elegit.
46. Elegit for the Residue after a Fieri Facias. (O. 42, r. 1.)
47. Writ of Re-Elegit. (O. 42, r. 1.)
48. Bond for Costs on Appeal. (O. 47, r. 1.)
49. Certificate of Service of Foreign Process. (O. 10, r. 23.)
50. Request to Search Judgments Register or Judgments Section of the Civil Causes Register. (Individual Search.) (O. 37, r. 3.)
51. Application for Permit for General Searches in Judgments Registers (against Unspecified Number of Names). (O. 37, r. 4.)
52. Permit for General Searches in Judgments Registers (against Unspecified Number of Names). (O. 37, r. 4.)
53. Fee Sheet (Probate). (Sch. 2, Part 4.)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 1

GENERAL TITLE OF WRITS AND OTHER DOCUMENTS IN A SUIT

Republic of Zambia

(a).........................................................

IN THE HIGH COURT FOR ZAMBIA

(AT THE                                    DISTRICT REGISTRY) (b)

19 .......... H ......... No ......... (c)

Between

Plaintiff

.................................................
and
.................................................        Defendant
or

In the matter of: (d)

NOTES:  (a)  Here insert description of document.
           (b)  Delete if inapplicable.
           (c)  Here put in the year, letters and number. In an action commenced in the Principal Registry at Lusaka the letters shall be HP. In actions commenced in the Ndola, Livingstone or Kitwe District Registry respectively the letters shall be HN, HL or HK respectively.
           (d)  If the action is for administration the writ must be headed In the matter of the Estate of A.B., deceased'.

               If it is a debenture holder's action the writ must be headed In the matter of the company', and in a Probate action (not District Registry) In the Estate of A.B., deceased'. A Writ of Summons claiming administration of a trust or settlement may be entitled 'In the matter of the (trust or settlement)'.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 2

REPUBLIC OF ZAMBIA

WRIT OF SUMMONS

(*For issue from the Principal Registry*)
(*General Title*)

To

of

You are commanded in the President's name that within                                   days after the service of this writ on you, inclusive of the day of such service, you do cause an appearance to be entered for you in an action at the suit of                                    ; and take notice that in default of your so doing the plaintiff may proceed therein, and judgment may be given in your absence.
Witness The Honourable .................................................................................................................................................

*Chief Justice of Zambia*

Dated the                                    day of                                    in the year of Our Lord One Thousand Nine Hundred and

MEMORANDUM TO BE SUBSCRIBED ON THE WRIT

Notes:   (1)   This writ is to be served within twelve calendar months from the date thereof, or, if renewed, within six calendar months from the date of the last renewal, including the day of such date, and not afterwards.
(2)   The defendant (*or* defendants) may appear hereto by entering an appearance (*or* appearances) either personally or by Advocate at the Principal Registry, High Court for Zambia, Lusaka.
(3)   A defendant appearing personally may, if he desire, enter his appearance by post and the appropriate forms may be obtained from any High Court Registry or from any Subordinate Court office. The forms, when completed, should be sent in triplicate by registered letter addressed to The Registrar, P.O. Box 50067, Lusaka', so as to reach him within the time stated above.

ENDORSEMENTS TO BE MADE ON THE WRIT BEFORE ISSUE THEREOF

The plaintiff's claim is for

This writ was issued by

of*(4)                                    whose address for service is at and whose postal address for service is at                                    agent                                    for

of                                    , Advocate for the

said plaintiff who resides at †(5)

ENDORSEMENTS TO BE MADE WITHIN THREE DAYS AFTER SERVICE
This writ was served by me at

on the defendant                                    on the                                    day

of                                    , 19                                    .

(Signed)
(Address)

* Here insert both actual and postal addresses.
† Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.

(*As amended by SI. No* 105 *of* 1986 *and S.I. No.* 174 *of* 1990)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 3

REPUBLIC OF ZAMBIA                                                    Sch. 1

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

WRIT OF SUMMONS

(*For issue from a District Registry*)
(*General Title*)

To

of

You are commanded in the President's name that within                    days after the service of this writ on you, inclusive of the day of such service, you do cause an appearance to be entered for you in an action at the suit of                    ; and take notice that in default of your so doing the plaintiff may proceed therein, and judgment may be given in your absence.

Witness The Honourable...................................................................................................................................................................

*Chief Justice of Zambia*

Dated the            day of                    in the year of Our Lord One Thousand Nine Hundred and.

### MEMORANDUM TO BE SUBSCRIBED ON THE WRIT

Notes:  (1)  This writ is to be served within twelve calendar months from the date thereof, or, if renewed, within six calendar months from the date of the last renewal, including the day of such date, and not afterwards.

(2)  The defendant (or defendants) may appear hereto by entering an appearance (or appearances) either personally or by Advocate at the above-mentioned District Registry of the High Court for Zambia.

(3)  A defendant appearing personally may, if he desire, enter his appearance by post and the appropriate forms may be obtained from any High Court Registry or from any Subordinate Court office. The forms, when completed, should then be sent in triplicate by registered letter addressed to the District Registrar, so as to reach him within the time stated above.

### ENDORSEMENTS TO BE MADE ON THE WRIT BEFORE ISSUE THEREOF

The plaintiff's claim is for

This writ was issued by

of*(6)                                                                      whose address for service

is at                                                                      and whose postal address

for service is at                         agent            for

of                                                                , Advocate for the

said plaintiff who resides at †(7)

### ENDORSEMENT TO BE MADE WITHIN THREE DAYS AFTER SERVICE

This writ was served by me at

on the defendant                                        on the    day

of                         , 19        .

Endorsed the                    day of                    19            .

(Signed)

(Address)

\* *Here insert both actual and postal addresses.*
† *Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia
SPECIALLY ENDORSED WRIT

(*For issue from the Principal Registry*)
(*General Title*)

To

of

You are commanded in the President's name that within                                                                                                              days

after the service of this writ on you, inclusive of the day of such service, you do cause an appearance to be entered for you

in an action at the suit of ;                                                                                                                                                           and

take notice that in default of your so doing the plaintiff may proceed therein, and judgment may be given in your absence.

Witness The Honourable ..........................................................................................................................................................................

*Chief Justice of Zambia*

Dated the        day of                                                    in the year
of Our Lord One Thousand Nine Hundred and

MEMORANDUM TO BE SUBSCRIBED ON THE WRIT

Notes:    (1)   This writ is to be served within twelve calendar months from the date thereof, or, if renewed, within six
                   calendar months from the date of the last renewal, including the day of such date, and not afterwards.
          (2)   The defendant (or defendants) may appear hereto by entering an appearance (or appearances) either
                   personally or by Advocate at the Principal Registry, High Court for Zambia, Lusaka.
          (3)   A defendant appearing personally may, if he desire, enter his appearance by post and the appropriate
                   forms may be obtained from any High Court Registry or from any Subordinate Court office. The forms,
                   when completed, should be sent in triplicate by registered letter addressed to The Registrar, P.O. Box
                   50067, Lusaka, so as to reach him within the time stated above.

SPECIAL ENDORSEMENT
Statement of Claim

The plaintiff's claim is

PARTICULARS
(Signed) ........................................................................

And the sum of K                                                    and for each kilometre (if any) (*or* such sum as may be
allowed on taxation) for costs, and also, in case the plaintiff obtains an order for substituted service,
the further sum of K                                                    (*or* such sum as may be allowed on taxation).
If the amount claimed be paid to the plaintiff or his Advocate or agent within the time allowed above for entering an
appearance to this writ, further proceedings will be stayed.

Provided that if it appears from the endorsement of the writ that the plaintiff is resident outside the Republic or is acting
by order or on behalf of a person so resident, proceedings will only be stayed if the amount claimed is paid into Court
within the said time and notice of such payment is given to the plaintiff, his Advocate or agent.

This writ was issued by
of*(8)                                                                                                         whose address for service

is at

                                                                                                         and whose postal address

for service is at                                            agent             for

of                                                                                    , Advocate              for the

said plaintiff who resides at †(9)

ENDORSEMENT TO BE MADE WITHIN THREE DAYS AFTER SERVICE
This writ was served by me at

on the defendant                                                 on the                                               day

of                                              , 19

Endorsed the        day of     , 19

          (Signed)

          (Address)

*\* Here insert both actual and postal addresses.*
*† Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.*
(*As amended by S.I No.* 105 *of* 1986 *and S.I. No.* 71 *of* 1997)
Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 5

REPUBLIC OF ZAMBIA

Sch. 1

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

SPECIALLY ENDORSED WRIT

(*For issue from a District Registry*)
(*General Title*)

To

of

You are commanded in the President's name that within                                     days after the service of this writ on you, inclusive of the day of such service, you do cause an appearance to be entered for you in an action at the suit of                                                                                                                           ; and take notice that in default of your so doing the plaintiff may proceed therein, and judgment may be given in your absence. Witness The Honourable ...........................................................................................................................................................

*Chief Justice of Zambia*

Dated the                                              day of                                                                     in the year of Our Lord One Thousand Nine Hundred and

MEMORANDUM TO BE SUBSCRIBED ON THE WRIT

NOTES: (1)  This writ is to be served within twelve calendar months from the date thereof, or, if renewed, within six calendar months from the date of the last renewal, including the day of such date, and not afterwards.

(2)  The defendant (or defendants) may appear hereto by entering an appearance (or appearances) either personally or by Advocate at the above-mentioned District Registry of the High Court for Zambia, Lusaka.

(3)  A defendant appearing personally may, if he desire, enter his appearance by post and the appropriate forms may be obtained from any High Court Registry or from any Subordinate Court office. The forms, when completed, should then be sent in triplicate by registered letter addressed to the District Registrar, P.O. Box so as to reach him within the time stated above.

SPECIAL ENDORSEMENT
Statement of Claim

The plaintiff's claim is

PARTICULARS
(Signed) .......................................................................
And the sum of K                                          and for each kilometre (if any) (*or* such sum as may be allowed on taxation) for costs, and also, in case the plaintiff obtains an order for substituted service, the further sum of K                                                        (*or* such sum as may be allowed on taxation). If the amount claimed be paid to the plaintiff or his Advocate or agent within the time allowed above for entering an appearance to this writ, further proceedings will be stayed.

Provided that if it appears from the endorsement of the writ that the plaintiff is resident outside the Republic or is acting by order or on behalf of a person so resident, proceedings will only be stayed if the amount claimed is paid into Court within the said time and notice of such payment is given to the plaintiff, his Advocate or agent.

This writ was issued by of*(10)                                                                                            whose address for service is at                                                                                       and whose postal address for service is a                                   agent                       for of                                                                            , Advocate                        for the said plaintiff who resides at†(11)

ENDORSEMENT TO BE MADE WITHIN THREE DAYS AFTER SERVICE

This writ was served by me at on the defendant                                                       on the                                              day of                                   , 19 Endorsed the                                       day of                                    19              .

(Signed)

(Address)

* Here insert both actual and postal addresses.
† Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

<div align="right">H.C. Civ. 6    Sch. 1</div>

ORIGINATING SUMMONS

(*For issue from the Principal Registry*)
(*General Title*)

Let

of                                                                                   within                    days

after service of this summons on him, inclusive of the day of such service, cause an appearance to be entered for him to

this summons, which is issued on the application of                           of                     who claims to be*(12)

for the determination of the following questions:†(13)


   Dated the                                        day of                                        19        .
   This summons was taken out by
of ‡(14)

whose address for service is at                                                                   and whose

postal address for service is at                                                  , Advocate          for the

plaintiff who resides at                                                                                  .


   The defendant may appear hereto by entering appearance either personally or by Advocate at the Principal Registry, High Court for Zambia, Lusaka.

NOTES:   (1)   If the defendant does not enter appearance within the time and at the place above mentioned such order will be made and proceedings may be taken as the Judge may think just and expedient.

   (2)   A person appearing personally may, if he desire, enter his appearance by post and the appropriate forms may be obtained from any High Court Registry or from any Subordinate Court office. The forms, when completed, should be sent in triplicate by registered letter addressed to The Registrar, P.O. Box 50067, Lusaka, so as to reach him within the time stated above.

\* *State the nature of the claim.*
† *State the questions.*
‡ *Here insert both actual and postal addresses.*

<div align="right">(*As amended by S.I. No.* 105 *of* 1986)</div>

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 7

REPUBLIC OF ZAMBIA

ORIGINATING SUMMONS

(*For issue from a District Registry*)
(*General Title*)

Let

of          within          days

after service of this summons on him, inclusive of the day of such service, cause an appearance to be entered for him to

this summons, which is issued on the application of                              of

who claims to be*(15)

for the determination of the following questions:†(16)

Dated the                              day of                              19          .

This summons was taken out by
of‡(17)

whose address for service is at                                                  and whose

postal address for service is at                              , Advocate          for the

plaintiff who resides at

The defendant may appear hereto by entering appearance either personally or by Advocate at the above-mentioned District Registry of the High Court for Zambia.

NOTES:  (1)  If the defendant does not enter appearance within the time and at the place above mentioned, such order

will be made and roceedings may be taken as the Judge may think just and expedient.

(2)  A person appearing personally may, if he desire, enter his appearance by post and the appropriate forms may be obtained from any High Court Registry or from any Subordinate Court office. The forms, when completed, should then be sent in triplicate by registered letter addressed to the  District Registrar, P.O. Box                                                  so  as  to  reach  him within the time stated above.

* *State the nature of the claim.*
† *State the questions.*
‡ *Here insert both actual and postal addresses.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 8    Sch. 1

ORIGINATING SUMMONS NOT INTER PARTES

(*For issue from the Principal Registry*)

IN THE HIGH COURT FOR ZAMBIA

19........ HP......... No.........

In the matter of
In the matter of*(18)

LET
of                                                                                                      within         days
of the service of this summons on him, inclusive of the day of such service, cause an appearance to be entered for him to
this summons, which is issued upon the application of
                                                                        of
for an order that†(19)

Dated the                                       day of 19        .

This summons was taken out by
of‡(20)
whose address for service is at                                                                                   and whose
postal address for service is at                                                          , Advocate       for the
above named.

The respondent may appear hereto by entering appearance either personally or by Advocate at the Principal Registry,
High Court for Zambia, Lusaka.

NOTES:  (1)    If the respondent does not enter appearance within the time and at the place above mentioned, such order
               will be made and proceedings taken as the Judge may think just and expedient.

        (2)    A person appearing personally may, if he desire, enter his appearance by post and the appropriate forms
               may be obtained from any High Court Registry or from any Subordinate Court office. The forms, when
               completed, should be sent in triplicate by registered letter addressed to "The Registrar, P.O. Box 50067
               Lusaka", so as to reach him within the time stated above.

\* *Specify statute or as the case may be.*
† *State the object of the application.*
‡ *Here insert both actual and postal addresses.*

(*As amended by S.I. No.* 105 *of* 1986)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 9     Sch. 1

REPUBLIC OF ZAMBIA

ORIGINATING SUMMONS NOT INTER PARTES

(*For issue from a District Registry*)

IN THE HIGH COURT FOR ZAMBIA
AT THE                                              DISTRICT REGISTRY

19.......... H......... No..........

In the matter of
In the matter of*(21)

LET
of                                                                                                              within        days
of the service of this summons on him, inclusive of the day of such service, cause an appearance to be entered for him to
this summons, which is issued upon the application of
                                        of
for an order that†(22)

Dated the                                              day of                                              19        .

This summons was taken out by
of‡(23)
whose address for service is at                                                                                    at and whose
postal address for service is at,                                              Advocate        for the
above named.

The respondent may appear hereto by entering appearance either personally or by Advocate at the above-mentioned
District Registry of the High Court for Zambia.

NOTES:   (1)      If the respondent does not enter appearance within the time and at the place above mentioned, such order
                        will be made and proceedings taken as the Judge may think just and expedient.

               (2)      A person appearing personally may, if he desire, enter his appearance by post and the appropriate forms
                        may be obtained from any High Court Registry or from any Subordinate Court office. The forms, when
                        completed, should then be sent in triplicate by registered letter addressed to The District Registrar, P.O.
                        Box             , so as to reach him within the time stated above.

* *Specify statute or as the case may be.*
†*State the object of the application.*
‡ *Here insert both actual and postal addresses.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 10    Sch. 1

REPUBLIC OF ZAMBIA

ORIGINATING SUMMONS UNDER ORDER VI, RULES 2 AND 6

IN THE HIGH COURT FOR ZAMBIA
(AT THE                                                    DISTRICT REGISTRY*(24))
                                                          19......... H.......... No...........

In the matter of†(25)

   LET
of
attend before                                              in Chambers at the High Court,
                          on the                    day of                    19         ,
at                o'clock in the              noon, on the hearing of an application on the part of
                  for‡(26)

   Dated the        day                    of 19        .

   This summons was taken out by
of**(27)                                                   whose address for service
is at                                                      and whose postal address for service is at
                  , Advocate for the above named.

NOTE: It will not be necessary for you to enter an appearance, but if you do not attend either in person, or by your
      Advocate, at the time and place above mentioned, such order will be made and proceedings taken as the Judge
      may think just and expedient.
*Delete if inapplicable.
† As the case may be.
‡ State relief sought.
** Here insert both actual and postal addresses.

(As amended by S.I. No. 71 of 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 11    Sch. 1

REPUBLIC OF ZAMBIA

ORIGINATING NOTICE OF MOTION

IN THE HIGH COURT FOR ZAMBIA

(AT THE                                         DISTRICT REGISTRY*(28))

19.......... H............ No...........

In the matter of

and

In the matter of†(29)

BETWEEN                                                                          Applicant

and

Respondent

TAKE NOTICE that the High Court for Zambia will be moved at
on          the          day of
19      at          o'clock in the                                 noon, or so soon thereafter as
counsel can be heard, by the above-named applicant for an order that
and that the costs of this application be

Dated at                    the day                                      of          19     .

(*Advocate for the Applicant*)

This notice of motion is filed by the applicant who resides at
(*Or* This notice of motion is filed by                    of
whose address for service is                                      , Advocate for the applicant,
who resides at

To ........................

NOTE: It will not be necessary for you to enter an appearance but if you do not attend either in person or by your
        Advocate, at the time and at the place above mentioned, such order will be made and proceedings taken as the
        Court may think just and expedient.

*Delete if inapplicable.*
† *Specify statute, if any.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 12    Sch. 1

PRAECIPE OF RENEWED WRIT OF SUMMONS

(*General Title*)

SEAL in pursuance of order dated the                                          day of
                          19                    a renewed writ of summons in this action,
endorsed as follows:*(30)

Dated the                                          day of                         19        .
    (Signed)
    (Address)

(*Advocate for the Plaintiff*)

* *Copy original writ and the endorsements.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 13

REPUBLIC OF ZAMBIA

NOTICE OF SERVICE ON MANAGER OF PARTNERSHIP

(*General Title*)

TAKE NOTICE that the writ served herewith is served on you as the person having control or management of the partnership business of the above-named defendant firm of
(and also as a partner in the said firm *(31)).

*Under-Sheriff/Bailiff* †(32)

*If the person served with the writ is served in the two capacities of manager and partner, the clause should be left standing. If he is served as manager only it should be struck out.*

†*Delete if inapplicable.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

CERTIFICATE OF SERVICE

(*General Title*)

I, (*a*)
of
do hereby certify and say as follows:
1.  That I am (*b*)                                                                                     duly appointed for
the District of                                                          within the jurisdiction of this Honourable
Court.

[2. (*c*) (*f*) That I did on the                              day of
19, at (*d*)

(*e*)      (i)      personally serve                              , the above-named defendant,

          (ii)     personally serve, the proprietor of the above-named defendant
                   firm of

          (iii)    personally serve                         , a partner of the above-named
                   defendant firm of

          (iv)     being the principal place of business of the above-named defendant partnership within the jurisdiction of
                   this Honourable Court, personally serve
                   , the person having at the time of such service the control or management of the said
                   partnership business there (*see* paragraph 5 below),

      *or* (v)
with a true copy of the writ of summons in this action which appeared to me to have been regularly issued out of the High
Court for Zambia (at the
District Registry (*f*)) against the above-named defendant (*or* defendants) at the suit of the above-named plaintiff
(*or* plaintiffs) and which was dated the the suit of the above-named plaintiff (*or* plaintiffs) and which was dated
the                                                                              day                                   of 19    .]

*or*

[2. (*f*) That I did on the                              day
of 19      , serve the above-named defendant with a true copy of the writ of summons in this action, which appeared to
me to have been regularly issued out of the High Court for Zambia (at the District Registry (*f*)) against the above-named
defendant at the suit of the above-named plaintiff (*or* plaintiffs) and which was dated the
day of 19      , by leaving the same at (*g*)
          , which is the registered office of the defendant company.]

    3.  That at the time of the said service the writ and the copy thereof were subscribed and endorsed in the manner and
form prescribed by the Rules of the said Court.

    4.  That I did on the day of                              19      , endorse on the said writ the day of the month and the week of
the said service.

    5.  (*f*)  That I did at the time of the said service deliver to the person so served as aforesaid a notice in writing that the
said writ of summons was served upon him as the person having control or management of the partnership business of the
said defendant firm.

Dated the                                        day of                                                             19       .
                                                                                                  *Under-Sheriff/Bailiff*

This certificate was filed
by: .............................................
..................................................
..................................................
..................................................
*Advocate(s) for the* ....................

          NOTES:  All erasures, interlineations or alterations should be initialed immediately
                       opposite the erasure, interlineation or alteration.

      (*a*)    Full name and address of officer.

      (*b*)    Title, e.g. Under-Sheriff or Bailiff.

      (*c*)    Use alternative para. 2 for service on limited company.

      (*d*)    Place of service-full address should be given.

      (*e*)    Delete whichever inapplicable. These are the examples most commonly met.

      (*f*)    Delete if inapplicable.

      (*g*)    Address of registered office.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. CIV. 15

REPUBLIC OF ZAMBIA

Sch. 1

AFFIDAVIT OF SERVICE

(*General Title*)

I, (*a*)

of

hereby make oath and say as follows:

1. That I am (*b*)

[2. (*c*) (*f*). That I did on the                    day of

19      , at (*o*)

  (*e*)  (i)    personally serve                                        , the above-named defendant,

        (ii)    personally serve, the proprietor of the above-
named defendant firm of,

        (iii)   personally serve, a partner of the above-named
defendant firm of ,

        (iv)   being the principal place of business of the above-named defendant partnership within the jurisdiction of
this Honourable Court, personally serve
             , the person having at the time of such service the control or management of the said
partnership business there (*see* paragraph 5 below),

     *or* (v)

with a true copy of the writ of summons in this action which appeared to me to have been regularly issued out of the High
Court for Zambia (at the
District Registry (*f*)) against the above-named defendant (*or* defendants) at the suit of the above-named plaintiff (*or*
plaintiffs) and which was dated the
day of       19      .]

