## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| Amaplat Mauritius Ltd., *et al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:22-cv-00058-CRC |
| | ) | |
| Zimbabwe Mining Development Corporation, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS

Defendants, the Chief Mining Commissioner, Ministry of Mines of Zimbabwe (the "Commissioner"), and the Republic of Zimbabwe ("Zimbabwe"), by and through their undersigned counsel, hereby file their Reply to Plaintiffs' Opposition to the Motion to Dismiss the Complaint (the "Reply") filed by Amaplat Mauritius Ltd. ("Amaplat") and Amari Nickel Holdings Zimbabwe Ltd. ("Amari"), and in support thereof, state as follows:

**INTRODUCTION**

In support of its threadbare Complaint, Plaintiffs have offered a series of new arguments and allegations, none of which can establish jurisdiction or plead a claim for relief for the following reasons:

- The Commissioner is not a foreign state, and Claimants cannot turn him into an entity in order to escape the absence of a waiver of immunity for claims against government officials.

- Defendants did not implicitly waive their immunity because they never signed an agreement to arbitrate. The New York Convention is not a standalone waiver of immunity.

- Plaintiffs have not shown they can toggle between domesticating a foreign judgment and enforcing an international arbitration award based on their arguments.

- Plaintiffs have not shown that a casual reference to *alter ego* is enough to solve all of their problems, including service, personal jurisdiction, and failure to state a claim.

- There is nothing to support a finding of *alter ego* in the Complaint, and the later-filed "facts" are untrue.

- There is no valid judgment to enforce since Plaintiffs still cannot show the purported judgment was properly served or obtained from a competent court.

For these and other reasons, the Commissioner and Zimbabwe ask that the Court grant the Motion to Dismiss.

1

## RELEVANT BACKGROUND

Plaintiffs allege that "Judgment Defendants [] are instrumentalities of and *alter egos* of the Republic of Zimbabwe." ECF 1, ¶ 1. They do not allege meaningful facts in support of this conclusory statement. ZMDC is a statutory corporation, created by the Zimbabwe Mining Development Corporation Act (the "ZMDC Act"). **Exhibit 1**, Declaration of Tinashe C. Chiparo ("Chiparo Decl."), ¶ 6. The employees of ZMDC are not civil servants. *Id*. at ¶10. ZMDC pays its employees from its own funds, not from the funds of any ministry. *Id*. at ¶¶ 4, 17. ZMDC has a board of directors. *Id*. at ¶ 6. The members of the board of directors are not government officials, except for one person whose vote carries the same weight as any individual director. *Id*. at ¶ 7. Any remuneration paid to the board of directors is from the funds of ZMDC. *Id*. The Act provides that ZMDC is capable of suing and being sued in its corporate name and can perform all such as acts as a corporation. *Id*. at ¶10. ZMDC can hire and fire people as it deems fit. *Id*. at ¶ 11. The board of directors of ZMDC hires executive officers, who then run the day-to-day operations of the company. *Id*. at ¶ 18. The executive officers are employees of ZMDC and not government officials.

ZMDC has accounts in its own name. *Id*. at ¶ 12. ZMDC competes in the mining sector against other private companies. *Id*. at ¶ 13. ZMDC does not own all mineral rights by law. *Id*. at ¶ 14. ZMDC prepares its own budget and submits it to the board of directors for approval. *Id*. at ¶ 17.

ZMDC and the Commissioner were the two named respondents in the arbitration started by Amaplat and Amari. ECF 1-1 at 3. There was no request for damages from the Commissioner, and the Award did not find the Commissioner responsible for any damages. ECF 28-1 at 19-21. As a part of the two lawsuits filed by ZMDC in Zambia, the Commissioner was a respondent, not an applicant. ECF 28-1 at 26. ZMDC did not have authority to retain any firm on behalf of the Commissioner, and the Commissioner did not enter an appearance as a party. Chiparo Decl., ¶¶ 38-39.

The Commissioner was not aware of the proceedings to register the *Ex Parte* Order for Leave to Register the Final Arbitration Award (the "*Ex Parte* Order") until shortly after the service of this lawsuit. The Commissioner did not retain counsel to represent him in defending the *Ex Parte* Order, and he did not authorize anyone to accept service on his behalf. Zimbabwe is not a party to the *Ex Parte* Order.

ARGUMENT

I.    **This Court does not have subject matter jurisdiction over the Commissioner or Zimbabwe**

    A.    <u>**This Court cannot assume subject matter jurisdiction over the Commissioner under 28 U.S.C. § 1330(a) because the Commissioner is not an entity**</u>

Plaintiffs concede that the FSIA is the only basis for subject matter jurisdiction and that it only applies to foreign states. *See* ECF 1, ¶ 4; ECF 28 at 32-33. They also do not dispute that the term "foreign state" refers to <u>entities</u> that meet either of the characteristics specified under section 1603(b). *See* ECF 23 at 9. The term "foreign state" does not include a foreign official "sued for conduct undertaken in his [or her] official capacity." *See Samantar v. Yousuf*, 560 U.S. 305, 314-323 (2010).

To convert a foreign official into the State, Plaintiffs make two main arguments, both for the first time in their Opposition. First, they argue that the Commissioner is a foreign state because he is a juridical person that is "a political <u>organ</u>." *See* ECF 24 at 33 (emphasis added). This is contrary to their Complaint, which alleged that the Commissioner is "an agency, or instrumentality of, and an *alter ego* of" Zimbabwe. *See* ECF 1, ¶¶ 6. Second, Plaintiffs claim that they are "seeking damages payable out of the public fisc, not out of the incumbent's pocket." ECF 28 at 33. Considering that these claims were not plead in the Complaint and given that a plaintiff cannot amend a complaint "by the briefs in opposition to a motion to dismiss," the Court should disregard these new claims.

