UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **Amaplat Mauritius Ltd.**, *et al*,  )  <br>  )  <br>    **Plaintiffs**,  )  <br>  )  <br> v.  )  <br>  )  <br> **Zimbabwe Mining Development**  )  <br> **Corporation**, *et al*,  )  <br>  )  <br>    **Defendants.**  )  | Civil Case No. 1:22-cv-00058-CRC |

## MOTION TO DISMISS THE COMPLAINT BY ZIMBABWE MINING DEVELOPMENT CORPORATION

Defendant, Zimbabwe Mining Development Corporation ("ZMDC"), by and through its undersigned counsel, hereby submits its Motion to Dismiss (the "Motion") the Complaint filed by Amaplat Mauritius Ltd. ("Amaplat") and Amari Nickel Holdings Zimbabwe Ltd. ("Amari"), and in support thereof, state as follows:

### INTRODUCTION

As a separate company with its own defenses, ZMDC has two distinct bases to dismiss the Complaint against it:

- Plaintiffs failed to serve ZMDC in compliance with Section 1608(b) because they opted to effect service by "personally hand delivering" the Summons and the Complaint on "Theresa Kanengoni" who allegedly "<u>was</u> a secretary of" ZMDC. *See* ECF 24 at ¶¶ 2-4 (emphasis added). This method of service does not comply with 28 U.S.C. § 1608(b)(3)(B) or any of the provisions under section 1608(b). *See Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 416 (S.D.N.Y. 1998) (holding that service through personal delivery is incompatible with 28 U.S.C. § 1608(b)(3)).

- Plaintiffs have not come close to alleging personal jurisdiction over ZMDC, which has no contacts with this District.

1

Plaintiffs have also failed to allege subject matter jurisdiction and personal jurisdiction as well as not stating a claim for enforcement of their purported judgment. ZMDC is aware that some of the facts alleged and defenses raised have similar qualities with the Motion to Dismiss filed by the Chief Mining Commissioner (the "Commissioner") and the Republic of Zimbabwe ("Zimbabwe") and the Reply to Plaintiff's Opposition to the Motion to Dismiss (the "Reply"). To assist the Court and reduce unnecessary duplication, ZMDC has made the arguments specific to it and incorporated by reference any other defenses. ZMDC should not be forced to litigate a sur-reply to the Reply. To that end, where the arguments overlap, ZMDC has incorporated in the text references to the Motion to Dismiss and Reply filed by the Commissioner and Zimbabwe.

## **RELEVANT BACKGROUND**

Amaplat and Amari signed MOUs with ZMDC in 2007 and 2008. *See* ECF 1-1 at ¶¶ 3-4. Pursuant to the arbitration clauses in the MOUs, Plaintiffs initiated arbitration proceedings against ZMDC before the ICC International Court of Arbitration ("ICC Court") on February 2, 2011. *See id*. at ¶ 12.

On August 14, 2012, ZMDC challenged the Tribunal and sought the stay of the proceedings until such time the challenge had been determined by the ICC Court. *See id*. at ¶ 51. Under Article 11 of the ICC Rules only the ICC Court has the authority to decide such challenge, but the Tribunal took it upon itself to consider and reject the challenge. *See* ECF 1-1 at ¶ 52; ECF 23-1. Thereafter, ZMDC refused to participate in the proceedings. *See* ECF 1-1 at ¶ 52. The Tribunal then decided to remove as evidence the witness statements submitted by ZMDC. *See id*. at ¶ 55.

On August 15, 2017, ZMDC's appointed arbitrator, Mr. James Mutizwa, tendered his resignation and left the hearing. *See id*. at ¶ 57. In such a situation, Article 12(1) of the ICC

2

Rules instructs the ICC Court to appoint a replacement. *See* ECF 23-1. Instead of waiting for a replacement, the remaining members of the Tribunal continued with the proceedings, citing to Article 12(5). *See id*. at ¶ 58. But Article 12(5) only applies after the closing of the proceedings which, in this case, occurred on December 4, 2013. *See* ECF 23-1; ECF 1-1 at ¶ 87.