[2. (*f*)  That I did on the                    day of

19      , serve the above-named defendant with a true copy of the writ of summons in this action, which appeared to me to
have been regularly issued out of the High Court for Zambia (at the District Registry (*f*)) against the above-named
defendant at the suit of the above-named plaintiff (*or* plaintiffs) and which was dated the
           day of                    19      , (by leaving the same at (*g*)
    .) *or* (by sending the same by post on the                    day of                    19      , in a prepaid letter or envelope
addressed to the company at (*l*) (*g*),)
which is the registered office of the defendant company.]

   3.  That at the time of the said service the writ and the copy thereof were subscribed and endorsed in the manner and
form prescribed by the Rules of the said Court.

   4.  That I did on the                                        day of                                        19      ,
endorse on the said writ the day of the month and the week of the said service.

   [5.  (*f*)  That I did at the time of the said service deliver to the person so served as aforesaid a notice in writing that the
said writ of summons was served upon him as the person having control or management of the partnership business of the
said defendant firm.]

SWORN by the said

at                                                                 }   .....................................................

on the                    day of                    19      .

BEFORE ME

           *Commissioner for Oaths*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

NOTES:   All erasures, interlineations or alterations should be initialed by the Commissioner immediately opposite the erasure, interlineation or alteration.

(*a*)   Full name and address of deponent.

(*b*)   Profession or occupation and nationality, e.g. Clerk in the employ of x.y. Advocate and Barrister.

(*c*)   Use alternative para. 2 for service on limited company.

(*d*)   Place of service-full address should be given.

(*e*)   Delete whichever inapplicable. These are the examples most commonly met.

(*f*)   Delete if inapplicable.

(*g*)   Address of registered office.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Sch. 1
H.C. Civ. 16
S.C. Civ. 12

*Civil Cause No*.................

REPUBLIC OF ZAMBIA

DEBIT AND ADVICE NOTE

(*For use by the Sheriff and his Officers*)

In the Court

In the matter between

Plaintiff

and

Defendant

| *(33)SERVICE ONLY | *(34)EXECUTION ONLY |
|---|---|
| The Sheriff does not require a copy | A copy must be sent to the Sheriff |

*(35)Service of the Writ/Summons/        K  n

Judgment Summons/Notice/ :

*(37)(a)     was effected:†(38)    *(36)Seizure/Arrest ..   . .    ........

*(39)(b)     has failed:‡(40)    Total kilometres

   (if appropriate)    ..   ..   ........

   Commission    ..   ..   ........

   Haulage... .    ..   ..   ........

*(41)(c)    has not yet been effected    Labour . .    ..   ..   ........

  and a further attempt will    Auctioneer    ..   ..   ........

  be made:****    Advertising    ..   ..   ........

   Total    .    ..    ..   K

DETAILS OF REPORT OR RETURN:

The following fees are due from and

  owing by you in respect thereof;

  kindly forward them immediately.

          K  n

  Service (only if effected)

   Total kilometres

    (if appropriate)

Total .     ..   ..    K

To the Advocates for the Plaintiff:    (Signed)................................................

Messrs.............................................    (Name)..................................................

(Address) P.O. Box No.......................    (Address).............................................

..........................................................    ..............................................................

c.c. The Court named in the Heading.    (Date)

\* *Delete whichever inapplicable.*
† *Insert date and place of service, person served and capacity.*
‡ *Set out reasons with particulars and dates.*

(*As amended by S.I. No.* 105 *of* 1986)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

NOTICE OF PAYMENT INTO COURT

(*General Title*)

TAKE NOTICE that the sum of K                    has been paid into Court pursuant to Rules of Court and the Exchange Control Regulations (Cap. 593), being the amount of K

due        to*(42)

{ from

of                     in respect of

the said†(43)                          being

(i)     *(44)a resident outside the Republic;

*or*

(ii)    *(45)a person acting by order or on behalf of a person resident outside the Republic; together with*(46)

less*(47)  } the sum of K           costs.

Dated the              day of              19     .

(Signed)

(*Advocate*       *for* †(48)

_____

RECEIPT

Received the above sum of                              kwacha                                  ngwee

K

into Court for the above credit.

Dated the              day of              19     .

*Assistant Registrar*

* *Delete as required* .

† *Plaintiff or Defendant.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 18

MEMORANDUM OF APPEARANCE

(*General Title*)

Enter an appearance for (*full names*) in this action.

Dated at  the                     day of            19        .

---

## PART A

(*This Part is only for use where a defendant desires to appear without a Advocate.*)

(Signed)................................

My residential address is ............................................................................................................................................................

My postal address is ...................................................................................................................................................................

*Defendant in person*

*(49) As my residential address is more than ten kilometres from the Registry concerned, I give the following as an address within ten kilometres thereof at which documents can be left for me.

...........................................................................................................................................................................................................

*(50) As my postal address is more than ten kilometres from the Registry concerned, I give the following as a postal address within ten kilometes thereof to which documents may be posted to me:

...........................................................................................................................................................................................................

---

## PART B

(*This Part is only for use where a defendant appears by Advocate.*)

(Signed

*Advocate       for*

Business address

Postal address

whose address for service is *(51)

whose postal address for service is *(52)

Agents for                          of

* *Delete if inapplicable.*

DIRECTIONS FOR THE GUIDANCE OF DEFENDANTS IN PERSON WHO DESIRE TO ENTER APPEARANCE          Sch. 1

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

*Section* X below should be followed where a defendant intends to attend himself at the Registry.

*Section* Y below should be followed where a defendant wishes to appear by post.

### Section X. *Personal Appearance by a Defendant*

1. The Memorandum of Appearance must be completed in *duplicate.* (O. XI, r. 1.)

2. Fill in the full title and number of the action by copying the heading from the writ served on you.

3. Insert your full name in the blank space provided after the words "*Enter an appearance for*". Observe that if a defendant is sued in the firm name, e.g. *Smith and Co.,* appearance must be in the name of the partner or partners so appearing, as an appearance in the name of a firm cannot be accepted. Further, a limited company can only appear by Advocate.

4. Date the forms.

5. Complete the information required in and sign Part A. Delete Part B.

6. Attend in person at the Registry or District Registry in which the action is proceeding and deliver both copies to the Registry Officer.

7. On the same day as appearance is entered, deliver or send by post to the plaintiff's Advocate, or the plaintiff if he is suing in person, the duplicate memorandum returned to you by the Registry Officer. (The address at or to which to deliver or send the memorandum is on the writ.) (O. XI, r. 3 (1).)

8. The appearance should be entered within the time stated for so doing on the writ and if not so entered the plaintiff will be entitled to proceed by default and judgment may be given without further notice to you.

### Section Y. *Personal Appearance by Post*

1. The Memorandum of Appearance must be completed in *triplicate.* (O. XI, r. 2.)

2. Fill in the full title and number of the action by copying the heading from the writ served on you.

3. Insert your full name in the blank space provided after the words "*Enter an appearance for*". Observe that if a defendant is sued in the firm name, e.g. *Smith and Co.,* appearance must be in the name of the partner or partners so appearing, as an appearance in the name of a firm cannot be accepted. Further, a limited company can only appear by Advocate.

4. Date the forms.

5. Complete the information required in and sign Part A. Delete Part B.

6. Send all three copies, when completed, without fee by prepaid registered post to the address stated in Note 3 on the front page of the writ (Note 2 in the case of an originating summons), at the same time enclosing two stamped addressed envelopes, one to the plaintiff's Advocates, or to the plaintiff if he sues in person, at the postal address shown on the document served on you and the other to yourself at your postal address for service. (O. XI, r. 2.)

7. The forms must be posted so as to be delivered at the Registry or District Registry concerned before the time allowed for appearance (as shown on the first page of the writ) has expired. If the forms are not so delivered, the plaintiff will be entitled to proceed by default and judgment may be given without further notice to you.

8. If the forms, when received, are incorrect or incomplete, then appearance cannot be entered and the action may proceed as in 7 above. The time for appearance *cannot be extended* .

———————

If you do not employ a Advocate you are advised to refer to Order XI of the High Court Rules for all requirements relating to the entry of appearance.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

NOTICE LIMITING DEFENCE

(*General Title*)

TAKE NOTICE that the (above-named) defendant
limits his defence to part only of the property mentioned in the writ of summons, namely, to *(53)

Dated the                     day of                     19        .

(Signed)
of
Agent for
of
*Advocate for the above-named defendant.*

To
*The plaintiff's Advocates.*
\* *Describe the part.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 20

SEARCH

(*General Title*)

SEARCH FOR

Dated the             day of             19      .

(Signed)
(Address)
Agent for
Advocate for

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 21

REPUBLIC OF ZAMBIA

SUMMONS (GENERAL FORM)

(*General Title*)

Let all parties concerned attend before                                                                    in Chambers,
on the                               day of  19                        at                                o'clock in the                               noon
on the hearing of an application on the part of

Dated at                               this                        day of  19          .
This Summons was taken out by
of                                           Advocate(s) for the
To                     of                                    and to his Advocate(s).

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 22

REPUBLIC OF ZAMBIA

SUMMONS UNDER ORDER XIII

(*General Title*)

UPON READING the affidavit of
let all parties concerned attend the Deputy/District/Registrar in Chambers, on the
day of                                    19        at                                    o'clock in the
noon on the hearing of an application on the part of the plaintiff that he be at liberty to sign final judgment
against                                                        for
and costs.

Dated the  day of                                    19        .
To

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

SUMMONS FOR DIRECTIONS

(*General Title*)

Let all parties concerned attend the Assistant/Deputy/District/Registrar in Chambers, on the
day of                     19      at              o'clock
in the                          noon on the hearing of an application on the part of                    to show cause why an order for
directions should not be made in this action as follows:

Pleadings
Discovery
Inspection
Setting down for trial
Place of trial
Mode of trial
Liberty to either party to apply
That the costs of this application be costs in the cause.

Dated at                         the                        day of

This summons was taken out at                        by
Advocate for the plaintiff.

To the defendant(s) and to                        his (their) Advocate(s).

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 24

REPUBLIC OF ZAMBIA


PRAECIPE OF SUBPOENA

(*General Title*)

Seal a writ of subpoena        on behalf of the
directed to                    , returnable

  Dated the        day of        19   .

                                  (Signed)
                                  (Address)
                               *Advocate for*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 25

SUMMONS TO A WITNESS

(*Subpoena ad Testificandum*)

(*General Title*)

To

   You are commanded in the President's name to attend before the High Court for Zambia at             on the day of        19     at the hour of   in the           noon and so from day to day until the above cause is tried, to give evidence on behalf of the plaintiff (*or* defendant).

WITNESS The Honourable.............................................................................................................................................................

*Chief Justice of Zambia*

   Dated the                          day of                 in the year of Our Lord One Thousand Nine Hundred and

   Notice (strike out if inapplicable): Notice will be given to you of the day on which your attendance will be required.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

SUBPOENA DUCES TECUM

(*General Title*)

To

   You are commanded in the President's name to attend before the High Court for Zambia at
on the          day of              19    at the hour of          in the  noon and so from day to day until
the above cause is tried, to give evidence on behalf of the plaintiff (*or* defendant) and also to bring with you and produce at
the time and place aforesaid

WITNESS The Honourable ...........................................................................................................................................................
<div align="center">*Chief Justice of Zambia*</div>

   Dated the                    day of                    in the year of Our Lord
One Thousand Nine Hundred and

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 27

WARRANT FOR PRISONER TO GIVE EVIDENCE

(*General Title*)

To the Officer in Charge of the Prison at

You are commanded to have                                                        , a prisoner under your custody, before the High Court for Zambia at                                            on                                the day of                          next at                          o'clock in the                          noon, to give evidence in the above-named cause, and immediately after he has there and then given his evidence to return.

Issued at                                        the                                day of                                19

*Chief Justice/Judge*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 28

REPUBLIC OF ZAMBIA

IN THE HIGH COURT FOR ZAMBIA

(AT THE    DISTRICT REGISTRY*(54))

BETWEEN

19........ H........ No........

................................................................................................................................... Plaintiff/Petitioner/Applicant

and

................................................................................................................ Defendant/Respondent

and

............................................................................................................. /Co-Respondent

and

............................................................................................   ...............................

---

NOTICE OF HEARING

---

TAKE NOTICE that the above cause will be heard and determined by the High Court for Zambia at .................................
on ............... the .................... day of ................ 19 .... at the hour of ......... o'clock in the ........ noon.
Judge ...................................................................................................................................................................................
Court No. ............................................................................................................................................................................
Dated the ....................................... day of ............................, 19.......

.................................................
*Deputy Assistant Registrar*

To:

........................................................................................................................ Advocates for Plaintiff/Petitioner/Applicant
.......................................................................................................................Advocates for Defendant/Respondent
.................................................................................................................Advocates for ............../Co-Respondent
....................................................................................................................... Advocates for ....................

c.c. to:     Notice Board
            Assistant Registrar
            File

NOTE:  This form should be used whenever a date is fixed *other* than by a *Summons* or by Mention or by adjournment the
date of which is mentioned in open court.
     *Delete if inapplicable.*

(*As amended by S.I. No.* 71*of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REFERRAL ORDER - 0.XXX1 r4
(Order XXX1 Rule 4)

Sch. 1

FORM 28A

Cause No.      /     /

IN THE HIGH COURT FOR ZAMBIA

Holden at........................................................

BETWEEN:

PLAINTIFF(S)

DEFENDANT(S)

*To*: THE MEDIATION OFFICER

   Having satisfied myself that this action is ready for trial I hereby refer it for mediation.

   Please assign a mediator to mediate and ensure that the mediator collects the record from your office immediately. Failure to do so will amount to contempt of Court.

   Dated the                               day of                               ...........................

................................................
*Trial Judge*

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

STATEMENT OF UNDERSTANDING: THE ROLE OF THE MEDIATOR -
0.XXX1 r 9
FORM 28B

Cause No.    /    /

IN THE HIGH COURT FOR ZAMBIA

Holden at......................................................

BETWEEN:

PLAINTIFF(S)

DEFENDANT(S)

My name is......................................................................................................
I have been assigned to mediate your case. I will serve as a neutral party to help you resolve you dispute. I will not act as an advocate for any party.

This mediation is strictly confidential. No party shall be bound by anything said or done in mediation unless a settlement is reached. If a settlement is reached, the agreement shall be reduced to writing and, when signed, shall be binding upon all parties to the agreement. Each party agrees not to request that, I, the mediator testify against the other party, nor ask me or the other party to testify regarding statements made in mediation.

Please sign below to acknowledge that you have read and/or understand this statement.

.................................................................          .................................................................
*Plaintiff(s)*                                                          *Defendant(s)*

.................................................................          .................................................................
*Plaintiff's Advocate*                                          *Defendant's Advocate*

.................................................................          .................................................................
*Mediator*                                                             *Date*

(*As amended by S.I. No.* 71 *of* 1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

MEDIATOR'S REPORT - 0.XXX1 r 11

FORM 28C

Sch. 1

Cause No.    /    /

IN THE HIGH COURT FOR ZAMBIA

Holden at.........................................................

BETWEEN:

PLAINTIFF(S)

DEFENDANT(S)

TO: THE MEDIATION OFFICER

I.......................................................................................................................having been designated as mediator in this action and having conducted mediation between the parties do hereby report that the parties have failed to reach a settlement. In terms of the above rule you are required within 7 days of your receiving this report to remit the record herewith to the trial judge.

Dated the                              day of                                    ...........................

.....................................................
*Mediator's Signature*

(*As amended by S.I. No.* 71of1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

MEDIATION SETTLEMENT - 0.XXX1 r 12

FORM 28D

Cause No.      /      /

IN THE HIGH COURT FOR ZAMBIA

Holden at.........................................................

BETWEEN:

PLAINTIFF(S)

DEFENDANT(S)

We, the undersigned parties to this action have agreed to settle our disputes/differences as follows:

Dated the                                            day of                                  ............................

......................................................                    ..................................................................
            *Plaintiff(s)*                                                                    *Defendant(s)*

......................................................                    ..................................................................
        *Plaintiff's Advocate*                                                      *Defendant's Advocate*

......................................................                    ..................................................................
            *Mediator*                                                             *Mediator's Full Name*

(*As amended by S.I. No.* 71*of*1997)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 29    Sch. 1

REPUBLIC OF ZAMBIA

WARRANT TO ATTACH PROPERTY BEFORE JUDGMENT

(*General Title*)

To The Sheriff of Zambia and his Bailiffs.

WHEREAS it has been shown to the satisfaction of this Court that
of                                                   , the defendant in the above suit, with intent
to obstruct or delay the execution of any decree which may be passed against him therein, is about to dispose of or
remove out of the jurisdiction of the Court his goods and chattels:

You are hereby commanded to seize, attach and take into your hands the movable and immovable property of the
defendant (*or* certain property specified to the value of K              ), and to hold the same until the further order of the
Court; and you are also commanded forthwith after the execution of this writ to return the same into the Court, with the
place, time and particulars of execution endorsed thereon.

Dated the                  day of                                    19       .

...............................................
*Chief Justice/Judge*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 30

REPUBLIC OF ZAMBIA

JUDGMENT

(*Default of Appearance*)

(*General Title*)

Dated at                                    the                            day of                            19        .

  The defendant not having appeared to the writ of summons herein, it is this day adjudged that the plaintiff recover against the said defendant K                            and K                        costs (*or* costs to be taxed).

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 31

JUDGMENT

(*Default of Defence*)

(*General Title*)

Dated at  the                    day of                    19        .

The defendant not having delivered any defence, it is this day adjudged that the plaintiff recover against the said defendant K                    and K                    costs (*or* costs to be taxed).

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 32

REPUBLIC OF ZAMBIA

ORDER (GENERAL FORM)

IN THE HIGH COURT FOR ZAMBIA

(AT THE                    DISTRICT REGISTRY*(55))

19......... H........ No.........

†(56) Judge (*or* Registrar)                    in Chambers.

BETWEEN

Plaintiff

and

Defendant

UPON HEARING                                   and UPON READING the affidavit(s)

of

filed herein.

IT IS ORDERED

and that the costs of this application be

Dated the                    day of                    19    .

This Order was taken up by                    of ,

Advocates for the                    .

To:

\*Delete if inapplicable.

† Insert name of Judge or Registrar.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

FORMAL DECREE

(*General Title*)

It is decreed in the above suit that the above-named plaintiff do recover from the above-named defendant the sum of K together with K                              for costs, and the said defendant is hereby ordered to pay the sum of K forthwith (*or* by the following instalments).

Dated the                         day of                         19       .

Debt       . .            . .    K
Costs      . .            . .    K

*Judge/Deputy/District/Registrar*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 34

ATTACHMENT OF EARNINGS ORDER

IN THE HIGH COURT FOR ZAMBIA

(AT THE .......................................... DISTRICT REGISTRY*(57))

19......... H........ No.........

In the matter of AFFILIATION AND MAINTENANCE OF CHILDREN (Cap. 55)

BETWEEN**(58)

.............................................................................................
and
.............................................................................................

WHEREAS ........................................................................................................... of
aged ...................... years and who works at ................................................................... as a
................................................................................... (hereinafter called "the defendant") is required
under a maintenance order made on the ...................... day of .........................................................,
19....... by the High Court for Zambia†(59)  to make payment of..................... a week  to ...........................;

AND WHEREAS on the application of the said .....................................................................................
it appears that at the time the application was made there was due under the maintenance order and unpaid an amount
equal to not less than four of the weekly payments required by the order (*or if the maintenance order is not for weekly
payments*, not less than two of the payments required by the order), and that earnings fall to be paid by.........................
to ........................ the defendant.

IT IS HEREBY ORDERED that the said .................................................................................................
do make payments out of those earnings in accordance with the Affiliation and Maintenance of Children Act to
the‡(60)........................................  Registrar of the High Court at‡(61) .............................. for transmission to the said  .

AND IT IS FURTHER ORDERED that for the purposes of calculating the said payments the normal deduction rate shall
be ......................................................................................................................................... a week†(62)  and
that the protected earnings rate shall be ............................. a week.†(63)

Dated at ........................................................................................ this ...................... day of ...................... , 19 ........

To ...............................................................................
of ...............................................................................
And to ...............................................................................
of ...............................................................................
NOTE:  This Order does not come into force until one week after service on the
        said ...............................................................

  * *Delete if inapplicable.*
  † *Or as the case may be..*
  ‡ *Insert "District" where applicable and full postal address.*
 ** *Full title.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

<div align="right">H.C. Civ. 35   Sch. 1</div>

REPUBLIC OF ZAMBIA

NOTICE OF INTENTION TO VARY ATTACHMENT OF EARNINGS ORDER

IN THE HIGH COURT FOR ZAMBIA

(AT THE                              DISTRICT REGISTRY*(64))

<div align="right">19......... H........ No.........</div>

In the matter of AFFILIATION AND MAINTENANCE OF CHILDREN (Cap. 64)

BETWEEN**(65)

.................................................................................................
and
.................................................................................................

WHEREAS by an attachment of earnings order dated the ...................................................................................... was required, day of ............. , 19 ..... ., ..................................................................................................................................................... was required, out of the earnings falling to be paid by him to.................................................................................. to make payment to me in or towards satisfaction of the payments due to ................................................................................ under a maintenance order made by the High Court for Zambia,†(66)  ........................................................................................................................... on the ........................ day of ......................., 19........ ;

AND WHEREAS it appears that-

(a) the aggregate of the payments made for the purposes of the maintenance order exceeds the aggregate of the payments required by that order; and

(b) the normal deduction rate specified by the attachment of earnings order exceeds the rate of payments required by the maintenance order; and

(c) no proceedings for the variation or discharge of the attachment of earnings order are pending:

TAKE NOTICE that unless the said ........................................................................................ applies to the High Court for Zambia, within fourteen days after the date of this notice, for an order discharging the attachment of earnings order or varying it in some other manner, the Court will make an order varying the attachment of earnings order by reducing the normal deduction rate to the rate of payments required by the maintenance order or to such lower rate as the Court thinks fit having regard to the amount of the excess mentioned in paragraph (a) of this notice.

Dated at .......................................................................... this .................. day of ......................., 19.........

(Signed)‡(67) ..................................................................