3

*See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

In any event, neither of the arguments can withstand scrutiny. As to the first claim, Plaintiffs allege that the Commissioner is a "juridical person—a government office or a governmental corporation sole" that was created by the 1961 Mines and Mineral Act of Zimbabwe (the "MAA"), *See* ECF 28 at 33. The MAA says the opposite, describing the Commissioner as an "officer []," not as an "office," as alleged by Plaintiffs. *See* **Exhibit 4**, Mines and Minerals Act 1961, Section 343, Section 344.

Lacking a statutory basis, Plaintiffs cite to irrelevant Zimbabwean court proceedings. *See* ECF 28 at 33. Plaintiffs argue that *African Consolidated Resources Plc v. Minister of Mines and Mining Development* and *Marasha v. Shirihuru* prove that the Commissioner is a juridical person because previous commissioners were party to these cases. *Id*. While a commissioner was a respondent in *Marasha*, this does not prove anything—a natural person can also sue and be sued. Like the MAA, these cases weaken Plaintiffs' claim as they further affirm that the Commissioner is a natural person. In *African Consolidated Resources*, the court, like the Tribunal, identified the Commissioner not as an entity, but as an individual. *See African Consolidated Resources*, No. HC 1345/10, [2010] ZWHHC 57, p. 5; ECF 1-1, ¶ 2.

Next, Plaintiffs rely on the "core functions" approach to convert the Commissioner into a political entity. Citing to *Transaero*, Plaintiffs argue that the Commissioner is a "political organ like a ministry" because his duties are "governmental, not commercial." *See* ECF 28 at 25. In *Transaero*, the issue before the court was whether the defendant was a foreign state or an agency or instrumentality of the foreign state for the purpose of section 1608. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994). The court of appeals clarified that the "core

functions" test does not apply "where the issue is not service of process under the FSIA," depriving the test of any application here. *See TMR Energy Ltd. v. State Prop. Fund. of Ukraine*, 411 F.3d 296, 301 (D.C. Cir. 2005).

Their second claim similarly has no merit. Plaintiffs insist that they not are not suing the Commissioner in his personal capacity, but this is beside the point. *See* ECF 28 at 33. As noted by the Supreme Court, it was never the intention of Congress to extend the FSIA to a foreign official for acts done in either his personal or official capacity. *Samantar*, 560 U.S. at 323-324. Under all of Plaintiffs' theories, new and old, there is no waiver of sovereign immunity.

**B.     This Court cannot assume subject matter jurisdiction under the waiver exception in 28 U.S.C. §1605(a)(1)**

Plaintiffs do not dispute that an implied waiver exists where "there has been an intentional and knowing relinquishment of the legal right" by the sovereign. *See* ECF 23 at 9. Instead, they submit that these conditions are met because Zimbabwe, Zambia, and the United States are signatories of the New York Convention. *See* ECF 28 at 22. Nothing in the text of the New York Convention supports this argument, so Plaintiffs focus instead on the legislative history of the FSIA, contending that an implied waiver exists "where the foreign state agreed to arbitration in a foreign country." *See id*. at 21.

Both the D.C. Circuit and the Second Circuit have rejected such an expansive interpretation. *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) (noting that a literal application of the language of the legislative history is incompatible with the FSIA). The circuit courts advised against such expansive interpretation because it "would vastly increase the jurisdiction of the federal courts over matters involving sensitive foreign relations." *Id*.

The key element for the purpose of implied waiver is intent. As recently as August of this year, this Court affirmed that implied waiver can only exist where the foreign state "indicated its

amenability to suit" in the United States and the state "subjectively intended to do so." *See TIG Ins. Co. v. Republic of Argentina*, No. 18-MC-00129 (DLF), 2022 WL 3594601, at *5 (D.D.C. Aug. 23, 2022); *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 201 (2d Cir. 1999).

Here, Plaintiffs have not alleged that Zimbabwe or the Commissioner had subjectively intended to waive their sovereign immunity in the United States. *See* ECF 1, ¶ 8; ECF 28 at 21-25. This alone should be enough to dismiss their claim. In their later papers, Plaintiffs have not added much more. Plaintiffs contend that Zimbabwe, a signatory of the New York Convention, and the Commissioner waived their immunity in the United States by "<u>agreeing to arbitrate</u>" in a "New York Convention state," *i.e.*, Zambia. *See* ECF 28 at 22. The argument fails for two main reasons.

First, neither the Commissioner nor Zimbabwe agreed to arbitrate. Plaintiffs admit that the Commissioner was not a party to the MOUs, which should end the inquiry, instead arguing that the Commissioner waived his sovereign immunity by participating in the arbitration and signing the Terms of Reference. *See* ECF 28 at 32, 34. Both arguments are unsound.

As noted in the Complaint, the MOUs provided for arbitration of disputes arising out of differences between Plaintiffs and ZMDC only "in relation to the MOUs." ECF 1, ¶ 24. The parties never argued that the Commissioner was a party to the MOUs, and the issues submitted before the Tribunal were whether ZMDC "was entitled to terminate the MOUs" and whether ZMDC and the Commissioner were estopped from challenging the validity of the MOUs. *See* ECF 28-1, ¶ 6.2 (e), (h), (d). Both issues sought a declaration as to the Commissioner's regulatory power outside of the MOUs. For this reason, the Tribunal found only ZMDC, not the Commissioner, liable "for breach of the MOUs." *See* ECF 1-1, ¶ 182.

The Terms of Reference add nothing. This is a procedural document, and there is nothing in the ICC Rules that elevates this document to an agreement to arbitrate. It is, in fact, separate, and

any contrary conclusion leads to dubious results, such as making the arbitrators party to the agreement to arbitrate, binding parties who sign only to contest jurisdiction, or releasing a party from the agreement to arbitrate due to the lack of a signature on the Terms of Reference.