On September 27, 2012, the ICC Court accepted Mr. Mutizwa's resignation, and the ICC Court invited ZMDC to name a replacement arbitrator. *See* ECF 1-1 at 65. The request was unanswered, and the ICC Court appointed a replacement on behalf of ZMDC. *See* ECF 1-1 at ¶¶ 66, 69.

On October 15, 2012, ZMDC obtained an *ex parte* order from the Zambian courts restraining Mr. Issac QC, Plaintiffs' appointed arbitrator, and Mr. Isaac QC, the jointly appointed arbitrator, from proceeding with the Arbitration. *See id*. at ¶ 67. Plaintiffs applied to vacate the order, but as of the date of the Award, there was no evidence that the order has been vacated. *See id*. at ¶ 74.

In June 2013, Judge Joffe, Petitioners' appointed arbitrator, resigned. *See id*. at ¶ 72. A few days later, Plaintiffs appointed a new arbitrator, and the reconstituted tribunal held a hearing to receive oral statements from the parties. *See id*. at ¶ 75.

On January 12, 2014, the Tribunal issued an award against ZMDC and in favor of Plaintiffs. It ordered ZMDC to pay for damages, costs, and legal fees incurred by Plaintiffs. *See id*. at ¶ 227. Despite amending their claims five times, Plaintiffs never alleged that ZMDC is an *alter ego* of Zimbabwe, and the Tribunal made no such ruling. *See id*. at ¶¶ 21, 23, 26, 34, and 39.

On July 19, 2019, Plaintiffs applied to register and enforce the Award *ex parte,* and the Zambian Court issued an "*ex parte* Order for leave to Register and Enforce the Final Arbitration

Award" against the Commissioner and ZMDC (the "Order") on August 9, 2019. *See* ECF 1-5. Defendants did not participate in these proceedings.

The Order specifically limits the enforcement of the Award on the occurrence of certain conditions, including "within 30 days after service of this Order on [Defendants], the Defendants may apply to set aside this Order and the award shall not be enforced until after the expiration of that period or if the Defendants apply within that period to set aside, until the application is finally disposed of." ECF 1-5 at ¶ 2. This same language is echoed in the Notice of Registration of Award issued on August 19, 2019. *See* ECF 23-2 at ¶ 4. In order for the 30-days period to transpire, ZMDC would have to be served with the Judgment and Notice. ZMDC was never served with the Notice of Registration or the Judgment. *See* ECF 23-3 at 6-7; *see also* **Exhibit 1**, Declaration of Tinashe C. Chiparo ("Chiparo Decl."), ¶¶ 42-47; **Exhibit 2,** Declaration of Mutevedzi, ¶¶ 17-20.

Since ZMDC was not served with the Notice of Registration or the Order, it did not have the opportunity to present any grounds against recognition or enforcement of the Award or request the set aside of the Order within the 30-day period established by the Zambian Court. *See* ECF 1-5 at ¶ 3. To date, there have been no enforcement proceedings whereby the Award was subject to the scrutiny of Article 5 of the New York Convention or any other provision of law applicable to arbitration awards.

Almost two and half years later, and eight years after the issuance of the Award, Plaintiffs filed the instant action seeking to enforce the Order under the D.C. Foreign-Country Money Judgments Recognition Act (the "D.C. Code") against ZMDC, the Chief Commissioner of the Ministry of Mines, and the Republic of Zimbabwe. *See* ECF 1 at ¶ 1. Plaintiffs further

request that post-award interest and post-judgment interest be awarded against all Defendants at the Zambian statutory rate. *See id*. at 10.

On August 19, 2022, Plaintiffs filed an affidavit of service, certifying to have served ZMDC on August 10, 2022 "by personally hand delivering" the "Summons, Complaint with Exhibits" to "Theresa Kanengoni." *See* ECF 24 at ¶¶ 2-3.