(Designation) ..................................................................

To ...........................................................................
of ...........................................................................
And to ....................................................................
of ...........................................................................

* Delete if inapplicable.
† Or as the case may be.
‡ To be signed by the officer of the High Court to whom payments under the attachment of earnings order are to be made.
** Full title.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 36    Sch. 1

REPUBLIC OF ZAMBIA

NOTICE OF NON-EMPLOYMENT OF DEFENDANT

IN THE HIGH COURT FOR ZAMBIA
(AT THE                                    DISTRICT REGISTRY*(68))

19......... H.......... No..........

In the matter of AFFILIATION AND MAINTENANCE OF CHILDREN (Cap. 64)

BETWEEN

†(69).........................................................................................
and
..........................................................................................

NOTICE

WHEREAS by an attachment of earnings order made by the above-named court on the ....... day of .................. I was directed to make payment to the‡(70) ..............................................................................................Registrar of the High Court at‡(71) out of earnings falling to be paid by me to the defendant .................... :

I hereby give notice under section 12 (4) of theAffiliation and Maintenance of Children Act that on no occasion during the period of four weeks immediately preceding the§(72) .................day of..................................., 19..........., was I the defendant's employer within the meaning of that Act.

||(73) (Signed)....................................................................

To:  The Registrar of the High Court (*or* the District Registrar of the High Court) at .........................................

* *Delete if inappiicable.*
† *Title as in attachment of earnings order.*
‡ *Please insert "District" where applicable and full postal address.*
§ *Please insert date of service of attachment of earnings order or such later date as may be appropriate.*
|| *To be signed by the person to whom the attachment of earnings order was directed.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 37

REPUBLIC OF ZAMBIA

WARRANT OF ATTACHMENT

(*General Title*)

To The Sheriff of Zambia and his Bailiffs.

You are required to attach                                         of ,
so as to have him before this Court at , there to answer, as well touching a contempt which he is alleged to have committed, as also such other matters as shall be there laid to his charge, and further to perform and abide such order as the Court shall make in this behalf. And bring this writ with you.

Dated at  the                          day of                              19      .

*Chief Justice/Judge*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 38

REPUBLIC OF ZAMBIA

WARRANT OF ARREST AND COMMITMENT

(*General Title*)

To the Sheriff of Zambia and his Bailiffs.

WHEREAS by an order bearing date the                    day of
19        , it was ordered that                    of
should stand committed to prison (and be kept to labour) for
months/days for contempt of this Court:

YOU ARE THEREFORE COMMANDED in the President's name forthwith to arrest the said
                    of                              , and him safely deliver to the officer in charge of the
prison at                              , there to be imprisoned and kept to labour for  months/days
from the date of the arrest under this warrant.

   Dated at                              the            day of              19      .

*Chief Justice/Judge*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

CERTIFICATE AFTER TRIAL

(*General Title*)

I certify that the above cause was tried before the Honourable
in Court at  on the ..................... day(s)
of ............................., 19 ...... , and occupied the time of the Court as follows:

First day, from............................................................ to.................................................
           from............................................................ to.................................................
Second day, from........................................................ to.................................................
           from............................................................ to.................................................
Third day, from............................................................ to.................................................
           from............................................................ to.................................................
Fourth day, from.......................................................... to.................................................
           from............................................................ to.................................................
Fifth day, from............................................................ to.................................................
           from............................................................ to.................................................
Sixth day, from............................................................ to.................................................

The judgment was delivered on the ........................................................................... day of ..........................,
19...... , and occupied the time of the Court as follows:
           from............................................................ to.................................................

*(74)The Judge directed that judgment should be entered for the ...........................................................................
............................ as follows:
............................................................................................................................................................
............................................................................................................................................................
............................................................................................................................................................
............................................................................................................................................................

*or* *(75)A certified copy of the written judgment of ...........................................................................................
is annexed hereto.

Dated at                                    this .......................... day of ................... , 19......

                            .....................................................
                            *Deputy Assistant Registrar*

* *Delete as appropriate.*
Original to successful party.
Copies to other parties and the Assistant Registrar.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 40

PRAECIPE OF FIERI FACIAS

(*General Title*)

Seal a writ of *fieri facias* directed to the Sheriff of Zambia and his Bailiffs against
of  upon a judgment
(*or* order) dated the                    day of 19          , for the sum of
K            and K            costs and interest.

Endorsed to levy K                        and interest thereon at K            per annum from theday of                    19          ,
and K                    costs of execution.

*Advocate for*

(*As amended by No.* 305 *of* 1968 *and by S.I. No.* 105 *of* 1986)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 41    Sch. 1

REPUBLIC OF ZAMBIA

WRIT OF FIERI FACIAS

(*General Title*)

To the Sheriff of Zambia and his Bailiffs

You are hereby commanded in the President's name that of the goods and chattels of you cause to be made the sum of K          and also interest thereon at the rate of K          per annum from the *(76)  day of          19          , which said sum of money and interest were lately before the High Court for Zambia in a certain action wherein          is plaintiff and          defendant by a judgment (*or* order) of the said Court bearing date the day of 19          , adjudged (*or* ordered) to be paid by the said          to the said          together with certain costs in the said judgment (*or* order) mentioned and which costs have been taxed and allowed by the Taxing Master of the said Court at the sum of K          as appears by the certificate of the said Taxing Master dated the          day of 19

AND THAT of the goods and chattels of the said you further cause to be made the said sum of K          (costs) together with interest thereon at the rate of K          per centum per annum from the*(77) day of  19          , and that you have that money before the said Court immediately after the execution hereof to be paid to the said          in pursuance of the said judgment (*or* order). And in what manner you shall have executed this writ make appear to the said Court immediately after the execution thereof. And have there then this writ.

WITNESS The Honourable...................................................................................................................................
*Chief Justice of Zambia*

Dated the          day of          in the year of Our Lord One Thousand Nine Hundred and

* *Day of decree or order, or day on which money is directed to be paid, or day from which interest is directed by the order to run, as the case may be.*

*(As amended by S.I. No. 105 of 1986 and S.I. No. 174 of 1990)*

ENDORSEMENT

Levy K  and K          for costs of execution, etc., and also interest on K          at K          per centum per annum from the          day of          19          until payment; besides Sheriff's commission, officer's costs of levying and all other legal incidental expenses.

This writ was issued by          of          , Advocate for who resides at

The          is a          and resides at in the District of          .

*(As amended by No. 305 of 1968)*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 42    Sch. 1
S.C. Civ. 28

REPUBLIC OF ZAMBIA

REQUEST AND AUTHORITY TO UNDER-SHERIFF

(Walking Possession)

IN THE HIGH COURT FOR ZAMBIA, AT THE
..........................District Registry.*(78)

IN THE SUBORDINATE COURT (CLASS            )

...................................................................................*   19.......    (H.....-........

................................................................................... { .....S...-........

BETWEEN ..................................................................................................................................... Plaintiff
and ................................................................................................................................................. Defendant

To the Under-Sheriff and Bailiffs.

I hereby request that you will not leave a Possession Man on my premises in close possession of the goods listed overleaf which you have seized under the above writ/warrant*(79) of execution.

If this convenience is allowed to me, I undertake, pending the withdrawal or satisfaction of the writ/warrant*(80)-

(*a*)    not to remove the said goods or any portion thereof nor to permit their removal by any person unauthorised by you in that behalf;

(*b*)    to inform any Sheriff's Officer or other person who may enter my premises for the purpose of levying any other execution or distress that you are already in possession of my goods under the above writ/warrant*(81);

(*c*)    to notify you immediately at your office of the visit of any such Sheriff's Officer or other person for the purpose of levying as aforesaid.

And I authorise you, or any of you, pending the withdrawal or satisfaction of the above writ/warrant*, to re-enter my premises at any time and as often as you may consider necessary for the purpose of inspecting the said goods or completing the execution of the writ/warrant*(82).

Dated this                    day of                    19    .

*Judgment Debtor*

NOTE: A copy of this form must be left with the debtor.

* *Delete whichever inapplicable.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 43

PRAECIPE OF ELEGIT (OR RE-ELEGIT)

(*General Title*)

Seal a Writ of Elegit (or Re-Elegit) directed to the Sheriff of Zambia against ..........................................................................
the above-named defendant of....................................................................................................................for not paying
to.................................................................................................................... the above-named plaintiff the sum
of K......... together with interest thereon on the ....................................................................................... day of .................,
19............ and the sum of K.......... for costs with interest thereon at the rate of K........ per centum per annum.

JUDGMENT (*or* Order) dated the ........................................................................................... day of.................19.......

(Taxing Master's certificate dated the .....................................................................................day of .......................
19 .......)

..............................................................
*Advocates for*.......................................
whose address for service is at
..............................................................
..............................................................

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 44    Sch. 1

REPUBLIC OF ZAMBIA

WRIT OF ELEGIT

(*General Title*)

To the Sheriff of Zambia.

WHEREAS lately in the High Court for Zambia in a certain action or matter there depending intituled.................................wherein ................................................................................................................................. is plaintiff and ............................................................................................ defendant by a judgment (*or* order) of the said Court made in the said action and bearing date the........................day of ..................19....... it was adjudged (*or* ordered) that ............................................................................................................................................................................................... should pay unto ................................................................................................the sum of K ........together with interest thereon after the rate of K........per centum per annum from the .......................................................... day of ............19....... together also with certain costs as in the said judgment (*or* order) mentioned and which costs have been taxed and allowed by the Taxing Master of the said Court at the sum of K.............as appears by the certificate of the said Taxing Master dated the ............................................................................................................................................................ day of..........19...... .

AND afterwards the said ..... came into the said Court and according to the statute in such case made and provided chose to be delivered to him all such lands, tenements, rents and hereditaments in your bailwick as the said . or anyone in trust for him was seised or possessed of on the ................... day of .......................................................... in the year of Our Lord .............. or at any time afterwards or over which the said ............................................................... on the ............ day of ........................................................................................... 19........ or at any time afterwards had any disposing power which he might without the assent of any other person exercise for his own benefit to hold the said lands, tenements, rents and hereditaments respectively, according to the nature and tenure thereof to him and to his assigns until the said two several sums of K....... and K.......... together with interest upon the said sums at the rate of K........... per centum per annum from the said ........................................................................................ day of ............ 19...... shall have been levied or sooner paid. Therefore you are commanded that without delay you cause to be delivered to the said.................................... by a reasonable price and extent all such lands, and tenements, rents and hereditaments in your bailiwick as the said .................................................... or any person or persons in trust for him was or were seised or possessed of on the said ........................................................................... day of ......... 19 ....... or at any time afterwards or over which the said...................on the said ............... day of ................... 19....... or at any time afterwards had any disposing power which he might without the assent of any other person exercise for his own benefit to hold the said lands, tenements, rents and here-ditaments respectively, according to the nature and tenure thereof to him and to his assigns until the said two several sums of K......... and K......... together with interest as aforesaid shall have been levied or sooner paid. And in what manner you shall have executed this Writ make appear to the High Court aforesaid immediately after the execution thereof under your seal. And have there then this Writ.

WITNESS The Honourable .............................................................................................................................................

*Chief Justice of Zambia*

Dated the .................................................................................... day of ......................... in the year of Our Lord One Thousand Nine Hundred and .............................

.....................................................................

*Registrar*

*Receipt under Section 26, Sale of Goods Act*, 1893.

The above writ was delivered to me at .......................................................................... o'clock in the ............... noon on the ................... day of........... , 19 .........

.....................................................................

*Sheriff*

NOTE:  Also under section 7 (2) of the Sheriffs Act (Cap. 37), a Sheriff at the request of a person delivering a writ to him for execution shall give a receipt for that writ stating the day of its delivery.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

<div align="right">H.C. Civ. 45    Sch. 1</div>

REPUBLIC OF ZAMBIA

FORMS OF RETURN

(*General Title*)

(1) RETURN TO ELEGIT THAT DEFENDANT HAS NO LANDS, ETC.

The within named defendant hath not nor hath any person in trust for him any lands, tenements, rents or hereditaments within my bailiwick whereof I can cause to be levied K........... and interest K........... within mentioned or any part thereof as I am within commanded.

The answer of

.................................................................................
*Sheriff* (Seal)

(2) RETURN WHERE THE DEFENDANT HAS LANDS, ETC

The answer of

<div align="right">*Sheriff to Wit.*</div>

That the within named defendant on the ...................................................................................................................... day of ............... in the year of Our Lord One Thousand Nine Hundred and ........................................................................ was (or is) seised in the following lands within my bailiwick viz:

which said lands I the said ........................... on the......................day of.......................... to hold according to the nature and tenure thereof to him and his assigns according to the form of the statutes in such case made and provided until the said several sums of K........ and K......... in the said writ mentioned together with interest upon the same as therein also mentioned shall have been levied.

.................................................................................
*Sheriff* (Seal)

Filed as of record together with the Sheriff's Inquisition the .............................................................................................. day of .............19 ....... .

.................................................................................
*Registrar*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 46

REPUBLIC OF ZAMBIA

ELEGIT FOR THE RESIDUE AFTER A FIERI FACIAS

(*General Title*)

To the Sheriff of Zambia

Whereas lately in the High Court for Zambia in a certain action (*or* matter) there depending intituled................. wherein ............................. is plaintiff and .......................... defendant by a judgment (*or* order) of the said Court made in the said action (*or* matter) and bearing date the ................................................................ day of ........., 19...... , it was adjudged (*or* ordered) that ..................................................................................................................... should pay unto ...................................................................... the sum of K ......... together with interest thereon after the rate of K ........ per centum per annum from the ....................................................... day of ......., 19....., together also with certain costs as in the said judgment (*or* order) mentioned and which costs have been taxed and allowed by the Taxing Master of the said Court at the sum of K ....... as appears by the certificate of the said Taxing Master dated the  day of ....................., 19...... .

AND whereupon by a Writ you were lately commanded that of the goods and chattels of the said  in your bailiwick you should cause to be made the sum of K ......... and also interest thereon at the rate of K ......... per centum per annum from the ............................................................................day of ............... 19...., together with the said costs in the said judgment (*or* order) mentioned, taxed and allowed as aforesaid with interest thereon at the rate of K ....... per centum per annum from the ...................................................................... day of ............., 19 ... ., and that you should have that money and interest before the said Court immediately after the execution thereof to be paid to the said .................................................................................................................... in pursuance of the said judgment (*or* order) and that in what manner you should have executed that Writ you should make appear to the said Court immediately after the execution thereof having there then that Writ of Fieri Facias and you on the  day of ........... , 19.... , made return to the said Writ of Fieri Facias that (here recite return);

AND afterwards the said ................................................................ came into the said Court and according to the statute in such case made and provided chose to be delivered to him until the sum of K ........ residue of the said K ........ and interest aforesaid, should be thereof levied all lands, tenements, rents and hereditaments in your bailiwick as the said ..................................................................................... or anyone in trust for him was seised or possessed of on the ............................................................................................................................................. day of 19 ......, or at any time afterwards or over which the said ............................................................................... on the ..................... day of ..............., 19....... , had any disposing power which he might without the assent of any other person exercise for his own benefit to hold the said lands, tenements, rents and hereditaments respectively, according to the nature and tenure thereof to him and to his assigns until the said sum of K........... (or the several sums of K........... and K.........) together with interest as aforesaid shall have been levied or sooner paid. And in what manner you shall have executed this Writ make appear to the said Court under your seal immediately after the execution thereof. And have there then this Writ.

WITNESS The Honourable ........................................................................................................................................

*Chief Justice of Zambia*

Dated the ........................................................................................................... day of .................. in the year of Our Lord One Thousand Nine Hundred and .......................

..........................................................................

*Registrar*

*Receipt under Section 26, Sale of Goods Act*, 1893.

The above writ was delivered to me at ............................................................................. o'clock in the .............. noon on the ........................ day of .......................... , 19........ .

..........................................................................

*Sheriff*

NOTE: Also under section 7 (2) of the Sheriffs Act (Cap. 37), a Sheriff at the request of a person delivering a writ to him for execution shall give a receipt for that writ stating the day of its delivery.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 47

REPUBLIC OF ZAMBIA

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

WRIT OF RE-ELEGIT

(*General Title*)

To the Sheriff of Zambia

Whereas lately in the High Court for Zambia in a certain action (*or* matter) there depending intituled ............................ wherein...................................... is plaintiff and ................................................defendant by a judgment (*or* order) of the said Court made in the said action (*or* matter) and bearing date the ...................................................... day of ........... , 19 .........., it was adjudged (*or* ordered) that ...................................................................................... should pay unto ......................................................................................................... the sum of K .......... together with interest thereon after the rate of K ....... per centum per annum from the ............................................................................. day of ................................................................................ ,19 ....... ., together also with certain costs as in the said judgment (*or* order) mentioned and which costs have been taxed and allowed by the Taxing Master of the said Court at the sum of K ........... as appears by the certificate of the said Taxing Master dated the ............................. day of ..................... ., 1 9........... .

AND afterwards the said ......................................................................... came into the said Court and according to the statute in such case made and provided chose to be delivered to him all such lands, tenements, rents and hereditaments in your bailiwick as the said ........................................................................................................................................ . or anyone in trust for him was or were seised or possessed of on the .............................................................. day of.................................................................... in the year of Our Lord .................... or at any time afterwards or over which the said .............................................................................. on the said ............ day of ............ , 19...... , or at any time afterwards had any disposing power which he might without the assent of any other person exercise for his own benefit to hold to him the said lands, tenements, rents and hereditaments respectively according to the nature and tenure thereof until the several sums specified together with interest as aforesaid should have been levied.

AND in pursuance of the Writ of Elegit dated the ................................................................................ day of ................ , 19..... , you were commanded without delay to cause the same to be delivered accordingly until the said several sums together with interest as aforesaid should have been levied or sooner paid.

AND you on the ...... day of ......, 19...., did make return to the said High Court for Zambia a certain inquisition indented taken before you by ................................................................................................................................ on the ................................... last past whereby it was found (here recite finding)

AND because the said Court is now given to understand that the said .................................................................... at the time of giving the judgment aforesaid and (*or*) afterwards had and still hath divers other lands, tenements, rents and hereditaments in your bailiwick besides those which are mentioned in the return above set forth, which said other lands, tenements, rents and hereditaments, the said ......................................................... ought also to have in execution for the more speedy recovery of the said K .......... and K ............ interest aforesaid;

THEREFORE the said ............................................................................... hath humbly besought the said Court that he may so have them, according to due course of law:

THEREFORE you are commanded that you cause to be delivered to the said ................................................................... in the presence of the said ............................................................................................. to be warned on that occasion if he will attend, all the other lands, tenements, rents and hereditaments of the said ............................... in your bailiwick, as well as those before extended in execution, for the payment of the said several sums of K ........ and K ........ and interest aforesaid to hold to the said ......................................................................................... , and his assigns according to the nature and tenure thereof, according to the form of the statute aforesaid until the said several sums of K ........ and K ........ and interest aforesaid shall be thereof fully levied:

AND in what manner you shall have executed this Writ make appear to the Court aforesaid immediately after the execution thereof under your Seal:

AND have there then this Writ.
WITNESS The Honourable ...............................................................................................................................
*Chief Justice of Zambia*

Dated the .................................................................................... day of ........................ in the year of Our Lord One Thousand Nine Hundred and ........................

.................................................................
*Registrar*

*Receipt under Section 26, Sale of Goods Act*, 1893.

The above writ was delivered to me at ........................................................................o'clock in the ...................... noon on the .................... day of .............. , 19 .......

.................................................................
*Sheriff*

NOTE: Also under section 7 (2) of the Sheriffs Act (Cap. 37), a Sheriff at the request of a person delivering a writ to him for execution shall give a receipt for that writ stating the day of its delivery.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 48

REPUBLIC OF ZAMBIA

BOND FOR COSTS ON APPEAL

(*General Title*)

KNOW ALL MEN BY THESE PRESENTS, that we

                       of ,
                       of ,                               and
                       of ,

are jointly and severally held and firmly bound to
of                 , in the sum of                         kwacha of lawful money,
to be paid to the said                                  , his executors, administrators or
assigns, for which payment well and truly to be made, we bind ourselves, and each of us for himself, in the whole, our and
every of our heirs, executors and administrators, firmly by these presents. Sealed with our seals.

  Dated the                  day of                          , in the year of Our Lord
One Thousand Nine Hundred and .

  WHEREAS a suit is now depending in the court below at                wherein the said
                        is plaintiff, and the said
is defendant;

  And whereas a judgment was given by the court below therein on the
day of         19    for the said          , and the said
has applied for leave to appeal from the said judgment;

  And whereas it is by law provided that the party appealing shall give security to the satisfaction of the court below for all
such costs as may be awarded to any respondent by the Court;

  And whereas the above-named             and ,
at the request of the said                     , have agreed to enter into
this obligation for the purposes aforesaid:

  Now the condition of this obligation is such, that if the above-bounden        ,
and                     , any or either of them, shall pay unto the said        , his
executors, administrators or assigns, the costs of the said appeal as the Court shall order, then this obligation shall be
void, otherwise shall remain in full force.

                               (L.S.)
  Signed, sealed and delivered)         (L.S.)

    in the presence of)  }       (L.S.)

                            *Registrar*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 49

CERTIFICATE OF SERVICE OF FOREIGN PROCESS

 I,                                                                          , Registrar of the High Court for Zambia, hereby certify that the documents annexed hereto are as follows:

(1)  The original letter of request for service of process from the court or tribunal at                             in the matter of                                                                    *versus*                             , and

(2)  The process received with such letter of request, and

(3)  The evidence of service upon the person named in such letter of request with a verification of a Commissioner for Oaths.

   And I certify that such service so proved and the proof thereof are such as are required by the law and the practice of this Court regulating the service of legal process and the proof thereof.

   And I certify that the cost of effecting such service as duly certified by the taxing master of the Court amounts to the sum of K

Dated at                 the                 day of                 19

*Registrar*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 50

REPUBLIC OF ZAMBIA

REQUEST TO SEARCH JUDGMENTS REGISTER OR JUDGMENTS SECTION OF THE CIVIL CAUSES REGISTER
(INDIVIDUAL SEARCH)

In the High Court for Zambia.
(At the ........................... .District Registry.)*(83)
To the (District)*(84) Registrar.

   I desire to make personal search in the Judgments Register/Judgments Section of the Civil Causes Register†(85)  at your Registry for the record of any entries against the following:
(State the names)

............................................................................................................................................................................................
............................................................................................................................................................................................
............................................................................................................................................................................................