Second, it is immaterial that Zimbabwe, Zambia, and the United States are signatories of the New York Convention. As this Court has found, there must be an agreement to arbitrate in addition to the signing the Convention—mere ratification of the Convention, as Plaintiffs allege, is insufficient. *Process & Indus. Developments Ltd. v. Fed. Republic of Nigeria*, 18-CV-594 (CRC), 2020 WL 7122896 (D.D.C. Dec. 4, 2020), *aff'd on other grounds,* 27 F.4th 771 (D.C. Cir. 2022). The D.C. Circuit has also expressed caution in following the cases cited by Plaintiffs, recently choosing not to find an implicit waiver under 1605(a)(1) based on the Convention and an agreement to arbitrate. *Process & Indus. Developments Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 775 FN 3 (D.C. Cir. 2022). And the cases cited by Plaintiffs, such as, *Creighton Ltd. v. Gov't of State of Qatar* and *Tatneft v. Ukraine* (ECF 28 at 22-23) are inapplicable. Plaintiffs are seeking enforcement of a foreign judgment, not an arbitration award. *See also Commissions Imp. Exp. S.A. v. Republic of the Congo,* 757 F.3d 321, 330 (D.C. Cir. 2014) ("a foreign court judgment confirming an arbitral award is not governed by the New York Convention").

### C.   This Court cannot exercise subject matter jurisdiction under 28 U.S.C. §1605(a)(6) because Plaintiffs are not seeking enforcement of an arbitration agreement or an arbitration award

Plaintiffs argue that the arbitration exception under section 1605(a)(6) "covers not just the award itself but also the recognition of the foreign judgment on an award." *See* ECF 28 at 20. There is no support for this argument. Textually, Section 1605(a)(6) makes no mention of a foreign judgment, limiting immunity to an "action [that] is brought, <u>either</u> to enforce an agreement made by the foreign state…<u>or confirm an arbitration award</u> <u>made pursuant to such an agreement to arbitrate</u>," that "is or may be governed <u>by a treaty</u>…in force for the United States calling for the recognition

and enforcement of <u>arbitral awards</u>." A court must "presume that the legislature says in a statute what it means and means in a statute what it says there." *Commissions Imp. Exp. S.A.* at 327 (internal quotation marks omitted).

Lacking authority, Plaintiffs cite to a case that made no determination on this issue: *Continental Transfer Technique Ltd. v Fed. Republic of Nigeria*. Plaintiffs claim that in *Continental Transfer*, the court found that it had jurisdiction under section 1605(a)(6) to enforce an English court judgment enforcing an arbitral award. *See* ECF 28 at 20. The Court made no such finding because Nigeria never contested the jurisdiction of the court. *See Continental Transfer Technique Ltd.,* 697 F. Supp. 2d at 62; *Creighton Ltd.*, 181 F. 3d at 125. Nigeria instead proceeded to the merits and argued that the court should not recognize the award because "(1) the order is not a judgment; (2) the order was obtained by fraud; and (3) Nigeria has applied to set aside the order." *Ibid.* This is plainly insufficient to overcome the statutory text.

The more appropriate analogy is in *Hirsh*, where the court held that "section 1605(a)(6) is <u>facially</u> inapplicable to" non-arbitration agreement or non-arbitration award enforcement actions. *See Hirsh v. State of Israel*, 962 F. Supp. 377, 384 (S.D.N.Y.), *aff'd*, 133 F.3d 907 (2d Cir 1997) (emphasis added). Plaintiffs attempt to distinguish *Hirsh* from the present case by pointing to immaterial factual differences. Indeed, *Hirsh* did not involve a foreign judgment action, but the court refused to apply the arbitration exception to a reparation payment action based on reasoning that also applies here—the plaintiffs' action was not an action to enforce either an arbitration agreement or an arbitration award. *See id*.

II.    **Plaintiffs have failed to plead personal jurisdiction**

A.   <u>**The Court cannot exercise personal jurisdiction under the FSIA**</u>

Plaintiffs agree that a court lacks personal jurisdiction over a foreign state if none of the FSIA immunity exceptions apply. *See* ECF 28 at 35. Here, none of the immunity exceptions apply so this Court lacks personal jurisdiction over Zimbabwe. *See* Section I(B) and (C).

B.   <u>**The Court cannot exercise personal jurisdiction over the Commissioner because he has no contact with the forum state and was not properly served**</u>

A court can only exercise personal jurisdiction over a foreign resident or an agency or instrumentality of a foreign state if the defendant has minimum contacts with the forum state, and if the defendant is served pursuant to Fed. Civ. P. Rule 4(f). *See* ECF 23 at 14. Plaintiffs do not dispute this. *See* ECF 28 at 35. They also do not deny that the Commissioner has no contacts with the United States. *See* ECF 23 at 13-14. Instead, they argue that the Due Process Clause protection does not extend to the Commissioner because the Commissioner, contrary to their Complaint, is a foreign state. *See* ECF 28 at 33, 35; ECF 1 at ¶ 6. But the evidence they presented to this Court as of late does not support this improperly raised new claim. As explained above, the MAA and the Zimbabwean court proceedings prove that the Commissioner is not a state entity but an officer in the Ministry of Mines. *See* Section I(A).

This Court also lacks personal jurisdiction over the Commissioner as Plaintiffs only "served the Ministry of Mines," and not the Commissioner. *See* ECF 23 at 14. Plaintiffs offer nothing to dispute this argument.

III.   **Plaintiffs have failed to state a claim upon which relief can be granted**

This Court has repeatedly maintained that "a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss." *See Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 121 (D.D.C. 2018). As other courts have confirmed, allowing a party to amend through

subsequent arguments "would mean that a party could unilaterally amend a complaint at will." *See id.* (citing to 8th and 7th Circuit decisions). Throughout their response, Plaintiffs have attempted to cure a number of deficiencies in their Complaint after the fact. For well-established reasons, this Court should reject Plaintiffs' attempts as further elaborated below.