## ARGUMENT

**I.     Plaintiffs have failed to plead subject matter jurisdiction**

To withstand a Fed. Civ. P. Rule 12(b)(1) motion to dismiss, a plaintiff must establish subject jurisdiction by a preponderance of the evidence. *See* Motion to Dismiss ECF 23 at 6-7. Plaintiffs have not met their burden. They claim that this Court has subject matter jurisdiction over ZMDC "because the exceptions under 28 U.S.C. §§ 1605(a)(1) and 1605(a)(6) are satisfied." *See* ECF 1 at ¶ 8. This is incorrect. As elaborated further below, Plaintiffs have not made and could not make such a showing.

**A.     This Court cannot exercise subject matter jurisdiction based on 28 U.S.C. §1605(a)(1) because ZMDC has not waived its immunity from suit in U.S. courts**

Subject matter jurisdiction under Section 1605(a)(1) exists where the foreign state "has waived its immunity either explicitly or by implication." *See* 28 U.S.C. §§ 1605(a)(1). A foreign state implicitly waives its immunity where the foreign state "indicated its amenability to suit" in the United States and the state "subjectively intended to do so." *See TIG Ins. Co. v. Republic of Argentina*, No. 18-MC-00129 (DLF), 2022 WL 3594601, at *5 (D.D.C. Aug. 23, 2022); *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 201 (2d Cir. 1999). The Supreme Court, D.C. Circuit, and other sister circuits have all stressed that a foreign state cannot be deemed to have waived its immunity by merely agreeing to arbitrate in a foreign jurisdiction governed under a foreign law. *See* Motion to Dismiss, ECF 23 at 9-10.

5

Plaintiffs' waiver argument solely relies on the New York Convention. They argue that ZMDC waived its immunity "by agreeing to arbitrate under the ICC Rules, and by agreeing to and participating in arbitration governed by the New York Convention." *See* ECF 1 at ¶ 10. For reasons stated in the Motion to Dismiss, ECF 23 at 11, and Section I(B) of the Reply, ECF 29 at 5, the New York Convention is not a basis for an implicit waiver.

    **B.**    <u>**This Court cannot exercise subject matter jurisdiction based on 28 U.S.C. §1605(a)(6) because Plaintiffs are not seeking enforcement of an arbitration agreement or an arbitration award**</u>

The arbitration exception is similarly inapplicable. Under Section 1605(a)(6), a court can exercise subject matter jurisdiction over a foreign state if "the action is brought, <u>either to enforce an agreement made by the foreign state</u>…or to <u>confirm an award</u> made pursuant to such an agreement to arbitrate, <u>if…the agreement or award is governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards</u>." 28 U.S.C. §1605(a)(6) (emphasis added). Courts have, therefore, refused to assume jurisdiction under this exception where the plaintiff is not seeking to enforce an arbitration agreement or an arbitration award. *See* Motion to Dismiss, ECF 23 at 12. Plaintiffs have otherwise shown no basis to apply Section 1605(a)(6), based on the arguments raised in the Reply, Section I(C), ECF 29 at 8.

**II.**    **Plaintiffs have failed to plead personal jurisdiction**

In a motion to dismiss for lack of personal jurisdiction, "the plaintiff must make *prima facie* showing of the pertinent jurisdictional facts." *Johnson v. BAE Sys*., Inc., No. 11-CV-2172 (RLW), 2012 WL 13055684, at *1 (D.D.C. Oct. 23, 2012) (internal quotation marks omitted). In deciding on such motion, "the [c]ourt is not bound to treat all of the plaintiff's allegations as true,

6

but instead may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *Ibid* (internal quotation marks omitted).

To exercise personal jurisdiction over ZMDC, the following elements must be present. First, this Court must have subject matter jurisdiction pursuant to the immunity exceptions provided in 28 U.S.C. §§ 1605–07. Second, ZMDC must be served in strict compliance with the FSIA. Third, ZMDC must have minimum contacts with the District of Columbia. *See Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 49-50 (2d Cir. 2021). None of the conditions for assuming personal jurisdiction are present in this case.