   For the fees, I attach hereunder K..............................‡(86)

(Signed) ................................................................................
(Address) ...............................................................................
................................................................................
(Date)    ................................................................................

+-------------------------------------------------+
|          ZAMBIA REVENUE STAMPS                  |
|          To Be Affixed Here                     |
+-------------------------------------------------+

* *Delete if inapplicable.*
† *Delete whichever is inapplicable.*
‡ *10n for every name searched against.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 51

REPUBLIC OF ZAMBIA

APPLICATION FOR PERMIT FOR GENERAL SEARCHES IN JUDGMENTS REGISTERS (AGAINST
UNSPECIFIED NUMBER OF NAMES)

*To*: The Registrar of the High Court,
      P.O. Box RW.50067,
      Lusaka.

⌈                                    ⌉
        Address and Date
⌊                                    ⌋

I/We hereby make application for the issue to me/us of .........................................................................*(87)
permit(s) for the purpose of making general searches against any number of unspecified judgment debtors in the
Judgments Registers in the Principal and District Registries of your Court and Subordinate Courts.

For the purpose I/we enclose herewith K.............................................................................................in payment
of the fees therefor in respect of the year ending the 31st December, 19 ....... .

I/We understand and agree that it is a condition of the grant of any permit hereby applied for that the Government or any
of its servants or agents will not in any event be liable for any misstatement whatsoever contained in any entry in any
Register whether the same be due to negligence or not.

In addition I/we hereby agree to indemnify the Government and any of its servants or agents against all actions resulting
from the making of any entry in any Register or the publication thereof.

The above permits should be made in favour of the following persons respectively, specimens of whose signatures are
set out below:

†(88)............................................................        ‡(89)...........................................................
.....................................................................        ...............................................................
.....................................................................        ...............................................................
.....................................................................        ...............................................................
.....................................................................        ...............................................................
                                                                    (Signed) ...........................................................

* *State number required.*
† *State name or names.*
‡ *Speciment signatures.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

REPUBLIC OF ZAMBIA

H.C. Civ. 52

PERMIT FOR GENERAL SEARCHES IN JUDGMENTS REGISTERS (AGAINST UNSPECIFIED NUMBER OF NAMES)

High Court for Zambia,
Lusaka.

*To*:  The Deputy Registrar,
All District Registrars,
Assistant Registrars, and
Clerks of Court.

This is to certify that ............................................................................................. (a specimen of whose signature is affixed hereto) is for the year ending the 31st day of December, 19 ......, hereby authorised to search for entries against any number of unspecified judgment debtors in the Judgments Registers at any Registry of the High Court for Zambia or courts subordinate thereto, the prescribed fees having been paid to me.

Dated at Lusaka the .................. day of ................ , 19.......

............................................................................
*Registrar of the High Court*

NOTE: This permit is issued subject to the conditions and to the right of indemnity contained, mentioned or referred to in the application made by ................................................................................................................................. and dated the.............................................................. day of ................ , 19..... , being an application for a permit for general searches to be made in the Judgments Registers of the Principal and District Registries of the High Court for Zambia, or courts subordinate thereto.

............................................................................
*Specimen Signature*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

H.C. Civ. 53    Sch. 1

REPUBLIC OF ZAMBIA

FEE SHEET

From    ...................................................................................
        ...................................................................................
        ...................................................................................
        (Dated).............................................................19......

*To*:  The Registrar,
       (Probate Registry),
       High Court,
       P.O. Box RW50067,
       Lusaka.

Sir,

PROBATE FEES

The attached application (or as the case may be) is forwarded for necessary action.

I attach hereto stamps to the value of K                                                            made up as follows:

| No. | Item | Amount of Fee | |
|-----|------|:---:|:---:|
|  |  | K | n |
|  |  |  |  |

The Grant (or as the case may be) should be forwarded to:
            .......................................................................
            .......................................................................
            .......................................................................
                            Yours faithfully,

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

SECOND SCHEDULE

(*Order 1, Rule 4*)

PART I

GENERAL FEES APPLICABLE TO ALL DIVISIONS OTHER THAN PROBATE NON-CONTENTIOUS AND WHERE OTHERWISE SPECIFICALLY LAID DOWN AND IN ADDITION TO OTHER FEES LAID DOWN SPECIFICALLY IN OTHER COURTS UNLESS THE CONTEXT OTHERWISE REQUIRES

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

| No. | | Fee units | Document to be receipted |
|---|---|---|---|
| 1. | On sealing a writ of summons or originating application of any matter | 167 | The filed copy |
| 2. | On sealing a concurrent or renewed writ of summons or concurrent originating summons | 17 | The praecipe |
| 3. | On sealing any amendment | 17 | The filed copy |
| 4. | On sealing a summons in chambers (including a summons for directions or notice for further directions) | 50 | The summons or notice |
| 5. | On filing an interlocutory notice of motion or application not specifically provided for | 50 | The filed notice or application |
| 6. | On sealing a third party notice | 50 | The filed copy |
| 7. | On sealing a commission or letter of request for the examination of witness abroad | 50 | The praecipe of undertaking |
| 8. | On the examination of a witness before an officer of the Court (including the examination of a Judgment debtor) or each half hour or part thereof | 83 | The order or praecipe |
| | NB-Where the officer is required to take the examination away from his office his reasonable travelling and other expenses are also payable. | | |
| 9. | On filing deposition: each deposition | 17 | The filed copy |
| 10. | On an application for copies of the notes of Judge for the use of the Supreme Court of Zambia per page or part thereof | 17 | The application |
| 11. | On sealing a writ of subpoena for each witness | 17 | The praecipe |
| 12. | On sealing a writ of subpoena for each witness | 17 | The filed copy |
| 13. | On filing an affidavit | 17 | The filed document |
| 14. | On filing a certificate of service | 17 | The filed document |
| 15. | (a) On personal individual search in the Judgments Registers or in the Judgments Section of the Civil Causes Register for every name | 17 | The search form |
| | (b) On personal general searches in the Judgments Registers for unspecified number of names in any calendar year, in any registry of the High Court | 1,111 for a year or part thereof | In cash, payable to the Registrar of the High Court |
| | (c) On a search for appearance of any other search (including an inspection) not otherwise provided for | 11 | The search praecipe |

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Sch. 2

| No. | | Fee units | Document to be receipted |
|---|---|---|---|
| 16. | For a certificate of appearance of a pleading affidavit or proceeding having been entered, filed or taken or the negative thereof, unless otherwise provided | 17 | The certificate |
| 17. | On entering or sealing an order made in Chambers | 22 | The order |
| 18. | On entering or sealing an order of reference under O.XX | 44 | The order |
| 19. | On sealing or approving an advertisement, or any other document or deed (other than Judgment or orders) | 33 | The filed copy |
| 20. | On entering or setting down any cause or matter for hearing in Court, except where otherwise provided | 111 | The filed copy or record |
| 21. | On entering or sealing a judgment, decree or order given, directed or made in the trial, hearing or further consideration or a cause or matter in court (other than a matrimonial cause or judgment summons) per day or part thereof | 111 | The judgment decree or order |
| 22. | On hearing a judgment summons | 69 | The order |
| 23. | On entering or sealing any other judgment or order | 44 | The judgment or order |
| 24. | On sealing or filing a writ of execution (including a writ of attachment) | 44 | The praecipe |
| 25. | On filing a case stated | 44 | The case |
| 26. | On taking an account of monies received by a person liable to account for the same for every K1,500 or fraction of K1,500 of the amount received | 11 | The certificate |
| 27. | On taking an account of monies due to any person for every K1,500 of the amount found to be due | 11 | The certificate |
| 28. | On an inquiry as to damages for every K1,500 or fraction of K1,500 of the amount certified | 11 | The certificate |
| 29. | For copies of documents or proceedings per page or part thereof | 17 | The office copy |
| 30. | For certifying a copy as an office copy and in addition if under seal | 22 | The office copy |
| 31. | On filing any notice not specifically provided for | 22 | The filed copy |
| 32. | On the taxation of a bill of costs for every K1,500 or fraction of K1,500 allowed | 11 | The bill |
| 33. | Application (including registration) to register a judgment when no fee is provided by the ordinance or Act providing for registration | 44 | The certificate of judgment |

PART II

APPEALS

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

| No. | | Fee units | Document |
|-----|--|-----------|----------|
| 34. | On filing application for leave to appeal to the court | 44 | The notice |
| 35. | On leave being granted to appeal to the Court | 44 | The order |
| 36. | On every bond | 44 | The filed copy |
| 37. | On hearing any appeal other than a criminal appeal per day or part thereof | 17 | The judgment |

Sch. 2

PART III

Sch. 2

DIVORCE AND MATRIMONIAL CAUSES

| No. | | Fee units | Document to be receipted |
|-----|--|-----------|--------------------------|
| 38. | On presenting and filing a petition | 250 | The petition |
| 39. | On amending a petition | 22 | The praecipe |
| 40. | On filing an answer or reply | 28 | The filed copy |
| 41. | On application for ancillary relief | 44 | The application |
| 42. | On filing affidavit in answer to application for ancillary relief or affidavit in reply thereto on filing particulars | 17 | The filed affidavit |
| 43. | On setting down and hearing per day or part of the day | 167 | |
| 44. | On filing notice of application to make decree absolute | 44 | The certificate |
| 45. | On sealing a copy of a decree nisi or absolute | 44 | The filed copy |
| | NB-The fees listed in this part are in addition to the original fees listed at Part I hereto unless the consent specifically required otherwise. | | |

PART IV

PROBATE (NON-CONTENTIOUS)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

| No. | Grants | Fee units |
|---|---|---|
| 46. | On probate or letter of administration with or without the will annexed: | |
| | If the gross estate does not exceed K30,000 | 139 |
| | If the gross estate exceeds K30,000 but does not exceed K300,000 | 167 |
| | If the gross estate exceeds K300,000 | 222 |
| *Subsequent Grants* | | |
| 47. | For any second or subsequent grant in respect of the same deceased person | The same as on the previous grant |
| 48. | For every duplicate or triplicate probate or letters of administration with or without the will annexed | 44 |
| *Resealing* | | |
| 49. | For resealing a grant under the Probates (Resealing) Act | 167 |
| 50. | Statutory Advertisements in Zambia Government *Gazette* | 167 |
| *Alterations in Grants, etc* | | |
| 51. | For noting on a grant that the deceased died domiciled in Zambia, if not so noted when the grant was issued (inclusive fee) | 44 |
| 52. | For amending a grant (including Registrar's order, etc) | 83 |
| 53. | And in addition, if a new bond is required | 11 |
| 54. | For revocation of a grant (including Registrar's order, etc) | 50 |
| 55. | For impounding a grant, or releasing an impounded grant (inclusive fee) | 50 |
| 56. | For noting on a grant and the record the addition of a personal representative (including filing the affidavit) | 44 |
| 57. | For noting on record that an executor to whom power was reserved has renounced (inclusive fee) | 44 |
| 58. | For the preparation of a memorandum under the Inheritance (Family Provisions) Act, 1938 (as applied to Zambia), photocopy thereof, and for noting the grant and filing the order (inclusive fee) | 17 |
| *Caveats* | | |
| 59. | For the entry of subduction of a caveat | 11 |
| 60. | For a warning to a caveat | 22 |
| 61. | For service of warning by post | 83 |

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Sch. 2

| No. | Grants | Fee units |
|---|---|---|
| | *Citations and Advertisements* | |
| 62. | For settling abstract of citation for advertisement, or other advertisement | 83 |
| 63. | For settling and sealing a citation (inclusive fee) | 83 |
| | *Deposit of Wills* | |
| 64. | For depositing a will of a deceased person in the Probate Registry for safe custody on renunciation of executor (inclusive fee) | 44 |
| 65. | For obtaing a will brought in a subpoena on application for grant | 28 |
| 66. | For depositing in the Probate Registry for safe custody the will of a living person (inclusive fee) | 44 |
| | *Searches and Inspections* | |
| 67. | For search for a document filed in the Probate Registry or other authorised place of deposit including inspection of registered copy of the will or the original will (if unregistered) or any other document | 11 |
| 68. | For inspecting an original will that has been registered in addition to the fee for search | 11 |
| 69. | (*a*) For search for a will or letters of administration or other document on behalf of the party applying for a search | 17 |
| | (*b*) For every year or part of a year | 17 |
| 70. | For photocopy or extract of a will deposited in the Probate Registry or other authorised place of deposit; | |
| | For each photocopy or extract: | |
| | (*a*) if of A4 size | 44 |
| | (*b*) if over A4 size | 83 |
| 71. | For a photocopy of probate or letters of administration | 44 |
| 72. | For a photocopy of the record of the resealing in Zambia of a grant | 44 |
| 73. | For a typewritten copy or extract of a document filed or deposited in Probate Registry or other authorised place of deposit per page or part thereof | 17 |
| 74. | For collating a copy with the original document including the Registrar's certificate in verification thereof per page or copy | 17 |
| 75. | For Registrar's certificate in verification of a photocopy | 22 |
| 76. | For impressing the seal of the Court on a copy | 28 |
| 77. | For an exemplification, in addition to the fees for engrossing and collating | 83 |
| 78. | For engrossing and collating will etc per page or part thereof | 17 |
| 79. | For examining and sending by post a plain copy or a will | 83 |
| | *Miscellaneous* | |
| 80. | For production by an officer of the Court of books or documents in any Court of Law or elsewhere where an officer has to remain in attendance for each day or part of a day on which he so attends in addition to necessary expenses | 167 |
| 81. | For taxing a bill of costs, inclusive of Registrar's certificate | The same fee as payable in an action |
| 82. | For a summons, order on summons motion and order on motion | The same fee as payable in action |
| 83. | (i) For Registrar's order | 22 |
| | (ii) For filing a document | 11 |
| | (iii) For a certificate or minute under the hand of the Registrar or Judge | 22 |
| | Note: This fee is not payable when the filing of the certificate or minute is included in a proceeding for which another fee is payable | |
| 84. | For Registrar's fiat on refusing probate (inclusive fee) | 83 |
| 85. | For perusing and settling oaths, affidavits or other documents: | |
| | For any one document settled | 44 |
| | For any number of additional documents in the same case, a further inclusive fee of | 44 |

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Sch. 2

PART V

BANKRUPTCY OR INSOLVENCY

| No. | | Fee units | Document to be receipted |
|---|---|---|---|
| 86. | On every receiving order | 83 | |
| 87. | On every other order | 44 | |
| 88. | On every attendance at meeting of creditors | 83 | |
| 89. | On every proof of debt tendered where the amount exceeds K100,000 | 22 | The original proof |
| 90. | On every declaration of inability to pay debts | 44 | The filed copy |
| 91. | On every bankruptcy notice | 22 | The filed copy |
| 92. | On every bankruptcy petitioning | 417 | The filed copy |
| 93. | On every application for Order of discharge (including hearing fee) | 206 | |
| 94. | On each creditor notified, (expenses of advertising shall be lodged in cash with Official Receiver on the application) | 83 | In cash |
| 95. | On each notice by the Official Receiver to a creditor of a first or any other meeting or any sitting of the Court | 83 | |
| 96. | On every application to the Court to approve a composition, a fee computed at the following rates on the gross amount of composition, that is, K800 on every K30,000 or fraction of K30,000 up to K1,500,000 and K400 on every K30,000 or fraction of K30,000 beyond K1,500,000 | - | The filed copy |
| 97. | On every application to the court to prove a scheme or arrangement, a fee computed on the gross amount of the estimated assets at similar rates as for a composition | - | The filed copy |
| 98. | On the net assets realised or brought to credit by the Official Receiver whether acting as interim receiver, receiver or trustee, and on the net assets realised by trustee to administer a debtor's property under a composition or scheme, a percentage according to the following scale: | | |
| |     On the first K3,000,000 or fraction thereof | 10 | per cent |
| |     On the next K4,500,000 or fraction thereof | 9 | per cent |
| |     On the next K750,000 or fraction thereof | 8 | per cent |
| |     On the next K1,500,000 or fraction thereof | 7.5 | per cent |
| |     On all further sums | 2.5 | per cent in cash |
| 99. | On the amount distributed in dividend by the Official Receiver when acting as trustee under adjudications scheme or orders of administration of the property of a deceased insolvent, a percentage according to the following scale: | | |
| |     On the first K3,000,000 or fraction thereof | 10 | per cent |
| |     On the next K4,050,000 or fraction thereof | 7.5 | per cent |
| |     On the next K6,000,000 or fraction thereof | 5 | per cent |
| |     On all further sums | 2.5 | per cent in cash |

*Application for Discharge of Trustees*

| 100. | On passing liquidation accounts where the net assets for distribution- | | |
|---|---|---|---|
| | (*a*)  do not exceed K300,000 or fraction therof | 22 | |
| | (*b*)  exceed K300,000 but do not exceed K900,000 | 44 | |
| | (*c*)  exceed K900,000 but do not exceed K1,500,000 | 67 | |
| | (*d*)  exceed K1,500,000 but do not exceed K3,000,000 | 122 | |
| | (*e*)  exceed K3,000,000 for every additional K300,000 or part thereof | 206 | In cash |
| 101. | On application for release | 22 | The filed copy |
| 102. | On order of release | 22 | The filed copy |

PART VI

FEES, ETC ON EXECUTION AND SERVICE

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

| No. | (All these fees are payable in cash) | Fee units |
|---|---|---|
| 103. | For an arrest by Sheriff's officer | 83 |
| 104. | For seizure by Sheriff's officer | 83 |
| 105. | For travelling allowance to effect arrest or seizure per kilometre | 11 |
| 106. | For man, or when necessary, man in possession, the sum actually and reasonably paid. | |
| 107. | For removal of goods or animals to a place of safe keeping when necessary and for warehousing or taking charge of same when removed, the sum actually and reasonably paid. | |

Sch. 2

| No. | Grants    Fee Units | |
|---|---|---|
| 108. | For advertising and giving publicity to the sale, printing catalogues, bills and notices and distributing and posting same, the sum actually and reasonably paid. | |
| 109. | On sale under writ or warrant, 10 per centum of the amount realised or of the amount due under the writ or warrant whichever is the less. | |
| 110. | For commission to the auctioneer on sale to include inventory and valuation compiling catalogue and preparing for sale, 10 per centum of the amount due under the writ or warrant, whichever is the less. | |
| 111. | Where execution is withdrawn, satisfied or stopped after seizure, but before sale, 2.5 per centum of the amount due under the writ or warrant. | |
| 112. | For commission on the auctioneer where execution is withdrawn, satisfied or stopped after he had been instructed to sell to include inventory valuation compiling catalogue and preparing for sale, 5 per centum of the amount due under the writ or warrant. | |
| 113. | For commission on obtaining possession under writ of possession, 5 per centum of gross realised value. | |
| 114. | Fee for service of a summons, order or other process of the Court by a bailiff or messenger: | |
| | (i) not more than three kilometres from the office of the bailiff or messenger (as case may be) | 44 |
| | (ii) more than three kilometres from such office- | |
| | (*a*) fee | 44 |
| | (*b*) actual out-of-pocket expense (other than sustenance) to be receipted | |

*Miscellaneous*

| | | |
|---|---|---|
| 115. | Registration of documents | 278 |
| 116. | Per page transcript of record | 6 |

(*As amended by S.I. No.* 88 *of* 1997)

SECTION 7 (1)-THE HIGH COURT (JURISDICTION OF REGISTRARS) RULES

<div style="text-align:right">

*Government Notice*
293 *of* 1960

</div>

*Rules by the Chief Justice*

**1.**   These Rules may be cited as the High Court (Jurisdiction of Registrars) Rules.

Title

**2.**   The Registrar and Deputy Registrars of the High Court shall for all the purposes of the winding-up of companies have the same jurisdiction, powers and duties as have Registrars in Bankruptcy of the High Court of England under the English Companies (Winding-up) Rules, 1929.

Jurisdiction in winding-up of companies

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

SECTION 7 (2)-THE HIGH COURT (JURISDICTION OF ASSISTANT REGISTRARS) RULES

*Rules by the Chief Justice*

*Government Notice*
310 *of* 1960
*Statutory Instrument*
63 *of* 1964

**1.**   These Rules may be cited as the High Court (Jurisdiction of Assistant Registrars) Rules.

Title

**2.**   In these Rules, unless the context otherwise requires-

Interpretation

"assistant registrar" means an officer appointed substantively to the office of assistant registrar of the Court and shall include any person lawfully performing the functions of that office if the Chief Justice shall have directed that these Rules shall apply to him while performing such functions;

"registrar" means in relation to causes or matters proceeding and bills of costs to be taxed in the Principal Registry, the Registrar and a Deputy Registrar, and in relation to causes or matters proceeding and bills of costs to be taxed in a District Registry, a District Registrar.

**3.**   An assistant registrar shall, subject to the provisions of this rule, have the powers of a registrar to hear applications in chambers in the Court in respect of the following matters, that is to say:

Applications in chambers

(*a*)   to renew a writ of summons;

(*b*)   to issue a third party notice;

(*c*)   to add as a party the husband, personal representative or trustee of a party, or a successor in interest to a party;

(*d*)   to amend proceedings before service thereof;

(*e*)   for directions on a summons for directions or notice for further directions;

(*f*)   for payment out of Court;

(*g*)   to renew a writ of execution;

(*h*)   to enlarge time;

(*i*)   to make orders by the consent of all parties:

Provided that-

(i)   a registrar may reserve to himself the hearing of any particular application or class of applications in chambers;

(ii)   in hearing applications in chambers, the assistant registrar shall act under the supervision of the registrar and shall have regard to any directions given to him by the registrar;

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

 (iii) if any party before the commencement of the hearing of the application objects to its being heard by the assistant registrar, the application shall be transferred for hearing to the list of the registrar at the Principal or District Registry as appropriate;

 (iv) an appeal from the decision of an assistant registrar made under this rule shall lie in accordance with the provisions of Order XXX, rule 10, of the High Court Rules.