A.   **The Complaint is devoid of facts sufficient to establish an *alter ego* relationship involving Zimbabwe**

It has been clearly established by this Court that pursuant to Federal Rule of Evidence 201 judicial notice is strictly limited to findings of fact, and that "[i]t is clearly not appropriate for the Court to use the doctrine of judicial notice to make conclusions of law" based on "the conclusions of law" made in another case. *See Weinstein v. Islamic Republic of Iran,* 175 F.Supp.2d 13, 17 (D.D.C. 2001). A determination of whether an entity is an *alter ego* of another is a conclusion of law. *See, e.g., Sheet Metal Workers Int'l Ass'n Local Union No. 67 v. Todd-Form Mgmt. Co.,* No. SA-03-CA-290-XR, 2005 WL 5977617, * 2 (W.D. Tex. July 12, 2005). Even in the case of factual findings, this court may only take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably be questioned." *See Weinstein,* 175 F. Supp. 2d at 17. Any findings of fact by <u>another</u> court relevant to a determination of *alter ego* are generally not capable of accurate and ready determination and therefore not subject to judicial notice. *See e.g., Ferguson v. Extraco Mortg. Co*., 264 F. App'x 351, 352 (5th Cir. 2007).

Plaintiffs do little to defend the defects of their allegations concerning an alleged *alter ego* relationship between Zimbabwe and the other two defendants. Rather, Plaintiffs for the first time are asserting that they have established the existence of an *alter ego* relationship "given that the Republic had already been adjudicated to be ZMDC's *alter ego* in a court of competent jurisdiction and is thus collaterally estopped." ECF 28 at 36. In their view, "the complaint, together with the judicially-noticeable judgment of the *Funnekotter* court, establishes that the Republic is ZMDC's *alter ego* for

10

jurisdictional purposes" and establishes that the Plaintiffs have pleaded their *alter ego* claims. ECF 28 at 36. These arguments are legally unsound.

First, Plaintiffs cannot rely on judicial notice of conclusions of law or fact findings in another case in order to supplement the allegations of their Complaint. The legal conclusion that ZMDC was determined to be an *alter ego* of Zimbabwe or any factual findings of the court in *Funnekotter* to reach that conclusion fall outside the scope of judicially noticeable facts.

Second, Plaintiffs cannot amend their Complaint with new facts introduced in response to Defendants' Motion. *See* ECF 28 at 23. This Court should therefore disregard any reference to Exh. 1 or 2 of the Davidson Declaration in determining whether the Complaint has properly pled the issue. This leaves the Court with only the bare allegations contained in the Complaint, which Plaintiffs appear to concede are alone insufficient to state a claim. ECF 28 at 36-37 (arguing that leave to amend on this issue is "plainly warranted").

### B.  The Offensive Collateral Estoppel Doctrine is inapplicable against Zimbabwe

As the D.C. Circuit has held, the doctrine of offensive collateral estoppel is "detailed, difficult, and potentially dangerous." *Weinstein*, 175 F.Supp.2d at 17. Aware of the dangers and criticisms of applying this doctrine, the Supreme Court reaffirmed that while offensive collateral estoppel may be applied against non-governmental entities, it cannot be used against the government. *See United States v. Mendoza,* 464 U.S. 154 (1984). While that case involved the U.S. government, there is no reason that the same considerations should not be applicable to foreign states. Recently, this Court has extended similar considerations to Zimbabwe. *See von Pezold v. Republic of Zimbabwe,* No. 21-cv-02004 (APM), 2022 WL 4078896, *2 (Sept. 6, 2022) (recognizing that the use of equitable estoppel against a foreign government should be used sparingly by reference to *ATC Petroleum, Inc. v. Sanders,* 860 F.2d 1104, 1111 (D.C. Cir. 1988) which involved the U.S.

government). The extension of similar protections as those enjoyed by the United States is also reflected in the FSIA. *See* Restatement (Third) of Foreign Relations, § 459, comment a.

On this basis alone, this Court should dismiss any attempts by Plaintiffs to apply offensive collateral estoppel against Zimbabwe. In any event, other factors detailed below caution against its application.

    1.  <u>Plaintiffs cannot meet the elements for the application of the Offensive Collateral Estoppel Doctrine</u>

As Plaintiffs identify, offensive nonmutual collateral estoppel requires that "(1) the issue was actually litigated, that is, contested by the parties and submitted for determination by the court; (2) the issue was actually and necessarily determined by a court of competent jurisdiction in the first trial; and (3) preclusion in the second action would not work an unfairness." ECF No. 28 at 21. These elements are not met here.

First, the issue was not "actually litigated" because the decision was by default, and as this Court reasoned, collateral estoppel is inapplicable in cases of default. *Weinstein,* 175 F.Supp.2d at 19. Citing the Restatement (Second) of Judgments, this Court recognized that "there are many reasons" why a party may choose not to litigate an issue. *Id.* This Court also relied on Wright, Miller, and Cooper's Federal Practice and Procedure text, which concludes that "[o]n balance, denial of issue preclusion also seems appropriate in cases that involve a one-sided hearing after default for failure to answer." *Id.* at 20. While Zimbabwe was a named party in *Funnekotter,* it did not actually participate in the proceeding. It did not join the other defendants in the Motion to Dismiss. ***See*** **Exhibit 5**, *Funnekotter v. Agricultural Dev. Bank of Zimbabwe, et. al.,* Case No. 13-cv-1917, Motion to Dismiss, ECF 38, fn. 11 (S.D.N.Y. July 25, 2013) (noting that Zimbabwe "has never appeared in this Court"). Zimbabwe, therefore, did not litigate any *alter ego* issue. The *alter ego* finding was made largely on evidence presented by the plaintiffs in that case and on the basis of

adverse inferences made as a result of the other defendants failing to respond to discovery. *Funnekotter,* 2015 WL 9302560 at *3 (Dec. 17, 2015). Applying the offensive collateral estoppel under these circumstances would go squarely against this Court's prohibition of applying this doctrine in cases of default.