### A. <u>This Court lacks personal jurisdiction because it does not have subject matter jurisdiction and ZMDC was not served</u>

A court cannot exercise personal jurisdiction under the FSIA unless one of the immunity exceptions provided in 28 U.S.C. §§ 1605–07 applies and the foreign state is served pursuant to 28 U.S.C. § 1608. *See* Motion to Dismiss, ECF 23 at 13. Here, none of the FSIA immunity exceptions applies, hence, this Court cannot exercise personal jurisdiction over ZMDC. *See* ECF 29, Reply at Section I(A)-(B).

The Court also lacks jurisdiction because Plaintiffs have not served the Summons and Complaint on ZMDC. 28 U.S.C. § 1608(b) "provides the exclusive means by which service of process may be effectuated." *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 415–17 (S.D.N.Y. 1998). If there are no special arrangement for service between the foreign state agency and the plaintiff and if the agency does not have any person authorized to receive service of process in the United States, the plaintiff must serve the agency pursuant to section 1608(b)(3). *See* 28 U.S.C. § 1608. According to section 1608(b)(3)(B), a plaintiff can serve an agency "<u>by any form of mail requiring a signed receipt</u>, to be address and dispatched by the clerk of the court to the agency…to be served." 28 U.S.C. § 1608 (b)(3)(B) (emphasis added). A plaintiff must strictly

comply with the requirements under section 1608(b) because failing to do so would render "the purpose of the [FSIA] and of numerous international conventions…meaningless." *Daly*, 30 F. Supp. 2d at 416.

Plaintiffs failed to serve ZMDC in compliance with Section 1608(b). On June 10, 2022, Plaintiffs requested the Clerk of this Court to mail through DHL a copy of the Summons and Complaint to ZMDC "pursuant to…28 U.S.C. § 1608(b)(3)(B)." ECF 12. On June 13, 2022, the Clerk certified to have mailed the documents to ZMDC in accordance with Plaintiffs' request and attached a DHL receipt of shipment. *See* ECF 18-3. But Plaintiffs have not filed a proof of service. Instead, they filed an affidavit of service on August 18, 2022, indicating that they effected service on ZMDC by "personally hand delivering" the Summons and the Complaint on "Theresa Kanengoni" who allegedly "was a secretary of" ZMDC. *See* ECF 24, ¶¶ 2-4 (emphasis added). This method of service does not comply with 28 U.S.C. § 1608(b)(3)(B) or any of the provisions under section 1608(b). *See Daly*, 30 F. Supp. 2d at 416 (holding that service through personal delivery is incompatible with 28 U.S.C. § 1608(b)(3)). Accordingly, this Court lacks personal jurisdiction over ZMDC.

**B.     The Court lacks personal jurisdiction because there is no allegation that ZMDC has minimum contacts within the District**

Foreign sovereign states "are not 'persons" for the purposes of the Due Process Clause." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002). But agencies and instrumentalities "retain their status as separate legal persons [under section 1603(b)(1)] and receive protection from the exercise of personal jurisdiction under the Due Process Clause." *Gater Assets Ltd. v. AO Moldovagaz,* 2 F.4th 42, 49 (2d Cir. 2021) (internal quotation marks omitted). Under the Due Process Clause, a court can exercise personal jurisdiction over a nonresident if: 1) the nonresident has minimum contacts with the forum state

and 2) extending jurisdiction over the nonresident is "consistent with the traditional notions of fair play and substantial justice." *See Kroger v. Legalbill.com LLC*, No. CIV A 04-2189 ESH, 2005 WL 4908968, at *4 (D.D.C. Apr. 7, 2005).