  4. An assistant registrar shall, subject to the provisions of this rule, have power as taxing officer to tax bills of costs as between party and party where the total amount of the bill or bills under any order or reference does not exceed four hundred kwacha and bills of costs as between advocate and client where the amount of the bill or bills does not exceed three hundred kwacha, exclusive of the increase prescribed by the Legal Practitioners (Costs) Order:

*Taxation of costs*
*Cap. 30*

  Provided that-

 (i) bills for taxation as between a Advocate and his client shall be taxed by a registrar;

 (ii) a registrar may reserve for taxation by himself any particular case or class of cases;

 (iii) in taxing bills the assistant registrar shall act under the supervision of the registrar and shall have regard to any directions which may be given to him by the registrar;

 (iv) if any party before the commencement of the taxation objects to the bill or any part of it being taxed by the assistant registrar, the bill or the part to which the objection relates shall be taxed by the registrar at the Principal or District Registry as appropriate;

 (v) where a party who is dissatisfied with the allowance or disallowance of the whole or any part of any items in a bill taxed by an assistant registrar as taxing officer in pursuance of these Rules makes application for a review in accordance with the provisions of Order XL, rules 3 and 4, of the High Court Rules, such application shall be made to the registrar at the Principal or District Registry as appropriate.

  **5.** An assistant registrar is hereby empowered-

*Miscellaneous powers*

 (*a*) to certify office copies and certified copies of judgments, decrees and orders of the Court and to affix the seal of the Court thereto:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Provided that this power shall not extend to the certification of copies of judgments in accordance with the Foreign Judgments (Reciprocal Enforcement) Rules;                   Cap. 76

(b)   to sign a certificate of taxation in respect of any taxation which has taken place before himself;

(c)   to conduct the examination as to the means of a judgment debtor in accordance with Order XLII, rule 16, of the High Court Rules;

(d)   to make inquiry into the means of a poor appellant to the Supreme Court in accordance with the provisions of the Legal Aid Act.                   Cap. 34

(*As amended by S.I. No.* 63 *of* 1964)

SECTION 8-THE DUTIES AND FUNCTIONS OF ASSISTANT REGISTRARS AND DEPUTY ASSISTANT REGISTRARS DIRECTIONS

*Directions by the Chief Justice*

*Government Notices*
292 *of* 1960
9 *of* 1961
23 *of* 1961
497 *of* 1964

**1.**   These Directions may be cited as the Duties and Functions of Assistant Registrars and Deputy Assistant Registrars Directions.                   Title

**2.**   In these Directions, unless the context otherwise requires-                   Interpretation

(a)   "civil cause" means any civil proceeding in whatever manner commenced and, without prejudice to the generality of the foregoing, includes a matrimonial cause and any bankruptcy or company matter;

(b)   any reference to any officer of the High Court by title means the person appointed to the office concerned under the provisions of the Act, and includes any person lawfully performing the functions of such office and, to the extent that any person is empowered to exercise part only of such functions, such person.

**3.**   The duties and functions of the Assistant Registrar at each registry of the High Court shall, in addition to any other duties and functions imposed by any written law or by any Judge, the Registrar, a Deputy Registrar or District Registrar of the High Court, be as follows:                   Duties and functions of Assistant Registrars

*A. With regard to civil causes generally.*

(i)   To issue all writs and originating process.

(ii)   To verify all Court fees.

(iii)   To record the entry of appearance to writs and originating process.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(iv)   To keep and maintain a Civil Causes Register (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:

      (*a*)   the cause number;

      (*b*)   the names of the parties;

      (*c*)   the particulars of the case;

      (*d*)   the date of appearance (if any); and

      (*e*)   subsequent proceedings and remarks.

(v)    To keep and maintain a Divorce Register (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:

      (*a*)   the cause number;

      (*b*)   the date of presentation of petition;

      (*c*)   the names of the parties;

      (*d*)   the relief claimed and grounds;

      (*e*)   the date(s) of appearance(s);

      (*f*)   the date of the Registrar's certificate;

      (*g*)   the date of *decree nisi*;

      (*h*)   the date of decree absolute; and

      (*i*)   remarks.

(vi)   To issue all interlocutory proceedings (in the case of application to a Judge, after obtaining a hearing date from the Deputy Assistant Registrar).

(vii)  To file affidavits, accounts, notices and other documents relating to civil proceedings.

(viii) To check papers lodged prior to setting down for trial, and to pass the two bundles of the pleadings to the Deputy Assistant Registrar to the Judge before whom the case will be m entioned.

(ix)   To seal all judgments, decrees and orders.

(x)    To keep and maintain a Civil Judgments Register of all judgments of the Court for a debt or liquidated demand in chronological order in which the following particulars shall be entered in their respective columns:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

   (*a*)  the date of the judgment;

   (*b*)  the cause number;

   (*c*)  the names of the parties;

   (*a*)  the particulars of the judgment;

   (*e*)  the amount of the judgment;

   (*f*)  the costs; and

   (*g*)  remarks.

(xi)   To accept bills of costs for taxation.

(xii)   To issue writs of execution, judgment summonses and other process to enforce the judgments and orders of the Court.

(xiii)   To have the custody of the Court Seal and all civil files.

*B. With regard to appeals in civil causes from inferior courts.*

(xiv)   In the case of a civil appeal from an inferior court, to check that the rules and any court orders relating to such appeal have been complied with; and thereafter to pass the appeal record to the Deputy Assistant Registrar.

(xv)   To keep and maintain a Civil Appeals Register (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:

   (*a*)  the cause number;

   (*b*)  the names of the appellant and respondent;

   (*c*)  the court from which the appeal is brought;

   (*a*)  the date lodged;

   (*e*)  the date and result of the appeal; and

   (*f*)  any subsequent proceedings and remarks.

*C. With regard to appeals in civil causes to the Supreme Court of Zambia*

(xvi)   To perform the duties of the Registrar of the High Court in connection with the lodging of a civil appeal to the Supreme Court of Zambia and the certification of the appeal record thereof.

*D. With regard to bankruptcy causes.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(xvii)   To receive and check all bankruptcy petitions, notices and other documents and to pass them to the Registrar in Bankruptcy for attention or signature.

(xviii)  To keep and maintain a Registrar of Bankruptcy Notices in which the following particulars shall be entered in their respective columns:

  (*a*)   number of notice;

  (*b*)   name of debtor;

  (*c*)   name of creditor;

  (*a*)   date when filed;

  (*e*)   name of legal practitioner; and

  (*f*)   result of notice.

(xix)    To keep and maintain a Registrar of Bankruptcy Petitions in which the following particulars shall be entered in their respective columns:

  (*a*)   number of petition;

  (*b*)   (i)   name of debtor;

          (ii)  residence and description of debtor;

  (*c*)   date of filing petition;

  (*a*)   (i)   name of petitioning creditor;

          (ii)  residence and description of petitioning creditor;

  (*e*)   name of legal practitioner;

  (*f*)   act of bankruptcy alleged;

  (*g*)   date of dismissal of petition;

  (*h*)   date of receiving order; and

  (*i*)   name of Registrar.

(xx)     To keep and maintain a Register of Receiving Orders in Bankruptcy in which the following particulars shall be entered in their respective columns:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*a*) (i) name of debtor;

   (ii) residence and description of debtor;

(*b*) (i) number of petition;

   (ii) date of filing petition;

(*c*) (i) number of receiving order;

   (ii) date of receiving order;

   (iii) date of discharge or recission of order;

(*d*) date of public examination;

(*e*) date of approval of composition or scheme;

(*f*) (i) date of adjudication order;

   (ii) date of annulment of adjudication order;

(*g*) (i) name and address of trustee;

   (ii) date of appointment of trustee;

   (iii) date of release of trustee;

(*h*) (i) date of hearing application for discharge of bankruptcy;

   (ii) date of order for discharge of bankrupt;

   (iii) nature of order for discharge of bankrupt;

(*i*) proceedings consolidated or transferred;

(*j*) date of order for summary administration;

(*k*) date of order for administration of deceased debtor' estate; and

(*l*) Registrar.


*E. With regard to maintenance orders and enforcement .*


(xxi) To register maintenance orders under the Affliation and Maintenance of Children Act, and to perform the duties of the proper officer of the High Court under the Affiliation and Maintenance of Children Act..   Cap. 64
Cap. 64

(xxii) To keep and maintain a Registrar of Maintenance Orders registered under the Act (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:   Cap. 64

(*a*) the cause number;

(*b*) the names of the parties;

(*c*) the address of the defendant in Zambia;

(*d*) details of the order;

(*e*) the name of the original Court;

(*f*) the date of registration;

(*g*) name of person through whom payments are to made; and

(*h*) further action.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(xxiii)  To keep and maintain a Register of Orders registered under the Affiliation and Maintenance of Children Act (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:   Cap. 64

    (*a*)  cause number;

    (*b*)  complainant's name and address;

    (*c*)  complainant's Advocates and address;

    (*d*)  defendant's name and address;

    (*e*)  defendant's Advocates and address;

    (*f*)  name of Court making order, and cause number assigned by that Court;

    (*g*)  date of order;

    (*h*)  date of registration;

    (*i*)  details of order;

    (*j*)  date of any order for variation or discharge or notice of cancellation;

    (*k*)  nature of order or notice;

    (*l*)  date of receipt;

    (*n*)  folio number of Court order on cause file.

*F. With regard to judgments of other courts.*

(xxiv)  To register judgments under the Service of Process and Execution of Judgments Act.   Cap. 79

(xxv)  To keep and maintain a Register of Judgments registered under the Service of Process and Execution of Judgments Act (including an alphabetical index thereto in the name of the judgment debtor) in which the following particulars shall be entered in their respective columns:   Cap. 79

    (*a*)  the cause number;

    (*b*)  the date of registration;

    (*c*)  the names of the parties;

    (*d*)  the name and address of the party against whom judgment is given;

    (*e*)  the date of the judgment or decree;

    (*f*)  the abstract of judgment, and amount and interest (if any);

    (*g*)  the costs;

    (*h*)  the name of the original court and reference; and

    (*i*)  the particulars of any execution thereon.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

*G. With regard to the registration at the Principal Registry of foreign judgments and of miscellaneous deeds.*

(xxvi)  To register judgments under the Foreign Judgments (Reciprocal Enforcement) Act.  Cap. 76

(xxvii) To keep and maintain a Register of Judgments registered under the Foreign Judgments (Reciprocal Enforcement) Act (including an alphabetical index thereto in the name of the judgment debtor), in which the following particulars shall be entered in their respective columns:  Cap. 76

     (*a*)  the cause number;

     (*b*)  the date of the order for registration;

     (*c*)  the date of the registration;

     (*d*)  the name, title, trade or business and usual or last known place of abode or business of the judgment debtor and judgment creditor;

     (*e*)  the amount for which the judgment is signed;

     (*f*)  the name of the original court;

     (*g*)  any special directions as to registration and/or execution thereon; and

     (*h*)  particulars of any execution thereon.

(xxviii) To keep and maintain a Register or Arbitration Awards in which the following particulars shall be entered in their respective columns:

     (*a*)  number;

     (*b*)  names of parties;

     (*c*)  name of arbitrator;

     (*d*)  date of award;

     (*e*)  details of award;

     (*f*)  date of filing; and

     (*g*)  remarks.

(xxix)  To keep and maintain a Register of Deeds of Arrangement (including an alphabetical index thereto in the name of the debtor) in which the following particulars shall be entered in their respective columns:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*a*)   number of entry;

(*b*)   the date of the deed;

(*c*)   the name, address and description of the debtor, the place or places where his business was carried on at the date of the execution of the deed, the title of the firm or firms under which the debtor carried on business, and the name and address of the trustee (if any) under the deed;

(*a*)   a short statement of the nature and effect of the deed, and of the composition in the kwacha payable thereunder;

(*e*)   the date of registration; and

(*f*)   the amount of property and liabilities included under the deed, or estimated by the debtor.

(*As amended by No.* 9 *of* 1961)

**4.**   In default of any appointment or in the absence of an Assistant Registrar at the Principal Registry or at any District Registry of the High Court-

Division of duties in absence of Assistant Registrar

(*a*)   the duties set out in sub-paragraph C (xvi) of paragraph 3 (relating to the lodging of civil appeals to the Supreme Court of Zambia) shall be performed by the Registrar, Deputy Registrar or District Registrar, as the case may be; and

(*b*)   all other duties set out in the said paragraph 3 shall be performed by the clerk for the time being in charge of the civil registry at such Principal or District Registry, as the case may be.

(*As amended by No.* 23 *of* 1961)

**5.**   The duties and functions of a Deputy Assistant Registrar of the High Court shall, in addition to any other duties and functions imposed by any written law or by the Judge to whom he is attached or the Registrar of the High Court, be as follows:

Duties and functions of Deputy Assistant Registrars

*A. With regard to criminal trials.*

(i)      To act as Clerk of Sessions and in particular to perform the duties imposed upon the Registrar of the High Court by sections *two hundred and forty-one, two hundred and forty-seven* and *two hundred and forty-eight* of the Criminal Procedure Code and to receive the documents referred to in sections *two hundred and forty-five* and *two hundred and forty-nine* of that Code.

Cap. 88

(ii)     To enter for trial all criminal causes.

(iii)    To keep and maintain a Criminal Trials Register (including an index thereto) in which the following particulars shall be entered in their respective columns:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*a*)   the number of the trial;

(*b*)   the name of the prosecutor;

(*c*)   the name of the defendant;

(*d*)   the name of the committing magistrate, designation of his court and the date of committal;

(*e*)   particulars of the crime or offence charged;

(*f*)   particulars of the crime or offence for which the information is filed;

(*g*)   the date of hearing;

(*h*)   the judgment of the court;

(*i*)   the sentence; and

(*j*)   remarks including the place of trial and name of trial Judge, date of notice of any appeal to the Supreme Court of Zambia and the result of any such appeal.

(iv)   To prepare Cause Lists and issue Notices of Trial.

(v)   To prepare Warrants of Commitment and other prescribed forms relating to criminal trials.

(vi)   To take custody of exhibits and to dispose thereof after completion of the trial, subject to the provisions of rules 33 and 45 of the Supreme Court Rules.   Cap. 25

(vii)   To keep and maintain the Criminal Causes Exhibits Register which shall contain the following particulars:

(*a*)   the number of the cause;

(*b*)   the title of the cause;

(*c*)   particulars of the exhibits received showing against each the number or letter allocated in the subordinate court;

(*d*)   the number or letter allocated to each exhibit in the High Court; and

(*e*)   particulars of the ultimate disposal of each exhibit.

(viii)   To supervise payment of counsel under the Legal Aid Act.   Cap. 34

(ix)   To file all documents connected with the trial and at the end of each calendar year to place the files of cases disposed of in the Court Record Room.

*B. With regard to criminal appeals from subordinate courts.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(x)   To enter criminal appeals for hearing.

(xi)   To keep and maintain the Criminal Appeals Register (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:

>   (a)   the number of the appeal;
>
>   (b)   the name of the appellant;
>
>   (c)   the name of the respondent;
>
>   (d)   the name of the magistrate and designation of the court below from which the appeal is made and the date of conviction therein;
>
>   (e)   particulars of the offence for which conviction was recorded in the court below;
>
>   (f)   the subject-matter of the appeal (i.e., against conviction or sentence or both);
>
>   (g)   date of hearing the appeal;
>
>   (h)   the judgment of the court; and
>
>   (i)   remarks, including the place of appeal and the name or names of the Judge or Judges who heard the appeal, the date of notice of any further appeal to the Supreme Court of Zambia and the result of any such further appeal.

(xii)   To receive the documents referred to in section *three hundred and twenty-three* of the Criminal Procedure Code.   Cap. 88

(xiii)   To prepare hearing notices and forward documents as required by section *three hundred and twenty-six* of the Criminal Procedure Code.   Cap. 88

(xiv)   To prepare certificates of the results of appeals.

(xv)   To take custody of exhibits and to dispose thereof after completion of the appeal, subject to the provisions of rules 33 and 45 of the Supreme Court Rules.   Cap. 25

(xvi)   To maintain the Criminal Causes Exhibits Register in the form prescribed in sub-paragraph (vii).

(xvii)   To supervise payment of counsel under the Legal Aid Act.   Cap. 34

(xviii)   To file all documents connected with the appeal and at the end of each calendar year to place the files of appeals disposed of in the Court Record Room.

*C. With regard to the revision of subordinate court criminal proceedings.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(xix)  To keep and maintain the Criminal Returns Register which shall contain the following particulars:

>   (a)  the name of each subordinate court from which returns are to be made;
>
>   (b)  the date of receipt by the Deputy Assistant Registrar of each monthly return.

(xx)  To call for all outstanding criminal returns from subordinate courts on the fifteenth day of each calendar month.

(xxi)  To keep and maintain the Criminal Revision Register (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:

>   (a)  serial number of the revision;
>
>   (b)  subordinate court case number;
>
>   (c  designation of the subordinate court;
>
>   (d)  name of magistrate and date of conviction by him;
>
>   (e)  name of the accused;
>
>   (f)  particulars of the charge;
>
>   (g)  sentence of the subordinate court;
>
>   (h)  result of the revision; and
>
>   (i)  remarks.

(xxii)  To call for criminal case records from subordinate courts as directed by the Judge to whom he is attached.

(xxiii)  To prepare certificate of decision or order on revision.

(xxiv)  To return original subordinate court records on disposal of the revision and to file remaining documents relating thereto.

(xxv)  At the end of each calendar year to place the files of all revision cases disposed of in the Court Record Room.

*D. With regard to appeals in criminal causes to the Supreme Court*

(xxvi)  To receive notices of intention to appeal and applications for leave to appeal, subject to the provisions of section *eighteen* of the Supreme Court of Zambia Act.    Cap. 25

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(xxvii)  To set down notices of motion for leave to appeal for hearing by a Judge.

(xxviii)  To prepare and submit the record in accordance with rule 31 of the Supreme Court Rules.

(xxix)  To submit copies of a case stated in accordance with section *twenty* of the Supreme Court of Zambia Act.  Cap. 25

(xxx)  To receive copies of the judgments of the Supreme Court and file them in the appropriate High Court trial or appeal record docket.

(xxxi)  On dismissal of an appeal where a capital sentence has been pronounced, to forward requisite documents to the Capital Sentences Review Committee, and the Judge's Report to the President.

*E. With regard to civil causes.*

(xxxii)  Five days before Motions Day to prepare a Cause List, post it on the notice-boards and distribute to practitioners concerned. As to interlocutory proceedings held on other days, to prepare and issue notices of hearing immediately the date of hearing has been fixed.

(xxxiii)  To check all interlocutory orders before submission to the Judge.

(xxxiv)  Not less than three days before the date of trial to pass the Judge's bundle of pleadings (Order XXXI, rule 4, of the High Court Rules) to the trial Judge.

(xxxv)  During the course of the trial to administer oaths, to record the times of commencement and ending of the hearing on each day and to maintain the Civil Causes Exhibits Register (including an alphabetical index thereto) in which the following particulars shall be entered in their respective columns:

    (*a*)  cause number;
    (*b*)  title of cause;
    (*c*)  description of exhibit;
    (*d*)  exhibit number;
    (*e*)  name of party by whom produced;
    (*f*)  name of witness proving the exhibit;
    (*g*)  date of handing exhibit to the Assistant Registrar; and
    (*h*)  signature of Assistant Registrar.

(xxxvi)  After judgment to hand all exhibits to the Assistant Registrar and obtain his receipt therefor in the Civil Causes Exhibits Register.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(xxxvii) Where the Judge gives judgment *ex tempore* to make a note of the judgment. Where a judgment is written before delivery to examine and certify a copy thereof.

(xxxviii) After judgment to draw up and issue a Certificate after Trial containing the following particulars:

    (*a*)   title of cause;

    (*b*)   name of trial Judge;

    (*c*)   date of hearing;

    (*d*)   time occupied by the hearing on each day;

    (*e*)   date of judgment and time occupied in delivering judgment;

    (*f*)   (i)  particulars of judgment; or

          (ii) reference to certified copy of written judgment.

(xxxix) To issue the original Certificate after Trial to the successful party, copies to other parties and a copy to the Assistant Registrar.

*F. General.*

(xl)    To maintain the Judge's Court Diary.

(xli)    To act as Marshal when on circuit.

*G. Additional duties of Deputy Assistant Registrar to the Chief Justice.*

(xlii)    To receive and file statistical returns from subordinate courts and the High Court Registries.

(xliii)    To call for all outstanding monthly statistical returns on the fifteenth day of each calendar month.

(xliv)    To collate statistical returns and draft consolidated returns for the annual Departmental Reports.

(xlv)    To keep the Rolls of Legal Practitioners, Notaries Public and persons admitted under section *thirty-eight* of the Legal Practitioners Act.    Cap. 30

(xlvi)    To maintain the file in duplicate of judgments of the Court in appeals from Local Courts and to supply one copy of the file to Judges on circuit as required.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

SECTION 19 (3)-CLERKS OF SESSIONS

Government Notice
296 of 1960

*Appointments by the Chief Justice*

**1.**    When a Judge of the High Court has been named as the Judge who will hold any particular Session of the High Court, the Deputy Assistant Registrar to such Judge shall be Clerk of Sessions in respect of that Session.

**2.**    In default of an appointment under paragraph 1 in respect of any particular Session, the senior of the Deputy Assistant Registrars at Lusaka or Ndola, as the case may be, shall be the Clerk of Sessions in respect thereof until an appointment under paragraph 1 takes effect.

SECTION 31-THE WITNESSES AND ASSESSORS ALLOWANCES RULES

Government Notice
179 of 1964
Statutory Instrument
63 of 1964
120 of 1980
208 of 1986
177 of 1990

*Rules by the Chief Justice with the concurrence of the Minister responsible for Finance*

**1.**    These Rules may be cited as the Witnesses and Assessors Allowances Rules.

Title

**2.**    In these Rules, unless the context otherwise requires-

Interpretation

"Judge" means the judge presiding at the proceedings in question;

"witness" includes an interpreter who attends and interprets at any civil proceedings other than an interpreter employed by Government.

**3.**    Witnesses and assessors who have duly attended at or for the proceedings at the instance of either or any party or the Court shall be entitled to allowances and expenses, unless the Judge or the Taxing Master shall for sufficient reason disallow the allowances or expenses of any such witness or assessor.

Persons entitled

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**4.** (1)  The allowances for witnesses and assessors shall be as follows:   Amounts

| Class of persons | | | Minimum sum payable per day K | Maximum sum payable per day K |
|---|---|---|---|---|
| Professional persons, owners directors or managers of businesses and expert witnesses | .. | .. | 250 | 500 |
| Clerks, artisans and persons of similar status | .. | .. | 150 | 350 |

Provided that the sum payable shall not, unless otherwise ordered by the Judge or Taxing Master exceed the sum of K75 per day if the witness has lost no wages or earnings or other income in attending the proceedings or the period during which he has been away from home or in respect of which he has lost wages, earnings or other income by reason of his attendance does not exceed four hours.

| Others | .. | .. | .. | .. | .. | 120 | 250. |
|---|---|---|---|---|---|---|---|

(*As amended by S.I. No.* 120 *of* 1980, *No.* 208 *of* 1986
*and S.I. No.* 177 *of* 1990)

(2)  The above-mentioned allowances will be paid during the time for which a witness or assessor is necessarily detained and for the time reasonably occupied in travelling.