Second, the issue, in this case, is sufficiently different that it was not determined by a court in the first trial. In *Funnekotter,* the court determined if certain entities, including ZMDC, were *alter egos* of Zimbabwe such that their assets would be subject to execution for a judgment recognized against Zimbabwe. *Id.*, at 1. This was *alter ego* as a basis for "secondary liability." *See, e.g., Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela,* 333 F.Supp.3d 380, 394 (D. Del. 2018). In the instant case, the Plaintiffs are attempting to pursue an *alter ego* theory for primary liability, "in which the judgment creditor seeks to establish that the alleged *alter ego* is liable for the original judgment . . ." *Id.* Here, unlike in *Funnekotter,* Plaintiffs have to show that Zimbabwe somehow participated in the facts leading to the Award and create primary liability for Zimbabwe.

Lastly, any issues of fairness weigh in favor of Zimbabwe. Not only did it not participate in *Funnekotter,* but Zimbabwe should have the chance to present evidence pertaining to the status and relationship between ZMDC and Zimbabwe. There is also a temporal limitation of preclusion that considers the separation of time between the original proceeding and the later proceeding, taking into account changed circumstances since the original proceeding. *See* Restatement (Second) of Judgments, comment c. Moreover, application of offensive collateral estoppel would cause no significant delay in these proceedings or create an additional hardship as Plaintiffs would face little delay that they have not already embraced. Plaintiffs could have tried to add Zimbabwe as an alter ego in the arbitration or the award recognition proceedings in Zambia. Instead, they

chose to wait, now almost eight years since the Award. Their strategic decision should not be at the expense of Zimbabwe.

C.     **The improperly raised claims in the Opposition are insufficient to establish an _alter ego_ relationship**

In determining an _alter ego_ relationship, courts ask two questions: first, whether the instrumentality is the "sort of entity to which the presumption of separation applies;" and second, "whether, if it is, sufficient grounds exist to disregard [its] presumptive separateness from the Republic." _DRC, Inc. v. Republic of Honduras_, 71 F. Supp. 3d 201, 209 (D.D.C. 2014). For the reasons stated below, ZMDC is entitled to a presumption of separateness from Zimbabwe, and there is no basis for this Court to disregard such presumption.

1.     ZMDC should be regarded as separate from Zimbabwe because it has distinctive features of an independent entity

In respect to state-owned entities, some of the "characteristic features of independence" identified in _Bancec_ and recognized by this Court include the following:

> [C]reation by an enabling law that prescribes the instrumentality's powers and duties; establishment as a separate juridical entity with the capacity to hold property and to sue and be sued; management by a government-selected board; primary responsibility for its own finances; and operation as a distinct economic enterprise that often is not subject to the same administrative requirements that apply to government agencies.

_DRC, Inc._, 71 F. Supp. 3d at 209; _TIG Ins. Co. v. Republic of Argentina_, No. 18-MC-00129 (DLF), 2022 WL 1154749, at *9 (D.D.C. Apr. 18, 2022) (same).

ZMDC has all these features. ZMDC is a corporation established by the ZMDC Act to, _inter alia_, "invest in the mining industry in Zimbabwe." _See_ **Exhibit 3**, ZMDC Act, Art.3. (the "Act"), Article 3. It is "capable of suing and being sued" and is further allowed under the Act to alienate property, execute any "negotiable or transferable instruments," make or modify "contracts and enter

into suretyships or give guarantees," and "sell or lease-dwelling houses and land[.]" *Id*., Schedule, Section 22.

Like other corporations, ZMDC is responsible for its finances. Its capital consists of "the share capital of the Corporation; and any other moneys or assets that may vest in or accrue to the Corporation as capital." *See id*., Article 31. Its revenue includes any other cash that "accrues to the Corporation, whether in the course of its operations or otherwise." *See id*., Art. 32. At the end of each fiscal year, ZMDC is audited by independent auditors registered as public auditors in terms of the Public Accountants and Auditors Act. *See id.*, Art. 40(1)(2).

Finally, ZMDC is a distinct economic enterprise that is not subject to the same administrative requirements that apply to governmental agencies. ZMDC does not receive any budget from Zimbabwe and "[u]nlike government employees, ZMDC employees are not governed by the Public Service Act 1995" but through other instruments such as the Mining Industry Employment Code. *See* Chiparo Decl., ¶ 11. While the Ministry of Mines appoints the chairman and the deputy chairman of the Board, this does not change the legal independence bestowed on ZMDC through the ZMDC Act. *See DRC, Inc.*, 71 F. Supp. 3d at 212.

Plaintiffs do not dispute that ZMDC is entitled to a presumption of separateness. Relying on *Transaero*, they discuss at length how an entity will count as a foreign state if its core functions are governmental, but no such analysis is required. *See* ECF 28 at 26-27. This Court has more recently affirmed that *Bancec*, not the "core function test" in *Transaero* applies for the purpose of determining the independence of a state instrumentality. *See DRC, Inc.*, 71 F. Supp. 3d. at 214.

2.  <u>Plaintiffs have presented no basis for this Court to disregard ZMDC's presumption of separateness</u>

To rebut ZMDC's presumption of independence, Plaintiffs must establish either "the foreign state so extensively controlled the instrumentality 'that a relationship of principal and agent is

created," or respecting the corporate form "would work fraud or injustice." *See* ECF 23 at 19-20; ECF 28 at 27-28. Plaintiffs argue that this Court should disregard the presumption of separateness afforded to ZMDC because Zimbabwe, as found in *Funnekotter*, extensively controlled ZMDC so that a relationship of principal and agent is created. *See* ECF 28 at 17, 25, 29-31. Plaintiffs further insist that they have presented "far more evidence" of *alter ego* than what was presented in *Funnekotter*. *See id.* at 25. Their pleadings indicate the opposite.

As noted by the D.C. Circuit and affirmed by this Court, there is no principal and agent relationship unless the parent has shown this intent, the subsidiary has consented, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and "the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors." *DRC, Inc.*, 71 F. Supp. 3d at 216. The relevant period for such analysis is at the time of the making of the MOUs. *See TIG Ins. Co.*, 2022 WL 1154749, at 8; *see also id.* at 9.