Here, Plaintiffs have neither alleged nor proved that ZMDC has any contact in the United States and particularly in the District of Columbia. Nor can they. ZMDC was established in Zimbabwe by the Zimbabwe Mining Development Corporation Act (the "ZMDC Act"). *See* Chiparo Decl., ¶ 6. As noted by Mr. Chiparo, "ZMDC has no contacts with the United States." *Id*. at ¶ 24. Its "Board is based in Zimbabwe and hold its meetings in Zimbabwe." *Id*. In addition, all the board members, including "the chairman, deputy chairman," and the executive team" reside in Zimbabwe. *Id*. at ¶ 25. ZMDC also "has no property in the United States." *Id*. at ¶ 28. Aside "from retaining counsel to defend this lawsuit, ZMDC has no financial or contractual relationship with any natural or legal person in the United States." *Id*. at ¶ 26. Finally, "ZMDC has not conducted any promotional activities." *Id*. at ¶ 29. While it maintains a website, "it does not target any investors or potential partners in the United States with that website." *Id*. at ¶ 30.

This Court therefore cannot exercise personal jurisdiction as it will be contrary to ZMDC's due process rights under the Due Process Clause.

### III. Plaintiffs have failed to state a claim upon which relief can be granted

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint." *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* "To survive a motion to dismiss, a complaint must

have 'facial plausibility,' meaning it must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, where there is a contradiction between the allegations in the complaint and the exhibits attached, the exhibit generally controls. *See Regan v. Spicer, HB, LLC,* 134 F. Supp. 3d 21, 26 (D.D.C. 2015).

> A. **Plaintiffs are unable to state a claim for enforcement of the Award under the DC Code, and their ability to enforce the Award under the New York Convention expired years ago**

While Plaintiffs entitle their Claim for Relief as one of enforcement of a foreign money judgment, that does not change the underlying claim. Plaintiffs have invoked the New York Convention as a basis for jurisdiction, but in order to circumvent the three-year statute of limitations under the FAA they attempt to enforce the award as a foreign judgment. For the reasons stated in the Motion to Dismiss, ECF 23 at 15-18, and the Reply, Section III(D), Plaintiffs cannot invoke the New York Convention to enforce a judgment against ZMDC.

> B. **Plaintiffs have failed to allege any facts supporting their various claims of an *alter ego***

To make a case of *alter ego* under the *Iqbal* standard requires more than merely conclusory statements. *Ashcroft,* 556 U.S. at 678; see also Motion to Dismiss, ECF 23 at 19. There must be facts that tend to show that an *alter ego* relationship exists. *See, e.g., Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 446 (D.C. Cir. 1990). This is because there is "a baseline rule 'that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 814 (D.C. Cir. 2012).

The presumption of juridical separateness, which also applies to jurisdictional issues, can only "be overcome where the foreign state so extensively controlled the instrumentality 'that a

relationship of principal and agent is created,' or where . . . 'adhering blindly to the corporate form would cause injustice.'" *TMR Energy Ltd*, 411 F.3d at 301; *see also* ECF 23 at 19-20. This Court's long-standing precedent places the burden squarely on plaintiff's shoulders to assert facts sufficient to establish either an agency relationship or fraud or injustice. *See* Motion to Dismiss, ECF 23 at 19-20.

Plaintiffs have failed to allege any facts to overcome the presumption of juridical separateness. They claim that ZMDC is "an *alter ego* of the Republic of Zimbabwe," but aside from making such conclusory allegations Plaintiffs have not alleged any facts which show an *alter ego* relationship. *See* ECF 1 at ¶¶ 5, 15. As shown by the facts in the Chiparo Declaration, ZMDC is not an *alter ego* of Zimbabwe, and Plaintiffs have not stated a claim upon which relief can be granted for the reasons stated in the Reply, Sections III(A)-(C). *See* ECF 29 at 11-18.