(3)  No additional allowance will be paid merely because the witness or assessor attends in respect of more than one case on the same day.

(4)  If in the opinion of the Judge or Taxing Master to whom a claim has been submitted in terms of rule 4 (1) or 5-

(*a*)  a strict adherence to the above scales in any particular case would result in hardship, he may at his discretion increase the amounts payable; or

(*b*)  a reduction in any of the allowances provided for by this rule is justified in any particular case, he may at his discretion reduce or disallow the amounts payable.

**5.** (1)  In addition to any sum to which a witness or assessor may be entitled under   Travelling expenses
the last preceding rule, all witnesses and assessors provided for in rule 3 shall also be entitled to be reimbursed in respect of any expenses actually and reasonably incurred in travelling to and from the Court, and for necessary accommodation and subsistence.

(2)  If in the opinion of the Judge or Taxing Master to whom a claim has been submitted for the reimbursement of expenses, the sums expended and claimed exceed what is reasonable, he may in his discretion reduce or disallow the amounts payable.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(3)  If any witness or assessor travels by his own motor vehicle or motor cycle he may claim travelling expenses at the rate of forty ngwee per kilometre and twenty ngwee per kilometre respectively.

**6.**    In the event of costs or witnesses' fees being allowed against any party other than the Government, any allowances payable under these Rules may, at the discretion of the Judge or Taxing Officer, be allowable in respect of public officers on production of a certificate signed by or upon the authority of the Permanent Secretary, Ministry of Finance, setting out the cost incurred and the apportioned part of the public officer's salary in respect of time necessarily absent from duty in respect of attendance at or travelling to or from Court or any reasonable or necessary waiting time in connection with the proceedings.

Witnesses who are public officers

(*As amended by S.I. No.* 63 *of* 164, *No.* 120 *of* 1980, *No.* 208 *of* 1986)

SECTION 41-THE HIGH COURT (DISTRICT REGISTRARS) RULES

*Rules by the Chief Justice*

Government Notice 294 *of* 1960

**1.**    These Rules may be cited as the High Court (District Registrars) Rules.

Title

**2.**    A District Registrar shall perform all the functions of the Registrar with respect to any cause or matter (including any cause or matter relating to bankruptcy or to the winding-up of a company) which is proceeding in the District Registry to which he has been appointed, other than functions relating to probate or the registration of foreign judgments.

Functions of District Registrars

SECTIONS 44 AND 45-THE HIGH COURT (INCOME TAX APPEALS) RULES

*Rules by the High Court Rules Committee*

*Statutory Instrument* 203 *of* 1968

**1.**    These Rules may be cited as the High Court (Income Tax Appeals) Rules.

Title

**2.**    In these Rules, unless the context otherwise requires-

Interpretation

"the Act" means the Income Tax Act;

Cap. 323

"Board" means the Tax Review Board;

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

"Clerk" means the clerk to the Board upon whom a memorandum of appeal has been served for the purposes of the Tax Review Board Regulations.

Cap. 323

**3.** (1)  Any party to an appeal to the Board under the provisions of section *one hundred and nine* of the Act desiring to appeal to the High Court shall within thirty days of the date of issue of the order containing the decision of the Board give notice of appeal as hereinafter provided.

Notice of appeal

(2)  The notice of appeal shall be intituled in the proceedings from which it is intended to appeal and shall be filed in triplicate with the Registrar of the High Court, who shall after sealing each copy, forward one copy of the notice of appeal to the Clerk, and return the second copy of the notice of appeal to the appellant or his legal practitioner for service in accordance with the provisions of these Rules.

(3)  Subject to the provisions of section *one hundred and eleven* of the Act, an appellant may appeal from the whole or any part of the decision of the Board. The notice of appeal shall be substantially in Form 1 of the Schedule and shall set forth concisely and under distinct heads, without argument or narrative, the grounds of appeal which shall be numbered consecutively.

(4)  The notice of appeal shall contain the name and address for service of the Clerk and the address for service of the respondent or his legal practitioner.

(5)  The notice of appeal shall within fourteen days of the filing thereof be served by the appellant on the respondent or his legal practitioner.

**4.** (1)  The record of appeal shall be prepared by the Clerk and shall be bound in book form with an outside cover of stout paper and may, if long, be in more than one volume. The title of the appeal shall appear on the outside cover. A record of appeal shall be paged consecutively throughout and every fifth line shall be indicated by numbering in the unbound portion of the margin.

Preparation of record

(2)  The Clerk shall within thirty days after receiving the notice of appeal forwarded to him in accordance with the provisions of rule 3 prepare and forward the record together with one copy thereof to the Registrar of the High Court and shall also at the same time forward one copy of the record each to the appellant and to the respondent.

**5.**  The record of appeal shall be certified as correct by the Clerk and shall contain-

Contents of record of appeal

(*a*)  a complete index;

(*b*)  the notice of appeal to the High Court;

(*c*)  the notice of cross-appeal (if any);

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

(*d*)   the memorandum of appeal and its accompanying documents, statement of facts, assessment and other notices served upon the Clerk in accordance with the provisions of rule 10 of the Tax Review Board Regulations;

*Cap. 323*

(*e*)   the minutes of the proceedings before the Board;

(*f*)   any statement of facts agreed by the parties for the purpose of an appeal to the Board;

(*g*)   all documents admitted as evidence or tendered as evidence and rejected, other than documents already included in paragraph (*a*);

(*h*)   the order setting forth the decision of the Board.

**6.**   Such fees shall be payable in respect of the appeal as shall be prescribed.

*Prescribe fees*

**7.**   On any appeal to the High Court the appellant shall not without the leave of the High Court put forward any ground of appeal other than those set out in the notice of appeal but the High Court in deciding an appeal shall not be confined to the grounds put forward by the appellant:

*Restriction on grounds of appeal*

Provided that the High Court shall not allow an appeal on any ground not stated in the notice of appeal unless the respondent has had an opportunity of contesting the appeal on that ground.

**8.**   (1)  An appellant may at any time withdraw an appeal by filing with the Registrar of the High Court and the Clerk a notice to the effect that he does not intend further to prosecute the appeal.

*Withdrawal of appeal*

(2)   Where a notice is filed in accordance with the provisions of sub-rule (1), the appeal shall be deemed to have been dismissed without further order by the High Court but, failing agreement between the parties, the appeal shall remain on the list for the purpose of hearing any issue as to costs or other matters outstanding between the parties.

(3)   The preparation of the record shall not be affected by the withdrawal of the appeal where a notice of cross-appeal has been filed unless the respondent also withdraws his cross-appeal.

**9.**   A Judge of the High Court may at any time upon application order security or further security for costs to be given and may order security to be given for the payment of past costs relating to the matters in question in the appeal and may make compliance with any such order a condition precedent to the entertainment of any appeal.

*Security for costs*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**10.**    Where a respondent to an appeal intends, upon the hearing of the appeal, to contend that the judgment of the Board should be varied, he shall within fourteen days of the service upon him of the notice of appeal give notice of cross-appeal and the provisions of rule 3 so far as applicable shall apply *mutatis mutandis* to the notice of cross-appeal as if it were a notice of appeal.

Cross-appeal

**11.**    A Judge of the High Court may for sufficient reason extend the time for doing anything under these Rules.

Extension of time

**12.**    The Registrar of the High Court shall cause notice of the date, time and place of the hearing of an appeal to be served upon the appellant and respondent or their legal practitioners.

Notice of hearing

**13.**    When at the time set down for hearing an appeal, there is no appearance for the appellant, the High Court may strike out the appeal or may proceed to determine it after hearing the respondent or his legal practitioner present at the appeal, or may adjourn it on such terms as it thinks fit. Where there is no appearance for the respondent, the High Court may either hear the appeal or adjourn it upon such terms as it thinks fit.

Non-appearance

SCHEDULE

(*Rule* 3)

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

FORM 1

IN THE HIGH COURT FOR ZAMBIA

BETWEEN:

Appellant

and

Respondent

IN THE MATTER OF:

NOTICE OF APPEAL

Take notice that ..................... (name of appellant) ...................................................................................
being dissatisfied with the judgment of the Tax Review Board given at ...........................................................
on the ......................day of ..................., 19....... appeals to the High Court against the whole judgment or against such
part or parts of the said judgment as decides
that .......................................................................................... (set out) ........................... upon the following grounds:

   (1)  ................................................................................................................................................ .

   (2)  ................................................................................................................................................ .

   etc.  ................................................................................................................................................ .

The Respondent's address for service is ........................................................................................................ .

The name of the Clerk is .................................................................................................... and his address for
service is .........................

Dated at ..................................................................................... this .......................... day of........................., 19.......

*Appellant (or his legal practitioner)*

*Address for service* .........................................................
.......................................................................................

To the Registrar of the High Court

  Filed at ............................................................................ this .............................. day of ....................., 19........
.......................................................................................
*Registrar of the High Court*

SECTIONS 44 AND 45-THE HIGH COURT (APPEALS)
(GENERAL) RULES

*Statutory Instrument*
6 of 1984

*Regulations by the Chief Justice*

**1.**  These Rules may be cited as the High Court (Appeals) (General) Rules.

Title

**2.**  In these Rules, unless the context otherwise requires-

Interpretation

  "Registrar" means the Registrar of the High Court;

  "tribunal" means any board, authority (whether consisting of one person or more), tribunal or other body (including a Minister) which is empowered by any written law to determine matters of judicial or quasi-judicial nature and from the decision of which an appeal lies to the High Court.

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**3.** (1)  Any person desiring to appeal to the High Court from a decision of a tribunal shall, within thirty days of the date of the issue of the order containing such decision, give notice of appeal as hereinafter provided.

(2) The notice of appeal shall-

(*a*)    be in form H.C. (A) (G) 1 set out in the Schedule hereto;

(*b*)    be intituled in the proceedings from which it is intended to appeal;

(*c*)    set out the name and address for service of the tribunal and of the respondent, if any, or of the legal representative of such respondent; and

(*d*)    set forth concisely and under distinct heads, without argument or narrative, the grounds of appeal, which shall be numbered consecutively.

(3) Four copies of the duly completed notice of appeal shall be filed with the Registrar who shall, after sealing each copy, forward one such copy to the tribunal and return two such copies to the appellant or his legal representative.

(4) If there is a respondent to the appeal, the appellant shall serve one sealed copy of the notice of appeal on such respondent, or his legal representative, within twenty-one days of the filing thereof.

**4.**    At the time of filing the notice of appeal, the appellant shall pay to the Registrar such fees in respect thereof as the Chief Justice may from time to time determine.

**5.** (1)  The appellant shall prepare the record of appeal which shall be bound in book form with an outer cover of stout paper and may, if extensive, be in more than one volume.

(2) The tribunal shall make available to the appellant copies of all relevant documents which are necessary for the purpose of preparing the record of appeal and which are in the exclusive possession of the tribunal.

(3) The record of appeal shall bear the title of the appeal on the outer cover, each page shall be consecutively numbered throughout and every fifth line of each page shall be numbered in the unbound portion of the margin.

(4) The record of appeal shall contain-

The Laws of Zambia

   (*a*)    a list of its contents;

   (*b*)    the notice of appeal;

   (*c*)    the notice of cross appeal (if any);

   (*d*)    any affidavits filed before the tribunal;

   (*e*)    the record of proceedings before the tribunal;

   (*f*)    all documents tendered in evidence before the tribunal, whether admitted in evidence or not;

   (*g*)    the order setting forth the decision of the tribunal; and

   (*h*)    any other affidavits, exhibits, documents or other relevant material.

(5) The appellant shall forward to the tribunal the record of appeal, and such number of copies thereof as the Registrar may determine, and the tribunal shall, if satisfied in that behalf, certify as correct the record of appeal and each copy thereof forwarded to it.

(6) The appellant shall, within thirty days of receiving the certified copies referred to in sub-rule (5), forward-

   (*a*)    to the registrar the record of appeal and such number of copies thereof as the Registrar may determine; and

   (*b*)    one copy thereof to the respondent, if any.

**6.** (1)  The appellant may, in the notice of appeal, appeal from the whole or any part of the decision of the tribunal.   Grounds of appeal

(2) Without the leave of the High Court, the appellant shall not, during the hearing of the appeal, advance any ground of appeal other than those set out in the notice of appeal.

(3) In deciding the appeal, the High Court shall not be confined to the grounds advanced by the appellant:

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

Provided that the High Court shall not allow an appeal on any ground not set out in the notice of appeal unless the tribunal and the respondent, if any, had had an opportunity of contesting the appeal on that ground.

**7.** (1)  The appellant may withdraw the appeal at any time by filing with the Registrar a notice of withdrawal in form H.C. (A) (G) 2 set out in the Schedule.

*Withdrawal of appeal*

(2) The appellant shall serve a sealed copy of the notice of withdrawal on the tribunal and on the respondent, if any, within fourteen days of such sealing.

(3) Where a notice of withdrawal is filed in accordance with sub-rule (1), the appeal shall be deemed to have been dismissed without further order by the High Court but, failing agreement between the parties, the appeal shall remain on the list for the purpose of hearing any issue as to costs or other matters outstanding between the parties.

**8.**    A Judge of the High Court may at any time upon application order security or further security for costs to be given and may order security to be given for the payment of past costs relating to the matters in question in the appeal and may make compliance with any such order a condition precedent to the continuation of any appeal.

*Security for costs*

**9.**    Where a respondent to an appeal intends, upon the hearing of the appeal, to contend that the decision of the tribunal should be varied, he shall within twenty-one days of the service upon him of the notice of appeal give notice of cross-appeal and the provisions of rule 3 shall apply, *mutatis mutandis*, to the notice of cross-appeal.

*Cross-appeal*

**10.**    A Judge of the High Court may, for sufficient reason shown in form H.C. (A) (G) 3, extend the time for doing anything under these Rules.

*Extension of time*

**11.**    The Registrar shall cause notice of the date, time and place of the hearing of an appeal to be served upon the tribunal, the appellant and the respondent, if any, or on their legal representatives.

*Notice of hearing*

**12.**    If at the time set down for the hearing of an appeal-

*Non-appearance*

  (*a*)    there is no appearance for the appellant, the High Court may strike out the appeal or may proceed to determine it after hearing the respondent or his legal representative present at the hearing, or may adjourn the hearing on such terms as it thinks fit;

  (*b*)    there is no appearance for the respondent, the High Court may either hear the appeal or adjourn it upon such terms as it thinks fit.

**13.**    The High Court may, at the request of any party, summon any person to attend, produce documents or be examined or cross-examined, in the matter to which the appeal relates.

*Attendance of witnesses*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**14.** (1) If in the opinion of the High Court a notice of appeal discloses only grounds of appeal which are frivolous or vexatious, the High Court may dismiss the appeal summarily without calling on any person to attend the hearing of such appeal.

Frivolous or vexatious appeals

(2) The Registrar shall send a copy of an order made under subsection (1) to the tribunal, the appellant and the respondent, if any, or to their legal representatives.

**15.** Except as specifically provided in these Rules, the High Court Rules shall apply, *mutatis mutandis*, to an appeal under these Rules.

Application of High Court Rules

SCHEDULE

(*Rules* 3(2), 7(1) *and* 10)

FORMS

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**Form H.C. (A) (G) 1**

REPUBLIC OF ZAMBIA

IN THE HIGH COURT FOR ZAMBIA

BETWEEN:

Appellant

and

Respondent

IN THE MATTER OF:

Appeal from the judgment or decision of ...................................................................................................
delivered on ......................................................................

NOTICE OF APPEAL

Take notice that ................................................................................... (*name of Appellant*).................
................................................................................................being dissatisfied with the judgment or decision
of ........................................................................................ given at ..............................................................
on the ....................................................................................... day of ..........................................., 19.......
appeals to the High Court against the whole judgment or decision or against such part or parts thereof as decides that
........................................................................ (set out) .......................................................... upon the following grounds:

(1)   ..........................................................................................................................................................

(2)   ..........................................................................................................................................................

etc   ..........................................................................................................................................................

The Respondent's address for service is ........................................................................

The name of the tribunal is ............................................................................................... and its address
for service is .........................................................................................................................................

Dated at .................................................................. this .............................. day of ..........................., 19.......

.............................................................................

*Appellant* (*or his legal representative*)

Address for service ...............................................

.............................................................................

To the Registrar of the High Court

Filed at ............................................................... this ................................ day of ..........................., 19.......

.............................................................................

*Registrar of the High Court*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**Form H.C. (A) (G) 2**

REPUBLIC OF ZAMBIA

IN THE HIGH COURT FOR ZAMBIA

BETWEEN:

Appellant

and

Respondent

IN THE MATTER OF:

Appeal from the judgement or decision of ................................................................................................
delivered on ........................................................................................................

NOTICE OF WITHDRAWAL

Take notice that ................................................................................................ (*name of Appellant*)
hereby withdraws his appeal in the matter hereinbefore set out.

Dated at ...........................................................................this ............................. day of .............................., 19.......

................................................................................

*Appellant* (*or his legal representative*)

Address for service ....................................................

................................................................................

To the Registrar of the High Court

Filed at ........................................................................ this ............................. day of .............................., 19.......

................................................................................

*Registrar of the High Court*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**Form H.C. (A) (G) 3**

REPUBLIC OF ZAMBIA

IN THE HIGH COURT OF ZAMBIA

Between:

Appellant

and

Respondent

IN THE MATTER OF:

Appeal from the judgment or decision of ................................................................................................
delivered on ...............................................................................................................

NOTICE OF APPLICATION FOR EXTENSION OF TIME

Take notice that ............................................................................................................... (*name of applicant/
respondent*) in the appeal hereinbefore set out hereby applies for an extension of time within which to ...............................
................................................................................................ for the reasons and upon the grounds next following:

(1) Reasons for being out of time:

...............................................................................................................................................
...............................................................................................................................................

(2) Grounds for an extension:

...............................................................................................................................................
...............................................................................................................................................

Dated at ................................................................... this ................................ day of ........................., 19.......

...............................................................................................

*Appellant* (*or his legal representative*)

Address for service ....................................................

...............................................................................................

To the Registrar of the High Court

Filed at .......................................................................... this ................................ day of ........................., 19.......

...............................................................................................

*Registrar of the High Court*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia
**Endnotes**

**1 (Popup - Popup)**
30th March, 1972.
**2 (Popup - Popup)**
See section 8 of the Evidence Act (Cap. 43.)
**3 (Popup - Popup)**
Palantype, Pitman's shorthand and Gregg's shorthand authorised by G.N. No. 77 of 1962
**4 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**5 (Popup - Popup)**
*Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.*
**6 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**7 (Popup - Popup)**
*Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.*
**8 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**9 (Popup - Popup)**
*Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.*
**10 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**11 (Popup - Popup)**
*Mention the city or town and also the name of the street and number of the house of the plaintiff's residence, if any.*
**12 (Popup - Popup)**
*State the nature of the claim.*
**13 (Popup - Popup)**
*State the questions.*
**14 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**15 (Popup - Popup)**
*State the nature of the claim.*
**16 (Popup - Popup)**
*State the questions.*
**17 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**18 (Popup - Popup)**
*Specify statute or as the case may be.*
**19 (Popup - Popup)**
*State the object of the application.*
**20 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**21 (Popup - Popup)**
*Specify statute or as the case may be.*
**22 (Popup - Popup)**
*State the object of the application.*
**23 (Popup - Popup)**
*Here insert both actual and postal addresses.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**24 (Popup - Popup)**
*Delete if inapplicable.*
**25 (Popup - Popup)**
*As the case may be.*
**26 (Popup - Popup)**
*State relief sought.*
**27 (Popup - Popup)**
*Here insert both actual and postal addresses.*
**28 (Popup - Popup)**
*Delete if inapplicable.*
**29 (Popup - Popup)**
*Specify statute, if any.*
**30 (Popup - Popup)**
*Copy original writ and the endorsements.*
**31 (Popup - Popup)**
*If the person served with the writ is served in the two capacities of manager and partner, the clause should be left standing. If he is served as manager only it should be struck out.*
**32 (Popup - Popup)**
*Delete if inapplicable.*
**33 (Popup - Popup)**
*Delete whichever inapplicable.*
**34 (Popup - Popup)**
*Delete whichever inapplicable.*
**35 (Popup - Popup)**
*Delete whichever inapplicable.*
**36 (Popup - Popup)**
*Delete whichever inapplicable.*
**37 (Popup - Popup)**
*Delete whichever inapplicable.*
**38 (Popup - Popup)**
*Insert date and place of service, person served and capacity.*
**39 (Popup - Popup)**
*Delete whichever inapplicable.*
**40 (Popup - Popup)**
*Set out reasons with particulars and dates.*
**41 (Popup - Popup)**
*Delete whichever inapplicable.*
**42 (Popup - Popup)**
*Delete as required .*
**43 (Popup - Popup)**
*Plaintiff or Defendant.*
**44 (Popup - Popup)**
*Delete as required .*
**45 (Popup - Popup)**
*Delete as required .*
**46 (Popup - Popup)**
*Delete as required .*
**47 (Popup - Popup)**
*Delete as required .*
**48 (Popup - Popup)**
*Plaintiff or Defendant.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

**49 (Popup - Popup)**
*Delete if inapplicable.*

**50 (Popup - Popup)**
*Delete if inapplicable.*

**51 (Popup - Popup)**
*Delete if inapplicable.*

**52 (Popup - Popup)**
*Delete if inapplicable.*

**53 (Popup - Popup)**
*Describe the part.*

**54 (Popup - Popup)**
*Delete if inapplicable.*

**55 (Popup - Popup)**
*Delete if inapplicable.*

**56 (Popup - Popup)**
*Insert name of Judge or Registrar.*

**57 (Popup - Popup)**
*Delete if inapplicable.*

**58 (Popup - Popup)**
*Full title.*

**59 (Popup - Popup)**
*Or as the case may be..*

**60 (Popup - Popup)**
*Insert "District" where applicable and full postal address.*

**61 (Popup - Popup)**
*Insert "District" where applicable and full postal address.*

**62 (Popup - Popup)**
*Or as the case may be..*

**63 (Popup - Popup)**
*Or as the case may be..*

**64 (Popup - Popup)**
*Delete if inapplicable.*

**65 (Popup - Popup)**
*Full title.*

**66 (Popup - Popup)**
*Or as the case may be.*

**67 (Popup - Popup)**
*To be signed by the officer of the High Court to whom payments under the attachment of earnings order are to be made.*

**68 (Popup - Popup)**
*Delete if inapplicable.*

**69 (Popup - Popup)**
*Title as in attachment of earnings order.*

**70 (Popup - Popup)**
*Please insert "District" where applicable and full postal address.*

**71 (Popup - Popup)**
*Please insert "District" where applicable and full postal address.*

**72 (Popup - Popup)**
*Please insert date of service of attachment of earnings order or such later date as may be appropriate.*

**73 (Popup - Popup)**

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

The Laws of Zambia

*To be signed by the person to whom the attachment of earnings order was directed.*

**74 (Popup - Popup)**
*Delete as appropriate.*

**75 (Popup - Popup)**
*Delete as appropriate.*

**76 (Popup - Popup)**
*Day of decree or order, or day on which money is directed to be paid, or day from which interest is directed by the order to run, as the case may be.*

**77 (Popup - Popup)**
*Day of decree or order, or day on which money is directed to be paid, or day from which interest is directed by the order to run, as the case may be.*

**78 (Popup - Popup)**
*Delete whichever inapplicable.*

**79 (Popup - Popup)**
*Delete whichever inapplicable.*

**80 (Popup - Popup)**
*Delete whichever inapplicable.*

**81 (Popup - Popup)**
*Delete whichever inapplicable.*

**82 (Popup - Popup)**
*Delete whichever inapplicable.*

**83 (Popup - Popup)**
*Delete if inapplicable.*

**84 (Popup - Popup)**
*Delete if inapplicable.*

**85 (Popup - Popup)**
*Delete whichever is inapplicable.*

**86 (Popup - Popup)**
*10n for every name searched against.*

**87 (Popup - Popup)**
*State number required.*

**88 (Popup - Popup)**
*State name or names.*

**89 (Popup - Popup)**
*Speciment signatures.*

Copyright Ministry of Legal Affairs, Government of the Republic of Zambia

# EXHIBIT 12

Supreme Court Judgment No. 5 of 2010

132

IN THE SUPREME COURT FOR ZAMBIA          APPEAL NO. 05/2008
HOLDEN AT NDOLA

B E T W E E N:

CHIMANGA CHANGA LIMITED                    APPELLANT

AND

STEPHEN CHIPANGO NGOMBE                    RESPONDENT

CORAM: MAMBILIMA, DCJ, SILOMBA AND MWANAMWAMBWA, JJS
        ON 2ND JUNE 2009 AND 10TH FEBRUARY 2010

For the Appellant:     Mr. L. MATIBINI of L.M. Matibini & Co.
For the Respondent:    In Person

---

## JUDGMENT

MAMBILIMA, DCJ delivered the judgment of the Court.