Plaintiffs have demonstrated none of the conditions necessary for finding a principal and agent relationship between Zimbabwe and ZMDC. There is no allegation that Zimbabwe instructed ZMDC to conclude the MOUs on its behalf nor is there any claim that ZMDC entered into the MOUs on Zimbabwe's behalf. *See* ECF 1, ¶¶ 18-22. Aside from making conclusory assertions of Zimbabwe's involvement in certain "decisions" or "actions" taken by ZMDC, Plaintiffs have also not alleged or proved that Zimbabwe exerted control over ZMDC's day-to-day operations during the critical time, *i.e.*, the conclusions of the MOUs. *See* ECF 28 at 17; *see also TIG Ins. Co*, 2022 WL 1154749 at 9. This is not unexpected. As noted by Mr. Chiparo, ZMDC largely operates without the approval of Zimbabwe or the Minister. *See* Chiparo Decl., ¶ 16.

Relying on *Funnekotter*, Plaintiffs argue that Zimbabwe is ZMDC's *alter ego* because "the Republic appoints ZMDC's Board of Directors," "must always be the majority owner of ZMDC," and "uses ZMDC to pay the Republic's debts." *See* ECF 28 at 17. But the D.C. Circuit and this Court have repeatedly dismissed such arguments, noting that "[a] sovereign does not create an agency relationship merely by owning a majority of a corporation's stock or by appointing its Board of Directors." *Transamerica Leasing, Inc. v. Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000); *see also TIG Ins. Co*, 2022 WL 1154749 at 9; *DRC, Inc*, 71 F. Supp. 3d at 215. It is also irrelevant that Zimbabwe allegedly used the dividends it obtained from ZMDC to pay its debts. *See* ECF 28 at 17. As a shareholder, Zimbabwe is entitled to dividends if the revenue in a financial year is enough to cover certain expenses. *See* Zimbabwe Mining Development Corporation Act, Art. 33.

Plaintiffs claim that there is "more evidence of *alter ego* status than there was in *Funnekotter*" and point to facts that allegedly occurred in 2014, 2018, and 2021. ECF 28 at 18. These alleged facts are irrelevant for the purposes of determining whether Zimbabwe was ZMDC's *alter ego* when the MOUs were formed because they occurred years after the conclusion of the MOUs. *TIG Ins. Co*, 2022 WL 1154749 at 9. They are also inaccurate and of no use for the issue before this Court. *See* Chiparo Decl., ¶¶ 21-23. For instance, Plaintiffs claim that Zimbabwe "may dissolve" ZMDC due to fear of asset seizures. *See* ECF 28 at 18. ZMDC can be dissolved through a parliamentary resolution, but no such resolution has been issued. *See* Chiparo Decl., ¶ 23. Even if Zimbabwe dissolves ZMDC through such channel, such act is insufficient to establish agency relationship between these entities. *See TIG Ins. Co*, 2022 WL 1154749 at 9.

Finally, Plaintiffs' attempts to establish *alter ego* on the basis that the Attorney General of Zimbabwe allegedly "acknowledged the arbitration award as its public debt." *See* ECF 1-6 at 3. This is untrue. The letter references a recognition, but there is no evidence of any such "acknowledgment"

by the Attorney General. Moreover, the letter is insufficient to establish *alter ego*. While a "typical government instrumentality" has primary responsibility for its own finances, there can be "appropriations to provide capital or to cover losses." *See DRC, Inc*, 71 F. Supp. 3d at 217. Such appropriation affirms the separation between the entity since it is a rare, one-off event, not evidence of day-to-day control.

### D.     Plaintiffs are unable to state a claim for enforcement of the Award under the D.C. Code as a Foreign Judgment

Plaintiffs do not deny that the basis of their claim against the Commissioner and Zimbabwe arises from the Convention. ECF 28 at 28-29. In essence, they argue that the basis of their claim is irrelevant for the purposes of enforcing a foreign judgment based on an arbitral award. *See id.* But Plaintiffs' oversimplification and misunderstanding of Defendants' argument avoids addressing the more serious concerns with allowing the approach Plaintiffs advocate here.

The New York Convention created a comprehensive scheme to enforce foreign arbitral awards, but its purpose was not to act as merely an option for award holders. As some courts have observed, the defenses under the Convention are broader than those that exist in the enforcement of a foreign judgment. *See, e.g., First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd*., 703 F.3d 742, 751 (5th Cir. 2012). Those defenses must see the light of day. Otherwise, an award holder could identify the easiest jurisdiction to serve a party, wait for a default, and then avoid the New York Convention.

This concern does not require disputing the holding in *Comimpex* that the FAA's 3-year statute of limitations does not preempt a longer statute of limitation under the D.C. Code. ECF 28 at 28. But that case is peculiar. In both *Comimpex* and *Seetransport,* the party against whom the foreign judgment was being enforced had been a party to the agreement to arbitrate. *See e.g.,* ECF 1 at 5-6. That is not the case for the Commissioner or Zimbabwe. And in both those cases, the award debtors

had been able to litigate the enforceability of the award, receiving the protections available under the New York Convention, including Article V defenses. The Commissioner never got a chance to make those arguments, and there was never even an attempt to serve Zimbabwe such that it could intervene.

On this point, Plaintiffs have not disputed the serious issues with the Award that Defendants have outlined in their Motion. ECF 23 at 18. These include exceeding the scope of the parties' agreements, disregarding the arbitral procedure regarding the composition of the tribunal, and ignoring a court order that suspended the arbitration. *See id.* While the Commissioner was listed as a party in the arbitral proceedings themselves, there was never a finding of liability against the Commissioner. All acts examined and factual findings determined pointed solely at ZMDC.