  **C.**   **Plaintiffs have failed to plead entitlement to post-judgment interest at the Zambian statutory rate**

The default rule of federal courts is that the applicable post-judgment rate is the one set forth § 1961, unless the parties unambiguously express their intent to replace the federal rate for post-judgment interest. *See* Motion to Dismiss, ECF 23 at 21. Courts have applied the federal statutory rates in cases involving the recognition of a foreign judgment. *See id*. Aside from aligning with the default rule, this approach is also consistent with § 15-367 which establishes that once the foreign judgment is recognized it is "[e]nforceable in the same manner and to the same extent as a judgment rendered in the District of Columbia." D.C. Code § 15-367 (2).

Plaintiffs request this Court to award them "post-judgment interest at Zambian's statutory rate." *See* ECF 1 at 10. They provided no basis for this Court to disregard the mandatory federal statutory rate and apply the Zambian rate. This Court should deny their request for this reason and for the reasons stated in the Reply, Section III(E). *See* ECF 29 at 21.

### D. **Plaintiffs have failed to plead entitlement to attorneys' fees**

An application for attorney's fees "must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." *Harford Mut. Ins. Co. v. New Ledroit Park Bldg. Co., LLC*, 313 F. Supp. 3d 40, 49 (D.D.C. 2018) (*citing* Fed. R. Civ. P. 54(d)(2)(A). A party moving for attorney's fees must state the basis for its claim. *Ibid*. Failing to request attorneys' fees through a motion or state the basis for such claim often result in the dismissal of the clam. *See id*, 48-49 (denying the defendant's attorney's fees because it was not "sought by a motion" and defendant failed to establish the basis for its claim); *see also* Motion to Dismiss, ECF 23 at 22.

The "American Rule" is that parties generally bear their own attorney's fees, absent a bad faith exception. *See id.* at 48. Here, Plaintiffs seek an award of costs in addition to "reasonable attorneys' fees," but they presented no basis for their request. *See* ECF 1 at 10. Neither the underlying Award nor the judgment awarded attorney's fees. *See* ECF 1-1 at 38; ECF 1-5. This Court should therefore reject Plaintiffs' request for attorneys' fees for this reason and the reasons stated in the Reply, Section III(F). *See* ECF 29 at 21.

### IV. The Judgment is ineligible for recognition under the DC. Code

#### A. **The Zambian High Court had no jurisdiction over ZMDC**

A party seeking to enforce a foreign judgment under the Act "bears the burden of making *prima facia* showing" that the foreign court had subject matter jurisdiction and personal jurisdiction over the defendant. *See Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio,* 291 F. Supp. 3d 21, 33 (D.D.C. 2017); *see also* Motion to Dismiss, ECF 23 at 21-22.

The D.C. Code provides a list of grounds for establishing personal jurisdiction. *See* D.C. Code § 15–365(a). This list is not exhaustive. A court "may recognize other basis of jurisdiction…if the asserted jurisdiction comports with both the Constitution's Due Process Clause and D.C.'s long-arm statute." *Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio,* 291 F. Supp. 3d 21, 31 (D.D.C. 2017); *Commissions Imp. Exp., S.A.*, 118 F. Supp. 3d at 227 (D.D.C. 2015) ("a court considering recognition under a statute like the Act should normally ask (1) whether the foreign court's assertion of personal jurisdiction satisfies federal constitutional due process and (2) whether the assertion of personal jurisdiction is cognizable under the state's internal law.").

Courts can exercise general jurisdiction or specific jurisdiction depending on the defendant's level of contact with the forum state. General jurisdiction exists where the defendant's "affiliations with the State are so continuous as to render [it] essentially at home in the forum State." *Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*, 291 F. Supp. 3d 21, 31 (D.D.C. 2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014)) (internal quotation marks omitted). In the District of Columbia, a court can also exercise specific jurisdiction where: 1) it has basis for such jurisdiction under the D.C. long-arm statute, and ii) the exercise of such jurisdiction "would not offend traditional notions of fair play and substantial justice" because the "defendant had minimum contacts with the District of Columbia." *See Mills v. Anadolu Agency NA, Inc.*, No. CV 19-3061(EGS), 2022 WL 2374669, at *3, 67 (D.D.C. Apr. 28, 2022).