**AUTHORITIES REFERRED TO:-**

1. **R. NG'ANDU VS LAZAROUS MWIINGA (1988/89) ZR 197**
2. **KAPEMBWA VS MAIMBOLWA AND ATTORNEY-GENERAL (1981) ZR 127**
3. **PHILLIPS VS PHILLIPS (1878) 4QBD 127 at Page 139**

This is an appeal from the decision of the Industrial Relations Court sitting at Ndola, allowing the Respondent's claim that he was wrongly and unfairly dismissed from employment by the Appellant. In his complaint, The Respondent sought the following reliefs:-

1

**133**

1. **Reinstatement;**

2. **Compensation in form of damages;**

3. **Terminal benefits;**

4. **A declaration that his dismissal was null and void;**

5. **Interest, costs and any other relief that the court may deem fit.**

In finding in favour of the Respondent, the Court found no compelling circumstances to order reinstatement. Instead, the Court granted the Respondent compensation for loss of employment in form of 12 months salaries. The amounts due were to be paid with interest at the commercial lending rate, as approved by the Bank of Zambia, from the date of the dismissal up to the date of judgment; and thereafter at the rate of 8% up to the date of final payment. He was also awarded costs.

The record of appeal shows that on the date that this matter was heard in the Court below, there was no appearance for the Appellant. The Respondent appeared in person. The

2

134

Court resolved to proceed with the hearing as there was no apology from the Appellant.

The facts, as given by the Respondent in his testimony, were that he was employed by the Appellant company as a driver on a date and year he could not recall. On Saturday 23rd December 2006, he was sent to deliver mealie meal to different parts of Ndola using a TATA truck. He collected 400 of 25 kg bags of mealie meal. The Respondent explained that the procedure at the company was that before a truck left the premises for deliveries, it passed through a weigh bridge. He testified that on the date in question, the weigh bridge was congested and a Mr. KAMBWILI, who was the warehouse supervisor, told him to just go, without passing the truck through the weigh bridge. He delivered the bags to different outlets. He went back to his workplace around 1800 hours with 100 bags of mealie meal. According to the Respondent, these bags had been rejected by a customer who had been doing stock taking and did not need the mealie meal.

The Respondent handed over the mealie meal and the security guards on duty entered the details in the occurrence book. The bags were counted as Mr. KAMBWILI observed. When counting was over, the Respondent went home. This was after he had thrown the keys for the truck into the Transport Manager's office through a small window. According to the Respondent, this was the practice at the company.

The Respondent further testified that as Sunday was a non working day and Monday was a public holiday, he reported for work on Tuesday. He arrived at his workplace around 0730 hours in the morning. Upon reporting for work, the warehouse manager informed him that of the 100 bags that he had brought back, 13 were found to be underweight. The Respondent asked as to why the bags had not been weighed in his presence. The answer was that he was asking a silly question. The Chief Security Officer and some members of the Works Committee were then called. They were directed to weigh the rest of the bags. Another 33 bags were found to

be under weight.    The Respondent continued working.    Later in the day, he was called and asked to explain which he did. Members of the Works Committee advised that the Respondent should not be dismissed; but the Personnel Officer told him that the Managing Director who was away at the time would be angry upon his return if the Respondent was not fired.    The Respondent was thereafter placed on indefinite suspension.    Later in the week, he received a letter of dismissal.  He told the Court that he was not given a formal charge and neither was he asked to exculpate himself.

The Court below found that from the evidence on record, there were only two issues for the determination of the Court. These were whether:-

1. **the Respondent siphoned mealie meal from 46 bags;**

2. **the disciplinary procedure was complied with in dismissing the Respondent.**

The Court first considered the second issue.    It noted that neither the disciplinary code nor the collective agreement had been availed to the Court.  That notwithstanding, the

Court found, on the evidence and documents on record, that the Respondent appeared before the personnel officer in the presence of two officers. There was evidence that the Respondent submitted an exculpatory statement in writing whose copy was furnished to the Court. The Court thus found and held that the procedure adopted by the Appellant met the minimum requirements under the rules of natural justice.

As to whether the Respondent had siphoned mealie meal from 46 bags, the Court found that no documentary evidence had been adduced to show that the consignment that the Respondent took out for delivery had been weighed before departure. This, according to the Court below, supported the Respondent's evidence that Mr. KAMBWILI had instructed him to by pass the weigh bridge. The Court also noted that there was no evidence to suggest that the undelivered bags had been weighed before the Respondent left the premises when he brought them back. The Court was of the view that this lent credence to the Respondent's assertions that nobody, including Mr. KAMBWILI had suggested that the bags be

6

138

weighed before the Respondent left. The bags were weighed on Tuesday, two full days later and some of them had even been weighed in the absence of the Respondent. The Court found that these circumstances raised serious doubt as to the culpability of the Respondent because it was possible firstly, that the Respondent could have driven out with underweight products; secondly, that someone could have tampered with the bags when the Respondent and the lorry mates were away and lastly, that the two day period before the mealie meal was weighed exposed it to access by other plant staff who may have reported for work during the weekend. In the circumstances, the Court found it *"extremely difficult..., even on a balance of probabilities that it was indeed..."* the Respondent who had tampered with the mealie meal. The Court thus found in favour of the Respondent.

In its appeal before us, the Appellant has advanced two grounds of appeal, that:-

1. **The Court below erred in law in concluding the trial without proof of service of the Notice of Hearing on the Appellant.**

**139**

**2. The trial Court erred in law in finding for the complainant without giving reasons for disregarding the Respondent's persuasive evidence on record.**

In support of the first ground of appeal, it is the Appellant's contention, relying on Rules 31, 45 and 49 of the Industrial Relations Court Rules, that there was no proof that the Notice of Hearing in this case was served on the Appellant. Mr. MATIBINI has submitted that while the trial Court has unfettered power to determine the place and date of hearing, it has an obligation to administer substantial justice by ensuring service of documents in the manner and mode prescribed by Rule 45 (1) of the applicable Rules.  This Rule provides:-

> *"45 (1)    Any notice or other document required or authorized by these Rules to be served on, or delivered to, any person may be sent to him by post to his address for service or, where no address for service has been given, to his registered office, principal place of business or last known address, and any notice or other document required or authorized to be served on or delivered to the Court may be sent by post or delivered to the Registrar."*

Mr. MATIBINI submitted that in this case, a copy of a Notice of Hearing appears on page 42 of the record of appeal.  On the date of hearing, the Marshal informed the Court that there

8

was no apology; from the Appellant whereupon the Court proceeded to hear evidence from the Respondent and adjourned the matter for judgment.  Mr. MATIBINI has argued that it was not sufficient for the Court to inquire from the Marshall whether there was any apology; but to satisfy itself as to whether the Notice of Hearing was delivered in accordance with any of the modes prescribed by Rule 45(1). He argued further, that even if it could be assumed that the Notice of Hearing was properly served, the Court ought to have adjourned the matter to another date to enable the Appellant to give its side of the story.  In support of his argument, Mr. MATIBINI referred to the case of **R. NG'ANDU VS LAZAROUS MWIINGA (1)** in which it was held that:-

> *"....in the absence of proof of service of a Notice of Hearing date the only course open to the Court were to allot a fresh hearing date and to cause the Notice thereof to be served on the advocates of the parties..."*

It is Mr. MATIBINI's submission that even if this case relates to the High Court, it is highly persuasive to the Industrial

141

Relations Court which has a specific provision requiring service and which is mandated to do substantial justice.

With regard to the second ground of appeal, Mr. MATIBINI has argued that the trial Court's analysis of the evidence is partial. He submitted that the Appellant, not only complied with the rules of natural justice, but carried out investigations upon which they established the Respondent's culpability of the preferred charge. He stated that the Court below failed to decisively deal with the Appellant's affidavit evidence. In this regard, he highlighted three salient points:-

1. **In paragraph 4 of the affidavit which was filed in answer to the Respondent's application, the Appellant's Human Resource Officer deposed that on the material date, the Respondent was entrusted with 427 bags of mealie meal to various destinations, all of which were checked and verified as to their condition and quantity prior to being loaded on to the truck.**

2. **The reweighing of the 100 bags was witnessed by the Respondent, the Union Chairman and his Vice, the Chief Security Officer and the Human Resource Officer. According to Mr. MATIBINI, this was a transparent process which established that there was a loss and or discrepancy in the remaining mealie meal.**

10

3. In the letter of dismissal, it was intimated that the Appellant's investigations had revealed the Respondent had connived with lorry mates to drain mealie meal from the customer's bags on 23rd December 2006 while delivering the consignments.

In support of his submission, Mr. MATIBINI referred us to two passages by the learned authors of **SELWYN'S LAW OF EMPLOYMENT, 4TH EDITION.** The first passage is on page 169, at which it is sated:-

"There are certain limits to the extent an employer may properly make enquiries into an incident, particularly if a charge is a serious one, such as theft for there may well be an improper interference with the process of justice... The important thing is that the employer does <u>not have to prove</u> that <u>an offence took place,</u> or even <u>satisfy himself</u> <u>beyond all reasonable doubt</u> that the <u>employee committed the act in question.</u> The function of an employer is to <u>act reasonably</u> in <u>coming to a decision.</u>"

In the second passage, it is stated:-

"At the end of the day the employer must satisfy (the three fold test laid down in BRITISH HOME STORES VS BURCHELL). First, the employer must show that he genuinely believes the employee to be guilty of the misconduct in question; second, he must have reasonable grounds upon which to establish that belief; third, he must have carried out such investigation into the matter as was reasonable in the circumstances."

Mr. MATIBINI submitted that the trial Court disregarded the Appellant's evidence and concentrated on analyzing evidence regarding the possible causes of the underweight bags. It overlooked the fact that the Appellant <u>not only complied with the rules of natural justice</u>, but also <u>carried out reasonable levels of investigations</u> in the case.

On the Respondent's evidence that he was instructed to by-pass the weigh bridge before departing the Appellant's premises; on the basis of which the Court concluded that the weight of the consignment was not ascertained; Mr. MATIBINI submitted that this finding by the trial Court overlooked the fact that the Respondent's evidence on this point was not pleaded and therefore, could not be directly rebutted in the affidavit. He also pointed to the affidavit evidence that all the bags had been checked as to their condition and quantity prior to being loaded onto the vehicle. He submitted that there was therefore no concrete basis, upon which the lower Court could have been persuaded to lean on the Respondent's evidence

144

without advancing reasons to discount the Appellants overwhelming affidavit evidence.

Mr. MATIBINI conceded that in arguing the second ground of appeal, he was seeking to impugn a finding of fact. He argued that the affidavit evidence on record clearly showed that the procedure, as well as the manner in which the Appellant dealt with the case, was not discredited and or discounted by the trial Court. He argued that the trial Court therefore misdirected itself in fact and law, by focusing only on the evidence favourable to the Respondent. While being alive to the fact that appellate Courts are slow to interfere with findings of fact, it is Mr. MATIBINI's submission that this would be an opportune case for this Court to do so. In aid of this submission, he referred us to the case of **AUGUSTINE KAPEMBWA VS DANNY MAIMBOLWA AND ATTORNEY GENERAL (2)** in which this Court laid down principles to be followed by an appellate Court before interfering with a finding of fact made by a trial Court. These are that:

13

**145**

(a) **by reason of some non-direction or misdirection or otherwise the Judge erred in accepting the evidence which he did accept; or**

(b) **in assessing and evaluating the evidence the Judge has taken into account some matter which he ought not to have taken into account, or failed to take into account some matter which he ought to have taken into account; or**

(c) **it unmistakenably appears from the evidence itself or from the unsatisfactory reasons given by the Judge for accepting it, that he cannot have taken proper advantage of his having seen and heard the witnesses.**

Mr. MATIBINI submitted that the Court below erred in accepting the evidence regarding the weight of the bags before departure as it was not pleaded. He argued that in any case, this aspect of the case was adequately addressed by the Appellant in its affidavit. He stated further that the Court below equally erred in its finding on the question of the Respondent having been away during the two day period that passed before the mealie meal was reweighed. It is his submission that administrative tribunals must be supported by Courts where proper investigations have been carried out by an employer, as in this case, where the Respondent

14

attended an administrative hearing in the presence of his superior and members of the Works Committee.  According to Mr. MATIBINI, the trial Court disregarded this evidence, thereby failing to take into account matters it ought to have taken into account.  He submitted that this Court is therefore entitled to interfere and reverse the decision of the lower Court.

The Respondent appeared in person and made oral submissions.  On the issue of service of the Notice of Hearing, he submitted that it was sent to him by people from Chimanga Changa Limited, the Appellants.

The Respondent maintained that on the day of deliveries, the weighbridge was congested and Mr. KAMBWILI told him to *just leave.*  He went on to state that Mr. KAMBWILI was in the office when he came back.  He handed over the truck together with 100 bags.  He then threw the keys into the Personnel Officer's office and left for home.  He came back the following Tuesday and found the truck on the loading bay.  He was told that he had 13 under weight bags.  These had been

523 of 546

weighed in his absence.  The rest of the bags were weighed in his presence.

The Respondent also maintained that he was unfairly dismissed.

We have addressed ourselves to the issues raised in this appeal.  The issue raised in the first ground of appeal is with regard to a Court proceeding to hear a matter in the absence of one of the parties, without proof that a notice of hearing was served on them.  There is no doubt that rules of Court do require that parties to a dispute must be served with any Court process including a notice of hearing, so that they can react to the process.  The rationale behind this requirement is the common law principle of natural justice.

The record of appeal shows that when this case first came up for hearing on 1st August 2007, none of the parties were in attendance.  In dealing with the matter the Court stated:-

> **"Considering that this is a new case and this is the first sitting, we shall give the parties a benefit of doubt."**

148

The Court then struck out the matter with an order that it would stand dismissed should it not be restored within 14 days. It would appear that the matter was restored. Page 42 of the record of appeal shows that a Notice of Hearing was subsequently generated by the Registrar appointing 30th October 2007, at 0900 hours as the date and time of hearing. This Notice of Hearing has two physical addresses handwritten on it. On top of the left corner, there is the address of the Respondent; which is House No. 6584 Kabushi Extension Ndola. At the left bottom corner, it shows **"Legal Counsel Mahtani Group of Companies, 5th Floor, Professional Insurance House, Cairo Road, Lusaka."** It is on record (page 20 of the record of appeal) that the Legal Counsel, Mahtani Group of Companies filed a Notice of Appointment, citing this address on 1st February 2007. Being physical addresses, they could only have been inserted on the Notice of Hearing for the purpose of service.

We have carefully perused the arguments of the Appellant in respect of service. The thrust of the Appellant's

17

149

contention is that the Court below should have satisfied itself that the Notice of Hearing was delivered in accordance with the modes prescribed in Rule 45 (1), or, in other words, there must have been proof of service. There is no categorical statement from the Appellant that in fact, they were not served with a Notice of Hearing but rather, that there was no proof of service. We have a Notice of Hearing endorsed with two physical addresses; one for the Respondent, which was a house number in a compound, and the other, a business address in the city of Lusaka. The man from the compound appeared in obedience to the Notice, while the Appellant's Counsel did not. Can it seriously be argued that the non appearance of the Appellant's Counsel was due to lack of service?

There is no exclusively sacrosanct method to prove service of process. While an affidavit of service would lay the issue of service to rest, service can be proved through endorsement on a letter or other circumstances. A court is at liberty to infer from the circumstances in a case whether a

litigant is aware of the hearing date. The Court below appears to have proceeded on the assumption that the Notice of Hearing had been served on the parties.

As we have stated above, there is no assertion in this case that there was no service of the Notice of Hearing but rather, that there was no proof of service. We are mindful that the Appellant was at liberty to apply to the Court to set aside the judgment and seek leave to present its evidence but it never did so. A litigant using a compound address appeared in obedience to the Notice of Hearing while the Appellant, with a town address did not. It is therefore difficult, to accept that the Appellant did not receive the notice. In the circumstances of this case, we cannot fault the trial Court for having proceeded. Insisting on proof of service rather than the fact as to whether service was effected lends credence to an assumption that service was effected. The Appellant's arguments on the first ground of appeal have not persuaded us to find that the Notice of Hearing was not served or indeed,

151

that Counsel for the Appellant was at the time, not aware of the date of hearing.

Coming to the second ground of appeal, it is common cause that the Respondent was tasked to deliver 427 bags of mealie meal, of which 100 were returned undelivered. On page 10 of the record of appeal, the Court observed in its judgment that:

> **"The Respondent has not availed us with any documentary evidence to show that on the date in issue the weight of the consignment which the complainant took out for delivery was ascertained before his departure. This silence tends to support the complainant's evidence that before departure, he was instructed to by pass the weigh bridge by Mr. KAMBWILI."**

Although the Appellant did not call viva voce evidence, there was affidavit evidence before the Court, deposed to in answer to the Notice of Application. The affidavit was sworn by the Appellant's Human Resource Officer, Mr. Fenwick KAOLE. On the material facts in this case, the Respondent, in his affidavit in support of complaint filed on 15th January 2007 deposed that:-

20



*152*

*"6.    That I am challenging the allegation leveled against me that I was not the one who siphoned mealie- meal and that on 23rd day of December 2006 I did hand back 100 bags of mealie meal to the plant and the security approved and received the bags which were least (sic) for 3 days by the 4 security guards.*

*7.    That I feel discriminated because Security Guards together with the warehouse supervisor had access to the said bags for 3 days I was off duty."*

The Respondent did not depose to the fact that he was instructed to by pass the weigh bridge by Mr. KAMBWILI.

In answer to the Respondent's affidavit, Mr. KAOLE, on behalf of the Appellant, deposed that the 427 bags of mealie meal were checked and verified both as to condition and quantity prior to the bags being loaded onto the truck. Surprisingly, the Respondent did not file any affidavit in Reply to respond to the Appellant's assertions that the bags had been checked and verified prior to leaving the factory.

As at the time of trial, therefore, the pleadings in this case comprised the Respondent's Notice of Application under Section 85(3) together with his Affidavit in Support of Complaint; and the Appellant's affidavit filed in Answer to the

153

Notice of Application.  As stated above the Respondent did not allege, in his pleadings that he was instructed to by pass the weigh bridge and neither did he say so in his exculpatory statement. He mentioned this for the first time, during his testimony in Court at which the Appellant was not in attendance.

The importance of pleadings cannot be over emphasized. A party to a cause must plead all material facts on which he relies for his claim or defence.   According to the learned authors of Atkin's Court Forms (2nd Edition volume 32 on page 13) ***"The rule that all material facts must be pleaded is necessary in order to prevent the opposite party from being taken by surprise, and to put the party on his guard and tell him what he has to meet when the case came on for trial."***   They cite the case of **PHILLIPS VS PHILLIPS** (3) in which COTTON J observed that:

> **"...in my opinion it is absolutely essential that the pleading, not to be embarrassing to the Defendants, should state those facts which will put the Defendants on their guard and tell them what they have to meet when the case comes on for trial."**

22



154

The state of the bags before leaving the factory was a material fact. The Appellant did depose in its affidavit that the bags were checked and verified before leaving the factory but the Court ignored this evidence and instead treated the Respondent's evidence at trial, that he was instructed by pass the weigh bridge, as unchallenged.

To this effect, we find that the observation by the Court below, that: **"The Respondent has not availed us with any documentary evidence to show on the date in issue the weight of the consignment which the complainant took out for delivery was ascertained before his departure"** was not correct as the Appellant did allude to the condition of the bags before they were delivered in its Affidavit in Reply.   To this affidavit was attached a detailed report on the incident given by Mr. KAMBWILI.

From the documents on record, the question of the bags having been *"checked and verified as to their condition and quantity prior to being loaded"* seems to be plausible.