  1. <u>Plaintiffs have not pled sufficient facts to show that the Order is final and conclusive to constitute and enforceable foreign judgment for purposes of the D.C. Code</u>

While Plaintiffs maintain that they can seek enforcement of an *ex parte* Order issued in Zambia, they have failed to plead that such Order is final and subject to enforcement under the D.C. Code. As Zimbabwe previously argued, the Order provides that "the award shall not be enforced" until the expiration of a 30-day period <u>after</u> service of the Order on ZMDC and the Commissioner. *See* ECF 1-5 at 3. The 30-day period to set aside the Order therefore can only begin to run once service is made. Plaintiffs do not dispute this. In addition, Plaintiffs acknowledge that to avoid due process issues with the Order the party must have had an opportunity "to set aside or vacate" the underlying Award. *See* ECF 28 at 34. To have the opportunity would have required proper service on the Defendants.

By its own allegations, the Complaint does not establish that service was properly made. The Complaint simply alleges that "Plaintiffs served the Judgment on Defendants on 23 October 2019."

*See* ECF 1, ¶ 35. The Complaint differentiates between "Judgment Defendants," which it defines as ZMDC and the Commissioners, and "Defendants," which presumably includes all named defendants in this action. The Complaint thus alleges that the Order was served on all three parties. Yet, there is a contradiction between that allegation in the Complaint and the Order which is attached as Exhibit E. The Order only lists the Judgment Defendants, not Zimbabwe as parties to the Zambian action. This means that Zimbabwe could not have been properly served as it was not even a party to the Zambian proceedings. In the event of such a contradiction, the exhibit governs. *See, e.g., Regan v. Spicer, HB, LLC,* 134 F. Supp. 3d 21, 26 (D.D.C. 2015).

To the extent that Plaintiffs attempt to cure the defects of their Complaint with factual allegations concerning the manner of service in their response to the Motion to Dismiss (ECF 28 at 32 and ECF 28-1, Ex. 6), these facts should be disregarded. *See, e.g., Woytowicz,* 327 F. Supp. 3d at 121. There are no additional allegations or evidence pertaining to service on Zimbabwe and none of the Defendants was properly served, as Zambian counsel had no authority to accept service on their behalf. *See* Chiparo Decl., ¶ 42; **Exhibit 2,** Declaration of Mutevedzi ("Mutevedzi Decl."), ¶¶ 17-20. There is no endorsement, as required, on the *Ex Parte* Order, and the service date of October 23, 2019, does not match date of the letter attached to the Sangwa Declaration and offered as evidence of service. Plaintiffs must be referring to some other, unknown, document.

### E.  Plaintiffs appear to accept that they have failed to provide a basis for post-judgment interest at the Zambian statutory rate

It is well established by this Court that "when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *See Fox v. Am. Airlines, Inc.,* 295 F.Supp.2d 56, 58 (D.D.C. 2003).

Defendants argued in the Motion that Plaintiffs had provided no basis for the application of the Zambian interest rate since there are no justifiable reasons pled to depart from the default rule

that the post-judgment rate set forth in § 1961 applies. In response, Plaintiffs failed to address this argument. This Court should therefore take this silence as Plaintiffs' tacit acceptance that the applicable rate is the one set forth in § 1961.

### F.        Plaintiffs have failed to show a basis for attorneys' fees

In an action to enforce a foreign arbitral award or judgment, the law of the State in which enforcement is sought governs. *See, e.g., S.A.R.L. Aquatonic Laboratoires PBE v. Marie Katelle, Inc.,* No. CV-06-0640, 2007 WL 4287835, at *1 (D. Ariz. Dec. 6, 2007).

Nothing in Plaintiffs' response can amend their failure to properly plead a basis for attorney's fees in their Complaint. In any event, the basis for attorney fees Plaintiffs belatedly identify is meritless. For the first time, Plaintiffs are alleging that both Zambia and Zimbabwe follow the English rule of attorney's fees, and the right to attorneys' fees is substantive and thus part of the judgment." ECF 28 at 37. Since this is an enforcement action under U.S. law, Plaintiffs have provided no basis to apply foreign substantive law.

Plaintiffs cite two cases that are easily distinguishable. Neither case involved the enforcement of a foreign judgment under U.S. law, each rather involved a substantive dispute under diversity jurisdiction governed by foreign law (English law), which therefore required the application of choice-of-law rules. *See RLS Associates, LLC v. United Bank of Kuwait PLC,* 464 F. Supp. 2d 206, 209 (S.D.N.Y 2006); *Katz v. Berisford Intern. PLC,* No. 96 CIV. 8695 (JGK), 2000 WL 959721, at *2 (S.D.N.Y. July 10, 2000).

To the extent, Plaintiffs are seeking to recover the attorney's fees incurred in these enforcement proceedings before a U.S. court, there is no sound basis to grant such recovery under either Zambian or Zimbabwean law. Putting aside the procedural issues Defendants had identified in the Motion, and to which Plaintiffs provide no response, Plaintiffs provide no reason to displace

the application of U.S. law with the substantive law governing either the underlying agreement (Zimbabwe law) or judgment (Zambian law). *See* Section 9 U.S.C. Section 203; §15-367 (2).

To the extent they are seeking fees on the basis of the Order, the text itself provides no indication that attorney fees are recoverable. On the contrary, the Order specifically provides that the "Plaintiffs do bear the costs of and occasioned by this Application." *See* ECF 1-5 at 3.

## IV.   The Judgment is ineligible for recognition under the D.C. Uniform Foreign-Country Money Judgments Recognition Act

Plaintiffs insist that affirmative defenses under the D.C. UFCMJRA. D.C. Code § 15-364(b) & (d) are improper on a motion to dismiss. *See* ECF 28 at 38-39. But this is not always the case. "[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015); *see also Seymore v. City of New York*, No. 12 CIV. 6870 GBD HBP, 2014 WL 1259563, at *6 (S.D.N.Y. Mar. 26, 2014).

As further demonstrated below, it is apparent from the Complaint that the Zambian High Court lacked jurisdiction over the Commissioner and Zimbabwe and that it registered an award that was rendered in disregard of the agreement in the MOUs.