Plaintiffs have neither alleged nor established that the Zambian High Court's exercise of jurisdiction comports with the above requirements. They claim that the High Court had jurisdiction over ZMDC but do not claim or prove that its exercise of jurisdiction is consistent

13

with the Due Process Clause and D.C.'s long-arm statute. *See* Complaint, ¶ 44; *see also* ECF 1-5. There is no evidence that ZMDC had minimum contacts with Zambia or that it was served with the process either before or after the issuance of the Order. *See* ECF 1-5. The Zambian High Court also had no jurisdiction for the reasons stated in the Reply, Section IV(A). ECF 29 at 23.

        **B.**    **The Order is repugnant to the public policy of the District of Columbia and the United States**

The D.C. Code also permits a court to refuse recognition of a foreign judgment where the "judgment or cause of action on which the judgment is based is repugnant to the public policy of the District of Columbia or of the United States." D.C. Code § 15-364.

A cause of action or a judgment is repugnant to the public policy of this state and that of the United States where it ignores "basic underpinnings of common contractual law." *See Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 586 (E.D. Va. 2019); *see also Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 107-108 (2d Cir. 2016) (noting that the "high hurdle of the public policy exception is surmounted by vindication of contractual undertakings" and refusing to recognize to a Mexican judgment that set aside an arbitration award in disregard of the parties' arbitration agreement).

Here, the Tribunal repeatedly ignored the parties' arbitration agreement. According to the ICC Rules—the governing rule selected by the parties—only the ICC Court can hear and resolve a challenge against an arbitrator or a tribunal. *See* ECF 1 at ¶¶ 24, 51; ECF 23-1, Article 11. The Tribunal failed to adhere to this rule. On August 14, 2012, ZMDC challenged the Tribunal. *See* ECF 1 at ¶ 51. Instead of deferring to the Secretary, the Tribunal dismissed the challenge. *Id.*

The Tribunal also ignored Article 12 of the ICC Rules. Where an arbitrator resigns, Article 12 instructs the ICC Court to find a replacement. *See* ECF 23-1. On August 15, 2012,

ZMDC's appointed arbitrator, Mr. James Mutizwa, tendered his resignation and left the proceedings. *See* ECF 1-1 at ¶ 57. Instead of waiting for the ICC Court to find a replacement, the Tribunal continued with the arbitration proceedings citing to Article 12(5) of the ICC Rules. But Article 12(5) was inapplicable. Under Article 12(5), a tribunal can continue with the arbitration proceedings if a member of the tribunal resigns "subsequent to the closing" of the arbitration proceedings and if the ICC Court permits the continuation of the proceedings. *See* ECF 23-1 at 11. Here, the proceedings were not closed until December 2013 and the Tribunal never obtained permission to continue with the proceedings. *See* ECF 1-1 at ¶¶ 58, 87.

In August 2019, the Zambian High Court ordered the registration of the Award even though it was rendered in clear disregard of the parties' arbitration agreement. Enforcing such an order will be repugnant to the public policy of the District of Columbia and the United States, hence, this Court should dismiss the Complaint. ZMDC also incorporates those arguments made in the Reply, Section IV(B). ECF 29 at 25.

## Conclusion

For the foregoing reasons, ZMDC requests that the Court grant the Motion to Dismiss and grant whatever additional relief it considers just and proper.

Respectfully submitted,

/s/ Quinn Smith
**GST LLP**
Quinn Smith
DCD Bar No. FL0027
quinn.smith@gstllp.com
Katherine Sanoja
DC Bar No. 1019983
katherine.sanoja@gstllp.com
1111 Brickell Avenue
Suite 2715
Tel. (305) 856-7723

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2022, I electronically filed this document with the Clerk of the Court of the U.S. District Court of the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel off record. I further certify that I am unaware of any parties who will not receive such notice.

By:   /s/ *Quinn Smith*
Quinn Smith