23

Paragraph four of the Respondent's letter of dismissal dated 8th January 2007 supports the Appellant's assertion that bags are usually checked and verified before they leave the factory. It states:-

> *"On Tuesday 26th December 2006 our loading supervisor wanted to make a full load, but before that, he weighed a few bags, which were underweight and became suspicious…"*

This goes to show that even the returned bags could not just be loaded and taken out. The loading supervisor had to check them before delivery to some other customers.

We agree with Mr. MATIBINI that there was an unbalanced evaluation of the evidence before it by the Court below. Notwithstanding the Appellant's affidavit evidence, the Court was of the view that the Appellant had not adduced any evidence. This, in our view, was a misdirection.

The last point raised by Mr. MATIBINI, is that the Respondent actually investigated this case before it dismissed the Respondent.   The letter of dismissal attached to the affidavit of Mr. KAOLE alludes to this fact. The Appellant

24

156

seems to have been satisfied, on the basis of its investigations, that the Respondent was responsible for the siphoning of mealie meal from the bags which were underweight.  On this issue, Mr. MATIBINI referred us **to SELWYN'S LAW OF EMPLOYMENT 4th EDITION.**  According to this literature, what is crucial is that an employer carried out investigations as a result of which he reasonably believed that the employee is guilty of misconduct.  The record shows that on 4th January 2007, the Respondent was suspended from work pending *"thorough investigations"* into the cause of the under weight bags of mealie meal.  The Respondent was dismissed on 8th January 2007.  The letter of dismissal stated in part:-

> *"Our investigations have revealed that you connived with lorry mates to drain mealie meal from our customers' bags on Saturday 23rd December 2006 while on duty delivering their consignment."*

The Appellant therefore believed, from its investigations, that the Respondent was responsible for the loss.  According to the learned authors of Selwyn's Law of Employment, the employer

does not have to prove that an offence took place or satisfy himself beyond reasonable doubt that the employee committed the act in question. His function is to act reasonably in coming to a decision. The rationale behind this is clear; an employment relationship is anchored on trust and once such trust is eroded, the very foundation of the relationship weakens. In this case, we are satisfied that the Appellant carried out its investigations on the basis of which the Respondent was dismissed. We do not find the dismissal to have been wrongful.

From the foregoing, we are inclined to disturb the findings of fact made by the Court below. In line with our decision in the case of **KAPEMBWA VS MAIMBOLWA AND ATTORNEY-GENERAL (2),** we have found that the Court below did not take into account, the affidavit evidence from the Appellant. It is our view that had the Court properly directed itself and applied the law to the circumstances of this case, it would not have arrived at the decision it did. We allow the

26



158

appeal and set aside the judgment of the Court below.   We award costs to the Appellant.


I.C. Mambilima
DEPUTY CHIEF JUSTICE


S.S. Silomba
SUPREME COURT JUDGE


M.S. Mwanamwambwa
SUPREME COURT JUDGE

27

# EXHIBIT 13

Case 1:22-cv-00058-CRC   Document 28-2   Filed 09/23/22   Page 536 of 546

5 For the European Convention on State Immunity (Basle, 16th May 1972; Misc. 31 (1972); Cmnd. 5081), signed by the United Kingdom but not yet ratified, see para. 1558, post. As to the practice of states generally, see 2 O'Connell's International Law (2nd Edn) 841–866.

6 *The Philippine Admiral (Owners) v Wallem Shipping (Hong Kong) Ltd* [1976] 1 All ER 78, [1976] 2 WLR 214, PC, distinguishing *The Parlement Belge* (1880) 5 PD 197, 3 BILC 322, CA (vessel used primarily for public purposes), not following *The Porto Alexandre* [1920] P 30, 3 BILC 350, CA and disapproving dicta in *Compania Naviera Vascongado v S S Cristina* [1938] AC 485, [1938] 1 All ER 719, 3 BILC 402, HL, at 490 and at 720 per Lord Atkin, and at 512 and at 735 per Lord Wright. The dictum at 519 and at 740 per Lord Maugham was approved; see also at 496 and at 724 per Lord Thankerton. In 1926 a convention was signed between over twenty states, including the United Kingdom (International Convention for the Unification of certain Rules concerning the Immunity of State-owned Ships (Brussels, 10th April 1926; Misc. 2 (1938); Cmd. 5672)), which subjected vessels engaged in trade owned or operated by foreign states to the local jurisdiction as if they were private persons. At the date (1st June 1976) at which this volume states the law, the convention had not been ratified by the United Kingdom.

**1554. Limitation on state immunity.** There is no absolute rule that a foreign sovereign or state cannot be impleaded in the English courts in any circumstances[1]. It is not entirely clear, however, in what cases the plea of immunity is not available[2]. In some cases, when engaged in administering a trust fund, the Court of Chancery has made a sovereign or state a formal party to proceedings so as to afford him or it an opportunity to defend himself or itself[3]. An order for winding up a company may be made even though a state may have an interest in the surplus assets[4]. It may be that a court might entertain an action against a foreign sovereign in respect of private property owned by him in England in his private capacity[5].

1 *Sultan of Johore v Abubakar Tunku Aris Bendahar* [1952] AC 318 at 343, [1952] 1 All ER 1261 at 1268, 7 BILC 667, PC.

2 For possible exceptions, see *Thai-Europe Tapioca Services Ltd v Government of Pakistan* [1975] 3 All ER 961 at 964, [1976] 1 WLR 1485 at 1492, CA, per Lord Denning MR. However, with respect to his suggestion that no immunity exists in respect of certain commercial transactions, see para. 1553, ante.

3 See *Duke of Brunswick v King of Hanover* (1844) 6 Beav 1 at 30; affd. (1848) 2 HL Cas 1, 3 BILC 138; *Larivière v Morgan* (1872) 7 Ch App 550, 3 BILC 497; revsd. sub nom. *Morgan v Larivière* (1875) LR 7 HL 423, 3 BILC 504, on the ground that no trust, in fact, existed. An interim injunction may be issued against a bank to restrain it from parting with funds deposited by a foreign ambassador on behalf of his government: *Gladstone v Musurus Bey* (1862) 1 Hem & M 495, 3 BILC 447; for further proceedings, see *Gladstone v Ottoman Bank* (1863) 1 Hem & M 505, 3 BILC 482. It seems to be envisaged in these cases that the foreign sovereign or state might be made liable if he or it were a trustee: see, however, *Rahimtoola v Nizam of Hyderabad* [1958] AC 379, [1957] 3 All ER 441, 3 BILC 844, HL.

4 *Re Russian Bank for Foreign Trade* [1933] Ch 745, 6 BILC 788.

5 See *The Charkieh* (1873) LR 4 A & E 59 at 97, 3 BILC 847, obiter per Sir Robert Phillimore. The question was fully argued, but was left undecided, in *Sultan of Johore v Abubakar Tunku Aris Bendahar* [1952] AC 318, [1952] 1 All ER 1261, 3 BILC 667, PC.

**1555. Waiver of immunity.** A foreign sovereign state may waive its immunity and submit to the jurisdiction of the English courts[1]. This may be done, for example, by entering an unconditional appearance to the action begun against it, with full knowledge of its right to immunity and with proper authority from the competent organs of the state[2]. To be effective, waiver must take place at the time at which the court is asked to exercise jurisdiction; it cannot be inferred from a previous contract to submit to the court's jurisdiction[3], or from an agreement to submit to arbitration[4], nor from an application to set aside an arbitration award[5]. Costs awarded cannot be recovered by execution[6], and even if the state has submitted to the jurisdiction it does not thereby waive

the right to remove its property from the jurisdiction[7]. Submission to the jurisdiction for the purpose of determining liability does not constitute submission for the purpose of execution[8]. By suing, a foreign state submits to the jurisdiction for the purpose of an appeal against a decision in its favour[9].

1 *Duke of Brunswick v King of Hanover* (1844) 6 Beav 1; affd. (1848) 2 HL Cas 1, 3 BILC 138; *Strousberg v Republic of Costa Rica* (1880) 44 LT 199 at 201, 3 BILC 527, CA; *Sultan of Johore v Abubaker Tunku Aris Bendahar* [1952] AC 318, [1952] 1 All ER 1261, 3 BILC 667, PC. Immunity from the jurisdiction does not connote immunity from liability: *Dickinson v Del Solar* [1930] 1 KB 376, 6 BILC 142, a case concerning the immunity of a diplomatic agent; see para. 1566, post.

2 An unauthorised appearance entered by an agent is not sufficient: *The Jassy* [1906] P 270, 3 BILC 337; see also *Re Republic of Bolivia Exploration Syndicate Ltd* [1914] 1 Ch 139, 6 BILC 39; *Baccus SRL v Servicio Nacional Del Trigo* [1957] 1 QB 438, [1956] 3 All ER 715, 7 BILC 700, CA (in both of which cases immunity was successfully claimed after an unconditional appearance).

3 *Kahan v Pakistan Federation* (1951) 2 KB 1003, 7 BILC 689, CA; *Baccus SRL v Servicio Nacional Del Trigo* [1957] 1 QB 438, [1956] 3 All ER 715, 7 BILC 700, CA.

4 *Duff Development Co Ltd v Kelantan Government* [1924] AC 797, 3 BILC 216, HL; *Compania Mercantil Argentina v United States Shipping Board* (1924) 93 LJKB 816, 3 BILC 235, CA.

5 *Duff Development Co Ltd v Kelantan Government* [1924] AC 797, 3 BILC 216, HL. It seems that waiver cannot take place after judgment has been pronounced, for a court cannot be retrospectively given jurisdiction which it did not possess: *R v Madan* [1961] 2 QB 1, [1961] 1 All ER 588, 8 BILC 811, CCA (a case concerning a criminal prosecution of a diplomatic agent: see para. 1566, post).

6 *Duff Development Co Ltd v Kelantan Government* [1923] 1 Ch 385, 3 BILC 197, CA; on appeal sub nom. *Kelantan Government v Duff Development Co Ltd* [1923] AC 395, HL. If the foreign state appeals it may be ordered to give security for the costs of the appeal: see *Duff Development Co Ltd v Kelantan Government* (1925) 41 TLR 375.

7 *Vavasseur v Krupp* (1878) 9 ChD 351, 3 BILC 521, CA.

8 The point is not, however, finally settled: *Re Suarez, Suarez v Suarez* [1917] 2 Ch 131, 6 BILC 59; *Duff Development Co Ltd v Kelantan Government* [1923] 1 Ch 385, 3 BILC 197, CA; the House of Lords, however, reserved the point [1924] AC 797 at 810, per Viscount Cave, at 820 per Viscount Finlay, and at 830 per Lord Sumner, 3 BILC 216, HL.

9 *Sultan of Johore v Abubaker Tunka Aris Bendahar* [1952] AC 318, [1952] 1 All ER 1261, 7 BILC 667, PC.

**1556. Counterclaim against foreign state.** Where a foreign state begins an action in an English court, it thereby impliedly waives its immunity from the jurisdiction to the extent that the defendant may plead against it a counterclaim in the nature of a set-off[1]. This is only true if the counterclaim is connected with a transaction out of which the state's original cause of action arose, and not otherwise[2].

1 As to counterclaim and set-off, see SET-OFF.

2 *South African Republic v La Compagnie Franco-Belge du Chemin de Fer du Nord* [1897] 2 Ch 487, 3 BILC 531, CA; *Strousberg v Republic of Costa Rica* (1880) 44 LT 199, 3 BILC 527, CA; *Prioleau v United States of America and Johnson* (1866) LR 2 Eq 659, 1 BILC 134; *Rothschild v Queen of Portugal* (1839) 3 Y & C Ex 594, 1 BILC 128; *Hettihewage Siman Appu v Queen's Advocate* (1884) 9 App Cas 571, PC; *High Comr for India v Ghosh* [1960] 1 QB 134, [1959] 3 All ER 659, 7 BILC 683, CA.

**1557. Termination of immunity.** The immunity of a foreign sovereign or head of state ceases when he ceases to hold that office[1].

1 This may occur by death, deposition, abdication or, in the case of the president of a republic or the head of an elective monarchy, by expiration of his term of office: *Munden v Duke of Brunswick* (1847) 10 QB 656, 3 BILC 148, where a plea that the defendant was a sovereign at the time the cause of action arose was rejected, since it did not aver that he was a sovereign at the time the action was brought. That an ex-president of a state is not entitled to immunity was assumed

# EXHIBIT 14

# EXHIBIT 3

DocuSign Envelope ID: 63346EC9-9785-4A65-BD58-889375933647

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| Amaplat Mauritius Ltd., *et al*, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | **Civil Case No. 1:22-cv-00058-CRC** |
| ) | |
| Zimbabwe Mining Development ) | |
| Corporation, *et al*, ) | |
| ) | |
|     Defendants. ) | |
| _____ ) | |

## EXPERT OPINION OF LIKANDO KALALUKA, SC

1.      My name is Likando Kalaluka, SC. I am the Managing Partner of Likando Kalaluka & Co., which is located in Lusaka, Zambia.

2.      I am qualified as an expert to render an opinion in this case as to Defendants' immunity from jurisdiction before Zambian courts and service on Defendants of a Zambian court order. I have been an attorney practicing in Zambia since 2004. After working in private practice, I was unanimously ratified as the Attorney General of the Republic of Zambia and served in this role from 2015 to 2021. As the Attorney General of Zambia, I was the leader of the Zambian Bar and received the title State Counsel, abbreviated "SC," which is equivalent to Queen's Counsel in the United Kingdom.

3.      During my public service, I was the chief legal advisor to the Government and *ex officio* member of Cabinet. I was responsible for the approval of all contracts and agreements the Government (and all quasi-government bodies) intended to enter into. I oversaw and supervised the following departments: Legislative Drafting and Law Revision, Civil Litigation and Debt Collection, and International Law and Agreements.

1

DocuSign Envelope ID: 63346FG9-9785-4A65-BD58-8893F5933647

4.      I have represented the Republic of Zambia in civil, commercial, and constitutional proceedings in the superior courts in Zambia and in domestic and international arbitrations. In addition to my court practice, I have first-hand experience in high-value, complex arbitrations under the rules of major, international arbitration institutions in cases relating to energy, mining, infrastructure development, health, human rights, public procurement and intellectual property.

5.      After public service, I returned to the private sector with Likando Kalaluka & Co., where we represent clients in a variety of sectors and legal matters. I am also a Member of Arbitra International, a leading provider of alternative dispute resolution services. Clients seek out Arbitra International to find qualified neutrals, who include distinguished names from around the world. Through my firm and Arbitra International, I continue to practice in international dispute resolution.

6.      I have a Bachelor of Laws degree from the University of Zambia and an LL.M. in International and Comparative Disability Law & Practice from the National University of Ireland Galway School of Law.

7.      I am admitted to practice before the courts of the Republic of Zambia. For a full list of my professional experience, my resume is attached to this Opinion as Exhibit A.

8.      In this arbitration, I was retained by GST LLP on behalf of the Republic of Zimbabwe ("Zimbabwe") and the Chief Mining Commissioner, Ministry of Mines of Zimbabwe (the "Commissioner"), to render an opinion on the immunity from jurisdiction of Defendants in Zambian courts.

9.      I am completely independent and do not personally know any of the parties involved in this arbitration. Defendants' counsel contacted me directly to retain me as an expert.

DocuSign Envelope ID: 63346FC9-9785-4A65-BD58-889975933647

10. I have charged a flat rate of $5,000 for this Expert Opinion. My hourly rate is otherwise $400.00.

11. In rendering my opinion, I reviewed the following documents:

    a. Certain documents filed before the High Court for Zambia (Ex. B).

    b. The cases and statutes I cite herein.

    c. The Complaint filed in this matter (the "Complaint").

    d. The arbitration award and the MOUs referenced herein.

12. In the last 10 years, I have authored the articles that appear in my CV. In the last four years, I have not testified as an expert at trial or deposition.

## CONCLUSIONS

13. Based on the absence of any case made by Plaintiffs before the Zambian courts, I cannot conclude that there was a finding that Defendants were not immune from jurisdiction in Zambia. Were Plaintiffs to have made a case for a waiver of sovereign immunity, it is my opinion that the Commissioner would be immune because there is no evidence that he engaged in any private act as it related to the MOUs.

14. In the Complaint, Plaintiffs have not made a case that Defendants waived their immunity in Zambia, so I can take no position at this time on Plaintiffs' arguments. I reserve the right to do so.

15. Upon being retained herein, I caused to be conducted a search of proceedings at the High Court for Zambia Commercial Registry, under cause number 2019/HPC/ARB/0337. Based on that search, I found no evidence that Plaintiffs sought leave to serve ZMDC or the Commissioner outside of Zambia, which is a mandatory requirement to effect service before a Zambian court, and I found no evidence of any service on ZMDC or the Commissioner.

DocuSign Envelope ID: 63346EG9-9785-4A65-BD58-889275933647

## RELEVANT FACTS

16.     In an arbitration award dated January 12, 2015 (the "Award"), an arbitration tribunal found the Zimbabwe Mining Development Corporation (the "ZMDC") and the Commissioner liable for breaches of two Memorandum of Understanding (the "MOUs"). The Commissioner did not sign either MOU. Zimbabwe did not sign either MOU, and it was never named as a party in the arbitration.

17.     Over four years later, on July 19, 2019, Plaintiffs presented an *ex parte* application for an order recognizing the Award as a judgment of Zambia. The application included the affidavit of Ian Small-Smith.

18.     On August 9, 2019, the Zambian court granted Plaintiffs leave to enforce the Award as a judgment of the court. It also granted ZMDC and the Commissioner 30 days to apply to set aside the order, and the court ordered Plaintiffs to serve ZMDC and the Commissioner.

19.     Plaintiffs never disclosed to the Zambian courts that ZMDC and the Commissioner have presumptive immunity from jurisdiction.

20.     In my review of the documents provided to me, I have not seen any evidence that Plaintiffs served the order on ZMDC or the Commissioner. I have checked the records in the Zambian court, specifically Case Number 2019/HPC/ARB/No. 0337, and I have not found any evidence that service was performed.

## ANALYSIS

### Foreign Sovereign Immunity in Zambia

21.     There are few cases regarding foreign sovereign immunity in Zambia, and there is no statute, such as the State Immunity Act in the United Kingdom or the Foreign Sovereign Immunities Act in the United States, that defines the immunity of a foreign state and its

DocuSign Envelope ID: 63346FC9-9785-4A65-BD58-889875933647

instrumentalities. Rather, there is the Diplomatic Privileges and Immunities Act (the "DPIA"), which largely incorporates the Vienna Convention on Diplomatic Relations (18 April 1961). The DPIA applies to embassies, consulates, organizations created by treaty and designated by the President of Zambia as entitled to the immunities of embassies and consulates, and representatives, officers, and employees of the foregoing.

22.     In my review of the facts, I have not seen any indication that the DPIA applies to ZMDC or the Commissioner. Because the Zambian court did not issue any order as to the Republic of Zimbabwe, I cannot take any position as to the DPIA's application as to the Republic of Zimbabwe, except to confirm that the DPIA would generally apply to many functions of the Republic of Zimbabwe as carried out within the territory of the Republic of Zambia.

23.     In cases where the DPIA does not apply, Zambian courts look to principles of international law, as expressed by courts in other common law jurisdictions. I have been able to locate only one precedential decision on this point: *Ventriglia v. Eastern & Southern African Trade Develop. Bank*, S.C.Z. Judgment No. 13 of 2010. In *Ventriglia*, the Supreme Court of Zambia found persuasive the decision of Lord Denning in *Trendtex Trading v. Central Bank of Nigeria*, rendered by the U.K. House of Lords in 1977, and *I Congreso del Partido*, rendered by the U.K. House of Lords in 1983. Both cases dealt with matters arising before the State Immunity Act of 1978.

24.     *Ventriglia* adopted the restrictive view of foreign sovereign immunity, stated as follows:

> "*Whether an act of a sovereign State attracted sovereign immunity depend on whether the act in question was a private act (jure gestionis), or a sovereign or*

> *public act (jure imperii) and the fact that the act was done for governmental or*
>
> *political reasons would not convert what would otherwise be an act of jure*
>
> *gestiouis, or an act of private law into one done jure imperii."*

25.     The task is thus to look at the act of the foreign sovereign or its instrumentalities and then arrive at a conclusion based on its inherent nature.

### There Was No Waiver of Sovereign Immunity by the Commissioner

26.     As I noted above, Plaintiffs did not make any case of a waiver of sovereign immunity before the Zambian courts, and there is no order finding that either ZMDC or the Commissioner is no longer immune. But in any event, it is my opinion that the Zambian court would not have found a waiver by the Commissioner, even if Plaintiffs had made a case on this point. The Commissioner was not a party to the MOUs, and there is no finding in the Award that the Commissioner cancelled the MOUs. In other words, the Commissioner did not engage in any private act as it related to Plaintiffs, and without such an act, he did not waive his immunity from suit.

### There Is No Evidence of Proper Service

27.     Upon being retained herein, I caused to be conducted a search of proceedings in the High Court for Zambia Commercial Registry holden at Lusaka, under Cause Number 2019/HPC/ARB/No. 0337. The searched reviewed that the Plaintiffs did not seek leave of the court to serve court documents out of jurisdiction.

28.     According to Rule 36 of the Arbitration (Court Proceedings) Rules, 2001, provides:

> *"(1) Service out of the jurisdiction of any originating summons or an order made*
>
> *on such summons, may be effected with the leave of the Court if the arbitration to*

DocuSign Envelope ID: 63346EC9-9785-4A65-BD58-8889755933647

*which the summons or order relate is governed by the law of Zambia or has been,*

*is being, or is to be held in Zambia.*

*(2)* <u>*Service out of jurisdiction of an originating summons for leave to register and*</u>

<u>*enforce an award may be effected with the leave of the court whether or not the*</u>

<u>*arbitration is governed by the law of Zambia.*</u>

*(3) An application for the grant of leave under this Rule shall be supported by an*

*affidavit stating the grounds on which the application is made, and stating in what*

*place or country the person to be served is, or probably maybe found; and* <u>*leave*</u>

<u>*shall not be granted unless the Court considers that the case is a proper one for*</u>

<u>*service out of the jurisdiction under this rule.*</u>*"* (emphasis mine)

29.    The failure to obtain leave of the court before service of court documents out of

jurisdiction renders any subsequent service a nullity.

30.    In addition, I did not find any evidence that Plaintiffs attempted to serve either

ZMDC or the Commissioner.

DocuSigned by:

D58B147172CB46E...

Likando Kalaluka, SC