### A.   The Zambian High Court had no jurisdiction over Zimbabwe or the Commissioner

The Zambian High Court never assumed jurisdiction over Zimbabwe. The Order, cited in the Complaint and filed as an exhibit, is only against the Judgment Defendants, *i.e.*, ZMDC and the Commissioner. Hence the judgment is unenforceable against Zimbabwe. *See* ECF 1, ¶ 1; *see also TIG Ins. Co.*, 2022 WL 3594601, at 7. While Plaintiffs insist that Zimbabwe is ZMDC's *alter ego*, no such finding was made by the Zambian High Court or established by Plaintiffs. *See* ECF 1-5.

Plaintiffs have also failed to demonstrate that the Zambian High Court's exercise of jurisdiction over the Commissioner is consistent with the Constitution's Due Process Clause and D.C.'s long-arm statute. *See* ECF 1, ¶ 44. In the District of Columbia, a court can exercise specific jurisdiction where: 1) it has basis for such jurisdiction under the D.C. long-arm statute, and ii) the exercise of such jurisdiction "would not offend traditional notions of fair play and substantial justice" because the "defendant had minimum contacts with the District of Columbia." *See Mills v. Anadolu Agency NA, Inc.*, No. CV 19-3061(EGS), 2022 WL 2374669, at *3, 67 (D.D.C. Apr. 28, 2022). The D.C. long arm statue allows a court to exercise jurisdiction over a claim "arising from the person's transacting any business in the District of Columbia." D.C. Code Ann. § 13-423. Simply put, "the claim itself must have arisen from the business transacted in the District or there is no jurisdiction." *Sharp Corp. v. Hisense USA Corp.,* 292 F. Supp. 3d 157, 171 (D.D.C. 2017).

Here, the Zambian High Court's exercise of jurisdiction is inconsistent with the Due Process Clause and D.C.'s long arm statute. There is no allegation that the Commissioner had minimum contacts with Zambia. Plaintiffs allege in their Opposition that "[ZMDC] could have submitted to Zambian Jurisdiction," but this says nothing about the Commissioner. *See* ECF 28 at 38. They further contend that the Commissioner waived his immunity because he "availed" himself of Zambian courts prior to Plaintiffs' registration of the Award. *See* ECF 28 at 38-39. In addition to being new, the claim lacks any substance. Personal jurisdiction and waiver of immunity are different principles. A court cannot assume personal jurisdiction just because a state official waives his immunity. There is another problem in the claim. In these Zambian court proceedings, the Commissioner did not appear as a plaintiff but as a respondent. *See* ECF 28-1 at 26, 29.

Plaintiffs have also failed to show the basis of the Zambian High Court's subject matter jurisdiction. As noted by Mr. Kalaluka and reflected in the Order, the High Court did not make any

finding on the Commissioner's immunity and the lack thereof. *See* ECF 23-3, ¶ 26. Plaintiffs contend

that the Commissioner waived his immunity under Zambia' restrictive theory of sovereign immunity

because the MOUs were for "commercializing mineral deposits, including creating a joint venture

between ZMDC and Plaintiffs." *See* ECF 28 at 41. But the Commissioner is not a party to the MOUs.

Finally, Plaintiffs argue that the Commissioner waived his immunity under the restrictive theory

because he agreed to arbitrate in a foreign country, but Plaintiffs admit that "Zambian courts have

not yet" affirmed such a concept of waiver of immunity. *See* ECF 28 at 33. The Court certainly

cannot rely on how the Zambian courts might decide at some unknown point in the future.

Plaintiffs' allegations of proper service are similarly without merit. Ranchhod Chungu was

not authorized to accept service on behalf of the Commissioner. *See* Mutevedzi Decl., ¶ ¶ 17- 24;

Chiparo Decl., ¶¶ 42-47.

### B.    The Order is repugnant to the public policy of the District of Columbia and the United States

Plaintiffs do not dispute that a court can refuse recognition of a foreign judgment if the

"judgment or cause of action on which the judgment is based is repugnant to the public policy of the

District of Columbia or of the United States." D.C. Code § 15-364. Nor do they question that a cause

of action or a judgment is repugnant to the public policy of this state and that of the United States

where it ignores "basic underpinnings of common contractual law." *See* ECF 23 at 24-25. Instead,

they argue that the Award registered by the Zambian High Court was consistent with the underlying

arbitration agreement. This is simply inaccurate.

The MOUs between Plaintiffs and ZMDC authorized the Tribunal to adjudicate disputes

only arising out of or in relation to the MOUs. *See* ECF 1, ¶ 24. It is irrelevant that the Commissioner

signed the Terms of Reference and agreed to submit to arbitration. The Terms of Reference did not

modify the MOUs or expand the Tribunal's jurisdiction. As indicated in the Terms of Reference, the

issues submitted to the Tribunal centered on whether ZMDC breached its obligations under the MOUs and if so, whether the Plaintiffs are entitled to damages. *See* ECF 28-1, ¶¶ 6.2(2)-(9). While the Tribunal recognized this and only found ZMDC liable for the breach of the MOUs, it went beyond its mandate by ordering the Commissioner to pay Plaintiffs' legal costs and fees in the arbitral proceedings. *See* ECF 1-1, ¶¶ 182, 222, 227(4)(5).

### CONCLUSION

For the foregoing reasons, Zimbabwe and the Commissioner request that the Court grant the Motion to Dismiss and whatever additional relief the Court considers just and proper.

Respectfully submitted,

/s/ Quinn Smith
**GST LLP**
Quinn Smith
DCD Bar No. FL0027
quinn.smith@gstllp.com
Katherine Sanoja
DC Bar No. 1019983
katherine.sanoja@gstllp.com
1111 Brickell Avenue
Suite 2715
Tel. (305) 856-7723

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2022, I electronically filed this document with the Clerk of the Court of the U.S. District Court of the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel off record. I further certify that I am unaware of any parties who will not receive such notice.


By: /s/ *Quinn Smith*
Quinn Smith